PAGES 1 – 28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ORRICK

HUAWEI TECHNOLOGIES CO., LTD.,       )
HUAWEI DEVICE USA, INC., AND         )
HUAWEI TECHNOLOGIES USA, INC.,       )
                                     )
PLAINTIFFS / COUNTERCLAIMDEFENDANTS, )
                                     )
V.                                   )
                                     )
SAMSUNG ELECTRONICS CO., LTD.,       )
SAMSUNG ELECTRONICS AMERICA,         )
INC.,                                )
                                     )
DEFENDANTS / COUNTERCLAIMPLAINTIFFS, )
                                     )
AND                                  )   NO.  3:16-CV-0287 WHO
                                     )
SAMSUNG RESEARCH AMERICA,            )   SAN FRANCISCO,
                                     )   CALIFORNIA
DEFENDANT,                           )   TUESDAY
                                     )   SEPTEMBER 13, 2016
V.                                   )
                                     )
HISILICON TECHNOLOGIES CO., LTD.,    )
COUNTERCLAIM-DEFENDANT.              )
_____)

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**

**RECORDING  2:21 P.M. 3:00 P.M.**

*TRANSCRIBED BY:  JOAN MARIE COLUMBINI, CSR #5435, RPR*
                   *RETIRED OFFICIAL COURT REPORTER, USDC*

**APPEARANCES:**

**FOR PLAINTIFF**          SIDLEY AUSTIN, LLP
                          555 CALIFORNIA STREET, SUITE 2000
                          SAN FRANCISCO, CALIFORNIA 94104
                  BY:   **MICHAEL J. BETTINGER, ESQUIRE**
                        **IRENE YANG, ESQUIRE**


                          SIDLEY AUSTIN, LLP
                          ONE SOUTH DEARBORN
                          CHICAGO, ILLINOIS 60603
                  BY:   **DAVID T. PRITIKIN, ESQUIRE**
                        **DAVID C. GIARDINA, ESQUIRE**


**FOR DEFENDANT**          QUINN, EMANUEL, URQUHART & SULLIVAN
                          50 CALIFORNIA STREET, 22ND FLOOR
                          SAN FRANCISCO, CALIFORNIA 49111
                  BY:   **CHARLES K. VERHOEVEN, ESQUIRE**
                        **DAVID A. PERLSON, ESQUIRE**
                        **CARL G. ANDERSON, ESQUIRE**
                        DAVID ANDREW PERSON, ESQUIRE


                          QUINN, EMANUEL, URQUHART & SULLIVAN
                          555 TWIN DOLPHIN DRIVE, FIFTH FLOOR
                          REDWOOD SHORES, CALIFORNIA 94065
                  BY:   **KEVIN JOHNSON, ESQUIRE**
                        **VICTORIA MAROULIS, ESQUIRE**

1    TUESDAY, SEPTEMBER 13, 2016                          2:21 P.M.

2    (TRANSCRIBER'S NOTE: DUE AT TIMES TO COUNSEL'S FAILURE TO

3    IDENTIFY THEMSELVES WHEN SPEAKING, CERTAIN SPEAKER

4    ATTRIBUTIONS ARE BASED ON EDUCATED GUESS.)

5                          PROCEEDINGS

6                          ---O0O---

7         **THE CLERK:**  CALLING 16-2787 HUAWEI TECHNOLOGIES,

8    CORPORATION, LIMITED, ET AL. VERSUS SAMSUNG ELECTRONICS

9    COMPANY, LIMITED, ET AL.

10            COUNSEL, PLEASE COME FORWARD AND STATE YOUR

11   APPEARANCE.

12        **MR. PRITIKIN:**  GOOD AFTERNOON, YOUR HONOR.  DAVID

13   PRITIKIN ON BEHALF OF PLAINTIFFS.  AND WITH ME IS MICHAEL

14   BETTINGER, IRENE YANG, DAVID GIARDINA.  AND FROM HUAWEI, WE

15   ALSO HAVE TAO ZHANG.

16        **MR. BETTINGER:**  GOOD AFTERNOON, YOUR HONOR.

17        **THE COURT:**  GOOD AFTERNOON.

18        **MR. VERHOEVEN:**  GOOD AFTERNOON, YOUR HONOR.  CHARLES

19   VERHOEVEN FROM QUINN EMANUEL ON BEHALF OF SAMSUNG.  WITH ME IS

20   KEVIN JOHNSON -- MY PARTNERS KEVIN JOHNSON, VICKY MAROULIS,

21   CARL ANDERSON, DAVID PERLSON.

22            WE ALSO HAVE CHRIS BURRELL, DIRECTOR AND SENIOR

23   COUNSEL OF SAMSUNG.  MICHELLE YANG, DIRECTOR OF IP.  YONG HEE

24   KANG, SENIOR LEGAL COUNSEL.  AND YONG CHOI, WHO IS ALSO COUNSEL

25   FROM SAMSUNG.

1            **THE COURT:**  WELCOME.  WELCOME, EVERYBODY.

2            MR. JOHNSON, IT'S NICE TO SEE YOU AGAIN.  YOU'VE

3   APPEARED IN MY COURT OFTEN.

4            SO LET'S START WITH THE ISSUE OF WHETHER WE'RE GOING

5   TO BIFURCATE OR NOT.  AND THERE ARE, OBVIOUSLY, A COUPLE OF

6   WAYS THAT PEOPLE OF GOODWILL COULD FIGURE OUT HOW TO RESOLVE

7   THIS.  AND ONE WAY WOULD BE TO HAVE NEGOTIATED IT.  THAT

8   DOESN'T SEEM TO HAVE WORKED.

9            IF THERE WAS AN AGREEMENT TO DEAL WITH AN ISSUE IN

10  THE CASE THAT WOULD MAKE EVERYBODY'S LIFE EASIER, THAT WOULD BE

11  SIMPLE AND -- BUT THERE DOESN'T SEEM TO BE THAT.

12           AND I'VE LOOKED AT ALL THE CASES THAT THE PARTIES

13  CITED AND A COUPLE OF MY OWN.  I'M NOT INCLINED TO BIFURCATE ON

14  THE FRAND ISSUE.

15           EVERY TIME I TRY TO DO SOMETHING WISE THAT CUTS THE

16  TIME OF PEOPLE BY NOT FOLLOWING THE STANDARD PROCEDURES, IT

17  DOESN'T WORK.  IT NEVER WORKED FOR ME AS A LAWYER, AND IT

18  HASN'T WORKED FOR ME AS A JUDGE.  SO I'M THINKING TIMEWISE IT'S

19  GOING TO BE FASTER TO JUST PROCEED, UNLESS THE PARTIES CAN

20  FIGURE OUT TOGETHER A BETTER WAY OF DEALING WITH THINGS.

21           SO, MR. PRITIKIN, YOU CAN MAKE A PITCH, BUT YOU CAN

22  SEE WHERE I'M LEANING.

23           **MR. PRITIKIN:**  SURE.  LET ME TAKE A TRY.

24           **THE COURT:**  OKAY.

25           **MR. PRITIKIN:**  A STAB AT IT, ANYWAY, YOUR HONOR.

1          SO THE CENTRAL ISSUE, I THINK YOU PUT YOUR FINGER ON

2     IT, REALLY.  THE CENTRAL ISSUE IS THEIR OUGHT TO BE A

3     CROSS-LICENSE BETWEEN THESE PARTIES.  THEY BOTH RECOGNIZE THAT

4     THEY HAVE AN OBLIGATION TO GRANT LICENSES.  THEY BOTH WANT

5     LICENSES.  THAT'S EVIDENT FROM THE PLEADINGS IN THE CASE.

6          AND THE DISPUTE IS WHAT IS THE FRAND RATE FOR THE

7     RESPECTIVE PORTFOLIOS.  ONCE THE FRAND RATE IS DETERMINED,

8     EVERYTHING ELSE TENDS TO FALL BY THE WAYSIDE HERE.  THAT'S THE

9     CENTRAL ISSUE IS TO WHAT THE RATE IS.  ONCE WE KNOW WHAT THE

10    RATE IS, WE'RE ENTITLED TO A LICENSE ON THAT BASIS, AND

11    RECIPROCALLY THEY ARE AS WELL.

12          WE BELIEVE THAT THE LOGICAL AND THE SIMPLEST WAY TO

13    GET FROM HERE TO THERE IS FOR THE COURT TO DETERMINE WHAT THE

14    FRAND RATE IS.

15          **THE COURT:**  SO WHAT I READ, AS OPPOSED TO WHAT YOU

16    BELIEVE OUGHT TO BE THE CASE, IS THAT YOUR COLLEAGUES ON THE

17    OTHER SIDE CONTEST THAT ALL OF THE PATENTS ARE VALID AND THAT

18    THEY WOULD HAVE TO PAY ON THOSE, AND, THEREFORE, TRYING TO

19    FIGURE OUT THE FRAND RATE UNTIL YOU FIGURE OUT WHAT PATENTS YOU

20    ARE ACTUALLY TALKING ABOUT IS PUTTING THE CART BEFORE THE HORSE

21    AND WOULD REQUIRE MORE TIME.

22          AND, OF COURSE, THERE HAVE BEEN A FEW CASES, JUDGE

23    KRONSTADT, I THINK MOST RECENTLY IN L.A., DETERMINING THAT.  SO

24    WHY -- WHAT AM I MISSING HERE?

25          **MR. PRITIKIN:**  YEAH.  I THINK I CAN EXPLAIN THAT,

```
 1   YOUR HONOR, BECAUSE WHAT WE'RE DEALING WITH IS PORTFOLIOS HERE
 2   THAT HAVE THOUSANDS OF PATENTS IN THEM.  THIS DISPUTE IS NOT
 3   JUST ABOUT THE 11 PATENTS THAT THEY SUED ON OR THE 11 PATENTS
 4   THAT WE SUED ON.  IN FACT, IN SOME WAYS THAT'S THE TIP OF THE
 5   ICEBERG.
 6          THE ULTIMATE ISSUE HERE IS GOING TO BE A LICENSE TO
 7   THE PORTFOLIOS; OTHERWISE, THE BATTLES GO ON ENDLESSLY.  THE
 8   RESOLUTION OF THE 11 PATENTS DOESN'T RESOLVE THE ENTIRETY OF
 9   THE CONTROVERSY.  IT RESOLVES THOSE SPECIFIC PATENT DISPUTES.
10          THE FACT IS THAT PARTIES ARE ENTITLED TO A LICENSE ON
11   FRAND TERMS TO THE DECLARED PATENTS.  AND YOU REALLY DON'T HAVE
12   TO LOOK ANY FURTHER TO THEIR PLEADINGS TO SEE WHERE THAT IS
13   CONFIRMED.
14          AND SO THE WHOLE CONCEPT OF THE STANDARD ESSENTIAL
15   PATENT REGIME AND FRAND IS THAT IT RECOGNIZES THAT PARTIES ARE
16   GOING TO HAVE VERY LARGE NUMBER OF PATENTS AND THAT IT ISN'T
17   GOING TO BE PRACTICAL TO ADJUDICATE EVERY ONE OF THOSE
18   THOUSANDS OF PATENTS TO CONCLUSION TO DETERMINE WHETHER IT IS
19   ESSENTIAL, IT'S INFRINGED, IT'S ENFORCEABLE, IT'S VALID, AND SO
20   FORTH.
21          IN FACT, IF YOU LOOK AT THEIR PLEADINGS -- AND YOU
22   CAN LOOK AT PARAGRAPH 316 OF THE COUNTERCLAIMS -- WHERE THEY
23   SAY THAT THE IPR POLICY REQUIRES THE OWNER OF PATENTS THAT
24   MIGHT BE ESSENTIAL TO A STANDARD TO FILE AN IPR DISCLOSURE AND
25   TO LICENSE THE DISCLOSED IPRS ON FRAND TERMS ON CONDITIONS TO
```

1    THOSE WHO IMPLEMENT THE RELEVANT STANDARDS.

2            THE CONCEPT UNDERLYING THE STANDARD ESSENTIAL PATENT

3    REGIME IS THAT YOU DECLARE YOUR PATENTS, MAYBE A VAST NUMBER OF

4    THEM THAT ARE DECLARED IN THE CASE OF COMPANIES LIKE HUAWEI AND

5    SAMSUNG AND SOMEBODY WHO IS AN IMPLEMENTER HAS A RIGHT TO GET A

6    LICENSE TO THOSE.  YOU DON'T HAVE TO GO THROUGH (UNDISCERNIBLE)

7    PATENT.  THAT'S THE WHOLE PURPOSE OF LICENSING THEM, IS TO

8    AVOID THE NECESSITY FOR THE PROLONGED PATENT LITIGATION.

9            AND THERE'S NO QUESTION THAT THE COURT HAS THE POWER

10   TO DO THIS.  SURE, BY AGREEMENT, THERE'S LOTS OF THINGS THAT

11   COULD HAPPEN.  IN A RATIONAL WORLD, THE PARTIES WOULD AGREE TO

12   LET A NEUTRAL THIRD-PARTY ARBITRATOR DECIDE WHAT THE FRAND RATE

13   IS.  FOR THE LIFE OF ME I DON'T UNDERSTAND WHY SAMSUNG WON'T

14   AGREE TO THAT, BUT WE CAN'T FORCE THEM TO GO TO ARBITRATION.

15           BUT WE'RE IN COURT, AND YOU HAVE THE POWER TO STAGE

16   THE PROCEEDINGS IN A WAY THAT IS SENSIBLE AND THAT BRINGS ABOUT

17   AN ORDERLY RESOLUTION OF THIS.

18           **THE COURT:**  SO AT THE END OF THE DAY AM I GOING TO --

19   IS -- ARE THE PARTIES GOING TO BE ARGUING -- LET'S SAY -- LET'S

20   SAY ALL 11 PATENTS ARE STILL IN THE CASE WHEN IT COMES TO

21   TRIAL.  IS THE ROYALTY GOING TO BE BASED ON THOSE 11 PATENTS,

22   OR IS IT GOING TO BE BASED ON ALL THE PATENTS THAT ARE ASSERTED

23   IN ALL OF THE -- I COUNTED THEM UP AT ONE POINT.  I CAN'T

24   REMEMBER -- 22 CASES THAT YOU TOLD ME ABOUT.  MAYBE THERE ARE

25   OTHERS.

1          SO WHAT WILL BE BEFORE ME?

2          **MR. PRITIKIN:**  I THINK BOTH ARE GOING TO BE BEFORE

3   YOU, YOUR HONOR, BUT THEY COME UP DIFFERENT -- IN DIFFERENT

4   WAYS PROCEDURALLY.

5          THEY HAVE ASSERTED 11 PATENTS AGAINST US.  WE'VE

6   ASSERTED 11 PATENTS AGAINST THEM.  IF THOSE PATENT INFRINGEMENT

7   CASES ULTIMATELY GO TO TRIAL ON WHATEVER PATENTS ARE STILL LEFT

8   IN THE CASE AT THE TIME OF TRIAL, THE JURY IS GOING TO AWARD

9   DAMAGES, PRESUMABLY A REASONABLE ROYALTY, A FRAND ROYALTY ON

10  THOSE 11 PATENTS.

11          **THE COURT:**  RIGHT.

12          **MR. PRITIKIN:**  NOT ON THE REST OF IT.

13          BUT THE REST OF IT COMES IN BECAUSE OF OTHER CLAIMS

14  THAT HAVE BEEN ASSERTED IN THE CASE.  AND THERE ARE TWO REASONS

15  WHY IT COMES INTO THE CASE.

16          FIRST, WE HAVE A BREACH OF FRAND CLAIM THAT WE'VE

17  ASSERTED AGAINST THEM.  THEY HAVE ACCUSED US OF BREACHING OUR

18  FRAND OBLIGATIONS.  IN ORDER TO RESOLVE THAT -- AND,

19  ULTIMATELY, I DON'T KNOW WHETHER IT'S GOING TO BE TRIED TO THE

20  COURT OR TO A JURY; IT DOESN'T REALLY MAKE ANY DIFFERENCE FOR

21  PRESENT PURPOSES.

22          IN THE COURSE OF RESOLVING THAT, THE COURT HAS THE

23  POWER TO DETERMINE WHAT THE FRAND RATE IS FOR THE TWO

24  PORTFOLIOS AS A WHOLE OR TO PUT A SPECIAL INTERROGATORY TO THE

25  JURY TO DETERMINE THAT.

1          I MEAN, THAT'S ESSENTIALLY WHAT JUDGE ROBART DID IN

2     THE *MICROSOFT-MOTOROLA* CASE.  HE DECIDED THAT AS A PREREQUISITE

3     TO RESOLVING THE BREACH OF FRAND CASE, IT WAS NECESSARY TO

4     DETERMINE WHAT THE FRAND RATE WAS, AND HE SET ABOUT DOING IT.

5          NOW, SUBSEQUENTLY, THERE WAS A CONTROVERSY BETWEEN

6     THE PARTIES AS TO WHETHER IT SHOULD HAVE BEEN THE COURT OR A

7     JURY.  BUT THAT'S NOT THE ISSUE FOR PRESENT PURPOSES.  CLEARLY,

8     THE COURT HAS THE POWER TO DO IT.

9          SECONDLY, WE HAVE A DECLARATORY JUDGMENT ACTION WHERE

10    WE HAVE -- THERE IS A CONTROVERSY, A LIVE JUSTICIABLE

11    CONTROVERSY BETWEEN THE PARTIES AS TO WHAT A FRAND RATE IS FOR

12    OUR PORTFOLIO AND FOR THEIR PORTFOLIO.  THAT ISSUE IS PRESENT.

13    IT IS FRONT AND CENTER.  IT IS AN ISSUE THAT THE COURT HAS THE

14    POWER TO RESOLVE.  WE DON'T NEED TO DECIDE TODAY WHETHER THAT'S

15    FOR THE COURT OR THE JURY.  I THINK THE COURT HAS THE POWER TO

16    DO IT, BUT THAT'S NOT TODAY'S PROBLEM.

17         TODAY'S QUESTION IS HOW DO WE GET THIS CONTROVERSY

18    RESOLVED.  AND THE FUNDAMENTAL PROBLEM WITH PROCEEDING DOWN

19    THIS PATENT PATH ONE BY ONE BY ONE, AS JUDGE ROBART RECOGNIZED

20    IN THE *MICROSOFT* CASES, THAT IT TAKES YOU INTO A CUL-DE-SAC AT

21    THE END OF THE DAY BECAUSE IT LEAVES A LARGER ISSUE OUT THERE.

22    AND THAT'S THE ISSUE THAT'S GOING TO RESOLVE THE CONTROVERSY.

23         ONE OF THE ARGUMENTS THAT IS PRESENTED BY SAMSUNG --

24    AND WE SEE THIS OVER AND OVER IN THE CASE MANAGEMENT

25    CONFERENCE -- THEIR PORTION OF IT IS THAT, WELL, YOU CAN'T DO

1    THIS UNLESS THE PARTIES CONSENT TO IT.

2          IF YOU LOOK AT THE OTHER CASES WHERE COURTS HAVE

3    DETERMINED FRAND RATES, AND THERE ARE PLENTY OF THEM OUT THERE

4    WHERE COURTS HAVE DONE THAT.  JUDGE WHITE DID THAT IN THE

5    *REALTEK VERSUS LSI* CASE.  THEY SAY THAT THOSE CASES ALL

6    INVOLVED CONSENT, AND HERE WE'LL CONSENT.  THEY WON'T CONSENT.

7    THEY WON'T CONSENT TO ANYBODY DECIDING THIS, AND, THEREFORE,

8    YOU CAN'T DO IT.  AND THAT IS JUST WRONG.  THAT IS JUST WRONG.

9          PARTIES CANNOT CONFER JURISDICTION ON A COURT BY

10   CONSENT.  THEY CAN AGREE TO PROCEDURES, BUT IF A COURT DOESN'T

11   HAVE THE INHERENT POWER TO DO IT, THE FACT THAT THE PARTIES

12   COME BEFORE THE COURT AND SAY, YOU DECIDE IT, YOU TELL ME WHAT

13   COLOR I'M GOING TO PAINT MY LIVING ROOM, THAT DOESN'T CREATE

14   JURISDICTION.

15         SO THERE ARE NUMEROUS COURTS THAT HAVE, IN FACT, SET

16   FRAND RATES.

17         **THE COURT:**  BUT MOST OF THEM -- WOULDN'T YOU AGREE

18   THAT MOST OF THEM HAVE DONE IT -- NOT BECAUSE OF, BUT IN CASES

19   WHERE THE PARTIES DID, IN FACT, CONSENT.  THE PARTIES THOUGHT

20   IT WAS A GOOD IDEA.

21         **MR. PRITIKIN:**  MOST, BUT NOT ALL.

22         **THE COURT:**  MOST, BUT NOT ALL.  I WOULD AGREE WITH

23   THAT, TOO.

24         **MR. PRITIKIN:**  AND I WOULD SUBMIT IN THE CASES WHERE

25   THE COURT DID IT, THE FACT THAT THERE WAS CONSENT DOES NOT

1    CONFER JURISDICTION ON THE COURT.

2              **THE COURT:**  I AGREE.  I AGREE.  AND I ACTUALLY -- I

3    COME FROM A LONG LINE OF PEOPLE WHO THINK THAT A FEDERAL JUDGE

4    CAN DO ALMOST ANYTHING.  SO YOU DON'T HAVE TO CONVINCE ME OF MY

5    ABILITY TO DO IT.  THE WISDOM IS THE THING THAT I'M -- LET ME

6    TURN IT OVER TO MR. VERHOEVEN.

7              **MR. VERHOEVEN:**  THANK YOU, YOUR HONOR.

8              IN RESPONSE, YOU ASKED A QUESTION TO COUNSEL ABOUT

9    THE 11 PATENTS, AND WE'RE GOING TO ASK FOR A RATE FOR JUST

10   THAT.  COUNSEL SAID, NO, THEY ARE GOING TO DO THAT, BUT THEN

11   THEY'RE GOING TO ASK FOR A RATE, I GUESS, WORLDWIDE, WITHOUT

12   STIPULATION OF THE PARTIES.

13             AND THE FIRST REASON THAT COUNSEL PROFFERED TO YOU

14   FOR WHY THAT WAS APPROPRIATE WAS ITS BREACH OF CONTRACT CLAIM.

15   BUT ITS BREACH OF CONTRACT CLAIM IS UNDER ETSI, YOUR HONOR, AND

16   IN PREREQUISITES TO ANY OBLIGATIONS UNDER ETSI RULES, WHICH ARE

17   GOVERNED BY FRENCH LAW, BY THE WAY, YOUR HONOR, IS YOU GOT SHOW

18   THE PATENT IS VALID, YOU GOT TO SHOW IT'S INFRINGED, AND YOU

19   GOT TO SHOW IT'S ESSENTIAL.

20             THE DECLARATION THAT ETSI TALKS ABOUT IS A

21   DECLARATION THAT IT MAY BE ESSENTIAL, AND THAT IF IT'S

22   DETERMINED TO BE, THEN YOU WILL LICENSE ON FRAND TERMS.  AND SO

23   IT DOESN'T -- I MEAN, I'VE BEEN THROUGH THIS ETSI LITIGATION

24   MULTIPLE TIMES.  THERE'S NO ENFORCEMENT MECHANISM AT ESTI.

25   IT'S VERY UNCLEAR HOW THE LAW WOULD APPLY IN THE UNITED STATES

1    TO REMEDY.

2              BUT THE POINT I'M TRYING TO MAKE, YOUR HONOR, THOUGH,

3    IS THESE ARE PREREQUISITE ISSUES, AND THAT DOES NOT JUSTIFY THE

4    COURT GOING BEYOND THAT AND SETTING A WORLDWIDE RATE FOR

5    PATENTS FROM 15 DIFFERENT TECHNOLOGICAL AREAS BASED ON 11

6    PATENTS.  THAT JUST DOESN'T SUPPORT THAT.

7              NOW, AS TO THE DECLARATORY RELIEF, BASICALLY WHAT

8    THEY'RE SAYING IS, WELL, THEY SHOULD BE ABLE TO HAVE THE COURT

9    DECIDE A DISPUTED ISSUE THAT THE PARTIES ARE NEGOTIATING A

10   CONTRACT ABOUT.  THE FEDERAL COURTS DON'T DO THAT.  AND --

11   ESPECIALLY ABSENT A STIPULATION.

12             NOW, IF THE PARTIES -- YOU KNOW, IF WE TAKE DISCOVERY

13   FOR A YEAR AND SOME OF THESE CLAIMS DROP OUT, OR SOMETHING

14   ELSE, HOPEFULLY, WE'D SETTLE THE CASE, BUT IT'S CONCEIVABLE

15   THAT WE MIGHT COME BACK AND SAY, WE'VE NEGOTIATED ALL THE TERMS

16   EXCEPT THE RATE, AND, THEREFORE, WE'LL STIPULATE TO THAT.  BUT

17   THAT'S NOT WHERE WE ARE, YOUR HONOR.

18             THERE'S NO WAY THAT WE'RE WILLING TO STIPULATE WITH

19   HUAWEI SEEKING SOLELY INJUNCTIVE RELIEF ON MULTIPLE STANDARD

20   ESSENTIAL PATENTS IN CHINA, SOMETHING THEY DIDN'T EVEN INFORM

21   THE COURT OF.

22             THEY'RE TAKING THE POSITION RIGHT NOW, YOUR HONOR,

23   THAT IN CHINA THEY SHOULD BE ABLE TO GET INJUNCTIONS, BUT HERE

24   IN THE UNITED STATES, WE SHOULD BE BARRED FROM SEEKING ANY

25   INJUNCTIVE RELIEF WORLDWIDE.

1          AND WE CAN'T SIT AROUND AND NOT DEFEND OURSELVES,

2   YOUR HONOR, AND RIGHT NOW WE'RE FOCUSING ON DEFENDING

3   OURSELVES.  YOU KNOW, WE WERE NEGOTIATING WITH THEM.  THERE WAS

4   FIVE MONTHS OF RADIO SILENCE, AND ALL OF A SUDDEN, AN AVALANCHE

5   OF LAWSUITS.  YOU KNOW, THERE'S A HE SAID/SHE SAID ABOUT WHO IS

6   NEGOTIATING -- YOU KNOW, WE HAVE TO GET INTO THE FACTS AND

7   LEARN ALL OF THAT.

8          BUT ONE FACT IS UNDISPUTED, AND THAT'S THEIR RATE HAS

9   NOT CHANGED OVER FIVE YEARS; WHEREAS, WE HAVE PROFFERED

10  DIFFERENT ALTERNATIVES, YOUR HONOR, AND WE HAVE BEEN TRYING TO

11  WORK WITH THEM, BUT THE NOTION THAT A JURY SHOULD BE ASKED TO

12  SET THE TERM OF A WORLDWIDE LICENSE AGREEMENT WHICH INVOLVES

13  MULTIPLE DIFFERENT TECHNOLOGIES -- FOR EXAMPLE, HUAWEI IS VERY

14  INTO INFRASTRUCTURE, THOSE CELL TOWERS AND ALL OF THAT.  SO

15  THAT'S A WHOLE DIFFERENT TECHNOLOGY THAN THE PATENTS ON --

16  WELL, IT'S RELATED, BUT IT'S DIFFERENT THAN THE PATENTS ON

17  SMARTPHONES OR TABLETS OR PROTOCOLS ALONG THOSE LINES, YOUR

18  HONOR.  SO IT'S NOT JUST A SIMPLE WAY -- A JURY COULDN'T JUST

19  SIMPLY UNDERSTAND ALL OF THESE DIFFERENT TECHNOLOGIES.

20          ANOTHER POINT, YOUR HONOR, IS, WHEN THESE LICENSE

21  AGREEMENTS GET NEGOTIATED, THERE'S A LOT OF PREDICTIONS THAT

22  BOTH SIDES HAVE TO TAKE THE RISK ON, YOU KNOW, HOW IS

23  TECHNOLOGY GOING TO EVOLVE.

24          USUALLY, THESE TAKE A WHILE TO NEGOTIATE.  THEY'RE

25  FOR FIVE-, TEN-YEAR TERMS.  YOU NEVER KNOW IN THESE FAST-MOVING

1     TECHNOLOGICAL AREAS WHERE TECHNOLOGY IS GOING TO BE.  AND SO

2     THE TERMS, THE NON-RATE TERMS ARE VERY SIGNIFICANT, AND THEY

3     WILL HAVE AN IMPACT ON THE RATE.

4          SO THAT NOTION THAT YOU COULD JUST SET A RATE, TO

5     GIVE THAT TO A JURY AND HAVE A JURY DO THAT, NO REASONABLE

6     COMPANY SHOULD -- WOULD -- I THINK SHOULD AGREE TO THAT, YOUR

7     HONOR; BECAUSE IT WOULD JUST -- YOU'D BE THROWING A MAJOR,

8     MAJOR COMPONENT OF YOUR BUSINESS TO JURORS THAT DON'T HAVE THE

9     TECHNICAL ACUMEN OR THE BUSINESS ACUMEN TO UNDERSTAND WORLDWIDE

10    MARKETS AND THE TECHNOLOGY AND TRENDS IN THE MARKETPLACE.

11         SO THE REQUEST UNDER THE DEC RELIEF CLAIM, YOUR

12    HONOR, WE THINK MAKES ABSOLUTELY NO SENSE.  IT'S NOT FEASIBLE.

13    AND WE ACTUALLY DO THINK THAT THERE ARE SERIOUS ISSUES AS TO

14    WHETHER IT WOULD BE APPROPRIATE FOR THE COURT TO DO THAT.  AND

15    IN ALL EVENTS, YOUR HONOR, IT'S ALL PREMATURE.

16         THE PLAINTIFF ASKED US TO EXTEND THE TIME TO RESPOND

17    TO OUR COUNTER- -- ANSWERING COUNTERCLAIMS TO NOVEMBER 11TH.

18    SO WE'RE NOT EVEN AT ISSUE YET.

19         I DON'T KNOW WHAT THEIR -- YOU KNOW, THEY MAY HAVE

20    CLAIMS IN RESPONSE TO OUR CLAIMS, OR THEY MAY HAVE A BIG

21    DEFENSE THAT CHANGES THE STRUCTURE OF DISCOVERY THAT WE'LL HAVE

22    TO DEAL WITH.  WE JUST DON'T KNOW.

23         I NOTICED, YOUR HONOR, THAT THE PARTIES HAVE AGREED

24    IN THE SCHEDULE -- IT'S IN OUR CMC STATEMENT, STARTING ON PAGE

25    22 THROUGH 27, ALL THE DATES ARE AGREED BETWEEN THE PARTIES UP

THROUGH *MARKMAN*, YOUR HONOR.

SO, REALLY, IT DOESN'T MAKE ANY SENSE TO TALK ABOUT THINGS LIKE BIFURCATING NOW.  EVEN IF THAT WAS SOMETHING THE COURT WAS INCLINED TO DO, IT'S SOMETHING THAT SHOULD AWAIT A MUCH LATER TIME IN THE CASE.

I MEAN, IN MY EXPERIENCE, PEOPLE DON'T EVEN MAKE BIFURCATION TRIAL MOTIONS, WHICH IS ESSENTIALLY WHAT THEY'RE DOING HERE.  THEY'RE AGREEING TO DISCOVERY ON EVERYTHING.  SO, IN MY EXPERIENCE, YOU DON'T EVEN ADDRESS HOW YOU'RE GOING TO TRY THE DIFFERENT ISSUES UNTIL YOU GET PAST SUMMARY JUDGMENT, YOUR HONOR.

SO -- SO FOR ALL OF THOSE REASONS, WE THINK BIFURCATION DOESN'T MAKE ANY SENSE HERE, AND WE THINK THE MOST EFFICIENT WAY FOR THE COURT TO PROCESS THIS IS DO ALL THE DISCOVERY TOGETHER, JUST HAVE THESE DATES JUST LIKE A REGULAR CASE, AND IF SOMETHING POPS UP, THE PARTIES AGREE ON, HEY, THIS WOULD BE EFFICIENT TO DO THIS FIRST BECAUSE IT'S A GATING ISSUE OR SOMETHING LIKE THAT, THEN WE CAN ADDRESS IT ONCE WE HAVE THE CASE NARROWED AND WE KNOW WHAT'S GOING ON.  BUT RIGHT NOW WE SIMPLY AREN'T THERE.

AND SCHEDULING IT THAT WAY WILL INCREASE THE CHANCES OF SETTLEMENT.  THE WORK WILL GET DONE FASTER BECAUSE IT WILL GET ALL DONE IN PARALLEL INSTEAD OF SERIALLY.  AND YOU KNOW, IF THE PARTIES CAN'T WORK IT OUT, WE'LL DO A TRIAL, 12-DAY, TWO-WEEK TRIAL, MAYBE, ON ALL THE ISSUES THAT YOUR HONOR

1    DETERMINES ARE JUSTICIABLE BEFORE THE JURY.  AND THAT'S GOING

2    TO BE MUCH MORE EFFICIENT IN TERMS OF THE COURT'S RESOURCES

3    THAN SOME SORT OF SERIAL ISSUE-BY-ISSUE PROCEDURE.

4              **MR. PRITIKIN:**  YOUR HONOR, MAY I RESPOND TO THAT?

5              **THE COURT:**  YES, PLEASE.

6              **MR. PRITIKIN:**  FIRST, AS FAR AS THE CASE MANAGEMENT

7    CONFERENCE SCHEDULE THAT WE PROVIDED, OF COURSE, WE FILLED IN

8    THE DATES THERE BECAUSE THE ORDER REQUIRES IT, BUT WE SAID IN

9    IT THAT WE THINK THAT IT OUGHT TO BE BIFURCATED, AND THAT THE

10   LOGICAL WAY TO DO THIS WOULD BE TO STAY THE PATENT CLAIMS.

11             YOU KNOW, WE'RE FACING THE PROSPECT -- I MEAN, WE'RE

12   WILLING TO DO THE WORK.  WE GET PAID TO DO THIS, BUT WE'RE

13   TRYING TO DO IT IN AN EFFICIENT WAY.  WE'RE LOOKING AT THE

14   PROSPECT OF 22 *MARKMAN* HEARINGS ON THE 22 PATENTS, THEIR 11 AND

15   OURS.

16             WE THINK, AS I SAID, THAT'S GOING TO ULTIMATELY TAKE

17   US DOWN A CUL-DE-SAC THAT ISN'T GOING TO RESOLVE THE CASE, AND

18   THAT THE BETTER WAY TO DEAL WITH IT IS TO FIND A WAY TO GET THE

19   CORE FRAND ISSUES RESOLVED SO THAT THE PARTIES THEN HAVE THE

20   LICENSES THAT THEY'RE ENTITLED TO.

21             SPECIFICALLY, A COUPLE OF THE POINTS THAT

22   MR. VERHOEVEN MENTIONED AS TO WHETHER OR NOT THE COURT SHOULD

23   PROCEED TO DETERMINE WHAT THE FRAND RATE WOULD BE.  IF YOU LOOK

24   AT THEIR PRAYER FOR RELIEF, IN PARAGRAPH G OF THEIR

25   COUNTERCLAIM, THEY SAID SAMSUNG PRAYS THAT, G, THAT THE COURT

1    GRANT INJUNCTIVE RELIEF REQUIRING THAT HUAWEI MAKE AVAILABLE TO

2    SAMSUNG ALL OF ITS 3G AND 4G SEPS ON FRAND TERMS.

3          YOU CAN READ PARAGRAPH AFTER PARAGRAPH IN THE

4    500-PARAGRAPH COUNTERCLAIM THAT THEY FILED THAT REINFORCES THE

5    VERY POINTS THAT I'M MAKING.  THAT THE PARTIES ARE IN

6    OBLIGATION TO DO IT.  BOTH PARTIES ARE WILLING TO DO IT.  BOTH

7    PARTIES ARE ENTITLED TO LICENSES FROM THE OTHER SIDE.

8          THIS IS DIFFERENT.  THIS IS NOT A SITUATION WHERE YOU

9    HAVE TWO PARTIES WHO ARE NEGOTIATING A CONTRACT AND THERE'S AN

10   OPEN TERM THAT THEY CAN'T AGREE ON WHERE THEY COME TO THE COURT

11   AND THEY SAY, YOU KNOW, WE CAN'T DECIDE WHICH KIND OF CAR TO

12   BUY.

13         THAT IS NOT WHAT THIS IS BECAUSE OF THE OVERARCHING

14   FRAND REQUIREMENTS THAT ARE IMPOSED ON BOTH SIDES REQUIRING

15   THAT THEY PROVIDE THE LICENSE, AND THAT'S WHY THE DJ ACTION

16   HERE IS DIFFERENT FROM SIMPLY AN OPEN, UNRESOLVED, CONTRACT

17   TERM THAT EXISTS OUT THERE.  THERE'S A LEGAL REQUIREMENT HERE

18   THAT IS IMPOSED BY THE CONTRACTUAL COMMITMENTS THAT BOTH SIDES

19   MADE TO GRANT AND TO RECEIVE LICENSES ON FRAND TERMS.

20         AS TO THE QUESTION OF ALL OF THE PATENTS AND WHETHER

21   THEY'RE VALID, WHETHER THEY'RE INFRINGED, THEY KEEP COMING BACK

22   TO THAT.  THE TRUTH OF THE MATTER IS THEY'RE OBLIGATED TO GIVE

23   US A LICENSE TO THE SAMSUNG PATENTS ON FRAND TERMS, AND WE

24   DON'T HAVE TO LITIGATE THE VALIDITY OF ALL OF THEIR PATENTS.

25   WE DON'T HAVE TO GO THROUGH ALL OF THAT.

1          WE'RE ENTITLED TO THAT LICENSE ON FRAND TERMS,

2    WITHOUT HAVING TO GO THROUGH A PATENT-BY-PATENT LITIGATION OF

3    THOUSANDS OF PATENTS.

4          WHEN THE COURT VALUES THE PATENTS -- AND COURTS HAVE

5    DONE THIS.  YOU WOULD NOT BE THE FIRST WHO'S BEING ASKED TO DO

6    IT.  THAT'S ONE OF THE FACTORS THEY CAN TAKE INTO ACCOUNT, IS

7    HOW STRONG THE PATENT PORTFOLIOS ARE.  THERE ARE WAYS OF

8    PRESENTING THAT EVIDENCE.  BUT THERE'S A DISPUTE OUT THERE

9    BETWEEN THE PARTIES.  THERE'S A LEGAL REQUIREMENT THAT GOVERNS

10   IT, AND IT'S SOMETHING THAT CRIES OUT TO BE RESOLVED.

11         THAT'S WHY WE THINK THAT, AGAIN, THAT THE LOGICAL WAY

12   TO GO ABOUT THIS WOULD BE FOR THE COURT TO PUT THOSE ISSUES

13   FRONT AND CENTER.

14         NOW, WE THINK THAT IT WOULD BE BETTER TO JUST STAY

15   DISCOVERY ON THESE -- THE PATENT CLAIMS BOTH WAYS AND GET TO

16   THE CORE FRAND ISSUES.  THE ALTERNATIVE, IF THE COURT WANTS TO

17   PROCEED WITH DISCOVERY ON THE PATENT ISSUES -- WE DON'T HAVE A

18   STRONG OBJECTION TO THAT.  WE DON'T THINK IT'S PARTICULARLY

19   EFFICIENT.  WE THINK THAT THE *MARKMAN* HEARINGS THAT ARE

20   ENTAILED IN IT PUT AN UNNECESSARY AND UNDUE BURDEN ON THE

21   COURT, GIVEN THAT THE FRAND ISSUES ARE GOING TO RESOLVE THE

22   CASE ULTIMATELY.

23         BUT THE OTHER WAY OF APPROACHING IT WOULD BE TO LET

24   THE DISCOVERY PROCEED.  LET'S PUT OFF THESE *MARKMAN* HEARINGS,

25   AND LET'S STAGE THE TRIALS IN A WAY WHERE WE CAN GET A

1    RESOLUTION OF THE FRAND RATES BOTH WAYS AT SOME LOGICAL TIME.

2    NOW, WHETHER THAT'S A YEAR FROM NOW, A YEAR AND A HALF FROM

3    NOW, I DON'T KNOW.  IT DEPENDS UPON WHAT THE COURT'S SCHEDULE

4    AND DEPENDS UPON WHAT THE PARTIES CAN DO.

5            **THE COURT:**  MR. VERHOEVEN, DO YOU WANT LAST COMMENT

6    ON THIS?

7            **MR. VERHOEVEN:**  OH, SURE.  FIRST OF ALL, YOUR HONOR

8    22 *MARKMAN* HEARINGS ARE NOT NECESSARY.

9            **THE COURT:**  DID MR. JOHNSON JUST PASS YOU THAT NOTE?

10   I AGREE --

11           **MR. VERHOEVEN:**  OH, NO.  HE HAS A MORE SUBTLE POINT.

12           **UNIDENTIFIED SPEAKER:**  (UNDISCERNIBLE.)

13           **MR. VERHOEVEN:**  I'M SURE WE COULD.

14           **THE COURT:**  I'M SHOULD PRETTY SURE YOU CAN GET IT

15   DOWN TO ONE.

16           **MR. VERHOEVEN:**  YES, EXACTLY.

17           **THE COURT:**  WHICH IS WHAT WE'LL HAVE IN THIS CASE.

18           **MR. VERHOEVEN:**  EXACTLY, YOUR HONOR.

19           **THE COURT:**  GO AHEAD.

20           **MR. VERHOEVEN:**  THAT WAS MY FIRST POINT.

21           SECOND, WE STRONGLY, VEHEMENTLY DISAGREE THAT

22   THE ETSI CONTRACT CLAIMS SIMPLY REQUIRE US TO GIVE MONEY ON

23   FRAND TERMS.  THERE'S PREDICATE FINDINGS THAT NEED TO BE MADE

24   UNDER THAT.  AS I SAID BEFORE VALIDITY, INFRINGEMENT,

25   ELIGIBILITY FOR PATENTABILITY UNDER 101 AND ESSENTIALITY.

1          AND, YOU KNOW, THIS IS THE NOTE THAT MR. JOHNSON

2    PASSED ME, IS THE PLAINTIFF IS CHALLENGING VALIDITY

3    INFRINGEMENT, PRESUMABLY, AND ENFORCEABILITY ON OUR PATENTS.

4    WE HAVEN'T GOT THEIR REPLY YET, BUT I DOUBT VERY MUCH THEY'RE

5    STIPULATING TO ALL THOSE THINGS, AND THEY ARE GOING TO

6    ASSERT -- THEY HAVE A RIGHT TO THOSE PRELIMINARY DETERMINATIONS

7    AS WELL BEFORE WE GET TO DAMAGES OR REMEDY.

8          AND THAT IS THE WAY WE BELIEVE THAT MAKES MOST

9    LOGICAL SENSE TO PROCEED, YOUR HONOR, AND THAT WHAT PLAINTIFF

10   IS DOING IS ASKING THE COURT TO PUT REMEDY BEFORE LIABILITY,

11   PUT THE CART BEFORE THE HORSE, AND THAT WILL NOT STREAMLINE

12   THINGS.  IT WILL CAUSE MUCH MORE PROBLEMS THAN JUST DOING

13   EVERYTHING TOGETHER.

14          **THE COURT:**  ALL RIGHT.  SO I AM GOING TO THINK A

15   LITTLE HARDER ABOUT THIS.  MY INCLINATION REMAINS THE SAME,

16   AND -- SO I HAVE A -- AND THIS MAY BE FOR THE AUDIENCE MORE

17   THAN THE LAWYERS, BUT THE -- I HAVE THIS GENERAL NOTION THAT

18   FILING 22 LAWSUITS AGAINST EACH OTHER TO RESOLVE THIS ISSUE IS

19   NOT THE WISEST WAY OF DEALING WITH THE PROBLEM THAT YOU HAVE.

20          AND I GIVE -- I GIVE A SPEECH FROM TIME TO TIME THAT

21   NOBODY LISTENS TO, AND SO I DON'T EXPECT ANYBODY TO LISTEN TO

22   IT NOW, BECAUSE YOU ARE -- YOU REPRESENT THE CAPTAINS OF

23   INDUSTRY THAT DO SO MANY VALUABLE THINGS IN THIS COUNTRY.  IT'S

24   A TERRIBLE IDEA TO HAVE DECISIONS MADE BY, YOU KNOW, GENERALIST

25   JUDGES AND JURIES, WHERE THE LAWYERS, NOT THE PEOPLE WITH ANY

1    EXPERIENCE IN THE AREA, OFF THE JURY IN ORDER TO MAKE A

2    DETERMINATION.

3         I MEAN, THIS IS JUST -- THIS IS SILLY, AND THIS

4    PARTICULAR WAY THAT THIS CASE IS DEVELOPING DOESN'T SEEM VERY

5    SENSIBLE TO ME.

6         HOWEVER, I RECOGNIZE THAT THERE MAY BE -- THERE MAY

7    BE VALUE IF THERE WAS ONE CASE THAT COULD DECIDE EVERYTHING AND

8    THEN GET IT UP TO SOME APPELLATE COURT, THAT WOULD THEN SEND IT

9    BACK DOWN BECAUSE THE TRIAL JUDGE WOULD MAKE THE MISTAKES, AND

10   THEN IT WOULD GO UP, AND THEN IT WOULD GET REVERSED BY THE

11   SUPREME COURT, AND COME BACK DOWN, SO YOU WOULD BE DOING THAT

12   FOR TEN YEARS.  BUT IT WOULD BE BETTER THAN DOING THAT IN TEN

13   PLACES IN THE UNITED STATES OR 12 IN CHINA, WHATEVER IT IS.

14   THIS DOES NOT SEEM WISE.

15        THAT SAID, I GET PAID TO COME HERE EVERY DAY AND DEAL

16   WITH THE CASES THAT ARE IN FRONT OF ME.  I THINK WHAT I'M GOING

17   TO DO NOW IS I'M GOING TO SET A SCHEDULE AS IF I HAVE DECIDED

18   THAT WE'RE GOING TO DO THE CASE THE WAY THAT EVERY OTHER CASE

19   GETS DONE.

20        I WILL LOOK MORE CLOSELY AT THE PLEADINGS -- WHICH I

21   HAVE NOT GONE IN ANY DETAIL THROUGH THE PLEADINGS, AND I'LL

22   REREAD THE CASES AND -- BUT I'M GOING TO SET A SCHEDULE,

23   ASSUMING THAT WE'RE NOT GOING TO BIFURCATE.

24        **MR. PRITIKIN:**  YOUR HONOR, MAY WE SUBMIT A SHORT

25   BRIEF WITHIN A WEEK ON THIS SUBJECT OF -- BECAUSE SOME OF THESE

```
 1   THINGS IN THE -- THERE ARE ARGUMENTS THAT ARE MADE IN THE CASE

 2   MANAGEMENT STATEMENT THAT -- BUT IT'S NOT IN AS ORGANIZED A

 3   WAY --

 4           THE COURT:  SO IF YOU WOULD LIKE TO SUBMIT A

 5   FIVE-PAGE BRIEF, AND YOU CAN RESPOND IN FIVE PAGES A WEEK

 6   LATER, THAT'S FINE.

 7           MR. VERHOEVEN:  ALL RIGHT.  THANK YOU.

 8           THE COURT:  SO YOU SUBMIT IT A WEEK FROM TODAY, AND

 9   THAT WILL REMIND ME THAT I ACTUALLY HAVE TO MAKE A FINAL

10   DECISION ON THIS.

11           BUT LET'S ASSUME FOR THE MOMENT -- LET'S SET A

12   SCHEDULE AS IF CONTINGENT ON MY CONTINUING TO THINK THAT

13   BIFURCATION IS NOT GOING TO HAPPEN.

14           IF THAT'S THE CASE -- SO GOING THROUGH CLAIM

15   CONSTRUCTION, I WOULD HAVE -- THE ONLY DATE THAT I WOULD CHANGE

16   WOULD BE THE TECHNOLOGY TUTORIAL ON JULY 14TH INSTEAD OF 17TH

17   AND THE MARKMAN HEARING ON THE 21ST.

18           THEN I MADE SOME ASSUMPTIONS ABOUT HOW QUICKLY I

19   WOULD RULE, WHICH IS PROBABLY A MISTAKE.  BUT I'M GOING TO SET

20   END DATES THAT I -- THAT I AM GOING TO TRY TO HIT THE MARK ON,

21   AND THAT WOULD BE A TRIAL ON SEPTEMBER 17TH OF 2018.

22           IS THERE ANY CONFLICT IN THAT DATE?

23           MR. PRITIKIN:  SO FAR OUT, I DON'T BELIEVE SO, YOUR

24   HONOR.

25           THE COURT:  IT'S FAR OUT, BUT I -- PEOPLE COME IN
```

1    HERE ALL THE TIME AND TELL ME THAT THEY'RE BOOKED UNTIL, YOU

2    KNOW -- THE EARTH IS SHAKING AGAIN.

3          **MR. VERHOEVEN:**  YOUR HONOR, I THINK WE'RE OKAY WITH

4    THAT DATE.  I'LL HAVE TO CHECK WITH OTHER PEOPLE, BUT IF

5    THERE'S A PROBLEM -- IS IT OKAY IF WE JUST LET YOU KNOW RIGHT

6    AWAY?

7          **THE COURT:**  LET ME KNOW THIS A WEEK.  SO

8    SEPTEMBER 17TH.

9          PRETRIAL WOULD BE AUGUST 20TH.

10          **MR. PRITIKIN:**  AND, YOUR HONOR, WE'LL LET YOU KNOW

11    PROMPTLY IF THERE'S A PROBLEM WITH THESE DATES.

12          **THE COURT:**  AND THEN WE'LL HAVE TO DISPOSITIVE

13    HEARINGS AND *DAUBERTS* ON MAY 2ND.  THOSE WERE HEARING DATES,

14    AND WE'LL WORK THE SCHEDULE BACK.  YOU CAN WORK THE SCHEDULE

15    BACK, AND THAT WILL BE SUBJECT TO WHEN I GET MY CLAIM

16    CONSTRUCTION ORDER OUT, BUT I'M -- MY HOPE IS THAT I WILL GET

17    IT OUT WITHIN ROUGHLY A MONTH OF THE TIME THAT IT'S SUBMITTED

18    TO ME.

19          **MR. VERHOEVEN:**  YOUR HONOR, I DO KNOW THAT I HAVE A

20    TRIAL IN APRIL OF 2018.  IF WE COULD PUSH THAT BACK BY JUST A

21    COUPLE OF WEEKS, IT WOULD HELP ME QUITE A BIT, THE HEARING ON

22    SUMMARY JUDGMENT AND *DAUBERT*.

23          **THE COURT:**  WELL, WHY DON'T -- LET'S HOLD THAT

24    THOUGHT, AND AFTER THE CLAIM CONSTRUCTION ORDER COMES OUT,

25    WE'LL SET ALL OF THE DATES.  I'VE GIVEN MYSELF A LITTLE LEEWAY

1   IN THERE.  BUT I'M EXPECTING, IF THIS CASE IS GOING TO GO, I'M

2   GOING TO SEE A LOT OF PAPER COMING IN ON THE *DAUBERTS* AND ON

3   THE SUMMARY JUDGMENT, WHICH MAY TAKE ME LONGER THAN USUAL.  SO

4   I WANTED -- SO I GAVE MYSELF FOUR MONTHS INSTEAD OF THREE.  SO

5   THERE'S SOME PLAY IN THERE, BUT NOT A TON.

6        ALL RIGHT.  WITH THAT, NOW, WHAT ABOUT ADR JUST IN

7   GENERAL?  WHERE ARE YOU?

8        **MR. VERHOEVEN:**  THE PARTIES HAVE AGREED TO --

9   SORRY -- DO YOU MIND IF I -- THE PARTIES HAVE AGREED TO PRIVATE

10  MEDIATOR, AND THE PARTIES BELIEVE THE BEST TIME TO DO THAT

11  WOULD BE AFTER THE *MARKMAN* ORDER, IF THAT'S OKAY WITH YOUR

12  HONOR.

13       **THE COURT:**  THAT'S FINE WITH ME.  IT'S INCONSISTENT

14  WITH TRYING TO GET SOMETHING DONE.  IT SEEMS -- IT SEEMS LIKE

15  AN ODD WAY FOR PEOPLE WHO ARE AS EXCITED IN RESOLVING THIS TO

16  DO IT, BUT I WON'T -- EVERY OTHER -- I TOLD YOU I WAS GOING TO

17  TREAT IT LIKE A REGULAR OLD PATENT CASE, AND I KNOW THAT IF

18  THIS WAS ABOUT 11 PATENTS, YOU'D WANT TO KNOW WHAT I WAS GOING

19  TO SAY IN CLAIM CONSTRUCTION.  SO I WON'T MAKE YOU DO SOMETHING

20  DIFFERENT THAN THAT.

21       I WOULD ENCOURAGE YOU TO THINK MORE BROADLY ABOUT

22  THIS CASE AND WHAT IS IN THE BEST INTEREST OF YOUR CLIENTS.

23  AND IF -- I HAD BEEN THINKING THAT YOU MIGHT BE WELL SERVED BY

24  HAVING A MAGISTRATE JUDGE IN THIS COURT TRYING TO COORDINATE

25  YOUR THINKING ON THIS, BUT I'M NOT GOING TO FORCE YOU TO DO

1   THAT IF WHAT YOU REALLY WANT TO DO IS MAKE ME ISSUE A CLAIM

2   CONSTRUCTION ORDER, WHICH I -- NO SIDE WILL EVER LIKE ANY OF MY

3   CLAIM CONSTRUCTION ORDERS.  I'M REALLY CONFIDENT OF THAT.

4          **MR. PRITIKIN:**  YOUR HONOR, WE'RE CERTAINLY OPEN IT TO

5   AT ANY STAGE.  I MEAN, WE THINK THE SENSIBLE RESOLUTION -- I'M

6   NOT GOING TO REPEAT MYSELF -- IS FOR THE PARTIES TO ENTER INTO

7   A MUTUAL CROSS-LICENSE ON ALL OF THESE PATENTS.  WE'RE OPEN TO

8   ANY TIME MEETING WITH A MEDIATOR.

9          PERSONALLY, I DON'T THINK -- BECAUSE I'M NOT SURE THE

10  CASE IS NECESSARILY ABOUT THOSE 22 PATENTS THAT ARE ASSERTED

11  HERE -- THAT THAT'S GOING TO BE TERRIBLY MEANINGFUL IN THE

12  CONTEXT OF AN ULTIMATE RESOLUTION OF THE CASE AND THAT WE WOULD

13  BE OPEN TO HAVING A MEDIATION EARLIER THAN THAT.

14         **MR. VERHOEVEN:**  WELL, YOUR HONOR --

15         **MR. PRITIKIN:**  IT HAS TO BE DONE BY AGREEMENT OF THE

16  PARTIES.  LIKE SO MANY OF THESE THINGS, IF THE PARTIES DON'T

17  WANT TO TALK AND WANT TO RESOLVE IT, THEN MEDIATIONS GENERALLY

18  ARE NOT VERY PRODUCTIVE.

19         **THE COURT:**  I'VE NOTICED THAT.

20         **MR. PRITIKIN:**  BUT WHAT I WOULD PROPOSE, YOUR HONOR,

21  IS THIS:  MAYBE WE SHOULD TALK FURTHER WITH MR. VERHOEVEN AFTER

22  THE HEARING AND SEE WHETHER THE PARTIES THINK IT MAKES SENSE TO

23  TRY TO SCHEDULE SOMETHING AT AN EARLIER DATE.

24         **THE COURT:**  WHY DON'T YOU DO THAT?

25         **MR. VERHOEVEN:**  THAT'S FINE.  I MEAN, JUST FOR THE

1    RECORD, AS WE STATED IN OUR CMC STATEMENT, WE PROPOSED STAYING

2    EVERYTHING FOR 90 DAYS TO TRY TO DO SETTLEMENT, WHICH IS

3    REJECTED.  BUT I'M PERFECTLY HAPPY, IF YOUR HONOR THINKS

4    EARLIER MEDIATION WOULD MAKE SENSE, WE'LL DO IT, YOUR HONOR,

5    SO...

6           **THE COURT:**  WELL, SO I -- I WANT YOU TO THINK ABOUT

7    WHETHER YOU CAN IN GOOD FAITH SIT DOWN AND TRY TO WRESTLE SOME

8    OF THE ISSUES.  AND IF YOU CAN DO THAT, THEN I WANT YOU TO DO

9    IT.  AND I'M -- I THINK STAYING THINGS FOR 90 DAYS WOULD BE

10   FINE.  IT WOULD MAKE SENSE TO ME, BUT I'M NOT GOING TO REQUIRE

11   IT IN THIS CASE.

12          IF YOU WANT ONE OF THE MAGISTRATE JUDGES IN THIS

13   COURT TO BE SITTING WITH YOU AND YOUR CLIENTS, I THINK I CAN

14   ASSURE YOU THAT THAT -- THAT COULD HAPPEN.  BUT IF YOU DON'T,

15   IF YOU HAVE A PRIVATE MEDIATOR THAT YOU'RE COMFORTABLE WITH AND

16   WHO'S KNOWLEDGEABLE, BY ALL MEANS, USE THAT PERSON.

17          BUT -- SO IF YOU DECIDE THAT YOU WOULD LIKE TO HAVE A

18   MAGISTRATE JUDGE BE APPOINTED NOW FOR SETTLEMENT, I WILL DO

19   THAT.  AND JUST LET MS. DAVIS KNOW.  IF YOU DECIDE THAT YOU

20   WANT THE PRIVATE MEDIATOR TO START WORKING ON THINGS, LET

21   MS. DAVIS KNOW.  BUT I'M NOT GOING TO ORDER ANYTHING ONE WAY OR

22   ANOTHER.  OR DON'T LET HER KNOW, AND I'LL JUST SEE YOU THE NEXT

23   TIME I SEE YOU.  AND THEN I'LL ASK YOU ABOUT THIS, AND YOU CAN

24   TELL ME WHY YOU'RE BACK.

25          OKAY.  SO THAT'S -- I JUST -- I REALLY THINK THAT

1   THIS IS -- IT WOULD BE WISE TO MAKE AN EFFORT TO RESOLVE 22

2   CASES AROUND THE WORLD AND MOVE ON WITH SOMETHING ELSE THAT'S

3   MORE PRODUCTIVE.

4          SO, FINALLY, WITH RESPECT TO DISCOVERY, IN THIS CASE,

5   YOU HEARD MY OFFHAND COMMENT.  I'M NOT, AT THE MOMENT, GOING TO

6   APPOINT A MAGISTRATE JUDGE FOR DISCOVERY, BECAUSE I WANT TO SEE

7   WHO'S BEING UNREASONABLE THE FIRST TIME YOU HAVE A DISPUTE.

8   BUT THEN I'LL PROBABLY SEND IT TO A MAGISTRATE JUDGE IF -- OF

9   COURSE, MAYBE YOU WON'T HAVE DISPUTES, AND THAT WOULD BE GREAT,

10  BUT -- BUT THAT'S WHAT I'M -- I'M INCLINED TO THINK THAT WOULD

11  BE -- THAT THAT'S WHAT I'M GOING TO DO.

12         SO IF YOU DO HAVE -- IF YOU RUN A CROPPER EARLY, SIT

13  DOWN, LEAD COUNSEL, WORK THROUGH THE ISSUES, AND THEN DISTILL

14  THEM IN A WAY THAT I WILL UNDERSTAND AND IN A FIVE-PAGE LETTER,

15  AND I WILL DO MY BEST TO RESOLVE IT.

16         **MR. VERHOVEN:**  WE THINK THAT'S THE BEST WAY TO

17  PROCEED AS WELL, YOUR HONOR.

18         AND I SHOULD SAY THAT MR. PRITIKIN AND MYSELF HAVE

19  BEEN ADVERSE TO EACH OTHER MULTIPLE TIMES, AND I ANTICIPATE

20  THAT HOPEFULLY THERE WILL BE NOT SO MANY DISPUTES.

21         **THE COURT:**  THAT WOULD BE A GREAT THING.  ZERO IS A

22  GOOD THING TO SHOOT FOR.

23         **MR. PRITIKIN:**  WE'LL WORK ON IT, YOUR HONOR.

24         **THE COURT:**  ALL RIGHT.  IS THERE ANYTHING ELSE THAT

25  WE OUGHT TO TALK ABOUT WHILE PEOPLE ARE HERE TODAY?

1          **MR. VERHOEVEN:**  NO, YOUR HONOR.

2          **MR. PRITIKIN:**  NO, I DON'T BELIEVE SO.

3          **THE COURT:**  ALL RIGHT.  THANK YOU ALL.  GOOD LUCK.

4          **MR. VERHOEVEN:**  THANK YOU, YOUR HONOR.

5          **UNIDENTIFIED SPEAKER:**  THANK YOU, YOUR HONOR.

6          (PROCEEDINGS ADJOURNED AT 3:00 P.M.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>**CERTIFICATE OF TRANSCRIBER**</u>

I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE ABOVE MATTER.

I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR, RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE ACTION.

*Jncolumbini*

JOAN MARIE COLUMBINI

SEPTEMBER 16, 2016