```
                    UNITED STATES DISTRICT COURT

                   NORTHERN DISTRICT OF CALIFORNIA

         HONORABLE WILLIAM H. ORRICK, U.S. DISTRICT JUDGE

                              - - -

 HUAWEI TECHNOLOGIES COMPANY, LTD.,        )
 HUAWEI DEVICE USA, INC., and              )
 HUAWEI TECHNOLOGIES USA, INC.,            )
                                           )
                 Plaintiffs and            )
                 Counterclaim Defendants,  )   Case No.
                                           )
           vs.                             )   3:16-CV-02787
                                           )
 SAMSUNG ELECTRONICS COMPANY, LTD.,        )
 SAMSUNG ELECTRONICS AMERICA, INC.,        )
                                           )
                 Defendants and            )
                 Counterclaim Plaintiffs,  )
                                           )
           and                             )
                                           )
 SAMSUNG RESEARCH AMERICA,                 )
                                           )
                 Defendant,                )
                                           )
           vs.                             )
                                           )
 HISILICON TECHNOLOGIES COMPANY, LTD.,     )
                                           )
                 Counterclaim Defendant.   )
 _____)
```

*TRANSCRIPT OF THE OFFICIAL*
*ELECTRONIC SOUND RECORDING 1:59 P.M. – 2:19 P.M.*
*CASE MANAGEMENT CONFERENCE*
*SEPTEMBER 26, 2017*
*SAN FRANCISCO, CALIFORNIA*

(APPEARANCES ON PAGE 2)

TRANSCRIBED BY:   VICTORIA L. VALINE, CSR 3036, RMR, CRR
                  VictoriaValineCSR@gmail.com

```
APPEARANCES:

FOR PLAINTIFFS and COUNTERCLAIM DEFENDANTS:

        SIDLEY AUSTIN, LLP
        Attorneys at Law
        BY:  Michael J. Bettinger, Esq.
             Curt Holbreich, Esq.
             Kevin O'Brien, Esq.
        555 California Street, Suite 2000
        San Francisco, California 94104
        415-772-1200   Fax:  415-772-7400
        Email:  Mbettinger@sidley.com


FOR DEFENDANT and COUNTERCLAIM PLAINTIFFS:

        QUINN, EMANUEL, URQUHART, OLIVER & HEDGES, LLP
        Attorneys at Law
        BY:  Victoria F. Maroulis, Esq.
             Iman Lordgooei, Esq.
        555 Twin Dolphin Drive, Fifth Floor
        Redwood Shores, California 94065
        650-801-5000   Fax:  650-801-5100
        Email:  Victoriamaroulis@quinnemanuel.com
```

UNITED STATES DISTRICT COURT

*SAN FRANCISCO, CALIFORNIA; SEPTEMBER 26, 2017*

- - -

(TRANSCRIBER'S NOTE: Due at times to counsels' failure to identify themselves when speaking, certain speaker attributions are based on educated guess.)

--o0o--

THE CLERK: Calling civil matter 16-2787, Huawei Technologies Company, Ltd. and Samsung Electronics Company, Ltd.

Counsel, please come forward and state your appearance.

MR. BETTINGER: Good afternoon, your Honor. Mike Bettinger along with my colleagues Curt Holbreich and Kevin O'Brien for plaintiff Huawei.

THE COURT: Great. Welcome.

MS. MAROULIS: Good afternoon, your Honor. Victoria Maroulis with Quinn Emanuel for Samsung, and with me is my colleague Iman Lordgooei.

THE COURT: Great. Welcome.

So I have four things on my mind, and then you can tell me whatever is on yours.

The first one is, I saw that Huawei filed a motion for a letter request, which is fine. I'll grant that.

And then the issue -- the question that I had was -- and I didn't talk about it with Ms. Davis either, was on the service of it and how that is correctly effectuated. And I thought

1  either -- so Mr. Bettinger, I don't know whether you had a
2  thought about that?
3      I was going to otherwise instruct you to work with
4  Ms. Davis to make sure that it gets done properly.
5        MR. BETTINGER:  I think those are wise instructions.
6  I -- I do know it becomes complicated.  We're also trying other
7  channels.
8        THE COURT:  I would hope so.
9        MR. BETTINGER:  In the event those other channels
10 don't work to use that process, so I need to check with the
11 team -- that's partially why Messrs. Holbreich and O'Brien are
12 here, they're part of the discovery team.
13       THE COURT:  Okay.
14       (Inaudible.)
15       THE COURT:  So just the -- I'll sign that, and we'll
16 do the right thing, but we just need a little -- I suspect we
17 need some help in making sure that happens.
18     So then the issue that was raised as a dispute in the case
19 management statement, I did mean products.  I didn't mean
20 product lines.  I think that is consistent with what Judge Koh
21 had said, not what she ended up doing, and I'm not sure how I
22 successfully narrow the case if I let there be 200 products or
23 product lines, so -- and how they could all be reasonably
24 evaluated in a two-week trial.  So that's what I'm -- that's
25 what I'm thinking there.

1          MR. BETTINGER:  Sure.  So the way this works is, this
2    is all dependent upon the baseband chip in the phone, all of
3    this technology that will be at issue is that way.
4          We've had source code reviewers -- there's two codes.
5    We're looking at -- Qualcomm made some of the chips, Samsung
6    made some of the chips.  Similarly for us, we made some,
7    Qualcomm made some of ours.
8          The code reviewers have been going through, and there's no
9    difference in what's the model numbers.  There's no difference
10   in the way they operate for this purpose.
11         So if you have a Galaxy S8, it might have four flavors to
12   it, but they all operate in the same way for purposes of this
13   case and that chip.  It might be different than the Galaxy S7,
14   which is a different code base, but our reviewers have been
15   going through it, but to say there are 200 products is not
16   right.
17         In the end that same analysis will apply across-the-board
18   for the Galaxy S8, and that's the way we've identified our
19   products.  And as a standard, it's not on a model number basis
20   because this is all dependent upon the baseband chip and the
21   functionality that's built into that.
22         So if we were to do it this way, you'd only have five --
23   and you only had five models, you might only have one product,
24   the Galaxy SE, and you would be leaving all these other ones
25   aside, and that makes little sense in this case.  So what we've

1  tried to do is, it's the same proof -- and I think this is what
2  happened in Apple, too, why they ended up going at the
3  generation level, because in the end it really didn't matter,
4  it's the same proof for all of those particular devices.
5        THE COURT:  Maybe I misunderstood the argument.  Did I
6  misunderstand?
7        MS. MAROULIS:  Your Honor, we agree with your prior
8  statement.  There are product families that Huawei accused and
9  which family, there are multiple different carriers.  And
10 without getting into any confidential details of who uses what,
11 there are some differences as to which chip sets, which
12 baseband processors they use.
13     Therefore, Galaxy 6 or Galaxy 3, for example, is multiple
14 different products.  Different carriers are customized
15 differently and have different chip sets.  That is what -- the
16 point that we made in our papers.
17     Now, counsel brought up Apple Samsung and that's -- I was
18 there, as your Honor saw, I cite a number of the pleadings.
19 The patents at issue were different.  They were operating
20 system patents, not SEP patents directed from Apple to Samsung.
21 So the proof -- the infringement reads were similar as to -- or
22 identical as to between different versions of the phone.  So
23 you could have multiple careers, but they have the same
24 operating system.
25        If your Honor look at some of the exhibits that were

1  attached, like Exhibit G, Apple actually did differentiate
2  between some of the carriers.  For example, Galaxy 2 they had
3  one product that was AT&T specific, the Skyrocket product, and
4  another one which was also Galaxy 2 but was Sprint specific.
5  So these are all different products, they're not just different
6  product numbers.  Carriers have their own specifications, and
7  carriers use different chip sets.
8      In the statement that we filed partially under seal, a
9  little bit more specific as to the chip set situation and the
10 baseband processors.  I hesitate to state it on record, but
11 that is why each of those product families contains multiple
12 products and not just one.
13          THE COURT:  Okay.
14          MR. BETTINGER:  Well, that's not how this case started
15 out.  We each had to identify our products and our infringement
16 contentions, and they identified them at the same level we did,
17 the generations.  That's the way it's usually done in the case.
18      To the extent that the code uses a particular baseband
19 processor, it's the same even if you have different models or
20 different carriers.  If it's using the same baseband processor,
21 it's the same functionality for purposes of these particular
22 patents because they're standard.  Everybody has to do it.  It
23 doesn't -- there's no distinction that's being made.
24      So within the S8, all of the different versions are
25 operating in the same way, and that's confirmed by -- we

1  checked with our two source code reviewers today, Mr. Tidwell,
2  who's been out in the field for over three months looking at
3  this code, and Mr. Garcia, who's also been doing it, and that's
4  what they've confirmed back.  We've been given one set of code
5  for this particular baseband chip that runs across these
6  multiple models and told this is how it operates.
7       So maybe there's a misunderstanding about what it means to
8  be a product, but when we started out the case, we all seemed
9  to agree.  We each identified it at the generation level.  It
10 seems to me now if you get down into the gradations of models,
11 you've reduced the case to maybe one phone, and that isn't
12 really going to serve anyone's purpose.  I don't think anyone
13 intended that, to get down to just arguing about that.  So this
14 was across -- keeping it at a product level like we all did in
15 our infringement.
16           MS. MAROULIS:  Actually, the infringement contentions
17 that Huawei served, they attached an Exhibit A, and in
18 Exhibit A they listed model by model number with specific
19 baseband processors.  So they, themselves, identified in a
20 model specific, product specific level as to the infringement
21 contention that Samsung served.
22      At the time it didn't have any additional information, so
23 it used "products" more generally, but now that we have more
24 information, both sides, both sides know what the products are,
25 which baseband processors each model uses, and it's appropriate

1  to narrow it down to products, because the whole purpose of
2  this exercise is to make the case more manageable for your
3  Honor for summary judgment and for the jury at trial.
4      If they have 22 products, it's very different than having
5  22 product families, each of which has multiple products that
6  have different infringement reads and some of them have
7  different damages, launch periods and such, but the
8  infringement reads is the most important one.
9          THE COURT:  The way -- so I -- there is a fundamental
10 disconnect in the things that you're saying to me about the
11 evidence, and I can't evaluate that as I'm sitting here.
12     Maybe the smart thing to do is to pick a product line, you
13 know, the 8 or -- you know, whatever it is -- whichever one you
14 want, and Mr. Bettinger, you -- what you described -- if what
15 you described is right, then that seems fine.  If it's -- if
16 the evidence is going to be the same across every model number
17 within the product line and it's not going to be taking more
18 time to deal with those products, that seems like the -- what
19 I'm talking about.
20     If that's not true and there are going to be, you know,
21 seven or eight different iterations and we're going to have to
22 have lots of evidence about each one of that, then I'd like to
23 do it -- then I would go down to the products, which is what I
24 was understanding from what I read, but I didn't go through all
25 the exhibits, so I don't have a -- I'm not totally up to speed

1  on that, but that's --
2           MR. BETTINGER:  That's fine.
3           THE COURT:  -- so that's what I want you to do.
4           MS. MAROULIS:  So your Honor would like us to go back
5  and meet and confer further on the specifics within the product
6  line?
7           THE COURT:  Yes.
8           MS. MAROULIS:  Yeah.
9           THE COURT:  So the whole idea for me is to have a case
10 that's done in two weeks, but that is as complete as it can be
11 so that -- and not confusing for the jury.  So not having too
12 many things that are being thrown at them.  But if the evidence
13 is going to be consistent across the line, let's take -- let's
14 bite off as much as we can in order to deal with the thing.
15 That's what I'd like to do.  Okay?
16          MS. MAROULIS:  Yes, your Honor.
17     When would you like to hear from the parties again on
18 this?
19          THE COURT:  Well, you tell me.  So the -- actually,
20 let's -- let's circle back to that when I finish my other two
21 points.  But I -- for my money, the sooner the better, but I
22 don't know, you've also got a lot of other things going on, but
23 this will impact your discovery and everything else.  So we
24 ought to make it clear, I would think.
25          MS. MAROULIS:  Your Honor, we'll take a week, but if

1  we can do it faster, we will submit the --
2          THE COURT:  A week is great.  And if there's a
3  problem, then just figure out how you think the most effective
4  way of bringing that to me is, whether it's in a joint letter,
5  whether it's in responding briefs, you know, what -- any way
6  that you would like to do that is okay by me.
7          MS. MAROULIS:  Thank you, your Honor.
8          THE COURT:  So -- and then here's my -- I've come up
9  with a bright idea, and that is, I'm going to appoint Judge
10 Spero to assist me in the management of this case.
11    I'm about to start a criminal gang trial that's going to
12 go for four months, and then I've got two antitrust MDL trials,
13 and then I'm going to have the second half of the gang trial.
14 So I'm probably going to be in trial for about a year, which
15 gets you right up to the time of your currently set trial date,
16 and so I'm not going to have the bandwidth to deal with
17 discovery disputes in general, but I'm going to -- I'm making
18 him -- I'm going to give him a broad portfolio to work with
19 you.  And I think he would be -- you've got Judge Westmore as a
20 settlement judge --
21         MS. MAROULIS:  That's right.
22         THE COURT:  -- and I'm not taking her off of that
23 unless, at some point, you decide that that's the -- you've
24 been working with Spero and you'd like to sort of move him into
25 settlement.  But one of the things I've been thinking about for

1  your case is you have -- it was described to me -- six or seven
2  cases around the world where you're fighting with each other,
3  and is this really -- is this case really the thing that you
4  want to be doing, or is there some other mechanism that you --
5  would be more useful?
6      You know, is there discovery -- and so this is --
7  Mr. Bettinger was at an IP conference down in Stanford that I
8  was at. I don't know whether you were there -- a month and a
9  half ago --
10         MS. MAROULIS: No, your Honor. I had a hearing that
11 day. Is that the one where in-house counsel and judges --
12         THE COURT: Yes.
13         MS. MAROULIS: -- talked about ways to make the
14 process better?
15         THE COURT: Ways to make the process better. All I
16 know -- and so that's -- I was thinking before about other
17 ideas. I was thinking well, maybe I should appoint an expert
18 for me to help deal with you, and -- but then I thought Judge
19 Spero is -- has had experience in working on some of these
20 larger cases, and I think he's a wise hand, and my friend. So
21 I think all of those things would be -- it would make him
22 effective at doing this. So I'm going to appoint him now.
23     He's -- in the short-term I know he's got a class action
24 that he's about to try soon, but he is -- he will set some date
25 up just to chat with you. And if you think, independently or

1  collectively, of things that he might be able to be useful in
2  besides discovery, you should use him in that way.
3         MS. MAROULIS:  Thank you, your Honor.
4     The parties actually have been pretty good about working
5  out most of the discovery disputes.  So you haven't seen as
6  much of us as --
7         THE COURT:  And I appreciate that.  All I know is that
8  I'm just not -- I'm going -- I'm going to banish, for the most
9  part, until, you know -- except for motions that I see, I'm
10 just not going to be around.  And I do think it would be useful
11 for your clients to be thinking broadly about how to deal with
12 this and other cases.
13        MR. BETTINGER:  Thank you, your Honor.
14        THE COURT:  So that's my -- I haven't quite decided
15 how I'm going to phrase the broad portfolio that Judge Spero
16 has, but that's -- it's broad and you can use it in a -- in the
17 way that you want.
18        MS. MAROULIS:  Your Honor, is Judge Spero going to be
19 deciding dispositive motions --
20        THE COURT:  No.
21        MS. MAROULIS:  -- or no?  This is going to be largely
22 discovery and case management?
23        THE COURT:  Discovery, case management, maybe
24 settlement, and anything else that you think would be useful
25 for him to be looking at to try to cut through things.

1    Then the final thing was the schedule that you've
2    proposed. So I'm happy to do -- to make the changes and the
3    dates that you -- that you wanted, and I'm just wondering if
4    those changes are made, do the other dates need to change?
5    You didn't change them because you don't want to change
6    them, but I'm just wondering, just given the schedule, whether
7    that all makes sense?
8          MS. MAROULIS: Your Honor, the parties tried to work
9    within the dates that the Court proposed. So the schedule, as
10   currently stands, should work with those dates. If that works
11   for the Court. It sounds like the Court might be -- maybe not
12   be around.
13         THE COURT: I am hoping that -- that I'm -- will have
14   shaken free. You know, there are these cases -- cases are
15   supposed to settle, most of them, and yours may not, but
16   hopefully, you know, maybe one or two of the antitrust cases
17   will. And I don't -- my criminal -- the second half of my
18   criminal gang trial is hung up in the Ninth Circuit, and the
19   Ninth Circuit may not have -- I've set a tentative trial date
20   for May 16 for the second one, and it may not have come down by
21   then. So -- so that might -- if that gets -- whenever that
22   comes down, that will take precedence over everything else.
23   Okay.
24         MR. BETTINGER: The dispositive motion and trial dates
25   where they are is good for the parties?

UNITED STATES DISTRICT COURT

1          THE COURT: Yes. Okay. I'm -- I am not moving them,
2    and -- so that gives us a hearing -- summary judgment hearing
3    on May 2nd. I don't think I'm going -- well, I don't -- I
4    don't plan on setting another case management conference
5    between now and then, and -- and then on May 2nd I'll have
6    quite a good idea of what my schedule is going to look like in
7    September.
8       So those were the things that were on my mind. So
9    Mr. Bettinger, is there anything else that we ought to talk
10   about?
11         MR. BETTINGER: No. Other than I would like to
12   express gratitude and compliment counsel on -- there have been
13   a number of issues behind the scenes that have been worked out.
14   It does require dialogue, and I think counsel from both sides
15   has been admirable the way it's been handled. We had this one
16   dispute we couldn't resolve and had to bring it to you, but
17   otherwise, it seems like that part of it is working and should
18   be acknowledged, because usually you're hearing people yell at
19   each other and it's been very professional.
20         MS. MAROULIS: I second that.
21         THE COURT: Is there anything else that we ought to
22   address while we're here?
23         MS. MAROULIS: No, your Honor.
24      The products versus product families is the only issue the
25   parties couldn't reach agreement on, and now we have guidance,

```
1    and we'll submit further limited paperwork.
2             THE COURT:  All right.  Great.
3             MS. MAROULIS:  Thank you, your Honor.
4             MR. BETTINGER:  Thank you, your Honor.
5             THE COURT:  Thanks very much.
6             (Whereupon the matter concluded at 2:29 p.m.)
7                            --o0o--
```

UNITED STATES DISTRICT COURT

CERTIFICATE OF TRANSCRIBER

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, no employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

*/s/ VICTORIA L. VALINE*
_____
Victoria L. Valine, CSR 3036, RMR, CRR
October 5, 2017