UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JOSEPH C. SPERO

| | |
|---|---|
| HUAWEI TECHNOLOGIES CO., LTD., ) | |
| HUAWEI DEVICE USA, INC., AND ) | |
| HUAWEI TECHNOLOGIES USA, INC., ) | |
| ) | |
| PLAINTIFFS / COUNTERCLAIMDEFENDANTS, ) | |
| ) | |
| V. ) | |
| ) | |
| SAMSUNG ELECTRONICS CO., LTD., ) | |
| SAMSUNG ELECTRONICS AMERICA, INC., ) | |
| ) | |
| DEFENDANTS / COUNTERCLAIMPLAINTIFFS, ) | |
| ) | |
| AND ) | NO. 16-CV-2787 WHO |
| ) | |
| SAMSUNG RESEARCH AMERICA, ) | SAN FRANCISCO |
| ) | CALIFORNIA |
| DEFENDANT, ) | FRIDAY |
| ) | OCTOBER 27, 2017 |
| V. ) | |
| ) | |
| HISILICON TECHNOLOGIES CO., LTD., ) | |
| COUNTERCLAIM-DEFENDANT. ) | |
| _____) | |

**TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND**

**RECORDING  12:58 P.M. – 1:47 P.M.**

*TRANSCRIBED BY:  JOAN MARIE COLUMBINI, CSR #5435, RPR*
*RETIRED OFFICIAL COURT REPORTER, USDC*

**APPEARANCES:**

**FOR PLAINTIFF**          SIDLEY AUSTIN, LLP
                          555 CALIFORNIA STREET, SUITE 2000
                          SAN FRANCISCO, CALIFORNIA 94104
                   **BY: MICHAEL J. BETTINGER, ESQUIRE**
                       **IRENE YANG, ESQUIRE**

                          SIDLEY AUSTIN, LLP
                          ONE SOUTH DEARBORN
                          CHICAGO, ILLINOIS 60603
                   **BY: DAVID T. PRITIKIN, ESQUIRE**
                       **DAVID C. GIARDINA, ESQUIRE**


**FOR DEFENDANT**          QUINN, EMANUEL, URQUHART & SULLIVAN
                          50 CALIFORNIA STREET, 22ND FLOOR
                          SAN FRANCISCO, CALIFORNIA 49111
                   **BY: CHARLES K. VERHOEVEN, ESQUIRE**
                       **CARL G. ANDERSON, ESQUIRE**

                          QUINN, EMANUEL, URQUHART & SULLIVAN
                          555 TWIN DOLPHIN DRIVE, FIFTH FLOOR
                          REDWOOD SHORES, CALIFORNIA 94065
                   **BY: VICTORIA MAROULIS, ESQUIRE**

```
1   FRIDAY, OCTOBER 27, 2017                    12:58 P.M.

2   (TRANSCRIBER'S NOTE: DUE AT TIMES TO COUNSELS' FAILURE TO

3   IDENTIFY THEMSELVES WHEN SPEAKING, CERTAIN SPEAKER

4   ATTRIBUTIONS ARE BASED ON EDUCATED GUESS.)

5                        ---O0O---

6                        PROCEEDINGS

7        THE CLERK:  WE ARE CALLING CASE NO. C 16-2787, HUAWEI

8   TECHNOLOGIES VERSUS SAMSUNG.

9        APPEARANCES, PLEASE.

10       MR. PRITIKIN:  GOOD AFTERNOON, YOUR HONOR.

11   DAVID PRITIKIN.

12       THE COURT:  YES.

13       MR. PRITIKIN:  MICHAEL BETTINGER, DAVID GIARDINA, AND

14   IRENE YANG ON BEHALF OF HUAWEI.

15       THE COURT:  WELCOME.

16       MR. VERHOEVEN:  GOOD AFTERNOON, YOUR HONOR.

17       CHARLES VERHOEVEN.  WITH ME IS VICTORIA MAROULIS AND

18   CARL ANDERSON ON BEHALF OF SAMSUNG.

19       THE COURT:  WELCOME.  ALL RIGHT.  GOOD TO SEE YOU ALL

20   AGAIN IN THIS CASE NOMINALLY ASSIGNED TO JUDGE ORRICK.  IT'S A

21   LITTLE BUSY FOR THE NEXT YEAR AND A HALF, SO HE ASKED ME TO

22   HELP HIM WITH IT.

23       TO SET THE PARAMETERS FOR WHAT WE ARE GOING TO TALK

24   ABOUT, YOUR SCHEDULE IS FINE WITH ME, WITH A COUPLE OF SLIGHT

25   MODIFICATIONS, WHICH I DIDN'T WRITE DOWN.  THE PRETRIAL AND THE
```

1    TRIAL DATES ARE GOING TO BE SLIGHTLY DIFFERENT, BUT IT WILL BE

2    PROXIMATE TO THOSE DATES, BUT THE REST OF THOSE DATES WERE

3    FINE.

4              KAREN, CAN YOU ASK --

5          **THE CLERK:**  JUDGE ORRICK'S CLERK --

6          **THE COURT:**  NO, I WANT YOU TO ASK SAM TO LOOK AT MY

7    EMAILS AND PULL UP -- OR MAYBE I CAN PULL IT UP RIGHT HERE.

8    THERE WE GO.

9              SO IN TERMS OF DISCUSSING THE OTHER THINGS, WE WERE

10   TALKING ABOUT THOSE TIME FRAMES, WE'VE GOT A LITTLE MORE TIME

11   TO DEAL WITH THINGS.  AND MOST OF WHAT I WANTED TO TALK ABOUT

12   TODAY IS THE PRODUCTS ISSUE, BUT BEFORE WE DO THAT, I WANTED TO

13   TALK ABOUT RESOLUTION.

14             I REALLY WANT TO TALK ABOUT WHAT YOU THINK ABOUT WHAT

15   PROCESS AND AT WHAT POINT IN TIME IS GOING TO BE THE

16   APPROPRIATE POINT IN TIME.  I DON'T KNOW -- I KNOW THERE'S -- I

17   DON'T KNOW WHAT'S GOING ON AROUND THE WORLD, SO I DON'T KNOW

18   WHAT THE APPROPRIATE TIME IS OR WHAT THE APPROPRIATE PROCESS

19   IS, BUT I'D BE INTERESTED IN YOUR THOUGHTS ON THAT.

20         **MR. VERHOEVEN:**  I'LL GIVE YOU A 50,000-FOOT PICTURE,

21   YOUR HONOR.

22         **THE COURT:**  THAT'S ALL I CAN TAKE.

23         **MR. VERHOEVEN:**  SO BEFORE THE LAWSUITS BEGAN, THERE

24   WAS SUBSTANTIAL NEGOTIATIONS BETWEEN THE PARTIES, SEVERAL

25   ROUNDS.  HUAWEI INSTIGATED LITIGATION WITHOUT NOTICE IN MAY OF

1    2016.  HERE IN THE NORTHERN DISTRICT THEY ASSERTED THEIR

2    COMPLAINT FOR INFRINGEMENT OF TEN PATENTS.  THEY ALSO ASKED FOR

3    A DECLARATORY RELIEF THAT SAMSUNG WAS -- THAT THE COURT DECREE

4    THAT SAMSUNG WAS NOT ALLOWED TO GET INJUNCTIONS WORLDWIDE

5    BECAUSE OF FRAND ACTIVITIES.

6              **THE COURT:**  RIGHT.

7              **MR. VERHOEVEN:**  AND THEY ALSO ASKED THE COURT TO

8    ENGAGE IN RATE SETTING WORLDWIDE.

9              **THE COURT:**  RIGHT.

10             **MR. VERHOEVEN:**  THEY ALSO DID NOT TELL THE COURT

11   ABOUT THEIR ACTIONS IN CHINA.

12             **THE COURT:**  SO LET'S STEP BACK A BIT.  NO SNIPING AT

13   EACH OTHER.  I'M NOT INTERESTED --

14             **MR. VERHOEVEN:**  OKAY.

15             **THE COURT:**  -- BECAUSE I'M NOT GOING TO COME OUT OF

16   THIS THINKING ONE SIDE IS BAD AND ONE SIDE IS GOOD.  SO WHEN

17   YOU SAY THEY DIDN'T DO THIS OR THEY DIDN'T GIVE NOTICE, I

18   JUST --

19             **MR. VERHOEVEN:**  OKAY.

20             **THE COURT:**  -- IT REFLECTS BADLY ON YOU, NOT ON THEM.

21             **MR. VERHOEVEN:**  OKAY.  THANK YOU, YOUR HONOR.

22             **THE COURT:**  YEAH.

23             **MR. VERHOEVEN:**  AROUND THE SAME TIME THEY FILED EIGHT

24   SEPARATE ACTIONS IN CHINA.

25             **THE COURT:**  OKAY.

1          **MR. VERHOEVEN:**  AND THE SOLE RELIEF THAT THEY SOUGHT

2    IN THOSE EIGHT ACTIONS WAS INJUNCTIVE RELIEF.

3          **THE COURT:**  OKAY.

4          **MR. VERHOEVEN:**  THE ASSERTIONS WERE ON STANDARD

5    ESSENTIAL PATENTS.  AND I DON'T WANT TO BE ACRIMONIOUS ABOUT

6    IT, BUT OUR VIEW IS THAT'S INCONSISTENT WITH WHAT THEY'RE DOING

7    IN THE UNITED STATES.

8          **THE COURT:**  OKAY.

9          **MR. VERHOEVEN:**  SO THAT'S BASICALLY THE SET UP, YOUR

10   HONOR.

11         **THE COURT:**  I SEE.

12         **MR. VERHOEVEN:**  THE EIGHT ACTIONS ARE STILL IN

13   PROCESS.

14         **THE COURT:**  OKAY.

15         **MR. VERHOEVEN:**  OUR ACTION IS STILL IN PROCESS.

16         **THE COURT:**  YEAH.

17         **MR. VERHOEVEN:**  EARLIER IN THE CASE THERE WAS A FIGHT

18   HERE --

19         **THE COURT:**  RIGHT.

20         **MR. VERHOEVEN:**  -- OR DISAGREEMENT ABOUT WHETHER THE

21   COURT SHOULD BIFURCATE OUT THE PATENT PORTION FROM THE

22   FRAND-RELATED ISSUES, AND THE PLAINTIFF HAD ASKED TO DO THAT,

23   AND JUDGE ORRICK HAD DENIED THAT REQUEST.  AND I THINK IT'S

24   BEEN BROUGHT UP THREE TIMES NOW AND DENIED THREE TIMES.  SO

25   WE'RE HEADED FOR ONE TRIAL.

1          **THE COURT:**  RIGHT.

2          **MR. VERHOEVEN:**  TWO WEEKS ON EVERYTHING.

3          **THE COURT:**  RIGHT.

4          **MR. VERHOEVEN:**  AND WE'VE HAD CLAIM CONSTRUCTION.

5          **THE COURT:**  RIGHT.

6          **MR. VERHOEVEN:**  WE'RE IN THE MIDDLE OF DISCOVERY

7    DOING DEPOSITIONS AND VERY BUSY.

8          AND THEN, YOUR HONOR HAS THE SCHEDULE.  SO THAT'S THE

9    BIG PICTURE, AS FAR AS I SEE IT.

10          **THE COURT:**  OKAY.  SO WHAT KIND OF SCHEDULE ARE THE

11   CHINESE ACTIONS ON?

12          **MR. VERHOEVEN:**  THEY'VE -- YOU KNOW, THEIR SYSTEM IS

13   COMPLETELY DIFFERENT.

14          **THE COURT:**  NOT SURPRISING.  RIGHT.

15          **MR. VERHOEVEN:**  I'M NOT SURE I CAN EVEN SAY THEY HAVE

16   A SCHEDULE.

17          **THE COURT:**  OKAY.

18          **MR. VERHOEVEN:**  BUT I CAN TELL YOU THAT THERE'S ONE

19   CASE THAT'S FARTHER ALONG THAN THE OTHERS, AND THAT ONE HAS HAD

20   TWO ROUNDS OF BENCH TRIALS, I GUESS IS WHAT YOU CALL IT.  YOU

21   KNOW, THEY HAVE AN INQUISITORIAL SYSTEM, NOT AN ADVERSARIAL

22   SYSTEM.

23          **THE COURT:**  RIGHT.

24          **MR. VERHOEVEN:**  SO --

25          **THE COURT:**  RIGHT.

```
1              MR. VERHOEVEN:  WE HAVE NOT BEEN PERMITTED, AS U.S.

2    PEOPLE, TO EVEN PARTICIPATE IN --

3              THE COURT:  RIGHT.

4              MR. VERHOEVEN:  SO WE'RE BANNED.

5              THE COURT:  RIGHT.

6              MR. VERHOEVEN:  SO WE'VE ONLY HEARD INDIRECT REPORTS,

7    BUT I DO NOT BELIEVE THERE'S BEEN A RULING ON THAT FIRST CASE.

8              THE COURT:  OKAY.

9              MR. VERHOEVEN:  MS. MAROULIS WOULD KNOW MORE IF YOU

10   ASK MORE DETAILED QUESTIONS BECAUSE --

11             THE COURT:  I'M JUST KIND OF -- HOW LONG DO THOSE

12   KINDS OF PROCEEDINGS TYPICALLY TAKE?

13             MS. MAROULIS:  YOUR HONOR, THERE IS NO SOLID SCHEDULE

14   THAT WE WOULD DO HERE, SO IT'S A LITTLE BIT HARD TO PREDICT.

15             THE COURT:  OKAY.

16             MS. MAROULIS:  THERE WAS, AS MR. VERHOEVEN SAID,

17   EVIDENCE TAKEN, BUT WE DON'T KNOW WHEN THE DECISION WILL COME

18   DOWN.

19             THE COURT:  RIGHT.

20             MS. MAROULIS:  AND THAT IS ONLY ONE OF MANY OTHER

21   STAGES.  THERE'S SOME SUBSEQUENT STAGES SIMILAR TO APPEALS, BUT

22   I'M NOT SURE THAT'S THE RIGHT WORD.  THIS IS ONLY ONE OF THE, I

23   BELIEVE, THREE ACTIONS BETWEEN PARTIES IN CHINA.  AND SO

24   THERE'S QUITE A BIT OF PROCEEDINGS LEFT.

25             THE COURT:  OKAY.
```

1          **MS. MAROULIS:**  AND WE LEARN ABOUT THEM AS THEY --

2          **THE COURT:**  YEAH.

3          **MS. MAROULIS:**  -- APPEAR, BUT WE DON'T HAVE THE

4   EQUIVALENT OF A DOCKET ORDER, SCHEDULING ORDER, TO SHOW YOUR

5   HONOR OR JUDGE ORRICK ABOUT WHAT'S GOING ON THERE.

6          **THE COURT:**  SURE, SURE, SURE.

7          **MR. PRITIKIN:**  THANK YOU, YOUR HONOR.

8          FROM OUR STANDPOINT, THE BIG PICTURE HERE IS

9   ULTIMATELY A CROSS LICENSE.  I MEAN, THAT'S WHERE WE OUGHT TO

10  BE GOING.

11         BOTH SIDES HAVE LARGE PORTFOLIOS OF ESSENTIAL

12  PATENTS, PATENTS THEY DECLARED.  BOTH SIDES HAVE SAID THEY'RE

13  WILLING TO LICENSE THEM TO THE OTHER, AND BOTH SAID THEY ARE

14  WILLING TO TAKE LICENSES ON TERMS THAT ARE FAIR, REASONABLE,

15  AND NONDISCRIMINATORY.

16         **THE COURT:**  OKAY.  JUST VALUE THEIR PORTFOLIOS

17  DIFFERENTLY?

18         **MR. PRITIKIN:**  THE PARTIES, CLEARLY.  I MEAN, THAT'S

19  WHAT'S HAPPENED IN THE NEGOTIATIONS, AND THAT'S WHY IT HASN'T

20  HAPPENED TO DATE.

21         **THE COURT:**  RIGHT.

22         **MR. PRITIKIN:**  THAT'S WHY IT WAS UNPRODUCTIVE TO

23  DATE.

24         WE HAVE SAID FROM THE VERY BEGINNING WE ARE WILLING

25  TO LET A NEUTRAL THIRD PARTY, BE IT A COURT OR AN ARBITRATOR,

1    DETERMINE WHAT THE FRAND RATES ARE BOTH WAYS AND TO LIVE BY IT.

2          **THE COURT:**  WE'RE NOT GOING TO NEGOTIATE THAT HERE?

3          **MR. PRITIKIN:**  NO.

4          **THE COURT:**  MY QUESTION TO YOU IS TIMING, ABOUT WHEN

5    THE BALANCE OF POWER WILL HAVE SHIFTED ENOUGH OR THE

6    INFORMATION FLOW WILL HAVE GOTTEN TO A POINT WHEN YOU CAN

7    SIT -- PEOPLE WILL BE IN A POSITION TO DO SOMETHING DIFFERENT

8    THAN THEY'VE BEEN WILLING TO DO UP TO THIS POINT.

9          **MR. PRITIKIN:**  AND I THINK THAT IN TERMS OF WHEN

10   THOSE THINGS ARE GOING TO HAPPEN -- OBVIOUSLY, WE'RE WILLING TO

11   MEDIATE AT ANY TIME, BUT THE QUESTION YOU'RE ASKING IS --

12          (SIMULTANEOUS COLLOQUY.)

13          **THE COURT:**  -- USEFUL.

14          **MR. PRITIKIN:**  WHAT'S GOING TO BE A USEFUL,

15   PRODUCTIVE TIME TO DO IT.

16          **THE COURT:**  YEAH.

17          **MR. PRITIKIN:**  MY UNDERSTANDING IS THE FIRST OF THE

18   DECISIONS IN THE CHINESE ACTIONS ARE LIKELY TO COME DOWN FAIRLY

19   SOON.  BUT THEY'RE CORRECT, WE DON'T HAVE A PRECISE TIMETABLE.

20   IS IT GOING TO BE NEXT MONTH?  IS IT GOING TO BE THREE MONTHS?

21   WE DON'T KNOW FOR SURE.

22          **THE COURT:**  OKAY.

23          **MR. PRITIKIN:**  I THINK IT'S GOING TO BE RELATIVELY

24   SOON THAT THE FIRST OF THE DECISIONS WILL BE ISSUED THERE.  AS

25   FAR AS THIS LITIGATION IS CONCERNED, YOU KNOW, WE'RE GOING TO

1    CONTINUE.  WE HAVE THE *MARKMAN* RULINGS.  WE'RE GOING TO BE

2    CONTINUING THROUGH FACT DISCOVERY NOW FOR SOME PERIOD OF TIME.

3            **THE COURT:**  RIGHT.  DISPOSITIVE MOTIONS IN AUGUST.

4            **MR. PRITIKIN:**  THAT'S RIGHT.

5            **THE COURT:**  NEXT YEAR.

6            **MR. PRITIKIN:**  BUT I'M NOT SURE --

7            **THE COURT:**  YEAH.

8            **MR. PRITIKIN:**  -- THAT THE ADDITIONAL DISCOVERY --

9            **THE COURT:**  RIGHT.

10           **MR. PRITIKIN:**  -- IS REALLY GOING TO TIP THINGS IN

11   TERMS OF THE QUESTION YOU'RE POSING --

12           **THE COURT:**  RIGHT.

13           **MR. PRITIKIN:**  -- ONE WAY OR ANOTHER.

14           **THE COURT:**  RIGHT, RIGHT.

15           **MR. VERHOEVEN:**  THE ONLY THING I'D AUGMENT ON THAT,

16   YOUR HONOR, I DON'T DISAGREE WE DON'T KNOW WHEN WE'RE GOING TO

17   GET A RULING, BUT IT COULD BE -- I THINK THE TRIALS ARE DONE IN

18   THIS ONE MATTER.  SO WE MIGHT GET A RULING SOONER.  WE MIGHT

19   GET IT LATER.  WE JUST DON'T KNOW.

20           BUT I WOULD ADD TO THAT THAT MY UNDERSTANDING OF THE

21   PROCEDURE, WHICH IS VERY LIMITED, IS THAT THERE'S STEPS THAT

22   THE ARE --

23           **THE COURT:**  SUBSEQUENT.

24           **MR. VERHOEVEN:**  -- SUBSEQUENT, AND IT'S NOT LIKE THE

25   U.S. COURT SYSTEM IN TERMS OF DEFERENCE --

1          **THE COURT:**  WE'VE ALWAYS GOT SUBSEQUENT STEPS.

2          **MR. VERHOEVEN:**  AND, YOU KNOW, WE HAVE ALSO -- WE

3    WERE NEGOTIATING BEFORE WE WERE SUED, AND WE CONTINUE TO

4    NEGOTIATE.  WE OBJECT TO HAVING TO NEGOTIATE UNDER THREAT OF

5    INJUNCTIVE RELIEF.  WE DON'T THINK THAT'S RIGHT.  BUT WE STILL

6    ATTENDED MEDIATIONS.  WE ATTENDED ONE IN -- THE LAST ONE WAS IN

7    CHINA.  AND WE'RE STILL TRYING TO, WITHOUT BEING INFLUENCED BY

8    THE THREAT OF INJUNCTIVE RELIEF --

9          **THE COURT:**  RIGHT.

10         **MR. VERHOEVEN:**  -- TO NEGOTIATE FAIRLY WITH THEM AND

11   SEE IF WE CAN COME UP WITH A RESOLUTION.

12         **THE COURT:**  OKAY.  SO YOU SEEM TO DIFFER ABOUT THE

13   FORUM, WHEN IT BECOMES USEFUL, YOU MIGHT USE.  I'M NOT SURE

14   WHAT THAT'S ABOUT.

15         **MR. VERHOEVEN:**  WELL, YOUR HONOR, I THINK FROM OUR

16   PERSPECTIVE --

17         **THE COURT:**  YEAH.

18         **MR. VERHOEVEN:**  -- THESE ARE INCREDIBLY COMPLEX

19   WORLDWIDE COMPANIES WITH MANY DIFFERENT BUSINESSES THAT ARE

20   CORPORATE CITIZENS OF THE WORLD.

21         **THE COURT:**  I'VE MET THEM.

22         **MR. VERHOEVEN:**  AND I KNOW -- I'M SORRY FOR THAT,

23   YOUR HONOR.

24         **THE COURT:**  OH, NO, NO, NO.  THAT WAS A FABULOUSLY

25   INTERESTING EXPERIENCE.

1          **MR. VERHOEVEN:**  BUT -- SO THE NEGOTIATION OF THESE

2     AGREEMENTS IS INCREDIBLY COMPLEX.

3          **THE COURT:**  YEP.

4          **MR. VERHOEVEN:**  IT VARIES NATION TO NATION OR

5     ECONOMIC REGION TO ECONOMIC REGION.  IT'S NOT JUST LIMITED TO

6     THE U.S., AND IT INVOLVES -- AS YOUR HONOR KNOWS, THESE ARE --

7     THESE HAVE TIME PERIODS.  SO, YOU KNOW, I THINK PAST AGREEMENTS

8     I'VE SEEN HAVE HAD TEN-YEAR TIME PERIODS.  I DON'T KNOW WHAT

9     THE PART -- I'VE FORGOTTEN EXACTLY WHAT THE PARTIES HAVE IN

10    MIND HERE.  BUT THAT NECESSARILY INVOLVES EACH SIDE PLACING A

11    BET OF WHAT'S GOING TO HAPPEN IN THE FUTURE.

12         A LOT OF TIMES THEY REGRET WHAT THEY DECIDE TO DO

13    BECAUSE OF THE EVOLUTION OF TECHNOLOGY OR THE EVOLUTION OF THE

14    MARKETPLACE, AND SO WE BELIEVE FOR THOSE REASONS AND MANY

15    OTHERS THAT THE MOST EFFECTIVE WAY TO GET A RESOLUTION IS PARTY

16    TO PARTY.  AND, YOU KNOW, THE IDEA OF HAVING SOME POOR JUDGE

17    TRY TO WORK THROUGH ALL THE INTERNATIONAL ISSUES AND THE

18    DIFFERENT LEGAL ISSUES, I JUST -- IT HASN'T BEEN PRODUCTIVE SO

19    FAR.

20         AND SO MY PERSONAL OPINION, I JUST THINK THAT IF WE

21    CAN GET THE PEOPLE TOGETHER AND GET THEM TO TALK -- MAYBE

22    THAT'S VIA A MEDIATOR OR A THIRD PARTY, BUT THESE ARE REALLY

23    BUSINESS JUDGMENT CALLS AND INTERNAL VALUATION CALLS, AND THE

24    IDEA THAT AN INDIVIDUAL FROM SOME INDIVIDUAL COURT WILL BE ABLE

25    TO FAIRLY AND ACCURATELY GO THROUGH ALL THESE DIFFERENT

1    JURISDICTIONS AND FIGURE OUT WHAT'S FAIR OR UNFAIR IS -- WELL,

2    FIRST OF ALL, THERE'S ALL KIND OF JURISDICTIONAL ISSUES.

3            **THE COURT:**  WELL, THAT WOULDN'T BE THE ROLE --

4            **MR. VERHOEVEN:**  YEAH.

5            **THE COURT:**  I KNOW ENOUGH TO KNOW THAT THAT'S NOT THE

6    ROLE.  THE ROLE IS TO BREAK DOWN COMMUNICATION BARRIERS.

7            **MR. VERHOEVEN:**  RIGHT.

8            **THE COURT:**  THAT'S THE ONLY ROLE OF A JUDGE OR ANYONE

9    ELSE.  THESE ARE, YOU KNOW, ESSENTIALLY COUNTRIES NEGOTIATING.

10   THERE ARE CERTAINLY ENTITIES THAT THINK OF THEMSELVES LIKE

11   COUNTRIES.  AND THEY'RE GOING TO DO WHAT IS, IN THEIR VIEW, IN

12   THEIR BEST INTERESTS.

13           BUT SOMETIMES, LIKE IN COUNTRIES, THERE ARE

14   COMMUNICATION BARRIERS THAT A MEDIATOR OR SOMEONE WHO IS

15   SKILLED IN HANDLING PEOPLE CAN HELP WITH, AND I DON'T KNOW WHAT

16   THE BARRIERS ARE.  I DON'T KNOW WHETHER THAT'S A USEFUL THING

17   OR NOT A USEFUL THINGS.  SOMETIMES IT IS, AND SOMETIMES IT

18   ISN'T.  THAT'S WHY I ASKED, AND I APPRECIATE YOUR ANSWER.

19           WHAT'S YOUR VIEW ON THAT?

20           **MR. PRITIKIN:**  YOU'RE ASKING ABOUT MEDIATION?

21           **THE COURT:**  YEAH.

22           **MR. PRITIKIN:**  BECAUSE MR. VERHOEVEN WAS TALKING

23   ABOUT THE JUDICIAL PROCEEDINGS.

24           **THE COURT:**  NO, NO.  HE'S TALKING ABOUT -- WHAT HE

25   SAID WAS THAT HE DIDN'T VIEW MUCH VALUE IN ADDING A MEDIATOR OR

1    A SETTLEMENT JUDGE, THAT'S THIS IS GOING TO BE -- OTHER THAN

2    PROVIDING SORT OF A FORUM FOR THE PARTIES TO MEET.

3         **MR. PRITIKIN:**  I THINK WE PROBABLY HAVE A DIFFERENT

4    VIEW ON THAT IN THE SENSE THAT MAYBE I'M AN OPTIMIST ABOUT

5    THESE THINGS HAVING BEEN THROUGH CASES THAT WERE DIFFICULT TO

6    SETTLE WHERE I THOUGHT SKILLED MEDIATORS BROUGHT A LOT OF

7    VALUE.  I'VE BEEN PRESENTLY SURPRISED MANY TIMES IN THE

8    COURSE --

9         **MR. VERHOEVEN:**  HE'S GOTTEN CYNICAL OVER THE LAST

10   FIVE YEARS.  THAT'S WHAT HAPPENS WHEN YOU --

11        **MR. PRITIKIN:**  WE CERTAINLY DON'T ATTACH ANY

12   PRECONDITIONS TO IT, YOUR HONOR.  WE'D BE PLEASED TO HAVE YOU

13   ACT AS THE SETTLEMENT JUDGE.  WE WOULD BE PLEASED TO HAVE

14   SOMEONE ELSE DO IT.  WE'RE REALLY QUITE OPEN.

15        **THE COURT:**  YEAH.

16        **MR. PRITIKIN:**  WE THINK THERE IS BENEFIT IN HAVING

17   THE PARTIES MOVE FORWARD WITH SOME TYPE OF MEDIATION.

18        **THE COURT:**  WELL, LET'S KEEP TALKING ABOUT IT.  I

19   DON'T THINK NOW IS THE TIME ANYWAYS, AND WE'RE GOING TO MEET

20   AGAIN, SO LET'S KEEP TALKING ABOUT IT.

21        PRODUCTS --

22        **MR. VERHOEVEN:**  MS. MAROULIS IS GOING TO HANDLE THAT

23   ARGUMENT, YOUR HONOR.

24        **MR. PRITIKIN:**  AND MR. BETTINGER IS GOING TO HANDLE

25   IT FOR OUR SIDE, YOUR HONOR.

1           **MS. MAROULIS:**  THEY HAND OFF THE HARD STUFF TO ME.

2           **THE COURT:**  I WAS GOING TO SAY THAT, BUT I'M GLAD YOU

3     DID INSTEAD.

4           SO HERE'S MY QUESTION.

5           **MR. BETTINGER:**  YEAH.

6           **THE COURT:**  WHERE'S THE MOST MONEY AT STAKE?

7           **MR. BETTINGER:**  HONEST ANSWER IS WE DON'T KNOW YET

8     BECAUSE WE'RE EARLY IN DISCOVERY.

9           **THE COURT:**  OKAY.  BUT --

10          **MR. BETTINGER:**  WE STILL NEED TO LOOK AT SOURCE CODE.

11    BUT --

12          **THE COURT:**  BUT, NO, I'M NOT TALKING ABOUT

13    INFRINGEMENT.  I'M TALKING ABOUT WHERE ARE THE GREATEST NUMBER

14    OF UNITS, RIGHT?

15          **MR. BETTINGER:**  RIGHT.

16          **THE COURT:**  SO ONE OF THE ISSUES THEY BRING UP IS

17    AT&T VERSUS, YOU KNOW, WHATEVER, VERIZON, ET CETERA, ET CETERA.

18          **MR. BETTINGER:**  YEAH.

19          **THE COURT:**  DOES SOME CARRIER OR ANOTHER DOMINATE THE

20    SALES?

21          **MR. BETTINGER:**  I THINK IF YOU JUST LOOKED AT IT,

22    VERIZON IS PROBABLY THE LARGEST OF THE CARRIERS IN THE U.S,

23    FOLLOWED BY AT&T, AND THEN IT DROPS OFF WITH SPRINT AND

24    T-MOBILE.

25          FROM OUR VANTAGE POINT, WHETHER YOU'RE TALKING ABOUT

1    A VERIZON PHONE OR AN AT&T PHONE, THEY'RE STILL USING THE SAME.

2              (SIMULTANEOUS COLLOQUY.)

3         **THE COURT:**  WE'LL TALK ABOUT THAT.  BUT I'M TALKING

4    ABOUT -- THERE ARE A LOT OF THINGS THAT GO INTO FIGURING OUT --

5         **MS. MAROULIS:**  YEAH.

6         **MR. BETTINGER:**  YEAH.

7         **THE COURT:**  -- HOW YOU WANT TO DO THE NARROWING.

8         **MR. BETTINGER:**  RIGHT.

9         **THE COURT:**  AND IT OCCURS TO ME THAT ONE OF THE

10   FACTORS THAT ONE MIGHT WANT TO THINK ABOUT IS MONEY.  WHERE --

11   IF WE'RE GOING TO BITE OFF AS MUCH AS WE CAN WITHOUT DRIVING

12   JUDGE ORRICK ANY CRAZIER THAN HE'S GOING TO BE ABOUT A PATENT

13   CASE THAT HE DOESN'T WANT TO TRY, WHAT DO WE BITE OFF?

14              SO IF TWO OF THE CARRIERS HAVE 80 PERCENT OF THE

15   PHONES THAT WE'RE TALKING ABOUT OR THE DEVICES THAT WE'RE

16   TALKING ABOUT, DEVICES, YOU KNOW, THAT NARROWS THE PROBLEM

17   SOMEWHAT.

18        **MS. MAROULIS:**  YOUR HONOR, WE DID PRODUCE THE SALES

19   DATA TO HUAWEI AS PART OF THIS BACK-AND-FORTH --

20        **THE COURT:**  YEAH.

21        **MS. MAROULIS:**  -- ON NARROWING, BECAUSE ONE OF THE

22   THINGS THEY ASKED FOR IS TO SEE THE SALES DATA, AND WE SUSPECT

23   BECAUSE OF THE VERY THING YOUR HONOR IS RAISING, WHICH IS WHAT

24   SELLS WHAT.  SO WE PRODUCED THE DATA BROKEN OUT BY THE MODEL

25   NUMBERS, BY CARRIERS, BY ALL THE INFORMATION THEY NEED.  SO

1    THAT PIECE IS THERE.

2              AND TO STEP BACK WHY WE'RE HAVING THIS NARROWING,

3    IT'S REALLY TWOFOLD.  ONE, WE WANTED TO HAVE THE NARROWING

4    EARLY IN THE CASE SO WE CAN PREVENT KIND OF A FREE-FOR-ALL VERY

5    LONG DISCOVERY AND BURDEN THE PARTIES.  BUT EVEN MORE

6    IMPORTANTLY, YOU HAVE THE NARROWING SO WE CAN PRESENT A

7    COHERENT CASE TO THE COURT ON SUMMARY JUDGMENT, TO THE JURY

8    DURING TRIAL.  SO THAT IS THE GOAL BEHIND THIS PROCESS, AND

9    THAT IS WHY WE PUSHED FOR IT EARLY ON.

10             **THE COURT:**  NO, NO, IT'S A GOOD IDEA.

11             **MS. MAROULIS:**  AND THAT'S WHY WE'RE STILL HERE.

12             AND THAT IS WHY WE WERE FORTHCOMING AFTER WE SPOKE

13   WITH JUDGE ORRICK.  MR. BETTINGER AND I APPEARED BEFORE HIM.

14   WE LAID OUT OUR RESPECTIVE ARGUMENTS.  AND HE SAID, WELL, YOU

15   SHOULD GO AND TALK TO EACH OTHER SOME MORE AND PICK A PRODUCT

16   FAMILY SO YOU CAN EXCHANGE THE INFORMATION AND YOU CAN SHOW

17   EACH OTHER EXAMPLES AND WHAT YOU'RE TALKING ABOUT.

18             SO THAT'S EXACTLY WHAT WE DID.  WE WENT BACK.  WE

19   GAVE THEM MORE TECHNICAL INFORMATION.  WE PRODUCED THE SALES

20   DATA.

21             **THE COURT:**  YOU STILL DISAGREE.

22             **MS. MAROULIS:**  WE STILL DISAGREE.  SO IT IS -- YOU

23   KNOW, IT NEEDS TO BE HANDLED SOON BECAUSE ONE OF THE THINGS --

24             **THE COURT:**  NO, NO.  I'M GOING TO HANDLE IT.  THAT'S

25   WHY WE'RE TALKING ABOUT IT.  BUT LET ME JUST -- WHERE DOES THE

1    SALES DATA SHOW THE PHONES ARE BY CARRIER?  NOT PHONES -- THE

2    DEVICES ARE BY CARRIER (INDISCERNIBLE)?

3         **MS. MAROULIS:**  YOUR HONOR, IT'S DIFFERENT FOR

4    DIFFERENT MODELS.  I DON'T HAVE THE SALES DATA RIGHT IN FRONT

5    OF ME, BUT THE DETERMINATION REALLY SHOULDN'T BE BASED ON WHICH

6    CARRIER MAKES MORE MONEY.  IT SHOULD BE BASED ON OTHER THAN THE

7    SAME PROOFS AT TRIAL OR DIFFERENT PROOFS.

8         **THE COURT:**  NO, NO.  THAT MAKES NO SENSE.  IF YOU

9    COULD NARROW IT -- YOU ARE GOING TO NARROW IT TO A PARTICULAR

10   PRODUCT, A NUMBER OF PRODUCTS, THAT, THOSE PRODUCTS -- YOU KNOW

11   THERE HAVE TO BE TEN PRODUCTS AT THE END OF THIS.

12        THE PROOF WITH RESPECT TO ANY OF ONE OF THOSE,

13   HOWEVER YOU DEFINE "PRODUCT," HAS TO BE ABOUT THE SAME.  OKAY.

14   I APPRECIATE THAT.  HOW YOU GET TO THOSE TEN YOU CAN DO THAT IN

15   ANY WAY YOU WANT.  AND ONE OF THE WAYS I THOUGHT OF IS THAT YOU

16   FIGURE OUT WHERE THE SALES ARE.  AND SO I DON'T KNOW.  DO YOU

17   KNOW WHERE THE SALES ARE?

18        **MR. BETTINGER:**  NOT BY CARRIER, YOUR HONOR.  AS I

19   UNDERSTAND IT, WE DON'T YET KNOW BY CARRIER.  WHAT WE DO KNOW

20   IS AT&T AND VERIZON USE DIFFERENT CHIPS.  SO THEY'RE GOING TO

21   BE DIFFERENT REGARDLESS.

22        **THE COURT:**  NO, NO.  I UNDERSTAND THAT.  BUT IF THE

23   TOTAL NUMBER OF DIFFERENT CHIPS BETWEEN AT&T AND VERIZON IS

24   FOUR, OR SOMETHING LIKE THAT, OR IS SIX, DEPENDING ON WHETHER

25   YOU DECIDE IT MATTERS THAT THEY'RE DIFFERENT QUALCOMM CHIPS --

1   AND, I DON'T KNOW, YOU'LL FIGURE THAT OUT AT SOME POINT WHETHER

2   THAT MATTERS -- YOU KNOW, YOU MAY BE ABLE TO NARROW IT TO THAT

3   GROUP, AND THEN IT'S JUST THAT NUMBER OF PRODUCTS, AND YOU'VE

4   ALREADY NARROWED IT DOWN.  I DON'T KNOW.  WHY ISN'T THAT --

5           **MS. MAROULIS:**  YOUR HONOR, I JUST CONFIRMED WITH

6   MY --

7           **THE COURT:**  YEAH.

8           **MS. MAROULIS:**  -- MY COLLEAGUE, MR. ANDERSON, THAT WE

9   PRODUCE DATA BY CARRIER.  SO THAT FINANCIAL DATA IS IN HUAWEI'S

10  POSSESSION.

11          **THE COURT:**  OKAY.  BUT TO MAKE SURE I WAS CLEAR,

12  BECAUSE MAYBE I WASN'T CLEAR ENOUGH ABOUT THIS, WITHIN EACH

13  CARRIER SOME USE DIFFERENT CHIPS FROM ANOTHER'S, BUT EVEN

14  THOUGH SOME MAY USE A PARTICULAR THIRD-PARTY CHIP, EACH

15  DIFFERENT MODEL NUMBER HAS A DIFFERENT BUILD I.D., MEANING

16  THERE'S DIFFERENT SOURCE CODE THAT ACCOMPANIES THAT CHIP.

17          **THE COURT:**  WHICH MAY OR MAY NOT BE MEANINGFUL --

18          **MR. BETTINGER:**  RIGHT.

19          **THE COURT:**  -- IN TERMS OF THE INFRINGEMENT, RIGHT?

20          **MS. MAROULIS:**  IT IS.  BUT JUDGE ORRICK DID ASK US TO

21  TALK ABOUT WHETHER THE PROOF IS GOING TO BE THE SAME OR NOT,

22  AND THE PROOF IS GOING TO BE DIFFERENT BECAUSE THE SOURCE CODE

23  IS GOING TO BE DIFFERENT.

24          **THE COURT:**  NO, NO.  UNLESS, ACTUALLY, THE RELEVANT

25  SOURCE CODE THAT DOES WHAT IS CLAIMED TO BE INFRINGING IS

1    IDENTICAL, EVEN WITHIN THE FACT THAT THE OVERALL SOURCE CODE

2    FOR THE QUALCOMM NUMBER 75 IS DIFFERENT FROM THE QUALCOMM 76.

3            **MS. MAROULIS:**  YOUR HONOR, WE JUST GOT THE SOURCE

4    CODE FROM THE THIRD PARTIES.

5            **THE COURT:**  I KNOW WE DON'T KNOW YET.

6            **MS. MAROULIS:**  SO WE DON'T KNOW A HUNDRED PERCENT IN

7    WHICH WAY THEY'RE DIFFERENT, BUT WE DO KNOW THEY'RE DIFFERENT

8    BECAUSE A BUILD I.D. IS BASICALLY LIKE A FILE NAME.  IT'S AN

9    IDENTITY OF THAT SOURCE CODE.

10           **THE COURT:**  I DON'T CARE WHETHER THEY'RE DIFFERENT,

11   THEY'RE NOT DIFFERENT IN MATERIAL WAYS, RIGHT?  YES?

12           **MS. MAROULIS:**  I MEAN, THAT'S CORRECT, YOUR HONOR.

13           **THE COURT:**  THAT'S CORRECT; WE DON'T KNOW YET?

14           **MS. MAROULIS:**  WE'RE LOOKING INTO THAT.  AND WE DID

15   OUTLINE SOME OTHER REASONS WHY THE PROOFS ARE GOING TO BE

16   DIFFERENT.  SO YOUR HONOR WAS ASKING ABOUT THE CARRIERS, AND

17   CARRIER SALES DATA, SO WE ADDRESSED THAT --

18           **THE COURT:**  NO, NO.  THAT'S WHY I'M ASKING ABOUT

19   CARRIERS AND CARRIER SALES DATA, BECAUSE WE'RE GOING TO GET

20   DOWN TO WHETHER -- MORE INFORMATION ABOUT WHETHER OR NOT THAT

21   MAKES ANY DIFFERENCE.  I'M NOT -- I DON'T KNOW ENOUGH, AND I

22   DON'T KNOW THAT YOU KNOW ENOUGH TO KNOW WHETHER OR NOT IN YOUR

23   NON-INFRINGEMENT CASE IT ACTUALLY MAKES ANY MATERIAL DIFFERENCE

24   THAT IT'S AT&T VERSUS VERIZON YET.  IT WOULD BE SURPRISING IF

25   YOU DID (INDISCERNIBLE) THIS EARLY.

1          **MS. MAROULIS:**  YOUR HONOR, THERE ARE SOME THINGS WE

2    DO KNOW ALREADY, AND THAT IS THAT DIFFERENT CARRIERS CONFIGURE

3    THE PRODUCTS DIFFERENTLY.  WE KNOW -- AND WE CITED AT LEAST ONE

4    EXAMPLE IN OUR PAPERS ABOUT THE FUNCTIONALITY THAT EXISTS IN

5    VERIZON BUT NO OTHER CARRIERS.

6          **THE COURT:**  THAT EXISTS IN VERIZON BUT NOT IN

7    CARRIERS BUT STILL IS AVAILABLE IN THE DEVICES?

8          **MS. MAROULIS:**  WE DON'T BELIEVE OTHER CARRIERS, THE

9    PHONES ARE ACTUALLY PERFORMING THE FUNCTION.

10          **THE COURT:**  PERFORMING THE FUNCTION.  HE'D PROBABLY

11    STIPULATE TO THAT.

12          **MR. BETTINGER:**  ACTUALLY, WE WOULD NOT.  YOU'RE

13    RIGHT, ALL THE PHONES HAVE THE CAPABILITY.  THE QUESTION IS --

14    THEY ARGUE ON THIS ONE PATENT THAT VERIZON IS THE ONLY ONE WHO

15    IMPLEMENTS.

16          IT TURNS OUT IN THE DEPOSITIONS LAST WEEK IN HONG

17    KONG, WE LEARNED THAT THAT'S NOT TRUE, THAT ACTUALLY IT'S NOT

18    LIMITED TO THIS MVMS.  IT'S ACTUALLY BROADER INFORMATION THAT

19    CAN BE IN THIS SUBFRAME OTHER THAN MVMS.  SO OUR BELIEF, THOUGH

20    YOU'RE RIGHT, YOUR HONOR, WE HAVE NOT COMPLETED ENOUGH

21    DISCOVERY TO KNOW FOR SURE --

22          **THE COURT:**  OKAY.

23          **MR. BETTINGER:**  BUT IT WOULD LOOK LIKE ALL THE PHONES

24    WOULD HAVE THAT PARTICULAR CAPABILITY TO USE THIS MVMS FN

25    SUBFRAME.

1          **THE COURT:**  BUT THE SIGNIFICANCE OF YOUR ARGUMENT

2   ABOUT THE IMPLEMENTATION BEING DIFFERENT, LEAVING ASIDE HIS

3   ARGUMENT ABOUT WHETHER IT'S TRUE, IF THE IMPLEMENTATION IS

4   DIFFERENT, THAT'S A DAMAGES QUESTION, ISN'T IT, NOT AN

5   INFRINGEMENT QUESTION?

6          **MS. MAROULIS:**  WELL, IT GOES BOTH TO DAMAGES AND

7   INFRINGEMENT.  THE DAMAGES PART IS THE EXTENT OF USE.  BUT IF

8   THE PRODUCT DOESN'T PRACTICE THE PATENT, THEN IT DOESN'T --

9   THAT GOES TO THE INFRINGEMENT.

10         **THE COURT:**  HOW THE CARRIERS UTILIZE -- SO HE'S NOT

11  RIGHT, THAT THERE'S THAT CAPABILITY WITHIN EACH OF THE PHONES

12  REGARDLESS?

13         **MS. MAROULIS:**  YOUR HONOR, SO A NUMBER OF PATENTS AT

14  ISSUE --

15         **THE COURT:**  YES.

16         **MS. MAROULIS:**  -- HAVE METHOD CLAIMS, RIGHT?  SO

17  MULTIPLE PATENTS THEY ACCUSE HAVE TO -- BROADLY SPEAKING, HAVE

18  TO DO WITH THE MOVEMENT OF THE PHONE FROM THE LEGACY NETWORKS

19  TO THE 4G LT NETWORKS.

20         FOR THESE METHOD CLAIMS, THEY ARE GOING TO HAVE TO

21  PROVE THAT A SPECIFIC PHONE IS CAPABLE FROM SWITCHING FROM ONE

22  TO ANOTHER AND IN WHICH WAY THAT SPECIFIC PHONE BY NETWORK IS

23  CAPABLE OF DOING THAT.  SO THAT'S -- YOU'RE RIGHT, YOUR HONOR,

24  IN AS FAR AS WE'RE STILL ADDUCING ALL THE DIFFERENT EVIDENCE,

25  BUT THAT IS THE FRAMEWORK --

1          **THE COURT:**  OKAY.

2          **MS. MAROULIS:**  -- UPON WHICH THE DISCOVERY IS GOING

3    TO SHOW.  BECAUSE IT IS METHOD CLAIMS, AND THERE'S NOTHING THEY

4    CAN DO ABOUT THAT, AND IT'S NOT SPECIFIC TO ONE.  THERE IS THE

5    HANOVER PATENTS.  THERE'S ON SOMETHING CALLED (INDISCERNIBLE),

6    AND THEY ALL HAVE TO DO WITH THIS CONCEPT OF THE PHONE

7    MIGRATING FROM LEGACY NETWORK 2G/3G TO ANOTHER NETWORK AND

8    BACK.

9          BUT A BROADER POINT, ALSO, IS THAT OUR CONCERN IS

10   THAT THE LONGER WE CONTINUE ON WITH DISCOVERY -- AND I THINK

11   WHAT WE WOULD LIKE TO DO IS TO LEARN MORE ABOUT DIFFERENT

12   THINGS BEFORE THEY MAKE THEIR SELECTION.  THE WHOLE POINT OF

13   DOING THE CASE NARROWING THE CASE WAS SO THAT WE HAVE LESS

14   DISCOVERY.

15         AND WE CONVINCED JUDGE ORRICK THAT WE NEEDED TO HAVE

16   THIS NARROWING NOW SO THAT WE DON'T GO ALL THE WAY THROUGH

17   TRIAL WITH ALL THE PRODUCTS, ALL THE PATENTS AND ALL THE SALES

18   FIGURES AND SUCH, BECAUSE IT'S A LOT.

19         **THE COURT:**  WELL, FROM MY PERSPECTIVE, THAT'S

20   SECONDARY.  WHAT'S PRIMARY IS GETTING IT NARROWED FOR SUMMARY

21   JUDGMENT AND FOR THEN TRIAL, BECAUSE -- JUST TO MAKE THE

22   DECISION PROCESS MANAGEABLE.  THE FACT THAT YOU'RE DOING CRAZY

23   DISCOVERY IN THE PATENT CASE, WELL, THAT'S OF CONCERN, BUT IT'S

24   A MATTER OF DEGREE, NOT KIND.

25         SO I'M MUCH MORE CONCERNED WITH MAKING SURE I GET THE

1   NARROWING DONE SO THAT THE SUMMARY JUDGMENT IS BOTH SOMETHING

2   THAT WE CAN ACTUALLY DO, NUMBER ONE; AND, NUMBER TWO, IT'S

3   MEANINGFUL.  THAT IS TO SAY YOU'LL GET SUMMARY JUDGMENT

4   RULINGS -- IT'S THE ONE THAT WILL AFFECT PRODUCTS THAT AREN'T

5   IN THE CASE.  THE JURY VERDICT MAY OR MAY NOT.  BUT THE SUMMARY

6   JUDGMENT RULINGS WILL GIVE YOU RULINGS THAT MAY ACTUALLY IMPACT

7   PRODUCTS THAT AREN'T IN THE CASE.

8          SO I WANT TO MAKE SURE THAT SUMMARY JUDGMENT RULING

9   IS AS MEANINGFUL AS POSSIBLE.  BUT WHY DON'T YOU RESPOND OR

10  WHATEVER YOU WANT TO SAY (INDISCERNIBLE).

11          **MR. BETTINGER:**  WE ALSO HAD TO NARROW DOWN THE CLAIMS

12  IN ADDITION TO THE PRODUCTS.

13          **THE COURT:**  YES, I UNDERSTAND.

14          **MR. BETTINGER:**  SO WHERE IT IS NOW IS THERE'S

15  BASICALLY A METHOD AND AN APPARATUS CLAIM FOR EACH OF THE 11

16  ASSERTED PATENTS, AND I THINK BOTH SIDES BASICALLY FOLLOWED

17  THAT SAME PROCESS.

18          SO THERE'S -- IN ADDITION TO THE PRODUCTS, YOU'RE

19  HAVING THIS NARROWING OF CLAIMS TO -- EVENTUALLY YOU HAVE TO

20  GET DOWN TO FIVE CLAIMS ON NO MORE THAN FIVE PATENTS.  SO

21  WHETHER -- THERE'S A LOT TO STILL BE DETERMINED AS TO WHAT TO

22  DO, BUT UNTIL YOU HAVE THE EVIDENCE AND HAVE ANALYZED IT, IT'S

23  NOT -- WE'RE NOT IN A POSITION TO TELL THE COURT, YOU KNOW,

24  THAT WE CAN GET DOWN TO SUMMARY JUDGMENT KIND OF NARROWING.

25  WHAT WE'VE PROPOSED IN EXHIBIT 1 IS A SUBSTANTIAL NARROWING OF

```
 1   WHERE WE WERE.

 2           THE COURT:  (INDISCERNIBLE) UNDERSTANDING

 3   (INDISCERNIBLE) BUT --

 4           MR. BETTINGER:  I HAVE A COLOR COPY, IF YOU LIKE.

 5           THE COURT:  I'VE GOT IT HERE, BUT IT'S -- THIS

 6   APPEARS TO HAVE 38 PRODUCTS ON IT.

 7           MR. BETTINGER:  RIGHT.  SO THAT WOULD HAVE BEEN UNDER

 8   THE OLD PROPOSAL.  WHAT WE HAD SUBMITTED THE FIRST TIME ON

 9   UNDERSTANDING OF PRODUCTS, THAT WOULD HAVE BEEN THE PRODUCTS

10   INVOLVED WHEN YOU BREAK IT DOWN BY THE BASEBAND CHIPS AND THE

11   DIFFERENCE IN THEM.  WHAT WE'VE NOW DONE IS SAID ONLY THOSE

12   HIGHLIGHTED IN GREEN --

13           THE COURT:  I SEE.

14           MR. BETTINGER:  -- WHICH MAY IN YOUR BLACK-AND-WHITE

15   COPY BE LIKE AN OFF GRAY, IT'S DOWN TO THOSE.

16           THE COURT:  SO IT'S ONLY THE HIGHLIGHTED --

17           MR. BETTINGER:  CORRECT.  THE REASON FOR PUTTING THE

18   OTHERS IN THERE IS THAT'S WHAT WOULD HAVE BEEN UNDER OUR OLD

19   PROPOSAL TO INDICATE --

20           THE COURT:  SO HOW MANY PRODUCTS IS THIS?

21           MR. BETTINGER:  22.

22           THE COURT:  THIS IS --

23           MR. BETTINGER:  22.  AND SO IF THERE'S AN AT&T OR

24   VERIZON PHONE AND ONE USES A SAMSUNG --

25           THE COURT:  (INDISCERNIBLE.)
```

1          **MR. BETTINGER:**  -- AND ONE USES ITS OWN CHIP, A

2     QUALCOMM CHIP, THOSE ARE DIFFERENT PRODUCTS UNDER THIS

3     PROPOSAL.

4          WHERE WE WERE TRYING TO ACCOMMODATE COUNSELS'

5     REQUESTS, LIKE, YOU'RE GOING TO NEED DIFFERENT PROOF OR

6     DIFFERENT SOURCE CODE.  OKAY, THAT'S A FAIR COMMENT.  SO WE

7     WENT THROUGH AND THEN NARROWED DOWN BASED ON THE BASEBAND CHIP

8     BECAUSE IN THIS CASE WHAT WE'RE TALKING ABOUT IS CALLED THE

9     RAN, THE RADIO ACCESS NETWORK, BETWEEN THE DEVICE AND THE BASE

10    STATION.  AND THERE'S A BASEBAND PROCESSOR THAT IS -- ON ENDS

11    IS KIND OF THE FIRST CHIP THAT DEALS WITH THIS.

12         SO THAT'S WHERE THE FOCUS HAS BEEN FOR THE SOURCE

13    CODE PRODUCTION AND WE'RE NOW, BOTH SIDES, ARE REVIEWING.

14         **THE COURT:**  AND YOUR POINT ON THIS, THE CARRIER

15    ISSUE, IS THAT THERE MAY BE DISTINCTIONS WITHIN A QUALCOMM

16    FAMILY OF CHIPS THAT ARE USED BY AT&T OR WHATEVER IT IS?

17         **MS. MAROULIS:**  THAT'S CORRECT, YOUR HONOR.  WITHIN

18    THE CHIPS THERE'S DIFFERENT VARIATIONS, AND THEY'RE DIFFERENT

19    BY CARRIER.  AND THE PLACE YOU WOULD SEE IT, IT'S EXHIBIT A

20    ATTACHED TO THE DUCCA DECLARATION, WHICH IS DOCKET NUMBER

21    200-12.

22         THEY'RE BASED ON -- BASED ON NAMES, THERE'S SPECIFIC

23    NUMBERS ASSOCIATED WITH THEM, AND THEY'RE THE BUILD I.D.S AND

24    IT'S THE BUILD I.D.S THAT ACTUALLY SHOW THAT THERE'S A

25    DIFFERENT SOURCE CODE IMPLICATED AS BETWEEN DIFFERENT CARRIERS

1    EVEN WHEN THEY BOTH HAVE THE SAME TYPE OF CHIP.

2            AND JUST TO CLARIFY OUR POSITION ON THE EXHIBIT THAT

3    MR. BETTINGER WAS ADDRESSING IS THAT IS STILL A LIST OF PRODUCT

4    LINES.  TO US IT'S STILL A LIST OF PRODUCT FAMILIES, NOT

5    PRODUCTS.

6            **THE COURT:**  I'M NOT GOING TO GET CAUGHT UP IN

7    (INDISCERNIBLE).

8            **MS. MAROULIS:**  BUT JUDGE ORRICK DID SAY HE UNDERSTOOD

9    HIS ORDER TO GO TO PRODUCTS AND NOT PRODUCT LINES.

10           **THE COURT:**  JUDGE ORRICK'S NOT HERE.  I'M GOING TO

11   TAKE THIS FOR THE NEXT PERIOD OF TIME AND GET IT TO THE NEXT

12   STAGE.

13           **MS. MAROULIS:**  UNDERSTOOD.

14           **THE COURT:**  AND I -- IT'S IF I HAVE A QUESTION, I'LL

15   GO ASK HIM, BUT I'M NOT GOING TO WORRY TOO MUCH ABOUT

16   (INDISCERNIBLE) YES.

17           **MR. BETTINGER:**  IT'S NOT FAIR TO SAY THAT I CAN SAY

18   THIS DEFINITIVELY, BUT ON THE PRELIMINARY VIEW OF THE SOURCE

19   CODE FOLKS, THE FACT THAT ONE BUILD TO THE NEXT, THERE'S NOT

20   BEEN A MATERIAL DIFFERENCE.

21           NOW, I CAN'T REPRESENT TO THE COURT THAT THAT'S

22   UNIVERSALLY TRUE UNTIL WE GET FURTHER IN.  BUT ON A PRELIMINARY

23   BASIS, FROM ONE BUILD TO THE NEXT, THERE'S NO MATERIAL

24   DIFFERENCES IN THE CODE FOR PURPOSES OF THE PATENTS AT ISSUE IN

25   THIS CASE.

1    **THE COURT:**  SO WHAT DO YOU THINK, AND WHAT DOES YOUR

2  BRAIN TRUST THINK ABOUT THE PROSPECTS FOR NARROWING BASED ON

3  MONEY?

4    **MR. PRITIKIN:**  WE AGREE.

5    **THE COURT:**  YOU THINK YOU MIGHT BE ABLE TO NARROW IT

6  TO A CARRIER OR TWO AND THEN CAPTURE ENOUGH OF THE MARKET THAT

7  YOU'RE GOING TO BE BITING OFF A SIGNIFICANT CHUNK OF THE CASE?

8    **MR. PRITIKIN:**  I DO.  THE HESITANCY WOULD BE BY

9  CARRIER.  IF ALL OF THEM HAVE THE SAME CHIP, THAT'S HARD TO SEE

10  WHAT THE DISTINCTION WOULD BE BETWEEN THE CARRIERS, BUT AT THE

11  END IT'S MONEY.

12    (SIMULTANEOUS COLLOQUY.)

13    **THE COURT:**  EVENTUALLY, IF I HAVE TO, WE'LL DO A DEEP

14  DIVE INTO THE INFRINGEMENT/NON-INFRINGEMENT ARGUMENT.  IT HAS

15  TO DO WITH THE DIFFERENCE BETWEEN CARRIERS, BUT IT JUST

16  OCCURRED TO ME THAT YOU MIGHT NOT NEED TO HAVE THAT FIGHT IF

17  YOU ARE NARROWING IT TO THE TWO PRINCIPAL CARRIERS.  I DON'T

18  KNOW.

19    SO HERE'S MY IDEA, I'M THROWING IT OUT THERE FOR

20  DISCUSSION.

21    THE NEXT TIME YOU'RE SUPPOSED TO NARROW UNDER THE NEW

22  SCHEDULE IS PROBABLY NOT FOR A WHILE.

23    **MR. PRITIKIN:**  MARCH 16TH.

24    **THE COURT:**  MARCH, OKAY.  SO YOU HAVE LOTS OF TIME.

25  I THOUGHT MAYBE THAT WITH RESPECT TO THE PLAINTIFFS NARROWING

1    OF ACCUSED PRODUCTS, WE MIGHT HAVE AN INTERIM DATE.  SO THAT

2    YOU TAKE A LOOK AT THE SOURCE CODE FOR THE VARIOUS CHIPS.  YOU

3    TAKE A LOOK AT THE MARKET INFORMATION FOR THE CARRIERS TO SEE

4    WHETHER OR NOT YOU CAN NARROW THE CARRIERS IN ADDITION TO

5    NARROWING THE CHIPS, CHIPSETS THAT ARE GOING TO BE USED.  AND

6    HAVE A FURTHER NARROWING, A PERIOD OF TIMEOUT -- YOU KNOW, AND

7    YOU GUYS CAN TALK ABOUT IT ONCE YOU KNOW MORE ABOUT THE SOURCE

8    CODE THAT GOES INTO THESE CHIPS, WHAT THE DIFFERENT BUILDS MEAN

9    AND SEE WHETHER IT'S DONE.  IT'S -- I DON'T KNOW.

10           ANY THOUGHTS ABOUT THAT, MS. MAROULIS?

11           **MS. MAROULIS:**  YOUR HONOR, WE SHOULD MEET AND CONFER

12   WITH HUAWEI AFTER THEY'VE HAD A CHANCE TO EXPLORE THE FINANCIAL

13   DATA THAT WE PRODUCED.

14           **THE COURT:**  RIGHT.

15           **MR. BETTINGER:**  AND WE'LL HAVE A CHANCE TO DO THE

16   SOURCE CODE DEPOSITIONS, SEEMS TO MAKE SENSE.

17           **THE COURT:**  YOU'LL GO THROUGH THE SOURCE CODES

18   BECAUSE YOU'LL KNOW MORE ABOUT --

19           **MR. BETTINGER:**  YEAH.

20           **THE COURT:**  -- THAT ONCE YOU GO THROUGH THE SOURCE

21   CODE AS TO WHETHER YOU'RE RIGHT THAT IT MATTERS WHICH VERSION

22   OF THE QUALCOMM CHIP IS BEING USED, WHICH BUILD IS BEING USED,

23   ET CETERA, ET CETERA.

24           BUT, IN ANY EVENT, SO -- LET ME JUST LOOK BACK.

25           SO THE SCHEDULE IS IN MARCH YOU'RE REDUCING IT TO,

UNDER THE NEW SCHEDULE, TO 18 PRODUCTS.  YOU'RE NOW AT 22.

(INDISCERNIBLE) WHAT THAT MEANS, BUT WE'RE NOW AT 22.

          SO WHEN DO YOU THINK YOU'LL BE IN A POSITION TO DO A

FURTHER NARROWING TO ANSWER SOME OF THE CRITICISM THAT

MS. MAROULIS HAS RAISED?

          **MR. BETTINGER:**  BASED ON THE DISCOVERY, I WOULD THINK

EARLY TO MID JANUARY.

          **MS. MAROULIS:**  YOUR HONOR, WE APPRECIATE THE FACT

THAT THE MOST IMPORTANT ASPECT OF THIS IS FOR THE COURT, BUT IT

IS TAKING THINGS MUCH FURTHER THAN WOULD BE NECESSARY GIVEN THE

CASE HAS BEEN PENDING FOR OVER A YEAR.

          **THE COURT:**  DO YOU WANT TO SAY ANYTHING ELSE?

          **MS. MAROULIS:**  MR. VERHOEVEN REMINDS ME THAT THEIR

SOFTWARE EXPERTS AND THE SOURCE CODE FOLKS HAVE BEEN LOOKING AT

OUR CODE FOR QUITE SOME TIME, SO THEY SHOULD BE ABLE TO COME UP

WITH THE NARROWING SOONER.

          **THE COURT:**  SO WHAT -- OKAY.  WELL, SO -- AND WHAT

HAPPENS IF THEY DON'T?  I MEAN, WHY ARE YOU SO CONCERNED ABOUT

THE DIFFERENCE BETWEEN DECEMBER AND JANUARY?

          **MS. MAROULIS:**  YOUR HONOR, WE'RE JUST TRYING TO

NARROW THE CASE SO THAT THERE'S FEWER DEPOSITIONS, FEWER

DISCOVERY ISSUES, FUTURE DISCOVERY FIGHTS.

          **THE COURT:**  THEY NARROW IT TO JANUARY INSTEAD OF

DECEMBER OR DECEMBER INSTEAD OF JANUARY, WHAT'S NOT GOING TO

HAPPEN AND WHAT'S GOING TO HAPPEN?

1          **MS. MAROULIS:**  WE ARE GOING THROUGH NUMBER OF

2    DEPOSITIONS, YOUR HONOR.

3          **THE COURT:**  WILL THEY NOT HAPPEN?

4          **MS. MAROULIS:**  THAT, WE DON'T KNOW.  I CANNOT

5    REPRESENT TO YOU RIGHT NOW HOW MANY DEPOSITIONS WILL GO OFF

6    CALENDAR, BUT --

7          **THE COURT:**  OR ANY.

8          **MS. MAROULIS:**  -- EVERY DAY WE SPEND --

9          **THE COURT:**  WILL ANY GO OFF CALENDAR?

10          **MR. PRITIKIN:**  NO, BECAUSE THIS WOULD ONLY BE A

11    DAMAGE ISSUE.

12          **THE COURT:**  WHAT DO YOU MEAN IT WOULD ONLY BE A

13    DAMAGE ISSUE?

14          **MR. PRITIKIN:**  WELL, WE'RE GOING TO HAVE THE PROOF

15    ALREADY ON THE INFRINGEMENT FROM THE CODE.

16          **THE COURT:**  YEAH.

17          **MR. PRITIKIN:**  WE'RE ALREADY GOING TO BE DOING THAT.

18    SO THE ONLY THING THIS NARROWS -- ALL THAT DISCOVERY IS GOING

19    TO HAVE TO TAKE PLACE.  THIS WOULD POTENTIALLY NARROW DAMAGES.

20          **THE COURT:**  I SEE.

21          **MR. PRITIKIN:**  WHICH I THINK IS THE WHOLE GOAL FOR

22    WHY -- WE WEREN'T INVOLVED IN THE APPLE-SAMSUNG CASE.  MY

23    UNDERSTANDING IS THIS DERIVES OUT OF THAT.

24          **THE COURT:**  WELL, WE'RE NOT GOING TO TALK ABOUT --

25          **MR. PRITIKIN:**  IN THE END --

1           **THE COURT:**  -- DIFFERENT PRODUCTS, DIFFERENT PATENTS.

2     THE OVERARCHING THEME IS YOU CAN NARROW THE NUMBER OF PRODUCTS.

3     YES, OKAY.  I GET IT.  SO I'M NOT WORRIED ABOUT WHY WE DID IT

4     IN A PARTICULAR WAY WHEN IT WAS SWIPE LEFT THE PATENTS.

5           **MS. MAROULIS:**  I COULD RECITE CHAPTER AND VERSE, BUT

6     I'M SURE YOUR HONOR DOESN'T WANT THAT, SO --

7           **THE COURT:**  NO, NO, NO.  IT DOESN'T HELP BECAUSE IT

8     IS PARTICULAR TO THE PATENTS INVOLVED IN THAT CASE AND THE KIND

9     OF NARROWING.

10           WELL, TODAY IS 27TH OF OCTOBER.  SO LET'S USE THE OLD

11    REDUCTION DATE OF DECEMBER 15TH.  AND WHAT I WANT YOU TO DO IS

12    TO SEE IF YOU CAN REDUCE IT FURTHER.  YOU'RE NOT GOING DOWN TO

13    18 PRODUCTS YET, BUT -- SO THAT THE DISTINCTION THAT WE'RE

14    TALKING ABOUT HERE BETWEEN PRODUCTS AND FAMILIES OF PRODUCTS

15    CAN BE REDUCED OR ELIMINATED.  SO THAT IF YOU STICK WITH, FOR

16    EXAMPLE, VERIZON AND AT&T AND YOU HAVE THE CHIPS THAT THEY USE

17    AND YOU DETERMINE THAT THOSE CHIPS ALL USE MATERIALLY IDENTICAL

18    SOURCE CODE, THEN THE DISTINCTION BETWEEN FAMILIES FALLS AWAY,

19    FAMILIES OF PRODUCTS FALLS AWAY, BUT THIS WOULD BE THE GOAL.

20           **UNIDENTIFIED SPEAKER:**  OKAY.

21           **THE COURT:**  BECAUSE, OTHERWISE, I'LL JUST MAKE SOME

22    ARBITRARY RULING, AND THAT SEEMS LESS USEFUL THAN YOU GUYS

23    ACTUALLY WORKING OUT WHAT WILL ACTUALLY WORK.

24           THE -- I WANT YOU ALL TO HAVE MET AND CONFERRED AND

25    TALKED ABOUT THIS NO LATER THAN DECEMBER 1ST.  SO THAT YOU EACH

1   KNOW WHAT'S GOING ON AND YOU HAVE INPUT INTO WHAT YOU'RE DOING

2   AND MAYBE YOU CAN MAKE SOME RESOLUTION.

3           SO LET ME JUST THINK THROUGH HOW THIS GOES.  SO YOU

4   MEET AND CONFER BY THE 1ST.  YOUR AMENDED PRODUCT LIST IS DUE

5   ON THE 15TH.  WE ARE -- IF THAT DOESN'T HAPPEN, WE'RE GOING TO

6   HAVE TO FIGURE OUT SOME OTHER WAY BY MAKING IT AN ARBITRARY

7   RULING.

8           **UNIDENTIFIED SPEAKER:**  OKAY.

9           **THE COURT:**  I'M USING MY DISCRETION NOW TO -- THAT'S

10  WHAT THEY TEACH US IN BABY JUDGE SCHOOL, HOW TO USE YOUR

11  DISCRETION.

12          AND I DON'T WANT TO GO THROUGH THE NEXT STAGE.  THE

13  NEXT STAGE IS GOING TO BE A DEEP DIVE WHERE MS. MAROULIS GETS

14  OUT HER COLORED MARKER AND BOARD AND EXPLAINS TO ME WHY THIS

15  MAKES A DIFFERENCE FOR THE NON-INFRINGEMENT CONTENTIONS,

16  (INDISCERNIBLE) USING THIS CHIP AND THAT CHIP.  WHILE THAT

17  WOULD BE A LOT OF FUN, IT'S PROBABLY -- IT'S PROBABLY NOT WORTH

18  THE MONEY TO PUT THAT KIND OF PRESENTATION TOGETHER FOR THIS

19  PURPOSE.  BUT LET'S SEE WHERE WE CAN GO WITH THAT ONE.

20          SO WE'LL MEET AGAIN THE BEGINNING OF JANUARY.

21          **THE CLERK:**  DID YOU SAY THE BEGINNING OF JUNE?

22          **THE COURT:**  JANUARY, BEGINNING OF JANUARY.

23          **THE CLERK:**  (INDISCERNIBLE.)

24          **MS. MAROULIS:**  YOUR HONOR, IF WE CANNOT DO THE 5TH,

25  THAT WOULD BE BEST BECAUSE SOME OF OUR TEAM MEMBERS MIGHT BE

1  OUT THAT WEEK.

2          **THE COURT:**  12TH MAKES MORE SENSE.

3          **MS. MAROULIS:**  THANK YOU.

4          **THE COURT:**  SO LET'S DO IT ON THE 12TH AT

5  2:00 O'CLOCK, GIVE ME AN UPDATED STATEMENT AT LEAST A WEEK

6  AHEAD OF TIME, PLEASE.

7          **MS. MAROULIS:**  YES.

8          **MR. BETTINGER:**  YES.

9          **THE COURT:**  AND I DON'T KNOW.  DOES THIS SEEM LIKE A

10  PRACTICAL WAY OF DEALING WITH THIS?  DOES IT SEEM LIKE IT MIGHT

11  HAVE SOME CHANCE OF SUCCESS?

12          I'M REALLY ASKING YOU.  HE THINKS IT DOES.

13          **MS. MAROULIS:**  YOUR HONOR, WE ARE WILLING TO ENGAGE

14  IN WHATEVER PROCESS TO GET THE CASE NARROWED AND TRIAL READY.

15  SO WE'RE HOPING THAT WE GAVE THE COURT AND OTHERS AND HUAWEI

16  ENOUGH AMMUNITION, AND WE THOUGHT THAT AFTER SITTING DOWN AFTER

17  THE LAST CONFERENCE WAS PRODUCTIVE, SO I WAS HOPING THAT TODAY

18  WE WOULD REACH THE NARROWING.  BUT IF THIS IS ANOTHER STEP THAT

19  WE SHOULD TAKE AS A GROUP, WE'LL BE HAPPY TO PARTICIPATE AND

20  TRY TO GET IT DONE.

21          **MR. BETTINGER:**  THANK YOU, COUNSEL.

22          **THE COURT:**  THAT'S AN ELEGANT WAY OF NOT ANSWERING A

23  QUESTION.  I LIKE THAT A LOT.  OKAY.

24          ANYTHING ELSE WE SHOULD DISCUSS?

25          **MS. MAROULIS:**  THAT'S IT FOR THE PARTIES, YOUR HONOR.

1           **THE COURT:**  ALSO, BY THE WAY, I DON'T LIKE DISCOVERY

2     FIGHTS ANY MORE THAN JUDGE ORRICK DOES.  SO DON'T DO IT.

3           **MS. MAROULIS:**  YOUR HONOR, THE PARTIES HAVE BEEN

4     WORKING PRETTY WELL.

5           **THE COURT:**  NO, NO.  YOU'VE BEEN WONDERFUL.  THAT'S

6     GREAT.  THAT'S GREAT.

7           **UNIDENTIFIED SPEAKER:**  YES.  WERE YOU GOING TO LET US

8     KNOW THE PRETRIAL AND THE TRIAL DATES, YOUR HONOR, OR WILL WE

9     JUST GET AN ORDER ON THAT?

10          **THE COURT:**  OH, YES, HOLD ON A SECOND.  I'M SORRY.

11    BEAR WITH ME A SECOND.  I'LL TRY TO FIND (INDISCERNIBLE).

12          PRETRIAL CONFERENCE WILL BE NOVEMBER 5TH.  THE

13    DISPOSITIVE MOTIONS WILL BE HEARD ON AUGUST 8TH, BOTH NEXT

14    YEAR.  OTHERWISE, THE DATES ARE AS IS.

15          **THE CLERK:**  (INDISCERNIBLE.)

16          **THE COURT:**  IT'S ALL IN HERE.

17          **UNIDENTIFIED SPEAKER:**  SO DECEMBER 3RD TRIAL DATE?

18          **THE COURT:**  YES, THAT STAYS.

19          **UNIDENTIFIED SPEAKER:**  ALL RIGHT.  VERY GOOD.

20          **THE COURT:**  OKAY.

21          **UNIDENTIFIED SPEAKER:**  I JUST WANT TO NOTE FOR THE

22    RECORD, I DO HAVE A TRIAL ON THE PRETRIAL CONFERENCE DATE, BUT

23    IT'S SO FAR IN THE FUTURE, I DON'T THINK WE SHOULD ADJUST WHAT

24    WE'RE DOING.

25          **THE COURT:**  YES, BOTH YOURS AND JUDGE ORRICK'S

1    SCHEDULE.

2              ON THE OTHER HAND, YOU KNOW, THERE ARE SOME GREAT

3    MAGISTRATE JUDGES (INDISCERNIBLE) THAT YOU COULD CONSENT TO WHO

4    KNOW A TREMENDOUS AMOUNT AND CAN DO A DEEP DIVE INTO THIS CASE.

5    I COULD ASK ONE OF THEM TO STAND IN IF YOU DECIDE.

6              OKAY.  THANK YOU ALL.

7              (PROCEEDINGS ADJOURNED AT 1:47 P.M.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    **CERTIFICATE OF TRANSCRIBER**

2

3          I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

4    TRANSCRIPT, TO THE BEST OF MY ABILITY, OF THE ABOVE PAGES OF

5    THE OFFICIAL ELECTRONIC SOUND RECORDING PROVIDED TO ME BY THE

6    U.S. DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, OF THE

7    PROCEEDINGS TAKEN ON THE DATE AND TIME PREVIOUSLY STATED IN THE

8    ABOVE MATTER.

9          I FURTHER CERTIFY THAT I AM NEITHER COUNSEL FOR,

10   RELATED TO, NOR EMPLOYED BY ANY OF THE PARTIES TO THE ACTION IN

11   WHICH THIS HEARING WAS TAKEN; AND, FURTHER, THAT I AM NOT

12   FINANCIALLY NOR OTHERWISE INTERESTED IN THE OUTCOME OF THE

13   ACTION.

14

15                    _jmcolumbini_

16              JOAN MARIE COLUMBINI

17                NOVEMBER 6, 2017

18

19

20

21

22

23

24

25

*JOAN MARIE COLUMBINI, CSR, RPR*
*RETIRED OFFICIAL COURT REPORTER, USDC*
*510-367-3043*