Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:  (415) 875-6600
Facsimile:  (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:  (650) 801-5000
Facsimile:  (650) 801-5100

Attorneys for Samsung Electronics Co., Ltd.,
Samsung Electronics America, Inc., and
Samsung Research America, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HUAWEI TECHNOLOGIES CO., LTD., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., et al.,<br><br>Defendants. | CASE NO. 16-cv-02787-WHO<br><br>**SAMSUNG'S OPPOSITION TO HUAWEI'S MOTION FOR CLARIFICATION OR RECONSIDERATION (DKT. 225)** |
| SAMSUNG ELECTRONICS CO., LTD. & SAMSUNG ELECTRONICS AMERICA, INC.<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>HUAWEI TECHNOLOGIES CO., LTD., HUAWEI DEVICE USA, INC., HUAWEI TECHNOLOGIES USA, INC., & HISILICON TECHNOLOGIES CO., LTD.<br><br>Counterclaim-Defendants. | |

## I. INTRODUCTION

Pursuant to the Court's January 25, 2018 Order (Dkt. 230), Samsung submits this opposition to Huawei's Motion for Clarification, or in the Alternative, for Leave to File a Motion for Reconsideration (Dkt. 225).

From the outset of the claim construction process, the parties' dispute was clear: Huawei argued that the claimed "first P-TMSI" could be in any part of the "access message," including the NAS part. Samsung was explicit that its construction, by requiring the "first P-TMSI" to be in a *field* in the access message, excluded the NAS part. The Court's claim construction order walked through the parties' dispute and resolved it in Samsung's favor. Dkt. 168 at 12-14 ("The parties dispute whether the 'first P-TMSI' must occupy a specific location within the RRC message—the access stratum portion rather than the NAS portion. . . . [T]he reference to 'a first P-TMSI in an access message' must reference the P-TMSI in the access stratum portion of the access message whether or not there are one or two P-TMSIs."). In reaching this conclusion, the Court analyzed the intrinsic evidence in detail and determined that the claims and specification distinguish between the "first P-TMSI" that the radio access network ("RAN") node uses, and the "second P-TMSI" that gets passed to the core network ("CN") node. *Id*. at 14. The Court concluded that, "Since the RAN network only accesses the access-stratum of the RRC message, the golden ticket must be located therein." *Id*.

Nothing in Huawei's motion requires the Court to revisit this determination or clarify its claim construction order.

First, Huawei's argument that the Court's construction does not exclude placing the "first P-TMSI" in the NAS portion of the access message contradicts the Court's reasoning throughout the claim construction order and its clear explanation that "***the reference to 'a first P-TMSI in an access message' must reference the P-TMSI in the access stratum portion of the access message whether or not there are one or two P-TMSIs.***" Dkt. 168 at 13-14. Regardless of whether this restriction is "literally present" in the Court's construction—an argument Huawei makes without any evidentiary support—the Court's reasoning binds Huawei and prevents it from rearguing that the first P-TMSI can be in the NAS part of the access message for purposes of infringement.

1    Second, Huawei's motion does not present any evidence that the Court did not already
2 consider and reject during the claim construction proceedings.  Huawei points to a "second mode
3 of operation" where the RAN node forwards a NAS message to the CN node, but as the Court
4 recognized, this second mode of operation corresponds to the "*second* P-TSMI" that is distinct
5 from the claimed "*first* P-TMSI."  Huawei's inventor deposition testimony—which Huawei could
6 have presented via declaration in the claim construction proceedings—simply summarizes this
7 second mode of operation.  It does not add anything new that the Court did not already consider.
8 The Court also considered and agreed with Samsung's position that the "first P-TMSI" must be in
9 the access stratum part of the access message because that is the part that the RAN node parses.
10 Samsung raised this position in its opening brief—not unexpectedly at the claim construction
11 hearing, as Huawei argues.

12    In light of the clear record and the Court's reasoning in its claim construction order, there
13 is no need for the Court to clarify or reconsider its construction.  However, if the Court decides
14 that doing so would be helpful for case narrowing, summary judgment, or trial, then Samsung
15 respectfully submits that the construction should reflect the Court's reasoning in the claim
16 construction order and define "a first P-TMSI in an access message" as "a first P-TMSI in the
17 access stratum portion of an access message."

18    Finally, Samsung notes that Huawei's motion could be denied procedurally for failure to
19 comply with the requirements of Civil L.R. 7-9.  Huawei violated Civil L.R. 7-9(a) when it
20 noticed and filed a substantive motion without first seeking leave of Court.  Huawei violated L.R.
21 7-9(b) by failing to exercise reasonable diligence in seeking reconsideration—waiting more than
22 four months after the Court's claim construction order.  Huawei also failed to identify any basis
23 for its motion under Civil L.R. 7-9(b)(1)-(3), such as the emergence of new material facts or a
24 change of law.  And Huawei violated Civil L.R. 7-9(c) by repeating the same arguments it made
25 during the claim construction proceedings.

26    For these reasons, Samsung respectfully requests that the Court deny Huawei's motion, or
27 alternatively clarify that its construction of "first P-TMSI" consistent with the reasoning in its
28 claim construction order.

## II. ARGUMENT

### A. The Court's Claim Construction Order is Clear and Binding on Huawei

The Court adopted Samsung's proposed construction after a thorough and careful analysis of the parties' dispute concerning the location of the "first P-TMSI" in the access message. Dkt. No. 168 at 12-14. As the Court explained, "[t]he parties dispute whether the 'first-PTMSI' must occupy a specific location within the RRC message—the access stratum portion rather than the NAS portion." *Id*. at 12. The Court addressed Huawei's position that the "first P-TMSI" can be placed in the NAS portion of the assess message. *Id*. at 12 ("Huawei insists that 'nothing in the intrinsic evidence requires that the P-TMSI be located in any particular place in the access message.'") (quoting Huawei's Op. Br. at 15). It then addressed Samsung's position that the claims and specification distinguish between a "first P-TMSI" in the access stratum part of the access message, and a "second P-TMSI" in the NAS part of the message. *Id*. at 13. After evaluating these arguments in light of the intrinsic record, the Court determined that Samsung's construction was correct. *Id*. at 14.

In adopting Samsung's construction, the Court was explicit that the claimed "first P-TMSI" must be in the access stratum part of the access message, and cannot be in the NAS part. *Id*. at 13-14 ("Rather, the reference to 'a first P-TMSI in an access message' must reference the P-TMSI in the access stratum portion of the access message whether or not there are one or two P-TMSIs."). In particular, the Court explained that the invention would not work if the "first P-TMSI" were not in the access stratum part of the access message because that is where the RAN node looks to find the MME information. *Id*. at 14 ("Since the RAN network only accesses the access-stratum of the RRC message, the golden ticket must be located therein."). The Court also rejected Huawei's argument that limiting the "first P-TMSI" to the access stratum would violate claim differentiation, explaining that "***[c]onstruing 'first -PTMSI' to refer to the PTMSI in the access stratum portion*** of the access message does not read out any limitation imposed by the dependent claims." *Id*. at 14 n.8 (emphasis added).

In light of this record, Huawei cannot credibly argue that it needs clarification about whether the Court's construction requires the "first P-TMSI" to be in the access stratum part of the

access message and excludes placing the "first P-TMSI" in the NAS part. It clearly does. Dkt. No. 168 at 14.

The Court's reasoning in this regard binds Huawei and precludes it from rearguing that the "first P-TMSI" can be in the NAS part of the access message for purposes of infringement. *See, e.g.*, *Augme Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326, 1332 (Fed. Cir. 2014). In *Augme*, Judge Spero had construed the limitation "embedded in said webpage" to mean "written into the html code of the web page." *See, e.g.*, *Augme Techs., Inc. v. Yahoo! Inc.*, No. 3:09-cv-05386-JCS, 2011 WL 6048817 at *8-10 (N.D. Cal. Sept. 27, 2011). The claim construction order explained that "'embedding' does not include 'external linking.'" *Id*. at *9. Based on the court's construction and explanation, Yahoo! moved for summary judgment of non-infringement based on the fact that the accused products used "smart code" that was externally downloaded to the accused webpages. *See Augme*, 755 F.3d at 1334. The court granted Yahoo!'s motion and Augme appealed. *Id*. The Federal Circuit affirmed and specifically pointed to the reasoning in the district court's claim construction order:

> The district court construed "embedded" to mean "written into the HTML code of the web page," and explained that this construction was consistent with the term's plain meaning. The district court explained that this construction expressly excluded "a code module that is retrieved via external linking," i.e., a code not actually in the web page HTML, but separately retrieved after the web page download.

*Id*. at 1332 (citations omitted).

The Federal Circuit then analyzed the accused "smart code" and agreed that it could not infringe under the district court's construction. *Id*. at 1334 ("This smart code is not embedded under the district court's construction; it is separately downloaded.").

The same rationale should apply in this case. The Court's claim construction order makes clear that its construction of "a first P-TMSI in an access message" requires the first P-TMSI to be in the access stratum part of the access message, and excludes placing the first P-TMSI in the NAS part of the access message. Dkt. No. 168 at 12-14. Huawei should not be permitted to ignore this reasoning and argue that the P-TMSI can be in the NAS part for purposes of its

infringement case—particularly where Huawei raised and lost this argument during claim construction.

Accordingly, there is no reason for the Court to clarify its construction. If, however, the Court determines that clarifying its construction would be helpful for case narrowing, summary judgment, or trial, then the appropriate construction would define "a first P-TMSI in an access message" as "a first P-TMSI in the access stratum portion of an access message." This construction is consistent with the Court's reasoning in its claim construction order and confirms that the "first P-TMSI" cannot be in the NAS part of the access message. *See* Dkt. No. 168 at 13-14 ("Rather, the reference to 'a first P-TMSI in an access message' must reference the P-TMSI in the access stratum portion of the access message whether or not there are one or two P-TMSIs."); *id*. at 14 n.8 ("Construing 'first-PTMSI' to refer to the PTMSI in the access stratum portion of the access message does not read out any limitation imposed by the dependent claims.").

### B. There is No Reason for the Court to Reconsider Its Claim Construction Order

The Court's claim construction analysis was grounded in the intrinsic record of the '166 patent. As the Court explained, the patent claims and specification distinguish between the "first P-TMSI" in the access stratum part of the access message, and the "second P-TMSI" in the NAS part. Dkt. 168 at 13 ("Viewing the surrounding claims and the specification demonstrates that the use of 'first' and 'second' connotes more than 'repeated instances of an element.'"). The Court reasoned that "the reference to 'a first P-TMSI in an access message' must reference the P-TMSI in the access stratum portion of the access message whether or not there are one or two P-TMSIs. Otherwise, the invention would not work." *Id*. at 13-14. The Court reached this conclusion based on the fact that the patent describes the RAN node as using the "first P-TMSI" to identify the old MME, and further describe the RAN node as parsing *only* the access stratum part of the access message, *not* the NAS part. *Id*. (citing the '166 patent at 5:52-58).

Huawei's motion does not identify any flaws in the Court's analysis or evidence to contradict it. Huawei focuses on a "second mode of operation" where the RAN node forwards the NAS part of the access message to the backend SGSN of the legacy network. Dkt. 225 at 6-7.

But this second mode of operation corresponds to the "second P-TMSI" that the Court distinguished from the claimed "first P-TMSI." Dkt. 168 at 13.[1]

Huawei's inventor testimony describes this same mode of operation. Dkt. 225 at 8. Mr. Guo testified that in the second mode, "the new core network node would use the constructed information containing the old RAI and P-TMSI by the UE to find an old core network node." Dkt. 225-2 at 246:14-247:9. The P-TSMI in this situation is the "second P-TMSI" carried in the NAS message, *not* the "first P-TMSI" that the RAN node uses. This is clear from Figure 9 of the '166 patent, which shows the old RAI and second P-TMSI in the NAS part of the access message. *See* Dkt. 150 at 18. The Court analyzed this mode of operation in its claim construction order and expressly distinguished it from the claimed "first P-TMSI." Dkt. 168 at 13-14. Accordingly, Mr. Guo's testimony has no impact on the Court's analysis.[2]

Huawei is also incorrect when it states that "[a]t no point do the parties' claim construction briefs discuss restricting the first P-TMSI to the 'access stratum' portion of the access message." Dkt. 225 at 2. Huawei understood from the outset that the purpose of Samsung's construction was to clarify that the "first P-TMSI" must be in the access stratum part of the message, and cannot be in the NAS part. Dkt. 141 at 15 ("Samsung apparently contends that a P-TMSI 'field' must be 'contained <u>directly in</u> an access message.'"). Samsung confirmed this point in its responsive claim construction brief when it distinguished between the "first P-TMSI" and the "second P-TMSI." Dkt. 150 at 17-18. Samsung explained that the first P-TMSI must be in a field of the access message (rather than the NAS part) because that is where the RAN node looks to find the MME

---

[1] The introduction to Huawei's motion argues that there is an "*operable* embodiment that relies on a first P-TMSI within the NAS portion of the access message to practice the invention." Dkt. 225 at 3. Huawei does not provide any evidence to support this argument, and the remainder of its motion focuses on the "second P-TMSI" rather than the "first P-TMSI." *Id*. at 6-9. Nowhere does Huawei identify a "first P-TMSI" in the NAS part of the access message. *Id*.

[2] In any case, Mr. Guo's testimony could not be used to contradict the intrinsic evidence. *See Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1256 (Fed. Cir. 2000) ("The trial court, however, was entitled to accord little weight to the 'litigation-induced pronouncements of the inventor,' which were contrary to clear statements in the written description and reissue application.").

information.  *Id.*  Samsung even included a figure showing the "first P-TMSI" in the access stratum part and the "second P-TMSI" in the NAS part:



*Id*. at 18 (annotated Figure 9 of the '166 patent).

Accordingly, Samsung did not seek "to further restrict its original proposal" or raise new arguments at the *Markman* hearing.  Dkt. 225 at 4.  Samsung maintained the same arguments throughout the claim construction process, and Huawei had ample opportunity to respond.  Indeed, Huawei ***did*** respond, but the Court rejected its arguments as inconsistent with the intrinsic evidence.  Dkt. 168 at 12-14.  Huawei has not presented any legitimate reason for the Court to revisit this determination.

**C.    Huawei's Motion Violates the Requirements of Civil L.R. 7-9**

In addition to being wrong on the merits, Huawei's motion is procedurally improper. Although Huawei styled its submission as a motion for clarification, it is clearly a motion for reconsideration.  Courts in the Northern District have explained that they "will not exalt form over substance and permit a party to circumvent the applicability of Local Rule 7-9 merely by avoiding the 'motion for reconsideration' label."  *Lam Research Corp. v. Schunk Semi.*, 65 F. Supp. 3d 863, 869 (N.D. Cal. 2014).  "Courts routinely look to the *substance* of the motion rather than how it is styled in determining the standard to apply."  *Id*.  Here, the substance of Huawei's motion asks the Court to reconsider its claim construction analysis and find that the term "first P-TMSI" in the

asserted claims of the '166 patent can refer to a P-TMSI in the NAS portion of the claimed "access message." Dkt. 225 at 6-8.

Because Huawei's motion seeks reconsideration, it is subject to the requirements of Civil L.R. 7-9(a)-(c). The motion violates each of these requirements. First, the rule provides that "[n]o party may notice a motion for reconsideration without first obtaining leave of Court to file the motion." Civil L.R. 7-9(a). Huawei's motion violates this requirement because it presents substantive arguments before Huawei obtained leave of Court. *See generally* Dkt. 225 at 1-8.

Second, the rule requires a showing of reasonable diligence in seeking reconsideration. Civil L.R. 7-9(b). Huawei's motion violates this requirement because it offers no explanation for why it waited four and a half months after the Court issued its claim construction order to seek reconsideration.[3] Dkt. 225 at 8-9. Huawei's only argument is that the case is "highly complex" and "[a] long runway remains on the case schedule," but neither point justifies Huawei's delay in bringing its motion. *Id.*[4]

Third, Civil L.R. 7-9(b) requires a motion for leave to show (1) a material difference in fact or law, (2) the emergence of new material facts or a change of law, or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments. Civil L.R. 7-9(b)(1)-(3). Huawei's motion simply fails to address these requirements. *See* Dkt. 225 at 9. To the extent Huawei was attempting to rely on its inventor testimony for this purpose, the testimony is neither material nor new. *See Therasense Inc. v. Becton, Dickinson & Co.*, 560 F. Supp. 2d 835, 845 (N.D. Cal. 2008) ("The Court is not inclined to revisit its claim construction based on extrinsic

---

[3] Huawei fails to explain why it could not have submitted testimony from its inventor—an employee under Huawei's control—via a declaration filed with its claim construction brief. At a minimum, Huawei should have sought reconsideration three months ago after the inventor's deposition if it believed the testimony was relevant to the Court's construction.

[4] Huawei is also incorrect that "Samsung can make no credible prejudice argument." *See* Dkt. 225 at 9. In the four and a half months since the Court's claim construction order, Samsung has prepared its case under the Court's construction, including through review of documents and source code, and traveling to Hong Kong to depose the inventor of the '166 patent. The timing of Huawei's motion for reconsideration would leave Samsung with only a month of fact discovery to respond to a changed construction.

1  evidence that Abbott, in the exercise of reasonable diligence, could have brought to the attention
2  of the Court at the time of the claim construction hearing.").
3    Finally, Huawei's motion violates Civil L.R. 7-9(c) because it repeats the same arguments
4  that Huawei raised and the Court rejected during the claim construction proceedings as discussed
5  in Section II.B above.

## III. CONCLUSION

For the reasons set forth above, Samsung requests that the Court deny Huawei's motion (Dkt. 225), or alternatively clarify that its construction requires the "first P-TMSI" to be in the access stratum portion of the access message and excludes placing the "first P-TMSI" in the NAS portion of the access message.

DATED:  February 1, 2018    Respectfully submitted,

            QUINN EMANUEL URQUHART &
            SULLIVAN, LLP

            By  */s/ Victoria F. Maroulis*
              Charles K. Verhoeven
              Kevin P.B. Johnson
              Victoria F. Maroulis
              David A. Perlson
              Thomas D. Pease

            *Attorneys for Samsung Electronics Co., Ltd.,*
            *Samsung Electronics America, Inc., and*
            *Samsung Research America, Inc.*