1   Michael J. Bettinger (SBN 122196)
    *mbettinger@sidley.com*
2   Irene Yang (SBN 245464)
    *irene.yang@sidley.com*
3   SIDLEY AUSTIN LLP
    555 California Street, Suite 2000
4   San Francisco, California  94104
    (415) 772-1200 – Telephone
5   (415) 772-7400 – Facsimile

    David T. Pritikin (*Pro Hac Vice*)
    *dpritikin@sidley.com*
    David C. Giardina (*Pro Hac Vice*)
    *dgiardina@sidley.com*
    Douglas I. Lewis (*Pro Hac Vice*)
    *dilewis@sidley.com*
    John W. McBride (*Pro Hac Vice*)
    *jwmcbride@sidley.com*
    SIDLEY AUSTIN LLP
    One South Dearborn
    Chicago, Illinois  60603
    (312) 853-7000 – Telephone
    (312) 853-7036 – Facsimile

9   *Attorneys for Huawei Technologies Co., Ltd.,*
    *Huawei Device USA, Inc., Huawei Technologies*
10  *USA, Inc., and HiSilicon Technologies Co. Ltd.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| HUAWEI TECHNOLOGIES CO., LTD., HUAWEI DEVICE USA, INC., and HUAWEI TECHNOLOGIES USA, INC., <br><br>    Plaintiffs / Counterclaim-Defendants, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., <br><br>    Defendants / Counterclaim-Plaintiffs, <br><br> and <br><br> SAMSUNG RESEARCH AMERICA, <br><br>    Defendant, <br> v. <br><br> HISILICON TECHNOLOGIES CO., LTD., <br><br>    Counterclaim-Defendant. | Case No. 16-cv-02787-WHO <br><br> **HUAWEI'S OPPOSITION TO SAMSUNG'S MOTION TO ENJOIN HUAWEI FROM ENFORCING THE INJUNCTION ISSUED BY THE INTERMEDIATE PEOPLE'S COURT OF SHENZHEN** <br><br><br> Hearing Date: March 14, 2018 <br> Time:  2:00 PM <br> Judge: Hon. William H. Orrick <br><br> **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 4

    A.    The Parties ............................................................................................... 4

    B.    The Parties' Negotiation History ........................................................... 5

    C.    The Litigation ......................................................................................... 8

    D.    The Shenzhen Court Decision ..............................................................10

III.    APPLICABLE LAW ..........................................................................................11

IV.    ARGUMENT ....................................................................................................12

    A.    *Microsoft v. Motorola* Does Not Support Samsung's Proposed Anti-Suit Injunction. ...........................................................................................13

    B.    Samsung's Proposed Injunction Fails the Ninth Circuit's *Gallo* Test. .................15

        1.    Samsung Contradicts Its Own Litigation Position in Claiming this Case Is Dispositive of the Chinese Action. ..........................................................15

        2.    The *Unterweser* Factors Do Not Support an Anti-Suit Injunction. ...........17

        3.    Samsung's Proposed Anti-Suit Injunction Would Offend Comity. ..........22

    C.    Samsung Fails to Establish Any Entitlement to the Extraordinary Remedy of a Preliminary Injunction. ......................................................................................23

        1.    Samsung Fails to Show it Would Be Irreparably Harmed. ......................23

        2.    The Balance of Equities Favors Huawei, Not Samsung. .........................24

        3.    The Proposed Anti-Suit Injunction Is Not in the Public Interest. ............25

V.    CONCLUSION .................................................................................................25

Huawei's Opposition to Samsung's Motion to Enjoin Huawei From Enforcing
The Injunction Issued by The Intermediate People's Court of Shenzhen
Case 16-cv-02787-WHO

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alliance for the Wild Rockies v. Pena,*
  865 F.3d 1211 (9th Cir. 2017)................................................................12, 23

*Apple Inc. v. Motorola, Inc.,*
  757 F.3d 1286 (Fed. Cir. 2014).......................................................3, 18, 21, 23

*Apple Inc. v. Qualcomm Inc.,*
  No. 3:17-cv-108-GPC-MDD, 2017 WL 3966944 (S.D. Cal. Sept. 7, 2017)........................22, 23

*Apple Inc. v. Samsung Electronics Co. Ltd.,*
  No. 5-11-cv-01846 (N.D. Cal. June 30, 2011)............................................. 19

*Caplan v. Fellheimer Eichen Braverman & Kaskey,*
  68 F.3d 828 (3d Cir. 1995)............................................................. 24

*China Trade & Dev. Corp. v. M.V. Choong Yong,*
  837 F.2d 33 (2d Cir. 1987)............................................................11, 17

*Credit Suisse v. U.S. District Court for the Central District of California,*
  130 F.3d 1342 (9th Cir. 1997)........................................................... 19

*Delgado v. Plaza Las Americas, Inc.,*
  139 F.3d 1 (1st Cir. 1998)............................................................. 21

*Dotster, Inc. v. Internet Corp. for Assigned Names and Numbers, Etc.,*
  296 F. Supp. 2d 1159 (C.D. Cal. 2003) ................................................. 24

*E. & J. Gallo Winery v. Andina Licores S.A.,*
  446 F.3d 984 (9th Cir. 2006)...................................................... *passim*

*Gau Shan Co., Ltd. v. Bankers Trust Co.,*
  956 F.2d 1349 (6th Cir. 1992)........................................................12, 23

*Laker Airways Ltd. v. Sabena, Belgian World Airlines,*
  731 F.2d 909 (D.C. Cir. 1984) ........................................................12, 17

*Microsoft Corp. v. Motorola, Inc.,*
  696 F.3d 872 (9th Cir. 2012)...................................................... *passim*

*Microsoft Corp. v. Motorola, Inc.,*
  795 F.3d 1024 (9th Cir. 2015)........................................................14, 15

*Microsoft Corp. v. Motorola, Inc.,*
  871 F. Supp. 2d 1089 (W.D. Wa. 2012) ...............................................13, 25

*Microsoft Corp. v. Motorola, Inc.*,
  No. C10-1923JLR, 2013 WL 2111217 (W.D. Wa. Apr. 25, 2013) ................................13, 14, 25

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) ............................................................................................................16, 17

*In re Philippine Nat'l Bank*,
  397 F.3d 768 (9th Cir. 2005).................................................................................................. 19

*U.S. v. Kashamu*,
  656 F.3d 679 (7th Cir. 2011).................................................................................................. 15

*United States v. Georgia-Pacific Co.*,
  421 F.2d 92 (9th Cir. 1970) ................................................................................................... 16

*Ventura Cty. Christian High Sch. v. City of San Buenaventura*,
  233 F. Supp. 2d 1241 (C.D. Cal. 2002) ................................................................................. 24

*W.S. Kirkpatrick & Co. v. Envt'l Tectonics Corp. Int'l*,
  493 U.S. 400 (1990) ............................................................................................................... 19

*Walia v. Aegis Center Point Devs. Private Ltd.*,
  2014 WL 296003 (N.D. Cal. Jan. 27, 2014) .......................................................................... 15

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ................................................................................................................... 12

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
  433 F.3d 1199 (9th Cir. 2006)................................................................................................ 19

1    Plaintiffs Huawei Technologies Co., Ltd., Huawei Device USA, Inc. and Huawei

2    Technologies USA, Inc. (collectively, "Huawei") hereby provides its opposition to Samsung's

3    Motion to Enjoin Huawei From Enforcing The Injunction Issued By The Intermediate People's

4    Court of Shenzhen (Dkt. Nos. 234-35 ("Br.")).

5    **I.      INTRODUCTION**

6         On January 11, 2018, the Intermediate People's Court of Shenzhen, China ("Shenzhen

7    Court") found that Samsung infringed two of Huawei's Chinese patents and issued an injunction that

8    will not become effective unless and until it is affirmed by the appellate court.  Before issuing that

9    injunction, the Shenzhen Court made detailed findings that the patents are infringed and that Huawei

10   has fully complied with its fair, reasonable and non-discriminatory ("FRAND") licensing obligations

11   and Samsung has not.  Having lost the case, Samsung now asks this Court to enter an extraordinary

12   preliminary injunction that would bar Huawei from ever enforcing this injunction.  Samsung cannot

13   come close to meeting the stringent factual and legal requirements for such relief.

14        Samsung's argument that this lawsuit will dispose of the issues in the Chinese litigation and

15   that the Chinese litigation somehow undercuts the jurisdiction of this Court stands in stark contrast

16   to the crabbed view of the scope of this case that Samsung has urged before.  While Huawei has

17   consistently asked that this Court to set worldwide FRAND rates for the standard essential patent

18   ("SEP") portfolios of Huawei and Samsung in a voluntary effort to resolve the contractual dispute

19   between them (including in China), Samsung has resisted that request at every turn and has even

20   gone so far as to deny the jurisdiction of this Court to do so despite the fact that the U.S. is its largest

21   market.  And while Samsung now claims that this Court—and *only* this Court—should adjudicate

22   the parties' compliance with their FRAND obligations, Samsung has also consistently maintained

23   that whether a party has *any* FRAND obligation (and what the FRAND rate might be for any

24   particular patent) can only be determined after that patent had been determined to be valid,

25   enforceable, infringed, and essential.  This action will resolve those issues only with respect to no

26   more than the ten asserted U.S. patents eventually tried.  Under Samsung's view, then, the Court

27   would be in a position to evaluate the parties' FRAND (and antitrust) compliance only with respect

28   to any of those ten patents found to be valid, enforceable, infringed, and essential.  Samsung's

approach would leave the parties' FRAND licensing dispute as to all other SEPs (in China and around the world) entirely unresolved.

Samsung cannot have it both ways.  It cannot pretend that this Court will dispose of patent litigation in other countries in order to derail those lawsuits while maintaining its challenge to the basic authority of this Court to do so.  Huawei's posture, by contrast, has been forthright and consistent—it has always asserted that this Court has the power to set worldwide FRAND rates for the parties' portfolios (as Judge Selna's recent decision in *TCL Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson* yet again confirms), that it will abide by those rates and suspend foreign litigation involving its SEPs, once Samsung agrees to be bound by the terms set by this Court or an arbitral tribunal.  But while those issues are disputed and remain in doubt, Huawei has every right to pursue independent actions on its patents in other countries.

That is why this case is the polar opposite of *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872 (9th Cir. 2012) ("*Microsoft II*"), the case on which Samsung primarily relies.  In that case, the party seeking the anti-suit injunction, Microsoft, had asked the U.S. court to set FRAND rates for Motorola's SEPs, and both parties agreed to that procedure.  Moreover, the Court had declared that it would do so in short order and in advance of any patent infringement trials.  Motorola then attempted an end-run around the previously agreed-upon U.S. procedure by seeking a crippling injunction in Germany, where the court did not recognize Microsoft's breach of FRAND defenses.

Samsung's attempt to analogize its situation to Microsoft's is transparently false.  Unlike Microsoft, Samsung has never agreed to let a U.S. court set worldwide FRAND rates, and the Court here has not yet ruled on the parties' disputed views of its authority to do so.  Unlike Microsoft, Samsung has had a full opportunity to adjudicate FRAND compliance in the foreign proceedings, and it lost.  Unlike Microsoft, Samsung does not face the prospect of a crippling foreign injunction unless it capitulates and takes a license on the other side's terms—to the contrary, all Samsung needs to do to end all of the patent cases in the U.S. and abroad is to agree that a third party, be it an arbitration panel or this Court, will set true FRAND rates for both sides' portfolios.

Moreover, Samsung cannot make the requisite showing that preventing the litigation in China from taking its course is necessary to vindicate any overriding U.S. policy, concerns about

2

HUAWEI'S OPP. TO SAMSUNG'S MOT. TO ENJOIN HUAWEI FROM ENFORCING THE INJUNCTION
ISSUED BY THE INTERMEDIATE PEOPLE'S COURT OF SHENZHEN, CASE 16-CV-02787-WHO

vexatious or oppressive litigation, or other equitable considerations.  As set forth in a Federal Circuit decision Samsung fails to cite, there is no "*per se* rule that injunctions are unavailable for SEPs," and "an injunction may be justified where" (as the Shenzhen Court found was true of Samsung) the infringer "unilaterally refuses a FRAND royalty or unreasonably delays negotiations to the same effect." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1331-32 (Fed. Cir. 2014).  U.S. antitrust regulators take the same position, as has Samsung in other litigation where it has argued that "[w]hen faced with an intransigent licensee engaging in 'reverse hold-up,' a standards-essential patent holder has the right to seek and receive *any* statutory remedies available to it." Ex. 1 at 7 (emphasis added)[1].  In light of Samsung's tactics, Huawei properly sought to enforce the FRAND obligation in multiple forums, including seeking relief for infringement of its Chinese patents in the only court it could.  Samsung resisted a FRAND determination in this Court, and participated fully in the Shenzhen Court proceedings.  It would be inequitable to gratify Samsung's inconsistent positions with a "do-over" of the Shenzhen Court's determination that Samsung breached its FRAND obligations.

Indeed, granting the anti-suit injunction in these circumstances would intolerably and impermissibly offend comity by undermining the outcome of a full and fair proceeding in China – a proceeding whose outcome leaves Samsung unhappy but whose fairness is not seriously questioned.  The Shenzhen Court made extensive and detailed findings and concluded that Samsung infringed Huawei's patents and, ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████, it granted an injunction against Samsung's continuing infringement.  Samsung can appeal the Shenzhen Court's ruling (and it has), and the injunction issued in the first instance by the Shenzhen Court will not be enforceable until that appeal is resolved.  But Samsung's motion asks this Court to undercut that appeal and presume that the Shenzhen Court reached the wrong result.  If anything, the factual findings of the Shenzhen Court

---

[1] Unless otherwise noted, exhibits cited herein are exhibits attached to the Declaration of Nathan Greenblatt in Support of Huawei's Opposition to Samsung's Motion to Enjoin Huawei from Enforcing the Injunction Issued by the Intermediate People's Court of Shenzhen.

should be accepted, fatally undercutting Samsung's motion, since findings from foreign courts (including Chinese courts) operate as collateral estoppel in U.S. proceedings.

Finally, Samsung does not even argue, much less establish, the other prerequisites for the extraordinary remedy of a preliminary injunction.  Samsung fails to show irreparable harm or that injunctive relief would be in the public interest.  Samsung's shifting tactics and the Shenzhen Court's determination that Huawei complied with FRAND confirm that the equities favor Huawei, not Samsung.  Regardless, the speculative "harms" suggested by Samsung's motion are entirely self-inflicted in light of Samsung's refusal to accept a FRAND cross-license with Huawei or even to accept the resolution of the underlying dispute by a neutral third party, including this Court.

Samsung's motion for an anti-suit injunction should thus be denied.

## II.   BACKGROUND

### A.   The Parties

Founded in 1987, Huawei has become a Fortune 500 company and a global leader in the telecommunications industry.  Huawei devotes significant resources to R&D, much of which is focused on developing and improving cellular network technology standards, such as the 3G UMTS and 4G LTE standards developed by the Third Generation Partnership Project ("3GPP") and promulgated by standard setting organizations like the European Telecommunications Standards Institute ("ETSI").

As of mid-2016, Huawei had disclosed to ETSI over 1,200 patent families (each of which may contain multiple patents) that are or may be essential to practicing one or more of the 3GPP standards.  (Dkt. 59, Exs. 2.1-2.43).  Huawei has committed to license these patents on FRAND terms and conditions according to the ETSI IPR Policy on the condition that those seeking a license from Huawei agree to make their SEPs available to Huawei on FRAND terms as well.  (*Id.*)

Like Huawei, Samsung is a member of 3GPP and ETSI.  As of mid-2016, Samsung had submitted at least 53 declarations disclosing hundreds or thousands of patents that may be or become essential to 3GPP standards.  (Dkt. 59, Exs. 3.1-3.53.)  Samsung has likewise committed to license those patents on FRAND terms and conditions subject to reciprocity.  (*Id.*)

**B.     The Parties' Negotiation History**

Huawei and Samsung began discussing a cross-license in 2011.  Initially, Samsung insisted that the parties negotiate ███████████████████████████████████████ ██████████████████████████████████████████████████████████ (Ex. 8 at HW_Samsung_001306997.) ████████████████████████████████████ (Ex. 9 at HW_Samsung_00131196; Ex. 36 at HW_Samsung_00130704).  In May 2013, Samsung agreed to discuss ██████████████████████ (Ex. 10), ████████████████████████████ █████████████████████████████████████████ ███████████████████████████████████ (Ex. 11). ██████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████ (Ex. 12.) ██████████ ██████████████████████████████████████████████████ ██████████████████████████████████████ (Ex. 13 at HW_Samsung_001321544-55.) ██████████████████████████████████████████ ████████████. (Ex. 14.) ██████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████ (Ex. 15.) ███████████████████████████ ████████ (Ex. 16.) █████████████████████████████████████ ██████████████████████████████████████ ████████████████████████ (Ex. 17 at HW_Samsung_00230843.) ██████████████████████████████████████████ ████████████████████. (Ex. 18 ███████████████████████ █████; Ex. 19 █████████████████████████████████████████ ████████████████████████ Throughout this period, Huawei repeatedly asked Samsung to ██████████████████████████████████████

5

1      █████████████████████████████████████████ (Ex. 21 at HW_Samsung_00132220; Ex. 18 at

2    HW_Samsung_00230922; Ex. 19 at HW_Samsung_00230934; Ex. 20 at HW_Samsung_00230947.)

3        After Huawei escalated the issue within the parties' organizations, ████████████████

4    ████████████████████████ (Ex. 22; Ex. 23) ██████████████████████████████

5    ███████████████████████████████████████████████████████ (Ex. 24 at

6    HW_Samsung_00231198, 200.)

7        Over five years of pre-suit negotiations, Huawei made ██████████████████████.

8    *See, e.g.*, Ex. 36 to Dkt. 234 ("Shenzhen Dec.") at 66-90, 186 ████████████████████

9    ███████)². ███████████████████████████████████████

10   ████████████████████████████████████████████████████

11   ████████████████ (Ex. 9 at HW_Samsung_00131196). ████████████████████████

12   ███████████████████████████ (Ex. 20.) ████████████████████████

13   ███████████████████████████████████████████████████████

14   ██████████████████████ (Ex. 25 at HW_Samsung_00000018.)⁴ ███████████████

15   ██████████████████████.⁵  (Exs. 26-27.)

16   ─────────────────

17   ² For purposes of this motion only, Huawei accepts the accuracy of the certified translation of the
Shenzhen Court's decision included with Samsung's motion.

18   ³ Samsung itself has begun negotiations with a similar (but higher) opening offer..  In connection
with an action it brought against Apple in the International Trade Commission, Samsung

19   acknowledged that it had made an opening offer to Apple of 2.4% for a license to its portfolio of 3G
SEPs, which it claimed "was in line with other published headline FRAND rates in the industry."

20   Ex. 2, Complainant Samsung's Corrected Response to Apple's Submission in Response to
Commission Notice of Review, Inv. 337-TA-794, at 11-12, 18; Shenzhen Dec. at 122.  Huawei's

21   ███████████ from which it negotiates is in line with the published headline rates of others in
the industry, including Ericsson. *See* Shenzhen Dec. at 117-118, 202 (████████████████████

22   ████████████████████████████████).

23   ⁴ Samsung claims that Huawei's views on the desired scope of the license varied "wildly" over time.
(Br. 8.) █████████████████████████████████████████████████████████

24   focused █████████████████████████████████████████████████████████████

25   ███████████ (*See, e.g.*, Ex. 29 at HW_Samsung_00131588 ███████████████████

26   ████████████████████████████████████████████████████████

27   ⁵ ████████████████████████████████████████████████ (Ex. 27.)

28

1    In July 2015, four years after negotiations had begun, █████████████

2    ████████████████████████████████████████. (Ex. 28.) █████████

3    ████████████████████████████████████████████████████

4    ████████████████████████████████████████ (*Id.*) ███████

5    ████████████████████████████████████████████████████

6    ████████████████████████████████████████ (*Id* .)  For a

7    number of reasons, Huawei viewed this offer to be unserious. [6]  (*See, e.g.,* ; Ex. 31 at

8    HW_Samsung_00848357; Ex. 26.) ██████████████████████████

9    ████████████████████████████████████████████████████

10    ██████████████. [7]

11    Throughout the course of the parties' negotiations, Huawei offered ███████

12    ████████████████████████████████████████████████████

13    ████████████████████████████████████████████████████

14    ██████████████████████████████ █████████████████

15    ██████████████████

16    ────────────────────

17    [6] The royalty rate that Samsung derived ████████████████
     ────────────is out of line with the rates typically paid and received in the industry.  Samsung has paid

18    other comparable holders of SEPs like Ericsson and Nokia billions of dollars for licenses to their
     SEPs while at the same time it proposed to pay Huawei ██████████ (Ex. 28; Exs. 38-40.)

19    Indeed, Samsung's proposed rate of ████████████ rate (0.314%)
     recently determined by a U.S. court to be FRAND for Ericsson's comparable portfolio of LTE SEPs.

20    *See* Ex. 3, *TCL Comm'n Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, Case No. 8:14-cv-
     00341-JVS-DFM, Memorandum of Findings of Fact and Conclusions of Law (Dkt. 1802) at 114

21    (C.D. Cal. Dec. 21, 2017). ████████████████████████████████

22    ████████████████████████████ Samsung itself reportedly paid InterDigital $500
     million for a five-year license to InterDigital's complete, global portfolio.  *See* Ex. 5.  Like Huawei,

23    ████████████████████████████████████████████████████

24    ████████████████████████████████

25    [7] ████████████████████████████████████████████████

26    ███ (Wang Decl. at ¶ 19.) ████████████████████████████████

27    ████████████████████████████ (*Id.*)

28    [8] ████████████████████████████████████████████████

### C.     The Litigation

Given the lack of meaningful progress in negotiation of a cross-license over the prior five years, by early 2016, Huawei concluded that it had no choice but to seek to enforce its patent rights. To that end, on May 24-25, 2016, Huawei filed actions in the United States and China, asserting several of its declared SEPs and requesting that the courts assess the parties' compliance with their respective FRAND requirements under ETSI's IPR policy (among other requested remedies).[9] In the infringement actions it brought in China, Huawei sought orders requiring Samsung to cease and desist from infringing its SEPs. Huawei notified Samsung of these actions when the lawsuits were filed. (Ex. 35.)

In the instant U.S. action, Huawei brought claims alleging that Samsung infringes eleven U.S. patents that Huawei claims are SEPs and, that through its failure to negotiate a FRAND cross-license in good faith, Samsung has breached its contractual FRAND licensing obligations under the ETSI IPR Policy. In addition, Huawei sought a declaratory judgment of the FRAND terms of a cross-license between the parties. Huawei's Complaint included a prayer for relief seeking an order prohibiting Samsung from seeking injunctive relief against Huawei which was predicated on the view that there would be no basis for an injunction if, as requested, the Court declared the terms of a FRAND license to Samsung's SEPs given Huawei's expressed willingness to enter such a license. Huawei has not sought preliminary injunctive relief attempting to halt any of the fourteen actions that Samsung itself brought in China seeking injunctive relief against Huawei on the basis of its alleged infringement of Samsung's SEPs, seven of which remain pending. (Wang Decl. ¶¶ 2-8.)

Subsequent to the filing of the parties' respective injunction actions in China, Huawei informed Samsung that it ███████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

(*See* Exs. 32-33, (████████████████████████████████████████████).)

[9] Samsung complains that Huawei has not sought damages in the Shenzhen actions. However, Samsung's counsel notes that Huawei has also initiated a FRAND rate-setting action in China, seeking to set the rate on all China LTE SEPs, so in effect Huawei has sought damages on the asserted Chinese SEPs. (*See* Xie Decl. at ¶ 22 (describing the rate setting action as specific to LTE Chinese patent portfolios).) Moreover, Samsung itself has not sought damages in the SEP infringement actions it has filed in China against Huawei. (Wang Decl. at ¶¶ 3-4.)

8

HUAWEI'S OPP. TO SAMSUNG'S MOT. TO ENJOIN HUAWEI FROM ENFORCING THE INJUNCTION
ISSUED BY THE INTERMEDIATE PEOPLE'S COURT OF SHENZHEN, CASE 16-CV-02787-WHO

1 ██████████████████████████████████████████████████████

2 ████████████████████████████████████████ (Ex. 31, Sept. 6, 2016 Letter.)  Samsung

3 declined to do so.  ██████████████████████████████████████

4 ████████████ (Exs. 32-34.)  And, in this Court, Samsung not only resisted Huawei's subsequent

5 request that the parties' FRAND claims be bifurcated for prompt resolution, Samsung has repeatedly

6 challenged the power of this Court to set FRAND royalties for the parties' SEP portfolios.  (Dkt. 67

7 at 5-9; Dkt. 85.)  Samsung's counsel has repeatedly argued that before compliance with *any*

8 obligation under the ETSI IPR Policy could be assessed, it must be shown that the patent is valid,

9 enforceable, infringed, and essential.  (Dkt. 67 at 6 ("In order for the Court to determine that either

10 party has breached its FRAND obligations … a jury must first determine disputed questions of

11 patent validity, infringement, enforceability and essentiality to the relevant standards . . . ."); *id.* at 7

12 ("[T]hese patent issues [infringement, validity, and essentiality] are inextricably intertwined with the

13 FRAND and antitrust claims and must be resolved *before* the Court can properly address remedies . .

14 . .") (emphasis added); Dkt. 82 at 11 (As a "prerequisite" to any obligation under the ETSI IPR

15 Policy "you got to show it's infringed, and you got to show it's essential"); Dkt. 85 at 2 ("a

16 necessary element of a contract claim …involves assessing whether and to what extent [the] patents

17 are valid, infringed, enforceable, and essential to the relevant ETSI standard").  Samsung denies that

18 any of the patents asserted by Huawei—including the patents asserted in the Shenzhen Action—are

19 valid, enforceable, infringed and essential.  (Dkt. 67 at 7 ("Samsung denies any unauthorized use of

20 any valid, enforceable, and essential patent in Huawei's complaint."); Shenzhen Dec. at 16-18

21 (██████████████████████████████████████████████████████

22 ████████████████████████████████████

23      Samsung has also never consented to a global or U.S. SEP portfolio FRAND rate

24 determination by this Court.  Samsung has argued that a global FRAND determination is

25 unworkable in part because it would require consideration of the parties' non-U.S. patents.[10]  (Dkt.

26

27 [10] Although Huawei believes that the Court has the power to set worldwide rates given the global
scope of the parties' patents subject to underlying FRAND commitments, the parties' prior
negotiations, and the parties' global sales of standard compliant products, *see Microsoft II*, 696 F.3d

28

9

HUAWEI'S OPP. TO SAMSUNG'S MOT. TO ENJOIN HUAWEI FROM ENFORCING THE INJUNCTION
ISSUED BY THE INTERMEDIATE PEOPLE'S COURT OF SHENZHEN, CASE 16-CV-02787-WHO

1   67 at 7.)  More fundamentally, Samsung has repeatedly insisted that the Court simply lacks the

2   power to set the FRAND terms of a cross-license between the parties, arguing that even if the

3   asserted patents are shown to be valid and infringed, "that does not justify the Court going beyond

4   that and setting a worldwide rate … based on [the] 11 [asserted] patents."  (Dkt. 82 at 12.)

5   According to Samsung's counsel, "Federal courts don't do that."  (*Id*; *see also id.* at 14 ("So the

6   request under the dec[lartory] relief claim [seeking the setting of FRAND terms of a cross-license]

7   … makes absolutely no sense.  It's not feasible .... [and] there are serious issues as to whether it

8   would be appropriate for a court do that.").  Indeed, Samsung has explicitly argued that, absent its

9   consent—which it has refused to provide (Dkt. 67 at 8)—"the Court has no jurisdiction to 'set'

10  FRAND terms for a general cross license."  (Dkt. 67 at 7; *see also id.* at 2 (asserting that Huawei had

11  failed to establish subject matter jurisdiction over the FRAND rate setting claims and reserving right

12  to seek dismissal with respect to that claim); Dkt. 85 at 4 n.1 (same).)

### D.   The Shenzhen Court Decision

14      In the proceedings before the Shenzhen Court, the court resolved ██████████ (1) whether

15  Samsung has infringed the asserted Huawei SEPs and (2) if so, whether Huawei and Samsung had

16  complied with their respective FRAND obligations such that an injunction against further

17  infringement should issue.  *See, e.g.*, Shenzhen Dec. at 177, 30.  As Samsung acknowledges, "[a]s a

18  predicate for its request for injunctive relief," Huawei asked the Shenzhen Court to "resolve whether

19  [Huawei's] licensing efforts… were FRAND, and whether Samsung refused FRAND offers and

20  breached its own FRAND obligations."  (Br. 15.)

21      The Shenzhen Court's evaluation of these issues entailed an extensive presentation of

22  evidence, expert opinion, and argument related to both infringement and the parties' FRAND

23  compliance.  ████████████████████████████████████████

24  ████████████████████████████████████████████

25  █████████████████████████, witness testimony, and voluminous

26  _____

27  at 885 ("[I]t is clear that there is a contract, that it is enforceable by Microsoft, and that it
    encompasses not just U.S. patents but also the patents at issue in the German suit."), to the extent it
    would resolve Samsung's objection, Huawei would be willing to confine the rate-setting

28  determination in this Court to the parties' respective portfolios of U.S. SEPs.

documentation.  *See, e.g.* Shenzhen Dec. at 5-23 (███████████████████████████████████████

███████████████████████████████████████████████████████), 104-120

███████████████████████████████████████████████████); Wang

Decl., ¶¶ 10-14. ███████████████████████████████████████.

(Wang Decl., ¶ 13.)

      Based on the evidence presented, the Shenzhen Court found that ████████████

███████████████████████████████████████████████████████

████████████ Shenzhen Dec. at 205. █████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████ *See*

Shenzhen Dec. at 200-203.

      As to Samsung, the Shenzhen Court found that that ███████████████

███████████████████████████████████████████████████████

██████████████████████████████. Shenzhen Dec. at 180.  It found further that

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████ *Id.* at 185.  The court faulted Samsung for

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████ *Id.* at 186, 199, and 204-05.

The Shenzhen Court concluded that ████████████████████████████████████

██████████████ *Id.* at 204.

## III.   APPLICABLE LAW

      "Foreign anti-suit injunctions should not be issued routinely."  *Microsoft II*, 696 F.3d at 889.

*See E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 989 (9th Cir. 2006) (power to issue

anti-suit injunctions "should be used sparingly") (quoting *Seattle Totems Hockey Club, Inc. v. Nat'l

Hockey League*, 652 F.2d 852, 855 (9th Cir. 1981); *see also China Trade & Dev. Corp. v. M.V.*

11

*Choong Yong*, 837 F.2d 33, 36 (2d Cir. 1987) (anti-suit injunctions should be "used sparingly"); *Gau Shan Co., Ltd. v. Bankers Trust Co.*, 956 F.2d 1349, 1354 (6th Cir. 1992) ("Comity dictates that foreign antisuit injunctions be issued sparingly and only in the rarest of cases."); *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 927 (D.C. Cir. 1984) (anti-suit injunctions should be issued "only in the most compelling circumstances").

An anti-suit injunction is a form of preliminary injunction.  *See Gallo*, 446 F.3d at 990; *Microsoft II*, 696 F.3d at 883-84 (reviewing a "preliminary injunction [that] is also an anti-suit injunction").  In the Ninth Circuit, a party seeking a preliminary injunction must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Alliance for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017), quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).[11]

However, "when a preliminary injunction is also a foreign anti-suit injunction, the likelihood-of-success aspect of the traditional preliminary injunction test is replaced by the *Gallo* test." *Microsoft II*, 696 F.3d at 883-84.  The *Gallo* test is a three-part inquiry.  *Id.* at 881.  First, the Court determines "whether or not the parties and the issues are the same in both the domestic and foreign actions, and whether or not the first action is dispositive of the action to be enjoined." *Id.* (quotation marks omitted).  Second, the Court determines whether one or more *Unterweser* factors apply, inquiring whether the foreign litigation would "(1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's *in rem* or *quasi in rem* jurisdiction; or (4) where the proceedings prejudice other equitable considerations." *Microsoft II*. 696 F.3d at 881-82, quoting *Gallo*, 446 F.3d at 990.  Third, the Court assesses "whether the injunction's impact on comity is tolerable." *Microsoft II*, 696 F.3d at 881 (quotation marks omitted).

## IV.    ARGUMENT

The stringent legal requirements for a preliminary, foreign anti-suit injunction require that Samsung establish that this case can dispose of the Chinese action, that Huawei's Chinese action is

---

[11] Alternatively, a preliminary injunction may still issue where the plaintiff makes a lesser showing of likelihood of success on the merits if the balance of hardships factor "tips sharply in the plaintiff's favor," and the other *Winter* factors are satisfied. *Alliance for the Wild Rockies*, 865 F.3d at 1217.

somehow inequitable, and that the anti-suit injunction Samsung seeks would not offend comity.
Samsung must also establish the other, traditional elements of a preliminary injunction.  Attempting
to dodge these strict requirements, Samsung wraps itself in the Ninth Circuit's anti-suit injunction
decision in *Microsoft II*.  But that attempt fails, for reasons that illustrate why Samsung's motion
cannot meet the strict requirements for the extraordinary relief it seeks.

> **A.**   ***Microsoft v. Motorola* Does Not Support Samsung's Proposed Anti-Suit Injunction.**

Samsung relies almost entirely on *Microsoft v. Motorola*, in which the Ninth Circuit affirmed
an anti-suit injunction barring Motorola from enforcing a German injunction on standard-essential
patents against Microsoft.  (*E.g.*, Br. 11, 13, 16, 19-21.)  Samsung's attempt to cast itself in the role
of Microsoft, which committed to accept FRAND rates set by the U.S. court, is perverse.

Microsoft initiated a FRAND contract suit in U.S. district court against Motorola to establish
its right to a FRAND license from Motorola, and asked the court to set a FRAND royalty.  *Microsoft
Corp. v. Motorola, Inc.*, 871 F. Supp. 2d 1089, 1099 (W.D. Wa. 2012) ("*Microsoft I*").  For the
purposes of that proceeding, and in order to obtain a FRAND license, Microsoft did not contest the
essentiality or infringement of Motorola's standard-essential patents.  *See Microsoft Corp. v.
Motorola, Inc.*, No. C10-1923JLR, 2013 WL 2111217, at *59, *61 (W.D. Wa. Apr. 25, 2013)
("*Microsoft III*").  In short, Microsoft did everything it could to ensure that it could obtain a license
from Motorola on FRAND terms, and the U.S. district court confirmed its intent to set those terms.
*Microsoft I*, 871 F. Supp. 2d at 1099 ("[T]he court will conduct a trial to determine such terms,
including a determination of a RAND royalty rate.").

Samsung has refused to accept any of the positions that made the anti-suit injunction in
*Microsoft* appropriate.  In contrast to *Microsoft*—where Microsoft sought and Motorola consented to
a FRAND determination—Samsung insists this is not a proceeding that can set a FRAND rate for
Huawei's patents.  Further, unlike the party seeking an anti-suit injunction in *Microsoft*, Samsung
refuses to concede that Huawei's patents are standard-essential, and insists on contesting
infringement and validity of thousands of patents on a patent-by-patent basis (a practical

impossibility) rather than determining a FRAND royalty at the portfolio level as the *Microsoft* court did.  *See* § II.C, *supra*.

Nor can Huawei's litigation conduct be in any way analogized to Motorola's conduct in *Microsoft II*.  Huawei filed its Chinese and U.S. suits at the same time because it did not know what aspects of the larger dispute each court would be willing to resolve; it was not an end run around this action.  Huawei's preferred course was to have a single forum (be it this Court or an arbitral tribunal) determine the terms of a FRAND cross-license to the parties' SEPs, thus mooting any other litigation.  But Samsung resisted that approach, and has objected to any global FRAND determination here.  Because Samsung has not presented its objection formally, the Court has not yet ruled on it.  While Huawei believes the Court unquestionably has the power to do so, given Samsung's prior positions, Huawei expects that Samsung will attempt to prevent this from occurring through motion practice before trial.[12]  At least until Samsung agrees to allow and be bound by the FRAND determination by this Court or the Court has ruled on Samsung's objections to the procedure, Huawei is fully justified in pursuing other cases.

In sharp contrast to Huawei's efforts, Motorola filed its German suit in an effort to derail the U.S. FRAND case already in progress.  *See Microsoft II*, 696 F.3d at 879, 886.  While the Shenzhen Court explicitly found Huawei's negotiation conduct consistent with FRAND, Motorola pursued an injunction in Germany while demanding royalties that the district court later determined were vastly in excess of FRAND.  *Compare Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1053 (9th Cir. 2015) ("*Microsoft IV*") ("[T]he jury could infer that demanding a 2.25% royalty rate was not a good-faith effort to realize the value of the technology . . . .") *with Microsoft III*, 2013 WL 2111217, at *101 (court-determined RAND royalty rates for Motorola's patents total approximately 4 cents per

---

[12] Samsung has strategically sought to reserve its right to present such an objection.  Dkt. 67 at 2 ("Samsung contends that Huawei, as yet, has not set forth a sufficient basis for its request for Declaratory Judgment of FRAND Terms and Conditions for a Cross-License, and Samsung reserves its rights to seek dismissal or other appropriate relief on any such claim, including on the basis of lack of subject matter jurisdiction."); Dkt. 85 at 4 n.1 (same).

Xbox, or less than 0.02% per unit).  Motorola's suit thus served no purpose other than to force Microsoft to accept non-FRAND terms.  *See Microsoft IV*, 795 F.3d at 1046.[13]

Finally, Samsung's discussion of the Shenzhen decision leaves out an additional, critical distinction with *Microsoft v. Motorola*.  As the Ninth Circuit observed, the German court "rejected the argument that Motorola's [F]RAND commitment … created a contract enforceable by Microsoft," and issued an injunction following a finding of infringement.  *Microsoft II*, 696 F.3d at 879.  The German court thus issued its injunction without ever evaluating whether Motorola had complied with its FRAND commitment.  In contrast, the Shenzhen Court considered and decided the underlying FRAND issues *before* determining that an injunction may issue, because Samsung (the infringer) had not complied with FRAND.  Those findings demonstrate the propriety of the Shenzhen Court's injunction, and also why it should give rise to collateral estoppel effect in the U.S. when final.  *See Walia v. Aegis Center Point Devs. Private Ltd.*, 2014 WL 296003 at *2 (N.D. Cal. Jan. 27, 2014) ("Collateral estoppel applies to foreign judgments so long as the parties in the prior action were afforded due process rights."); *see also U.S. v. Kashamu*, 656 F.3d 679, 683 (7th Cir. 2011) ("U.S. court[s] [] generally give preclusive effect to [a] foreign court's finding as a matter of comity.").

**B.      Samsung's Proposed Injunction Fails the Ninth Circuit's *Gallo* Test.**

In order to demonstrate any entitlement to an anti-suit injunction, Samsung must establish all three elements of the *Gallo* test.  But as demonstrated below, the first *Gallo* element contradicts Samsung's entire theory of this case, and Samsung cannot establish either of the remaining two elements.

**1.      Samsung Contradicts Its Own Litigation Position in Claiming this Case Is Dispositive of the Chinese Action.**

---

[13] The district court and Ninth Circuit later found that Motorola had consented to a determination of a FRAND rate in the U.S. court, and a jury determined that Motorola had breached its FRAND commitment by attempting to obtain injunctions against Microsoft while demanding excessive, non-FRAND royalties.  *Microsoft IV*, 795 F.3d at 1039, 1046-47.

The first *Gallo* inquiry concerns "whether or not the parties and the issues are the same in both the domestic and foreign actions, and whether or not the first action is dispositive of the action to be enjoined." *Microsoft*, 696 F.3d at 881 (quotation marks omitted).  Huawei does not dispute that the parties are functionally the same.[14]  However, Samsung's consistent position throughout the course of this case is that the issues before this Court are sharply limited.  Under Samsung's interpretation, this case is incapable of disposing of the Chinese action.  As Samsung concedes, the Shenzhen Court investigated FRAND compliance and found that Samsung had failed to comply with FRAND.  (Br. 9, 15.)  But in this proceeding, Samsung contends that the Court must resolve "disputed questions of patent validity, infringement, enforceability, and essentiality to the relevant standards before even reaching the FRAND issues."  (Dkt. 67 at 6.)  Samsung has also maintained that this Court lacks the authority to set a FRAND rate that would even potentially dispose of the Chinese action.  *See* § II.C, *supra*.

After insisting for more than a year that this case could not dispose of actions like the Chinese action, Samsung now asks this Court to ignore everything it said before.  But "[c]ourts derive the ability to enter an anti-suit injunction from their equitable powers," *Gallo*, 446 F.3d at 989, and Samsung's contradiction of its longstanding litigation position does not merit exercise of this Court's equitable power.  To the contrary, doctrines of estoppel counsel that Samsung should be barred from now claiming entitlement to an anti-suit injunction.  "Equitable estoppel prevents a party from assuming inconsistent positions to the detriment of another party." *United States v. Georgia-Pacific Co.*, 421 F.2d 92, 96 (9th Cir. 1970).  And judicial estoppel "protect[s] the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (quotation marks and citations omitted).

Here, Samsung insisted that this Court should not begin with the FRAND and perhaps never reach it at all.  While Huawei vigorously disagrees with those positions, it faced a risk that this Court might agree, and/or may otherwise decline to reach the FRAND issues.  Unless this Court or other appropriate forum as agreed by the parties sets a global FRAND rate, this case will not dispose of

---

[14] The parties are not identical.  Samsung Electronics Co., Ltd. is not a party to the Shenzhen cases.

Case 3:16-cv-02787-WHO   Document 240-3   Filed 02/20/18   Page 21 of 30

the dispute in China based on Chinese patents.  Accordingly, to ensure that Samsung's conduct in violation of FRAND be adjudicated, Huawei had no choice but to initiate and maintain actions elsewhere.  Now that the Shenzhen Court concluded that Samsung's conduct does not comport with FRAND, Samsung has reversed course.  Directly contradicting itself, Samsung now suggests that this case is "the centerpiece for [the parties'] worldwide contractual FRAND dispute" (Br. 17)— although Samsung carefully avoids making any commitment or consent that this Court can and should decide the FRAND terms of a *global* patent cross-license or the parties' FRAND compliance with respect to any patent before that patent has been conclusively determined valid, enforceable, infringed, and essential.  As the Supreme Court has observed, "judicial estoppel forbids use of intentional self-contradiction . . . as a means of obtaining unfair advantage."  *New Hampshire*, 532 U.S. at 751 (quotation marks and citations omitted).  Samsung's attempt to establish the first element of the equitable *Gallo* test thus fails.[15]

### 2.     The *Unterweser* Factors Do Not Support an Anti-Suit Injunction.

Even if this Court were to ignore Samsung's inconsistency, "duplication of parties and issues alone is not sufficient to justify issuance of an antisuit injunction."  *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 928 (D.C. Cir. 1984).  As the D.C. Circuit explained (in a decision the Ninth Circuit's *Gallo* decision relies on extensively, *see* 446 F.3d at 994), "[t]he mere filing of a suit in one forum does not cut off the preexisting right of an independent forum to regulate matters subject to its prescriptive jurisdiction."  *Laker Airways*, 731 F.2d at 927-28 (noting "the rule favoring parallel proceedings in matters subject to concurrent jurisdiction"); *see China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 36 (2d Cir. 1987) ("Since parallel proceedings are ordinarily tolerable, the initiation before a foreign court of a suit concerning the same parties and issues as a suit already pending in a United States court does not, without more, justify enjoining a

---

[15] While Samsung mentions its antitrust and contractual FRAND claims in passing, it fails to articulate any likelihood of success on those claims that could result in final relief enjoining Huawei from obtaining an injunction elsewhere.  (*See* Br. 12-17.)  As the Ninth Circuit held in *Microsoft II*, "a ballpark, tentative assessment of the merits of the contract dispute is intrinsically bound up with the threshold anti-suit injunction inquiry."  696 F.3d at 884.  The Shenzhen Court has already examined the same predicate facts underlying Samsung's claims, and found that Huawei met its FRAND commitments while Samsung did not.  Samsung will be collaterally estopped and cannot show any likelihood of success on its antitrust and FRAND claims.

HUAWEI'S OPP. TO SAMSUNG'S MOT. TO ENJOIN HUAWEI FROM ENFORCING THE INJUNCTION
ISSUED BY THE INTERMEDIATE PEOPLE'S COURT OF SHENZHEN, CASE 16-CV-02787-WHO

1    party from proceeding in the foreign forum.").  As explained above, Huawei's simultaneous filing of

2    parallel proceedings here and in Shenzhen seeking to vindicate its FRAND rights are entirely

3    appropriate.

4         Accordingly, as a threshold to any anti-suit injunction, Samsung is required to establish that

5    Huawei's parallel proceedings in China "frustrate a policy" of this forum, that they are "vexatious or

6    oppressive," or that the suits prejudice other equitable considerations.  *See Gallo*, 446 F.3d at 990.

7    None of those factors apply.

8         *First*, Samsung's contention that Huawei's actions in China would "frustrate a policy" of this

9    forum (Br. 18-19) entirely ignores the Federal Circuit's position on the availability of injunctions for

10   infringement of standard-essential patents, and misstates prevailing U.S. policy on that subject.  In

11   *Apple*, the Federal Circuit affirmed a district court's ruling holding that a standard-essential patent

12   holder was not entitled to an injunction, but made clear that there is no "*per se* rule that injunctions

13   are unavailable for SEPs," noting that "an injunction may be justified where an infringer unilaterally

14   refuses a FRAND royalty or unreasonably delays negotiations to the same effect."  757 F.3d at 1331-

15   32.  In this case, Samsung *has* engaged in unreasonable delay.  Further, the Shenzhen Court found

16   ███████████████████████████████████████████████████████████████, yet Samsung has

17   refused to take a license.  In these circumstances, the Shenzhen Court's injunction does not frustrate

18   U.S. policy.  To the contrary, the Shenzhen Court's findings demonstrate this is a scenario that the

19   Federal Circuit deemed appropriate for injunctive relief.

20        Additionally, contrary to Samsung's claims (Br. 4), U.S. regulators have outlined similar

21   conditions in which injunctive relief may be appropriate on SEPs—including in circumstances

22   consistent with Samsung's conduct.  For example, the Department of Justice and U.S. Patent &

23   Trademark's 2013 Policy Statement on Remedies for Standard Essential Patents Subject to

24   Voluntary F/RAND Commitments (Ex. 9 to Dkt. 235) notes that injunctive relief "may still be an

25   appropriate remedy in some situations," including where—as here —the "putative licensee refuses to

26   pay what has been determined to be a F/RAND royalty" or constructively refuses to negotiate "such

27   as by insisting on terms clearly outside the bounds of what could reasonably be considered to be

28   F/RAND terms in an attempt to evade the putative licensee's obligation to fairly compensate the

1    patent holder." *See* Stake Declaration, Dkt. 235, Ex. 9 at 7.  More recently, the head of the Antitrust

2    Division of the Department of Justice stated that the problem of "hold out" or "reverse patent hold-

3    up" (where an implementer unjustifiably delays entering into license agreements for SEPs as

4    Samsung has done here) is a greater threat to innovation than patent hold-up by SEP holders, and

5    expressed the view that an SEP holder cannot violate the antitrust laws by seeking an injunction.[16]

6    *See* Ex. 4 at 5-6, 8 (M. Delrahim, "Taking It to the Limit:  Respecting Innovation Incentives in the

7    Application of Antitrust Law," Nov. 10, 2017).  That position directly contradicts Samsung's claim

8    that Huawei's mere pursuit of injunctive relief on its SEPs violates U.S. antitrust law, and Huawei

9    certainly cannot face liability under the U.S. antitrust laws for having obtained a *foreign* injunction

10   in accordance with the law of the issuing jurisdiction.[17]  Samsung's attempt to draw support from

11   Huawei's statement in another FRAND litigation concerning the availability of injunctions (Br. 18)

12   fails for similar reasons.  As Huawei explained there, an accused infringer should be given an

13   "opportunity to accept a FRAND rate determined by a court or arbitrator" before facing an

14   injunction (Br. at 18) (citing Ex. 42)—but Samsung has been given both of those opportunities, and

15   has rejected them.  Huawei's prior statements are thus entirely consistent with its position here.

16        In contrast, Samsung's current claim that any injunction on an SEP "violates U.S. antitrust

17   law" (Br. 18) or is in some other contrary to U.S. policy is entirely inconsistent with Samsung's prior

18   positions and litigation conduct.  While Samsung claims that it has "not preemptively asserted its

19   patents in an attempt to shut out competitors" (Br. 7), in litigation in this District, Samsung sought

20   injunctions on SEPs against Apple.  *See, e.g.*, Dkt. No. 80 in *Apple Inc. v. Samsung Electronics Co.*

21

22   [16] Assistant Attorney General Delrahim's views have been echoed by many others, including current
     and former judges and antitrust regulators. *See, e.g.* Ex. 37.

23   [17] The act of state doctrine, a long-standing common law principle that derives from considerations
     of international comity, precludes a U.S. court from evaluating the validity of actions of a foreign

24   state. *See W.S. Kirkpatrick & Co. v. Envt'l Tectonics Corp. Int'l*, 493 U.S. 400, 406 (1990); *In re
     Philippine Nat'l Bank*, 397 F.3d 768, 772 (9th Cir. 2005).  An action will be barred under the act of

25   state doctrine "if: (1) there is an official act of a foreign sovereign performed within its territory; and
     (2) the relief sought or the defense interposed in the action would require a court in the United States
     to declare invalid the foreign sovereign's official act."  *Credit Suisse v. U.S. District Court for the*

26   *Central District of California*, 130 F.3d 1342 (9th Cir. 1997) (quotation marks omitted).  A foreign
     court judgment arising out of private litigation, like the Shenzhen Court's decision, may be

27   considered an act of state "when it gives effect to the public interest of the foreign government."
     *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1226 (9th Cir.

28   2006); Shenzhen Dec. at 176 (███████████████████████).

1   *Ltd.*, No. 5-11-cv-01846 (N.D. Cal. June 30, 2011) at 59.  And in related litigation in the

2   International Trade Commission, where Samsung sought an exclusion order barring importation into

3   the U.S. of Apple's infringing devices, Samsung insisted: "[T]he existence of a FRAND undertaking

4   with respect to a particular patent does not preclude the issuance of an exclusion order based on

5   infringement of that patent.  There is no basis in law, equity or the public interest that would warrant

6   adoption of a bright-line rule [to the contrary]… ." Ex. 1 (Complainant Samsung's Initial

7   Submission in Response to Commission Notice of Review, Inv. No. 337-TA-794 at 7.)  As

8   Samsung's expert witness explained to the ITC, if owners of standard-essential patents "have no

9   recourse to a penalty for such behavior from licensees, such as seeking an exclusion order against

10  implementers not negotiating in good faith, then implementers will have little to no incentive to take

11  licenses." Ex. 1 (Declaration of Anne Layne-Farrar, Ph.D. In Support of Samsung's Statement on

12  the Public Interest, Exhibit A to Initial Submission, ¶ 29.)

13          Samsung's argument that Huawei has used foreign litigation to evade contractual obligations

14  or compliance with U.S. law (Br. 18) is equally baseless.  Samsung itself has taken the position that

15  "[n]othing in any ETSI rule or policy precludes injunctions." Ex. 1 at 9-10.  Moreover, Huawei is

16  trying to *enforce*—not evade—the contractual FRAND obligations both here and in China in

17  accordance with respective laws of each venue.  Its actions are complementary, not contradictory.

18          ***Second***, Samsung's attempt to characterize Huawei's Chinese actions as "vexatious or

19  oppressive" (Br. 19-20) also fails.  There is no basis for Samsung's claim that Huawei has engaged

20  in "forum-shopping."  (Br. 19.)  Huawei filed this action and the Chinese cases simultaneously

21  because it did not know (and still does not know) the scope of ultimate rulings from this Court on

22  FRAND.  The Shenzhen litigation is neither duplicative nor vexatious because Huawei committed

23  from the beginning to stay or dismiss those actions if Samsung would simply agree to let this Court

24  or an arbitral tribunal determine the FRAND terms of cross-license.  Samsung urged this Court to

25  delay reaching the FRAND issues, which helped ensure that the Shenzhen Court resolved the

26  FRAND issues first.  Samsung fully participated in the Chinese actions, but does not like the result.

27  Samsung now turns to this Court in an attempt to overturn the Shenzhen Court's ruling that Huawei

28

is entitled to an injunction because Samsung's conduct is not consistent with FRAND.  If there is any forum-shopping (or other vexatious, oppressive conduct) involved here, it is by Samsung.

Additionally, contrary to Samsung's suggestion, there is no evidence that Huawei is engaged in hold-up.  The Shenzhen Court determined that ████████████████████████████████████████ ████████████████████████████████████████████████████████.  These are circumstances were the Federal Circuit believes injunctions on SEPs may be available, *Apple*, 757 F.3d at 1331-32, and where Samsung has argued injunctive relief is appropriate, *see* Exs. 1-2. Viewed in full, the statement of Ding Jianxin, Huawei's Head of Global Intellectual Property, that Samsung quotes (Br. 3) is consistent these positions, and hardly suggests that Huawei intends to use any injunction to obtain anything other than a FRAND royalty.[18]  It is neither vexatious nor oppressive for Huawei to obtain relief that is consistent with remedies U.S. courts (and Samsung) have deemed available and appropriate.

*Third*, Samsung's arguments concerning the remaining *Unterweser* other "equitable considerations" (Br. 20-21) fare no better.  Samsung suggests consumers could be harmed by a "holdup settlement" (Br. 20), but as noted above, there is no possibility of hold-up here because Huawei has committed to accept FRAND terms set by a third party, and neither consumers nor Samsung will be harmed by Samsung and Huawei entering a license on FRAND terms.  Samsung's argument that it could be in an "impossible position" attempting "to satisfy conflicting rulings" (Br. 20-21) confuses the possibility of inconsistent obligations with inconsistent adjudications.  *See Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998) ("Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident.").  The Shenzhen Court found that Samsung infringed Huawei's Chinese patents, and that Samsung's conduct is inconsistent with FRAND.  To comply with that order, Samsung should stop infringing and/or accept Huawei's offer of a FRAND license.  This

---

[18] In the portion of Mr. Ding's statement that Samsung selectively omits, he explains that seeking an injunction may be appropriate where, as here, an SEP holder is "faced with potential licensees who are negotiating in back faith [and are] unwilling to pay fair royalties."  Dkt. 235, Stake Decl., Ex. 1. This is the same position Samsung has taken previously.  Ex. 1 at 7 ("When faced with an intransigent licensee engaging in 'reverse hold-up,' a standards-essential patent holder has the right to seek and receive any statutory remedies available to it.").

proceeding will not address Samsung's infringement of Chinese patents, and neither party has asked this Court to order them *not* to enter into a FRAND license.  There is no possibility of "conflicting" judgments that Samsung could be unable to comply with.  *See Apple Inc. v. Qualcomm Inc.*, No. 3:17-cv-108-GPC-MDD, 2017 WL 3966944, at *15 (S.D. Cal. Sept. 7, 2017) (denying anti-suit injunction and rejecting argument that "it would be untenable or unfair for [a party] to have to alter its behavior territory by territory" in response to FRAND decisions from foreign courts).

Finally, like its "forum shopping" argument, Samsung's "race to judgment" argument ignores the facts.  Huawei did not "test the waters in each court and then race to judgment" (Br. 21). In the face of Samsung's challenge to this Court's power to set a global FRAND rate, Huawei has sought all available relief, while committing to limit the litigation to this Court if Samsung would agree to let the Court set the FRAND rates.  Based at least in part on Samsung's dragging its heels in this Court, the Chinese court reached that issue first.  It is Samsung who "tested the waters," found the Shenzhen Court's ruling not to its liking, and now wants this Court enjoin the Chinese action (while still refusing to concede that this Court can fully resolve the dispute).

### 3.     Samsung's Proposed Anti-Suit Injunction Would Offend Comity.

"Comity is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." *Gallo*, 446 F.3d at 994 (quotation marks and citation omitted).  Samsung claims this is "a private commercial dispute between two corporations, and does not implicate any foreign governments" (Br. 21), but only pages earlier in its brief, Samsung argued (incorrectly) that Huawei had violated U.S. antitrust law and frustrated U.S. policies (see *id.* at 18).  Although it misstates U.S. law and policy, Samsung is correct that the parties' FRAND dispute is far from a limited private commercial dispute.  As the Southern District of California observed, enforcement of SEP holders' FRAND commitments "has global consequences and is of global significance." *Apple*, 2017 WL 3966944, at *17.

The impact on comity is here not tolerable, because Samsung seeks to block the outcome of a full and fair proceeding, in which it fully participated.  The Shenzhen Court was fully capable of resolving the FRAND issues that the parties placed before it, and Samsung had every opportunity to argue that its conduct was consistent with FRAND.  But the court found ███████████ ████████████████, and accordingly issued an injunction.  If Samsung disagrees with that ruling, it can file (and has filed, *see* Br. 2) an appeal in China.  But Samsung's motion improperly attempts to use this Court to collaterally attack the ruling of the Shenzhen Court.  *See Gau Shan*, 956 F.2d at 1355 (district court should not "convey[] the message, intended or not, that the [U.S.] court has so little confidence in the foreign court's ability to adjudicate a given dispute fairly and efficiently that it is unwilling even to allow the possibility").  Just as in *Apple*, an anti-suit injunction here would "effectively deprive" China "of its jurisdiction to consider" Samsung's SEP licensing conduct.  *See Apple*, 2017 WL 3966944, at *18 ("That multiple sovereign and international bodies have concluded or alleged that aspects of Qualcomm's business model are anticompetitive demonstrates that this dispute implicates global public concerns in a way not evident from the record in *Microsoft v. Motorola*.").

**C.    Samsung Fails to Establish Any Entitlement to the Extraordinary Remedy of a Preliminary Injunction.**

Samsung's motion focuses exclusively on the *Gallo* test, which replaces the "likelihood of success" prong of the preliminary injunction inquiry.  *Microsoft II*, 696 F.3d at 883-84.  Even if Samsung could satisfy each element of the *Gallo* inquiry (and as explained above, it cannot), Samsung otherwise fails to set out, much less establish, the necessary grounds for a preliminary injunction.  In particular, while Samsung suggests that its activities in China face some potential disruption, does not argue or demonstrate a likelihood of irreparable harm absent the injunction it seeks.  Further, the balance of equities and the public interest (also unaddressed by Samsung's motion) do not favor Samsung's proposed injunction.

**1.    Samsung Fails to Show it Would Be Irreparably Harmed.**

Samsung cannot establish that it "is likely to suffer irreparable harm in the absence of preliminary relief," *Alliance for the Wild Rockies*, 865 F.3d at 1217, because Samsung can avoid any

23

possibility of an injunction in China by accepting Huawei's offer of a FRAND license or committing

to a FRAND determination here or elsewhere.  The Shenzhen Court found ████████████

████████████████████████, and Huawei has not changed its offer in any way based on

that court's decision, nor does Huawei intend to do so.  Moreover, in this case Samsung has resisted

Huawei's efforts to take up the FRAND issues first, which would also lead the parties to a FRAND

license.  Any consequences flowing to Samsung from its continued refusal to accept Huawei's

FRAND offer, and its resistance to this Court's resolution of the FRAND dispute, are self-inflicted.

*See Ventura Cty. Christian High Sch. v. City of San Buenaventura,* 233 F. Supp. 2d 1241, 1253-54

(C.D. Cal. 2002) (denying preliminary injunction where plaintiffs' claimed "irreparable injury" was

"due in part to their own failure to obtain a judicial determination of their rights and obligations at

some earlier point in time"); *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839

(3d Cir. 1995) ("If the harm complained of is self-inflicted, it does not qualify as irreparable.").

Notably, the potential "harm" Samsung alleges—moving manufacturing facilities out of

China—appears to be activity Samsung is already undertaking, as it re-centers its South Asian

manufacturing in Vietnam.[19]  While Samsung also mentions potential impacts to "consumer loyalty

and reputation" (Br. 11), simply mentioning that possibility is insufficient to support issuance of a

preliminary injunction.  *See Dotster, Inc. v. Internet Corp. for Assigned Names and Numbers, Etc.*,

296 F. Supp. 2d 1159, 1163-64 (C.D. Cal. 2003) ("Although the loss of goodwill and reputation are

important considerations in determining the existence of irreparable injury, there must be credible

and admissible evidence that such damage threatens Plaintiffs' businesses with termination.").

## 2.     The Balance of Equities Favors Huawei, Not Samsung.

The balance of equities here sharply favors Huawei.  Huawei properly filed this suit and the

Chinese actions to enforce its intellectual property and the FRAND commitment in an effort to bring

about a FRAND resolution to its dispute with Samsung.  As Samsung admits, the Shenzhen Court

████████████████████████████████████████████████████."  (Br.

---

[19] *E.g.*, Ex. 6 ("Samsung has invested $14.5 billion in Vietnam…. The attractions for Samsung include relative political stability, tax breaks and lower labor costs than in China."); Ex.7 (noting in 2014 Samsung's decreasing market share in China and shift to manufacturing in Vietnam).

9) (citing Shenzhen Dec.).  Samsung has resisted any FRAND resolution and has already been found by the Shenzhen Court to have violated FRAND.  To even advance its argument in favor of an anti-suit injunction, Samsung has had to contradict its prior positions before this Court.  Worse, the injunction Samsung seeks is inequitably one-sided—as Samsung admits (Br. 9 n.3), Samsung is itself seeking injunctions (and not damages) in China in other suits against Huawei asserting standard-essential patents.  Wang Decl., ¶ 3-4.   And as noted above, Samsung has previously sought injunctions on SEPs *in this District*.  If Samsung's motion were granted, Samsung—who failed to follow FRAND, resisted any FRAND determination, and refused a FRAND license—would not only escape any consequences for its conduct, but could obtain injunctions of its own against Huawei, while Huawei is left without recourse.  That result is plainly inequitable.

### 3. The Proposed Anti-Suit Injunction Is Not in the Public Interest.

The public interest does not support Samsung's proposed injunction.  As reflected in U.S. court decisions and regulatory policy, there is no *per se* rule that injunctions on standard-essential patents are unavailable even here in the United States.  *See* § IV.B.2, *supra*.  The public certainly has no interest in imposing such a *per se* rule on China when it does not even exist here.  More broadly, the public interest does not support foreclosing injunctions against a party like Samsung, who conducted itself in violation of FRAND (as the Shenzhen Court found) and continues to refuse to take a license.  Samsung's proposed injunction is contrary to the public interest because it would reward Samsung for its delay tactics in licensing negotiations, and for its refusal to commit to a FRAND determination in this Court or any other forum.  Instead, the public interest favors Huawei's efforts to obtain what it is entitled to—reasonable compensation, on FRAND terms, for Samsung's ongoing use of Huawei's patents.  *See Microsoft I*, 2013 WL 2111217, at *12 ("[T]he [F]RAND commitment must guarantee that holders of valuable intellectual property will receive reasonable royalties on that property.").

## V. CONCLUSION

For the foregoing reasons, Huawei respectfully requests this Court deny Samsung's motion.

25

HUAWEI'S OPP. TO SAMSUNG'S MOT. TO ENJOIN HUAWEI FROM ENFORCING THE INJUNCTION
ISSUED BY THE INTERMEDIATE PEOPLE'S COURT OF SHENZHEN, CASE 16-CV-02787-WHO

Dated: February 20, 2018

Respectfully submitted,

SIDLEY AUSTIN LLP

David T. Pritikin (*Pro Hac Vice*)
dpritikin@sidley.com
David C. Giardina (*Pro Hac Vice*)
dgiardina@sidley.com
Douglas I. Lewis (*Pro Hac Vice*)
dilewis@sidley.com
John W. McBride (*Pro Hac Vice*)
jwmcbride@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois  60603
(312) 853-7000 – Telephone
(312) 853-7036 – Facsimile

/s/ Michael J. Bettinger
Michael J. Bettinger (SBN 122196)
mbettinger@sidley.com
Irene Yang (SBN 245464)
irene.yang@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, California  94104
(415) 772-1200 – Telephone
(415) 772-7400 – Facsimile

*Attorneys for Huawei Technologies Co., Ltd.,*
*Huawei Device USA, Inc., Huawei Technologies*
*USA, Inc., and HiSilicon Technologies Co. Ltd.*

HUAWEI'S OPP. TO SAMSUNG'S MOT. TO ENJOIN HUAWEI FROM ENFORCING THE INJUNCTION
ISSUED BY THE INTERMEDIATE PEOPLE'S COURT OF SHENZHEN, CASE 16-CV-02787-WHO