1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

| | |
|---|---|
| HUAWEI TECHNOLOGIES, CO, LTD, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO, LTD., et al., <br><br> Defendants. | Case No.  3:16-cv-02787-WHO <br><br> **ORDER GRANTING SAMSUNG'S MOTION FOR ANTISUIT INJUNCTION** <br><br> Re: Dkt. Nos. 234, 235, 240, 244, 277, 278 |

7
8
9
10
11
12
13

**INTRODUCTION**

14

Defendants/counterclaim-plaintiffs Samsung Electronics Co., Ltd., Samsung Electronics

15

America, Inc., and Samsung Research America, Inc. (collectively, "Samsung") seek to enjoin

16

plaintiffs Huawei Technologies Co., Ltd., Huawei Device USA, Inc. and Huawei Technologies

17

USA, Inc. (collectively, "Huawei") from enforcing injunction orders issued by the Intermediate

18

People's Court of Shenzhen ("Shenzhen Court").  The Shenzhen Court orders found that Samsung

19

is infringing two of Huawei's Chinese standard essential patents ("SEPs"), and enjoined

20

Samsung's Chinese affiliates from manufacturing and selling its 4G LTE standardized

21

smartphones in China.  As a prerequisite to granting this relief, the Shenzhen Court considered

22

whether the parties had complied with their obligations to license their SEPs on fair, reasonable,

23

and nondiscriminatory ("FRAND") terms.  Both parties have asserted breach of contract claims in

24

this action based on the other's alleged failure to license their SEPs on FRAND terms.

25

Under the framework established in *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d

26

984 (9th Cir. 2006), Samsung has demonstrated that it is entitled to an antisuit injunction

27

preventing Huawei from enforcing the injunction orders issued by the Shenzhen Court.  Those

28

orders could render meaningless the proceedings here, and the risk of harm to Samsung's

United States District Court <br> Northern District of California

operations in China in the interim is great.  Its motion is GRANTED.

**BACKGROUND**[1]

## I.      FACTUAL BACKGROUND

### A.      The Parties

Huawei and Samsung are major players in the world of wireless telecommunications—a world governed by cellular technology standards, such as the 3G UMTS and 4G LTE standards developed by the Third Generation Partnership Project ("3GPP") and promulgated by standard setting organizations like the European Telecommunications Standards Institute ("ETSI").[2]  Both Huawei and Samsung have agreed to license their declared standard essential patents ("SEPs") on fair, reasonable, and non-discriminatory ("FRAND") terms and conditions under ETSI's Intellectual Property Rights ("IPR") Policy.  Compl. ¶ 63 (Dkt. No. 1[redacted], Dkt. No. 3-4[under seal]); *see also* Samsung's Answer and Am. Counterclaims ¶ 29 ("Samsung admits that ETSI members who are subject to a commitment to offer licenses on FRAND terms and conditions are obligated not to refuse to enter a license for declared, essential patents that is fair, reasonable, and non-discriminatory.")(Dkt. No. 91[redacted]; Dkt. No. 90-2[under seal]); *id*. ¶ 54 ("Samsung admits that SEC has submitted IPR licensing declaration forms to ETSI expressing SEC's [Samsung Electronics Co., Ltd.] preparedness to grant licenses on FRAND terms and conditions for certain patents as set forth in those declarations in accordance with the ETSI IPR Policy."); Samsung's Licensing Declarations (Samsung's Answer and Am. Counterclaims, Exs. 14, 23–26, 29, 34; Dkt. Nos. 91-14, -18, -23-26, -29, -34); Huawei's Licensing Declaration (Huawei's Compl., Exs. 2.1–2.43, Dkt. Nos. 3-1–13[under seal]).

---

[1] Portions of the background are redacted in accordance with the administrative motions submitted by both parties.  Those motions are addressed at the end of this order.

[2] Standard Setting Organizations "establish technical specifications to ensure that products from different manufacturers are compatible with each other."  *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 875 (9th Cir. 2012)("Microsoft II")(citing Mark A. Lemley, *Intellectual Property Rights and Standard–Setting Organizations,* 90 Calif. L.Rev. 1889 (2002)).  Many courts have expounded on the benefits of standards in various industries.  *See, e.g., Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1030 (9th Cir. 2015)("*Microsoft IV*"); *Apple, Inc. v. Motorola Mobility, Inc.*, 2011 WL 7324582, at *1 (W.D. Wis. June 7, 2011).

United States District Court
Northern District of California

**B.      Samsung's Manufacturing Operations in China**

Samsung's Chinese manufacturing hubs have a production capacity of ▮▮▮▮ ▮▮▮▮▮, the second largest worldwide.  T. Wang Decl. ¶ 5 (Dkt. No. 240-48[under seal]).  In 2015 and 206, Samsung manufactured ▮▮▮▮▮ in China, of which ▮▮▮▮ ▮▮▮▮▮ were imported to the United States.  *Id.* ¶¶ 6, 7.  In the same years, Samsung sold ▮▮▮▮▮ units of LTE devices in China for a total revenue of ▮▮▮▮ ▮▮▮▮.  *Id.* ¶ 7.

**C.      Negotiation History**

In 2011, the parties began discussing a cross-license for their respective patent portfolios, but they disagreed on the scope of those licenses.  *E.g.*, 3/2/15 Letter from Huawei to Samsung re" Patent Licensing Negotiation (Stake Decl. ¶ 19, Ex. 19, Dkt. No. 234-10[under seal]).  I will not recount the history of their failure to reach agreement in the ensuing years, since all of the information has been filed under seal, except to wonder aloud how it can be in the interest of these important multi-national corporations to slog through unending litigation around the globe rather than figure out a process to resolve their differences if agreement is impossible.

## II.     PROCEDURAL HISTORY

Huawei filed this action on May 24, 2016, asserting infringement of 11 of its SEPs, and alleging that Samsung breached "its commitment to enter into a SEP cross-license with [Huawei] on FRAND terms and conditions."  Compl. ¶¶ 1, 4.  Huawei also asks the court to set the terms and conditions for a global FRAND cross license under the parties' respective worldwide portfolios of essential 3G and 4G patents, and to enjoin Samsung from "seeking injunctive relief against Huawei (including affiliates) in any jurisdiction with respect to any alleged infringement of any patent essential to 3GPP standards."[3]  Compl. at Prayer for Relief, E.  Samsung answered and filed counterclaims, including patent infringement claims for its own declared essential SEPs, declarations of non-infringement and invalidity of Huawei's patents, and claims for antitrust

---

[3] Huawei points out that it has not sought preliminary injunctive relief attempting to halt any of the seven remaining actions brought by Samsung in China, which seek injunctive relief against Huawei based on its alleged infringement of Samsung's SEPs.  Opp'n at 8.

3

violation in violation of section 2 of the Sherman Act,[4] and breach of contract.  Answer and Am. Counterclaims at 47–114.

The next day,[5] Huawei filed 11 separate actions in China, ten of which it filed in the Intermediate People's Court of Shenzhen ("Shenzhen Court") where Huawei is based.  Xie Decl. ¶ 3 (Dkt. No. 235-2).  Eight of the actions involve 3G and 4G SEPs, including direct counterparts to patents-in-suit.  *Id.*  Each action seeks a determination on whether the SEP is infringed, and if so, whether an injunction should issue.[6]  *Id.*  Samsung countered with fourteen of its own actions in China, alleging Huawei is infringing Samsung's SEPs and seeking injunctive relief.  Wang Decl. ¶¶ 2–8; Xie Decl. ¶ 2 n.1.  Seven of those SEP actions remain pending.[7]  *See* Xie Decl. ¶ 2 n.1.

The Chinese actions have proceeded quicker than this one.  *See* Wang Decl. ¶ 9 (describing status of the various actions).  In particular, the Shenzhen court has held trials on two of Huawei's SEPs and two of Samsung's SEPs.  Wang Decl. ¶¶ 9, 10.  The trials addressed both FRAND issues and technical issues specific to each SEP.  *Id.* ¶ 9.  During these trials, the parties had full opportunities to present their evidence and argument.  *Id.* ¶ 11; *see also id.* ¶¶ 12–19 (explaining the proceedings before the Shenzhen court that form the basis for this motion).

---

[4] As part of this claim, "Samsung seeks an order enjoining Huawei from pursuing injunctive relief for infringement of patents, including those asserted here and in the parallel Chinese actions, that Huawei contends are essential to ETSI and 3GPP standards."  Am. Counterclaims ¶ 322.

[5] Huawei indicates that it filed the Chinese actions "simultaneously," and that those actions reflect a different date due to the time difference between here and China.  And it highlights Samsung's acknowledgement that the actions were "simultaneous[ly]" filed.  *See* Samsung's Answer and Am. Counterclaims ¶ 340 ("Yet simultaneous with its filing of this action, Huawei filed eight actions against Samsung in China based on Huawei's declared essential patents, seeking only injunctions as relief for Samsung's alleged infringement… ."); *id.* ¶ 543 ("Around the same time as Huawei filed its Complaint here, Huawei initiated several patent infringement actions in China, seeking to enjoin Samsung from making, using, selling, or importing products that practice 3GPP standards.").

[6] Huawei has also initiated a rate-setting and royalty payment suit in China.  Wang Decl. ¶ 2; Xie Decl. ¶ 22.

[7] The parties filed a total of 42 infringement actions in China, one corresponding to each patent, both SEP and non-SEP.  Wang Decl. ¶ 5.  In parallel with those proceeding, all 42 patents underwent invalidation procedures at the Patent Reexamination Board ("PRB").  *Id.* ¶ 6.  Once a patent is invalidated by the PRB, it must be withdrawn or dismissed.  *Id.* ¶ 7.  Twenty-two infringement suits remain between the parties—12 involving Huawei's SEPs and 7 involving Samsung's SEPs.  *Id.* ¶ 8.

United States District Court
Northern District of California

On January 11, 2018, the Shenzhen Court issued orders finding that Samsung is infringing two of Huawei's Chinese SEPs and enjoining Samsung's Chinese affiliates from manufacturing and selling its 4G LTE standardized smartphones in China.[8]  Xie Decl. ¶ 7; Jan. 11, 2018 Shenzhen Court Civil Judgment, certified translation ("Shenzhen Order")(Stake Decl. ¶ 37, *id*., Ex. 36, Dkt. No. 277-5[under seal]).[9]  The Chinese patents are direct counterparts to two of Huawei's asserted patents, U.S. Patent Nos. 8,369,278 and 8,885,587.  Xie Decl. ¶ 4.  The Shenzhen Court evaluated the evidence and found that "Huawei's behaviors had complied with FRAND principles while Samsung's behaviors had not complied with FRAND principles." Shenzhen Order at 205.  The Shenzhen Court decided that Huawei's six presuit offers to Samsung "were made within the reasonable range according to the strength of SEPs owned by Huawei" and that Huawei's offers "had complied with FRAND principles."  *See* Shenzhen Order at 200–203. As to Samsung, the court found that its initial insistence on "binding SEP licensing and non-SEP licensing … violated FRAND principles for SEP licensing negotiations" and contributed to "serious[] delay[]" in the negotiations.  Shenzhen Order at 180.  It also found that "Samsung had made significant mistakes during technical negotiations," which "seriously delayed the negotiations and clearly violated FRAND principles… directly leading to more than six years of negotiations between both parties without any progress."  *Id.* at 185.  It concluded that Samsung's sole SEP licensing offer "did not comply with FRAND principles."  *Id.* at 204.

Samsung filed a notice of appeal on January 26, 2018.  Xie Decl. ¶ 8.  It filed this motion on February 1, 2018.  Mot. to Enjoin Huawei from Enforcing the Injunction Issued by the Intermediate People's Court of Shezhen ("Mot.")(Dkt. No. 278-2[redacted]; Dkt. No. 278-1[under seal]).  It claims that if its appeal is unsuccessful, it will have to close its factories in China,

---

[8] The Shenzhen court ordered a further continuation of the trial on Samsung's two SEPs, and presumably heard that additional evidence on February 27–28, 2018.  Wang Decl. ¶ 9.  The parties are awaiting decisions in those two suits.  *Id.*

[9] Huawei noted that Samsung submitted only the order in case number 840, but actually seeks to enjoin orders issued in both case numbers 840 and 816.  Wang Decl. ¶ 12 n.1.  It indicated that "[t]he FRAND issues contemplated, evidence and expert opinion presented, and Court's decision were substantively the same in both the 840 and 816 cases."  *Id.*  It also represented that it accepts the accuracy of the certified translation "[f]or purposes of this motion only[.]"  Opp'n at 6 n.2.

United States District Court
Northern District of California

affecting ▓▓▓▓▓▓▓▓▓▓▓, be forced into a negotiation at a disadvantage or be compelled into a global adjudication of all FRAND issues with Huawei, which it stoutly resists.

Since the initial case management conference, Huawei has urged the court to bifurcate the issues and address the breach of contract and related FRAND issues first, which would likely moot the patent infringement claims.  *See* Joint Case Management Conference St. at 2–5 (Dkt. No. 67); Minute Entry for Initial CMC held on 9/13/16 (Dkt. No. 75); Huawei's Br. ISO its Request to Bifurcate (Dkt. No. 84).  Samsung has insisted that bifurcation was not the most efficient course because the FRAND licensing obligation cannot be determined without "assessing whether and to what extent [the patents-in-suit] are valid, infringed, enforceable, and essential to the relevant ETSI standard."  Samsung's Opp'n to Bifurcation at 2 (Dkt. No. 85).  I denied Huawei's request to bifurcate, and issued a case management order setting a schedule for the parties to narrow the issues in preparation for a two-week trial.  Order Regarding Case Management Proposals (Dkt. No. 143).

## LEGAL STANDARD

"A federal district court with jurisdiction over the parties has the power to enjoin them from proceeding with an action in the courts of a foreign country, although the power should be 'used sparingly.'"  *Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 652 F.2d 852, 855 (9th Cir. 1981).  "Such injunctions allow the court to restrain a party subject to its jurisdiction from proceeding in a foreign court in circumstances that are unjust."  *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 989 (9th Cir. 2006)("*Gallo*").  The Ninth Circuit employs "a three-part inquiry for assessing the propriety of such an injunction."  *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 881 (9th Cir. 2012)("*Microsoft II*"); *see also Gallo*, 446 F.3d at 990 (establishing framework for determining whether to issue anti-suit injunction).

> First, we determine whether or not the parties and the issues are the same in both the domestic and foreign actions, and whether or not the first action is dispositive of the action to be enjoined.  Second, we determine whether at least one of the so-called *Unterweser* factors applies.  Finally, we assess whether the injunction's impact on comity is tolerable.

*Microsoft II*, 696 F.3d at 881 (citations and internal quotation marks omitted); *see id.* at 882

1    (referring to three-part inquiry as the "*Gallo* framework").

2                                    **DISCUSSION**

3            Samsung moves to enjoin Huawei from enforcing the injunctions issued in the Shenzhen

4    Orders.[10]  As a preliminary matter, the parties dispute whether Samsung must establish the usual

5    requirements for a preliminary injunction, in addition to satisfying the three-part *Gallo* test for an

6    anti-suit injunction.  Huawei's Opp'n to Samsung's Mot. to Enjoin Huawei from Enforcing the

7    Injunction Issued by the Intermediate People's Court of Shenzhen at 4, 13, 23 ("Opp'n")(Dkt. No.

8    277-4[redacted]; Dkt. No. 277-3[under seal]); Reply ISO Samsung's Mot. for a Preliminary

9    Antisuit Injunction at 2 ("Reply")(Dkt. No. 277-3[under seal]; Dkt. No. 277-4[redacted]).  As the

10   district court noted in *Microsoft Corporation v. Motorola, Inc.*, "[u]nder a literal reading of *Gallo*,

11   a showing of irreparable harm, balance of equities, and public interest might still be required to

12   obtain an anti-suit injunction."  871 F. Supp. 2d 1089, 1097 n.10 (W.D. Wash. 2012)("*Microsoft

13   I*"); *see Gallo*, 446 F.3d at 991 ("[Movant] need not meet the usual test of a likelihood of success

14   on the merits of the underlying claim to obtain an anti-suit injunction . . . . Rather, [movant] need

15   only demonstrate that the factors specific to an anti-suit injunction weigh in favor of granting the

16   injunction.").

17           The court went on to note two things—the absence of an analysis on the traditional *Winter*

18   factors in *Applied Medical Distribution Corp. v. Surgical Co. BV*, 587 F.3d 909, 913 (9th Cir.

19   2009), and the fact that the Third Circuit explicitly replaced all four *Winter* factors with the three-

20   part *Gallo* test.  *Microsoft I*, 871 F. Supp. 2d at 1097 n.10.  It nonetheless analyzed the remaining

21   *Winter* factors "[f]or completeness[.]"  *Id*.  But the Ninth Circuit, in affirming the district court's

22   grant of the foreign anti-suit injunction, focused only on the three-part *Gallo* test.  *Microsoft II*,

23   696 F.3d at 881.  *But see id*. at 883–84 ("Ordinarily, we do not assess at all the likelihood of

24   success on the merits in a case like this, because when a preliminary injunction is also a foreign

25   anti-suit injunction, the likelihood-of-success aspect of the traditional preliminary injunction test is

26

27   _____

28   [10] As previously mentioned, Samsung references one order from the court, but it actually seeks to
     enjoin Huawei from enforcing two orders issued by the Shenzhen court on January 11, 2018.  *See
     supra* note 9.

United States District Court
Northern District of California

replaced by the *Gallo* test.")  The Ninth Circuit's analysis convinces me that I need only focus on the three-part inquiry under *Gallo*, and need not analyze the traditional *Winter* factors for obtaining a preliminary injunction.

Because Samsung relies so heavily on that Ninth Circuit decision, *see* Mot. at 11–17, 19–21, I will begin with a background of that case.

## I.   *MICROSOFT V. MOTOROLA*

The decision in *Microsoft v Motorola* addressed the parties' obligations with respect to patents they declared essential to the H.264 video coding standard set by the International Telecommunications Union ("ITU").  *Microsoft II*, 696 F.3d at 875–876.  The ITU's Common Patent Policy requires each member to "submit a declaration to the ITU stating whether it is willing to 'negotiate licenses with other parties on a non-discriminatory basis on reasonable terms and conditions.'"  *Id*. at 876.  Motorola submitted numerous declarations to the ITU promising to grant licenses to its SEPs on "reasonable and nondiscriminatory," or "RAND" terms.[11]  *Id*.

"In October 2010, Motorola sent Microsoft two letters offering to license certain of its standard-essential patents."  696 F.3d at 876.  Motorola attached to the letter a "non-exhaustive list" of its U.S. and foreign patents that it declared essential to the H.264 standard and included in its license offer.  *Id*.  On November 9, Microsoft filed a breach of contract action against Motorola based on the theory that it was a third-party beneficiary to Motorola's RAND obligations, which it alleged Motorola breached by proposing unreasonable royalty terms.  *Id*. at 878.  The next day, Motorola filed a patent infringement suit, and the two cases were consolidated.  *Id*.  In February 2012, the district court granted partial summary judgment for Microsoft, concluding that (1) Motorola had binding commitments to offer its declared SEPs on RAND terms, and (2) Microsoft was a third-party beneficiary of those commitments.  *Id*.  The court denied summary judgment on the two remaining issues of whether Motorola's initial offer letter had to include RAND terms, and whether its offers breached RAND obligations.  *Id*. at 879.  It scheduled those claims for a

---

[11] "RAND" and "FRAND" are "legally equivalent abbreviations."  *Microsoft II*, 696 F.3d at 877 n.2.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  bench trial in November 2012. *Id.*

2    Eight months after the domestic actions were filed, Motorola sued Microsoft in Germany

3  for infringement of two of its German patents, and it sought to enjoin Microsoft from selling

4  allegedly infringing products in Germany. 696 F.3d at 879. On May 2, 2012, the German court

5  issued its ruling,[12] holding that (1) Microsoft did not have a license to use Motorola's patents, (2)

6  any commitment between Motorola and the ITU was not enforceable by Microsoft because

7  German law does not recognize third-party contractual rights, and (3) Microsoft infringed

8  Motorola's German patents. *Id.* It enjoined Microsoft from "offering, marketing, using or

9  importing or possessing" the accused products in Germany. *Id.*

10    The "German injunction [was] not self-enforcing." 696 F.3d at 879. Motorola had to

11  "post a security bond covering potential damages to Microsoft should the infringement ruling be

12  reversed on appeal[,]" then Microsoft could file a motion to stay the injunction in the German

13  appellate court. *Id.* Alternatively, Microsoft could avoid enforcement of the injunction by

14  employing "the *Orange Book* procedure," under which it would make "an unconditional offer to

15  conclude a license agreement" with Motorola. *Id.*

16    On May 14, the district court converted the TRO, *see supra* note 12, into a preliminary

17  injunction. *Id.* at 880. The Ninth Circuit affirmed this decision. I will reference its reasoning as I

18  analyze each factor.

19  **II.    APPLICATION OF THE *GALLO* TEST**

20    **A.    The Parties and the Issues are the Same**

21    "The threshold consideration for a foreign anti-suit injunction is 'whether or not the parties

22  and the issues are the same' in both the domestic and foreign actions, 'and whether or not the first

23  action is dispositive of the action to be enjoined.'" *Microsoft II*, 696 F.3d at 882 (quoting *Gallo*,

24  446 F.3d at 991). The consideration should be approached functionally, "not in a technical or

25  formal sense, but in the sense that all the issues in the foreign action … can be resolved in the

26  local action." *Id.* at 882–83 (internal quotation marks omitted). "[W]hen the parties in the two

27

28  _____

[12] By this time, Microsoft had already obtained a temporary restraining order ("TRO") enjoining Motorola from enforcing any injunction obtained in the German action. 696 F.3d at 880.

1    actions are the same, the two questions of whether 'the issues are the same' and whether 'the

2    domestic action is dispositive of the foreign action' collapse into one." *Microsoft I*, 871 F. Supp.

3    2d at 1098.

### 1.    The Parties Are Functionally the Same

5        Both sides agree that the parties are functionally the same (although not identical).  Mot. at

6    12; Opp'n at 16.  Huawei Technologies Co., Ltd. and Samsung Electronics Co., Ltd. are parties to

7    both actions, and some of their affiliates or subsidiaries are parties in each action.  Xie Decl. ¶ 3;

8    Since "[p]erfect identity of parties is not required for an anti-suit injunction[,]" *Microsoft I*, 871 F.

9    Supp. 2d at 1098, this is sufficient to establish that the parties are functionally the same.

### 2.    The Issues Are Functionally the Same

11       Samsung insists that the primary issue in the Shenzhen cases is at issue here—namely, the

12   availability of injunctive relief for Huawei's SEPs, which are subject to contractual licensing

13   obligations under Huawei's FRAND commitments.  *See* Mot. at 12–15.  It argues that "[e]ach

14   party acknowledges it has contractual FRAND obligations for its global portfolio of

15   telecommunications SEPs, contends it has complied with those obligations and that the other party

16   has not, and has asked this Court to bar the other party from obtaining injunctive relief anywhere

17   in the world on those SEPs."  Mot. at 12; *see* Compl. ¶ 1 ("Huawei and Samsung have made

18   binding commitments to the European Telecommunications Standards Institute ("ETSI")—a

19   3GPP organizational partner which promulgates standards developed by 3GPP—to license these

20   standard-essential patents ("SEPs") on terms and conditions that are fair, reasonable, and non-

21   discriminatory ("FRAND").)(Dkt. No. 59).

22       It urges that *Microsoft v. Motorola* is instructive because it "involved highly similar

23   facts[.]"  *Id.* at 13.  Motorola argued that the U.S. action could not resolve the German action

24   "because patent law is uniquely territorial and patents have no extraterritorial effect."  *Microsoft*

25   *II*, 696 F.3d at 883.  The district court rejected this argument, and the Ninth Circuit agreed.

26   According to the district court, Microsoft's contract claim would resolve Motorola's German

27   patent claims "because the European Patents at issue in the German Action were included in

28   Motorola's October 29 Letter offering a worldwide license for Motorola's H.264 Standard-

United States District Court
Northern District of California

essential patents, and because Motorola contracted with the ITU to license the European Patents on RAND terms to all applicants on a worldwide basis." *Id.* (quoting district court decision). It determined that the district court's decisions on summary judgment (that Motorola's RAND declarations to the ITU created a contract enforceable by Microsoft as a third-party beneficiary and that the contract governed the availability of injunctive relief for declared SEPs) were not "legally erroneous,"[13] and therefore, it was not "an abuse of discretion for the district court to rule that the U.S. contract action might dispose of the German patent action." *Id.* at 884.

The Ninth Circuit cited Motorola's "sweeping promise" in its declarations to the ITU, which included "a guarantee that the patent-holder [would] not take steps to keep would-be users from using the patented material, such as seeking an injunction, but [would] instead proffer licenses consistent with the commitment made." *Id.* at 884. The court summarized, "that there [*was*] a contract, that it [*was*] enforceable by Microsoft, and that it encompasse[d] not just U.S. patents but also the patents at issue in the German suit." *Id.* at 885 (emphasis in original). It concluded that irrespective of the district court's ultimate determination as to whether Motorola actually breached its contract, "injunctive relief against infringement is arguably a remedy inconsistent with the licensing commitment." *Id.*

As in *Microsoft v. Motorola*, Huawei alleges that Samsung breached its contractual obligations under ETSI, Compl. ¶ 1, and seeks relief barring Samsung from obtaining injunctive relief on its declared SEPs anywhere in the world. Samsung insists, therefore, that "this action will necessarily resolve the fundamental issue presented in the Shenzhen injunction action, namely, whether injunctive relief is appropriate for alleged infringement of SEPs that are subject to contractual FRAND licensing obligations." Mot. at 14. It also notes that there is no dispute that the Chinese SEPs fall within the global portfolios of SEPs, Xie Decl. ¶ 3, and Huawei listed those Chinese SEPs in the Letters of Assurance attached to its complaint, Huawei's Licensing Declarations (Compl., Exs. 2.1–2.43). And it emphasizes that the two Chinese SEPs are direct counterparts of patents asserted here. Xie Decl. ¶¶ 4, 7.

---

[13] It emphasized that it was not deciding whether the district court's determinations were "proper" because those issues were not before it on this interlocutory appeal. *Microsoft II*, 696 F.3d at 884.

United States District Court
Northern District of California

United States District Court
Northern District of California

But Huawei underscores critical factual distinctions here; namely, differences in the positions of the parties and the decision of the foreign court. *See* Opp'n at 13–15. First, Microsoft initiated the domestic action and asked the court to set the FRAND rate. *Microsoft I*, 871 F. Supp. 2d at 1099. In addition, it did not contest the essentiality or infringement of Motorola's standard-essential patents. *Microsoft Corp. v. Motorola, Inc.*, 2013 WL 2111217, at *59 (W.D. Wash. Apr. 25, 2013)("*Microsoft III*"); *id*. at *61. So, Huawei contends, "Samsung's attempt to cast itself in the role of Microsoft … is perverse." Opp'n at 13. Samsung did not initiate this action, and it *is* contesting the essentiality and infringement of Huawei's declared SEPs. Second, Huawei distinguishes its own conduct from Motorola's. It notes that it filed this action and the Chinese actions "at the same time," not as "an end run around this action." *Id*. at 14. This is unlike what happened in *Microsoft*, where Motorola filed its German suit several months into the U.S. RAND litigation, in a deliberate effort to force Microsoft to accept non-RAND terms. *See Microsoft IV*, 795 F.3d at 1046 ("The evidence that the rates Motorola sought were significantly higher than the RAND rate found by the court suggested that Motorola sought to capture more than the value of its patents by inducing holdup, and that it filed infringement actions to facilitate that strategy by preventing Microsoft from using its patents—and therefore from implementing the 802.11 and H.264 standards—until it obtained a license at a rate significantly higher than the RAND rate."); *id*. ("In the absence of a fear of irreparable harm as a motive for seeking an injunction, the jury could have inferred that the real motivation was to induce Microsoft to agree to a license at a higher-than-RAND rate."). Third, it underscores the "critical distinction" that the German court issued its injunction without evaluating whether Motorola had complied with its FRAND commitment. *See Microsoft II*, 696 F.3d at 879. It contrasts that decision with the Shenzhen Order, which explicitly considered and decided the underlying FRAND issues as a predicate to determining whether Huawei was entitled to an injunction. In other words, the Shenzhen court issued injunctive relief *because* it found that Samsung had not complied with its FRAND obligations.[14]

---

[14] Huawei also argues that the Shenzhen Order should give rise to collateral estoppel effect when final. Opp'n at 15 (citing *Walia v. Aegis Center Point Devs. Private Ltd.*, 2014 WL 296003 at *2

United States District Court
Northern District of California

But those undeniable and important differences are irrelevant to whether this action is dispositive of the foreign action. Both parties have presented me with a breach of contract claim based on the other's alleged failure to abide by its commitments to ETSI.[15]  Neither party disputes the other's right to enforce that contract as a third-party beneficiary. And the availability of injunctive relief for each party's SEPs depends on the breach of contract claims. As in *Microsoft*, "[t]he contractual umbrella over the patent claims" controls, *Microsoft II*, 696 F.3d at 883, and dictates that this action is dispositive of Huawei's Chinese actions. *See id.* ("In other words, the party was 'not seeking to enjoin [a party from litigating in] a foreign court on the basis of a patent validity or infringement finding by a United States court' but on the basis of a contract interpretation by a U.S. court.")(quoting *Medtronic, Inc. v. Catalyst Research Corp.*, 518 F.Supp. 946 (D. Minn. 1981), *aff'd*, 664 F.2d 660 (8th Cir. 1981)).

Samsung also points to Huawei's prior requests that I address the FRAND issues first, which, in Huawei's estimation, "would moot patent infringement damages if Samsung is, in fact, a willing licensee." Huawei's Br. ISO Bifurcation at 4–5 (Dkt. No. 84). By underscoring Huawei's prior position regarding bifurcation, Samsung seeks to highlight the dispositive nature of the FRAND contract claims. But Samsung previously insisted that bifurcation was inappropriate because I had to first determine whether each asserted patent was valid, enforceable, infringed, and essential before I could decide an appropriate FRAND royalty rate. Since I only have the power to decide those "prerequisite" issues for U.S. SEPs, under Samsung's logic, I would not be

---

(N.D. Cal. Jan. 27, 2014) ("Collateral estoppel applies to foreign judgments so long as the parties in the prior action were afforded due process rights."); *see also U.S. v. Kashamu*, 656 F.3d 679, 683 (7th Cir. 2011) ("U.S. court[s] [] generally give preclusive effect to [a] foreign court's finding as a matter of comity.")).  I need not address that argument at this time.

[15] Huawei notes that Samsung has not "articulate[d] any likelihood of success on those [antitrust and contractual FRAND] claims that could result in final relief enjoining Huawei from obtaining an injunction elsewhere." Opp'n at 17 n.15 (citing Mot. at 12–17). It is true that "a ballpark, tentative assessment of the merits of the contract dispute is intrinsically bound up with the threshold anti-suit injunction inquiry… ." *Microsoft II*, 696 F.3d at 884. But that does not mean that Samsung must establish a likelihood of success on its claims. To the contrary, that inquiry is *replaced*, in part, by the question of whether this contract action will dispose of the Chinese patent actions. *See id.* Assuming I can decide the breach of contract claims, *see* discussion *infra*, this action will dispose of those actions in either one of two scenarios—if Huawei's breach of contract claim is unsuccessful, or if Samsung's breach of contract claim is successful. One way or the other, this action will resolve the propriety of injunctive relief for the parties' declared SEPs.

13

United States District Court
Northern District of California

able to decide a FRAND rate for the parties' global portfolios; rather, I would only have the ability

to determine a FRAND rate for U.S. SEPs.  Samsung has also argued that the court lacks the

*authority* to set FRAND terms for any cross-license between the parties.  *See* 9/6/16 Joint Case

Management St. at 2 ("Samsung contends that Huawei, as yet, has not set forth a sufficient basis

for its request for Declaratory Judgment of FRAND Terms and Conditions for a Cross-License,

and Samsung reserves its rights to seek dismissal or other appropriate relief on any such claim,

including on the basis of lack of subject matter jurisdiction."); *id*. at 7 ("[T]he Court has no

jurisdiction to 'set' FRAND terms for a general cross license.")(Dkt. No. 67).[16]

Even beyond the question of whether I have the ability to determine a FRAND royalty rate

(whether based on global or domestic SEPs), I am at a loss as to how I (or a jury) could decide the

breach of contract claims.  Unlike in *Microsoft*, the parties' contract claims are based on whether

their respective licensing offers were FRAND, not merely whether seeking "injunctive relief

against infringement is arguably a remedy inconsistent with the licensing commitment."  696 F.3d

at 885.  *See, e.g.*, Compl. ¶ 57 (describing how Samsung's negotiation conduct breached its

FRAND obligations); Answer and Am. Counterclaims ¶ 542 ("Huawei did not make an offer to

license Huawei's Patents-in-Suit on FRAND terms and conditions to Samsung before filing its

Complaint for patent infringement and to date has not done so.").  How am I to adjudicate whether

those offers were FRAND, if that determination depends on valuation of global portfolios, and can

only be made subsequent to finding each patent valid and essential to the standard?  *See, e.g.*,

Reply at 9 ("As a result, no tribunal, here or elsewhere, will have ever critically examined

Huawei's licensing structure and determine what appropriate rates would be—let alone

adjudicated issues of validity or infringement of the patents at issue, which is a predicate to a true

FRAND analysis.").  If I take Samsung's reasoning to its logical conclusion, I see no end to this

---

[16] In an added wrinkle, it was necessary to limit this case to a manageable scope.  *See* Civil Pretrial Order (Dkt. No. 208).  So I will not even be deciding those "prerequisite" issues for the parties' entire portfolios of U.S. SEPs.  Assuming without deciding that I have the *authority* to set FRAND rates, accepting Samsung's reasoning that each patent must first be evaluated would render me unable to decide a FRAND rate based on all of the parties' U.S. SEPs.

case, and certainly no way for this action to dispose of the parties' foreign patent actions.[17]

Huawei urges me to reject Samsung's seemingly inconsistent positions because it "does not merit exercise of [my] equitable power[,]" Opp'n at 16, and "[c]ourts derive the ability to enter an anti-suit injunction from their equitable powers." *Gallo*, 446 F.3d at 989. It insists that judicial estoppel dictates that "Samsung should be barred from now claiming entitlement to an anti-suit injunction." Opp'n at 16; *see also id.* at 17 (citing *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001), in which the Supreme Court recognized that "judicial estoppel forbids use of 'intentional self-contradiction ... as a means of obtaining unfair advantage'")). This is tempting, given that Samsung insists on its right to have its American patents litigated here but seeks to postpone the impact of having Chinese patents litigated in China.

I conclude that estoppel need not bar Samsung from seeking this antisuit injunction. That said, Samsung will not be able to argue that the breach of contract claims depend on evidence not before me, such as the validity, infringement, and essentiality of foreign patents. Judicial estoppel will apply to preclude such arguments. *See New Hampshire*, 532 U.S. at 749 ("[J]udicial estoppel[] 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'"). But I will not require Samsung's "commitment or consent" that I "should decide the FRAND terms of a global patent cross-license." *See* Opp'n at 17. The appropriate remedy for Huawei's breach of contract claim may very well be the injunctive relief issued by the Shenzhen court. But I must have the opportunity to adjudicate that claim without Samsung facing the threat of the Shenzhen court injunctions.

## B.   The *Unterweser* Factors

Under the *Unterweser* factors, a court may enjoin foreign litigation "when it would (1)

---

[17] In fact, Samsung attacks Huawei's characterization that the Shenzhen court truly considered FRAND issues. *See* Reply at 2 ("[The Shenzhen proceedings] focused only on allegations of Samsung's purported 'bad faith' negotiation positions without evaluating the size of or justification for Huawei's proposed rates. [citation] Nowhere does the Shenzhen court address whether Huawei's original 1.5% rate or variations thereon is FRAND or justified in any objective way."); *id.* at 7 ("But the Chinese court did not determine the appropriate terms of a worldwide FRAND license—it only made nebulous findings of conduct in the context of the Chinese patents that it declared 'complied with FRAND principles' and then granted the injunction.").

United States District Court
Northern District of California

frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing courts *in rem* or *quasi in rem* jurisdiction; or (4) where the proceedings prejudice other equitable considerations." *Seattle Totems*, 652 F.2d at 855.

### 1.   Domestic Policy and Other Equitable Considerations

Samsung argues that allowing Huawei to enforce the Shenzhen Court's injunction would frustrate specific domestic policies against injunctive relief on SEPs and general public policies against anticompetitive conduct and breaches of contract. Mot. at 18.  The bulk of precedent supports its position.  *See, e.g., Microsoft II*, 696 F.3d at 884 ("Implicit in such a sweeping promise [made by Motorola to standards-setting organization] is, at least arguably, a guarantee that the patent-holder will not take steps to keep would-be users from using the patented material, such as seeking an injunction, but will instead proffer licenses consistent with the commitment made."); *id*. at 885 ("[I]njunctive relief against infringement is arguably a remedy inconsistent with th[at] licensing commitment."); *Realtek Semiconductor Corp. v. LSI Corp.*, Case No. C–12–03451–RMW, 946 F. Supp. 2d 998, 1006–07 (N.D. Cal. 2013)("In promising to license on RAND terms, defendants here admit that monetary damages, namely a RAND royalty, would be adequate compensation for any injury it has suffered as a result of Realtek's allegedly infringing conduct."); *Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-CV-178-BBC, 2012 WL 5416941, at *15 (W.D. Wis. Oct. 29, 2012)(" I agree with Apple that from a policy and economic standpoint, it makes sense that in most situations owners of declared-essential patents that have made licensing commitments to standards-setting organizations should be precluded from obtaining an injunction or exclusionary order that would bar a company from practicing the patents.")

But Huawei insists that there is no "per se rule that injunctions are unavailable for SEPs[.]" *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1331 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015).  It highlights precedent and policy that suggest "an injunction may be justified where an infringer unilaterally refuses a FRAND royalty or unreasonably delays negotiations to the same effect."  *Id*. at 1332 (citing U.S. Dep't of Justice and U.S. Patent and Trademark Office, *Policy Statement on Remedies for Standard–Essential Patents Subject to Voluntary F/RAND Commitments*, at 7–8 (Jan. 8, 2013));

*see also* Makan Delrahim, Asst. Attorney General, Antitrust Division, U.S. Dept. of Justice, Remarks as Prepared for Delivery at USC Gould School of Law – Application of Competition Policy to Technology and IP Licensing: Taking It to the Limit: Respecting Innovation Incentives in the Application of Antitrust Law (Nov. 10, 2017), available at https://www.justice.gov/opa/speech/file/1010746/download ("A patent holder cannot violate the antitrust laws by properly exercising the rights patents confer, such as seeking an injunction or refusing to license such a patent.")(Greenblatt Decl. ¶ 5, *id*., Ex. 4, Dkt. No. 240-8).

That may be true, but the policy that is undermined is this court's ability to determine the propriety of injunctive relief in the first instance.  *See, e.g.*, *Zynga, Inc. v. Vostu USA, Inc.*, No. 11-CV-02959-EJD, 2011 WL 3516164, at *3 (N.D. Cal. Aug. 11, 2011)("But one clear policy that all federal courts recognize—even those which have been loath to interfere with foreign proceedings—is the need to protect the court's own jurisdiction.").  There is a risk of inconsistent judgments if I were to find that Huawei is not entitled to seek injunctive relief for its SEPs.  *See Microsoft I*, 871 F. Supp. 2d  at 1100 ("Courts have found that court policies against avoiding inconsistent judgments, forum shopping and engaging in duplicative and vexatious litigation sufficient to satisfy this step.").  In addition, in the absence of an antisuit injunction, Samsung faces the risk of significant harm, not just in China, but with impacts percolating around the world. The Chinese injunctions would likely force it to accept Huawei's licensing terms, before any court has an opportunity to adjudicate the parties' breach of contract claims.[18]  Under these circumstances, the Shenzhen Order "interfere[s] with 'equitable considerations' by compromising the court's ability to reach a just result in the case before it free of external pressure on [Samsung] to enter into a 'holdup' settlement before the litigation is complete."  *Microsoft II*, 696 F.3d at 886. As in *Microsoft*, the Chinese actions "have frustrated this court's ability to adjudicate issues properly before it."  *Microsoft I*, 871 F. Supp. at 1100.  The integrity of this action, therefore, will be lessened without an anti-suit injunction.  *See id.*

---

[18] Even though the Shenzhen court evaluated the parties' licensing negotiations, it was not presented with breach of contract claims.

United States District Court
Northern District of California

C.   **Vexatious or Oppressive**

In *Microsoft II*, the Ninth Circuit concluded that the district court had not abused its discretion in finding that the timing and location of the foreign action "raise[d] concerns of forum shopping and duplicative and vexatious litigation." *Microsoft II*, 696 F.3d at 886.  Samsung highlights the same concerns here, and once again insists that the district court's finding in *Microsoft* should control.  Mot. at 19; *see Microsoft II*, 696 F.3d at 886 (finding Motorola's proceedings in Germany to enforce its patents were "a procedural maneuver designed to harass Microsoft with the threat of an injunction removing its products from a significant European market and so to interfere with the court's ability to decide the contractual questions already properly before it.").

Huawei filed the Chinese actions at issue the day after it filed this one,[19] so the same timing concerns present in *Microsoft* are not present here.  *See Microsoft II*, 696 F.3d at 879 (noting that Motorola initiated the German patent litigation "several months into the ... domestic litigation").  But it did choose its home court for the majority of the Chinese actions, which implicates concerns of forum shopping.  Huawei insists that the Chinese actions are neither duplicative nor vexatious because it committed to dismiss them if Samsung would consent to a court or arbitrator dictating the FRAND terms of a cross-license.  But its own Vice President admitted that it uses injunctive relief "as a bargaining chip":

> Today, the number of disputes is on the rise, but we see fewer cases of injunction. Perhaps judges are quite reluctant to hear injunction cases because of its staggering impact on the market. Sure enough, the core issue is price; 90% or even 99% of the patent disputes are about price. Even if injunction order were to be enforced, does Huawei really want to kick Samsung out of China? Is it possible? Of course not. And is it possible for Apple to kick Samsung out of the US? No. That being said, when faced with potential licensees who are negotiating in bad faith, unwilling to pay fair royalties, you may want to file an injunction order with the court. At the end of the day, your purpose is to get the royalties in return, while using legal action as a bargaining chip. This is how things have changed over time.

Talk of Huawei's Jianxin Ding S-816 Samsung China (Stake Decl. ¶ 2; *id.*, Ex. 1; Dkt. No. 235-7).

Huawei explains that this statement is consistent with its position that injunctive relief may be

---

[19] Huawei phrases the timing as "simultaneously" because China is a day ahead of the United States.  *E.g.*, Opp'n at 20.

United States District Court
Northern District of California

appropriate when a party has refused to comply with its FRAND obligations.  And it insists that it filed the Chinese actions because it "did not know (and still does not know) the scope of ultimate rulings from this Court on FRAND."  Opp'n at 20.  Given the near simultaneity of the actions and the uncertainty over scope, I am unwilling to label the foreign suits "vexatious" or "oppressive." *See Microsoft II*, 696 F.3d at 886 (explaining that "litigation may have some merit and still be 'vexatious,' which is defined as 'without reasonable or probable cause or excuse; harassing; annoying.' ")(quoting *Black's Law Dictionary* 1701 (9th ed.2009)).

Since "at least one of the so-called '*Unterweser* factors' applies," I will proceed to assess whether the injunction's impact on comity is tolerable.  *Microsoft II*, 696 F.3d at 881.

## III.   INJUNCTION'S IMPACT ON COMITY

"Comity is 'the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.'" *Gallo*, 446 F.3d at 994 (quoting *Hilton v. Guyot*, 159 U.S. 113, 164 (1895)).  In *Gallo*, the Ninth Circuit excerpted a "detailed analysis of comity" by the D.C. Circuit in *Laker Airways Ltd. v. Sabena Belgian World Airlines,* 731 F.2d 909 (D.C. Cir. 1984).  *Id.*

> "Comity" summarizes in a brief word a complex and elusive concept—the degree of deference that a domestic forum must pay to the act of a foreign government not otherwise binding on the forum.... However, there are limitations to the application of comity. When the foreign act is inherently inconsistent with the policies underlying comity, domestic recognition could tend either to legitimize the aberration or to encourage retaliation, undercutting the realization of the goals served by comity. No nation is under an unremitting obligation to enforce foreign interests which are fundamentally prejudicial to those of the domestic forum. Thus, from the earliest times, authorities have recognized that the obligation of comity expires when the strong public policies of the forum are vitiated by the foreign act.

*Id*. at 995 (quoting *Laker Airways*, 731 F.2d at 937).

"*Gallo* requires not that we calculate the precise quantum of the injunction's interference with comity, but only that we estimate whether any such interference is so great as to be intolerable." *Microsoft II*, 696 F.3d at 886.  In *Microsoft II*, the Ninth Circuit found that "comity is less likely to be threatened in the context of a private contractual dispute than in a dispute

implicating public international law or government litigants." *Id*. at 887.  The parties here find themselves "in the context of a private contractual dispute."  As in that case, "it does not raise any 'public international issue.'"  *Id*. at 888 (quoting *Gallo*, 446 F.3d at 994).

Samsung points out that the Shenzhen Order provides that "Huawei can agree after the appeal that the injunction will not be enforced, and further states that the Shenzhen Court would also permit non-enforcement if the parties agree to an SEP cross-license." Shenzhen Order at 209; Xie Decl. ¶ 7.  So the relief it seeks would have no impact on the Chinese courts; rather, it asks me to restrain Huawei from enforcing any injunction order until I have the opportunity to determine the propriety of injunctive relief for the parties' SEPs.  It specifically notes that Huawei would remain free to seek damages for infringement of its Chinese patents while this action is pending.

Courts may also consider "[t]he order in which the domestic and foreign suits were filed" in evaluating the impact on comity.  *See Microsoft II*, 696 F.3d at 887.  As discussed, Huawei filed the Chinese actions the day after it filed the complaint here.[20]  Since this action preceded the Chinese actions—if only by one day—enjoining the foreign action would not "intolerably impact comity."  *Id*.  The scope of the injunction further indicates that the impact on comity is tolerable. *See id.*  Samsung seeks only to enjoin Huawei from enforcing the Chinese injunctions until I have an opportunity to evaluate the propriety of injunctive relief for the parties' SEPs.  Since Samsung has appealed the injunction order, the parties estimate a few months before it becomes final.  We are scheduled to proceed to trial in December of this year.  The scope of this anti-suit injunction, limited to a particular order dealing with two patents, a specific form of relief, and estimated to last less than six months, presents a negligible impact on comity.  *See id.*

## IV.   ADMINISTRATIVE MOTIONS

The parties filed administrative motions to seal portions of their briefing and attachments. Dkt. Nos. 234, 240, 244.  I ordered the parties to file supplemental declarations in support of sealing certain material.  Order (Dkt. No. 270).  They submitted those declarations and narrowly tailored their requests for sealing only that information that could cause them competitive harm.

---

[20] As previously noted, Huawei insists that the actions were filed "simultaneously."

United States District Court
Northern District of California

Supp. Zhang Decl. ISO Huawei's Admin. Mot. (Dkt. No. 277); Supp. Gray Decl. ISO Samsung's Admin. Mot. (Dkt. No. 278).  Because they have established compelling reasons for sealing their narrowly tailored requests, *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006), their administrative motions are GRANTED.

### CONCLUSION

In accordance with the foregoing, Samsung's motion to enjoin Huawei from enforcing the injunction orders issued by the Shenzhen court is GRANTED.  Huawei should not seek to enforce those orders until I have the ability to determine the breach of contract claim it chose to present in this action prior to filing the Chinese actions.

**IT IS SO ORDERED.**

Dated: April 13, 2018

William H. Orrick
United States District Judge

United States District Court
Northern District of California