# EXHIBIT 1

Trials@uspto.gov                                                    Paper No. 12
571-272-7822                                              Filed: December 8, 2017

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

SAMSUNG ELECTRONICS C-O., LTD.,
Petitioner,

v.

HUAWEI TECHNOLOGIES CO., LTD.
Patent Owner.
_____

Case IPR2017-01471
Patent 8,412,197 B2
_____


Before TREVOR M. JEFFERSON, MICHELLE N. WORMMEESTER, and
JOHN F. HORVATH, *Administrative Patent Judges*.

HORVATH, *Administrative Patent Judge*.


DECISION
Institution of *Inter Partes* Review
*37 C.F.R. § 42.108*

IPR2017-01471
Patent 8,412,197 B2

# I.  INTRODUCTION

## A.  Background

Samsung Electronics Co., Ltd.[1] ("Petitioner") filed a Petition (Paper 2, "Pet.") to institute *inter partes* review of claims 1, 2, 5–9, and 13–15 ("the challenged claims") of U.S. Patent No. 8,412,197 B2 (Ex. 1001, "the '197 patent").  Huawei Technologies Co., Ltd. ("Patent Owner") filed a Preliminary Response (Paper 10, "Prelim. Resp.").

Upon consideration of the Petition and Preliminary Response, we are persuaded, under 35 U.S.C. § 314(a), that Petitioner has demonstrated a reasonable likelihood that it would prevail in showing the unpatentability of claims 1, 2, 5, 6, and 13 of the '197 patent.  Accordingly, we institute an *inter partes* review of these claims.

## B.  Related Matters

Petitioner identifies the following as a matter that could affect, or be affected by, a decision in this proceeding:  *Huawei Techs. Co., Ltd. v. Samsung Elec. Co., Ltd.*, Case No. 3:16-cv-02787 (N.D. Cal.).  Pet. 2.

Patent Owner identifies the same matter, as well as related U.S. Patent Nos. 8,041,355, 8,155,111, 8,639,246 ("the '246 patent"), 8,996,003 ("the '003 patent"), and 9,247,493, and pending U.S. Patent App. No. 15/005,852.  Paper 5, 1.  Patent Owner indicates the '246 patent and the '003 patent are also involved in the above-referenced District Court proceeding.  *Id.*  Patent Owner further identifies the following as matters that could affect, or be affected by, a decision in this proceeding:  *Samsung Elec. Co., Ltd.* v.

---

[1] Samsung identifies Samsung Electronics America, Inc. and Samsung Research America as real parties-in-interest.  Pet. 1.

IPR2017-01471
Patent 8,412,197 B2

*Huawei Techs. Co., Ltd.*, Case IPR2017-01474 (PTAB) (challenging the patentability of claims in the related '246 patent) and *Samsung Elec. Co., Ltd.* v. *Huawei Techs. Co., Ltd.*, Case IPR2017-01475 (PTAB) (challenging the patentability of claims in the related '003 patent).[2]

### C. Evidence Relied Upon

| Reference | | Publication Date | Exhibit |
|---|---|---|---|
| *Inter-frequency/RAT idle mode mobility control,* 3rd Generation Partnership Project, 3GPP TSG-RAN WG2 #60 ("R2-075161"). | | Oct. 31, 2007 | Ex. 1005 |
| Eerolainen | US 2008/0176565 A1 | July 24, 2008 | Ex. 1006 |
| *Reselection scenarios for multi-RAT terminals in Rel-8,* 3rd Generation Partnership Project, 3GPP TSG-RAN WG2 #60bis ("R2-080338"). | | Jan. 7, 2008 | Ex. 1007 |

Petitioner also relies upon the Declarations of Tim Arthur Williams, Ph.D. (Ex. 1003), and Raziq Yaqub, Ph.D. (Ex. 1012).

### D. Asserted Grounds of Unpatentability

Petitioner asserts the following grounds of unpatentability:

| References | Basis | Claims Challenged |
|---|---|---|
| R2-075161 and R2-080338 | § 103(a) | 1, 2, 5–9, and 13–15 |
| R2-075161, R2-080338, and Eerolainen | § 103(a) | 7–9, 14, and 15 |

---

[2] Patent Owner mistakenly identifies the pending IPR's challenging the '246 and '003 patents as IPR2015-01474 and IPR2015-01475. Both cases were filed in 2017, and are properly identified as IPR2017-01474 and IPR2017-01475.

## II. ANALYSIS

### A. The '197 Patent

The '197 patent is directed toward a method of cell reselection in a mobile communications system. Ex. 1001, 1:16–18, Abstract.

The '197 patent identifies a number of mobile communications systems, including a Long Term Evolution (LTE) system and various non-LTE systems. Ex. 1001, 1:22–35. When a user's terminal or User Equipment (UE) is "camped" on a cell in one system, it can move to another cell within the same system (e.g., LTE), or to another cell in another system (e.g., a non-LTE system). *Id.* at 1:35–41. To select which cell it should move to, the UE uses a dedicated priority list. *Id.* at 1:42–45, 1:56–58. When the UE is initially camped on a non-LTE cell, establishing the dedicated priority list can result in excessive signaling with or require expensive upgrades to the non-LTE system. *Id.* at 1:65–2:1. Accordingly, the '197 patent proposes the cell reselection method depicted in Figure 1, which is reproduced below.



FIG.1

IPR2017-01471
Patent 8,412,197 B2

Figure 1 is a flow chart depicting a method for cell reselection when an UE moves from a cell in a first mobile communications system to a cell in a second mobile commincations system.  Ex. 1001, 2:35–36, Abstract.  At step 1, the UE obtains a dedicated priority list from the first system, which can be an LTE system.  Ex. 1001, 2:51–52, 2:60–62.  The dedicated priority list can be received from the first (LTE) system via dedicated signaling to the UE.  *Id.* at 3:66–4:2, 6:6–9, 7:8–10, 8:20–22, 9:31–33.  The priority levels in the dedicated priority list may be based on frequency (including the frequency and adjacent frequencies of the service cell and its neighbors), Radio Access Technology (RAT), or frequency bands in GERAN cells or neighboring cells.[3]  *Id.* at 3:52–59.  At step 2, when the UE is camped on a cell in the second system, which can be a non-LTE system, it uses the dedicated priority list obtained from the first (LTE) system to determine or select another cell to which it can move.  *Id.* at  2:53–58, 60–62.  Because the UE obtained the dedicated priority list from the first (LTE) system, the second (non-LTE system) does not need to provide a dedicated priority list, thereby reducing the need for increased signaling with or expensive upgrades to the second (non-LTE) system.  *Id.* at 2:58–59, 2:62–65.

In addition to receiving a dedicated priority list from the first (LTE) system, the second (non-LTE) system may also receive a valid time corresponding to the dedicated priority list.  Ex. 1001, 2:66–3:1.  The valid time may be set by a timer in the UE that begins when the dedicated priority list is received by the UE.  *Id.* at 5:1–4.  When the UE is camped on a cell in

---

[3] GERAN stands for GSM/EDGE Radio Access Network, where GSM stands for Global System for Mobile Communication, and EDGE stands for Enhanced Data for GSM Evolution.  Ex. 1001, 1:21–26.

IPR2017-01471
Patent 8,412,197 B2

the second (non-LTE) system, it can use the dedicated priority list received from the first (LTE) system to perform cell reselection at any time before the valid time expires. *Id.* at 3:1–3. However, once the valid time expires, the dedicated priority list received from the first (LTE) system is invalid, and the UE performs cell reselection based on a public priority list, measured cell signal quality criteria, or a search for a cell in the first (LTE) system. *Id.* at 3:3–8. The public priority list may be received from either the first (LTE) or second (non-LTE) system in system broadcast information. *Id.* at 3:9–10, 3:66–4:2, 5:60–65, 6:2–4, 7:8–10, 8:21–23, 9:31–34.

Of the challenged claims of the '197 patent, claims 1 and 7 are independent. Other challenged claims depend directly or indirectly from claims 1 and 7. Claim 1 is representative of the challenged claims, and is reproduced below.

> 1. A method for cell reselection, comprising:
>
> obtaining, by a terminal, a dedicated priority list and a valid time of the dedicated priority list from a Long Term Evolution (LTE) system; and
>
> performing, by the terminal, cell reselection according to the dedicated priority list and the valid time of the dedicated priority list, when the terminal camps on a cell of a non-LTE system;
>
> wherein, when the terminal camps on a cell of the non-LTE system, the performing cell reselection according to the dedicated priority list and the valid time comprises:
>
> performing, by the terminal camping on the cell of the non-LTE system, cell reselection according to the dedicated priority list before the valid time expires, wherein when the terminal camps on the

IPR2017-01471
Patent 8,412,197 B2

> cell of the non-LTE system, the dedicated priority
> list is invalid after the valid time expires.

Ex. 1001, 11:50–67.  Claim 7 is similar in scope to claim 1, but recites a terminal comprising a first obtaining unit, a storage unit, and a processing unit configured to perform the method recited in claim 1.  *Compare id.* at 12:46–64, *with id.* at 11:50–67.

### B. Claim Construction

The Board interprets claims of an unexpired patent using the broadest reasonable interpretation in light of the specification of the patent in which they appear.  *See* 37 C.F.R. § 42.100(b); *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2144–46 (2016).  Consistent with the rule of broadest reasonable interpretation, claim terms are generally given their plain and ordinary meaning, as would be understood by one of ordinary skill in the art in the context of the entire patent disclosure.  *See In re Translogic Tech., Inc.*, 504 F.3d 1249, 1257 (Fed. Cir. 2007).  Only those terms which are in controversy need to be construed and only to the extent necessary to resolve the controversy.  *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).  Except as indicated below, neither Petitioner nor Patent Owner requests or provides express construction for any term in the challenged claims.  Pet. 13–15; Prelim. Resp. 10–11.

### 1. camps on a cell of a non-LTE system

Petitioner argues that in the related district court proceeding, Patent Owner contends this term means "is in a selected non-LTE cell."  Pet. 14 (citing Ex. 1009, 79).  Petitioner proposes adopting that construction for the purposes of this proceeding.  *Id*.  Patent Owner argues the precise scope of

IPR2017-01471
Patent 8,412,197 B2

this term is not relevant to any issue raised in the Petition, and therefore the term does not need to be construed in this proceeding.  Prelim. Resp. 10.

We agree with Patent Owner, and decline to provide an express construction for "camps on a cell of a non-LTE system" because no construction is needed to resolve any controversy in this proceeding.  *See Vivid Techs.,* 200 F.3d at 803.

> 2. *obtaining unit, configured to obtain a dedicated priority list and a valid time of the dedicated priority list from a Long Term Evolution (LTE) system*

This limitation appears in independent claim 7, and in dependent claims 8, 9, 14, and 15 by virtue of their direct or indirect dependency from claim 7.  Ex. 1001, 12:46–49, 12:65, 13:1, 13:29, 14:3; *see also* 35 U.S.C. § 112, ¶ 5 ("A multiple dependent claim shall be construed to incorporate by reference all the limitations of the particular claim in relation to which it is being considered.").

Petitioner contends this limitation should be construed as a means-plus-function limitation under 35 U.S.C. § 112 ¶ 6.  Pet. 14.  Petitioner avers that it has taken the position in the related district court proceeding that claims containing this limitation are invalid as indefinite under 35 U.S.C. § 112, ¶ 2 because the '197 patent fails to describe any structure corresponding to the recited functions performed by the obtaining unit.  *Id.*; *see also In re Donaldson Co., Inc.*, 16 F.3d 1189, 1195 (Fed. Cir. 1997) (finding a failure to set forth adequate disclosure in the specification to support the meaning of a means-plus-function limitation is tantamount to failing to "particularly point out and distinctly claim the invention as required by the second paragraph of section 112.").  Nonetheless, for purposes of this proceeding, Petitioner argues this limitation does not require

IPR2017-01471
Patent 8,412,197 B2

construction because Patent Owner has taken the position in the related district court proceeding that this limitation is not subject to means-plus-function construction and does not require express construction. *Id*. Patent Owner argues the "obtaining unit" term requires no construction because its precise scope is not relevant to any issue raised in the Petition. Prelim. Resp. 11.

Claim construction is a matter of law. *See Markman v. Westview Inst., Inc*., 517 U.S. 370 (1996). A patentee may recite a limitation in a claim for a combination as "a means or step for performing a specified function without the recital of structure, material, or acts in support thereof." 35 U.S.C. § 112, ¶ 6. There is a presumption that a limitation that does not use the word "means" should not be construed as a means-plus-function limitation. *See Personalized Media Commc'n, LLC v. Int'l Trade Comm'n*., 161 F.3d 696, 703–704 (Fed. Cir. 1998). This presumption can be overcome, however, if the limitation fails to recite sufficiently definite structure for performing a recited function. *See Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015). To that end, generic terms such as mechanism, element, or device, or coined terms that lack a clear meaning, do not connote sufficiently definite structure in a limitation that is otherwise written in purely functional terms. *Id*. at 1350; *see also Personalized Media*, 161 F.3d at 704.

We find "obtaining unit" to be a coined term or nonce word that does not connote a sufficiently definite structure for performing the function of obtaining a dedicated priority list and a valid time of the dedicated priority list from an LTE system as recited in claim 7. Accordingly, we find the

IPR2017-01471
Patent 8,412,197 B2

obtaining unit limitation of claims 7–9, 14, and 15 should be construed as a means-plus-function limitation.

Petitioner bears the burden to construe the challenged claims, and in the case of means-plus-functions limitations, "to identify the specific portions of the specification that describe the structure, material, or acts, corresponding to each claimed function." 37 C.F.R. § 42.104(b)(3). Thus, Petitioner bears the burden of identifying the structure, material, or acts disclosed in the '197 patent that correspond to and perform the functions of obtaining a dedicated priority list and a valid time of the dedicated priority list from an LTE system as recited in claims 7–9, 14, and 15. *Id.* Petitioner fails to identify any structure disclosed in the '197 patent that is clearly linked to the performance of these functions. *See* Pet. 27.

As explained in § II.F, *infra*, Petitioner's failure to identify the corresponding structure, materials, and acts disclosed in the specification of the '197 patent for performing the recited functions of the "obtaining unit" means that Petitioner has failed to meet its burden of showing claims 7–9, 14, and 15 are unpatentable over R2-075161 and R2-080338, with or without Eerolainen.

### C. Level of Ordinary Skill in the Art

Petitioner, relying on the testimony of Dr. Williams, argues a person of ordinary skill in the art would have had at least a master's degree in electrical engineering, computer science, or a related field, and two years of experience working with cellular telephony systems. Pet. 13 (citing Ex. 1003 ¶ 16). Patent Owner offers a slightly different definition, arguing a person of ordinary skill in the art would have had at least a bachelor's degree in electrical engineering, computer engineering, computer science, or a

10

IPR2017-01471
Patent 8,412,197 B2

related field, and two to three years of experience working in the telecommunications industry.  Prelim. Resp. 7.  Patent Owner further contends the differences between the two definitions "do not appear to be material at this stage of the proceedings."  *Id.*

At this stage of the proceedings, we adopt Petitioner's definition for a person of ordinary skill in the art, which is supported by the testimony of Dr. Williams.  Nonetheless, we agree with Patent Owner that at this stage of the proceedings there does not appear to be a material difference between Petitioner's and Patent Owner's definitions for the level of skill in the art.

### D. Overview of Prior Art

#### 1. Overview of R2-075161

R2-075161 is a 3GPP (3rd Generation Partnership Project) document proposing a method for control of inter-frequency/RAT (Radio Access Technology) idle mode mobility.  Ex. 1005 § 1.  The document indicates 3GPP had already decided to support UE specific priority control for inter-RAT idle mode mobility, and proposes a method to implement such control. *Id.*  The proposed method is based on absolute priorities determined by the eNodeB (eNB), i.e., an LTE base station, and sent to the UE by the eNB in an RRC (Radio Resource Control) release message.  *Id.* §§ 2, 3.  The control information includes a list of frequency layers/RATs that the UE should reselect with specific priorities.  *Id.*  The control information can also include an expiry timer, such that the UE discards the control information upon expiration of the timer and performs cell reselection using normal cell reselection procedures.  *Id.*  In addition to the specific control information discussed above, R2-075161 discloses the UE can receive common cell reselection priorities in system information provided by the network.  *Id.*

11

IPR2017-01471
Patent 8,412,197 B2

When both common and specific control information are present in the UE, the UE should use the specific control information provided by the eNB. *Id.*

### 2. Overview of R2-080338

R2-080338 is also a 3GPP document that proposes a cell reselection method for multi-RAT terminals. Ex. 1007 § 1. R2-080338 discloses that when a UE is located in an area where E-UTRAN (LTE), UTRAN (3G) and GERAN (2G) networks coexist, it will use a priority algorithm to determine which RAT to camp on. *Id.* The document describes a number of cell reselection scenarios depending on the nature of the UE (i.e., whether it is 2G, 3G, or LTE capable), and the nature of the network it is currently camped on. *Id.* § 2, Table 1. According to one scenario (Scenario 7), when the UE is LTE capable and camping on a legacy (2G/3G) network, it does not receive the parameters needed for the priority based cell reselection algorithm from the legacy network. *Id.* § 2. R2-080338, therefore, proposes several solutions, including a first solution ("Option 1") in which the UE uses the legacy 2G/3G cell reselection algorithm, and a third solution ("Option 3") in which the UE stores cell reselection parameters previously received from an LTE network and uses these parameters for cell reselection. *Id.*

### E. Petitioner's Challenge to Claims 1, 2, 5, 6, and 13 as unpatentable over R2-075161 and R2-080338

Petitioner argues claims 1, 2, 5, 6, and 13 are unpatentable as obvious over R2-075161 and R2-080338. Pet. 24–45. Relying on the testimony of Dr. Williams, Petitioner argues a person of ordinary skill in the art would have combined the teachings from R2-075161 and R2-080338 because both references were drafted during the LTE development process discussing

12

IPR2017-01471
Patent 8,412,197 B2

inter-RAT cell reselection, which contemplated using dedicated priorities for cell reselection when the UE camped on a non-LTE network. *Id.* at 25 (citing Ex. 1003 ¶¶ 226–227). Petitioner further argues, "one of ordinary skill in the art would have been motivated to apply the teachings of a list of frequencies/RATs and timers disclosed in *R2-075161* with the teaching in *R2-080338* that priority information obtained from the LTE network should be used in cell reselection when only non-LTE networks are available." *Id.* at 27 (citing Ex. 1003 ¶¶ 223–227). Petitioner explains that because R2-080338 teaches a UE camped on a non-LTE network will use parameters previously received from an LTE network in cell reselection, it would have been "obvious and natural for one of ordinary skill to use the dedicated list, public list and expiry timer provided in *R2-075161* as the priority information provided by the LTE network." *Id.*

Patent Owner argues Petitioner has not sufficiently articulated reasoning with rational underpinnings to support combining the teachings of R2-075161 and R2-080338. Prelim. Resp. 27. First, Patent Owner argues the mere presentation of R2-075161 and R2-080338 at subsequent 3GPP working group meetings is insufficient to establish a motivation to combine their teachings. *Id.* at 27–30. Next, Patent Owner argues that because each of R2-075161 and R2-080338 presents several solutions, Petitioner has failed to show how or why a person of ordinary skill in the art would have selected for combination the particular solutions Petitioner has identified. *Id.* at 30–31. Lastly, Patent Owner argues R2-080338 decided when a UE camps on a non-LTE network it should use the non-LTE network reselection algorithm ("option 1") rather than the LTE network reselection algorithm ("option 3"). *Id.* at 30–35.

IPR2017-01471
Patent 8,412,197 B2

At this stage of the proceeding, despite Patent Owner's contentions to the contrary, we find Petitioner has articulated sufficient reasoning with rational underpinning to combine the teachings of R2-075161 and R2-080338. R2-080338 teaches a UE can store the cell reselection parameters it previously received from an LTE network, and use these parameters in a cell reselection algorithm when it camps on a non-LTE network. Ex. 1007 § 2 (Scenario 7, Option 3). R2-075161 teaches a UE, when camped on an LTE network, receives a list of frequency layers/RATs with specific cell reselection priorities and an expiry timer that determines when to discard the received list. Ex. 1005 §§ 2, 3. Petitioner proposes using the timer and priority list received from an LTE network (as taught by R2-07516), as the stored parameters used for cell reselection when the UE is camped on a non-LTE network (as taught by R2-080338). *See* Pet. 26–27 (citing Ex. 1003 ¶¶ 223–227). Petitioner's proposal amounts to a simple substitution of one known element for another to achieve a predictable result. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416–417 (2007). Accordingly, we find Petitioner's proposed combination of the teachings from R2-075161 and R2-080338 is supported by reasoning with a rational underpinning, and supports Petitioner's theory of obviousness.

We are not persuaded, at this stage of the proceeding, by Patent Owner's argument that a person of ordinary skill in the art would not have been motivated to select the particular teachings from R2-075161 and R2-080338 proposed by Petitioner because each of these documents contains multiple teachings. Although R2-075161 contains a number of "proposals," *all* of the proposals involve a UE receiving a priority list from an LTE network, and performing cell reselection based on that priority list. *See* Ex.

IPR2017-01471
Patent 8,412,197 B2

1005, §§ 2, 3.  Proposal 4 teaches optionally receiving and using an expiry timer with the priority list, and provides an express reason to do so:  the network "load conditions may be temporal." *Id.* § 2.  Similarly, although R2-080338 contains a number of cell reselection proposals, only one proposal (i.e., scenario 7) is pertinent to cell reselection when an LTE-capable UE (Rel-8) camps on a non-LTE (legacy) network.  *See* Ex. 1007 § 2, Table 1.  Thus, a person of skill in the art, considering cell reselection for an LTE-capable UE camped on a non-LTE network, would have only had to consider the three options presented under scenario 7:  using the legacy or non-LTE algorithm, using the LTE algorithm with parameters derived from the legacy algorithm, or using the LTE algorithm with stored parameters previously received from an eNB in the LTE network.

We are similarly not persuaded, at this stage of the proceeding, by Patent Owner's argument that the combination of R2-075161 and R2-080338 does not teach or suggest using the LTE cell reselection algorithm when camped on a non-LTE network because R2-080338 ultimately proposes using the legacy cell reselection algorithm.  R2-075161 and R2-080338 are prior art for all they disclose.  *See In re Fritch*, 972 F.2d 1260, 1262 (Fed. Cir. 1992).  Whatever conflicts exist in the documents must be weighed for their "power to suggest solutions to an artisan of ordinary skill." *In re Young*, 927 F.2d 588, 591 (Fed. Cir. 1991).  Although R2-080338 does ultimately propose a UE should use the legacy cell reselection algorithm ("option 1") when camping on a non-LTE cell, it does no more than that— make a proposal.  R2-080338 also teaches an alternative to that proposal— using the LTE cell reselection algorithm based on parameters received from an LTE network ("option 3").  *See* Ex. 1007 §§ 2, 3.

IPR2017-01471
Patent 8,412,197 B2

The suggestion in R2-080338 that "option 1" may be safer because "option 3" may introduce some unreliability does not teach away from "option 3." To teach away, a reference must criticize, discredit, or otherwise discourage the claimed solution, and R2-080338's suggestion that "option 3" may be less reliable than "option 1" does not amount to a teaching away. *See In re Fulton*, 391 F.3d 1195, 1201 (Fed. Cir. 2004); *see also In re Gurley,* 27 F.3d 551, 554 (Fed. Cir. 1994) ("[a] known or obvious composition does not become patentable simply because it has been described as somewhat inferior to some other product for the same use"). Indeed, the suggestion in R2-080338's that an LTE capable UE "*should* also support the legacy algorithm," contemplates that the UE *need not* do so, in which case "option 3" would be the only viable option. Ex. 1007 § 2 (emphasis added). Moreover, Petitioner's proposed combination appears to address the concern in R2-080338 that "option 3" may "introduce some unreliability once the UE reselects within UTRA [i.e., a 3G network], as the thresholds may [] be totally different and non-applicable." *Id.* For example, using the expiry timer with the priority list disclosed in R2-075161 would allow the UE in R2-080338 to discard the priority list before encountering "totally different and non-applicable" thresholds, and to continue with some other cell reselection procedure. *See* Ex. 1005 § 2 ("Upon expiry of the timer the UE shall discard the UE specific control information and continue with the normal cell reselection procedure.").

    *a.  Claim 1*

Claim 1 recites a method for cell reselection, and requires a terminal to obtain a dedicated priority list and a valid time for the dedicated priority list from an LTE network. Ex. 1001, 11:51–54.

IPR2017-01471
Patent 8,412,197 B2

Petitioner demonstrates a reasonable likelihood of showing how the combination of R2-075161 and R2-080338 teaches this limitation. *See* Pet. 29–32. For example, Petitioner demonstrates R2-075161 teaches a UE receives a dedicated priority list and valid time from an eNB. *Id.* at 29–31 (citing Ex. 1005 § 2; Ex. 1003 ¶¶ 97–99).[4] Petitioner explains the UE is a terminal such as a mobile phone or tablet, the eNB is an LTE base station, the priority list is a list of frequency layers/RATs that the UE can connect to with specific priorities, and the expiry timer is a valid time for the dedicated priority list. *Id.* at 30–31. Similarly, Petitioner demonstrates R2-080338 teaches a UE or terminal stores parameters received from an LTE network, and uses them to perform cell reselection according to the LTE priority algorithm. *Id.* at 31–32 (citing Ex. 1007 § 2; Ex. 1003 ¶ 100).

Patent Owner argues the Petition should be denied because in Petitioner's analysis of this and the other limitations of claim 1, Petitioner discusses each reference individually, without identifying any deficiency in a primary reference, or how the references are to be combined to meet the claim requirements. Prelim. Resp. 12–18. At this stage of the proceeding, we are not persuaded by Patent Owner's arguments. Although Petitioner's analysis of the individual claim limitations does discuss where each limitation is allegedly taught or suggested by both R2-075161 and R2-080338, Petitioner's proposed combination of the individual teachings from these references was made sufficiently clear when Petitioner provided a

---

[4] Petitioner refers to the exhibit page numbers, we cite to the sections by which the exhibits are delineated.

IPR2017-01471
Patent 8,412,197 B2

reason to combine the teachings.  *See* Pet. 24–27.  In particular, relying on the testimony of Dr. Williams, Petitioner argued:

> As shown below, one of ordinary skill in the art would have been motivated to apply the teachings of a list of frequencies/RATs and timers as disclosed in R2-075161 with the teaching in R2-080338 that priority information obtained from the LTE network should be used in cell reselection when only non-LTE networks are available. As R2-080338 already discloses this procedure using certain priority information, it would be obvious and natural for one of ordinary skill to use the dedicated list, public list, and expiry timer provided in R2-075161 as the priority information provided by the LTE network.

*Id.* at 27 (citing Ex. 1003 ¶¶ 223–227) (internal citations omitted).

Claim 1 further requires the terminal, when camped on a cell of a non-LTE network, to perform cell reselection according to the dedicated priority list and valid time.  Ex. 1001, 11:55–58.

Petitioner demonstrates a reasonable likelihood of showing how the combination of R2-075161 and R2-080338 teaches this limitation.  *See* Pet. 32–35.  For example, Petitioner argues R2-080338 "teaches performing cell reselection in accordance with cell reselection priorities received from the LTE network when camping on a cell of a non-LTE system."  *Id.* at 34. Relying on the testimony of Dr. Williams, and citing specifically to the description of scenarios 7 and 8 in R2-080338, Petitioner argues:

> As described in these scenarios, A UTRAN (UMTS) and GERAN (GSM) network may not communicate the information a terminal needs to perform cell reselection. Therefore, it must take a different step when it is in an area with only UMTS

IPR2017-01471
Patent 8,412,197 B2

> and GSM networks.  The proposal teaches that the
> UE should receive and store the priorities when it is
> on the E-UTRAN (or LTE) network.  Then, when
> the terminal is in an area where there is no LTE
> network (for example, an area where there is only
> UMTS or GSM networks), the terminal should use
> the priorities from the LTE network to perform cell
> reselection.

*Id.* at 35 (citing Ex. 1007 § 2; Ex. 1003 ¶ 104) (internal citations omitted).

Petitioner does not argue that R2-080338 expressly teaches performing cell reselection according to the dedicated priority list *and* valid time.  For this aspect of the limitation, Petitioner directs us to the teachings in R2-075161 that "UE specific control information is created by the eNB," "include[s] a list of frequency layers/RATs that the UE should handle with specific priorities," and "[a]n expiry timer can be signaled optionally as part of the UE specific control information" such that "[u]pon expiry of the timer, the UE shall discard the UE specific control information and continue with the normal cell reselection procedure."  Pet. 32–33 (quoting Ex. 1005 § 2) (emphases omitted).  Relying on the testimony of Dr. Williams, Petitioner argues this statement explains the UE should perform cell reselection using the dedicated priority list only before the expiration of the expiry timer.  *Id.* (citing Ex. 1003 ¶ 103).

Patent Owner argues that neither R2-080338 nor R2-075161 teaches or suggests performing cell reselection according to a dedicated priority list and a valid time when camped on a cell of a non-LTE network.  Prelim. Resp. 18–27.  Regarding R2-080338, Patent Owner contends the reference "makes no mention of using a valid time."  *Id.* at 19.  Regarding R2-075161, Patent Owner contends the reference "relates solely to cell reselection in

IPR2017-01471
Patent 8,412,197 B2

LTE cells, and does not describe the cell reselection process in non-LTE cells." *Id.* at 20.

At this stage of the proceeding, we are not persuaded by Patent Owner's arguments. As discussed above, Petitioner relies on R2-075161 (not R2-080338) for teaching receiving a priority list and "valid time" from an LTE network, and using them to perform cell reselection. *See* Pet. 27, 32–33. Similarly, Petitioner relies on R2-080338 (not R2-075161) for teaching using stored parameters previously received from an LTE network to perform cell reselection when camped on a non-LTE network. *Id.* at 27, 34–35. "Non-obviousness cannot be established by attacking references individually where the [challenge] is based upon the teachings of a combination of references." *See In re Merck & Co.*, *Inc.*, 800 F.2d 1091, 1097 (Fed. Cir. 1986). Rather, the test for obviousness "is what the combined teachings of the references would have suggested to those of ordinary skill in the art." *In re Keller*, 642 F.2d 413, 425 (CCPA 1981).

Lastly, claim 1 further requires that when the terminal is camped on a cell of the non-LTE network, it performs cell reselection according to the dedicated priority list before the valid time expires, and that the dedicated priority list is invalid after the valid time expires. Ex. 1001, 11:59–67.

Petitioner demonstrates a reasonable likelihood of showing how the combination of R2-075161 and R2-080338 teaches this limitation. *See* Pet. 35–36. For example, Petitioner demonstrates that R2-075161 teaches the LTE network provides the UE with a dedicated priority list and expiry timer, and the UE discards the dedicated priority list and continues with normal cell reselection procedures upon expiration of the expiry timer. *Id.* at 36

20

IPR2017-01471
Patent 8,412,197 B2

(quoting Ex. 1005 § 2).  Relying on the testimony of Dr. Williams,

Petitioner explains that this teaching means:

> [T]hat cell reselection should be performed according to the dedicated priority list (UE specific control information) until the timer expires, at which point the UE shall discard the priority list and continue with a different cell reselection procedure. Because the UE is directed to no longer use the UE specific control information and to discard it upon expiry of the timer, that UE specific control information is no longer valid after the valid time expires.

*Id.* (citing Ex. 1003 ¶ 107) (internal citations omitted).

For the reasons discussed above, having considered the evidence and

arguments presented by Petitioner and Patent Owner, we find on the current

record that Petitioner has demonstrated a reasonable likelihood of showing

the combination of R2-075161 and R2-080338 teaches each of the

limitations required by claim 1, and that claim 1 is likely unpatentable over

that combination of references.

### b.  Claim 2

Claim 2 depends from claim 1, and requires the terminal, when

camped on a non-LTE cell and the dedicated priority list is invalid after the

valid time expires, to perform cell reselection according to a public priority

list, a result measured according to a cell signal quality criterion, or by

searching for an LTE cell.  Ex. 1001, 12:1–9.

Petitioner argues that because the cell reselection options to be

performed upon expiration of the valid time are presented in a disjunctive

list, "only one of [these] three options needs to be shown for the claim to be

rendered invalid."  Pet. 37.  Petitioner then demonstrates a reasonable

IPR2017-01471
Patent 8,412,197 B2

likelihood of showing how the combination of R2-075161 and R2-080338 teaches performing cell reselection according to two of the delineated options when the valid time expires:  a public priority list and searching for an LTE cell.  *Id.* at 37–40.

Petitioner first argues R2-075161 teaches a UE can receive both a dedicated priority list and a public priority list.  Pet., 37–38; *see also* Ex. 1005 § 2 ("In certain deployments, it may be useful that all of the UEs are set with common priorities. . . . If both common and UE specific priorities are present, the UE specific priorities should be respected.").  Petitioner argues R2-075161 further teaches the UE discards the UE specific priorities and performs normal cell reselection upon expiration of the expiry timer.  *Id.* at 39; *see also* Ex. 1005 § 2 ("Upon expiry of the timer, the UE shall discard the UE specific control information and continue with the normal cell reselection procedure.").  Petitioner explains that once the UE discards the UE specific control information (i.e., the dedicated priority list), the UE can only use the common priority list to perform cell reselection.  *Id.* (citing Ex. 1003 ¶ 112).  Petitioner further argues a person of ordinary skill in the art would have combined these teachings with the teachings from R2-080338 to use the stored LTE parameters and cell reselection algorithm when camping on a non-LTE network.  *Id.* at 40.

Petitioner next argues R2-075161 also teaches searching for an LTE cell when the valid time expires.  Pet., 40; *see also* Ex. 1005 § 2 ("In certain deployments, it may be useful that all of the UEs are set with common priorities.  For example, the operator may set a policy to camp all of the UEs in UTRAN (or LTE).").  Petitioner argues when camping UEs on UTRANs (i.e., LTE cells) "is set as the normal cell reselection procedure, then, when

IPR2017-01471
Patent 8,412,197 B2

the priority list expires, the UE would search for a cell of the LTE system."
Pet. 40. (citing Ex. 1003 ¶ 114).

Patent Owner does not specifically contest Petitioner's argument that
the combination of R2-075161 and R2-080338 teaches the limitations of
claim 2.  Accordingly, for the reasons discussed above, having considered
the evidence and arguments presented by Petitioner and Patent Owner, we
find on the current record that Petitioner has demonstrated a reasonable
likelihood of showing the combination of R2-075161 and R2-080338
teaches each of the limitations required by claim 2, and that claim 2 is likely
unpatentable over that combination of references.

### c. Claim 5

Claim 5 depends from claim 1, and requires the dedicated priority list
and the valid time for the dedicated priority list to be carried in a dedicated
signal.  Ex. 1001, 12:34–36.

Petitioner demonstrates a reasonable likelihood of showing how the
combination of R2-075161 and R2-080338 teaches this limitation.  Pet. 41–
43.  Petitioner argues R2-075161 teaches the eNB sends the UE specific
control information (i.e., a dedicated priority list) in an RRC release message
(dedicated signal).  *Id.* at 41 (quoting Ex. 1005 § 2).  Petitioner further
argues R2-075161 sends the expiry timer (i.e., a valid time) as part of the UE
specific control information.  *Id.* at 42 (quoting Ex. 1005 § 2).  Relying on
the testimony of Dr. Williams, Petitioner explains an RRC (Radio Resource
Control) release message is a message sent from an eNB to a particular UE,
and is therefore a dedicated signal.  *Id.* at 41–42 (citing Ex. 1003 ¶¶ 116–
118).

Patent Owner does not specifically contest Petitioner's argument that

IPR2017-01471
Patent 8,412,197 B2

the combination of R2-075161 and R2-080338 teaches the limitations of claim 5. Accordingly, for the reasons discussed above, having considered the evidence and arguments presented by Petitioner and Patent Owner, we find on the current record that Petitioner has demonstrated a reasonable likelihood of showing the combination of R2-075161 and R2-080338 teaches each of the limitations required by claim 5, and that claim 5 is likely unpatentable over that combination of references.

### d.  Claim 6

Claim 6 depends from claim 1, and requires the dedicated priority list to comprise one of the following:  (a) a priority level of a frequency or a RAT, (b) priority levels of the frequency of the serving cell, adjacent frequencies of the serving cell, and frequencies of the neighboring systems, and (c) priority levels assigned for each frequency or frequency band of a neighboring system.  Ex. 1001, 12:37–45.

Petitioner argues that because the dedicated priority list is described as "comprising one of the following," the list only needs to include one of the options presented.  Pet., 43.  Petitioner then demonstrates a reasonable likelihood of showing how the combination of R2-075161 and R2-080338 teaches a dedicated priority list comprising a priority level of a frequency or a RAT.  *Id.* at 43–44.  In particular, Petitioner argues R2-075161 teaches the UE specific control information includes "a list of frequency layers/RATs that the UE should handle with specific priorities."  *Id.* at 44 (quoting Ex. 1005 § 2).  Relying on the testimony of Dr. Williams, Petitioner argues this passage of R2-075161 describes "a priority list that identifies the frequencies of the different RATs, in order of the priority the UE should choose when it is reselecting a cell."  *Id.* (citing Ex. 1003 ¶ 121).

24

IPR2017-01471
Patent 8,412,197 B2

Patent Owner does not specifically contest Petitioner's argument that the combination of R2-075161 and R2-080338 teaches the limitations of claim 6.  Accordingly, for the reasons discussed above, having considered the evidence and arguments presented by Petitioner and Patent Owner, we find on the current record that Petitioner has demonstrated a reasonable likelihood of showing the combination of R2-075161 and R2-080338 teaches each of the limitations required by claim 6, and that claim 6 is likely unpatentable over that combination of references.

### e.  Claim 13

Claim 13 depends from claim 2, and requires the terminal to obtain the public priority list from one of the LTE network and the non-LTE network.  Ex. 1001, 13:26–28.

Petitioner demonstrates a reasonable likelihood of showing how the combination of R2-075161 and R2-080338 teaches this limitation.  Pet. 44–45.  In particular, Petitioner argues R2-075161 is a proposal for a UE camping on an LTE system, and teaches the UE receives a public priority list from the LTE system.  *Id.* at 45 (citing Ex. 1005 § 2; Ex. 1003 ¶¶ 110–111).

Patent Owner does not specifically contest Petitioner's argument that the combination of R2-075161 and R2-080338 teaches the limitations of claim 13.  Accordingly, for the reasons discussed above, having considered the evidence and arguments presented by Petitioner and Patent Owner, we find on the current record that Petitioner has demonstrated a reasonable likelihood of showing the combination of R2-075161 and R2-080338 teaches each of the limitations required by claim 13, and that claim 13 is likely unpatentable over that combination of references.

IPR2017-01471
Patent 8,412,197 B2

### F.  Petitioner's challenge to claims 7–9, 14 and 15

Petitioner argues claims 7–9, 14, and 15 are unpatentable as obvious over R2-075161 and R2-080338, with or without Eerolainen.  *See* Pet. 45–63.

As discussed in § II.B.2, *supra*, claim 7 is an independent claim that includes an "obtaining unit" limitation written in means-plus-function format.  Ex. 1001, 12:47–49.  Claims 8, 9, 14, and 15 depend from claim 7, directly or indirectly, and therefore contain the same limitation.  *Id*. at 12:65, 13:1, 13:29, 14:3; *see also* 35 U.S.C. § 112, ¶ 5 ("A multiple dependent claim shall be construed to incorporate by reference all the limitations of the particular claim in relation to which it is being considered.").

Petitioner fails to identify the structures, materials, and acts disclosed in the specification of the '197 patent for performing the recited functions of the "first obtaining unit."  For this reason, Petitioner has failed to demonstrate a reasonable likelihood of showing claims 7–9, 14, and 15 are unpatentable as obvious over R2-075161 and R2-080338, with or without Eerolainen.  *See* 35 U.S.C. § 312(a)(3) (a petition must identify, "with particularity, each claim challenged, the grounds on which the challenge to each claim is based, and the evidence that supports the grounds for the challenge to each claim"); *see also* 37 C.F.R. § 42.104(b)(3) (a petition must identify "[h]ow the challenged claim is to be construed.  Where the claim to be construed contains a means-plus-function . . . limitation . . . the construction of the claim must identify the specific portions of the specification that describe the structure, material, or acts corresponding to each claimed function.").

IPR2017-01471
Patent 8,412,197 B2

## III. CONCLUSION

We have reviewed the Petition and Patent Owner's Preliminary Response to the same.  We have considered all of the evidence and arguments presented by Petitioner and Patent Owner, and have weighed and assessed the entirety of this evidence as a whole.  We find, on this record, Petitioner has demonstrated a reasonable likelihood of showing claims 1, 2, 5, 6, and 13 are unpatentable as obvious over R2-075161 and R2-080338.  We also find, on this record, that Petitioner has failed to demonstrate a reasonable likelihood of showing claims 7–9, 14, and 15 are unpatentable as obvious over R2-075161, R2-080338, and Eerolainen because Petitioner has failed to identify the corresponding structure disclosed in the '197 patent that performs the functions of the "first obtaining unit" recited in these claims.

Accordingly, we institute *inter partes* review of claims 1, 2, 5, 6, and 13 of the '197 patent, and decline to institute *inter partes* review of claims 7–9, 14, and 15.  The Board has not yet made a final determination with respect to the patentability of any claim.

IPR2017-01471
Patent 8,412,197 B2

IV.   ORDER

It is ORDERED that, pursuant to 35 U.S.C. § 314, an *inter partes*

review is hereby instituted on the following ground:

1. Claims 1, 2, 5, 6, and 13 under 35 U.S.C. § 103(a) as
   obvious over *R2-075161 and R2-080338*;

FURTHER ORDERED that, except as specifically enumerated above,

no other ground of unpatentability, with respect to any claim, is instituted for

trial; and

FURTHER ORDERED that, pursuant to 35 U.S.C. § 314(c) and

37 C.F.R. § 42.4, notice is hereby given of the institution of a trial

commencing on the entry date of this Decision.

28

IPR2017-01471
Patent 8,412,197 B2


For PETITIONER:

Kevin P.B. Johnson
Marissa Ducca
Deepa Acharya
Jared Newton
Brian Mack
kevinjohnson@quinnemanuel.com
marissaducca@quinnemanuel.com
deepaacharya@quinnemanuel.com
jarednewton@quinnemanuel.com
brianmack@quinnemanuel.com


For PATENT OWNER:

Jeffrey P. Kushan
Joseph A. Micallef
iprnotices@sidley.com