1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
    Charles K. Verhoeven (Bar No. 170151)
2   charlesverhoeven@quinnemanuel.com
    David A. Perlson (Bar No. 209502)
3   davidperlson@quinnemanuel.com
    50 California Street, 22nd Floor
4   San Francisco, California 94111
    Telephone: (415) 875-6600
5   Facsimile: (415) 875-6700

6   Kevin P.B. Johnson (Bar No. 177129)
    kevinjohnson@quinnemanuel.com
7   Victoria F. Maroulis (Bar No. 202603)
    victoriamaroulis@quinnemanuel.com
8   555 Twin Dolphin Drive, 5th Floor
    Redwood Shores, California 94065
9   Telephone: (650) 801-5000
    Facsimile: (650) 801-5100
10
    Attorneys for Samsung Electronics Co., Ltd.,
11  Samsung Electronics America, Inc., and
    Samsung Research America, Inc.
12
                    UNITED STATES DISTRICT COURT
13
                   NORTHERN DISTRICT OF CALIFORNIA
14
                       SAN FRANCISCO DIVISION
15

16  HUAWEI TECHNOLOGIES CO., LTD., et al.,    CASE NO. 16-cv-02787-WHO

17                 Plaintiffs,                **SAMSUNG'S MOTION FOR
                                              JUDGMENT ON THE PLEADINGS
18         v.                                 REGARDING HUAWEI'S CAUSE
                                              OF ACTION FOR DECLARATORY
19  SAMSUNG ELECTRONICS CO., LTD., et al.,    JUDGMENT OF FRAND TERMS
                                              AND CONDITIONS FOR A CROSS-
20                 Defendants.                LICENSE**

21  SAMSUNG ELECTRONICS CO., LTD. &          **Hearing Date: July 18, 2018
    SAMSUNG ELECTRONICS AMERICA, INC.**       Time: 2:00 p.m.
22                                            Place: Courtroom 2, 17th Floor
                   Counterclaim-Plaintiffs,   Judge: Hon. William H. Orrick**
23
           v.                                 **PUBLIC REDACTED VERSION**
24
    HUAWEI TECHNOLOGIES CO., LTD.,
25  HUAWEI DEVICE USA, INC., HUAWEI
    TECHNOLOGIES USA, INC., & HISILICON
26  TECHNOLOGIES CO., LTD.

27                 Counterclaim-Defendants.

28

1  TO PLAINTIFFS AND COUNTERCLAIM-DEFENDANTS HUAWEI TECHNOLOGIES CO.,

2  LTD., HUAWEI DEVICE USA, INC., HUAWEI TECHNOLOGIES USA, INC., AND

3  HISILICON TECHNOLOGIES CO., LTD., AND THEIR COUNSEL OF RECORD:

4      PLEASE TAKE NOTICE that on July 18, 2018 at 2:00 p.m., or as soon thereafter as the

5  matter may be heard, in the courtroom of the Honorable William H. Orrick, located at 450 Golden

6  Gate Avenue, San Francisco, California 94102, Defendants and Counterclaim-Plaintiffs Samsung

7  Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Research America, Inc.

8  (collectively "Samsung") respectfully request under Fed. R. Civ. P. 12(c) that this Court dismiss the

9  cause of action for Declaratory Judgment of FRAND Terms and Conditions for a Cross-License

10  asserted by Huawei Technologies Co., Ltd., Huawei Device USA, Inc., Huawei Technologies USA,

11  Inc., and HiSilicon Technologies Co., Ltd. (collectively "Huawei") for lack of subject matter

12  jurisdiction.

13      This motion is based on this notice of motion and supporting memorandum of points and

14  authorities, the supporting declaration of Sam Stake, the accompanying exhibits, reply briefing in

15  further support of this motion and supporting declarations and accompanying exhibits, as well as

16  other written or oral argument that Samsung may present to the Court.

17

18  DATED:  June 8, 2018                    Respectfully submitted,

19                                          QUINN EMANUEL URQUHART &
20                                          SULLIVAN, LLP

21                                          By   /s/ Charles K. Verhoeven
                                            Charles K. Verhoeven
22                                          Kevin P.B. Johnson
                                            Victoria F. Maroulis
23                                          Thomas D. Pease
                                            David A. Perlson
24

25                                          *Attorneys for Samsung Electronics Co., Ltd.,*
                                            *Samsung Electronics America, Inc., and*
26                                          *Samsung Research America, Inc.*

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................1

II.   SUMMARY OF FACTS ............................................................................................3

    A.    The Parties' Negotiations to Date Have Never Concerned Terms and
    Conditions for a U.S. Only FRAND Cross-License ............................................3

    B.    Huawei's Second Cause of Action Sought a Declaration of the Terms and
    Conditions of a Worldwide FRAND Cross-License .........................................5

    C.    Huawei Abandoned its Worldwide Rate Setting Declaratory Claim and
    Resorted To Self-Help To Assert A New U.S.-Only Declaratory Relief
    Claim ...................................................................................................................6

ARGUMENT ........................................................................................................................8

III.  THE COURT SHOULD DISMISS HUAWEI'S ABANDONED SECOND
    CAUSE OF ACTION SEEKING A WORLDWIDE LICENSE RATE ....................8

IV.  THE COURT LACKS JURISDICTION OVER A U.S.-ONLY RATE SETTING
    DECLARATORY RELIEF CLAIM .........................................................................8

V.   SAMSUNG HAS NOT CONSENTED TO RATE-SETTING AND THEREFORE
    ANY ADJUDICATION WOULD BE MERELY ADVISORY .............................11

VI.  THE COURT SHOULD EXERCISE ITS DISCRETION TO DENY A
    PIECEMEAL DECLARATORY JUDGMENT ON A U.S.-ONLY LICENSE
    THAT NEITHER PARTY WANTS ........................................................................13

VII. SAMSUNG WOULD BE UNFAIRLY PREJUDICED IF HUAWEI WERE
    PERMITTED TO PROCEED WITH A U.S.-ONLY RATE-SETTING CLAIM ...............14

VIII. CONCLUSION .......................................................................................................16

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Apple Inc. v. Motorola Mobility, Inc.*,
  No. 11-CV-178-BBC, 2012 WL 7989412 (W.D. Wis. Nov. 8, 2012)........................ 11, 12

*Augustine v. United States*,
  704 F.2d 1074 (9th Cir. 1983) ............................................................................................. 9

*BP Chemicals Ltd. v. Union Carbide Corp.*,
  4 F.3d 975 (Fed. Cir. 1993) ................................................................................................. 9

*Carver Int'l, Inc. v. SurfSkate Indus., LLC*,
  No. CV 15-1348 AG(DFMx), 2016 WL 10576628 (C.D. Cal. Dec. 7, 2016).................... 9

*Celador Int'l Ltd. v. Walt Disney Co.*,
  347 F. Supp. 2d 846 (C.D. Cal. 2004)............................................................................... 13

*Dworkin v. Hustler Magazine, Inc.*,
  867 F.2d 1188 (9th Cir. 1989) ............................................................................................. 8

*Essai, Inc. v. Delta Design, Inc*,
  No. C 13-02356 JSW, 2013 WL 6248393 (N.D. Cal. Dec. 3, 2013) ................................ 10

*Ho Keung TSE v. eBay Inc.*,
  No. C 11-01812 WHA, 2011 WL 13257446 (N.D. Cal. Aug. 29, 2011) ............................ 9

*Interdigital Commc'ns Inc. v. Huawei Tech. Ltd. et al.*,
  No. 1:13-cv-00008-RGA (D. Del. Feb. 11, 2013) ............................................................ 14

*Jackson v. Bank of Hawaii*,
  902 F.2d 1385 (9th Cir. 1990)........................................................................................... 14

*Kingdomware Techs., Inc. v. United States*,
  136 S. Ct. 1969 (2016) ........................................................................................................ 8

*Leslie Salt Co. v. United States*,
  789 F. Supp. 1030 (N.D. Cal. 1991) .................................................................................... 8

*Maxwell v. Stanley Works, Inc.*,
  2008 WL 116345 (Fed. Cir. 2008) ...................................................................................... 9

*McGraw-Edison Co. v. Preformed Line Products Co.*,
  362 F.2d 339 (9th Cir. 1966).............................................................................................. 13

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118, 142 (2007) ..................................................................................................... 9

*Panavise Prod., Inc. v. Nat'l Prod., Inc*,
  No. 08-cv-1300 ABC(JWJx), 2008 WL 11337707 (C.D. Cal. May 30, 2008),
  *aff'd sub nom. Panavise Prod., Inc., v. Nat'l Prod., Inc.*,  306 F. App'x 570 (Fed.
  Cir. 2009) ........................................................................................................................ 9, 10

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004)................................................................................... 9

*Thomas v. Anchorage Equal Rights Comm'n*,
    220 F.3d 1134 (9th Cir. 2000)............................................................................ 11, 12

*United Tactical Sys., LLC v. Real Action Paintball, Inc.*,
    No. 14-CV-04050-MEJ, 2017 WL 1833201 (N.D. Cal. May 8, 2017) ...................... 14, 15

*Yu v. Designed Learned, Inc*,
    No. 3:15-CV-5345-LB, 2016 WL 7033978 (N.D. Cal. Dec. 2, 2016).......................... 8

*Zivkovic v. S. California Edison Co.*,
    302 F.3d 1080 (9th Cir. 2002)............................................................................ 15, 16

*Zoove Corp. v. StarPound Corp.*,
    No. 10-CV-06131 EJD PSG, 2012 WL 3580526 (N.D. Cal. Aug. 17, 2012) ................... 10

## **Rules / Statutes**

28 U.S.C. § 2201(a)............................................................................................... 13

Fed. R. Civ. P. 12(c)........................................................................................... 1, 8

Fed. R. Civ. P. 12(h)(3)........................................................................................... 8

## I.      INTRODUCTION

Samsung brings this motion pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings due to lack of subject matter jurisdiction because Huawei has abandoned its declaratory relief cause of action asking the Court to set worldwide cross license terms, including royalty rates, for the parties.  Without seeking leave of Court, or even purporting to amend its claim, Huawei has engaged in self-help to assert a new declaratory relief claim, this time seeking only "U.S." rate setting and other terms.  The Court should dismiss Huawei's worldwide rate setting claim because it has been abandoned.  The Court also should not permit Huawei to amend its complaint to assert a new U.S.-only rate setting claim.  Among other reasons, ███████████████████████████████ ███████████████████████  Indeed, the relevant Huawei and Samsung witnesses have testified ██████ ████████████████████████████  For these reasons and others, the Court lacks jurisdiction to provide the new advisory opinion that Huawei's lawyers now request.

As set forth below, the parties ███████████████████████████████████████████████ ██████████████████████████████████████  and for nearly two years, the exclusive focus of Huawei's declaratory judgment relief claim was a worldwide cross-license.  In its Second Cause of Action, Huawei asked for the declaration of the terms and conditions for a FRAND cross-license under the parties' worldwide portfolios of patents essential to the 3GPP UMTS (3G) and LTE (4G) standards.  Dkt. 1 ("Compl.") ¶¶ 41, 44; Compl. ¶¶ 61-68 (Second Cause of Action); Compl. at Prayer for Relief, B.  Huawei has repeatedly emphasized that it is asking "this Court to set *worldwide FRAND rates* for the standard essential patent ("SEP") portfolios of Huawei and Samsung."  *See, e.g.*, Dkt. 129 (Transcript of April 19, 2017 Hearing) ("the Court can certainly determine worldwide rates . . . "); Dkt. 240-3 (Huawei's Opposition to Samsung's Motion for an Antisuit Injunction) ("Antisuit Opp.") (emphasis added) at 1.  At no time did Huawei contend the Court should only set royalties for a U.S. SEP cross-license.

After the close of fact discovery and with the deadline for exchange of expert reports looming, Huawei abruptly changed course and unilaterally announced that rate-setting should instead focus exclusively on the United States.  Samsung's first inkling of Huawei's strategy was in a footnote in Huawei's opposition to the antisuit injunction motion, where Huawei stated it would

1   be "willing to" radically alter its rate setting request to only U.S. patents.[1]  On April 16, Huawei

2   informed Samsung that its experts would disclose rates for the parties' U.S. SEP portfolios, and on

3   April 27, Huawei served expert reports that set forth U.S.-only portfolio rates.

4       Huawei cannot simply self-help itself to a new claim, without seeking or obtaining leave of

5   court, after the close of fact discovery and just days before opening expert reports.  Because ███

6   ████████████████████████████████, no case or controversy or declaratory relief

7   jurisdiction exists for a U.S. rate-setting claim.  Huawei cannot casually change its cause of action

8   at the end of discovery and seek declaratory relief concerning royalty and other contract terms that

9   the parties have never even discussed.  Moreover, as with its initial worldwide rate-setting request,

10  to which Samsung never agreed, Huawei's new request that the Court "set rates" for a U.S.-only

11  "license" fundamentally misunderstands the U.S. adversarial system of law.  Federal courts are not

12  permitted to issue advisory opinions, under both constitutional and common law.

13      In addition, a retroactive ruling by this Court blessing Huawei's tacit amendment severely

14  prejudices Samsung.  Switching from a worldwide to a U.S.-only cross license is not merely

15  "limiting" its claim, as Huawei so cavalierly asserts.  It involves a complete reassessment of the

16  parties' relative IP and market positions and materially changes the royalty analysis.  There has been

17  no discovery on the terms and conditions that should apply for a U.S.-only license and, in fact,

18  neither party has even exchanged a license proposal that contemplated such an arrangement.

19      Finally, Huawei's new declaratory relief claim would waste the Court's and the parties' time.

20  At deposition, Huawei's negotiators and leadership consistently testified that ████████████

21  ████████████████████████████████.  Samsung's negotiators and top leadership

22  have likewise testified ████████████████████████████████████████

23  Thus, not only is there no record of ██████████████████████████  both parties'

24  percipient witnesses have testified under oath that ████████████████████████████

25

26  ───────────────

27     [1]  Dkt. 240-3 (Antisuit Opp.) at 9, n. 10.  During the antisuit injunction oral argument,
    Huawei's also counsel mentioned "we'd be fine with the Court setting a FRAND rate for the
28  United States . . . ." Dkt. 254 (Transcript of Proceedings March 14, 2018) at 15.

1    ▓▓▓▓.  Courts routinely exercise their discretion to decline declaratory relief where, as here, the

2    relief would only result in a piecemeal judgment without resolving the parties' larger dispute.

3           It is undisputed that Huawei has now abandoned its declaratory relief cause of action seeking

4    a worldwide royalty.  The Court should dismiss this claim.  In addition, the Court should not permit

5    Huawei to add a new declaratory relief claim for U.S.-only rate setting because no jurisdiction exists

6    for that claim, because Samsung would be unfairly prejudiced, and ▓▓▓▓▓▓▓▓▓▓▓▓▓

7    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓

8    **II.    SUMMARY OF FACTS**

9           **A.    The Parties' Negotiations to Date Have Never Concerned Terms and
             Conditions for a U.S. Only FRAND Cross-License**

10

11          At no time from the beginning of the parties' negotiations in 2011 until Huawei brought suit

12   in 2016 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

13   ▓▓▓▓▓▓▓▓▓▓▓  Xuxin Cheng, Huawei's VP of Licensing and Huawei's lead

14   negotiator, confirmed this in his deposition, testifying that:

15

16

17

18

19

20

21

22

23

24

25

26   _____

27   ²  Ex. 1 (Cheng Tr.) at 93:19-23.
     ³  *Id.* at 93:24-94:6.

28

1 ███████████████████████████████████████████████████[4]

2 The record supports Mr. Cheng's recollection.[5]  The parties ████████████

3 ██████████████████████████████████████ in April 2011.[6]  At that time, Huawei

4 emphasized ████████████████████████████████████████████████████

5 █████████████████████████████████████████████████.[7]  Huawei also

6 emphasized ████████████████████████████████████████████████████

7 ███████████████████████████████████████",[8]  Huawei also cited █████████

8 ████████████████████████████████████████████████[9]  Huawei also

9 emphasized ████████████████████████████████████████",[10]

10      Samsung likewise understood the potential cross-license between the parties would be ██

11 ███████████   In a December 7, 2012 communication, Samsung re-iterated ████████

12 ████████████████████[11]  Samsung's draft term sheets from July 2012 through

13

14

15 _____

16    [4] *Id.* at 94:23-95:5.

17    [5]  Other Samsung and Huawei executives testified to ██████████████████████ as
well.  Dr. Seung-Ho Ahn, Samsung's head of Samsung's Intellectual Property Center, testified

18 ██████████████████████████████████████████████████████████  Ex. 2
(Ahn Tr.) at 30:19-31:4.  Dr. Liuping Song, Huawei's Chief Legal Officer, testified ████████

19 ████████████████████████████  Ex. 3 (Song Tr.) at 122:12-17.  Jason Ding,
Huawei's Head of Intellectual Property, testified ████████████████████

20 ████████████████████████████████████  Ex. 4 (Ding Tr.) at
114:19-115:1.  Hojin Chang, one of the lead negotiators for Samsung, similarly ████████████

21 █████████████████████████████████████████████████████████████████

22 ███████████████████████████████  Ex. 5 (Chang Tr.) 68:1-4.
     ████████████████████████  Ex. 6 (Ding Tr.) at 185:22-186:5

23 ██████████████████████████████████████████████████████████████

24 ██████████████████████████████████████████████████████████████

25 ████████████████████████
    [7]  Ex. 7 (Cheng Ex. 715) at HW_Samsung_00130416.

26    [8]  *Id.* at HW_Samsung_00130421.

27    [9]  *Id.* at HW_Samsung_00130422.
    [10]  *Id.* at HW_Samsung_00130423.

28    [11]  Ex. 8 (Chang Ex. 633).

1  October 2012 involved a proposal that the companies license ███████████████████

2  ████████████████████████████████████████████████"[12]

3       From 2012 through the time Huawei filed this action, Huawei ████████████████

4  ███████████████████████████████████████████. Huawei made

5  another presentation in March of 2012 in which it first proposed ████████████████

6  ████████████████████████. Huawei continued to insist on a royalty based on ██████

7  ████████████████████████ until it filed this litigation in May 2016.[13]

    **B.**    **Huawei's Second Cause of Action Sought a Declaration of the Terms and Conditions of a Worldwide FRAND Cross-License**

    Huawei filed its Complaint on May 24, 2016, emphasizing that the parties for years had been "negotiating a *worldwide cross-license* agreement to their respective UMTS and LTE portfolios" but had failed to reach agreement on the terms and conditions for such a license. Dkt. 1 ("Compl.") at ¶¶ 41, 47. In its Second Cause of Action, Huawei asserted that it was "entitled to a declaratory judgment setting forth the FRAND terms and conditions, including royalty rates for each standard, for a cross-license between Huawei and Samsung . . . covering their respective UMTS and LTE SEP portfolios." *Id.* at ¶ 67; *see also* Prayer for Relief B ("Declare the FRAND terms and conditions, including royalty rates for UMTS and LTE standards respectively, for a cross-license between Huawei and Samsung (and their affiliates) covering their respective portfolios of patents essential to 3GPP standards").[14]

---

[12] Exs. 9-11 (HW_Samsung_00130771, HW_Samsung_00130704, HW_Samsung_00130697).

[13] Fact discovery in this case has since confirmed ████████████████████████ █████. Rather, ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

[14] Both during pre-suit negotiations and after this lawsuit and the co-pending Chinese injunction actions were filed, Samsung repeatedly expressed its belief that the parties' dispute could be resolved through good faith negotiations and that it did not make sense to ask a Court, or an arbitration panel, to determine licensing terms that require knowledge of the relevant business and prediction of the future. Accordingly, Samsung continues to not consent to rate-setting by the Court.

1    Throughout this litigation, Huawei has emphasized the global nature of the dispute and the

2  fact that resolution of this litigation would result in terms and conditions for a worldwide FRAND

3  cross-license.  Huawei has argued the Court should bifurcate the breach of FRAND claims from the

4  patent claims because a determination of FRAND issues would "moot" patent claims asserted "here

5  and abroad."  Dkt. 84 at 1, 5.  Similarly, Huawei emphasized the global nature of the dispute in its

6  Opposition to Samsung's Motion for an Antisuit Injunction, asserting that it "has consistently asked

7  that this Court to set ***worldwide FRAND rates*** for the standard essential patent ("SEP") portfolios

8  of Huawei and Samsung."  Antisuit Opp. at 1.  Huawei explained "it has always asserted that this

9  Court has the power to set worldwide FRAND rates for the parties' portfolios."  Antisuit Opp. at 2.

10  Huawei also said it "believes that ***the Court has the power to set worldwide rates*** given the global

11  scope of the parties' patents subject to underlying FRAND commitments, the parties' prior

12  negotiations, and the parties' global sales of standard compliant products."  Antisuit Opp. at 9 n. 10

13  (emphasis added).

14    **C.    Huawei Abandoned its Worldwide Rate Setting Declaratory Claim and
       Resorted To Self-Help To Assert A New U.S.-Only Declaratory Relief Claim**

15

16    On February 20th, in opposing Samsung's motion for an antisuit injunction, Huawei

17  revealed for the first time in a footnote that it would be "***willing*** to confine the rate-setting

18  determination in this Court to the parties' respective portfolios of U.S. SEPs" to resolve any

19  objection to global rate-setting.  Antisuit Opp. at 10 n. 10.  At the hearing, Huawei counsel further

20  stated "you know, we'd be ***fine*** with the Court setting a FRAND rate for the United States . . . ."

21  Dkt. 254 (Transcript of Proceedings March 14, 2018) at 15.

22    This Court granted Samsung's Motion for Antisuit Injunction on April 13, 2018.  *See*

23  Antisuit Order.  The Court's order did not address Huawei's rate setting claim because it was

24  irrelevant to the Court's ruling, which relied on the Breach of Contract claims.  *See* Antisuit Order

25  at 13 ("As in Microsoft, '[t]he contractual umbrella over the patent claims controls.'" (citing

26  *Microsoft*)).  Three days later*,* Huawei sent a letter purportedly resolving an "ambiguity" about the

27  scope of its Declaratory Judgment claim.  Ex. 13 (April 16, 2018 Letter from Giardina to Pease).  In

28  that letter, Huawei stated:

> To avoid any ambiguity as to Huawei's declaratory judgment claim, however, we wanted to advise you in advance that Huawei intends to disclose the terms and conditions that it contends are FRAND for a cross-license to the parties' portfolios of U.S. 3G and 4G SEPs.

*Id.*  Four days later, on April 20, Huawei filed a Motion for Reconsideration before this Court, arguing, among other things "there is now even less overlap" between this litigation and the Chinese lawsuits because Huawei "confirmed by letter" that Huawei intends to limit its Declaratory Judgment claim to United States patents.  Dkt. 285 (Huawei's Motion for Reconsideration) at 4.

As set forth in Samsung's Opposition to Huawei's Motion for Reconsideration, the scope of Huawei's declaratory judgment rate setting cause of action is irrelevant to the Court's antisuit injunction order.  That order was based on the parties' breach of contract claims.  Dkt. 287 (Samsung Opp. to Huawei's Mot. for Reconsideration) ("Reconsideration Opp.") at 8.  The ETSI contracts at issue there concern licensing worldwide.  Reconsideration Opp. at 8.  Indeed, ETSI is a European organization and is enforced in accordance with French law.  The scope, presence or absence of Huawei's rate setting claim is independent from whether the parties' breached their FRAND obligations under ETSI.  Likewise, the basis of the Court's antisuit injunction order exists whether or not Huawei's rate setting claim exists and regardless of its scope.  Reconsideration Opp. at 8.

In any event, Huawei has now fully abandoned its cause of action for worldwide rate setting, as its April 27, 2018 opening expert reports confirmed.  Huawei proffered Dr. Michael Lasinski to opine on the topics of rate-setting and damages. ████████████████████████ ████████████████████████████████████████████ Huawei has now definitively abandoned its second cause of action seeking declaratory relief under which the Court would set the terms and conditions, including royalty rates, for a worldwide SEP cross-license.

## ARGUMENT

**III.   THE COURT SHOULD DISMISS HUAWEI'S ABANDONED SECOND CAUSE OF ACTION SEEKING A WORLDWIDE LICENSE RATE**

Huawei's Complaint asserted a claim for worldwide rate-setting. *See* Compl. at ¶¶ 41, 47, 67; Compl. at Prayer for Relief B.  Huawei has since withdrawn that claim via correspondence to Samsung. Ex. 13 (April 16, 2018 Letter from Giardina to Pease).  Huawei has presented no evidence in support of its worldwide rate-setting claim.  *See* Section II.C above.  Huawei has therefore abandoned that claim and, for that reason alone, it should be dismissed pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings due to lack of subject matter jurisdiction.[15]

**IV.   THE COURT LACKS JURISDICTION OVER A U.S.-ONLY RATE SETTING DECLARATORY RELIEF CLAIM**

The Court should deny any effort by Huawei to amend its complaint to assert a declaratory relief claim that asks the Court to set the terms and conditions of a U.S.-only SEP license because even if the Court were to have jurisdiction over a worldwide rate setting claim as pleaded by Huawei, and it does not, the Court has no jurisdiction over the U.S.-only rate setting claim that Huawei now advances.  "If the court determines *at any time* that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  Article III of the Constitution grants this Court subject matter jurisdiction to hear only "Cases" or "Controversies," and a declaratory relief action may be sought only to resolve an "actual controversy" existing "at the time the complaint is filed."  *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1975 (2016) (internal quotations and

---

[15]   After the pleadings are closed, a party may move for judgment on the pleadings.  Fed. R. Civ. P. 12(c). "[T]he same standard of review applicable to a Rule 12(b) motion applies to its Rules 12(c) analog" because the motions are "functionally identical." *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).  A Rule 12(c) motion for judgment on the pleadings may also assert a lack of subject-matter jurisdiction. *Yu v. Designed Learned, Inc*, No. 3:15-CV-5345-LB, 2016 WL 7033978, at *1–2 (N.D. Cal. Dec. 2, 2016) (citing *Leslie Salt Co. v. United States*, 789 F. Supp. 1030 (N.D. Cal. 1991)). Moreover, "if procedural defects—like a lack of subject-matter jurisdiction—are asserted in a Rule 12(c) motion, the district court will apply the same standards... as it would have employed had the motion been brought prior to the defendant's answer under Rule[ ] 12(b)(1)." *Id*. at *1–2 (N.D. Cal. Dec. 2, 2016) (internal citations omitted).

1   citations omitted); *see also Ho Keung TSE v. eBay Inc.*, No. C 11-01812 WHA, 2011 WL 13257446,

2   at *1 (N.D. Cal. Aug. 29, 2011).  "The purpose of the [Declaratory Judgment] Act is to enable a

3   person who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution

4   of that dispute without having to await the commencement of legal action by the other side." *BP*

5   *Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 977 (Fed. Cir. 1993), *abrogated on other*

6   *grounds by Maxwell v. Stanley Works, Inc.*, 2008 WL 116345 (Fed. Cir. 2008).  The Act "does not

7   allow federal courts to give advisory rulings on the potential success of an affirmative defense before

8   a cause of action has even accrued."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 142,

9   (2007).[16]  Here, because the parties' licensing dispute has been global in nature, Huawei's request

10  for U.S. rate setting is exactly that:  a request for an impermissible advisory adjudication of the

11  rights and obligations of the parties.

12          Courts do not have subject matter jurisdiction over a claim requesting "what the law would

13  be upon a hypothetical state of facts."  *Panavise Prod., Inc. v. Nat'l Prod., Inc*, No. 08-cv-1300

14  ABC (JWJx), 2008 WL 11337707, at *2 (C.D. Cal. May 30, 2008), *aff'd sub nom. Panavise Prod.,*

15  *Inc., v. Nat'l Prod., Inc.*, 306 F. App'x 570 (Fed. Cir. 2009) (citation and quotation omitted).  That

16  is exactly what Huawei seeks here, because the negotiations between the parties were about a

17  ***worldwide*** cross-license, not a United States cross-license.  Huawei is therefore asking this Court to

18  declare the contractual terms of a hypothetical cross-license—including royalty rate, duration,

19  scope, and other provisions—that was never contemplated by the parties and is unlikely to be of any

20  use to the parties in resolving their dispute.

21

22

23          ────────────────

24          [16]   In "resolving a motion that presents a factual attack concerning jurisdiction, 'the district
        court may review evidence beyond the complaint without converting the [motion] to dismiss into a
25      motion for summary judgment' and 'need not presume the truthfulness of the plaintiff's
        allegations.'"  *Panavise*, 2008 WL 11337707, at *3 (quoting *See Safe Air for Everyone v. Meyer*,
26      373 F.3d 1035, 1039 (9th Cir. 2004)).  The Court is "free to hear evidence regarding jurisdiction
        and to rule on that issue prior to trial, resolving factual disputes where necessary."  *Carver Int'l,*
27      *Inc. v. SurfSkate Indus., LLC*, No. CV 15-1348 AG (DFMx), 2016 WL 10576628, at *2 (C.D. Cal.
        Dec. 7, 2016) (citing *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)).

28

1    Xuxin Cheng, Huawei's lead licensing negotiator with Samsung and 30(b)(6) witness on

2  FRAND licensing topics, █████████████████████████████████████████

3  ███████████   at his deposition.  He admitted that the parties' negotiations ████████████

4  ████████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████████

8  ███████████'[17]   The parties' negotiation history—during which the parties

9  ████████████████████████████████████(supra at II.A)—confirms the lack of case or

10  controversy jurisdiction.  So too does Huawei's exclusive focus in this action—from its Complaint

11  through its opposition to the antisuit injunction—on seeking worldwide rate-setting.  Supra at II.B.

12    Accordingly, Huawei's request that the Court now opine on a United States rate for the

13  parties is indisputably based on a hypothetical state of facts because the parties have never discussed

14  what such a rate, let alone the other contract terms, would be.  *Panavise*, 2008 WL 11337707, at *4

15  (finding "no actual case or controversy" and thereby granting motion to dismiss for lack of subject

16  matter jurisdiction where there was an "absence of any communication or conduct by Defendant

17  towards Plaintiff"); *see also Zoove Corp. v. StarPound Corp.,* No. 10-CV-06131 EJD PSG, 2012

18  WL 3580526, at *5 (N.D. Cal. Aug. 17, 2012) (finding lack of jurisdiction with respect to patents

19  that had yet to be issued prior to the filing of the complaint); *Essai, Inc. v. Delta Design, Inc*, No. C

20  13-02356 JSW, 2013 WL 6248393, at *3 (N.D. Cal. Dec. 3, 2013) (granting motion to dismiss claim

21  for lack of jurisdiction where there were no accusations "regarding a specific product" and "the

22  lengthy correspondence between the two companies" never "identif[ied] any particular product sold

23  or offered for sale by [accused]").  ████████████████████████████████

24  ██████████████████████████████    This Court should not issue an

25  advisory opinion on the contractual terms, including royalty rates, of a United States cross-license

26  ██████████████████████████████

27  _____

28    [17]  Ex. 1 (Cheng Tr.) at 93:19-94; 94:23-95:5.

**V.  SAMSUNG HAS NOT CONSENTED TO RATE-SETTING AND THEREFORE ANY ADJUDICATION WOULD BE MERELY ADVISORY**

Huawei's declaratory relief claim should be dismissed for the independent reason that, in the absence of Samsung's consent, the Court would at best be issuing an advisory opinion.  As recognized by the Ninth Circuit, the role of the courts "is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000).  Huawei has argued this very position in other proceedings, stating that "to Huawei's knowledge" no tribunal has ever "compelled a party to enter into a global license settled by the court of a single country."[18]

Regardless of the geographical scope of the requested rate-setting, Huawei asks this Court to resolve a hypothetical question—what portfolio FRAND rate would apply for a cross-license to the patents in each party's portfolio that is encumbered by a FRAND obligation.  But Samsung has not agreed to enter into a license based on the terms and conditions the Court or the jury might set. Samsung continues to believe that the parties' best interests are served by returning to the negotiation table and attempting to negotiate in good faith a license rather than seek advisory opinions from the Court on actual contractual terms.  At the very least, if the parties are unable to fully negotiate a resolution to their license disagreement now, they will soon have the benefit of the upcoming trial on their competing breach of FRAND contract claims, as well as Samsung's related antitrust claim, in attempting to fashion an amicable resolution of this dispute.

Other courts considering whether adjudication of a FRAND portfolio rate would be appropriate have found any such adjudication would constitute an impermissible "advisory opinion." *Thomas v. Anchorage Equal Rights Comm'n* at 1138.  *Apple Inc. v. Motorola Mobility Inc.* is instructive as another case in which a party requested the court engage in advisory rate-setting of a portfolio of SEPs.  *Apple Inc. v. Motorola Mobility, Inc.*, No. 11-CV-178-BBC, 2012 WL

---

[18]  Ex. 15 (Skeleton Argument of Huawei in *Unwired Planet v. Huawei* A3/2017/1784 (Dec. 15, 2017)) at ¶ 28.

7989412, at *2 (W.D. Wis. Nov. 8, 2012).  There, Apple sought a declaratory judgment that would

set "a specific rate or range that would qualify as a fair, reasonable, and non-discriminatory rate for

a license to Motorola's essential patents and an order requiring Motorola to offer that license."  *Id.*

On the eve of trial, however, Apple argued "Motorola had never asked the court for an order

requiring Apple to accept" the judicially determined rate and that Apple "would be willing to pay a

rate of no more than $1."  *Id.* at *2.

As the court recognized, "the court would determine what it believed to be a fair, reasonable

and non-discriminatory rate for a license with Motorola, but Apple would pay that rate only if it was

the rate Apple wanted."  *Id.* at *3.  The court also realized "Apple was asking the court to assist it

in negotiating, not in putting the parties' dispute to rest."  *Id.*  Finally, as explained by the court:

> Apple has not explained how it is possible to determine a rate without knowing the answers to such questions as how a cross-license to the other party's patents may affect that rate or what the scope of the license is (a worldwide license will be more valuable than a license to sell in only one country or only a few countries); what guarantees are incorporated into the agreement; the length of the agreement; or the frequency of payments.  In effect, Apple is asking the court to assess one part of a complex contract that has yet to be negotiated.

*Id.* at *5.  The same is true here—without Samsung's consent to abide by the Court's order, any

imposed relief would be advisory.  It would not put the parties' dispute to rest, and there are many

open questions about scope, guarantees, duration, and other contractual terms.  Huawei itself has

recognized the importance of consent before a tribunal should engage in rate-setting.[19]

If both parties consent to judicial rate-setting, there may be a justiciable dispute.  But without

that stipulation, the Court would be issuing an improper "advisory opinion."  *Thomas v. Anchorage*

*Equal Rights* Comm'n, 220 F.3d at 1138.  Because Samsung has not consented to judicial rate-

setting, the Court should dismiss Huawei's declaratory judgment claim.[20]

---

[19]  Ex. 15 (Skeleton Argument of Huawei in *Unwired Planet v. Huawei* A3/2017/1784 (Dec. 15, 2017)) at ¶ 40 ("A party that agrees to a global licence following negotiation may have effectively consented to forego its right to challenge the validity and/or essentiality of the separate national rights. It may have good reasons for so doing (e.g. a cross-licence). But a Court ought not to compel a party to do this").

[20]  Even if Huawei could reverse course back to its world-wide rate-setting claim—which it cannot because of a complete absence of evidence—an adjudication of that claim would likewise be an "advisory opinion" for the same reasons.

## VI. THE COURT SHOULD EXERCISE ITS DISCRETION TO DENY A PIECEMEAL DECLARATORY JUDGMENT ON A U.S.-ONLY LICENSE THAT NEITHER PARTY WANTS

Even if the Court found, contrary to the foregoing, that there were a "case or controversy" over U.S.-rate setting, the Court should decline as a discretionary matter to exercise its declaratory judgment power.  The Court's exercise of declaratory judgment jurisdiction is not mandatory.  *See* 28 U.S.C. § 2201(a) (court "***may*** declare the rights" of the parties).  Instead, declaratory judgment "may be refused where it would serve ***no useful purpose*** or would not finally determine rights of parties," or where "it would result in ***piecemeal trials*** of various controversies presented or in trial of particular issue without resolving entire controversy."  *McGraw-Edison Co. v. Preformed Line Products Co.*, 362 F.2d 339, 343 (9th Cir. 1966).  Courts thus generally consider two criteria in determining whether to exercise their discretionary powers: "1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  *Celador Int'l Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846, 857 (C.D. Cal. 2004); *see also McGraw-Edison*, 362 F.2d at 342.

Here, both factors strongly weigh against the Court's exercise of its declaratory judgment power over U.S. rate setting.  The officers and decision makers at both Huawei and Samsung have testified that ███████████████████████████████ Dr. Seung-Ho Ahn, Samsung's head of Samsung's Intellectual Property Center, testified that Samsung's ██████████████████ ██████████████████████████[21] Dr. Liuping Song, Huawei's Chief Legal Officer, testified that Huawei ████████████████████████████[22] Jason Ding, Huawei's Head of Intellectual Property, testified that for ████████████████████████████████ ████████████████████████████[23]  Xuxin Cheng, Huawei's lead negotiator, testified that his ██████████████████████████████████████

---

[21] Ex. 2 (Ahn Tr.) at 30:19-31:4.
[22] Ex. 3 (Song Tr.) at 122:12-17.
[23] Ex. 4 (Ding Tr.) at 114:19-115:1.

1    ███████████████████████████████████████████[24]   Hojin Chang, one of the lead

2    negotiators for Samsung, similarly testified that Samsung's ████████████████████

3    ████████████████████████████████   when negotiating the cross-license at issue.[25]   The

4    documents underlying the negotiation also demonstrate that ████████████████████

5    ███████████████████████   Supra at II.A.

6        This is not the first time Huawei has asked a district court to engage in advisory rate-setting.

7    In *Interdigital Commc'ns v. Huawei Tech. Ltd. et al.,* Huawei similarly argued that it was "entitled

8    to a judicial determination of the FRAND Rate" on an expedited basis for Interdigital's asserted

9    patents.   Huawei's Mot. for Expedited Disc. and Expedited Trial on FRAND Countercl., 9,

10   *Interdigital Commc'ns Inc. v. Huawei Tech. Ltd. et al.,* No. 1:13-cv-00008-RGA (D. Del. Feb. 11,

11   2013).  The court there denied Huawei's request because a "determination of the FRAND rate would

12   at most resolve a tiny sliver of this case."  Order Den. Mot., 2, *Interdigital Commc'ns Inc. v. Huawei*

13   *Tech. Ltd. et al.,* 1:13-cv-00008-RGA (D. Del. March 31, 2013).  The court never engaged in judicial

14   rate-setting.   The same is true here—resolving the royalty rate of a U.S.-only license would not

15   move the needle appreciably towards resolving the parties' global dispute.

16   **VII.   SAMSUNG WOULD BE UNFAIRLY PREJUDICED IF HUAWEI WERE**
         **PERMITTED TO PROCEED WITH A U.S.-ONLY RATE-SETTING CLAIM**

17

18       The Court should also dismiss Huawei's rate-setting claim because Huawei's self-help

19   amendment would highly prejudice Samsung at this late stage in the litigation and Huawei has

20   proffered insufficient evidence to support its original world-wide rate-setting claim.[26]   For over the

21   past two years, Samsung has spent considerable time evaluating how Huawei might potentially seek

22   to try this claim and how, given the many potential scenarios, Samsung might respond.  Thus, the

23   _____

24       [24]   Ex. 1 (Cheng Tr.) at 93:19-23.
25       [25]   Ex. 5 (Chang Tr.) at 68:1-4.
26       [26]   While Huawei has not moved for leave to amend its Complaint, such a motion would be
     denied because prejudice to the opposing party is the most important factor in denying leave to
27   amend.  *Jackson v. Bank of Hawaii,* 902 F.2d 1385, 1387 (9th Cir. 1990); *see also United Tactical*
     *Sys., LLC v. Real Action Paintball, Inc.,* No. 14-CV-04050-MEJ, 2017 WL 1833201, at *2 (N.D.
28   Cal. May 8, 2017) ("Prejudice is the touchstone of the inquiry under Rule 15(a).").

1  state of the world—and this case—as of the hearing on the antisuit injunction was that Huawei

2  presumably would serve expert reports that reflected how it would attempt to establish the terms

3  and conditions of a worldwide FRAND cross-license.

4      With opening expert reports due only four days later and rebuttal reports 30 days thereafter,

5  Huawei sent correspondence to Samsung purporting to resolve "ambiguity" about its rate-setting

6  claim.  *See* Ex. 13 (April 16, 2018 Letter from Giardina to Pease).[27]  In that letter, Huawei stated:

7      > To avoid any ambiguity as to Huawei's declaratory judgment claim, however, we wanted to
       > advise you in advance that Huawei intends to disclose the terms and conditions that it
8      > contends are FRAND for a cross-license to the parties' portfolios of U.S. 3G and 4G SEPs.

9

10     Meanwhile, Samsung spent the past two years developing its own defense to Huawei's

11 global rate-setting claim, but now must litigate a dispute of a different character.  Huawei's

12 purported alteration of its claims involves a complete reassessment of the parties' relative IP and

13 market positions and materially changes the royalty analysis.  Neither party sought or obtained

14 discovery on this and neither party, over the course of negotiations dating back to 2011, has

15 exchanged a license proposal that contemplated such an arrangement.  It would be highly prejudicial

16 to Samsung if the Court allowed Huawei to engage in its self-help amendment of its Complaint.

17 *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, No. 14-CV-04050-MEJ, 2017 WL

18 1833201, at *2 (N.D. Cal. May 8, 2017) ("Prejudice is the touchstone of the inquiry under Rule

19 15(a).").

20     This case is analogous to *Zivkovic*, 302 F.3d 1080, 1087 (9th Cir. 2002), which affirmed the

21 district court's denial of a motion for leave to amend.  There, the Plaintiff sought to add new causes

22 of action for promissory estoppel and constructive fraud five days before the close of discovery.

23 *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).  Because the plaintiff

24

25

26  [27]  Huawei also raised the possibility that it would seek a "US Only" declaratory judgment at
    the hearing on the antisuit injunction.  There, counsel for Huawei stated "you know, we'd be fine
27  with the Court setting a FRAND rate for the United States, I mean, that would – clearly that is
    within the power and authority of the Court to do it under the contract."  Dkt. 251 (Transcript of
28  Hearing on Antisuit Injunction Motion) at 15.

1  sought to amend near the fact discovery deadline, the court recognized amendment would have

2  "prejudiced" the defendant and "delayed the proceedings." *Id*. Here, as there, Samsung would be

3  highly prejudiced by the need to re-open discovery and develop a new record oriented towards

4  United States rate-setting.  And if the Court were to allow Huawei's self-help amendment, and

5  permit Samsung to properly respond to this new claim, it would introduce extraordinary delay in the

6  schedule because Samsung would need to propound new document requests and interrogatories,

7  take new depositions, and ask its experts to draft new reports.  The Court should therefore reject

8  Huawei's self-help amendment—and because Huawei has not proffered evidence to support its

9  original world-wide rate-setting claim, Huawei's entire rate-setting claim should be dismissed.

10 **VIII.   CONCLUSION**

11        For the foregoing reasons, Huawei's rate-setting cause of action (Second Cause of Action)

12 should be dismissed with prejudice.

13

14

15 DATED:  June 8, 2018                    Respectfully submitted,

16                                        QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP
17

18                               By        */s/ Charles K. Verhoeven*
                                          Charles K. Verhoeven
19                                        Kevin P.B. Johnson
                                          Victoria F. Maroulis
20                                        Thomas D. Pease
                                          David A. Perlson
21

22                                        *Attorneys for Samsung Electronics Co., Ltd.,*
                                          *Samsung Electronics America, Inc., and Samsung*
23                                        *Research America, Inc.*

24

25

26

27

28

## **ATTESTATION**

I, Victoria F. Maroulis, am the ECF user whose ID and password are being used to file the above Motion.  In compliance with Civil L.R. 5-1(i)(3), I hereby attest that Charles K. Verhoeven has concurred in the aforementioned filing.


*/s/ Victoria F. Maroulis*
Victoria F. Maroulis