UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUAWEI TECHNOLOGIES, CO, LTD, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO, LTD., et al.,<br><br>Defendants. | Case No. 3:16-cv-02787-WHO<br><br>**ORDER DENYING HUAWEI'S MOTION TO ALTER OR AMEND, OR, IN THE ALTERNATIVE, RECONSIDER THE APRIL 13, 2018 ORDER**<br><br>Re: Dkt. No. 285 |

Plaintiffs Huawei Technologies Co., Ltd., Huawei Device USA, Inc. and Huawei Technologies USA, Inc. (collectively, "Huawei") filed a motion pursuant to Federal Rule of Civil Procedure 59(e) to alter or amend my Order Granting Samsung's Antisuit Injunction (the "Order")(Dkt. No. 280[redacted]; Dkt. No. 281[under seal]), or in the alternative, for leave to file a motion for reconsideration of the Order.[1]  Huawei's FRCP 59(e) Mot. to Alter or Amend the Court's April 13, 2018 Order Granting Samsung's Mot. for Antisuit Injunction ("Mot.")(Dkt. No. 285).  In the Order, I enjoined Huawei from enforcing injunction orders issued by the Intermediate People's Court of Shenzhen ("Shenzhen Court") based on an analysis of the factors outlined in *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984 (9th Cir. 2006).  *See* Order at 7–21.

"In general, there are four basic grounds upon which a Rule 59(e) motion may be granted:

---

[1] Huawei notes that it moves for relief under these alternate bases to preserve its right to appeal the Order because the "District's practices concerning this situation are not entirely uniform."  Mot. at 1 n.1.  *Compare Zhang v. Safeco Ins. Co. of Am., Inc.*, No. C 12-1430 CW, 2013 WL 6058307, at *2 (N.D. Cal. Nov. 14, 2013) (denying L.R. 7-9 motion but reaching merits of independently-filed motion seeking relief under Fed. R. Civ. P. 59(e) and 60(b)), *with Thomas v. County of Sonoma*, No. 17-cv-00245-LB, 2017 WL 2500886, at *2 (N.D. Cal. June 9, 2017) (finding L.R. 7-9 applies to motions for reconsideration under Fed. R. Civ. P. 59(e)).  Because the Order grants an injunction it is an appealable order under 28 U.S.C. § 1292(a)(1), and it is therefore a "judgment" because it is "an[] order from which an appeal lies."  Fed. R. Civ. P. 54(a).

1  (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment

2  rests; (2) if such motion is necessary to present newly discovered or previously unavailable

3  evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is

4  justified by an intervening change in controlling law." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101,

5  1111 (9th Cir. 2011).  The court's discretion to grant a Rule 59(e) motion is not limited to these

6  situations.  *Id*.

7  Huawei insists that the Order "rests on factual and legal errors… ." Mot. at 1.  First, it

8  underscores that Samsung's counterclaims were filed in August 2016 "months after" Huawei filed

9  the May 2016 complaints underlying the Shenzhen Court orders, and it insists that those

10  counterclaims provide the "only potential overlap" between the cases.  Mot. at 1–2; *see id.* at 3–6.

11  Second, it argues that the Order's conclusion that it "need not analyze the traditional *Winter*

12  factors for obtaining a preliminary injunction," Order at 8, is contrary to Supreme Court precedent.

13  Mot. at 2; *see id.* at 6–8.

14  I will first dispose of the second argument.  The Order included a discussion of this precise

15  issue and concluded that the Ninth Circuit's decision in *Microsoft Corp. v. Motorola, Inc.*, 696

16  F.3d 872 (9th Cir. 2012)("*Microsoft II*") indicated that an analysis of the traditional *Winter* factors

17  for determining the propriety of injunctive relief was inapplicable in the context of a foreign anti-

18  suit injunction.  Order at 7–8.  I have already considered and rejected Huawei's argument, and it

19  has not convinced me that the decision was in error.  And, even if I assessed the other *Winter*

20  factors (irreparable harm, balance of equities, and the public interest),[2] *see Winter v. Natural Res.*

21  *Defense Council, Inc.*, 555 U.S. 7, 20 (2008), those factors would not alter my conclusion.[3]  There

---

[2] The *Gallo* court held that a party seeking an antisuit injunction "need not meet our usual test of a likelihood of success on the merits of the underlying claim… ." *Gallo*, 446 F.3d at 991.

[3] The analysis of these factors largely tracks that of the district court in *Microsoft Corp. v. Motorola, Inc.*, 871 F. Supp. 2d 1089, 1102–04 (W.D. Wash.)(*Microsoft I*).  Samsung faces irreparable harm in closing its manufacturing plant and ceasing the sale of infringing devices in China.  *See id.* at 1102 ("Microsoft has provided this court with convincing evidence that it will lose market share, which will be difficult to regain, and suffer harm to its business reputation.").  The balance of equities tips in Samsung's favor because it would be placed in an untenable bargaining position, which would have lasting effects, whereas Huawei is only being enjoined for approximately six months.  *See id.* at 1103 ("It would seem clear that a negotiation where one party (Microsoft) must either come to an agreement or cease its sales throughout the country of

United States District Court
Northern District of California

is no basis under Rule 59(e) or Local Rule 7-9 to alter or amend the Order on this ground.

Moving on to the issue of factual error, I note that Huawei did not focus on this "counterclaim timing argument" in its opposition to Samsung's motion for an anti-suit injunction. *See* Order at 9–20 (addressing the parties' arguments). It explains that Samsung's motion focused on Huawei's complaint so it had "no reason to address the timing of Samsung's counterclaims in its opposition brief." Reply at 3 (Dkt. No. 291). But Samsung's focus does not impact Huawei's obligation to underscore facts favorable to it, especially if they are as critical as Huawei now contends. While it mentioned the fact that Samsung's counterclaims were filed two months after Huawei's complaint, *see* Huawei's 3/14/18 Presentation Slides (Love Decl. ¶ 2; id., Ex. A; Dkt. No. 285-2); 3/14/18 Hr'g Tr. at 4:14–6:5 (Dkt. No. 254), it did not highlight the "counterclaim timing" as a critical distinction. To the contrary, it repeatedly referenced that "this lawsuit, and the Chinese case were filed simultaneously." 3/14/18 Hr'g Tr. at 6:6–7; *see also id.* at 6:7–13 ("And there's a lot of confusion generated in their briefs where they say first filed, first filed, later filed. Not so. The cases were filed at the same time. China's a day ahead of us and that's why there are different dates. May 25 versus May 24. But these cases were filed at the same time. Not like *Microsoft* where somebody months later did an end run around the U.S. case.").

The foundation for Huawei's argument is weak. Under the first *Gallo* factor, the issue is not limited to the timing of specific claims; rather, it assesses "whether or not the parties and the issues are the same in both the domestic and foreign actions, and whether or not the first action is dispositive of the action to be enjoined." Order at 9 (quoting *Microsoft II*, 696 F.3d at 882).

---

Germany fundamentally places that party at a disadvantage."); *id.* ("By issuance of an anti-suit injunction, this court is in no way stating that Motorola will not at some later date receive injunctive relief, but only that it must wait until this court has had the opportunity to adjudicate that issue."). And the public interest lies in this court adjudicating the propriety of injunctive relief for the parties' standard essential patents (SEPs). *See id.* ("The court finds that the public interest is served by issuing an anti-suit injunction and permitting Microsoft to continue its business operations without interruption until this court has had the opportunity to adjudicate the injunctive relief issue before it."); *see also* Order at 15–17 (analyzing the *Unteweser* factor of whether foreign litigation would frustrate a policy of this forum). The overlap between the *Unteweser* factors and the *Winter* factors further bolsters the conclusion that the full *Winter* analysis is unnecessary when applying the *Gallo* test. *See Gallo*, 446 F.3d at 991 ("Gallo need only demonstrate that the factors specific to an anti-suit injunction weigh in favor of granting the injunction.").

3

Precedent makes clear that it is the *issues* and the *actions* that drive the analysis of this factor, not the timing of specific claims. In fact, the cases emphasize that "[t]he consideration should be approached functionally, 'not in a technical or formal sense, but in the sense that all the issues in the foreign action … can be resolved in the local action.'" Order at 9 (quoting *Microsoft II*, 696 F.3d at 882–83).

Huawei seizes on one sentence of the Order to argue that it contains a "manifest factual error." *See* Mot. at 3. I incorrectly stated that "[t]he appropriate remedy for Huawei's breach of contract claim may very well be the injunctive relief issued by the Shenzhen court." Order at 15. But my overall analysis was not in error. In assessing the first *Gallo* factor, I concluded:

> Both parties have presented me with a breach of contract claim based on the other's alleged failure to abide by its commitments to ETSI. Neither party disputes the other's right to enforce that contract as a third-party beneficiary. And the availability of injunctive relief for each party's SEPs depends on the breach of contract claims. As in *Microsoft*, "[t]he contractual umbrella over the patent claims" controls, *Microsoft II*, 696 F.3d at 883, and dictates that this action is dispositive of Huawei's Chinese actions. *See id.* ("In other words, the party was 'not seeking to enjoin [a party from litigating in] a foreign court on the basis of a patent validity or infringement finding by a United States court' but on the basis of a contract interpretation by a U.S. court.")(quoting *Medtronic, Inc. v. Catalyst Research Corp.*, 518 F.Supp. 946 (D. Minn. 1981), *aff'd*, 664 F.2d 660 (8th Cir. 1981)).

Order at 13 (footnote omitted). Nothing in Huawei's "counterclaim timing argument" alters this conclusion.

At the hearing on Samsung's motion, Huawei repeatedly emphasized that the issue presented to the Shenzhen court was "the question of compliance with FRAND." 3/14/18 Hr'g Tr. at 6:25–7:1; *id*. at 6:21–23 ("[Huawei] told the [Shenzhen] court, We want an injunction, but we have to have complied with FRAND to do it and we're putting that issue before you."); *id*. at 7:17–19 ("In truth, the Shenzhen court did conduct a thorough and searching and detailed FRAND analysis before issuing the injunction."); *id*. at 8:13–14 ("[T]he court made findings as to compliance with FRAND."); *id*. at 8:17–18 ("Huawei had complied with FRAND, which is a predicate for issuing an injunction on SEP's."); *id*. at 10:19–20 ("In terms of the posturing of the two cases, the issue has been put before the Chinese court and decided."). The Shenzhen court addressed the FRAND issue as a prerequisite to Huawei's request for injunctive relief against

1 Samsung. Huawei put the same issue before this court in its breach of contract claim because it
2 must demonstrate that it was a willing licensee and did not violate FRAND obligations as a
3 condition precedent to establishing that Samsung breached its FRAND obligations. Compl. ¶¶
4 53–60 (Dkt. No. 1[redacted]); Dkt. No. 3-4[under seal]). As I concluded in the Order, the issues
5 are the same.

6 On the precise question of "whether or not the first action is dispositive of the action to be
7 enjoined[,]" the same answer follows. Huawei underscores that it is my resolution of *Samsung's*
8 breach of contract claim (filed two months after Huawei's breach of contract claim) that will
9 ultimately determine the propriety of injunctive relief for Huawei's SEPs, but that does not alter
10 the analysis because Samsung's counterclaims are part of this domestic action.

11 Huawei also argues that the "counterclaim timing" impacts my analysis of the third *Gallo*
12 factor, the injunction's impact on comity. *See* Mot. at 5–6. It contends that "[t]he only potential
13 overlap with the Shenzhen Actions comes from Samsung's counterclaims, filed three months *after*
14 the Shenzhen Actions." *Id*. at 5. But this argument also falls short because it too narrowly focuses
15 on the timing of the counterclaims, as opposed to the actions. As discussed above, Huawei's own
16 breach of contract claim put the parties' compliance with FRAND before me, even if the propriety
17 of the precise relief sought in the Shenzhen actions will only be determined in assessing
18 Samsung's counterclaim.

19 Moreover, *Microsoft II* dictates that "[t]he order in which the domestic and foreign suits
20 were filed, although not dispositive, *may be* relevant to this determination depending on the
21 particular circumstances." 696 F.3d at 887 (emphasis added). The decision makes clear that the
22 situation presented by a defendant's subsequent filing of a foreign action "raises the concern that
23 [it] is attempting to evade the rightful authority of the district court[.]" *Id*. (quoting *Applied Med.*
24 *Distribution Corp. v. Surgical Co. BV*, 587 F.3d 909, 921 (9th Cir. 2009)). That is not the
25 situation we have here. By arguing that Samsung's domestic counterclaims present an "especially
26 grave" impact on comity, Huawei flips the analysis on its head. *See* Mot. at 5 ("[T]he Order
27 endorses Samsung's tactic of raising counterclaims in this Court months after Huawei filed suit in
28 China, and using those later-filed claims to evade the outcome of the Shenzhen Actions."). And it

5

1   neglects to offer any support for its version.  *See* Mot. at 5–6 (relying only on *Microsoft II*).

2   My assessment of this factor provided several reasons why the injunction's impact on
3   comity is tolerable.  *See* Order at 19–20 (explaining that the dispute involves a private contractual
4   matter rather than public international law or government litigants; the injunction is against
5   Huawei, not the Chinese courts; and it is limited in scope to two patents, a specific form of relief,
6   and may last less than six months).  The "counterclaim timing" has no bearing on this analysis and
7   provides no basis for altering or amending the Order under Rule 59(e) or Local Rule 7-9.

8   In accordance with the foregoing, Huawei's motion is DENIED.

9   **IT IS SO ORDERED.**

10  Dated: June 19, 2018

William H. Orrick
United States District Judge