Michael J. Bettinger (SBN 122196)
mbettinger@sidley.com
Irene Yang (SBN 245464)
irene.yang@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, California 94104
(415) 772-1200 – Telephone
(415) 772-7400 – Facsimile

David T. Pritikin (*Pro Hac Vice*)
dpritikin@sidley.com
David C. Giardina (*Pro Hac Vice*)
dgiardina@sidley.com
Douglas I. Lewis (*Pro Hac Vice*)
dilewis@sidley.com
John W. McBride (*Pro Hac Vice*)
jwmcbride@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
(312) 853-7000 – Telephone
(312) 853-7036 – Facsimile

*Attorneys for Huawei Technologies Co., Ltd., Huawei Device USA, Inc., Huawei Technologies USA, Inc., and HiSilicon Technologies Co. Ltd.*

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| HUAWEI TECHNOLOGIES CO., LTD., HUAWEI DEVICE USA, INC., and HUAWEI TECHNOLOGIES USA, INC., <br><br> Plaintiffs / Counterclaim-Defendants, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., <br><br> Defendants / Counterclaim-Plaintiffs, <br><br> and <br><br> SAMSUNG RESEARCH AMERICA, <br><br> Defendant, <br> v. <br><br> HISILICON TECHNOLOGIES CO., LTD., <br><br> Counterclaim-Defendant. | Case No. 16-cv-02787-WHO <br><br> **HUAWEI'S OPPOSITION TO SAMSUNG'S MOTION FOR JUDGMENT ON THE PLEADINGS REGARDING HUAWEI'S CAUSE OF ACTION FOR DECLARATORY JUDGMENT OF FRAND TERMS AND CONDITIONS FOR A CROSS-LICENSE** <br><br> Hearing Date: July 18, 2018 <br> Time: 2:00 PM <br> Judge: Hon. William H. Orrick |

## **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ..................................................................................................................1

II.  BACKGROUND ...................................................................................................................3

    A.   The Parties' FRAND Commitments ...........................................................................3

    B.   The Parties' Negotiation History .................................................................................3

    C.   The Litigation ..............................................................................................................5

    D.   Expert Discovery ........................................................................................................6

III. ARGUMENT .........................................................................................................................7

    A.   Huawei Has Not Abandoned Its Rate-Setting Claim .................................................7

    B.   The Court Has Subject Matter Jurisdiction Over a U.S.-Only Rate-Setting Declaratory Judgment Claim ......................................................................................8

    C.   Samsung's Consent Is Not Required For The Court To Have Subject Matter Jurisdiction ................................................................................................................11

    D.   The Declaratory Relief Huawei Seeks Would Serve a Useful Purpose ...................12

    E.   Samsung Will Not Be Prejudiced By Allowing Huawei's U.S. Rate-Setting Claim to Proceed .......................................................................................................14

IV. CONCLUSION ....................................................................................................................15

i

HUAWEI'S OPPOSITION TO SAMSUNG'S MOTION FOR JUDGMENT ON THE PLEADINGS REGARDING HUAWEI'S CAUSE OF ACTION FOR DECLARATORY JUDGMENT OF FRAND TERMS AND CONDITIONS FOR A CROSS-LICENSE
CASE 16-CV-02787-WHO

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apple Inc. v. Motorola, Inc.*,
   757 F.3d 1286 (Fed. Cir. 2014) .................................................................................................. 12

*Apple Inc. v. Motorola Mobility, Inc.*,
   No. 11-cv-178-bbc, 2012 WL 5943791 (W.D. Wis. Nov. 28, 2012) ..................................... 1, 12

*Apple Inc. v. Motorola Mobility, Inc.*,
   No 11-cv-178-bbc, 2011 WL 7324582 (W.D. Wis. June 7, 2011) .............................................. 8

*Apple Inc. v. Motorola Mobility, Inc.*,
   No. 11-cv-178-bbc, 2012 WL 7989412 (W.D. Wis. Nov. 8, 2012) ........................................... 12

*Celedor Int'l Ltd. v. Walt Disney Co.*,
   347 F. Supp. 2d 846 (C.D. Cal. 2004) ....................................................................................... 13

*Funai Electric Co., Ltd. v. LSI Corp.*,
   No. 16-cv-1210-BLF, 2017 WL 1133513 (N.D. Cal. March 27, 2017) ..................................... 10

*InterDigital Commc'ns v. Huawei Tech. Ltd., et al.*,
   No. 1:13-cv-00008-RGA (D. Del.) ............................................................................................ 13

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007) ...................................................................................................9, 10, 11, 12

*Microsoft Corp. v. Motorola, Inc.*,
   No. C10-1823JLR, 2012 WL 4827743 (W.D. Wash. Oct. 10, 2012) .................................. 11, 14

*Microsoft Corp. v. Motorola, Inc.*,
   No. C10-1823JLR, 2013 WL 2111217 (W.D. Wash. April 25, 2013) ................................ 11, 14

*Morongo Band of Mission Indians v. Rose*,
   893 F.3d 1074 (9th Cir. 1990) ................................................................................................... 14

*Realtek Semiconductor Corp. v. LSI Corp.*,
   No. 12-cv-3451, Order (N.D. Cal. Sept. 26, 2013) ................................................................ 8, 10

*Realtek Semiconductor Corp. v. LSI Corp.*,
   No. 12-cv-3451, 2014 WL 2738226 (N.D. Cal. June 16, 2014) ................................................ 10

*SanDisk Corp. v. ST Microelectronics, Inc.*,
   480 F.3d 1372 (Fed. Cir. 2007) ................................................................................................. 10

*TCL Communications Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson*,
   No. SACV 14-341-JVS(ANx), 2014 WL 12606650 (C.D. Cal. July 28, 2014) ................... 10, 14

*TCL Communications Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson*,
    No. SACV 14-341-JVS(ANx), 2017 WL 6611635 (C.D. Cal. Dec. 21, 2017) ........................... 14

**Statutes and Rules**

Declaratory Judgment Act, 28 U.S.C. § 2201(a) ............................................................................. 9

Federal Rule of Civil Procedure 26(a)(2) ........................................................................................ 8

Sherman Act, 15 U.S.C. § 2 ............................................................................................................. 6

Plaintiffs Huawei Technologies Co., Ltd., Huawei Device USA, Inc. and Huawei Technologies USA, Inc. (collectively, "Huawei") hereby provide their opposition to Samsung's Motion for Judgment On The Pleadings Regarding Huawei's Cause of Action For Declaratory Judgment of FRAND Terms and Conditions For A Cross-License (Dkt. 303-2 ("Br.").)

## I. INTRODUCTION

Consistent with its hold-out strategy of avoiding any resolution of the terms of a FRAND cross-license between the parties, Samsung's motion seeks the dismissal of Huawei's request for a declaratory judgment establishing FRAND terms. Huawei's Second Cause of Action requests a declaration of "the FRAND terms and conditions, including royalty rates for UMTS and LTE standards respectively, for a cross-license between Huawei and Samsung (and their affiliates) covering their respective portfolios of patents essential to 3GPP standards." (Dkt. 59, Prayer for Relief B.) Samsung's motion rests on a misperception of the basis for, and scope of, Huawei's claim for a declaration of FRAND terms, and its motion should be denied.[1]

*First*, Huawei never "abandoned" its rate-setting claim. To be sure, at the outset of this case, Huawei was willing to have rates set on a global basis, but Samsung consistently opposed any such FRAND determination. As the Court observed in its recent order on Samsung's motion for an anti-suit injunction, an implication of Samsung's positions is that the Court does not have the power to "to decide a FRAND rate for the parties' global portfolios," and would, at most, have the "ability to determine the FRAND rate for U.S. SEPs." (Dkt. 280 at 13-14.) In light of Samsung's position, and in an effort to streamline the case for trial, on April 16, 2018, Huawei informed Samsung that it intended to have its experts offer opinions on the appropriate FRAND rates for the parties' U.S. portfolios. This did not require an amendment to Huawei's Complaint, which does not delineate the precise scope of the portfolios that would ultimately be considered. The scope of any FRAND

---

[1] Huawei notes that parties have discussed the possibility of stipulating to the dismissal of Huawei's rate-setting claim without prejudice. Any dismissal of Huawei's declaratory judgment claim—by stipulation or otherwise—on the jurisdictional grounds that Samsung has raised certainly should be without prejudice given that such a disposition would not resolve the merits of Huawei's claim, and given that the relevant jurisdictional facts are subject to change. *Apple, Inc. v. Motorola Mobility, Inc.*, Case No. 11-cv-178-bbc, 2012 WL 5943791, *2 (W.D. Wis. Nov. 28, 2012) (holding that dismissal of FRAND rate-setting declaratory judgment claim on the eve of trial based on Apple's refusal to agree to be bound by the court's determination should be without prejudice). If the parties reach an agreement to such a stipulation, Huawei will promptly inform the Court.

1  determination will be determined by the proof offered at trial, and Huawei had raised the possibility
2  of limiting the focus of the rate-setting claim to the parties' U.S. patents on several earlier occasions.
3  (*E.g.*, Dkt. 240 at 9-10 n.10.)  Samsung's own expert opines that ███████████████
4  ████████████████████████████████████████████████████████████████████████████
5  ████████████████████████████████████████████████████████████████████████████.
6  A focus on the parties' U.S. portfolios thus imposes no prejudice on Samsung.
7       *Second,* the Court has subject matter jurisdiction over Huawei's rate-setting claim focused on
8  the parties' U.S. portfolios.  While the parties' pre-suit offers were ██████████, their inability to
9  agree on the FRAND licensing terms has at all times included the parties' U.S. portfolios.  Indeed,
10 ████████████████████████████████████████████████████████████████████████████.
11 Moreover, Samsung asserts U.S. patents it claims to be standard essential against Huawei,
12 demonstrating the existence of a "case or controversy" regarding Huawei's legal right to a FRAND
13 license to Samsung's U.S. SEPs—which Huawei seeks to vindicate through its rate-setting claim.
14 And there is nothing "advisory" about the declaration that Huawei seeks.  As it has repeatedly made
15 clear, Huawei is willing to be bound by such a determination, subject only to the appellate rights all
16 litigants enjoy.  (Dkt. 67 at 15; Dkt 84 at 5.)
17      *Third*, Samsung cannot divest the Court of jurisdiction by withholding its consent to
18 Huawei's rate-setting claim.  (Br.at 12.)  Samsung's contractual commitments to ETSI give Huawei
19 an existing legal right to a license to any or all patents that Samsung claims to be essential to the
20 ETSI standards on FRAND terms.  Samsung has conditioned its FRAND licensing commitments on
21 "reciprocity"—that is, on receiving back a cross-license to Huawei's SEPs also on FRAND terms—
22 and contends the rates the two parties' portfolios must be assessed in tandem, so a determination of
23 the terms on which Huawei is entitled to a license to Samsung's SEPs necessarily requires an
24 assessment of Huawei's SEPs as well.  But that does not give Samsung the unilateral power to
25 deprive Huawei of the right to determine the FRAND royalty for a license to Samsung's essential
26 patents.
27      *Finally,* contrary Samsung's contention (Br. at 13), the Court can and should exercise its
28 discretion to resolve Huawei's rate-setting claim because doing so will clarify and settle important

1   legal rights at issue—Huawei's right to license to Samsung's claimed SEPs on FRAND terms—and
2   will provide Huawei with protection vis-à-vis Samsung's U.S. portfolio.  A declaratory judgment
3   does not need to resolve the entirety of the parties' global dispute to be useful.  Resolution the
4   parties' dispute in the U.S. will prevent any further patent-by-patent, serial litigation in this country
5   that Samsung's hold-out strategy makes necessary.  In addition, given the importance of the U.S.
6   market to Samsung, the determination of the FRAND rates for the U.S. would provide a critical
7   input to a potential global resolution of the parties' FRAND dispute.

## II. BACKGROUND

### A. The Parties' FRAND Commitments

Both Samsung and Huawei have disclosed thousands of patents as potentially essential to the 3G UMTS and 4G LTE standards developed by the Third Generation Partnership Project ("3GPP") and promulgated by various standard setting organizations, including the European Telecommunications Standards Institute ("ETSI").  (Dkt. 59, Exs. 2.1-3.53.)  Both companies have committed to license these patents to others on FRAND terms and conditions according to the ETSI IPR Policy, on the condition that those seeking such a license agree to make their SEPs available to Huawei and Samsung on FRAND terms as well.  (*Id.*)  According to Samsung's expert, to be FRAND, the royalties "■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■."[2]

### B. The Parties' Negotiation History

Huawei and Samsung began discussing a cross-license in 2011.  Initially, ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■.  (Ex. A at HW_Samsung_001306997.)  Huawei urged instead that the parties focus on a SEP license.  (Ex. B at HW_Samsung_00131196; Ex. C at HW_Samsung_00130704).  In May 2013, ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ (Ex. D), ■■■■■■■■■

---

[2] Declaration of David C. Giardina in Support of Huawei's Opposition to Samsung's Motion for Judgment on the Pleadings Regarding Huawei's Cause of Action for Declaratory Judgment of FRAND Terms and Conditions For a Cross-License ("Giardina Declaration"), Ex. N at 43 (emphasis in original).  Citation to "Ex." herein refer to the corresponding exhibit to the Giardina Declaration.

1 ▮▮▮
2 ▮▮▮ (Ex. E).  Although the
3 parties contemplated entering into a global license, at Samsung's insistence, ▮▮▮
4 ▮▮▮.  For example, at Samsung's suggestion,
5 ▮▮▮.  Ex. F at 114:3-
6 115:4.  *See also* Ex. G.  According to Samsung's 30(b)(6) designee, Samsung believes that "▮
7 ▮▮▮
8 ▮▮▮" *See* Ex. F at 181:21-23 (emphasis added).

9     Over five years of pre-suit negotiations, Huawei made several license global offers to
10 Samsung.  In March 2012, Huawei made Samsung a proposal stating that license fees were "to be
11 discussed," but noting that the ▮▮▮
12 ▮▮▮ (Ex. B at HW_Samsung_00131196).  Huawei later offered Samsung ▮▮▮
13 ▮▮▮ per LTE-compatible device. (Ex. H.)  Huawei's final pre-suit offer (first made in July 2015
14 and later re-confirmed in December 2015) was ▮▮▮
15 ▮▮▮.  (Ex. I at HW_Samsung_00000018.)  Huawei has ▮▮▮
16 ▮▮▮
17 ▮▮▮
18 ▮▮▮ (Exs. J-K.)

19     In July 2015, four years after negotiations had begun, Samsung ▮▮▮
20 ▮▮▮
21 ▮▮▮
22 ▮▮▮
23 ▮▮▮
24 ▮▮▮
25 ▮▮▮
26 ▮▮▮
27 ▮▮▮
28 ▮▮▮

4

HUAWEI'S OPPOSITION TO SAMSUNG'S MOTION FOR JUDGMENT ON THE PLEADINGS REGARDING HUAWEI'S CAUSE OF ACTION FOR DECLARATORY JUDGMENT OF FRAND TERMS AND CONDITIONS FOR A CROSS-LICENSE
CASE NO. 16-CV-02787-WHO

███████████████████████. (*Id.*)  Although the parties met a number of times thereafter, including a final pre-suit meeting of the two senior-most executives involved in January 2016, Samsung ███████████████████.

### C.  The Litigation

Given the lack of meaningful progress in negotiation of a cross-license license over the prior five years, on May 24, 2016, Huawei filed actions in the United States and China, asserting several of its declared SEPs and requesting that the courts assess the parties' compliance with their respective FRAND requirements under ETSI's IPR policy (among other requested remedies).

In the instant U.S. action, Huawei brought claims alleging that Samsung infringes eleven[3] U.S. patents that Huawei claims are SEPs and, that through its failure to negotiate a FRAND cross-license in good faith, Samsung has breached its contractual FRAND licensing obligations under the ETSI IPR Policy.  Huawei's Second Cause of Action seeks a declaratory judgment.  In support of this claim, Huawei alleged that "there is a definite and concrete dispute between Huawei and Samsung regarding what constitutes a fair, reasonable and non-discriminatory royalty for a license to each their respective portfolios of patents essential to the 3GPP standards." (Dkt. 59, ¶ 65.)  Huawei further alleged that "[u]nless or until FRAND royalty rates for a cross-license to the parties UMTS and LTE SEP portfolios are determined," Huawei and its U.S. affiliate, Huawei Tech. USA, "will continue to be damaged … through ongoing exposure to potential infringement claims by Samsung." (Dkt. 59, ¶ 66.)  Huawei asked the Court to declare:  (1) "the FRAND terms and conditions, including royalty rates for UMTS and LTE standards respectively, for a cross-license between Huawei and Samsung (and their affiliates) covering their respective portfolios of patents essential to the 3GPP standards," and (2) "Plaintiffs have a right to obtain a license to Samsung's patents essential to 3GPP standards under the terms and conditions to be determined by the Court." (Dkt. 59, Prayers for Relief, B and C.)

In response to Huawei's Complaint, Samsung brought counterclaims alleging that Huawei has:  (1) infringed a number of patents that Samsung claims to be standard essential; (2) breached its

---

[3] In accordance with the deadlines set by the Court, Huawei has reduced the number of patents and claims it is asserting.  At trial, the parties will be permitted to assert no more than five total patents and five total claims. (Dkt. 208 at 1).

own FRAND licensing obligations; and (3) violated Section 2 of the Sherman Act, 15 U.S.C. § 2. (Dkt. 41-3.) Among other relief, Samsung seeks "injunctive relief requiring that Huawei make available to Samsung a license to all its 3G and 4G SEPs on FRAND terms." (Dkt. 41-3 at 122.)

At the initial Case Management Conference in September 2016, Huawei suggested that the Court bifurcate and expedite consideration of the parties' respective FRAND claims in the hope that "once the terms of … a FRAND cross-license have been determined, the parties' remaining claims and counterclaims—including their respective infringement claims—will either be mooted or readily resolved." (Dkt. 67 at 5.) Samsung successfully opposed this request, arguing that before compliance with *any* obligation under the ETSI IPR Policy could be assessed, it must be shown that the patent is valid, enforceable, infringed, and essential. (Dkt. 67 at 6 ("In order for the Court to determine that either party has breached its FRAND obligations … a jury must first determine disputed questions of patent validity, infringement, enforceability and essentiality to the relevant standards . . . ."); *id.* at 7 ("[T]hese patent issues [infringement, validity, and essentiality] are inextricably intertwined with the FRAND and antitrust claims and must be resolved *before* the Court can properly address remedies . . . . [I]f an asserted patent is not enforceable, it plays no role in determining a FRAND royalty; if it is not essential to the relevant standards, then it need not be licenses on FRAND terms and conditions") (emphasis added); Dkt. 82 at 11 (As a "prerequisite" to any obligation under the ETSI IPR Policy "you got to show it's infringed, and you got to show it's essential"). Samsung argued further that a global FRAND determination would be unworkable in part because it would require consideration of the parties' non-U.S. patents. (Dkt. 67 at 7.)

In its April 13, 2018 decision granting Samsung's request for an anti-suit injunction, the Court noted that an implication of Samsung's positions that a determination of infringement and validity is a prerequisite to any FRAND determination is that the Court does not have the power to "to decide a FRAND rate for the parties' global portfolios," and would—at most—have the "ability to determine the FRAND rate for U.S. SEPs." (Dkt. 280 at 13-14.)

### D. Expert Discovery

On April 16, 2018, Huawei informed Samsung that in its opening expert reports—due on April 27, 2018 and to which Samsung would respond on May 25, 2018—Huawei's experts would:

> set forth opinions and bases therefor relating to Samsung's alleged breach of its FRAND obligations. This will include, *inter alia*, Samsung's alleged failure to offer or grant a license worldwide on FRAND terms and conditions. To avoid any ambiguity as to Huawei's declaratory judgment claim, however, we wanted to advise you in advance that Huawei intends to disclose the terms and conditions that it contends are FRAND for a cross-license to the parties' portfolios of U.S. 3G and 4G SEPs.

Ex. O (April 16, 2018 Letter from Giardina to Pease).

As suggested in this correspondence, in his April 27, 2018 opening expert report, Huawei's expert, Michael J. Lasinski, analyzed the parties' earlier global licensing offers in comparison to global FRAND benchmark rates that he derived from (i) a "top down" analysis that apportions an assumed aggregate royalty rate for the standards on the basis of the parties' global patent holdings and (ii) the parties' various licensing agreements with other third-parties. (Ex. P at Figure 7, 10, and 11). Samsung's assertion that "[n]owhere does Lasinski present an analysis of Huawei and Samsung's *Global* FRAND Effective Rates" (Br. at 7) is thus wrong. Mr. Lasinski further calculated the FRAND rates for the parties' U.S. portfolios using a "top down" analysis that apportions the assumed aggregate rate on the specific basis of the strength of the parties' U.S. SEP portfolios.

In his May 25, 2018 rebuttal report, Samsung's expert, Dr. Gregory K. Leonard, likewise ███████████████████████████████. (Ex. Q at Table 16, 17, and 18). Dr. Leonard opined that it is ███████████████████████████████████████████████████████████████████████████. (Ex. N at 73; Ex. R; Ex. Q at 51).

### III.   ARGUMENT

#### A.   Huawei Has Not Abandoned Its Rate-Setting Claim

Samsung's suggestion that Huawei has somehow abandoned its rate-setting cause of action is false. First, Huawei did not abandon its rate-setting claim by disclosing its expert's opinion on the appropriate FRAND rate for the parties' U.S. portfolios. Huawei's decision to limit its Rule 26(a)(2) disclosure in this fashion did not require (or implicitly represent) an amendment to Huawei's

Complaint, because the Complaint does define the geographic scope of the portfolios as to which a rate determination was requested.  The scope of the portfolios adjudicated was always ultimately going to be determined by the proof offered by the parties at trial.  At the outset of the case, Huawei believed that the expeditious determination of the FRAND terms of a cross-license between the parties' global portfolios would most efficiently resolve this case.  As the Court is aware, Samsung vigorously resisted that approach.  Given Samsung's continued opposition, the passage of time, and the progress of parallel rate-setting litigation in China addressing the FRAND rates for Huawei's portfolio of Chinese SEPs, a global rate-setting by this Court is no longer imperative.  At this stage, Huawei concluded that limiting the evidence presented to the issue of the FRAND rate for the parties' U.S. portfolios would streamline the case, and would be more consistent with Samsung's apparent view of jurisdictional power of the Court given its position (which Huawei does not accept) that determinations of essentiality and infringement are prerequisites to any FRAND determination.[4]

### B. The Court Has Subject Matter Jurisdiction Over a U.S.-Only Rate-Setting Declaratory Judgment Claim

The Declaratory Judgment Act provides that "[i]In a case of actual controversy within its jurisdiction, … a court of the United States … may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  The Supreme Court has described the 'actual controversy' requirement as follows:

> To satisfy the 'actual controversy' requirement of the Declaratory Judgment Act, the dispute must be definite and concrete, touching on the legal relations of parties having adverse legal interests; and the dispute must be real and substantial and admit to specific relief through a decree of a conclusive character as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

---

[4] As several courts have recognized, it is not, in fact, necessary for the Court to determine essentiality and enforceability of Samsung's patents in order to assess Huawei's FRAND claims in a case like this. *See Apple, Inc. v. Motorola Mobility, Inc.*, No 11-cv-178-bbc, 2011 WL 7324582, at *6 (W.D. Wis. June 7, 2011) (holding that an SEP holder cannot refuse to grant "fair, reasonable and non-discriminatory license until essentiality is proven" and concluding it is "not necessary to determine whether the patents at issue are in fact 'essential' because [the patent holder] has already voluntarily declared them essential" under the ETSI IPR Policy); *Realtek Semiconductor Corp. v. LSI Corp.*, No. 12-cv-3451, Order at 5-6 (N.D. Cal. Sept. 26, 2013) (Dkt. 167) (rejecting argument that a determination of essentiality is a prerequisite to adjudication of FRAND claims and noting that "[t]he chance that a standard implementer may not infringe a declared 'standard essential patent' is not a green light for the declared standard essential patent holder to breach its commitments to the standard setting body.").

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)).  Here, not only is there a "definite and concrete" dispute between Huawei and Samsung concerning the FRAND terms applicable to the parties' portfolios of U.S. SEPs, but a declaration of the FRAND terms of a cross-license to those patents would provide specific relief of a "conclusive character" resolving that dispute rather than a mere "advisory opinion."

In its motion, Samsung stresses that the parties' pre-suit negotiations focused on ████████ ██████████, and that both firms expressed a preference for such an arrangement. (Br. at 1, 3-5, 10, 13-14.)  But that does not mean that no case or controversy exists concerning the FRAND terms of a cross-license the parties' U.S. portfolios.  To the contrary, the parties' inability to reach agreement on the FRAND terms of a global cross-license reflected, at least in significant part, a profound disagreement concerning the value of the parties' U.S. patents.  As noted above, Samsung has taken the explicit position that ████████████████████████████████████████ ████████████ (Ex. F (Chang Tr.) at 182:10-12.)  And, as confirmed by their experts' recent reports, the parties' views of the value of their U.S. portfolios remain wildly divergent even today.  Ex. P at Figure 19; Ex. Q at Table 17.

Moreover, Samsung's argument implies that some particular form of pre-suit dialogue is necessary to establish declaratory judgment jurisdiction.  But the law imposes no such rigid requirements.  *See, e.g., SanDisk Corp. v. ST Microelectronics, Inc.*, 480 F.3d 1372, 1380-81 (Fed. Cir. 2007) (holding that, in the patent context, the Supreme Court's decision in *MedImmune* impliedly rejected the prior requirement for a declaratory judgment claim by a putative infringer that it have received an explicit threat or indication from the patentee creating a reasonable apprehension of suit).  Indeed, in *Realtek Semiconductor Corp. v. LSI Corp.*, the court found that it had jurisdiction over a declaratory relief claim seeking a rate determination with respect to SEPs in a situation where a patent holder had initiated infringement litigation before it made *any* offer of a license on RAND terms.  No. C-12-3451-RMW, 2014 WL 2738226, at *4 (N.D. Cal. June 16, 2014).  Here, the parties' global licensing dispute included—both explicitly and implicitly—a dispute over the FRAND terms of a cross-license for the parties' U.S. portfolios.

Third, apart from concrete dispute between the parties concerning the terms on which they are contractually obligated to license one another under their FRAND licensing commitments, subject matter jurisdiction over a FRAND rate-setting claim may also be supported on the basis that such a claim provides Huawei's defense to a potential infringement claim by Samsung. *TCL Communications Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson*, No. SACV 14-341-JVS(ANx), 2014 WL 12606650, at *4 (C.D. Cal. July 28, 2014) (finding underlying federal question jurisdiction over a RAND determination claim because "TCL clearly seeks determination of the RAND licensing issue as a defense to a hypothetical well-pleaded complaint filed by the Defendants against TCL for patent infringement); *Realtek,* 2014 WL 2738226 at *5 ("there is such a case and controversy because Realtek has a reasonable apprehension of LSI bring suit for past infringement of the '867 Patent, thereby implicating LSI's RAND obligations"); *Funai Electric Co., Ltd. v. LSI Corp.*, No. 16-cv-1210-BLF, 2017 WL 1133513, at *12 (N.D. Cal. March 27, 2017) (finding allegations that patent holder LSI had sued others for infringement "sufficient to establish a controversy of sufficient immediacy to support Funai's claim for [a] declaratory judgment," which included a FRAND rate-setting component). Huawei's potential exposure to such an infringement claim in the U.S. is confirmed by the fact that Samsung, in fact, has brought and continues to maintain such claims.

Moreover, a declaration of the FRAND terms at which Huawei is entitled to license Samsung's portfolio of U.S. SEPs (subject to reciprocity) would not be a mere advisory opinion, but rather would provide "specific relief" of a "conclusive character." *MedImmune*, 549 U.S. at 126. Given that Huawei has stated that it is willing to be bound by such a determination (subject only to its ordinary appellate rights), a declaration of such FRAND terms would give Huawei access to a license protecting it against further infringement litigation by Samsung in the U.S. Furthermore, declaring the FRAND terms at which Huawei is obligated to license its patents to Samsung to satisfy Samsung's insistence on reciprocity would provide a key input for the resolution of the parties' broader dispute given the obvious importance of the U.S. market to Samsung.

### C. Samsung's Consent Is Not Required For The Court To Have Subject Matter Jurisdiction

Samsung mistakenly asserts that, regardless of the scope of Huawei's rate-setting claim, absent its consent—which it refuses to provide (Br. at 5 n.14)—the Court lacks subject matter jurisdiction to make *any* rate determination. (Br. at 11.) Samsung's consent is not required for the Court to have jurisdiction to determine the FRAND terms and conditions on which Huawei is entitled to a license to *Samsung's standard essential patents*.[5] Samsung has made contractual commitments to license those patents on FRAND terms; such commitments would be meaningless if a patent holder could avoid their enforcement in court simply by refusing to consent to the proceeding. As the court found in *Microsoft Corp. v. Motorola, Inc.*, it is an "inescapable conclusion that a forum must exist to resolve honest disputes between patent holder and implementer as what in fact constitutes a RAND license agreement," and "the courthouse may be the only such forum." No. C10-1823JLR, 2012 WL 4827743, at *6 (W.D. Wash. Oct. 10, 2012).

The Western District of Wisconsin's decision on the eve of trial to decline to exercise its declaratory judgment jurisdiction over Apple's claim seeking a determination of the FRAND rates for a license to Motorola's portfolio of telecommunications SEPs in *Apple, Inc. v. Motorola Mobility Inc.* is not to the contrary. In that case, the court was troubled by the fact that Apple, the implementer that was seeking the FRAND determination, was unwilling to commit to abide by the court's determination. No. 11-cv-178-bbc, 2012 WL 7989412, at *2-3 (W.D. Wis. Nov. 8, 2012). Shortly before trial was to commence, Apple had informed the court that "it did not intend to be bound by any rate that the court determined" if it exceeded $1 per unit. *Id.* As a result, the court concluded that even if the court determined "what it believed to be a fair, reasonable and non-

---

[5] Samsung's references (Br. at 11, 12 n.19) to Huawei's positions in *Unwired Planet v. Huawei*, A3/2017/1784, pending in the UK courts, are inapposite. Huawei's objection in *Unwired Planet* is to the UK court's effort to effectively impose a global portfolio license on court-determined terms as a remedy for a finding of infringement of two specific UK patents, while Huawei sought a UK portfolio license and Unwired Planet had offered such a UK portfolio license as one option. The *Unwired Planet* matter did not involve a request by an implementer to obtain a determination of the terms on which it is entitled to a license to SEPs that a patent holder had committed to license on FRAND terms, but rather, as explained in the UK court's judgment, "whether and to what extent various terms on offer are or would be FRAND" (*Unwired Planet v. Huawei*, [2017] EWHC 711 (Pat), 5 Apr. 2017, at ¶ 17).

discriminatory rate for a license with Motorola, … Apple would pay that rate only if it was the rate Apple wanted." *Id.* But, here, unlike Apple, Huawei has committed to be bound by the Court's determination of the rate for Samsung's standard essential patents without arbitrary conditions. Nothing in the *Apple* decision suggests that consent of the patent holder is required for a rate-setting determination to be made in such circumstances.

The fact Samsung has conditioned its FRAND obligations on reciprocity (as has Huawei), and has taken the position that the rates for the parties' portfolios cannot be determined independently, does not does not change this conclusion. Although this posture means that a determination of the FRAND terms and conditions for a license to Huawei's patents is integral to a determination of the terms and conditions on which Samsung is obligated to license Huawei, Samsung need not consent in advance to pay for a license on the terms for the Court to have the power to make the rate-determination requested here. Samsung cannot refuse *to grant* Huawei a license on the FRAND terms determined by the Court and, even assuming *arguendo* that Samsung has the power to refuse *to take* a cross-license to Huawei's patents on the court-determined terms in these circumstances, any such decision could have important legal consequences, *e.g.*, potentially rendering it subject to injunctive relief in the U.S. *See Apple, Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1332 (Fed. Cir. 2014) (stating that injunctive relief on SEPs "may be justified where an infringer unilaterally refuses a FRAND royalty").

### D. The Declaratory Relief Huawei Seeks Would Serve a Useful Purpose

Contrary to Samsung's suggestion (Br. at 13-14), there is ample justification for the Court to exercise its discretion to resolve Huawei's declaratory judgment claim in this case. As Samsung acknowledges, the exercise of such discretion is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Celedor Int'l Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846, 857 (C.D. Cal. 2004). Both of these conditions are satisfied here.

A determination of the FRAND rates at which the parties are obligated to cross-license their respective portfolios of U.S. patents to each would plainly clarify and settle an important dispute

concerning the legal relations between them.  The fact that the parties have both previously expressed a desire to enter a global cross-license in no way suggests that a determination of the FRAND rates applicable to parties' U.S. portfolios would serve no useful purpose.  To the contrary, given Huawei's commitment to accept judicially determined terms, resolving Huawei's rate-setting claim would, at a minimum, ensure that Huawei would no longer be exposed to infringement claims in by Samsung in the U.S. (one of two jurisdictions in the world where it has sued Huawei).  This would afford Huawei relief from at least some of the "uncertainty, insecurity, and controversy" giving rise to this proceeding.  *Celedor*, 347 F. Supp. 2d at 857.  Moreover, because, by Samsung's own admission, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ over global cross-licenses (Ex. F (Chang Tr.) at 182:10-12), resolving the appropriate FRAND terms the parties' U.S. patents would materially facilitate the parties' ability to reach of global licenses.

       The situation here is different in this regard than was the case in *InterDigital Commc'ns v. Huawei Tech. Ltd., et al.,* No. 1:13-cv-00008-RGA (D. Del.).  While the court there declined to expedite and eventually dismissed the Huawei's FRAND rate-setting claims, it did so at least in part because it viewed the defendants' requests to expedite those claims as interfering with parallel proceedings in the U.S. International Trade Commission.  Order (Dkt. 31) at 2, *InterDigital Commc'ns v. Huawei Tech. Ltd., et al.,* No. 1:13-cv-00008-RGA (D. Del. March 14, 2013) ("It does not seem to me like a very practicable idea to try to race to a partial judgment here so that each defendant will be in a better position in the ITC litigation.")  Here, there are no similar concerns that the U.S. rate-setting sought by Huawei would interfere with any other proceeding and the declaration sought would serve a useful purpose as described above.

       Finally, it is worth noting that a determination limited to the FRAND *rates* at which the parties are obligated to license one another, as opposed to the other terms and conditions of a FRAND cross-license, would be useful and sufficient in this context.  While Samsung suggests that there are meaningful disputes between the parties concerning other terms of a cross-license like the duration (Br. at 12), the Shenzhen Court's description of the last exchange of licensing proposals between the parties shows that the only terms genuinely in dispute between Huawei and Samsung

are those relating to the economics.[6]  (Dkt. 234, Ex. 36 at pp. 102-04.)   In similar rate-setting proceedings, other court have likewise focused exclusively on resolution of the economic terms of the license in question.  *See, e.g., Microsoft Corp. v. Motorola, Inc.*, C10-1823JLR, 2013 WL 2111217 (W.D. Wash. April 25, 2013); *TCL Communication Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, No. SACV-14-341 JVX(DFMx), 2017 WL 6611635 (C.D. Cal. Dec. 21, 2017).

### E. Samsung Will Not Be Prejudiced By Allowing Huawei's U.S. Rate-Setting Claim to Proceed

Huawei's disclosure of its expert's opinions on the FRAND rates applicable to the parties' U.S. portfolios did not represent or require an amendment to Huawei's Complaint.  But even if such an amendment were deemed to be required, it should be permitted here.  Leave to amend is ordinarily to be "freely give[n] … when justice so requires."  *TCL Communication*, 2014 WL 12606650 at *2 (quoting Fed. R. Civ. P. 15(a)(2)); *Morongo Band of Mission Indians v. Rose*, 893 F.3d 1074, 1079 (9th Cir. 1990) (requiring that policy favoring amendment be applied with "extreme liberality").  Samsung's contention that focusing Huawei's rate-setting claim on the parties U.S. portfolios would be "highly prejudic[ial]" to Samsung (Br. at 14) rings hollow.  Huawei notified Samsung of its intent to offer opinions on the FRAND rates for the parties' U.S. portfolios eleven days before Huawei's opening expert reports were due and approximately six weeks before Samsung's rebuttal reports were due.  And Huawei had raised the possibility on several occasions earlier, so it could not have come as a complete surprise.  (*See* Dkt. No. 240 at 9 n.10; Dkt. No. 254, 3/14/2018 Hearing Tr. at 14:25-15:4, 15:10-14; Dkt. No. 129, 4/19/2017 Hearing Tr. at 20:8-9.)  Moreover, Samsung focused extensively on the parties' U.S. portfolios in the course the parties' pre-suit negotiations, deeming them the lynchpin to such negotiations.  (Ex. F at 181:20-23, 182:10-15.)  Finally, Samsung's expert has opined that [redacted]

---

[6] While the terms discussed in the mediation process overseen by the Shenzhen Court contemplated a global license, they could be readily adapted to a U.S.-focused license with a simple change in the defined scope of the licensed patents.

14

1  ███████████████████████████████████████████████████████████████████████████████.
2  (Ex. N at 73; Ex. 5; Ex. R; Ex. Q at 34.)  Indeed, his analysis ████████████████████
3  ██████████  (Ex. Q at 36.)  Ultimately, ████████████████████████████████████████
4  ████████████████████████████████████████████████████████████████████████████████
5  ████████████████████  (Ex. Q at Table 17 and 18).  None of this imposed any hardship on
6  Samsung.

## IV.   CONCLUSION

For all of the foregoing reasons, Huawei respectfully requests this Court deny Samsung's motion.

Dated: June 22, 2018                          Respectfully submitted,

                                              SIDLEY AUSTIN LLP

David T. Pritikin (*Pro Hac Vice*)
dpritikin@sidley.com                          /s/ Michael J. Bettinger
David C. Giardina (*Pro Hac Vice*)            Michael J. Bettinger (SBN 122196)
dgiardina@sidley.com                          mbettinger@sidley.com
Douglas I. Lewis (*Pro Hac Vice*)             Irene Yang (SBN 245464)
dilewis@sidley.com                            irene.yang@sidley.com
John W. McBride (*Pro Hac Vice*)              SIDLEY AUSTIN LLP
jwmcbride@sidley.com                          555 California Street, Suite 2000
SIDLEY AUSTIN LLP                             San Francisco, California  94104
One South Dearborn                            (415) 772-1200 – Telephone
Chicago, Illinois  60603                      (415) 772-7400 – Facsimile
(312) 853-7000 – Telephone
(312) 853-7036 – Facsimile
                                              *Attorneys for Huawei Technologies Co., Ltd.,
                                              Huawei Device USA, Inc., Huawei Technologies
                                              USA, Inc., and HiSilicon Technologies Co. Ltd.*