QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Attorneys for Samsung Electronics Co., Ltd.,
Samsung Electronics America, Inc., and
Samsung Research America, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HUAWEI TECHNOLOGIES CO., LTD., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., et al.,<br><br>Defendants. | CASE NO. 16-cv-02787-WHO<br><br>**SAMSUNG'S REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS REGARDING HUAWEI'S CAUSE OF ACTION FOR DECLARATORY JUDGMENT OF FRAND TERMS AND CONDITIONS FOR A CROSS-LICENSE**<br><br>**Hearing Date: July 18, 2018**<br>**Time: 2:00 p.m.**<br>**Place: Courtroom 2, 17th Floor**<br>**Judge: Hon. William H. Orrick**<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |
| SAMSUNG ELECTRONICS CO., LTD. & SAMSUNG ELECTRONICS AMERICA, INC.<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>HUAWEI TECHNOLOGIES CO., LTD., HUAWEI DEVICE USA, INC., HUAWEI TECHNOLOGIES USA, INC., & HISILICON TECHNOLOGIES CO., LTD.<br><br>Counterclaim-Defendants. | |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................................1

II. HUAWEI ADMITS IT NO LONGER SEEKS A DECLARATION OF A WORLDWIDE CROSS-LICENSE ..................................................................................4

III. THE COURT LACKS JURISDICTION OVER A U.S.-ONLY RATE SETTING CLAIM ...................................................................................................................................5

IV. U.S. RATES DETERMINED BY THE COURT WOULD BE MERELY ADVISORY WITHOUT SAMSUNG'S CONSENT ..........................................................8

V. THE COURT SHOULD EXERCISE ITS DISCRETION TO DENY A PIECEMEAL DECLARATORY JUDGMENT ON A U.S.-ONLY LICENSE THAT NEITHER PARTY WANTS .................................................................................9

VI. SAMSUNG WOULD BE UNFAIRLY PREJUDICED IF HUAWEI WERE PERMITTED TO PROCEED WITH A U.S.-ONLY RATE-SETTING CLAIM ...............11

VII. CONCLUSION ....................................................................................................................11

# TABLE OF AUTHORITIES

**Page**

### Cases

*Apple, Inc. v. Motorola Mobility, Inc.*,
 Case No. 11-cv-178-bbc, 2012 WL 5943791 (W.D. Wis. Nov. 28, 2012) ......................... 9

*Applera Corp. v. Michigan Diagnostics, LLC*,
 594 F. Supp. 2d 150 (D. Mass. 2009) ............................................................................. 7

*Broadcom Corp. v. Qualcomm Inc.*,
 No. 08CV1829WQH (LSP), 2009 WL 684835 (S.D. Cal. Mar. 12, 2009) ........................ 7

*Celedor Int'l Ltd. v. Walt Disney Co.*,
 347 F. Supp. 2d 846 (C.D. Cal. 2004) ........................................................................ 9, 10

*Ford Motor Co. v. United States*,
 688 F.3d 1319 (Fed. Cir. 2012) ..................................................................................... 7, 8

*Jackson v. Bank of Hawaii*,
 902 F.2d 1385 (9th Cir. 1990) ........................................................................................ 11

*Kingdomware Techs., Inc. v. United States*,
 136 S. Ct. 1969 (2016) .................................................................................................... 3

*MedImmune, Inc. v. Genentech, Inc.*,
 549 U.S. 118 (2007) ........................................................................................................ 8

*Panavise Prod., Inc. v. Nat'l Prod., Inc.*,
 No. 08-cv-1300 ABC (JWJx), 2008 WL 11337707 (C.D. Cal. May 30, 2008) .................. 6

*Realtek Semiconductor Corp. v. LSI Corp.*,
 No. C-12-3451-RMW, 2014 WL 2738226 (N.D. Cal. June 16, 2014) ........................... 3, 7

*SanDisk Corp. v. ST Microelectronics, Inc.*,
 480 F.3d 1372 (Fed. Cir. 2007) ....................................................................................... 6

*TCL Communication Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*,
 No. SACV-14-341 JVX(DFMx), 2017 WL 6611635 (C.D. Cal. Dec. 21, 2017) ........... 3, 10

## I. INTRODUCTION

The key facts supporting dismissal of Huawei's Count II are undisputed. Count II asks the Court to write the "terms and conditions" "for each [3GPP] standard" for "a cross-license between Huawei and Samsung (and their affiliates) covering their respective UMTS and LTE SEP portfolios." Dkt. 1 ("Compl.") at ¶ 68. Huawei now concedes that it has abandoned its request that the Court write the terms of a worldwide SEP cross-license. Although it contends it should be allowed to unilaterally switch its declaratory relief cause of action to a U.S.-only "rate," Huawei concedes that the parties' pre-suit negotiations were "███████████." Dkt. 316-4 ("Huawei's Opposition to Samsung's Motion for Judgment ("Opp.") at 2. Indeed, Huawei acknowledges that at the "outset of the case," it sought the "expeditious determination of the FRAND terms of a cross-license between the parties' *global* portfolios." *Id.* at 8. Huawei, in contrast, identifies no evidence that the parties ever once discussed a U.S.-only license or a separate rate for U.S. patents over the more than four years of pre-suit negotiations. In fact, it is undisputed that the first time Huawei switched from requesting declaratory relief for a world-wide license to requesting a declaration of the terms and conditions for a U.S.-only license was on April 16, 2018, after the close of fact discovery and six days before the deadline for expert reports. Opp. at 1:20-22.

Putting aside whatever subject matter jurisdiction existed for Huawei's world-wide request, Huawei unmistakably divested the Court of declaratory relief jurisdiction by unilaterally abandoning that request in favor of a new eleventh hour request that the Court instead write a completely different cross-license—one which grants U.S.-only rights. Notably, for the first time in its Opposition papers, Huawei reinvents its declaratory relief claim *yet again*. Although it previously sought declaratory relief as to the "terms and conditions" of a cross-license, it now states it is seeking a declaration of "the FRAND *rates* at which the parties are obligated to license one another, as opposed to the other terms and conditions of a FRAND cross-license." Opp. at 13:22-24 (emphasis in original). Thus, Huawei now asks the Court to declare rates for a U.S.-only cross-license in isolation, *without* setting "the other terms and conditions of a FRAND cross-license."

The Court should dismiss Huawei's abandoned world-wide declaratory relief cause of action, and it should not entertain Huawei's evolving conception of what license terms it now seeks.

1  The undisputed evidence shows the parties did not negotiate, and did not want, a U.S.-only cross-license. The evidence likewise shows that the parties would never agree to a cross-license "rate" without also agreeing to the "terms and conditions" associated with that rate.

Huawei claims it is not materially amending its request for declaratory relief, it is merely "limiting" it, and that there still exists a "definite and concrete" dispute limited to U.S. rates. But that is like saying because two parties could not agree on the price of a car, the Court has jurisdiction to set the price of the car's engine. The parties never negotiated for an engine. The seller does not want to sell just an engine, and the buyer is not interested in purchasing an engine in isolation. The price of an engine is a completely different negotiation, one that neither party is even interested in, and it is inextricably tied to its relationship to the rest of the car.

Similarly, here the parties did not negotiate and were not interested in a U.S.-only cross-license. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Moreover, the Court cannot simply pull out a U.S.-only cross-license from the parties' prior world-wide negotiations. Because both the 3GPP standards and the parties' businesses are world-wide, limiting a license to U.S.-only rights would raise a thorny nest of new (un-negotiated) issues. For example, how do the parties handle covered products made in China and sold in the U.S.? What about technology made in the US and sold in India or Europe? How do the parties deal with foreign counterpart SEP patents? What about networks and hardware devices that cross U.S. and foreign jurisdictions?

Once you add in Huawei's newest request—that a U.S. "rate" be determined without determining the other terms and conditions of a cross-license—we move from advisory opinion to pure fantasy. No one negotiates license rates without also, and most often first, negotiating the terms and conditions that go with those rates. Huawei's request—just last week—that the Court do so further supports dismissal of Count II. Before entertaining the merits of an advisory request, courts ensure that any declaratory relief claim relates to an "actual controversy" between the parties existing at the time the complaint is filed, not a fragment of a controversy or a manufactured dispute

the parties did not really have. *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1975 (2016). Because here there is none, Samsung's motion to dismiss should be granted.[1]

Huawei's argument that the Court should set U.S. cross-license rates because it would serve a "useful purpose" is unpersuasive. The Court cannot extend its Article III jurisdiction to the advisory role of "clarifying" issues for the parties, when it would not actually settle the legal relations in issue nor terminate the controversy giving rise to the proceedings. Even if it could, such advice would serve a limited practical role, and be of no real use. The parties have extensive worldwide patent portfolios, including in Europe, China, Japan, India, and other major global economies. The Court's non-binding advisory opinion on U.S. rates would be of no use because it would not address the other "terms and conditions" of a U.S. license and at best would inform a small piece of the broader worldwide licensing dispute between Huawei and Samsung.

Huawei's invocation of U.S.-rate setting as a defense to Samsung's infringement claims is just as fantastical. Opp. at 10. Huawei never previously raised this alleged defense, and Huawei fails to explain now how the determination of royalty in isolation for a cross-license to the parties' entire U.S. SEP portfolios might itself necessarily furnish any defense for the five asserted Samsung patents. In the *Realtek* and *TCL* decisions Huawei cites, the parties specifically negotiated licenses limited to the asserted patents-at-issue before initiating litigation. Opp. at 9-10. Here, Huawei does not identify a single instance in which the parties discussed terms for a cross-license limited to the U.S. patents-in-suit. Because this litigation arose from a dispute regarding the parties' global portfolios, a declaratory judgment setting the terms and conditions for a cross-license limited to the parties' U.S. SEP portfolios, or even just the U.S. patents in suit, would constitute an improper advisory opinion.

Huawei is also incorrect that Samsung would suffer no prejudice if the Court permits Huawei to pursue U.S.-only rate-setting. Samsung has spent two years building its defenses to a declaration of the terms and conditions, including rates, of a worldwide license. To the extent U.S. patents or

---

[1] Huawei has raised the "possibility" of stipulating to the dismissal of Huawei's Count II in its entirety. Opp. at 1. The parties are in discussions to finalize this stipulation.

products were included, they cannot simply be pulled out of Samsung's prior analysis. Huawei points to Samsung's expert reports—which Samsung was required to file with virtually no notice of Huawei's reinvented declaratory relief request—but pointing to reports Samsung was required to file under duress does not show a lack of prejudice. For Samsung to have an adequate opportunity to respond to Huawei's new claim, Samsung should be entitled at a minimum to reopen fact discovery, propound additional document requests and interrogatories, conduct additional depositions, and submit new expert reports. But it is too late in this case to start over again. Accordingly, in addition to the other reasons set forth above, Huawei's new request should be denied as too late and prejudicial at this point in the case.

This is not a matter, as Huawei contends, of Samsung implementing a so-called "hold-out strategy" to avoid resolution of the terms of a FRAND cross-license. Opp. at 1. Samsung has not moved to dismiss Huawei's breach of FRAND contract claim and expects to try its own competing breach of FRAND contract claim at the upcoming trial. Samsung's strategy reflects the simple principle that sophisticated cross-license terms should be achieved through a return to bilateral, good faith license negotiations with the recognition that the absurdly high and manifestly discriminatory rates that Huawei has been seeking with the unfair help of its Chinese injunction requests are not FRAND.

## II. HUAWEI ADMITS IT NO LONGER SEEKS A DECLARATION OF A WORLDWIDE CROSS-LICENSE

Huawei cannot escape that it has now abandoned the exclusive rate-setting claim it sought in its complaint: worldwide. Huawei argues that it was simply "limiting the focus" of its claim to the parties' U.S. patents to "streamline the case" to be "more consistent with Samsung's apparent view of jurisdictional power of the Court." Opp. at 2, 8. Huawei does not have the power to unilaterally "streamline" the case on its own accord, however, and Samsung's "apparent view" on Huawei's claim is not germane to the issue of abandonment. Regardless of how Huawei characterizes its actions, it is no longer asking this Court to set a world-wide FRAND rate, and has thus abandoned its original worldwide rate-setting claim. In fact, Huawei has now gone even further

1  in its abandonment—it no longer seeks the terms and conditions of a U.S.-only cross-license but
2  now only asks the court to set the rates of such a license. Opp. at 13-14.
3        Huawei is disingenuous in arguing that its complaint did not delineate the precise scope of
4  the portfolios that would ultimately be considered. Opp. at 1. Huawei's complaint called for "a
5  declaratory judgment setting forth the FRAND conditions, including royalty rates for each standard,
6  for a cross-license between Huawei and Samsung (and their affiliates) covering their
7  respective…*SEP portfolios*." Complaint at ¶ 17 (emphasis added). Huawei's "SEP portfolio"
8  includes *all* of its SEPs – including non-U.S. SEPs across the globe. Indeed, Huawei concedes that
9  "███████████████████████████████████." Opp. at 2. To the extent there was any ambiguity
10 in Huawei's claim, it was resolved when Huawei told the court "[t]his court has the power to set
11 worldwide rates," Dkt. 240-3 at 2, ███████████████████████████████████████████
12 ███████████████████████████████████████████████████████████████████████
13 ███████████████████████ Dkt. 303-5.
14       Finally, Huawei's contention that it has raised the possibility of narrowing the scope of the
15 rate-setting claim "on several earlier occasions" is also misleading: the earliest reference Huawei
16 cites is a footnote in its opposition to Samsung's Motion for Anti-Suit Injunction (Dkt. 240-3), a
17 brief filed a few weeks before the close of fact discovery and well into this litigation.

### III. THE COURT LACKS JURISDICTION OVER A U.S.-ONLY RATE SETTING CLAIM

Huawei is incorrect that the Court has subject matter jurisdiction over Huawei's changed declaratory judgment claim because the parties' global licensing dispute subsumes a U.S. dispute. Opp. at 9. Initially, the fact that Huawei yet again purports to alter its rate-setting claim in its Opposition to request only the *rates* for a U.S.-only cross-license shows how nebulous and theoretical Huawei's claim is. Opp. at 13-14. More fundamentally, Huawei freely admits that the parties' licensing dispute for four years before this case was "███████████." Opp. at 9. Huawei points to *no evidence* demonstrating that the parties ever discussed the terms and conditions of a U.S.-only SEP license, including U.S.-only rates, because there is none. The only support Huawei references is a quote from a Samsung fact witness regarding the importance of U.S. patents, and

1  tables from the parties' expert reports regarding the value of the parties' U.S. portfolios. *Id.*  Neither,
2  however, shows that the parties considered or discussed the terms and conditions of a U.S.-only SEP
3  license. ███████████████████████████████████████████████
4  ███████████████████████████████████████████████████████
5  █████████████████████████████████████.

6        Without any evidence of explicit discussion of a cross-license for U.S. portfolios, Huawei
7  claims that the global license dispute inherently involved a dispute over a potential U.S. cross-
8  license. Opp. at 9.  But as explained above, this is akin to claiming there is an inherent dispute over
9  engine pricing when prices haggle over the price and terms of a car purchase.  The reality is that
10 Huawei and Samsung are very unlikely to have come to an agreement regarding a U.S.-only cross-
11 license, given the parties' vastly different exposures in the U.S. and the rest of the world.  This
12 scenario is therefore purely hypothetical, at best, and improper for the Court to adjudicate. *See*
13 *Panavise Prod., Inc. v. Nat'l Prod., Inc*., No. 08-cv-1300 ABC (JWJx), 2008 WL 11337707, at *2
14 (C.D. Cal. May 30, 2008) (citation and quotation omitted) (holding that a court lacks subject matter
15 jurisdiction over a claim requesting "what the law would be upon a hypothetical state of facts.").

16       Second, Huawei's support for its claim that the law does not require any particular form of
17 pre-suit dialogue for declaratory judgment jurisdiction is inapposite. Opp. at 9.  The cases Huawei
18 cites for this proposition do not demonstrate the law is so open-ended, and instead only reveal the
19 narrow legal contours of when subject matter jurisdiction may lie.  In *SanDisk Corp. v. ST*
20 *Microelectronics, Inc.*, 480 F.3d 1372, 1382 (Fed. Cir. 2007), the patent holder presented the
21 purported infringer with a "detailed presentation which identified, on an element-by-element basis,
22 the manner in which [the patent holder] believed each of [the purported infringer's] products
23 infringed the specific claims of each of [the patent holder's] patents" during the license negotiations.
24 The court therefore found that it had declaratory judgment jurisdiction "where a patentee asserts
25 rights under a patent based on certain identified ongoing or planned activity of another party, and
26 where that party contends that it has the right to engage in the accused activity without license." *Id.*
27 at 1381.  Here, in contrast, Samsung never "assert[ed] rights" against Huawei with respect to any of
28

1   Samsung's patents before Huawei filed its Complaint as required by "hornbook law." *Ford Motor*
2   *Co. v. United States*, 688 F.3d 1319, 1324 (Fed. Cir. 2012).

3       *Realtek* also does not support the proposition that any form of pre-suit dialogue is sufficient
4   to confer subject matter jurisdiction.  There, the patent holder contacted the purported infringer and
5   asserted that the purported infringer's products were infringing upon two specific patents.  *Realtek*
6   *Semiconductor Corp. v. LSI Corp.*, No. C-12-3451-RMW, 2014 WL 2738226, at *1 (N.D. Cal. June
7   16, 2014).  Within a week, the patent holder filed a complaint with the ITC alleging that the
8   purported infringer had infringed the two specific patents.  *Id.*  Because the patentee sought an
9   exclusion order, "an actual controversy existed between the parties over the royalty rate for a
10  RAND-compliant license" and "the court had declaratory judgment jurisdiction over the
11  determination of a RAND rate."  *Id.*  Here, by contrast, Samsung never sought a pre-suit exclusion
12  order or even threatened Huawei with the same in any way.  While Samsung eventually filed claims
13  against Huawei, it did so only as a defensive measure—*after* Huawei asserted patents against
14  Samsung.

15      Cases that ***have*** considered whether general "portfolio" licensing discussions can confer
16  subject matter jurisdiction for a declaratory relief claim have declined jurisdiction.  For example, in
17  *Applera Corp.*, the court dismissed a declaratory judgment claim because general communications
18  about the "fifty-five additional" patents that were not actually asserted did not indicate "any
19  particularized suggestion of infringement."  *Applera Corp. v. Michigan Diagnostics, LLC*, 594 F.
20  Supp. 2d 150, 160 (D. Mass. 2009).  The mere suggestion by the declaratory relief plaintiff of a
21  "review of its entire patent portfolio," even "with some palpable bravura," was not sufficient to
22  confer subject matter jurisdiction.  *Id.*; *see also Broadcom Corp. v. Qualcomm Inc.*, No.
23  08CV1829WQH (LSP), 2009 WL 684835, at *6 (S.D. Cal. Mar. 12, 2009*)* ("Broadcom alleges that
24  it is threatened by a cloud of potential infringement claims by Qualcomm, but Broadcom fails to
25  specify any affirmative act by Qualcomm, such as a notification of Qualcomm's intent to enforce a
26  specific patent right against Broadcom.").

27      Huawei is also mistaken that subject matter jurisdiction for a declaratory judgment claim
28  exists because "such a claim provides Huawei's defense to a potential infringement claim by

-7-    Case No. 16-cv-02787-WHO
SAMSUNG'S REPLY ISO MOTION FOR JUDGMENT ON THE PLEADINGS

1  Samsung." Opp. at 10.  Huawei has never pled this "defense," and fails to explain how a rate on
2  Samsung's entire U.S. portfolio would provide Huawei with any defense to a claim of infringement
3  for five individual Samsung patents.  More fundamentally, this theory of subject matter jurisdiction
4  conflicts with hornbook law "taught to first-year law students" that subject-matter jurisdiction must
5  lie at the time the complaint was filed.  *Ford Motor Co.*, 688 F.3d at 1324.

6  Finally, Huawei contends that its requested declaratory relief would not be an advisory
7  opinion, but rather "specific relief" of a "conclusive character" as contemplated by the Supreme
8  Court in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  Opp. at 10.  Huawei,
9  however, omits the critical language that immediately follows: "as distinguished from an opinion
10 advising what the law would be upon a ***hypothetical state of facts***."  *MedImmune*, 549 U.S. at 127
11 (emphasis added).  As discussed above, the parties never contemplated a U.S.-only cross-license, so
12 Huawei asks this court to do just that—improperly advise what the law would be upon a hypothetical
13 state of facts.

14 **IV.   U.S. RATES DETERMINED BY THE COURT WOULD BE MERELY ADVISORY WITHOUT SAMSUNG'S CONSENT**
15

16 Samsung explained in its Motion why Huawei's proposed rate-setting procedure would be
17 merely advisory without Samsung's consent.  Huawei seeks the answer to a hypothetical—"what
18 portfolio FRAND rate would apply for a cross-license to the patents in each party's portfolio that is
19 encumbered by a FRAND obligation."  Mot. at 11.  In particular, the Court to this day does not
20 know which of the thousands of patents potentially at issue here are valid, infringed by the other
21 party, and actually essential to relevant technical standards.  Inherent in any rate determination for
22 a "portfolio" is that the tribunal is necessarily concluding that every patent in the portfolio is
23 essential, valid, and infringed, and determining the reasonable royalty for every patent in the
24 portfolio.  Such a determination can only be made if many shortcuts are taken—shortcuts that will
25 eliminate Samsung's legal right to contest these issues on a patent by patent basis.

26 Unsurprisingly, Huawei identifies no legal authority for the proposition that a FRAND
27 obligation attaches to a nebulous portfolio of patents.  Nor is there any basis in ETSI policy for that
28 proposition.  Any "consent" to rate-setting is therefore wholly disjoint from an actual legal

obligation. For that reason, like Apple in a case Huawei cites, Huawei could alter or withdraw its consent at any time. Opp. at 11 (citing *Apple, Inc. v. Motorola Mobility, Inc.*, Case No. 11-cv-178-bbc, 2012 WL 5943791, *2 (W.D. Wis. Nov. 28, 2012)).

Huawei is also incorrect that Samsung's FRAND contractual obligations would be "meaningless" if Samsung can "avoid their enforcement in court simply by refusing to consent to the proceeding." Opp. at 11. Huawei has already attempted to hold Samsung to its contractual commitments through a claim for breach of FRAND contractual obligations. To enforce FRAND contractual obligations, a party should sue for breach of contractual FRAND obligations—just like Huawei did. Samsung would not "avoid" enforcement of these obligations if the rate-setting claim was dismissed because it still must litigate the breach of FRAND claims at issue. In fact, one of the "important legal consequences" cited by Huawei is the propriety of injunctive relief, Opp. at 11, which the parties expressly litigated in this very case in connection with Samsung's Motion for an Antisuit Injunction. These important legal issues should be decided in connection with breach of FRAND claims, not a nebulous rate-setting claim.

## V. THE COURT SHOULD EXERCISE ITS DISCRETION TO DENY A PIECEMEAL DECLARATORY JUDGMENT ON A U.S.-ONLY LICENSE THAT NEITHER PARTY WANTS

Huawei fails to justify that the Court should exercise its "discretion" to declare the terms and conditions of a U.S. cross-license. Opp. at 12. As Huawei acknowledges, such a declaration would be appropriate only if the judgment would "serve a useful purpose in clarifying and settling the legal relations in issue" and "terminate and afford relief from [] the controversy giving rise to the proceeding." *Id.*; *Celedor Int'l Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846, 857 (C.D. Cal. 2004). This Court's determination of U.S.-only rates would not sufficiently satisfy either requirement.

Huawei claims that "resolving the appropriate FRAND terms [for] the parties' U.S. patents would materially facilitate the parties' ability to reach [terms for] global licenses." Opp. at 13. But Huawei has no evidence to support its assertion aside from an out-of-context quote from a Samsung fact witness noting that U.S. patents are important in licensing negotiations. *Id.* The purported admission does not demonstrate that a U.S.-only rate would "materially facilitate the parties' ability"

to reach terms on a global cross-license. *Id*. Indeed, as Huawei admits, the "legal relations" implicated here revolve around the parties' "desire to enter a ***global*** cross-license[.]" Opp. at 13. Accordingly, any judgment here focused on a U.S.-only rate would, at best, serve a very limited role in the parties' global dispute concerning their worldwide patent portfolios and not serve much purpose in settling the legal relations at issue.

Huawei's advocacy for a judgment limited to U.S. rates, now without a determination of terms and conditions, is similarly unavailing.[2] This new, rate-only proposal is ***yet another*** self-help shift in the scope and purpose of the rate-setting claim—Huawei has gone from the terms and conditions of a global cross-license, to the terms and conditions of a U.S. cross-license, to a determination of U.S. rates only. Opp. at 12-13. Resolving only the rates would be nearly meaningless. As explained previously, the parties "regularly met in person for four-and-a-half years, but could not agree on even the most basic license preconditions." Dkt. 235 [Samsung's Motion for an Antisuit Injunction) ("Antisuit Mot.")] at 7. Additionally, as Samsung has illustrated, Huawei's views on the desired license structure and scope have been a moving target, varying wildly. Antisuit Mot. at 8. If the parties could not agree on the non-rate terms over a period of four and a half years, it would not be a simple matter for the Court to set those terms either, and setting only U.S. rates would not come close to resolving the parties' global dispute.[3] The Court should therefore decline to do so.

---

[2] Huawei's reference to the findings of the Shenzhen Court is also inapposite. Opp. at 12-13. A foreign tribunal's findings of fact are irrelevant to whether this Court has subject matter jurisdiction over Huawei's rate-setting claim.

[3] Huawei's cited cases in support are inapposite as neither case involves a situation where a party requests judgment on a global cross-license in its complaint, and then at some point seeks judgment on a region-specific rate. *Microsoft Corp. v. Motorola, Inc.*, No. C10-1823JLR, 2013 WL 2111217 (W.D. Wash. April 25, 2013); *TCL Communication Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, No. SACV-14-341 JVX(DFMx), 2017 WL 6611635 (C.D. Cal. Dec. 21, 2017). Instead, both cases involve the resolution of rates for specific patents that the parties had actually discussed and negotiated prior to seeking judicial relief.

## VI. SAMSUNG WOULD BE UNFAIRLY PREJUDICED IF HUAWEI WERE PERMITTED TO PROCEED WITH A U.S.-ONLY RATE-SETTING CLAIM

Huawei's sudden shifts in position, including its most recent shift to U.S. rate-setting only, are tantamount to a de facto amendment of its complaint. When deciding whether to grant leave to amend, the Ninth Circuit has held that the factor of prejudice to the opposing party carries the greatest weight. *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (prejudice to the opposing party is the most important factor when determining a motion for leave to amend a complaint). As detailed here, Huawei's proposed amendment would be highly prejudicial to Samsung and therefore should be rejected.

Huawei contends that Samsung would be unaffected because Huawei notified it of its changed position sufficiently in advance of opening and rebuttal expert report deadlines. Opp. at 14. Huawei's contention rings hollow given that the notification occurred *a mere four days* before opening expert reports were due, and almost two years after Huawei initiated this litigation. Mot. at 15. Indeed, Huawei cannot dispute that neither party sought or obtained any discovery regarding a U.S.-only rate-setting claim nor did either party ever exchange a license proposal that considered such an arrangement. *Id.* Accordingly, if Huawei were permitted to proceed with its last-minute, game-changing alteration, Samsung would be entitled to reopen fact discovery in order to conduct a complete reassessment of the parties' relative patent portfolio and market positions—materially affecting reasonable royalty analysis.

## VII. CONCLUSION

For the foregoing reasons, Huawei's rate-setting cause of action (Second Cause of Action) should be dismissed with prejudice.

1  DATED: June 29, 2018                    Respectfully submitted,

                                           QUINN EMANUEL URQUHART &
                                           SULLIVAN, LLP

                                    By        */s/ Charles K. Verhoeven*
                                           Charles K. Verhoeven
                                           Kevin P.B. Johnson
                                           Victoria F. Maroulis
                                           Thomas D. Pease
                                           David A. Perlson

                                           *Attorneys for Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Research America, Inc.*

## ATTESTATION

I, Victoria F. Maroulis, am the ECF user whose ID and password are being used to file the above Motion. In compliance with Civil L.R. 5-1(i)(3), I hereby attest that Charles K. Verhoeven has concurred in the aforementioned filing.

                                              */s/ Victoria F. Maroulis*
                                           Victoria F. Maroulis