# EXHIBIT 21

Date: January 29, 2018

To whom it may concern:

This is to certify that the attached translation from Chinese and into English is an accurate representation of the documents received by this office.

The document is designated as:
    Shenzhen Intermediate People's Court, Guangdong Province, Civil Judgment

Hannah Mendoza, Project Manager in this company, attests to the following:

"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents."

_____
Signature of Hannah Mendoza

# Shenzhen Intermediate People's Court, Guangdong Province

# Civil Judgment

# Shenzhen Intermediate People's Court, Guangdong Province

# Civil Judgment

(2016) Y03 MC No. 840

Plaintiff: Huawei Technologies Co., Ltd., with its residence at the Office Building of Huawei Headquarters,Bantian,Longgang District,Shenzhen City,Guangdong Province.

Legal Representative: Yafang SUN, Chairman of the Board of Directors.

Agent ad litem: Bin WANG, Legal Specialist of the company.

Agent ad litem: Jun LIU, Attorney of Guangdong Junzhiquan Law Office

Defendant: Samsung (China) Investment Co., Ltd., with its residence at Unit 01-08, Floors 4-10,Fortune Financial Center,Building 5,Dongsanhuan Middle Road, Chaoyang District, Beijing City

Legal Representative: Park Jaesoon, Chairman of the Board of Directors.

Agent ad litem: Teng HUANG, Attorney of Beijing Zhinuo Law Firm.

Agent ad litem: Yi JIN, Attorney of Beijing Lifang & Partners.

Defendant: Huizhou Samsung Electronics Co., Ltd., with its residence at 256 Zhongkai No. 6 Road,Chenjiang Sub-district,Zhongkai Hi-tech Industrial Development Zone, Huizhou City, Guangdong Province

Legal Representative: Park Xinghao, Chairman of the Board of Directors.

Agent ad litem: Jinlin CHEN, Attorney of Beijing Liu, Shen & Associates.

Agent ad litem: Guang HOU, Attorney of Beijing Liu, Shen & Associates.

Defendant: Shenzhen Nanfang Yunhe Technology Co., Ltd., with its residence at 17K Floor 17, Building A, Huaqiang Plaza, Huaqiang North Road, Futian District, Shenzhen City, Guangdong Province.

Legal Representative: Jianqin ZHANG, Chairman of the Board of Directors.

Agent ad litem: Yuanyuan ZHANG, Attorney of Beijing Lifang & Partners.

Agent ad litem: Guanyang YAO, Attorney of Beijing Liu, Shen & Associates.

The dispute case of infringement of patent for invention (Patent No. ZL201010137731.2) between Huawei Technologies Co., Ltd. (hereinafter referred to as Huawei), the plaintiff, and Samsung (China) Investment Co., Ltd., Huizhou Samsung Electronics Co., Ltd., Shenzhen Nanfang Yunhe Technology Co., Ltd., the defendants, applied to the general procedure in accordance with law and was heard in private session due to business secrets involved after

1

According to Picture 1 and 2 of page 726, it shows:

> [illegible]

Besides, according to *Technical Requirements of Carrier Aggregation of LTE Cellphone Terminal of China Mobile*, (as the plaintiff's Evidence 18 in the CD, lines 1-2, page 15):

> [illegible]

**III.     Standard essential patent licensing shall follow the FRAND principle**

ISO (International Standardization Organization) generally requires its members to follow FRAND (Fair, Reasonable and Non-Discriminatory) principles with regard to standard essential patent licensing. For example, the FRAND (Fair, Reasonable and Non-Discriminatory) provisions referred to in the *On ETSI Intellectual Property Rights Policy* (Version on April 8, 2009) submitted by the Plaintiff read as follows:

6.1 Where important intellectual property rights in relation to a particular standard or technical specification have been submitted to ETSI for attention, the Secretary-General of ETSI shall require the owner of such intellectual property rights to make an irrevocable commitment immediately in writing within three months that he is ready to grant an irrevocable license according to the fair, reasonable and non-discriminatory terms and conditions, and the scope of the license shall at least include:

Manufacturing, including the customized components and subsystems that are manufactured or have been manufactured for re-manufacturer use according to the licensee's own design;

Selling, leasing or disposing in other ways the equipment manufactured in the above manner;

Repairing, using or operating the equipment, and using such method.

The commitments above may be made according to the following conditions in the hope that the licensee agrees to offer a return. Where a member assigns or transfers ownership of its important intellectual property rights already disclosed to ETSI, such member shall make reasonable efforts to inform the assignee or transferee of the commitment related to such important intellectual property rights already made by it to ETSI according to Article 6.

6.2 The commitments made to a certain member of a patent family according to Article 6.1 shall be applied to all existing or future members of the patent family, unless written terms explicitly excluding specific intellectual property rights already exist when the commitment is made. The content of any such exclusion clauses shall be included in the clearly specified intellectual property rights.

Standard essential patent licensing in our country shall also follow FRAND (Fair, Reasonable and Non-Discriminatory) principles.

**IV.     Basic information of cross licensing negotiations between Huawei and Samsung**

patent rights is not tenable. In order to prove its claim, the plaintiff submitted the following evidence:

4.4.5 of the (Terminal) User Product Licensing Agreement signed by Huawei Device Co., Ltd. and Huawei Device (Dongguan) Co., Ltd. as terminal users with Qualcomm specifies there isn't Pass-Through right. ▌▌▌▌▌▌▌▌.

▌▌▌▌▌▌▌▌.

The above (Terminal) User Product Licensing Agreement comes into effect on ▌▌▌▌▌, and remains in valid until ▌▌▌▌.

The plaintiff thinks the accused products are mobile phone terminals, rather than CPU, base band chips and other components; the patent licensing agreement signed between the plaintiff and Qualcomm explicitly excludes the Pass-Through right granted by the plaintiff to Qualcomm, and meanwhile, the SEPs that the plaintiff licensed to Qualcomm do not include 4G/LTE SEPs, so the problem that the rights of the 4G/LTE SEPs of the plaintiff have been exhausted does not exist.

During the court hearing, with respect to ascertainment of facts involving FRAND issues, Huawei, the plaintiff, applied to the court for assigning its witness experts, Zhi DING and Xiaoru WANG, to appear in court, and the defendant applied for assigning its witness experts, Fei Deng and Yvonne Verse, to appear in court, to help to ascertain the facts involving FRAND issues; with respect to ascertainment of facts involving technical issues, Huawei, the plaintiff, applied to the court for assigning its witness experts, Xiaobo CHEN and Xiaoyan LIU, to appear in the court, and the defendant applied for assigning its witness experts, Jingxing FU and Lei ZHANG to appear in the court, to help to ascertain the facts involving technical issues.

The court is of the opinion that information transfer in today's society depends on wireless communication technologies and information interconnectivity is achieved by practicing wireless communication technology standard in the international society. As patented technologies are included in standards, standard essential patents (SEP) come into being. SEPs have such characteristics as compulsiveness, irreplaceability and inevitability of exploitation, and in order to guarantee the promotion and application of technology standards and sound operations of the SEP system, the patentees and the exploiters of SEPs shall have the obligation to have SEP licensing negotiations according to FRAND (fair, reasonable and non-discriminatory) principles.

Both Huawei, the plaintiff, and Samsung Electronics Co., Ltd., South Korea, have a large number of SEPs with respect to wireless communication globally (including in China), and in addition, both enterprises are also manufacturers and sellers of wireless communication technical products, which means that Huawei, the plaintiff, and Samsung Electronics Co., Ltd. are not only patentees of SEPs, but also exploiters of SEPs. Both Huawei, the plaintiff, and Samsung Co., Ltd. are transnational corporations, and have invested and established many affiliated companies (subsidiaries or controlled companies) in many countries in the world to market their wireless communication products globally and then depend on these affiliated companies to manufacture and sell wireless communication products in local areas. In this case, the defendants, Samsung (China) Investment Co., Ltd. and Huizhou Samsung Electronics

Co., Ltd. are affiliated companies of Samsung Electronics Co., Ltd. that is the controlling shareholder of such two companies, and they are a community of economic interests. Samsung Electronics Co., Ltd. engages in the behavior of manufacturing and selling wireless communication products in China via such two defendants, and they obtain economic interests jointly.

SEPs are regional, and patent grant and exploitation in each country are regulated by the patent law of such country; for the purpose of solving the SEP licensing problem globally, Huawei, the plaintiff, and Samsung Electronics Co., Ltd., on behalf of themselves and their affiliated companies respectively, had SEP cross-licensing negotiations.

SEP cross-licensing negotiations between the plaintiff Huawei and Samsung Electronics Co., Ltd. shall have the same legal effects on themselves as on as their affiliated companies, respectively. According to international rules on SEP cross-licensing negotiations, where the parent company on behalf of itself and its affiliated companies negotiates with others, whether the parent company abides by FRAND obligations shall be deemed as whether its affiliated companies abide by FRAND obligations. For example, according to the intellectual property policy of ETSI, FRAND obligations apply to the standard essential patent claimant and its affiliated companies. In the quotation with respect to the cross-licensing negotiations between Samsung and Huawei, Samsung defined the licensing subjects as Samsung and its affiliated companies. In view of this, whether Samsung Electronics Co., Ltd. complied with FRAND principles in the process of SEP licensing negotiations with Huawei is also deemed as whether Samsung Electronics Co., Ltd. and its affiliated companies (including such two defendants in this case) complied with FRAND principles. For this reason, the Court collectively refers to Samsung Electronics Co., Ltd. and the defendants Samsung (China) Investment Co., Ltd. and Huizhou Samsung Electronics Co., Ltd. as the "Samsung party," and Samsung Electronics Co., Ltd. as "Samsung" for short.

The reason why the plaintiff accused the defendants of infringement is that the Samsung party exploited the SEP of the plaintiff without permission, and in the SEP cross-licensing negotiations with the plaintiff, the Samsung party had such conditions of going against FRAND principles and maliciously delaying negotiations. As the result, the plaintiff petitioned the Court to order the defendants to cease their infringement behavior. The Court is of the opinion that according to the appeal of the plaintiff and the defense of the defendants, this case involves two issues: one concerns FRAND, and the other concerns ascertainment and finding of facts with respect to technology. FRAND issue refers to the issue that who, the plaintiff and Samsung, is at fault for failure to reach a licensing agreement as both parties have SEP cross-licensing negotiations. The ascertainment and finding of facts with respect to technology refers to whether what the patent the plaintiff claims to protect in this case is a 4G SEP, whether the defendants have conducted any behavior that infringed upon the patent right of the plaintiff, and whether the affirmative defense of the defendants can be set up and so on.

both parties discussed the patent portfolio licensing of each party separately and unilaterally. On March 3, 2015, the senior management of Huawei sent an e-mail to the senior management of Samsung, in which they indicated that Samsung had always refused to provide Huawei with offer for Samsung SEP licensing and forced Huawei to have negotiations on SEP and non-SEP. This didn't conform to industry practices and anti-monopoly requirements of each country. On March 19, 2015, the senior management of Huawei replied such e-mail, and Samsung wanted to clarify it. This e-mail also referred to the arrangements of non-SEP. Samsung took voluntary negotiations as the basis of all FRAND licensing. In these business negotiations, it was fair and reasonable to propose the possibility of licensing covering SEP and non-SEP, which was beneficial for both parties. However, Samsung didn't take acceptance of it non-SEP licensing as a condition for its SEP licensing. Samsung didn't accept the formulation that Samsung had ever forced Huawei to only negotiate on SEP and non-SEP at the same time. If Huawei tended to SEP licensing, then Samsung was also willing to reach licensing on this base. From such six offers by Huawei in its e-mails to Samsung on March 5, 2012, April 7, 2013, August 25, 2014, May 22, 2015, July 20, 2015 and December 31, 2015 respectively, it can be seen that the cross-licensing range proposed by Huawei was limited to SEPs. On August 22, 2017, when the Court organized the plaintiff and the defendants to hold the first conciliation meeting for SEP cross-licensing negotiation between both parties, Samsung indicated that the reason why it was unwilling to quote to Huawei was that the quotation condition was not ripe, but it couldn't specify the quotation conditions accurately. In addition, it also expressed that further negotiations would be made only after both parties shared a common opinion on the patent licensing range and other issues. On September 12, 2017, when the Court organized the plaintiff and the defendants to hold the second conciliation meeting for SEP cross-licensing negotiation between both parties, Samsung asserted there were four conditions for quotation for licensing, including the range of licensed patents and so on.

It can be seen from the above process of negotiations between both parties that, the range of cross-licensed patents with Huawei proposed by Samsung included SEPs and non-SEPs. According to the fair, reasonable and non-discriminatory licensing mechanism of SEPs as well as the international conventions of SEP cross-licensing negotiations, when both parties carry out a cross-licensing negotiation, if both parties agree to have cross-licensing for SEPs and non-SEPs through consultation, which is a result on the basis of voluntariness and unanimous declaration of intention, and both parties can conduct cross-licensing negotiations on this basis. However, if one party is only willing to have SEP cross-licensing instead of the one binding non-SEP, the other party shall not stick to binding SEP licensing and non-SEP licensing. This is to say, under this condition, both parties shall only conduct cross-licensing negotiations for the SEPs they owned respectively. However, after Huawei, the plaintiff, explicitly put forward that the cross-licensing negotiations between both parties shall be limited to the SEPs in October 2012, Samsung still stuck to binding SEP licensing and non-SEP licensing unreasonably. Though the senior management of Samsung expressed that "Samsung doesn't take acceptance of its non-SEP licensing as a condition for its SEP

substance. For nearly a year, Samsung had not contacted and negotiated with Huawei. These facts showed that Samsung had made significant mistakes during technical negotiations, seriously delayed the negotiations and clearly violated FRAND principles that it had promised to follow, directly leading to more than six years of negotiations between both parties without any progress.

3. **Samsung had been passive in making a quotation and neither actively made a quotation to Huawei nor made a counteroffer against Huawei's quotation, indicating Samsung's subjective fault of maliciously delaying the negotiations.**

   According to the practice of SEP cross-licensing negotiations, the SEP patentee has a better understanding of his SEP strength. In order to reach an agreement, as a negotiator in good faith, the SEP patentee generally makes a positive quotation to the other party according to his own SEP strength, and the opposite party, as a negotiator in good faith, generally makes a positive counteroffer after receiving the SEP patentee's quotation. Based on the mail exchanges between both parties, the quotations of both parties during the negotiations are as follows:

   On May 19, 2013, Samsung sent an e-mail to Huawei saying that continuous meetings or parallel meetings may be hold if Huawei hoped to discuss technical issues and licensing of their respective patent portfolios. After the meetings, the parties can discuss whether it needs to hold further technical meetings or whether they can enter the business negotiation process. During the business negotiations, it is important for both parties to discuss terms and conditions to make mutually acceptable arrangements. On May 27, 2013, Huawei replied to Samsung's e-mail saying that technical discussions shall not delay business discussions in an unreasonable manner and prevent Samsung from making a unilateral quotation of SEPs in compliance with FPAND principles. Huawei once again requested the official quotation of Samsung. On May 30, 2013, Samsung replied to Huawei's e-mail saying that it agreed that technical discussions shall not delay business discussions in an unreasonable manner and it hoped to promote the progress of both parties in case of practical results. Samsung noted that, Huawei said that its position was that any license shall reflect the patent portfolio and market size of both parties. On March 7, 2014, Huawei replied to Samsung's e-mail saying that it was disappointing that Samsung had not showed much sincerity during the Shanghai meeting. Although Samsung stressed that it would maintain peace with Huawei, but it had not proposed any plan to achieve this goal. Samsung had neither provided Huawei with any proposal on how to handle the pending technical negotiations nor shown any genuine willingness to obtain patent license from Huawei. In the meantime, Huawei had repeatedly asked Samsung to inform Huawei of its royalties according to the FRAND terms. Unfortunately, Huawei has not yet received an accurate reply so far. On May 21, 2014, Huawei sent an e-mail to Samsung to express its intention to obtain SEP license from Samsung. However, Huawei has not received any reply from Samsung. Huawei expected Samsung to show its stance on SEPs and announce the conditions for such licenses, including Samsung's FRAND rate. In the meantime, Samsung had not responded to the license conditions provided by Huawei. On August 25, 2014, Huawei sent an e-mail to Samsung saying that

**through neutral third-party arbitration and Samsung rejected it without justification, indicating Samsung's subjective fault of maliciously delaying the negotiations.**

In the practice of SEP cross-licensing negotiations, if both parties cannot make any progress after prolonged negotiations, one party may submit the disputes between both parties to a neutral arbitration institution or court for adjudication, which is an effective way to resolve the dispute over SEP cross-licensing negotiations. Therefore, the discussion between both parties on resolving disputes through arbitration is an important basis for judging whether both parties conduct goodwill negotiations. For example, in the European Commission's antitrust investigation procedure on February 3, 2014, Samsung promised the European Commission on the "compulsory enforcement of UMTS SEP" and said that the mandatory negotiation period for licensing negotiations with potential licensees shall be one year and if no agreement could be reached between Samsung and potential licensees during the mandatory negotiation period, each party may submit the related matters to the arbitration institution or court for adjudication. This shows that transnational corporations including Samsung are very familiar with the rules. In this case, the facts of both parties concerning the resolution of disputes by arbitration are as follows:

On May 21, 2014, Huawei sent an e-mail to Samsung saying that if Samsung disagreed with Huawei's patent royalty, Huawei may well consider seeking third-party assistance for patent royalty-related arbitration. Huawei hoped to get Samsung's response. On May 5, 2016, Huawei sent an e-mail to Samsung saying that it had proposed on several occasions to submit disputable FRAND conditions to a third-party arbitration tribunal for neutral arbitration and Samsung had rejected it. Despite having to take legal steps as a last resort, Huawei remained open and willing to discuss any possible and constructive solution with Samsung to reach a FRAND licensing agreement. Huawei hoped Samsung to seriously consider Huawei's proposal or put forward practical proposals. On July 13, 2016, Samsung replied to Huawei's e-mail that Huawei's allegation that Samsung had repeatedly rejected Huawei's proposal to submit the dispute to a third-party arbitration institution for resolution was not true and that, on the contrary, Huawei had never proposed an arbitration proposal acceptable to Samsung and just expressed its intention to submit the dispute for arbitration if the license fee was the main point of disagreement between both parties. On August 8, 2016, Huawei replied to Samsung's e-mail that it had been forced to do so due to Samsung's unwillingness to sign FRAND licensing agreement or determine terms of such licenses through binding arbitration in the past few years. Even today, as reiterated below, Samsung is capable of averting Huawei's unnecessary measures to protect its intellectual property by agreeing to binding procedures such as a binding arbitration to resolve disputes between both parties. At least, Huawei made efforts on May 27, 2013, May 21, 2014 and October 28, 2015 to allow both parties to submit the disputes to a confidential arbitration procedure for settlement and disclose the agreement signed by both parties without prejudice to the confidentiality clauses of agreements signed between each other and other parties. And Huawei made clear in its proposal on October 28, 2015 that it was willing to disclose the specific terms of

Samsung rejected Huawei's arbitration proposal. The above facts showed that Samsung had no willingness to resolve the license negotiation dispute, had the subjective fault of maliciously delaying the negotiations, and clearly violated FRAND principles.

5. **From the perspectives of process of the SEP cross-licensing negotiations between both parties organized by the Court, Samsung failed to propose substantive mediation schemes, maliciously delayed negotiations obviously and had subjective faults.**

From the contact negotiations between Huawei and Samsung to the trial of first instance, SEP cross-licensing negotiations between both parties had lasted for six years and consumed a lot of energy of both parties. In order to promote both parties to reach an agreement, the Court organized both parties to negotiate by mediation with the specific process as follows:

On June 15, 2017, the Court informed both parties to make a quotation of SEP royalty to each other within forty days. During the period specified by the Court, Huawei provided the quotation of its SEP licensing in a timely manner and Samsung failed to give any quotation of its SEP licensing. On August 22, 2017, at the first mediation meeting organized by the Court, the Court inquired why Samsung had not provided the quotation within 40 days and Samsung said it could not make an offer because the precondition for direct quotation was still immature. The Court inquired about the preconditions for Samsung to make a quotation and Samsung said it could not accurately state the preconditions at the mediation meeting. Due to Samsung's failure to make a quotation, no progress was made at the first mediation meeting organized by the Court. After the first mediation meeting, the Court informed both parties of the second mediation meeting on September 12, 2017 and required Samsung to make clear its preconditions for quotation in the form of list before September 12, 2017. In the meantime, the Court explained to both parties that the conduct of both parties in the mediation process organized by the Court would be the factual basis for the Court to judge whether both parties follow FRAND principles during the cross-licensing negotiations. On September 12, 2017, the Court organized the second mediation meeting. Samsung provided its preconditions for quotation at the mediation meeting, including the scope of patent licensing, scope of product licensing, geographical scope of patent licensing, licensing duration, etc. Samsung claimed that it had provided a quotation in compliance with FRAND principles to Huawei based on the Huawei v. IDC case judgment before the litigation dispute concerning the SEP. However, the circumstances at that time and the current situation had undergone major changes, so it needed to renegotiate the prerequisites for licensing. At the mediation meeting, the Court informed Samsung that if it was willing to make a substantive response to Huawei's quotation, it shall do this before September 19, 2017 or else the Court would no longer organize mediation and would make a verdict based on the session and mediation. On September 15, 2017, Samsung applied to extend the substantial response time by one week. In order to promote both parties to reach a SEP licensing agreement, the Court agreed to of Samsung's extension application. On September 22,

Negotiations between Huawei and Samsung started in July 2011 and have continued for more than six years to date; Huawei, the plaintiff, had no obvious fault in the negotiation process and complied with FRAND principles, while during the SEP cross-licensing negotiations between Samsung and Huawei, the plaintiff, Samsung, had obvious faults with respect to procedure and substance and didn't comply with FRAND principles. Under the condition that it was impossible for Huawei, the plaintiff, to seek to solve the SEP cross-licensing problem between both parties by negotiation, arbitration or other methods, Huawei sought for injunctive relief to the Court. The Court organized both parties for conciliation, but during the conciliation process, Samsung still maliciously delayed the negotiation. In view of this, the plaintiff requires such three defendants to cease infringing its patent right, namely to cease exploiting the 4G SEP technology involved in the case, and the Court supports it.

The defendants, Samsung (China) Investment Co., Ltd. and Huizhou Samsung Electronics Co., Ltd., and Samsung Electronics Co., Ltd. are a community of economic interests. Such two defendants infringed the patent right involved in the case of the plaintiff by manufacturing, using, selling and offering for sales jointly and shall bear the legal liability of ceasing their infringement. The plaintiff also accused the foregoing defendants of their import infringement behavior, but it didn't provide evidence, so the Court doesn't support it.

The defendant, Shenzhen Nanfang Yunhe Technology Co., Ltd., infringed the patent right involved in this case of the plaintiff by sales and offering for sales, and it didn't have joint infringement relationship with the defendants, Huizhou Samsung Electronics Co., Ltd. and Samsung (China) Investment Co., Ltd., and shall bear civil liability of ceasing its infringement independently.

Considering that the patent in this case is a 4G SEP, the issue of ceasing infringement is different from that of non-SEP. After the Court's decision to order the defendants to cease their infringement goes to effect, Huawei and Samsung can still conduct cross-licensing negotiations with respect to standard essential patents. That the plaintiff and Samsung reach an agreement on standard essential patent cross-licensing, or Samsung will not implement the decision of ceasing infringement made by the Court with the consent of the plaintiff shall be allowed.

To sum up, pursuant to the provisions of Article VII of the *General Provisions of Civil Law of the People's Republic of China*, Article VI Paragraph I and Article XV Paragraph I Item (I) of *Tort Law of the People's Republic of China*, Article XI Paragraph I of *Patent Law of the People's Republic of China*, Article LXIV Paragraph I of *The Civil Procedure Law of the People's Republic of China*, and after the discussion of the judicial committee of the Court, the Decision is as follows:

I.    The defendants, Samsung (China) Investment Co., Ltd. and Huizhou Samsung Electronics Co., Ltd., shall immediately cease such behavior of infringing patent right No. 201010137731.2 of the plaintiff by manufacturing, sales, offering for sales and

      usage;

II.      The defendant Shenzhen Nanfang Yunhe Technology Co., Ltd. shall immediately cease such behavior of infringing patent right No. 201010137731.2 of the plaintiff by sales and offering for sales;

III.     Other claims of Huawei Technologies Co., Ltd., the plaintiff, shall be rejected.

      The litigation fee of 1,000 yuan for this case shall be borne by the defendants, Samsung (China) Investment Co., Ltd., Huizhou Samsung Electronics Co., Ltd. and Shenzhen Nanfang Yunhe Technology Co., Ltd. together.

      If this Decision is not satisfied, the plaintiff and the defendant can file a pleading to the Court within fifteen days since the Decision is reached, and shall file duplicates according to the number of persons of the opposite party, and appeal to the Guangdong Provincial Higher People's Court.

Chief Judge Zhiguang HU

Judge Jianjun ZHU

Judge Wenquan CHEN

[seal:] Shenzhen Intermediate People's Court of Guangdong Province

January 4, 2018

This copy is true to the original copy through verification

Clerk : Lingjun ZHOU (concurrent)

Clerk : Yinan XU (concurrent)