# EXHIBIT 23
# FILED UNDER SEAL

Contains Confidential Portions
Attorneys' Eyes Only

Page 1

1            UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF CALIFORNIA
2               SAN FRANCISCO DIVISION
3  HUAWEI TECHNOLOGIES CO, LTD,     Case No.
   HUAWEI DEVICE USA, INC., and    16-cv-02787-WHO
4  HUAWEI TECHNOLOGIES USA, INC.,
5            Plaintiffs/Counterclaim Defendants,
6  v.
7  SAMSUNG ELECTRONICS CO., LTD.,
   SAMSUNG RESEARCH AMERICA, INC.,
8            Defendants/Counterclaim Plaintiffs,
9  and
10 SAMSUNG RESEARCH AMERICA, INC.,
11           Defendant,
12 v.
13 HISILICON TECHNOLOGIES CO., LTD.,
14           Counterclaim Defendant.
15 _____
16  **CONTAINS CONFIDENTIAL PORTIONS - ATTORNEYS EYES ONLY**
17    **CONFIDENTIAL PORTION: PAGE 134 BOUND SEPERATELY**
18         VIDEOTAPED DEPOSITION OF ZHI DING
19 DATE:       Thursday, June 7, 2018
20 TIME:       9:18 a.m.
21 LOCATION:   Quinn Emanuel Urquhart & Sullivan
               555 Twin Dolphin Drive
22             Redwood Shores, California
23
24 Reported By: Lynne Ledanois, CSR 6811
25 Job No. 143284

Contains Confidential Portions
Attorneys' Eyes Only

Page 2

```
 1              A P P E A R A N C E S:
 2
 3   On Behalf of the Plaintiff:
 4   SIDLEY AUSTIN
     BY: NATHAN GREENBLATT, ESQ.
 5   1001 Page Mill Road
     Building 1
 6   Palo Alto, California 94304
 7
 8   On Behalf of the Defendant:
 9   QUINN EMANUEL URQUHART & SULLIVAN
     BY: SAM STAKE, ESQ.
10   50 California Street
     San Francisco, California 94111
11
12
13   Also Present:  Marcus Majers, Videographer
14
15
16
17
18
19
20
21
22
23
24
25
```

Contains Confidential Portions
Attorneys' Eyes Only

Page 3

1          I N D E X   O F   E X A M I N A T I O N

2     Examination by:                              Page

3          MR. STAKE                                  7

Contains Confidential Portions
Attorneys' Eyes Only

Page 99

1  Concur IP, was to understand, establish to what
2  extent different companies who own substantial
3  number of self-declared SEP patents may be
4  exaggerating or may be not purposely
5  exaggerating, but maybe may have a different
6  standard essential rate.
7          The landscape was trying to assess
8  industry-wide what is the likelihood that a
9  company's declared SEP portfolio may be
10 essential, at what ratio, as opposed to the
11 overall industry.
12     Q    One aspect of your project in the TCL
13 case was distinguishing between UE and
14 infrastructure patents; is that correct?
15     A    I do not believe there was an effort
16 to distinguishing them.  So in that process --
17 in the landscape analysis that I conducted with
18 the help of Concur IP, we limited the focus on
19 patents with I believe what we call pure UE
20 claims.  I think that was the terminology.
21     Q    Why did you do that?
22     A    That was not my decision to make.
23 Therefore, my report -- in the report I did
24 not -- in my report to the Central District of
25 California, U.S. court, I did not provide --

Contains Confidential Portions
Attorneys' Eyes Only

Page 100

1   explain the rationale for doing so.
2            The standard essentiality analysis
3   that I was involved in in the TCL case, we had a
4   team, and in the beginning stage, Dr. Kakaes,
5   who was the other expert retained by TCL, went
6   to India and worked on site with attorneys
7   representing TCL, and also worked with Concur IP
8   team of engineers and analysts, and they
9   established a -- the scope of the study.
10           And the scope of study was later on
11  deemed to be acceptable to the client for
12  whatever purpose that they used it for.
13           I helped to carry that out after
14  Dr. Kakaes was preoccupied at a later stage with
15  many other reports and other obligations.
16     Q    Why did they limit their study to pure
17  UE patents?
18     A    I cannot -- I don't have an opinion on
19  that.  I think it's best to -- to see whether
20  Dr. Kakaes explained that rationale in setting
21  up the scope of the work.
22           I was informed later, when I joined
23  the team, after the process of what we call a
24  census has been completed.  So we did a census,
25  checked all the standard essential patents that

Contains Confidential Portions
Attorneys' Eyes Only

Page 124

1  how that can be done to assess the quality ratio
2  of each company's SEP portfolio.
3      Q    Did you do any work with Concur IP in
4  connection with the work that you did in the
5  Chinese litigation?
6      A    No, I did not.
7      Q    Now, the work you did with Concur IP
8  in this case, can you take me through what
9  exactly you used from the TCL litigation versus
10 what was new?
11     A    Everything we did in this particular
12 case for Huawei is strictly Huawei's -- I would
13 say Huawei's asset of property.  And everything
14 we did for TCL, it is theirs.  Therefore, you
15 could ask Concur IP engineers how they did it
16 and how we did it.
17          But our basic principle is that every
18 analysis we do for a different client will stay
19 with that client.  We don't reuse information
20 written down from other cases to help another
21 one.
22          So every information we had was new
23 for, say, if Concur was retained by us to do
24 this analysis for Huawei, then we do a new one
25 for Huawei.  Now, to the extent they did an