HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY - SOURCE CODE

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Cal. Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Cal. Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Cal. Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Attorneys for Samsung Electronics Co., Ltd.,
Samsung Electronics America, Inc., and
Samsung Research America, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HUAWEI TECHNOLOGIES CO., LTD., et al., | CASE NO. 16-cv-02787-WHO |
| Plaintiffs, | **DECLARATION OF VIJAY MADISETTI, PH.D. IN SUPPORT OF SAMSUNG'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., et al., | |
| Defendants. | |
| SAMSUNG ELECTRONICS CO., LTD. & SAMSUNG ELECTRONICS AMERICA, INC., | |
| Counterclaim-Plaintiffs, | |
| v. | |
| HUAWEI TECHNOLOGIES CO., LTD, HUAWEI DEVICE USA, INC., HUAWEI TECHNOLOGIES USA, INC. & HISILICON TECHNOLOGIES CO., LTD., | |
| Counterclaim-Defendants. | |

CASE NO. 16-cv-02787-WHO
DECLARATION OF VIJAY MADISETTI, PH.D. IN SUPPORT OF SUMMARY JUDGMENT

I, Vijay Madisetti, Ph.D. declare as follows:

1. I have been engaged as an expert in this action by Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively "Samsung") to review and opine on the non-infringement of U.S. Patent 8,644,239 ("the '239 Patent"). I submit this declaration in support of Samsung's motion for summary judgment. I am being compensated for my time spent on the present matter at a rate of $500 per hour. My compensation is not in any way contingent on my performance, the result of this motion, or any of the issues involved therein. I am also being reimbursed for expenses incurred as a result of activities performed as an expert.

A. **Education, Awards and Employment**

2. I received my Bachelor of Technology (Honors) in Electronics and Electrical Communication Engineering at the Indian Institute of Technology (IIT) in Kharagpur, India in 1984. I obtained my Ph.D. in Electrical Engineering and Computer Science at the University of California, Berkeley, in 1989. I received the Demetri Angelakos Outstanding Graduate Student Award from the University of California, Berkeley and the IEEE/ACM Ira M. Kay Memorial Paper Prize in 1989.

3. I am a tenured Professor in Electrical and Computer Engineering at the Georgia Institute of Technology ("Georgia Tech"). I am knowledgeable and familiar with wireless communications, microprocessor architecture, hardware, RF, cellular networks, ASIC design, computer engineering, embedded systems, digital signal processing, and associated software and firmware design for wireless and telecommunications terminals and base stations. I have created and taught undergraduate and graduate courses in hardware and software design for signal processing and wireless communication circuits at Georgia Tech for the past twenty years. Additionally, I have been active in the areas of wireless communications, digital signal processing, integrated circuit design (analog and digital), software engineering, system-level design methodologies and tools, and software systems. I have been the principal investigator ("PI") or co-PI in several active research programs in these areas, including DARPA's Rapid Prototyping of Application Specific Signal Processors, the State of Georgia's Yamacraw Initiative, the United States Army's Federated Sensors Laboratory Program, and the United States Air Force Electronics

Parts Obsolescence Initiative. I have received an IBM Faculty Award and NSF's Research Initiation Award.

4. I have designed several specialized computer and communication systems over the past two decades at Georgia Tech for tasks such as wireless audio and video processing and protocol processing for portable platforms, such as cell phones and PDAs. I have worked on designing systems that are efficient from performance, size, weight, area, and thermal considerations. I have developed courses and classes for the industry on these topics, and many of my lectures in advanced computer system design, developed under the sponsorship of the United States Department of Defense in the late 1990s, are available for educational use at http://www.eda.org/rassp and have been used by several U.S. and international universities as part of their course work. Some of my recent publications in the area of design of wireless communications systems and associated protocols are listed in **Appendix 2**. I graduated more than 20 Ph.D. students that now work as professors or in technical positions around the world.

5. My experience is relevant to this case. I have been working in the area of wireless communications and signal processing, since the early 1980s. In 1983-84, I designed and prototyped a very low RF frequency (VLF) receiver for submarine communications utilizing MSK (Minimum Shift Key) modulation/demodulation techniques in hardware. In the 2002-2007 timeframe I have developed wireless baseband and protocol stack software and assembly code for a leading telecommunications handset vendor that focused on efficient realization of speech codecs and echo-cancellation and for another in the optimization of their 3G software stack. My work in this regard included creation of software code, and analysis and revision of existing software code. In the early 2000-2001 timeframe, I designed three GSM multiband mobile phones for a leading telecom equipment manufacturer in Asia.

6. I have been an active consultant to industry and various research laboratories (including Massachusetts Institute of Technology Lincoln Labs and Johns Hopkins University Applied Physics Laboratory). My consulting work for MIT Lincoln Labs involved high resolution imaging for defense applications, where I worked in the area of prototyping complex and specialized computing systems. My consulting work for the Johns Hopkins Applied Physics Lab

("APL") mainly involved localization of objects in image fields, where I worked on identifying targets in video and other sensor fields and identifying computer architectures and circuits for power and space-efficient designs.

7. I have founded three companies in the areas of embedded software, military chipsets involving imaging technology, and wireless communications. I have supervised the Ph.D. dissertations of over twenty engineers in the areas of computer engineering, signal processing, communications, rapid prototyping, and system-level design methodology, of which five have resulted in thesis prizes or paper awards. The first of the companies I founded, VP Technologies, offers products in the area of semiconductor integrated circuits, including building computing systems for imaging systems for avionics electronics for the United States Air Force and the United States Navy, since 1995. I remain a director of VP Technologies. The second of these companies, Soft Networks, LLC, offers software for multimedia and wireless computing platforms, including the development of a set-top box for Intel that decodes MPEG-2 video streams, wireless protocol stacks, and imaging codecs for multimedia phones. The technology involved with the design, development, and implementation of the Intel set-top box included parsing the bit streams, decoding communications protocols, extracting image and video data, and then processing for subsequent display or storage. The third of these companies, Elastic Video, uses region of interest based video encoding or decoding for capturing high quality video at very low bit rates, with primary application for wireless video systems.

8. I have authored more than sixty refereed journal publications and around forty peer reviewed conference publications. I have been active in research in the area of wireless and mobile communications and some of my recent peer-reviewed publications in this area include:

(i) Mustafa Turkboylari & Vijay K. Madisetti, Effect of Handoff Delay on the System Performance of TDMA Cellular Systems, Proceedings of the Fourth IEEE Conference on Mobile and Wireless Communications Network 411-15 (Sept. 9-11, 2002);

(ii) Loran A. Jatunov & Vijay K. Madisetti, Computationally-Efficient SNR Estimation for Bandlimited Wideband CDMA Systems, 5 IEEE Transactions on Wireless Communications, no. 12 (2006) at 3480-91; and

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY - SOURCE CODE

(iii) Nimish Radio, Ying Zhang, Mallik Tatipamula & Vijay K. Madisetti, Next Generation Applications on Cellular Networks: Trends, Challenges, and Solutions, 100 Proceedings of the IEEE, no. 4 (April 2012) at 841-54.

9. I have extensive experience analyzing, designing, and testing systems based on 3GPP Technical Specifications, including specifications describing WCDMA and HSDPA technologies. I have been active in the area of location-based services and wireless localization techniques since the mid-1990s, and have authored several papers on location-based services, including, Vijay K. Madisetti et al., Mobile Fleet Application Using SOAP and System on Devices (SyD) Middleware Technologies, Communications, Internet, and Information Technology (2002) at 426-31. I have served as associate editor or on the editorial board for technical journals, including IEEE Transactions on Circuits & Systems II, International Journal in Computer Simulation, and International Journal in VLSI Signal Processing.

10. I have authored or co-authored several books, including VLSI Digital Signal Processors (IEEE Press 1995) and the Digital Signal Processing Handbook (CRC Press, 1998, 2010). I co-authored Quick-Turnaround ASIC Design in VHDL (Kluwer Academic Press 1996) and Platform-Centric Approach to System-on-Chip (SoC) Design (Springer 2004). I am also the editor of several books, including the three-volume DSP Handbook set: Volume 1: Digital Signal Processing Fundamentals, Volume 2: Video, Speech, and Audio Signal Processing and Associated Standards, and Volume 3: Wireless, Networking, Radar, Sensory Array Processing, and Nonlinear Signal Processing, published in 2010 by CRC Press, Boca Raton, Florida. More recently I have authored Cloud Computing (2014, CreateSpace Press), and Internet of Things (2014, CreateSpace), and the book, Cloud Computing, was nominated as a Notable Book of 2014 by the Association of Computing Machinery (ACM) in July 2015.

11. I have been elected a Fellow of the IEEE, for contributions to embedded computing systems. The Fellow is the highest grade of membership of the IEEE, a world professional body consisting of over 300,000 electrical and electronics engineers, with only one-tenth of one percent (0.1%) of the IEEE membership being elected to the Fellow grade each year. Election to Fellow is based upon votes cast by existing Fellows in IEEE. I have also been awarded the 2006 Frederick

Emmons Terman Medal by the American Society of Engineering Education for contributions to Electrical Engineering, including authoring a widely used textbook in the design of VLSI digital signal processors.  I was awarded VHDL International Best Ph.D. Dissertation Advisor Award in 1997 and the NSF RI Award in 1990.  I was Technical Program Chair for both the IEEE MASCOTS in 1994 and the IEEE Workshop on Parallel and Distributed Simulation in 1990.  In 1989 I was recognized with the Ira Kay IEEE/ACM Best Paper Award for Best Paper presented at the IEEE Annual Simulation Symposium.

12. I have submitted approximately thirty invention disclosures and provisional patents over the past ten years.  I am listed on two issued U.S. Patents as the inventor.

13. I am generally familiar with issues involving patents and with determining the meaning of patent claim terms from the perspective of a "person of ordinary skill in the art" ("POSITA") at the time the purported invention was made.  I have completed reports, depositions, and provided testimony regarding communications systems in more than 20 proceedings over the past six years.  About half of the proceedings in which I have testified as an expert were in the area of 2G/3G/4G wireless receiver design, including six to seven in the area of digital physical layer design.  I am familiar with cellular communications and infrastructure equipment in general and in particular the 3GPP cellular architecture and infrastructure.  I am currently Georgia Institute of Technology's representative to the 3GPP and am familiar with many 3G, 4G, and 5G standards and 3GPP specifications.

B. **Materials Considered and Bases for Opinions**

14. As part of my preparation, I reviewed the '239 Patent, its file history, the numerous depositions and other documents produced during discovery that I have reviewed, the parties' P.R. 3-1 and 3-2 disclosures ("Infringement Contentions"), the parties' P.R. 3-3 and 3-4 disclosures ("Invalidity Contentions"), and all documents and source code cited or referenced in the Expert Report of Dr. Veeravalli Regarding Infringement of the '239 Patent ("the '239 Infringement Report").  I base the opinions contained herein on this material and my education and experience. I reserve the right to rely upon any additional information or materials that may be provided to me

or that are relied upon by any of Huawei's experts or witnesses, if called to testify or to give additional opinions regarding this matter.

### C. The Doctrine of Equivalents in Plainly Inapplicable

15. I understand that a patent claim may be literally infringed, or alternatively, infringed under the "doctrine of equivalents." The doctrine of equivalents considers whether an accused product or process is equivalent to the patented invention. To meet a claim limitation under the doctrine of equivalents, the difference between the particular feature of the accused device and the limitation recited in the patent must be "insubstantial."

16. I understand that one way to determine whether the difference between a limitation and a feature is "insubstantial" is by applying the "triple identity test." Under this test, if the limitation and the feature: (1) perform substantially the same function; (2) in substantially the same way; and (3) achieve substantially the same result, then the difference between them may be considered "insubstantial. I understand that equivalency must be established on a limitation-by-limitation basis by particularized evidence and linking argument as to the insubstantiality of the differences between the claimed invention and the accused product or process.

17. Each of independent claims 6 and 17 of the '239 Patent recite obtaining "a group number k of a sequence group allocated by [a/the] system." The Court has construed this phrase to mean "a group number k allocated by the system, where the group number k identifies a sequence group and where the value k is the same throughout the claim." The Accused Products do not practice this limitation.

18. Dr. Veeravalli appears to concede the Accused Products do not literally practice this limitation, but argues instead "'u+1' is equivalent to the group number k under the doctrine of equivalents." '239 Infringement Report at ¶ 254. I disagree. First, I understand Huawei has waived its right to rely on the doctrine of equivalents for this limitation since it was not identified

in Huawei's Infringement Contentions. Second, Dr. Veeravalli trivializes the differences between the claimed "group number k" and "u+1" in the LTE standard. As described above, the group number k must be the same group number k that is allocated by the system and obtained by the UE. The UE never "obtains" the value "u+1" at any point in time when generating reference signals; nor is the value "u+1" ever "allocated" by the system, as required by the Court's construction. For these reasons, Dr. Veeravalli's infringement analysis under the doctrine of equivalents fails.

19. Moreover, the differences between obtaining the group number k (or "u" in the LTE standard) and "u+1" are very substantial. As explained in more detail below, the group number k is used in other limitations in claims 6 and 17 to compute the "basic sequence index" $r_i$. Changing the basic sequence index of a Zadoff-Chu series results in an entirely different set of sequences. A mobile device or UE that sets its basic sequence index to one more than what was allocated to it by the system would not be able to communicate on the system or to the base station. Dr. Veeravalli's assertion that "both the group number k and 'u+1' achieve substantially the same result in that both allow the calculation of sequences dependent on the group number" is incorrect. Using the value "u" as the group number (as required by the LTE standard) would result in a functioning UE that will be able to communicate with the base station (or eNB). Using "u+1" as the group number (as suggested by Dr. Veeravalli) would result in an invalid uplink reference signal and incoherent signal demodulation at the base station. The base station would likely not be able to successfully decode uplink data from this UE. The use of "u+1" instead of "u" as the claimed group number would therefore lead to substantially different results. In my opinion, the use of the value "u+1" instead of the claimed "group number k" produces very different results and is therefore a substantial difference; the doctrine of equivalents cannot apply.

### 2. The Claimed "Sequences" Are Not Zadoff-Chu or Gauss Sequences

20. Asserted claims 7 and 18 of the '239 Patent require that "the sequences correspond to at least one of: Zadoff-Chu sequences and Gauss sequences." Dr. Veeravalli conveniently fails to explain in his report which "sequences" must meet this requirement and instead merely alleges that the Accused Products "use a 'Zadoff-Chu sequence' for the sequences." '239 Infringement Report, ¶ 443.

21. A person of ordinary skill in the art reading dependent claims 7 and 18 would understand that "the sequences" refers back to all of the aforementioned sequences (in the alternative, the claims are indefinite as I explained in my Invalidity Report). But, none of the sequences described in the LTE standard that Dr. Veeravalli is alleging practices the claims are Zadoff-Chu or Gauss[1] sequences. While Dr. Veeravalli opines that the $q^{th}$ root Zadoff-Chu sequence is defined by $x_q(m)$ as shown in Section 5.5.1.1 of 3GPP TS 36.211, the actual "base sequence" given in the equation immediately above this description (which is generated from the root sequence) is *not* a Zadoff-Chu sequence because it appends another extension, and this combination *does not and cannot* result in a Zadoff-Chu sequence of this extended length.

**5.5.1.1   Base sequences of length $3N_{sc}^{RB}$ or larger**

For $M_{sc}^{RS} \geq 3N_{sc}^{RB}$, the base sequence $\bar{r}_{u,v}(0),...,\bar{r}_{u,v}(M_{sc}^{RS}-1)$ is given by

$$\bar{r}_{u,v}(n) = x_q(n \bmod N_{ZC}^{RS}), \quad 0 \leq n < M_{sc}^{RS}$$

where the $q^{th}$ root Zadoff-Chu sequence is defined by

$$x_q(m) = e^{-j\frac{\pi q m(m+1)}{N_{ZC}^{RS}}}, \quad 0 \leq m \leq N_{ZC}^{RS}-1$$

with $q$ given by

$$q = \lfloor \bar{q} + 1/2 \rfloor + v \cdot (-1)^{\lfloor 2\bar{q} \rfloor}$$
$$\bar{q} = N_{ZC}^{RS} \cdot (u+1)/31$$

The length $N_{ZC}^{RS}$ of the Zadoff-Chu sequence is given by the largest prime number such that $N_{ZC}^{RS} < M_{sc}^{RS}$.

---

[1] Dr. Veeravalli does not even allege any of the sequences are Gauss sequences. '239 Infringement Report, ¶ 443. In any event, given the definition provided in the '239 Patent specification (*see* Formula 2), the claimed sequences would not constitute Gauss sequences.

(3GPP TS 36.211, § 5.5.1.1.)

22. For example, if the base sequence was length 36, then $N_{ZC}^{RS}$ would be the largest prime number such that $N_{ZC}^{RS} < M_{sc}^{RS}$ or 31 (the largest prime number less than 36). As shown above, the base sequence of this length would be given by $\bar{r}_{u,v}(n) = x_q(n \mod N_{ZC}^{RS})$, $0 \le n < M_{sc}^{RS}$ where $x_q(m) = e^{-j\frac{\pi q m(m+1)}{N_{ZC}^{RS}}}$, $0 \le m \le N_{ZC}^{RS} - 1$. While the sequence $x_q(0)\ldots x_q(30)$ may be defined as a Zadoff-Chu sequence, the base sequence $x_q(0)\ldots x_q(35)$ will not be a Zadoff-Chu sequence because a cyclic extension of a Zadoff-Chu sequence when appended to a Zadoff-Chu sequence would not result in a Zadoff-Chu sequence, even under Dr. Veeravalli's own definition of a Zadoff-Chu sequence. *See* Equation (1) in paragraph 58 of the '239 Infringement Report. For instance, the following equation would not be satisfied:

> 58. One way to generate CAZAC sequences is through the use of Zadoff-Chu ("ZC") sequences. A length $N$ ZC sequence is defined as follows: For $k = 0, 1, 2, \ldots N - 1$:
>
> $$a_{r,N}(k) = \begin{cases} \exp\left[-\frac{j2\pi r}{N}\left(qk + \frac{k(k+1)}{2}\right)\right] & \text{if } N \text{ is odd} \\ \exp\left[-\frac{j2\pi r}{N}\left(qk + \frac{k^2}{2}\right)\right] & \text{if } N \text{ is even} \end{cases} \quad (1)$$
>
> where $r$ is called the basic or root sequence index, which is smaller than $N$ and relatively prime to $N$, and $q$ is a cyclic shift parameter. For a fixed $r$, different values of $q$ produce different cyclic shifts of the sequence $a_{r,N}(k)$. See '239 patent, 2:17-36.

23. The specification of the '239 patent admits there are embodiments where the sequences are not ZC sequences, for instance, the specification explains that ZC sequences would not be appropriate under circumstances where the sequence length is not a prime number and segmentation or cyclic extension must be used: "[I]n the case of using a Zadoff-Chu sequence, if N is a prime number, each cell selects a different r value, thus ensuring low cross correlation and low interference…. Particularly, when the number of sub-carriers that bear the sequence in the cell is ***not a prime number***, it is necessary to select the sequence whose length is equal to the

prime number around the number of sub-carriers, and the desired sequences are obtained through segmentation or *cyclic extension* of the sequences before being transmitted…. The sequences with a length of the maximum prime number less than the quantity of sub-carriers, namely, the Zadoff-Chu sequences corresponding to the lengths 31, 47 and 59, are selected, and the desired sequences are obtained through cyclic extension of such sequences." '239 Patent at 2:51-65, 11:41-46. In other words, while a portion of the base sequence may be derived from a root Zadoff-Chu sequence, the complete combined sequence as transmitted is not a Zadoff-Chu sequence, as required by the Asserted Claims.

24. Because the claimed base sequences are cyclic extended in the LTE standard and in the source code of the Accused Products, they are not Zadoff-Chu sequences or Gauss sequences; this is a fundamental reason that the Accused Products do not infringe the Asserted Claims. In my opinion, Dr. Veeravalli is arguing, on one hand, that the equations in the Asserted Claims are precise mathematical formulas or procedures that are allegedly novel and useful when used, and then, on the other hand, playing fast and loose with his infringement hypotheses, ignoring or misstating any inconvenient facts.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge. Executed July 3, 2018, in Atlanta, Georgia.

_____
Vijay Madisetti, Ph.D.