# EXHIBIT C

Michael J. Bettinger (SBN 122196)
*mbettinger@sidley.com*
Irene Yang (SBN 245464)
*irene.yang@sidley.com*
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, California 94104
Telephone: (415) 772-1200
Facsimile: (415) 772-7400

*Attorneys for Huawei Technologies Co., Ltd.,*
*Huawei Device USA, Inc., Huawei Technologies*
*USA, Inc., and HiSilicon Technologies Co. Ltd.*

David T. Pritikin (*Pro Hac Vice*)
*dpritikin@sidley.com*
David C. Giardina (*Pro Hac Vice*)
*dgiardina@sidley.com*
Douglas I. Lewis (*Pro Hac Vice*)
*dilewis@sidley.com*
John W. McBride (*Pro Hac Vice*)
*jwmcbride@sidley.com*
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

HUAWEI TECHNOLOGIES CO., LTD.,
HUAWEI DEVICE USA, INC. and
HUAWEI TECHNOLOGIES USA, INC.

      Samsungs/ Counterclaim-Huaweis,

v.

SAMSUNG ELECTRONICS CO., LTD.,
SAMSUNG ELECTRONICS AMERICA,
INC.,

      Huaweis/Counterclaim-Samsungs,

and

SAMSUNG RESEARCH AMERICA,

      Huawei,

v.

HISILICON TECHNOLOGIES CO., LTD.,

      Counterclaim-Huawei.

Case No. 16-cv-02787-WHO

**HUAWEI'S FIRST
SUPPLEMENTAL INVALIDITY
CONTENTIONS**

Huawei Technologies Co., Ltd., Huawei Device USA, Inc., Huawei Technologies USA, Inc. and HiSilicon Technologies Co., Ltd. ("Huawei") by and through its counsel, hereby serves its First Supplemental Invalidity Contentions ("Invalidity Contentions") pursuant to Patent Local Rule 3-3 on Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Research America ("Samsung") regarding: claims 9-14 of U.S. Patent No. 8,228,827 ("the '827 patent"); claims 9-12, 14, 15, 25-28, 30, and 31 of U.S. Patent No. 8,315,195 ("the '195 patent"); claims 28-32 and 38-42 of U.S. Patent No. RE44,105 ("the 'RE105 patent"); claims 1-12 of U.S. Patent No. 8,457,588 ("the '588 patent"); claims 1-14 of U.S. Patent No. 8,509,350 ("the '350 patent"); claims 1-10 of U.S. Patent No. 9,113,419 ("the '419 patent"); claims 1, 3, 11, and 13 of U.S. Patent No. 8,619,726 ("the '726 patent"); claims 9-16 of U.S. Patent No. 8,761,130 ("the '130 patent"); and claims 1-2 and 4-5 of U.S. Patent No. 9,288,825 ("the '825 patent") (collectively the "Asserted Claims" of the "Asserted Patents").

These Invalidity Contentions are served under Pat. L.R. 3-3 and pursuant to the Case Management Order issued by the Court on Sept. 13, 2016 (see D.I. 75 at 1), and the parties' proposed case management schedule filed with the Court on Sept. 6, 2016 (see D.I. 67 at 23). Pursuant to Pat. L.R. 3-4, Huawei also serves herewith the document production accompanying these disclosures.  These contentions set forth Huawei's Invalidity Contentions with respect to the claims currently asserted by Samsung and reflect Huawei's knowledge, thinking, and contentions as of this early date in this action.  Discovery is ongoing and Huawei reserves the right to amend and/or supplement these Invalidity Contentions as the case proceeds pursuant to Pat. L.R. 3-6.

## I.   INVALIDITY CONTENTIONS

The following contentions are served in view of Huawei's current understanding of the Asserted Claims as applied in Samsung's Infringement Contentions, served October 25, 2016, without the benefit of claim construction and with only limited discovery in the present litigation. Claim construction discovery in this action has not yet commenced, and Huawei will provide its claim construction positions at the appropriate time pursuant to the Patent Local Rules and the Court's scheduling order.  Accordingly, these Invalidity Contentions may reflect various potential and alternative positions regarding claim construction and scope.  In many instances, Huawei's

6)    Known work in one field of endeavor may prompt variations of it for use in either the same field or a different one based on design incentives or other market forces if the variations would have been predictable to one of ordinary skill in the art; and

7)    Some teaching, suggestion, or motivation in the prior art that would have led one of ordinary skill to modify the prior art reference or to combine prior art reference teachings to arrive at the claimed invention.

Certain of these rationales are discussed more specifically below. The fact that others are not discussed more specifically should not be interpreted as an admission or concession that it does not apply. To the contrary, the discussion below simply provides more explanation of these specific rationales.

Huawei further contends that the prior art identified in these Invalidity Contentions is evidence of simultaneous or near-simultaneous independent invention by others of the alleged invention as recited in one or more of the Asserted Claims. Huawei reserves its right to rely on the simultaneous or near-simultaneous independent invention by others as further evidence of the obviousness of the Asserted Claims.

Each limitation of the Asserted Claims was well known to those of ordinary skill in the art before the filing dates of the respective non-provisional applications to which each Asserted Patent claims priority, as detailed below and in the attached charts.

The elements recited in the Asserted Claims are mere combinations and modifications of these well-known elements. A person of ordinary skill in the art would be able, and motivated, to improve the existing technology in the same or similar manner by combining or modifying the individual elements that were already known in the art to yield predictable results.

Subject to the foregoing, Huawei identifies below certain exemplary reasons that skilled artisans would have combined elements of the prior art to render obvious the Asserted Claims. The fact that others are not discussed more specifically should not be interpreted as an admission or concession that they do not apply. To the contrary, the discussion below simply provides more explanation of these specific rationales. Moreover, Patent Local Rule 3-3(b) does not require the

disclosure of motivations to combine references and any such motivations to combine provided herein are by of illustration and not limitation, and Huawei reserves the right to provide additional, alternative, and/or revised motivations to combine as discovery in the case continues.  *See Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-CV-03587-WHO, 2015 WL 757575, at *31 (N.D. Cal. Feb. 20, 2015).

### a.    Motivations Identified During Prosecution

Huawei hereby expressly incorporates by reference any statements or reasons set forth by the Examiner during prosecution of the Asserted Patents and related patent applications as to why it would have been obvious to modify or combine references to achieve the limitations of the Asserted Claims.

### b.    Combinations of References Through Citations

Numerous prior art references cite to, discuss, or build upon other references.  Where one reference cites or discusses another reference, a person of ordinary skill in the art would have been motivated to consider their teachings in combination, as they would be understood to provide related teachings in a similar field.

### c.    Obviousness Combination Groups and Further Motivations to Combine

In addition to combinations of references and motivations to combine identified elsewhere herein, including within claim charts, Huawei identifies combinations and motivations to combine based on references grouped by subject matter, in the manner approved by courts applying the Northern District of California Patent Local Rules regarding invalidity contentions.  *See, e.g.*, *Avago Techs. Gen IP PTE Ltd. v. Elan Micro. Corp.*, No. C04-05385 JW (HRL), 2007 U.S. Dist. LEXIS 97464, at *10-11 (N.D. Cal. Mar. 28, 2007) (organizing prior art references into "groups" and identifying combinations as a set of references "and/or" another set of references); *Keithley v. Homestore.com, Inc.*, 553 F. Supp. 2d 1148, 1150 (N.D. Cal. 2008) (following *Avago* – "Apple's grouping method is permissible under the Local Rules").

Huawei identifies references for each patent in groups below, based on common subject matter relevant to the Asserted Claims, for the purpose of disclosing obviousness combinations and

further disclosing motivations to combine.  The absence of a particular reference from a group is not an admission or suggestion that the reference does not disclose any particular claim limitations. To the extent a prior art reference in any of the following groups is not found to disclose the limitations of the Asserted Claims, the claimed features would have been obvious to modify or combine with the reference for at least the reasons below.  Huawei also expects to rely on expert testimony regarding motivation to combine, which will be disclosed at a later appropriate stage of this case.

- All elements of the claim are disclosed in the references with no change in their respective functions, and the combination would have yielded nothing more than predictable results.

- The benefits and relative advantages of the claimed feature were well-known in the art, which a person of ordinary skill in the art would have recognized as a reason to combine these features in a communication system.

- The claimed techniques were obvious design choices in a communication system. These techniques were well-known in the prior art, with a number of predictable and obvious design choices.

- References disclosing these features disclose and reflect the beneficial utility of them, including as cited in the claim charts submitted herewith, thereby motivating consideration and usage of these features in combination with other disclosures.

**(a) '130 Patent**

The Asserted Claims of the '130 Patent are allegedly directed to "control and data signaling in SC-FDMA communication systems" and recite multiplexing and mapping data and control information/signals to the symbols of each sub-frame slot.  Well before the '130 Patent's asserted priority date, standards, submissions, and a variety of other publications relating to this topic were well developed.  Examples of such references are charted in Exhibits H-1 through H-5.  For purposes of these Contentions and to provide exemplary obviousness combinations and motivations to combine, the following groups of references are identified:

| Group | References |
|---|---|
| 3GPP Technical Specifications | 3GPP TS 36.211 v1.0.0-8.7.0; 3GPP TS 36.212 v1.0.0-8.7.0 |
| 3GPP Submissions | R1-062740;R1-070266;  R1-070777;  R1-071000;  R1-072121; R1-072122; R1-072313; R1-072122 |
| Signal Mapping References | R1-062740;  R1-070266;  R1-071000;  R1-072122;  R1-072313; 3GPP TS 36.211 v1.0.0-v8.7.0;  U.S. 7,613,245; U.S. 8,223,854; U.S.  2006/026871;  U.S.  2007/0171995;  U.S.  2008/0090528; U.S.  2008/0200196;  U.S.  2008/0298502;  U.S.  2009/0262699; U.S. 2010/0008435; U.S. Patent Appl. No. 60/890/589 |
| Signal Multiplexing References | R1-062740;  R1-070777;  R1-071000;  R1-072121;  R1-072313; 3GPP TS 36.212 v1.0.0-v8.7.0;  U.S. 7,613,245; U.S. 8,223,854; U.S.  2006/026871;  U.S.  2007/0171995;  U.S.  2008/0090528; U.S.  2008/0200196;  U.S.  2008/0298502;  U.S.  2009/0262699; U.S. 2010/0008435; U.S. Patent Appl. No. 60/890/589 |

**(i)  3GPP Technical Specifications**

The references in the 3GPP Technical Specifications group are promulgated by the 3rd Generation Partnership Project, a collaboration among technical professionals such as the inventors of Samsung's Asserted Patents.  The references in this group are titled "Evolved Universal Terrestrial Radio Access (E-UTRA); Physical Channels and Modulation" (TS 36.211) and "Multiplexing and channel coding" (TS 36.212) and are directed, among other disclosures, to multiplexing and mapping of data and control information/signals in a mobile communication system.  Therefore, a person of ordinary skill would have been motivated to combine the 3GPP Technical Specifications with other prior art references related to the subject matter of the '130 Patent, including but not limited to references in the 3GPP Submissions group, Signal Mapping References group, and/or Signal Multiplexing References group.

Specific evidence of the motivation to combine includes the references and passages therein cited in the claim charts submitted herewith regarding this patent for the applicable claim limitations, which reflect these and additional reasons and motivations to combine and modify that Huawei may rely upon. Huawei also expects to rely on expert testimony regarding motivation to combine, which will be disclosed at a later appropriate stage of this case.

**(ii) 3GPP Submissions**

13

The references in the 3GPP Submissions group were submitted by contributors to 3GPP working groups related to signal multiplexing and mapping in a mobile communication system.  It is common practice for these submissions to be uploaded to a publicly available website to further collaboration among fellow technical professionals.  These submissions are often discussed and presented at working group meetings.  The references in this group are directed to multiplexing and mapping of data and control signals in a mobile communication system and mappers and/or multiplexors associated with such mobile communication system.  Therefore, a person of ordinary skill would have been motivated to combine the 3GPP Submissions with other prior art references related to the subject matter of the '130 Patents, including but not limited to references in the 3GPP Technical Specifications group, Signal Mapping References group, and/or Signal Multiplexing References Group.

Specific evidence of the motivation to combine includes the references and passages therein cited in the claim charts submitted herewith regarding this patent for the applicable claim limitations, which reflect these and additional reasons and motivations to combine and modify that Huawei may rely upon. Huawei also expects to rely on expert testimony regarding motivation to combine, which will be disclosed at a later appropriate stage of this case.

### (iii) Signal Mapping References

The references in the Signal Mapping References group are all related to mapping of data and control information/signals in the symbols of sub-frame slots in a mobile communication system.  Therefore, a person of ordinary skill would have been motivated to combine the Signal Mapping References with other prior art references related to the subject matter of the '130 Patent, including but not limited to references in the 3GPP Technical Specifications group, 3GPP Submissions group, and/or the Signal Multiplexing References group.

Specific evidence of the motivation to combine includes the references and passages therein cited in the claim charts submitted herewith regarding this patent for the applicable claim limitations, which reflect these and additional reasons and motivations to combine and modify that Huawei may rely upon. Huawei also expects to rely on expert testimony regarding motivation to combine, which will be disclosed at a later appropriate stage of this case.

#### (iv) Signal Multiplexing References

The references in the Signal Multiplexing References group are all related to multiplexing of different (*e.g.*, data and control) information/signals in the same symbol of sub-frame slots in a mobile communication system.  Therefore, a person of ordinary skill would have been motivated to combine the Signal Multiplexing References with other prior art references related to the subject matter of the '130 Patent, including but not limited to references in the 3GPP Technical Specifications group, 3GPP Submissions group, and/or the Signal Mapping References group.

Specific evidence of the motivation to combine includes the references and passages therein cited in the claim charts submitted herewith regarding this patent for the applicable claim limitations, which reflect these and additional reasons and motivations to combine and modify that Huawei may rely upon. Huawei also expects to rely on expert testimony regarding motivation to combine, which will be disclosed at a later appropriate stage of this case.

#### (b) '195 Patent

The Asserted Claims of the '195 Patent are allegedly directed to "receiving control channels by restricting a set of the control channels in a wireless communication nsystem" and recite receiving and determining a set of control channel candidates based on a UE identifier and monitoring one or more control channel candidates from the determined set.  Well before the '195 Patent's asserted priority date, standards, submissions, and a variety of other publications relating to this topic were well developed.  Examples of such references are charted in Exhibits B-1 through B-7.  For purposes of these Contentions and to provide exemplary obviousness combinations and motivations to combine, the following groups of references are identified:

| Group | References |
|---|---|
| 3GPP Technical Specifications | 3GPP TS 25.304 v5.9.0; 3GPP TS 36.211 v0.3.1-8.7.0; 3GPP TS 36.213 v0.2.1-8.7.0; 3GPP TS 36.300 v.1.0.0-8.9.0 |
| 3GPP Submissions | R1-060855; R1-061433; R1-070921; R1-071216; R1-071218; R1-071221; R1-071223; R1-071353; R1-071820; R1-081101; |
| Control Channel Selection References | 3GPP TS 36.213 v0.2.1-8.7.0; R1-060855; R1-061433; R1-071216; R1-071218; R1-071221; R1-071223; R1-081101; U.S. 5,408,684; U.S. 7,643,454; U.S. 7,912,471; U.S. 8,433,331; U.S. 2007/0058523; WO 2005/112486 |

15

| Group | References |
|---|---|
| Control Channel Signaling References | 3GPP TS 36.211 v.0.3.1-8.7.0; 3GPP TS 36.213 v0.2.1-8.7.0; 3GPP TS 36.300 v1.0.0-8.9.0; R1-060855;  R1-070921; R1-071216; R1-071218; R1-071221; R1-071223; R1-071353; R1-071820; R1-081101; U.S. 7,912,471; U.S. 8,433,331; U.S. 2007/0058523; U.S. 2008/0232307; U.S. 2009/0262699; WO 2005/112486 |

### (i)  3GPP Technical Specifications

The references in the 3GPP Technical Specifications group are promulgated by the 3rd Generation Partnership Project, a collaboration among technical professionals such as the inventors of Samsung's Asserted Patents.  The references in this group are titled "User Equipment (UE) procedures in idle mode and procedures for cell reselection in connected mode" (TS 25.304), "Evolved Universal Terrestrial Radio Access (E-UTRA); Physical Channels and Modulation" (TS 36.211), "Evolved Universal Terrestrial Radio Access (E-UTRA); Physical layer procedures" (TS 36.213), and "Evolved Universal Terrestrial Radio Access (E-UTRA) and Evolved Universal Terrestrial Radio Access Network (E-UTRAN); Overall description" (TS 36.300) and are directed, among other disclosures, to selection and monitoring of control channels in a mobile communication system.  Therefore, a person of ordinary skill would have been motivated to combine the 3GPP Technical Specifications with other prior art references related to the subject matter of the '195 Patent, including but not limited to references in the 3GPP Submissions group, Control Channel Selection References group, and/or Control Channel Signaling References group.

Specific evidence of the motivation to combine includes the references and passages therein cited in the claim charts submitted herewith regarding this patent for the applicable claim limitations, which reflect these and additional reasons and motivations to combine and modify that Huawei may rely upon. Huawei also expects to rely on expert testimony regarding motivation to combine, which will be disclosed at a later appropriate stage of this case.

### (ii) 3GPP Submissions

The references in the 3GPP Submissions group were submitted by contributors to 3GPP working groups related to signal multiplexing and mapping in a mobile communication system.  It is common practice for these submissions to be uploaded to a publicly available website to further

collaboration among fellow technical professionals.  These submissions are often discussed and presented at working group meetings.  The references in this group are directed to selection and monitoring of control channels in a mobile communication system.  Therefore, a person of ordinary skill would have been motivated to combine the 3GPP Submissions with other prior art references related to the subject matter of the '195 Patents, including but not limited to references in the 3GPP Technical Specifications group, Control Channel Selection References group, and/or Control Channel Signaling References group.

Specific evidence of the motivation to combine includes the references and passages therein cited in the claim charts submitted herewith regarding this patent for the applicable claim limitations, which reflect these and additional reasons and motivations to combine and modify that Huawei may rely upon. Huawei also expects to rely on expert testimony regarding motivation to combine, which will be disclosed at a later appropriate stage of this case.

### (iii) Control Channel Selection References

The references in the Control Channel Selection References group are all related to selection of control channels in a mobile communication system.  Therefore, a person of ordinary skill would have been motivated to combine the Control Channel Selection References with other prior art references related to the subject matter of the '195 Patent, including but not limited to references in the 3GPP Technical Specifications group, 3GPP Submissions group, and/or the Control Channel Signaling References group.

Specific evidence of the motivation to combine includes the references and passages therein cited in the claim charts submitted herewith regarding this patent for the applicable claim limitations, which reflect these and additional reasons and motivations to combine and modify that Huawei may rely upon. Huawei also expects to rely on expert testimony regarding motivation to combine, which will be disclosed at a later appropriate stage of this case.

### (iv) Control Channel Signaling References

The references in the Control Channel Signaling References group are all related to transmission and reception of one or more control channels in a mobile communication system. Therefore, a person of ordinary skill would have been motivated to combine the Control Channel

17

Signaling References with other prior art references related to the subject matter of the '195 Patent, including but not limited to references in the 3GPP Technical Specifications group, 3GPP Submissions group, and/or the Control Channel Selection References group.

Specific evidence of the motivation to combine includes the references and passages therein cited in the claim charts submitted herewith regarding this patent for the applicable claim limitations, which reflect these and additional reasons and motivations to combine and modify that Huawei may rely upon. Huawei also expects to rely on expert testimony regarding motivation to combine, which will be disclosed at a later appropriate stage of this case.

### (c) '588 Patent

The Asserted Claims of the '588 Patent are allegedly directed to "controlling an active time period during a Discontinuous Reception (DRX) operation in a User Equipment (UE) in a mobile communication system" and recite timers associated with a mobile communication system. Numerous prior art references disclose timers associated with a mobile communication system and controlling an active time period during a DRX operation in a mobile communication system. Well before the '588 Patent's asserted priority date, standards, submissions, and a variety of publications relating to this topic were well developed. Examples of such references are charted in Exhibits D-1 through D-11. For purposes of these Contentions and to provide exemplary obviousness combinations and motivations to combine, the following groups of references are identified:

| Group | References |
|---|---|
| 3GPP Technical Specifications | 3GPP TS 25.212 v5.4.0; 3GPP TS 36.300 v8.8.0; 3GPP TS 36.321 v8.8.0 |
| 3GPP Submissions | R2-060023; R2-060591 |
| Data Transmission References | 3GPP TS 25.212 v5.4.0; 3GPP TS 36.300 v8.8.0; 3GPP TS 36.321 v8.8.0; R2-060023; US 7,826,818; US 5,752,202; US 5,604,744; US 6,871,074; US 2002/0172178 A1; US 2005/0085279 A1; US 2007/0160027 A1 |
| Power Conservation References | 3GPP TS 25.212 v5.4.0; 3GPP TS 36.300 v8.8.0; 3GPP TS 36.321 v8.8.0; US 7,826,818; US 5,752,202; US 2002/0172178 A1; US 2007/0160027 A1 |
| Timer References | 3GPP TS 25.212 v5.4.0; 3GPP TS 36.300 v8.8.0; 3GPP TS 36.321 v8.8.0; R2-060591; R2-060023; US 7,826,818; US 5,752,202; US 5,604,744; US 6,871,074; US 2002/0172178 A1; |

| Group | References |
|---|---|
| | US 2005/0085279 A1; US 2007/0160027 A1 |

**(i)  3GPP Technical Specifications**

The references in the 3GPP Technical Specifications group are promulgated by the 3rd Generation Partnership Project, a collaboration among technical professionals such as the inventors of Samsung's Asserted Patents.  The references in this group are titled "Multiplexing and channel coding (FDD)," (TS 25.212), "Evolved Universal Terrestrial Radio Access (E-UTRA) and Evolved Universal Terrestrial Radio Access Network (E-UTRAN); Overall description" (TS 36.300), and "Evolved Universal Terrestrial Radio Access (E-UTRA); Medium Access Control (MAC) protocol specification" and are directed, among other disclosures, to DRX operations in a mobile communication system.  Therefore, a person of ordinary skill would have been motivated to combine the 3GPP Technical Specifications with other prior art references related to the subject matter of the '588 Patent, including but not limited to references in the 3GPP Submissions group, Data Transmission References group, Power Conservation References group, and/or the Timer References group.

Specific evidence of the motivation to combine includes the references and passages therein cited in the claim charts submitted herewith regarding this patent for the applicable claim limitations, which reflect these and additional reasons and motivations to combine and modify that Huawei may rely upon. Huawei also expects to rely on expert testimony regarding motivation to combine, which will be disclosed at a later appropriate stage of this case.

**(ii) 3GPP Submissions**

The references in the 3GPP Submissions group were submitted by contributors to 3GPP working groups related to DRX operations in a mobile communication system.  It is common practice for these submissions to be uploaded to a publicly available website to further collaboration among fellow technical professionals.  These submissions are often discussed and presented at working group meetings.  The references in this group are directed to DRX operations in a mobile communication system and timers associated with a mobile communication system.  Therefore, a

person of ordinary skill would have been motivated to combine the 3GPP Submissions with other prior art references related to the subject matter of the '588 Patents, including but not limited to references in the 3GPP Technical Specifications group, Data Transmission References group, Power Conservation References group, and/or the Timer References group.

Specific evidence of the motivation to combine includes the references and passages therein cited in the claim charts submitted herewith regarding this patent for the applicable claim limitations, which reflect these and additional reasons and motivations to combine and modify that Huawei may rely upon. Huawei also expects to rely on expert testimony regarding motivation to combine, which will be disclosed at a later appropriate stage of this case.

### (iii) Data Transmission References

The references in the Data Transmission References group are all related to transmitting data in a mobile communication system.  Therefore, a person of ordinary skill would have been motivated to combine the Data Transmission References with other prior art references related to the subject matter of the '588 Patent, including but not limited to references in the 3GPP Technical Specifications group, 3GPP Submissions group, Power Conservation References group, and/or the Timer References group.

Specific evidence of the motivation to combine includes the references and passages therein cited in the claim charts submitted herewith regarding this patent for the applicable claim limitations, which reflect these and additional reasons and motivations to combine and modify that Huawei may rely upon. Huawei also expects to rely on expert testimony regarding motivation to combine, which will be disclosed at a later appropriate stage of this case.

### (iv) Power Conservation References

The references in the Power Conservation References group are all related to conservation of power in the context of a mobile communication system.  Therefore, a person of ordinary skill would have been motivated to combine the Power Conservation References with other prior art references related to the subject matter of the '588 Patent, including but not limited to references in the 3GPP Technical Specifications group, 3GPP Submissions group, Data Transmission References group,

and/or the Timer References group.

Specific evidence of the motivation to combine includes the references and passages therein cited in the claim charts submitted herewith regarding this patent for the applicable claim limitations, which reflect these and additional reasons and motivations to combine and modify that Huawei may rely upon. Huawei also expects to rely on expert testimony regarding motivation to combine, which will be disclosed at a later appropriate stage of this case.

### (v) Timer References

The references in the Timer References group are all related to timers associated with a mobile communication system. Therefore, a person of ordinary skill would have been motivated to combine the Timer References with other prior art references related to the subject matter of the '588 Patent, including but not limited to references in the 3GPP Technical Specifications group, 3GPP Submissions group, Data Transmission References group, and/or the Power Conservation References group.

Specific evidence of the motivation to combine includes the references and passages therein cited in the claim charts submitted herewith regarding this patent for the applicable claim limitations, which reflect these and additional reasons and motivations to combine and modify that Huawei may rely upon. Huawei also expects to rely on expert testimony regarding motivation to combine, which will be disclosed at a later appropriate stage of this case.

### (d) '726 Patent

The Asserted Claims of the '726 Patent are allegedly directed to Hybrid Automatic Repeat reQuests (HARQs) in a mobile communication system. The claims recite receiving a number of HARQ processes, receiving data according to persistent resource allocation interval information, calculating a HARQ process ID, and associating a HARQ process with the HARQ process ID. Essentially, they are directed to quality control and scheduling resources in a mobile communication system. Understanding the limited bandwidth constraints in cellular networks, one of ordinary skill would have been motivated to reduce the quantity and frequency of information transmitted across those networks. To do so, one of ordinary skill would have utilized existing techniques to achieve this goal including, but not limited to, determining or calculating certain data based on known

information.  As a result, the determined or calculated data need not be transmitted, thereby reducing network constraints.   Numerous prior art references disclose this functionality in a mobile communication system.  Well before the '726 Patent's asserted priority date, standards, submissions, and a variety of publications relating to this topic were well developed.  Examples of such references are charted in Exhibits G-1 through G-10.   For purposes of these Contentions and to provide exemplary obviousness combinations and motivations to combine, the following groups of references are identified:

| Group | References |
| --- | --- |
| 3GPP Technical Specifications | 3GPP TS 25.814 v7.1.0; 3GPP TS 36.331 v8.7.0; 3GPP TS 36.321 v8.7.0 |
| 3GPP Submissions | R2-071460; R2-072400; R2-071598; R2-071368; R2-075153; R1-072883 |
| Scheduling References | 3GPP TS 25.814 v7.1.0; 3GPP TS 36.331 v8.7.0; 3GPP TS 36.321 v8.7.0; US 2005/0250454 A1; US 8,995,383; R2-071460; R2-072400; R2-071598; R2-071368; R2-075153; R1-072883 |
| Quality Control References | 3GPP TS 25.814 v7.1.0; 3GPP TS 36.331 v8.7.0; 3GPP TS 36.321 v8.7.0; US 2005/0250454 A1; US 8,995,383; R2-072400; R2-071368; R2-075153; R1-072883 |

### (i)  3GPP Technical Specifications

The references in the 3GPP Technical Specifications group are promulgated by the 3rd Generation Partnership Project, a collaboration among technical professionals such as the inventors of Samsung's Asserted Patents.  The references in this group are directed, among other disclosures, to quality control and scheduling resources in a mobile communication system including through HARQ processes.  Therefore, a person of ordinary skill would have been motivated to combine the 3GPP Technical Specifications with other prior art references related to the subject matter of the '726 Patent, including but not limited to references in the 3GPP Submissions group, Scheduling References group, and/or the Quality Control References group.

Specific evidence of the motivation to combine includes the references and passages therein cited in the claim charts submitted herewith regarding this patent for the applicable claim limitations, which reflect these and additional reasons and motivations to combine and modify that Huawei may

rely upon. Huawei also expects to rely on expert testimony regarding motivation to combine, which will be disclosed at a later appropriate stage of this case.

### (ii) 3GPP Submissions

The references in the 3GPP Submissions group were submitted by contributors to 3GPP working groups related to quality control and scheduling resources in a mobile communication system including through HARQ processes.  It is common practice for these submissions to be uploaded to a publicly available website to further collaboration among fellow technical professionals.  These submissions are often discussed and presented at working group meetings.  The references in this group are directed to quality control and scheduling resources in a mobile communication system including through HARQ processes.  Therefore, a person of ordinary skill would have been motivated to combine the 3GPP Submissions with other prior art references related to the subject matter of the '726 Patent, including but not limited to references in the 3GPP Technical Specifications group, Scheduling References group, and/or the Quality Control References group.

Specific evidence of the motivation to combine includes the references and passages therein cited in the claim charts submitted herewith regarding this patent for the applicable claim limitations, which reflect these and additional reasons and motivations to combine and modify that Huawei may rely upon. Huawei also expects to rely on expert testimony regarding motivation to combine, which will be disclosed at a later appropriate stage of this case.

### (iii) Scheduling References

The references in the Scheduling References group are all related to scheduling resources in a mobile communication system including through HARQ processes.  Therefore, a person of ordinary skill would have been motivated to combine the Scheduling References with other prior art references related to the subject matter of the '726 Patent, including but not limited to references in the 3GPP Technical Specifications group, 3GPP Submissions group, and/or the Quality Control References group.

Specific evidence of the motivation to combine includes the references and passages therein cited in the claim charts submitted herewith regarding this patent for the applicable claim limitations.

which reflect these and additional reasons and motivations to combine and modify that Huawei may rely upon. Huawei also expects to rely on expert testimony regarding motivation to combine, which will be disclosed at a later appropriate stage of this case.

### (iv) Quality Control References

The references in the Quality Control References group are all related to quality control in a mobile communication system including through HARQ processes. Therefore, a person of ordinary skill would have been motivated to combine the Scheduling References with other prior art references related to the subject matter of the '726 Patent, including but not limited to references in the 3GPP Technical Specifications group, 3GPP Submissions group, and/or the Scheduling References group.

Specific evidence of the motivation to combine includes the references and passages therein cited in the claim charts submitted herewith regarding this patent for the applicable claim limitations, which reflect these and additional reasons and motivations to combine and modify that Huawei may rely upon. Huawei also expects to rely on expert testimony regarding motivation to combine, which will be disclosed at a later appropriate stage of this case.

### (e) '825 Patent

The Asserted Claims of the '825 Patent are allegedly directed to communications on a shared channel in a mobile communication system. The claims recite sending a message, waiting a predetermined time before checking for a response, and if a response is received then sending another message. One of ordinary skill would have understood that conflict resolution was well understood and addressed by prior art. In many existing prior art references, a node, such as a mobile network server, is determined to resolve such conflicts following a defined procedure. One of ordinary skill would have understood that, when one node in a network resolves a conflict, it is advantageous for the remaining nodes to adjust their procedures and timing to permit that conflict resolution determination to be applied uniformly. Therefore, one of skill would have been motivated to incorporate, for instance, a delay duration to assist uniform application of that conflict resolution. Numerous prior art references disclose this, and other, functionality in a mobile communication system. Well before the '825 Patent's asserted priority date, standards, submissions, and a variety of

publications relating to this topic were well developed.  Examples of such references are charted in Exhibits I-1 through I-10.  For purposes of these Contentions and to provide exemplary obviousness combinations and motivations to combine, the following groups of references are identified:

| Group | References |
|---|---|
| 3GPP Technical Specifications | 3GPP TS 25.211 v6.4.0; 3GPP TS 25.211 v6.6.0; 3GPP TS 25.214 v6.4.0; 3GPP TS 25.214 v6.7.0; 3GPP TS 25.331 v6.4.0; 3GPP TS 25.331 v6.7.0; 3GPP TS 36.321 v8.7.0; 3GPP TS 36.331 v8.7.0; 3GPP TS 36.213 v8.7.0 |
| 3GPP Submissions | R2-052889; R2-052502 |
| WiMAX References | IEEE Std 802.16-2004 |
| Shared Channel References | US 2004/0005887 A1; US 7,463,891; CN 1497882A; WO 2004/100403 A1; WO 2004/100598; 3GPP TS 25.211 v6.4.0; 3GPP TS 25.211 v6.6.0; 3GPP TS 25.214 v6.4.0; 3GPP TS 25.214 v6.7.0; 3GPP TS 25.331 v6.4.0; 3GPP TS 25.331 v6.7.0; 3GPP TS 36.321 v8.7.0; 3GPP TS 36.331 v8.7.0; 3GPP TS 36.213 v8.7.0; IEEE Std 802.16-2004; R2-052889; R2-052502 |

### (i)  3GPP Technical Specifications

The references in the 3GPP Technical Specifications group are promulgated by the 3rd Generation Partnership Project, a collaboration among technical professionals such as the inventors of Samsung's Asserted Patents.  The references in this group are directed, among other disclosures, to communications on a shared channel in a mobile communication system.  Therefore, a person of ordinary skill would have been motivated to combine the 3GPP Technical Specifications with other prior art references related to the subject matter of the '825 Patent, including but not limited to references in the 3GPP Submissions group, WiMAX References group, and/or the Shared Channel References group.

Specific evidence of the motivation to combine includes the references and passages therein cited in the claim charts submitted herewith regarding this patent for the applicable claim limitations, which reflect these and additional reasons and motivations to combine and modify that Huawei may rely upon. Huawei also expects to rely on expert testimony regarding motivation to combine, which will be disclosed at a later appropriate stage of this case.

### (i)  3GPP Submissions

25

is not disclosed in the specification with respect to what "associating" means or how it is performed, and claims 1 and 11 are invalid under 35 USC 112(1) based on this phrase as well. As a result, dependent claims 3 and 13 also fail to comply with 35 USC § 112(1) because they depend from invalid independent claims.

### (e) '825 Patent

The Asserted Claims of the '825 patent are invalid for failure to comply with 35 USC § 112(1) based on the terms "UE-ID" and "without checking a downlink channel" in independent claims 1 and 4, which are not disclosed in or taught by the specification. As a result, the specification also does not teach one of skill in the art how to make and use the full scope of the claimed invention without undue experimentation. Moreover, dependent claims 2 and 5 are invalid for the same reasons, as they depend on independent claims 1 and 4.

### (f) '827 Patent

The phrase "UE-specific control information addressable by the C-RNTI" (claims 9, 12) fails to comply with the requirements of 35 U.S.C. § 112(1) because the specification does not disclose the C-RNTI addressing UE-specific control information or disclose that this is possible. As a result, the specification also does not teach one of skill in the art how to make and use the full scope of the claimed invention without undue experimentation. Dependent claims 10, 11, 13, and 14 are invalid for the same reasons that claims 9 and 12 are, since they depend on invalid independent claims 9 and 12.

### (g) '350/'419 Patent

Independent Asserted Claims 1 and 8 of the '350 Patent and Asserted Claims 1 and 6 of the '419 Patent are invalid for failing to provide an adequate written description and for lack of enablement. Because all of the other Asserted Claims (2-7 and 9-14 for the '350; 2-5 and 7-10 for the '419) for these two patents depend from these claims, all of the Asserted Claims of the '350 and '419 are invalid. Specifically, Asserted Claims 1 and 8 of the '350 Patent claim the determination of "a cell-specific ratio … based on the cell-specific parameter and a number of cell-specific antenna ports configured in the base station." Similarly, Asserted Claims 1 and 6 of the '419 Patent claim the determination of "a ratio … based on the signaling parameter and a number

of cell-specific antenna ports configured in the base station."  The specifications fail to describe this claim language in sufficient detail and the specifications fail to teach one of ordinary skill how to make or use these claims without undue experimentation.  For example, the specifications fail to describe or teach what is meant by an antenna port or how an antenna port is cell-specific.  Moreover, the specifications fail to describe or teach how the antenna ports are "configured" in the base station.  Nor do the specifications sufficiently describe or teach what is meant by a "cell-specific parameter" or a "cell-specific ratio."

Other asserted claims are also invalid for failing to provide an adequate written description and lack of enablement.  For example, the specifications fail to to describe or teach how a ratio is "acquired" (Asserted Claims 5 and 12 of the '350 Patent and Asserted Claims 4 and 9 of the '419 Patent as well as their dependent Asserted Claims), or what constitutes an "antenna unit" (Asserted Claim 8 of the '350 Patent and Asserted Claim 6 of the '419 Patent as well as their dependent Asserted Claims) or "power setting unit" (Asserted Claim 8 of the '350 Patent and Asserted Claim 6 of the '419 Patent as well as their dependent Asserted Claims).

### (h) RE105 Patent

Asserted Claims 28 and 38 are invalid for a failure to comply with the written description requirement and for lack of enablement.  Because all of the other Asserted Claims for this patent (claims 29-32, 39-42) depend from these claims, all of the Asserted Claims of the '105 Patent are invalid for failing to provide adequate written description and for lack of enablement.  Specifically, claim 28 requires "performing an inverse Fourier Transform (IFT) operation on at least one of (i) the FT pre-coded symbols based on the first set of subcarriers and (ii) the non-FT pre-coded modulation control symbols based on the second set of subcarriers to generate an output signal."  Claim 38 is substantially similar.  The specification neither describes how all of the claimed possibilities can occur, nor teaches one of ordinary skill how to accomplish the claimed possibilities without undue experimentation.  The alleged invention describes the use of an IFT before transmitting a signal that is divided into numerous subcarriers.  However, the specification does not explain how either the first or the second set of subcarriers can go through an IFT

74

operation operation without performing IFT on the other set of subcarriers and still be transmitted, which the claim language allows as a possibility.  Therefore, these claims are invalid.

### 3.   § 112(b): Indefiniteness

To be valid, a patent claim must "particularly point [] out and distinctly claim[] the subject matter which the inventor . . . regards as the invention."  35 U.S.C. § 112(b).  The Supreme Court has held that the proper standard for indefiniteness is as follows: "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124, 189 L. Ed. 2d 37 (2014).  The Supreme Court further explained that "a patent must be precise enough to afford clear notice of what is claimed, thereby apprising the public of what is still open to them."  *Id*. at 2129.

Indeed, to uphold claims—such as Samsung's—that do not clearly define the scope of the invention would thwart the ultimate purpose of the patent laws: to "promote the Progress of Science and useful Arts."  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 730 (2002) (quoting U.S. Const. art. I, § 8, cl. 8).  As the Supreme Court explained in *Festo*, a patent claim "is a property right; and like any property right, its boundaries should be clear.  This clarity is essential to promote progress, because it enables efficient investment in innovation.  A patent holder should know what he owns, and the public should know what he does not."  *Id.*  The identified claim terms of Samsung's Asserted Claims "fall[] within the innovation-discouraging 'zone of uncertainty' against which the Supreme Court has warned."  *Interval Licensing LLC v. AOL, Inc.*, 766 F. 3d 1364, 1374 (Fed. Cir. 2014), quoting *Nautilus*, 134 S. Ct. at 2130 (internal quotations and brackets omitted).

The Asserted Claims suffer from similar defects that render them indefinite, at least under Samsung's apparent view of the claim scope.  Samsung's Infringement Contentions indicate that Samsung may interpret the claims in a manner that further renders them indefinite, particularly in view of the absence of sufficient supporting disclosure in the intrinsic evidence.

In view of the foregoing, Huawei identifies its indefiniteness contentions in the Section 112 invalidity claim charts submitted herewith, which identify the grounds of invalidity for indefiniteness pursuant to Patent Rule 3-3(d).   Huawei provides these contentions without the benefit of upcoming claim construction discovery and other ongoing discovery.   Huawei may provide proposed claim constructions to be adopted  in the alternative to the extent certain claim terms and elements are not determined to be indefinite.   Where a certain claim term or limitation in one claim is identified as indefinite, Huawei contends that the same claim term or limitation is indefinite in every instance the term or limitation is recited throughout the Asserted Claims.   Where Huawei has identified a phrase as indefinite, Huawei also contends that the subparts of the phrase are indefinite within the context recited in the claim.

Huawei further discusses the indefiniteness of the claimed terms and limitations as follows, providing further explanation of the indefiniteness grounds disclosed in the accompanying Section 112 invalidity claim charts.

### (a) '130 Patent

Claim 9 is invalid under Section 112 as indefinite for lacking for structural support in the specification.   Claim 9 requires "a mapper for mapping a reference signal to a middle symbol in the slot, mapping the data information to remaining symbols in the slot that are not used to map the reference signal, and mapping the acknowledgement information to first symbols among the remaining symbols in the slot."   This element utilizes the means plus function claiming form. Means plus function claim elements are limited to the structure disclosed in the specification as performing the claimed function.   *Aristocrat*, 521 F.3d at 1331.   If no such structure is disclosed, then the claim is invalid as indefinite.   *Id.*   Here, the specification does not disclose any structure corresponding to the function of "mapping a reference signal to a middle symbol in the slot, mapping the data information to remaining symbols in the slot that are not used to map the reference signal, and mapping the acknowledgement information to first symbols among the remaining symbols in the slot."

### (b) '195 Patent

Claim 25 is invalid under Section 112 as indefinite for lacking for structural support in the specification.   Claim 25 requires "a set determiner for determining a set of control channel candidates based on an identifier (ID) of the terminal."   This element utilizes the means plus function claiming form.   Means plus function claim elements are limited to the structure disclosed in the specification as performing the claimed function.   *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1331 (Fed. Cir. 2008).   If no such structure is disclosed, then the claim is invalid as indefinite.   *Id.*   Here, the '195 patent specification identifies no structure for performing the function of "determining a set of control channel candidates based on an identifier (ID) of the terminal."

### (c) '588 Patent

Claims 1 and 7 of the '588 patent are indefinite under pre-AIA 35 U.S.C. § 112(2) based on the phrase "a first timer to monitor control data via a shared control channel."   There is no disclosure in the '588 patent that sheds light on how a "first timer" can "monitor control data," and under *Nautilus v. Biosig Instruments, Inc.*, a claim read in light of the intrinsic evidence must "inform those skilled in the art about the scope of the invention with reasonable certainty."   134 S. Ct. 2120, 2129 (2014).   There is no informative intrinsic evidence, and one of skill in the art reading this claim element as written would not be reasonably certain what is meant by "a first timer to monitor control data via a shared control channel."   One of ordinary skill in the art would not understand that a *timer* is able to monitor or control anything; rather, a timer simply keeps track of the passage of time.   To the extent that Samsung argues otherwise, claims 1-5 and 7-11 are also indefinite based on the term "timer," as one of ordinary skill would not understand the scope of the invention, or the meaning of a "timer," with reasonable certainty if a timer were interpreted to monitor control data or control an active time period.

To the extent the preamble is construed to be limiting[1], claims 1 and 7 of the '588 patent are also indefinite based on the phrase "controlling an active time period during a Discontinuous

---

[1] The applicant amended the language of the preamble to overcome prior art during prosecution.  *See*

Reception (DRX) operation."   One of ordinary skill in the art, reading this claim, would not understand what it means to "control[] an active time period during a Discontinuous Reception (DRX) operation" because the claim discloses only starting and restarting timers, and does not disclose how timers or the starting or restarting of timers controls an active time period.

Claims 1 and 7 are also indefinite under the *Nautilus* standard because one of ordinary skill would not be informed about the scope of the inention with reasonable certainty based on the term "user data to be transmitted."   The specification of the '588 patent discloses downlink operations from the base station (BS) to the user equipment (UE) with respect to control data associated with user data.   However, the term "user data to be transmitted" within claims 1 and 7 indicates both a BS to UE downlink operation as well as a UE to BS uplink operation for control data associated with user data.

Claims 1 and 7 are indefinite based on the phrase "when the control data indicating a new transmission of associated user data is received via the shared control channel."

Claims 1, 4, 7, and 10 are also indefinite based on the term "via."   As used in these claims, one of ordinary skill would not understand what is occurring "via" the shared control channel: starting of a first timer, monitoring control data, transmitting user data, or some other activity.   The intrinsic evidence does not provide clarity sufficient to overcome the *Nautilus* requirement.

Claims 2-6 and 8-12 are indefinite for the reasons discussed above because they depend on independent claims 1 and 7, respectively, that are invalid for failure to comply with the requirements of Section 112(2).

### (d) '726 Patent

 Claim 11 of the '726 patent is invalid under section 112 as indefinite because it lacks structural support in the specification.  Claim 11 requires both "a controller that calculates a HARQ process IDentifier (ID) using the number of HARQ processes of the persistent resource allocation" and "a receiver that receives a number of HARQ processes of a persistent resource allocation and persistent resource allocation interval information, and receives data according to the persistent

---

Pat. App. No. 11/729032, 2012-05-03 Applicant Argument, p.2.

resource allocation interval information." These elements are both means-plus-function claim elements, which are limited to the structure disclosed in the patent specification as performing the claimed function. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347 (Fed. Cir. 2015) ("If the patentee fails to disclose adequate corresponding structure, the claim is indefinite."). If there is no such structure, the claim is indefinite. *Id.* at 1351-52. The '726 patent specification identifies no structure or algorithm for performing the function of "calculate[ing] a HARQ process IDentifier (ID) using the number of HARQ processes of the persistent resource allocation." It also does not identify any structure or algorithm for performing the function of "receiv[ing] a number of HARQ processes of a persistent resource allocation and persistent resource allocation interval information" and "receiv[ing] data according to the persistent resource allocation interval information." It is not sufficient to point to a "controller" or a "receiver" with no corresponding meaningful disclosure of structure for the controller or receiver in the specification – such nonce words have been held repeatedly to not provide the requisite structure. *See, e.g., Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) ("module"); *GoDaddy.com, LLC v. RPost Commc'ns Ltd.*, No. CV-14-00126-PHX-JAT, 2016 WL 212676, at *56 (D. Ariz. Jan. 19, 2016) ("processor"); *HTC Corp. v. IPCom GmbH & Co.*, 667 F.3d 1270, 1278 (Fed. Cir. 2012) ("arrangement for reactivating").

Under *Nautilus*, one of ordinary skill would not understand the scope of the '726 Asserted Claims with reasonable certainty. Independent claims 1 and 11 both contain the phrase "a number of HARQ processes," but it would be unclear to one of ordinary skill even in view of the specification whether this is referring to the number or the HARQ processes themselves. One of ordinary skill would also not know with reasonable certainty what is meant by "calculating a HARQ process IDentifier (ID) using a number of HARQ processes of the persistent resource allocation" (claim 1) or "a controller that calculates a HARQ process IDentifier (ID) using the number of HARQ processes of the persistent resource allocation" (claim 11) since there is no disclosure of the calculation in the intrinsic evidence. Claims 1 and 11 are also indefinite based on the phrase "associating a HARQ process with the calculated HARQ process ID." One of ordinary skill, reading the claim in light of the intrinsic evidence, would not know with reasonable certainty what it means to "associate" a HARQ process with a "calculated HARQ process ID." Finally, the

terms "persistent" and "persistent resource allocation" also render claims 1 and 11 of the invalid for indefiniteness because one of ordinary skill would not understand with reasonable certainty what it means to be "persistent" or to have "persistent resource allocation."

Dependent claims 3 and 13 are indefinite for the same reasons that claims 1 and 11, the independent claims from which they depend, are indefinite.

### (e) '825 Patent

The phrases "predetermined delay duration," "without checking the downlink channel," "valid period," "UE-ID," and "equal to" as found in claims 1 and 4 of the '825 patent cause these claims to be invalid for indefiniteness. One of ordinary skill reading the claim in view of the intrinsic evidence would not understand the scope of the claims with reasonable certainty, as required under *Nautilus*.

The phrase "receiving system information indicating a group of identification(ID)s" renders claim 1 of the '825 patent indefinite. One of ordinary skill reading the claim in view of the intrinsic evidence would not understand with reasonable certainty what this phrase means. Similarly, claim 4 of the '825 patent is indefinite due to the phrase "a receiver configured to receive system information indicating a group of identification(ID)s." In addition to the reason identified for claim 1 of the '825 patent, claim 4 is indefinite because this element is written in means-plus-function format. There is no structure disclosed in the specification as performing the claimed function of "receiv[ing] system information indicating a group of identification(ID)s" and a "receiver" on its own does not provide any structure. *See, e.g., Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) ("module"); *GoDaddy.com, LLC v. RPost Commc'ns Ltd.*, No. CV-14-00126-PHX-JAT, 2016 WL 212676, at *56 (D. Ariz. Jan. 19, 2016) ("processor"); *HTC Corp. v. IPCom GmbH & Co.*, 667 F.3d 1270, 1278 (Fed. Cir. 2012) ("arrangement for reactivating"). Similarly, "a first uplink signal corresponding to the selected first ID" in claim 1 is indefinite because one of ordinary skill reading the claim in view of the intrinsic evidence would not understand with reasonable certainty what this phrase means.

Dependent claims 2 and 5 are also invalid because they depend from independent claims 1 and 4 that are indefinite under 35 USC § 112(2).

Office.  While the application for the '195 patent was pending in the Patent Office, the inventors and the prosecuting attorneys or agents failed to cite the R1-071216 prior art to the Patent Office, despite citing other contributions to the same group from the same meeting and from the same time period, in particular, R1-071223, Rl-070787, and Rl-071003.  Samsung was not an author of two of these references, demonstrating how the inventors and their patent agents monitored 3GPP contributions and particularly those from meeting #48.

On information and belief, the inventors knowingly and deliberately withheld the R1-071216 contribution from the Patent Office and thereby intended to deceive the  Patent Office by withholding this information.  The inventors knew or should have known of their responsibility to disclose prior art to the Patent Office.  The inventors knew or should have known about the R1-071216 contribution and its relevant features.  Recognizing its importance, the inventors cited prior art from the same time period and from the same 3GPP meeting to the Patent Office.  The inventors nonetheless did not disclose the R1-071216 contribution to the Patent Office.  The inventors failure to disclose the R1-071216 contribution was done with an intent to deceive the Patent Office to induce issuance of the claims of the '195 patent.  Accordingly, the '195 patent is unenforceable due to the above-described inequitable conduct.

## III.    OTHER PRIOR ART

In addition to the prior art references that Huawei has specifically discussed in these Invalidity Contentions, Huawei identifies each reference produced and cited in the accompanying document production of the same date.  All of these references are relevant prior art, and Huawei reserves the right to rely on them based on Huawei's continuing research and analysis of the Asserted Claims, accused instrumentalities, and the prior art.

## IV.    DOCUMENT PRODUCTION ACCOMPANYING INVALIDITY CONTENTIONS

Pursuant to Patent L.R. 3-4(a), Huawei source code was available for inspection, beginning January 6, 2017, for its accused products containing HiSilicon baseband processors.

Pursuant to Patent L.R. 3-4(b), Huawei is producing prior arts at bates numbers HW_Samsung_00248815 to HW_Samsung_00257658.

Dated:  September 22, 2017

SIDLEY AUSTIN LLP


*/s/ Irene Yang*
Irene Yang


Michael J. Bettinger (SBN 122196)
*mbettinger@sidley.com*
Irene Yang (SBN 245464)
*irene.yang@sidley.com*
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, California  94104
Telephone:  (415) 772-1200
Facsimile:   (415) 772-7400

*Attorneys for Huawei Technologies Co., Ltd.,*
*Huawei Device USA, Inc., Huawei Technologies*
*USA, Inc., and HiSilicon Technologies Co. Ltd.*

David T. Pritikin (*Pro Hac Vice*)
*dpritikin@sidley.com*
David C. Giardina (*Pro Hac Vice*)
*dgiardina@sidley.com*
Douglas I. Lewis (*Pro Hac Vice*)
*dilewis@sidley.com*
John W. McBride (*Pro Hac Vice*)
*jwmcbride@sidley.com*
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois  60603
Telephone:  (312) 853-7000
Facsimile:   (312) 853-7036

117

# Appendix A

Patents / Published Patent Applications:

| Inventor Name | Patent Number | Country | Issue Date | Prior Art Date | § 102 |
|---|---|---|---|---|---|
| Okada et al. | 7,170,850 | US | 1/30/2007 | 1/22/2002 | e |
| Chayat | 7,295,626 | US | 9/13/2007 | 3/8/2002 | e |
| Yamagata | 7,388,922 | US | 6/17/2008 | 3/23/2005 | e |
| Ma et al. | 7,929,407 | US | 4/19/2011 | 3/30/2005 | e |
| Costa et al. | 2005/0018782 | US | 1/27/2005 | 9/16/2002 | a, e |
| Huh et al. | 2005/0094550 | US | 5/5/2005 | 11/1/2004 | e |
| Palanki et al. | 2006/0203932 | US | 9/14/2006 | 3/7/2005 | e |
| Banister et al. | 7,454,181 | US | 9/18/2008 | 6/28/2004 | e |
| Sang et al. | 7,839,830 | US | 11/23/2010 | 4/11/2006 | e |
| Takeuchi et al. | 7,995,520 | US | 8/9/2011 | 8/23/2007 | e |
| Fernandez-Corbaton et al. | 8,391,389 | US | 3/5/2013 | 11/6/2006 | e |
| Song et al. | 2007/0060145 | US | 7/19/2006 | 3/15/2007 | a, e |
| Yunoki et al. | 5,408,684 | US | 4/18/1995 | 9/1/1993 | a, b, e |
| Guethaus et al. | 7,643,454 | US | 1/5/2010 | 6/7/2004 | a, b, e |
| Kodikara Patabandi et al. | 7,912,471 | US | 3/22/2011 | 1/11/2006 | a, b, e |
| Kodikara Patabandi et al. | 8,433,331 | US | 4/30/2013 | 1/11/2006 | a, b, e |
| Cho et al. | 2007/0058523 | US | 3/15/2007 | 9/15/2006 | a, e |
| Pi et al. | 60/919620 | US | 9/25/2008 | 3/23/2007 | e |
| Pi et al. | 2008/0232307 | US | 9/25/2008 | 3/23/2007 | e |
| Wengerter et al. | 2009/0262699 | US | 10/22/2009 | 2/7/2007 | e |
| Ghosh et al. | 2005/112486 | PCT | 11/24/2005 | 11/24/2005 | a, b, e |
| Cho et al. | 7,613,245 | US | 11/3/2009 | 5/3/2006 | e |
| Ghosh et al. | 8,233,854 | US | 7/17/2012 | 9/25/2007 | e |
| Cho et al. | 2006/0262871 | US | 11/23/2006 | 5/3/2006 | a, b, e |
| Muharemovic et al. | 2007/0171995 | US | 7/26/2007 | 1/25/2007 | e |
| Malladi | 2008/0090528 | US | 4/17/2008 | 7/5/2007 | e |
| Muharemovic et al. | 60/890589 | US | 8/21/2008 | 2/19/2007 | e |
| Muharemovic et al. | 2008/0200196 | US | 8/21/2008 | 2/19/2007 | e |
| Xu et al. | 2008/0298502 | US | 12/4/2008 | 5/18/2007 | e |
| Wengerter et al. | 2009/0262699 | US | 10/22/2009 | 2/7/2007 | e |
| Jung et al. | 2010/0008435 | US | 1/14/2010 | 9/28/2006 | e |
| Sebire | 2005/0250454 | USA | N/A (Pub: November 10, 2005) | 5/6/2004 | (a), (b) |
| Torsner | 8995383 | USA | 42094 | 3/19/2007 | (e) |
| Bahrenburg | 2004/0005887 | USA | N/A (Pub: January 8, 2004) | 1/4/2002 | (e) |
| Yi | 7463891 | USA | 39791 | 11/18/2014 | (e) |
| Chen | CN149788 | China | 38126 | | (a), (b) |
| Koo | WO 2004/100403 | WO | 38309 | | (a), (b) |
| Granzow | 2004/100598 | WO | 38309 | | (a), (b) |
| Ranta-Aho | 8897276 | USA | 41958 | 39107 | (e) |
| Lee | 2010/0067495 | USA | N/A (Pub: March 18, 2010) | 39020 | (e) |
| Damnjanovic | 8169957 | USA | 41030 | 39118 | (e) |
| Kitazoe | 8374150 | USA | 41317 | 38993 | (e) |
| Fischer | 8526986 | USA | 41520 | 39120 | (e) |
| Vujcic | 8559362 | USA | 41562 | 38797 | (e) |
| Damnjanovic | 8599706 | USA | 41611 | 38993 | (e) |

**Publications:**

| Title | Date | Author | Publisher | § 102 |
|---|---|---|---|---|
| IEEE 802.11a-1999 | 1999 | IEEE | IEEE | a, b |
| IEEE 802.16-2004 | 10/1/2004 | IEEE | IEEE | a |
| 3GPP TR 25.892 v0.2.0 | 3/31/2003 | 3GPP | 3GPP | a, b |
| 3GPP TS 36.211 v8.7.0 | 6/8/2009 | 3GPP | 3GPP | a |
| 3GPP TS 36.213 v8.7.0 | 6/8/2009 | 3GPP | 3GPP | a |
| "Feasibility of multi-bandwidth transmissions" | 10/30/2004 | Falconer et al. | WINNER and Information Society Technologies | a |
| "Proposal of Single Carrier OFDM Technique with Adaptive Modulation Method" | 2003 | Kobayashi et al. | IEEE | a, b |
| "A Low Complexity Transmitter Structure for OFDM-FDMA Uplink Systems" | 2002 | Galda et al. | IEEE | a, b |
| R1-050245 | 3/24-25/2005; 3/31/2005 | Motorola | Motorola; 3GPP | a, g(2) |
| R1-050260 | 3/31/2005 | Siemens AG | 3GPP | a |
| 3GPP TS 36.211 v8.1.0 | 12/18/2007 | 3GPP | 3GPP | a |
| 3GPP TS 36.213 v8.1.0 | 12/18/2007 | 3GPP | 3GPP | a |
| 3GPP TS 36.213 v8.3.0 | 6/18/2008 | 3GPP | 3GPP | a |
| 3GPP TS 36.213 v8.7.0 | 6/8/2009 | 3GPP | 3GPP | a |
| R1-070088 | 1/10/2007 | NTT DoCoMo, Fujitsu, Mitsubishi Electric, NEC, Panasonic, and Sharp | 3GPP | a |
| R1-070883 | 2/6/2007 | NEC Group | 3GPP | a |
| R1-074890 | 11/6/2007 | Nokia Siemens Network | 3GPP | a |
| R1-074970 | 10/30/2007 | Qualcomm Europe | 3GPP | a |
| R1-075077 | 11/13/2007 | Numerous authors | 3GPP | a |
| R1-080530 | 1/19/2008 | Ericsson | 3GPP | a |
| R1-081134 | 2/15/2008 | Ericsson | 3GPP | a |
| R1-081600 | 4/9/2008 | Nokia | 3GPP | a |
| R1-082785 | 8/12/2008 | Sharp | 3GPP | a |
| R1-060855 | 3/27/2006 | Texas Instruments | 3GPP | a |
| R1-061433 | 5/8/2006 | Texas Instruments | 3GPP | a |
| R1-070921 | 2/12/2007 | LG Electronics | 3GPP | a |
| R1-071216 | 2/14/2007 | Ericsson, Qualcomm, Nokia, Motorola, Panasonic, Huawei, ZTE | 3GPP | a |
| R1-071218 | 2/14/2007 | Ericsson, Qualcomm, Nokia, Texas Instruments, NTT DoCoMo, Motorola, Panasonic, Siemens, Samsung, Nortel, ZTE | 3GPP | a |
| R1-071221 | 2/14/2007 | Ericsson, Qualcomm, Nokia, Texas Instruments, NTT DoCoMo, Motorola, Panasonic, Siemens, Samsung, Nortel, ZTE, LG Electronics, Huawei, Alcatel-Lucent, Freescale | 3GPP | a |
| R1-071223 | 2/14/2007 | Ericsson, Qualcomm, Nokia, Texas Instruments, NTT DoCoMo, Motorola, Panasonic, Siemens, Samsung, Nortel, ZTE, LG Electronics, Huawei, Alcatel-Lucent, Freescale | 3GPP | a |
| R1-071353 | 3/26/2007 | Motorola | 3GPP | a |
| R1-071820 | 3/26/2007 | Ericsson, Samsung, LGE, Panasonic, Nokia, NEC, Huawei, Nortel, Qualcomm, Motorola, NTT DoCoMo, Mitsubishi, Alcatel-Lucent | | a |
| R1-081101 | 2/11/2008 | Ericsson | 3GPP | a |

**Publications:**

| | | | | |
|---|---|---|---|---|
| 3GPP TS 25.304 v5.9.0 | 10/14/2005 | 3GPP | 3GPP | a |
| 3GPP TS 36.211 v0.3.1 | 2/6/2007 | 3GPP | 3GPP | a |
| 3GPP TS 36.211 v1.0.0 | 3/19/2007 | 3GPP | 3GPP | a |
| 3GPP TS 36.211 v8.7.0 | 6/8/2009 | 3GPP | 3GPP | a |
| 3GPP TS 36.213 v0.2.1 | 2/7/2007 | 3GPP | 3GPP | a |
| 3GPP TS 36.213 v1.0.0 | 3/19/2007 | 3GPP | 3GPP | a |
| 3GPP TS 36.213 v8.7.0 | 6/8/2009 | 3GPP | 3GPP | a |
| 3GPP TS 36.300 v0.9.0 | 3/4/2007 | 3GPP | 3GPP | a |
| 3GPP TS 36.300 v1.0.0 | 3/19/2007 | 3GPP | 3GPP | a |
| 3GPP TS 36.300 v8.0.0 | 4/6/2007 | 3GPP | 3GPP | a |
| 3GPP TS 36.300 v8.9.0 | 6/18/2009 | 3GPP | 3GPP | a |
| 3GPP2 Mac Layer for UMB Air Interface | 2/15/2007 | 3GPP2 | 3GPP2 | a |
| R1-062740 | 10/9/2006 | NTT DoCoMo, Ericsson, Fujitsu, Mitsubishi Electric, NEC, Panasonic, Sharp, Toshiba Corporation | 3GPP | a |
| R1-070266 | 1/15/2007 | Texas Instruments | 3GPP | a |
| R1-070777 | 2/12/2007 | Motorola | 3GPP | a |
| R1-071000 | 2/12/2007 | Nokia | 3GPP | a |
| R1-072121 | 5/7/2007 | NEC Group, NTT DoCoMo | 3GPP | a |
| R1-072122 | 5/7/2007 | NEC Group | 3GPP | a |
| R1-072313 | 5/7/2007 | Nokia Siemens Networks, Nokia | 3GPP | a |
| 3GPP TS 36.211 v1.0.0 | 3/19/2007 | 3GPP | 3GPP | a |
| 3GPP TS 36.211 v8.7.0 | 6/8/2009 | 3GPP | 3GPP | a |
| 3GPP TS 36.212 v1.0.0 | 3/19/2007 | 3GPP | 3GPP | a |
| 3GPP TS 36.212 v8.7.0 | 6/8/2009 | 3GPP | 3GPP | a |
| AAPA R2-060023 | 1/13/2006 | 3GPP | 3GPP | (a), (b) |
| R2-060591 | 2/17/2006 | 3GPP | 3GPP | (a), (b) |
| 3GPP TS 25.212 V5.4.0 | March, 2003 | | 3GPP | (a), (b) |
| 3GPP TS 36.300 V8.8.0 | 4/3/2009 | 3GPP | 3GPP | (a), (b) |
| 3GPP TS 36.321 V.8.8.0 | 1/5/2010 | 3GPP | 3GPP | (a), (b) |
| Wimax 802.16-2004 | 10/1/2004 | IEEE | IEEE | (a), (b), (g) |
| 25211-660 | 9/28/2005 | 3GPP | 3GPP | (a), (b), (g) |
| 25331-670 | 10/14/2005 | 3GPP | 3GPP | (a), (b), (g) |
| 25214-670 | 9/29/2005 | 3GPP | 3GPP | (a), (b), (g) |
| R2-052889 | 11/11/2005 | NTT DoCoMo, Inc. | 3GPP TSG-RAN WG2 Meeting #49 | (a), (b), (g) |
| R2-052502 | 10/5/2005 | Siemens | 3GPP TSG RAN WG2 #48bis | (a), (b) |
| 3GPP TS 36.321 V.8.7.0 | 9/28/2009 | 3GPP | 3GPP | (a), (b), (g) |
| 3GPP TS 36.331 V.8.7.0 | 9/29/2009 | 3GPP | 3GPP | (a), (b), (g) |
| 3GPP TS 36.213 V. 8.7.0 | 6/8/2009 | 3GPP | 3GPP | (a), (b), (g) |
| R2-071460 | 3/30/2007 | Nokia | 3GPP TSG-RAN WG2 Meeting #57bis | (a) (b) |
| R2-072400 | June, 2007 | Nokia | 3GPP TSG-RAN WG2 Meeting#58bis | (a), (b) |
| R2-071598 | March, 2007 | Nokia Siemens Networks | 3GPP TRS-RAN2 Meeting #57bis | (a), (b) |
| R2-071368 | March, 2007 | Alcatel-Lucent | 3GPP TRS-RAN2 Meeting #57bis | (a), (b) |
| R2-075153 | November, 2007 | Nortel | 3GPP TSG RAN WG2 #60 | (a), (b) |
| 3GPP TR 25.814 V7.1.0 | September, 2006 | 3GPP | 3GPP | (a), (b), (g) |
| R1-072883 | June, 2007 | LG Electronics | 3GPP TSG RAN WG1 #49bis | (a), (b) |
| 3GPP TS 36.331 V.8.7.0 | 9/29/2009 | 3GPP | 3GPP | (a), (b), (g) |
| 3GPP TS 25.212 vresion 6.7.0 Release 6 | December, 2015 | 3GPP | 3GPP | (a), (b), (g) |
| R2-060905 | March, 2006 | 3GPP | 3GPP | (a), (b) |
| R1-070399 | 1/19/2007 | 3GPP | 3GPP | (a), (b) |
| R2-063324 | November, 2006 | 3GPP | 3GPP | (a), (b) |

**Publications:**

| | | | | | |
|---|---|---|---|---|---|
| R2-070770 | | 2/9/2007 | 3GPP | 3GPP | (a), (b) |
| R1-061901 | June, 2006 | | 3GPP | 3GPP | (a), (b) |
| 3GPP TS 36.321 V8.8.0 | | 1/5/2010 | 3GPP | 3GPP | (a), (b) |
| 3GPP TS 36.212 V8.7.0 | | 6/8/2009 | 3GPP | 3GPP | (a), (b) |
| 3GPP TS 36.300 V.8.8.0 | | 4/3/2009 | 3GPP | 3GPP | (a), (b) |