1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Charles K. Verhoeven (Bar No. 170151)
2  charlesverhoeven@quinnemanuel.com
   David A. Perlson (Bar No. 209502)
3  davidperlson@quinnemanuel.com
   50 California Street, 22nd Floor
4  San Francisco, California 94111
   Telephone:  (415) 875-6600
5  Facsimile:  (415) 875-6700

6  Kevin P.B. Johnson (Bar No. 177129)
   kevinjohnson@quinnemanuel.com
7  Victoria F. Maroulis (Bar No. 202603)
   victoriamaroulis@quinnemanuel.com
8  555 Twin Dolphin Drive, 5th Floor
   Redwood Shores, California  94065
9  Telephone:  (650) 801-5000
   Facsimile:  (650) 801-5100
10
   Attorneys for Samsung Electronics Co., Ltd.,
11 Samsung Electronics America, Inc., and
   Samsung Research America, Inc.
12
                    UNITED STATES DISTRICT COURT
13
                   NORTHERN DISTRICT OF CALIFORNIA
14
                       SAN FRANCISCO DIVISION
15

| | |
|---|---|
| 16 HUAWEI TECHNOLOGIES CO., LTD., et al.,<br><br>17　　　　　　Plaintiffs,<br><br>18　　　v.<br><br>19 SAMSUNG ELECTRONICS CO., LTD., et al.,<br><br>20　　　　　　Defendants. | CASE NO.  16-cv-02787-WHO<br><br>**SAMSUNG'S MOTION TO PARTIALLY EXCLUDE THE REPORT AND TESTIMONY OF JORGE PADILLA, MICHAEL J. LASINSKI, AND CHARLES L. JACKSON AND STRIKE THE REBUTTAL OPINIONS OF JACQUES DELISLE AND ZHI DING** |
| 21 SAMSUNG ELECTRONICS CO., LTD. & SAMSUNG ELECTRONICS AMERICA, INC.<br><br>22　　　　　　Counterclaim-Plaintiffs,<br><br>23<br><br>24　　　v.<br><br>25 HUAWEI TECHNOLOGIES CO., LTD., HUAWEI DEVICE USA, INC., HUAWEI<br>26 TECHNOLOGIES USA, INC., & HISILICON TECHNOLOGIES CO., LTD.<br><br>27　　　　　　Counterclaim-Defendants. | **Hearing Date: August 8, 2018**<br>**Time: 2:00 p.m.**<br>**Place: Courtroom 2, 17th Floor**<br>**Judge: Hon. William H. Orrick**<br><br>**PUBLIC REDACTED VERSION** |

28

TO PLAINTIFFS AND COUNTERCLAIM-DEFENDANTS HUAWEI TECHNOLOGIES CO., LTD., HUAWEI DEVICE USA, INC., HUAWEI TECHNOLOGIES USA, INC., AND HISILICON TECHNOLOGIES CO., LTD., AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that on August 8, 2018 at 2:00 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable William H. Orrick, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendants and Counterclaim-Plaintiffs Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Research America, Inc. (collectively "Samsung") respectfully request under Rule 702 of the Federal Rules of Evidence that this Court partially exclude the reports and testimony of Jorge Padilla, Michael J. Lasinski, and Charles L. Jackson proffered by Huawei Technologies Co., Ltd., Huawei Device USA, Inc., Huawei Technologies USA, Inc., and HiSilicon Technologies Co., Ltd. (collectively "Huawei").  Samsung also respectfully requests under Rule 26(a)(2)(D)(ii) of the Federal Rules of Civil Procedure that this Court strike certain rebuttal opinions offered by Jacques deLisle and Zhi Ding.

This motion is based on this notice of motion and supporting memorandum of points and authorities, the supporting declaration of Sam Stake, the accompanying exhibits, reply briefing in further support of this motion and supporting declarations and accompanying exhibits, as well as other written or oral argument that Samsung may present to the Court.

DATED:  July 3, 2018                    Respectfully submitted,

                                        QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP

                                        By   */s/ Victoria F. Maroulis*
                                           Charles K. Verhoeven
                                           Kevin P.B. Johnson
                                           Victoria F. Maroulis
                                           Thomas D. Pease
                                           David A. Perlson

                                           *Attorneys for Samsung Electronics Co., Ltd.,*
                                           *Samsung Electronics America, Inc., and*
                                           *Samsung Research America, Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................1

APPLICABLE LAW ..........................................................................................................4

ARGUMENT .......................................................................................................................5

I.      HUAWEI'S EXPERTS USE UNRELIABLE METHODOLOGIES AND OFFER
        OPINIONS BEYOND THEIR QUALIFICATIONS ................................................5

        A.      ███████████████████████████████████
                ████████████████████████.................................................5

        B.      Mr. Lasinski and Dr. Padilla Provide Improper Opinions and Analyses
                Outside of Their Areas of Purported Expertise ...........................................8

        C.      Dr. Padilla's Attempt To Improperly Bolster Mr. Lasinski's Reports Should
                Be Excluded ...............................................................................................10

        D.      Dr. Jackson's Essentiality Database is Unreliable ....................................11

        E.      Mr. Lasinski's "Indicators of Portfolio Strength" Are Unreliable ...........14

                1.      ████████████████████████████.................15

                2.      Mr. Lasinski's Reliance on "Global Deemed SEPs" Is Unreliable............19

II.     HUAWEI'S EXPERTS OFFER IMPROPER EXPERT REBUTTAL
        TESTIMONY ......................................................................................................20

        A.      Dr. deLisle's Opinions Do Not Contradict or Rebut Any of Samsung's
                Experts' Opinions........................................................................................20

        B.      Dr. Ding's Improper "Rebuttal" Opinions Should Be Stricken ...............21

III.    CONCLUSION ..................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

<u>**Page**</u>

<u>Cases</u>

*Apple Inc. v. Samsung Elecs. Co.*,
    2012 WL 1672493 (N.D. Cal. May 14, 2012) ................................................................ 8

*Biotechnology Value Fund, L.P. v. Celera Corp.*,
    2015 WL 138168 (N.D. Cal. 2015) ................................................................ 6, 9

*BladeRoom Grp. Ltd. v. Facebook, Inc.*,
    2018 WL 1611835 (N.D. Cal. Apr. 3, 2018) ................................................................ 4, 19

*Clear-View Techs, Inc. v. Rasnick*,
    2015 WL 3509384 (N.D. Cal. June 3, 2015) ................................................................ 10

*Creach v. Spokane Cnty.*,
    2013 WL 12177099 (E.D. Wa. May 2, 2013) ................................................................ 11

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) ................................................................ 4, 14

*Eveler v. Ford Motor Co.*,
    2017 WL 3382460 (E.D. La. Aug. 7, 2017) ................................................................ 13, 14

*Feduniak v. Old Republic Nat'l Title Co.*,
    No. 13-CV-02060-BLF, 2015 WL 1969369 (N.D. Cal. May 1, 2015) ................................................................ 19

*Gonzalez v. Valenzuela*,
    2001 WL 36387147 (C.D. Cal. Nov. 26, 2001) ................................................................ 10

*Henricksen v. ConocoPhillips Co.*,
    605 F. Supp. 2d 1142 (E.D. Wash. 2009) ................................................................ 5

*Huawei Techs. Co. v. T-Mobile US, Inc.*,
    2017 WL 3954108 (E.D. Tex. Aug. 29, 2017) ................................................................ 8

*Humphreys v. Regents of Univ. of California*,
    2006 WL 1867713 (N.D. Cal. July 6, 2006) ................................................................ 3

*In re ConAgra Foods, Inc.*,
    302 F.R.D. 537 (C.D. Cal. 2014) ................................................................ 5

*In re Imperial Credit Indus., Inc. Sec. Litig*,
    252 F. Supp. 2d 1005 (C.D. Cal. 2003) ................................................................ 8

*Interwoven, Inc. v. Vertical Computer Sys.*,
    2013 WL 3786633 (N.D. Cal. July 18, 2013) ................................................................ 7

*Johns Bayer Corp.*,
    2013 WL 1498965 (S.D. Cal. Apr. 10, 2013) ................................................................ 10

*K&N Engineering, Inc. v. Spectre Performance*,
    2011 WL 13131157 (C.D. Cal. May 12, 2011) ................................................................ 10, 13

*Kass v. Kass,*
  91 N.Y.2d 554 (1998) ............................................................................................ 7

*Krueger v. Wyeth, Inc.,*
  No. 03CV2496-JAH MDD, 2012 WL 3637276 (S.D. Cal. Aug. 22, 2012) ...................... 21

*Matthew Enter., Inc. v. Chrysler Grp. LLC,*
  2016 WL 4272430 (N.D. Cal. Aug. 15, 2016) ................................................... 5, 20

*Media Sport & Arts s.r.l. v. Kinney Shoe Corp.,*
  1999 WL 946354 (S.D.N.Y. Oct. 19, 1999) ......................................................... 10

*Mesfun v. Hagos,*
  2005 WL 5956612 (C.D. Cal. Feb. 16, 2005) ........................................................ 7

*Microsoft Corp. v. Motorola, Inc.,*
  2013 WL 4008822 (W.D. Wash. Aug. 5, 2013) ................................................. 8, 10

*Moussouris v. Microsoft Corp.,*
  2018 WL 2124019 (W.D. Wash. Apr. 25, 2018) ................................................... 15

*Mullins v. Premier Nutrition Corp.,*
  178 F. Supp. 3d 867 (N.D. Cal. 2016) ............................................................... 9

*Nationwide Transport Finance v. Cass Info. Sys., Inc.,*
  523 F.3d 1051 (9th Cir. 2008) ....................................................................... 10

*Nelson v. Matrix Initiatives,*
  2012 WL 3627399 (N.D. Cal. Aug. 21, 2012) ................................................... 7, 20

*Novadaq Techs., Inc. v. Karl Storz GmbH & Co. K.G.,*
  2015 WL 9266497 (N.D. Cal. Dec. 18, 2015) ....................................................... 5

*Pac. Gas & Elec. Co. v. Zuckerman,*
  189 Cal.App.3d 1113 (1987) ........................................................................ 7, 20

*Pooshs v. Phillip Morris USA, Inc.,*
  287 F.R.D. 543 (N.D. Cal. 2012) .................................................................... 4

*Schron v. Troutman Sanders LLP,*
  20 N.Y.3d 430 (2013) ................................................................................. 7

*TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson,*
  2016 WL 6662727 (C.D. Cal. July 7, 2016) ................................................... 13, 16

*United States v. Mejia,*
  545 F.3d 179 (2d Cir. 2008) ......................................................................... 20

*United States v. Tran Trong Cuong,*
  18 F.3d 1132 (4th Cir. 1994) ........................................................................ 14

*Van Der Valk v. Shell Oil Co.,*
  2004 WL 5486643 (C.D. Cal. Nov. 15, 2004) ..................................................... 15

*W.W.W. Assocs., Inc. v. Giancontieri,*
   77 N.Y.2d 157 (1990) .................................................................................... 7

*Wadler v. Bio-rad Laboratories,*
   2016 WL 6070530 (N.D. Cal. Oct. 17, 2016) ............................................ 5, 22

*Wettlaufer v. Mt. Hood R. Co.,*
   2013 WL 4008822 (9th Cir. 1996) ............................................................ 16

## <u>Statutes</u>

Fed. R. Civ. Proc. 702(a) ...................................................................................... 9

Fed. R. Evid. 26(a)(2)(D)(ii) ................................................................. 4, 5, 20, 21

Fed. R. Evid. 702 ........................................................................................... 1, 5

1

<u>**INTRODUCTION**</u>

2       Fed. R. Evid. 702 requires the Court to serve as a gatekeeper to ensure that the jury hears

3   only expert testimony with a reliable foundation that falls within the expert's qualifications.  Several

4   opinions offered by Huawei's experts fail these basic tests and will mislead and inflame the jury,

5   ultimately tainting the fair presentation of the parties' claims and defenses at trial.

6       This action involves competing assertions of declared essential standards patents ("SEPs")

7   and breach of FRAND contract claims.  Owners of SEPs must license their patents on fair,

8   reasonable and non-discriminatory ("FRAND") terms.



11   . Ex. 1, ft. 342.

14   *Id.,* fig. 63.

15   Huawei's attempt to justify its failure to offer Samsung these terms feature prominently in this

16   motion, as do several other Huawei expert testimony issues.

17

18

19

20

21

22

23

24

25

26

27

28

SAMSUNG'S MOTION TO EXCLUDE AND STRIKE

1 ███████████████████████████████████████████████████

2 ████████████████████████████████████ This governing New York

3 law imposes a strict "parol evidence" rule that limits the Court to the four corners of the document

4 itself and only permits extrinsic evidence to be considered if the Court first determines as a matter

5 of law that a contract term is ambiguous. ████████████████████████████

6 ████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████

8 ███████████████████████

9      *Second,* Mr. Lasinski and Huawei's "Breach of FRAND" expert, economist Dr. Jorge

10 Padilla, venture outside their expertise, analyzing issues of French law.  Recognizing that French

11 law governs FRAND issues and requires special expertise, both parties submitted reports from

12 French law experts.  Although neither expert has French law expertise, both opine on the nature of

13 the FRAND commitment and whether each party complied with their commitment. ████████

14 ████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████

17 ████████████████████████████████████████████████████.

18      Huawei's experts' improper French law analysis extends to their attempts to summarize the

19 negotiation history of the parties. ████████████████████████████

20 ████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████

22 ████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████

24 Allowing experts to summarize the facts or opine on ultimate legal issues usurps the role of the jury

25 as the ultimate arbiter of fact and should not be permitted.  Indeed, as courts have recognized, expert

26 testimony is not admissible when it opines on or draws inferences from lay matters which a jury is

27 capable of understanding, especially since it "runs the risk that the jury will pay unwarranted

28 deference" to his or her expertise. *Humphreys v. Regents of Univ. of California*, 2006 WL 1867713,

at *2 (N.D. Cal. July 6, 2006).  The narrative summaries of Mr. Lasinski and Dr. Padilla and their opinions on ultimate legal issues should be excluded.

*Third*, Dr. Padilla's report includes sections that merely bolster Mr. Lasinski's analysis.  Ex. 3, ¶ 2.4 ████████████████████████████████████████████████████████████████ ████████████████████████████████████  Such opinions should be precluded.

*Fourth,* Huawei's expert Dr. Charles Jackson should be precluded from serving as a conduit for the hearsay opinions of others on key issues such as the alleged essentiality of industry patents. ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ .

*Finally,* █████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████



9    Huawei also offers improper rebuttal opinions from Dr. Jacques deLisle and Dr. Zhi Ding

10   that violate Federal Rule of Civil Procedure 26(a)(2)(D)(ii) by failing to "contradict or rebut

11   evidence on the same subject matter identified by" Samsung.  Dr. deLisle admits he has not actually

12   "seen any Samsung expert reports" whereas Dr. Ding opines on a "technical comparison" of patents

13   that Samsung's experts did not address.  These opinions should be stricken.

## APPLICABLE LAW

15   Federal Rule of Evidence 702 allows expert testimony only if (1) the expert's scientific,

16   technical, or other specialized knowledge will help the trier of fact to understand the evidence or to

17   determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is

18   the product of reliable principles and methods; and (4) the expert has reliably applied the principles

19   and methods to the facts of the case.  Courts applying this rule must ensure "that an expert's

20   testimony both rests on a reliable foundation and is relevant to the task at hand."  *Daubert v. Merrell*

21   *Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).  The Court should act "as a gatekeeper by examining

22   the full picture of the experts' methodology and preventing shoddy expert testimony and junk

23   science from reaching the jury."  *BladeRoom Grp. Ltd. v. Facebook, Inc.*, 2018 WL 1611835, at *1

24   (N.D. Cal. Apr. 3, 2018) (internal citations removed).

25   The Court should ensure that the methodology proffered reliably reaches its conclusions

26   based on the facts of the case.  The Court must ensure there is not "too great an analytical gap"

27   between the data and the opinion proffered.  *Pooshs v. Phillip Morris USA, Inc.*, 287 F.R.D. 543,

28   547 (N.D. Cal. 2012).  The opinion should not be based on the "ipse dixit" of the expert.  *Id.*  If "any

step" of an expert's methodology is unreliable, the expert's testimony is inadmissible.  *Henricksen v. ConocoPhillips Co.*, 605 F. Supp. 2d 1142, 1154 (E.D. Wash. 2009).  An expert should not opine on topics that are within the "ordinary competence or experience" of the finder of fact.  *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 555 (C.D. Cal. 2014).  Moreover, experts should not "usurp" the role of the court by utilizing "judicially defined terms" that offer "improper legal opinion."  *Id.* at 558.

The Federal Rules of Civil Procedure allow for rebuttal expert testimony only in instances where the "evidence is intended *solely to contradict or rebut* evidence on the same subject matter identified by another party[.]"  Fed. R. Civ. P. 26(a)(2)(D)(ii) (emphasis added); *Wadler v. Bio-rad Laboratories*, 2016 WL 6070530, at *3 (N.D. Cal. Oct. 17, 2016) (rebuttal testimony "cannot be used to advance new arguments or new evidence").  Consequently, such testimony is "proper as long as it addresses the same subject matter that the initial experts address."  *Novadaq Techs., Inc. v. Karl Storz GmbH & Co. K.G.*, 2015 WL 9266497, at *1 (N.D. Cal. Dec. 18, 2015).  Where rebuttal expert testimony fails to satisfy these requirements, courts will only allow such evidence to be used at trial if the proffering party can show that its failure was either substantially justified or harmless. *Matthew Enter., Inc. v. Chrysler Grp. LLC,* 2016 WL 4272430, at *2 (N.D. Cal. Aug. 15, 2016).

## ARGUMENT

**I.**   **HUAWEI'S EXPERTS USE UNRELIABLE METHODOLOGIES AND OFFER OPINIONS BEYOND THEIR QUALIFICATIONS**

**A.**   █████████████████████████████



[3] The New York law governing this agreement mandates a strict "parol evidence" rule, by which a court must decide whether the terms of the contract are ambiguous as a matter of law based on the four corners of the document itself before considering extrinsic evidence.  *See Kass v.*

---

[1]

[2]  *See Biotechnology Value Fund, L.P. v. Celera Corp.*, 2015 WL 138168, at *3 (N.D. Cal. 2015) (even **deposition** testimony of a party, or anyone aligned with the party, is considered "self-serving and inadmissible hearsay when offered by the party himself," thus a party may not "send up a friendly forensic advocate to summarize [a fact witness'] deposition testimony for the jury.").

*Kass,* 91 N.Y.2d 554, 566–67 (1998).[4]  Where, as here, the agreement includes a merger clause, extrinsic evidence is barred.  *Schron v. Troutman Sanders LLP*, 20 N.Y.3d 430, 436 (2013).[5]

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

Although experts may base opinions on inadmissible evidence under Rule 703 when it is information "of a type reasonably relied upon by experts in the particular field" in forming opinions or inferences upon the subject, experts are permitted to rely on hearsay statements only "if proper foundation is laid that others in the field would likewise rely on them."  *Mesfun v. Hagos*, 2005 WL 5956612, at *19 (C.D. Cal. Feb. 16, 2005) (finding that an expert's testimony was not on a "reliable foundation" because it relied on inadmissible hearsay).[6]  Huawei cannot in good faith argue that economists ordinarily rely on ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████

When an expert bases his conclusions on selective use of the facts or matters not reasonably relied upon by other experts, the conclusion has no evidentiary value.  *See Nelson v. Matrix Initiatives*, 2012 WL 3627399, at *10 (N.D. Cal. Aug. 21, 2012) (citing *Pac. Gas & Elec. Co. v. Zuckerman*, 189 Cal.App.3d 1113, 1128 (1987)).  As the gatekeeper of expert testimony under *Daubert*, this Court should exclude Mr. Lasinski's economic analysis of "Comparable Agreements" because it is not based on facts or data of a type that experts in the field use to form inferences or

---

[4]  *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162-63 (1990); *see also Schron v. Troutman Sanders LLP*, 20 N.Y.3d 430, 436 (2013) ("Parol evidence—evidence outside the four corners of the document—is admissible only if a court finds an ambiguity in the contract.").

██ ████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████

[6]  *See also Interwoven, Inc. v. Vertical Computer Sys.*, 2013 WL 3786633, at *7 (N.D. Cal. July 18, 2013) (noting that expert's testimony "fail[ed] to meet the standards required for admissible evidence" because it lacked "foundation" and was "conclusory" and "unreliable").

1  opinions.  *See In re Imperial Credit Indus., Inc. Sec. Litig*, 252 F. Supp. 2d 1005, 1013 (C.D. Cal.

2  2003) (excluding expert report from evidence insofar as it does not use "facts or data of a

3  type reasonably relied upon by experts in the field").

4       **B.**     **Mr. Lasinski and Dr. Padilla Provide Improper Opinions and Analyses**

5                   **Outside of Their Areas of Purported Expertise**

6       Courts, and Huawei itself, have recognized that French law governs the ETSI IPR Policy.

7  *See Apple Inc. v. Samsung Elecs. Co.*, 2012 WL 1672493, at *10 (N.D. Cal. May 14, 2012); *see also*

8  *Huawei Techs. Co. v. T-Mobile US, Inc.*, 2017 WL 3954108, at *2 (E.D. Tex. Aug. 29, 2017) (noting

9  that both parties, including Huawei, agreed that "French law governs the ETSI IPR Policy, and that

10  contract interpretation under French law must be decided by the Court.").  Indeed, both parties have

11  submitted reports from French law experts regarding interpretation of ETSI principles, and have

12  taken the deposition of each respective witness.  *See, e.g.,* Exs. 21, 22.

13       Although Mr. Lasinski and Dr. Padilla are not French law experts, they have submitted

14  reports in which they provide their own subjective analysis and interpretation of "FRAND,"

15  including ███████████████████████████████████████████

16  ████████████████████████████. Exs. 1 ¶¶ 68-76; 2 ¶¶ 1.13, 3.20-3.38, 6.8; *Microsoft*

17  *Corp. v. Motorola, Inc.*, 2013 WL 4008822, at *14 (W.D. Wash. Aug. 5, 2013) ("there is little

18  question that statements by an expert witness as to the circumstances under which a patent holder

19  fulfills its [F]RAND obligation is beyond the scope of permissible expert testimony."). ████

20  ████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████

26  ████████████████████████████████████████████████████

27  ████████████████████████████████████████████████████

28  ████████████████████████████████████████████████████

1   ███████████████████████████████████   At the very least, such opinions must

2   be excluded because Mr. Lasinski and Dr. Padilla are not qualified to opine on issues of French law.

3   Fed. R. Civ. Proc. 702(a); *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 900–01 (N.D.

4   Cal. 2016) (excluding expert's opinions regarding subjects that were not "grounded in his [] personal

5   knowledge, skill, experience, training, or education") (quotations and citation omitted); *see also*

6   Exs. 1 ¶¶ 1-6, Appendix A; 2 ¶¶ 1.1, 1.3, Annex A.

7   ███████████████████████████████████████

8   ███████████████████████████████████████

9   ███████████████████████████████████████

10  ███████████████████████████████████████

11  ███████████████████████████████████████

12  ███████████████████████████████████████

13  ███████████████████████████████████████

14  ███████████████████████████████████████

15  ███████████████████████████████████████

16  ███████████████████████████████████████

17  ███████████████████████████████████████

18  ███████████████████████████████████████

19  ███████████████████████████████████████

20  ███████████████████████████████████████

21  ███████████████████████████████████████

22  ███████████████████████████   Such testimony is neither reliable nor within his

23  expertise, and if admitted will unfairly confuse the jury.  It should be excluded.

24       The Court should require Huawei to present this testimony, if at all, through fact witnesses,

25  not experts.[7]  Allowing experts to summarize the facts would usurp the role of the jury as the

26  _____

27       [7]  *See Johns v. Bayer Corp.*, 2013 WL 1498965 (S.D. Cal. Apr. 10, 2013) (citing *Media Sport
     & Arts s.r.l. v. Kinney Shoe Corp.*, 1999 WL 946354, at *3 (S.D.N.Y. Oct. 19, 1999) (where an

28  expert's testimony "is not based on personal knowledge, but instead on his review of documents

ultimate arbiter of fact issues. *See, e.g., Gonzalez v. Valenzuela*, 2001 WL 36387147, at *4 (C.D. Cal. Nov. 26, 2001) (excluding expert witnesses' testimony regarding factual issues of what the parties did and said in part because the "jury must determine whether Defendant acted reasonably based on the testimony of the [actual] parties involved"). The same problems arise where experts to opine on ultimate legal issues. *See Nationwide Transport Finance v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) ("an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law.") (emphasis in original) (citation omitted); *Microsoft,* 2013 WL 4008822, at *20 ("the legal conclusion as to the parties' RAND obligations and duties is solely within the province of the court."). Mr. Lasinski's and Dr. Padilla's ███

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████.[8]

### C.   Dr. Padilla's Attempt To Improperly Bolster Mr. Lasinski's Reports Should Be Excluded

Dr. Padilla's rebuttal report also contains improper statements simply commenting Mr. Lasinski's analysis that should be excluded. An expert, "however well credentialed, is not permitted to be the mouthpiece of a scientist of a different specialty." *See Clear-View Techs, Inc. v. Rasnick*, 2015 WL 3509384, at *5 (N.D. Cal. June 3, 2015) (internal quotations and citations omitted). Experts are not permitted to "vouch for the truth" of another expert's conclusion. *K&N Engineering, Inc. v. Spectre Performance*, 2011 WL 13131157, at *10 (C.D. Cal. May 12, 2011). Portions of Dr. Padilla's rebuttal report are plainly intended to bolster Mr. Lasinski's report, and must be excluded.[9]

---

and depositions produced by the parties," the expert's testimony "may not take the place of that of the individuals who actually negotiated the deal")).

[8]   Mr. Lasinski and Dr. Padilla both have submitted rebuttal reports and supplemental reports t███████████████████████████████████████████████████████████████████ ███████████████████.   To the extent the Court grants Samsung's Motion, Samsung requests that the Court also exclude the corresponding opinions in Mr. Lasinski's and Dr. Padilla's rebuttal reports and supplemental reports.

[9]   ██████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

These opinions do not assist the trier of fact and are improper.  *See Creach v. Spokane Cnty.*, 2013 WL 12177099, at *3 (E.D. Wa. May 2, 2013) (despite permitting two experts to testify about the same evidence, the Court held that "Mr. Vaughan may not provide expert testimony that is needlessly cumulative or that simply bolsters Dr. Nordby's testimony").

### D.   Dr. Jackson's Essentiality Database is Unreliable

Although Huawei's expert Dr. Charles Jackson was tasked with providing "oversight and assistance" in the construction of a database of allegedly every potentially essential 3G or 4G patent in the entire world, he lacks basic knowledge of how the individual essentiality determinations were made.

Creating a patent landscape study and individually assessing the essentiality of the patents within it is a gargantuan task.

SAMSUNG'S MOTION TO EXCLUDE AND STRIKE

1

2

3

4

5

6        Dr. Jackson could not have possibly overseen the development of this database in a reliable

7    manner.

8

9

10

11

12        The reality is that Concur IP did all the work and much of it for another matter in which

13    neither Samsung nor Dr. Jackson were involved.

14

15

16

17

18

19

20        The specific origins of the Concur IP database are murky to this day.

21

22

23

24

25

26

27

28



This is itself problematic, as the court in *TCL* recognized.  *TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson*, 2016 WL 6662727, at *2 (C.D. Cal. July 7, 2016) ("However, while Drs. Kakaes and Ding had involvement with the creation of the Census and the Industry Essentiality Analysis, their personal knowledge of whether the Census and Industry Essentiality Analysis was properly performed by the teams in India was somewhat limited") (internal citations omitted).  But even worse, the primary person that was overseeing the essentiality decisions—Dr. Kakaes—also did not submit a report or appear for deposition.  Instead, it appears that Huawei has improperly proffered Dr. Jackson to present the results of Dr. Kakaes.  A party is not allowed to proffer one expert to serve as a "mouthpiece" of another, shielding the later from cross-examination or critical analysis.  *Eveler v. Ford Motor Co.*, 2017 WL 3382460, at *9 (E.D. La. Aug. 7, 2017); *K&N Engineering,* 2011 WL 13131157, at *10.

1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6 ▮▮▮▮▮▮▮    The court should consider "the known or potential rate of error" and that cannot

7 possibly be done here.  *Daubert,* 509 U.S. 579 at 594.

8     Dr. Jackson's opinions regarding Essentiality are therefore unreliable—he is at best acting

9 as an improper mouthpiece for Dr. Apostolo Kakaes who has not submitted a report in this litigation.

10 Court.  *See Eveler*, 2017 WL 3382460, at *9; *United States v. Tran Trong Cuong*, 18 F.3d 1132,

11 1143–44 (4th Cir. 1994) ("Reports specifically prepared for purposes of litigation are not, by

12 definition, "of a type reasonably relied upon by experts in the particular field").  Dr. Jackson's report,

13 and the use of the Concur IP database by Huawei, must be excluded—along with any opinions or

14 testimony proffered by Mr. Lasinski and Dr. Ding who rely on Concur IP's essentiality

15 determinations.

16     **E.    Mr. Lasinski's "Indicators of Portfolio Strength" Are Unreliable**

17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Both of these

22 methodologies rely on Mr. Lasinski's flawed "indicators" of portfolio value—indicators that

23 artificially bias his calculations in favor of Huawei and away from Samsung based on assumptions

24 without economic, statistical, or academic support.

25 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27

28 ▮▮▮▮▮▮▮▮▮▮▮▮▮

As detailed below, **both** of these "indicators" of portfolio value are unreliable, calling into question both of Mr. Lasinski's methodologies for calculating appropriate FRAND rates for the parties' portfolios in this matter.  For these reasons, Mr. Lasinski's royalty calculations are "not the product of reliable principles and methods" and therefore the Court should exclude his royalty analyses in their entirety. *Moussouris v. Microsoft Corp.*, 2018 WL 2124019, at *12 (W.D. Wash. Apr. 25, 2018) (granting motion to exclude portions of expert's testimony that utilize unreliable methods).

Although it may have other merits, standard-setting participation does **not** bear any rational relationship to the *strength* of a party's patent portfolio.  As explained by Dr. Leonard:

A party that dominates participation in standard-setting bodies, but has no SEPs, would nonetheless be deemed by Mr. Lasinski's measure to have a strong patent portfolio.  Likewise, a party that had a robust SEP portfolio but declined to participate in standard-setting bodies would get zero credit under Mr. Lasinski's proposed measure.  A metric so divorced from reality is unreliable and cannot form the basis for an expert's conclusions.  *See Van Der Valk v. Shell Oil Co.*, 2004 WL 5486643, at *1 (C.D. Cal. Nov. 15, 2004) ("under FRE 702, a court must determine that the expert testimony fits the facts of the case and will assist the trier of fact"); *Wettlaufer v. Mt. Hood R. Co.*,

1   2013 WL 4008822, *3 (9th Cir. 1996) (district courts should ensure there is a "valid scientific

2   connection" the expert's methodology and its conclusions).

3        Indeed, the court in the *TCL* matter—███████████████████████████████████

4   ████████████—considered and rejected the use of "Contributions" as a measure of portfolio value.

5   As explained by the *TCL* court:

> ***The two major flaws with contribution counting are the absence of any evidence that it***
> ***corresponds to actual intellectual property rights, and its inability to account for***
> ***transferred or expired patents***.  For example, if Ericsson sold off a substantial portion of
> its SEP portfolio, Ericsson would still claim the exact same royalty as before it sold its
> SEPs based on an unchanged standards contribution count. Thus, contribution counting
> does not reflect the roughly two hundred U.S. patents that Ericsson has divested over the
> last decade.  Contribution counting also permits Ericsson to demand royalties well beyond
> the expiration of the corresponding patents, if those contributions were actually tied to
> patents at all. These are incorrect results.  ***While contribution counting may have its uses,***
> ***it cannot be used to determine a FRAND rate for a patent portfolio, or unpack a cross-***
> ***license.***

12  *TCL Commc'n Tech. Holdings, Ltd.*,  2017 WL 6611635, at *41 (emphasis added).  As explained

13  by Dr. Rudi Bekkers, an economist t█████████████████████[2] Ericsson historically advocated

14  for contribution counting as a way to improve its perceived standing among owners of 3G and 4G

15  patent technology.  Ex. 9, ¶¶ 61-65.  Ericsson, like Huawei, participates in standard-setting bodies

16  like 3GPP more than the average industry participant.  ████████████████████████████████

17  ████████████████████████████████████████████████████████████████████████████████

18  ████████████████████████████  As a result, if one values patent portfolios on the basis

19  of participation in standards bodies—rather than on the technical merit of its patents—Ericsson's

20  portfolio would be viewed favorably.

21       Mr. Lasinski's basis for using this artificial methodology is flimsy.  ███████████████

22  ████████████████████████████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████████████████████████████

25  ████████████████████████████  Mr. Lasinski is not a negotiator of cross-licenses, and he does

26  not offer himself as an expert on cross-licensing discussions.  ████████████████████████████

27  ────────────────────────────

28  ██ ████████████████████████████████████████████████████████████████████████████████



Well certain industry participants may use Approved Contributions as a shorthand metric when data on the underlying patents is unavailable, that does not imply industry participants would choose to do so if there *were* data on the underlying patents.

---

[13]  *Id.*

1   Mr. Lasinski's reliance on Dr. Jackson is problematic for several reasons.  As a preliminary

2   matter, the use of "Approved Contributions" as a metric for the number of SEPs owned by each

3   party is wholly redundant when Huawei's experts have allegedly ***directly counted*** the number of

4   SEPs owned by each party. ████████████████   This is tantamount to using a human's weight as a

5   proxy for height, when data on the actual height is available—there is no reason to use a "roughly

6   proportional" proxy when one can directly observe the desired metric.[14]

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   [15]   Analysis conducted by Dr. Kakaes, another expert which ████████████████

26   ██████████████████████████████████████████, buttresses this conclusion.  In the *TCL*
     litigation, Dr. Kakaes undertook an empirical study to determine whether there was any correlation

27   between Ericsson's participation in 3GPP "Working Groups" and its actual SEP portfolio.  Ex. 13,
     ¶ 407.  Dr. Kakaes' analysis showed that "There is Little or No Correlation between Approved

28   Contributions and Issued Patents" and that his empirical measure of correlation was "0.02915, which
     for all practical purposes is indistinguishable from zero."  *Id.* ¶¶ 420-27.

1 ███████████████████████████████████████████████

2 ███████████████████████████████████████████████

3 ███████████████████████████████████████████████

4 ███████████████████████████████████████████████

5 █████████████████████████████████

6       This Court should not endorse Huawei's self-serving use of "Approved Contributions" as a

7 measure of portfolio value.  This artificial metric—rejected by the *TCL* court and Huawei's own

8 experts—merely serves to bias valuation results in favor of Huawei rather than Samsung.  Huawei

9 should be prevented from presenting such "junk science" to the jury.  *BladeRoom Grp. Ltd.*, 2018

10 WL 1611835, at *1.

11         2.   <u>Mr. Lasinski's Reliance on "Global Deemed SEPs" Is Unreliable</u>

12 ███████████████████████████████████████████████

13 ███████████████████████████████████████████████

14 ███████████████████████████████████████████████

15 ███████████████████████████████████████████████

16 ███████████████████████████████████ Mr. Lasinski appears to have

17 created this metric for purposes of this litigation with the goal of inflating the value of Huawei's

18 portfolios.  Experts creating litigation-motivated methodologies are held to a higher standard and

19 must establish an especially rigorous basis for their methodology.  *Feduniak v. Old Republic Nat'l*

20 *Title Co.*, No. 13-CV-02060-BLF, 2015 WL 1969369, at *1 (N.D. Cal. May 1, 2015) ("While

21 opinions developed expressly for litigation are not necessarily unreliable, the district court "may not

22 ignore the fact that a scientist's normal workplace is the lab or the field, not the courtroom or the

23 lawyer's office").  Mr. Lasinski has failed that test here.

24 ███████████████████████████████████████████████

25 ███████████████████████████████████████████████

26 ███████████████████████████████████████████████

27 ███████████████████████████████████████████████

28 ███████████████████████████████████████████████



## II.    HUAWEI'S EXPERTS OFFER IMPROPER EXPERT REBUTTAL TESTIMONY

### A.    Dr. deLisle's Opinions Do Not Contradict or Rebut Any of Samsung's Experts' Opinions

Jacque deLisle's "rebuttal" expert opinions generally relating to the integrity of the Chinese legal system must be stricken because they do not "solely… contradict or rebut" Samsung's experts, and Huawei's failure to comply with Rule 26 requirements is not substantially justified or harmless. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii); *Matthew Enter.,* 2016 WL 4272430, at *2.

[16]

[17]    *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008) (experts should not be "repeating hearsay evidence without applying any expertise whatsoever").  When an expert bases his conclusions on selective use of the facts or matters not reasonably relied upon by other experts, the conclusion has no evidentiary value.  *See Nelson v. Matrix Initiatives*, 2012 WL 3627399, at *10 (N.D. Cal. Aug. 21, 2012) (citing *Pac. Gas & Elec. Co. v. Zuckerman*, 189 Cal.App.3d 1113, 1128 (1987)).

Dr. deLisle's opinions do not respond to ***any*** of Samsung's experts' opinions or arguments. Indeed, Dr. deLisle testified that he had not even actually "seen any Samsung expert reports" in the course of developing his opinions. Ex. 15, Ex. B; Ex. 16, 34:5-21, 35:15-20, 72:14-19. Moreover, Dr. deLisle's opinions are solely "evaluations of Chinese court proceedings and Chinese law," which is not an issue that any Samsung expert witness has opined on. Ex. 16, 70:13-15, 72:2-5; 73:6-11. Dr. deLisle's opinions thereby do not have any intention of "solely" contradicting or rebutting Samsung's experts, but rather, solely introduces new arguments. Dr. deLisle's opinions should therefore be stricken. *See Krueger v. Wyeth, Inc*., No. 03CV2496-JAH MDD, 2012 WL 3637276, at *4 (S.D. Cal. Aug. 22, 2012).

Huawei has no "substantial[] justification" for failing to comply with Rule 26 by submitting Dr. deLisle's report as a "rebuttal" report given that ████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████ If anything, Huawei should have submitted Dr. deLisle's opinions in an opening report. Moreover, admission of Dr. deLisle's opinions would not be harmless as Samsung did not have an opportunity to submit an expert report regarding the issues in Dr. deLisle's report because Huawei failed to disclose Dr. deLisle as an expert witness in a timely manner. Given that Huawei cannot establish that its failure to comply with Rule 26 requirements is substantially justified or harmless, Dr. deLisle's opinions must be stricken.

**B.     Dr. Ding's Improper "Rebuttal" Opinions Should Be Stricken**

Dr. Ding's rebuttal report contains certain opinions that fail to address any substance in Dr. Davies' opening report, and are therefore improper rebuttal expert testimony. Ex. 17, ¶¶ 115, 127-143, 150; Fed. R. Civ. P. 26(a)(2)(D)(ii). For instance, Dr. Ding devotes a section of his report to "opin[ing] on the technical comparability of" five Unwired Planet ("UP") patents and the asserted Huawei patents in this case, but provides no basis for doing so. Ex. 17, ¶ 114. Though he purports to respond to Dr. Davies' report, Dr. Davies' merely compared the UP patents to ***Samsung*** patents. Dr. Ding's analysis of the Huawei patents asserted in this case, in which he concludes that "the

Unwired Planet patents are substantially different from the Huawei Patents from a technical perspective," (*Id.*, ¶ 115), does not respond to any testimony by Samsung's expert and should be excluded.

Dr. Ding's technical comparison between the UP patents and the asserted Huawei patents does not "contradict or rebut" any evidence or subject matter that Dr. Davies addressed.  In fact, by opining on the similarity of the two sets of patents, Dr. Ding introduces new argument that is irrelevant to the jury's understanding of the issues.  Whether Huawei's patents are technically similar to the UP patents is unrelated to any issue in this case, and nowhere in Dr. Davies' report does he discuss the subject matter of Huawei patents.  *See generally* Ex. 18.  Dr. Davies' analysis of the UP and Samsung patents serves to further support the comparability of the UP-Samsung license to the hypothetical license between Huawei and Samsung: the rate Samsung paid for the UP patents informs the rate Samsung would have accepted for its patents from Huawei, as long as its patents were technically comparable to UP's.  But Dr. Ding's technical comparison is irrelevant because no Unwired Planet-Huawei license is at issue, so a technical comparison of UP and Huawei patents is unilluminating and immaterial expert opinion.  Rather, Dr. Ding's conclusion that Huawei's patents are "technically different" from UP's patents is an "attempt[] to put forward new theories outside the scope of the report it claims to rebut" and therefore improper rebuttal testimony.  *Wadler*, 2016 WL 6070530, at *3 (quotations and citation omitted).

## III.    CONCLUSION

For the foregoing reasons, the reports and testimony of Jorge Padilla, Michael J. Lasinski, and Charles L. Jackson should be partially excluded, and certain of the rebuttal opinions of Jacques deLisle and Zhi Ding should be stricken, as set forth above.

1    DATED:  July 3, 2018                  Respectfully submitted,

2                                          QUINN EMANUEL URQUHART &
                                           SULLIVAN, LLP
3

4                                   By      */s/ Victoria F. Maroulis*
                                           Charles K. Verhoeven
5                                          Kevin P.B. Johnson
                                           Victoria F. Maroulis
6                                          Thomas D. Pease
                                           David A. Perlson
7

8                                          *Attorneys for Samsung Electronics Co., Ltd.,*
                                           *Samsung Electronics America, Inc., and Samsung*
9                                          *Research America, Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28