REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1 | QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
2 | charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
3 | davidperlson@quinnemanuel.com
50 California Street, 22nd Floor
4 | San Francisco, California 94111
Telephone: (415) 875-6600
5 | Facsimile: (415) 875-6700

6 | Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
7 | Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
8 | 555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
9 | Telephone: (650) 801-5000
Facsimile: (650) 801-5100

10 |
Attorneys for Samsung Electronics Co., Ltd.,
11 | Samsung Electronics America, Inc., and
Samsung Research America, Inc.

12 |                    UNITED STATES DISTRICT COURT

13 |                   NORTHERN DISTRICT OF CALIFORNIA

14 |                      SAN FRANCISCO DIVISION

15 |
HUAWEI TECHNOLOGIES CO., LTD., et al.,        CASE NO. 16-cv-02787-WHO
16 |
                 Plaintiffs,                  **SAMSUNG'S NOTICE OF MOTION
17 |                                           AND MOTION FOR SUMMARY
      v.                                       JUDGMENT**
18 |
SAMSUNG ELECTRONICS CO., LTD., et al.,        **Hearing Date: August 8, 2018**
19 |                                           **Time: 2:00 p.m.**
                 Defendants.                  **Place: Courtroom 2, 17th Floor**
20 |                                           **Judge: Hon. William H. Orrick**

21 | SAMSUNG ELECTRONICS CO., LTD. &
SAMSUNG ELECTRONICS AMERICA, INC.,
22 |
                 Counterclaim-Plaintiffs,
23 |
      v.
24 |
HUAWEI TECHNOLOGIES CO., LTD.,
25 | HUAWEI DEVICE USA, INC., HUAWEI
TECHNOLOGIES USA, INC., & HISILICON
26 | TECHNOLOGIES CO., LTD.,

27 |                  Counterclaim-Defendants.

28 |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on August 8, 2018, at 2 PM, Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively "Samsung") shall and hereby do move the Court pursuant to Federal Rule of Civil Procedure 56 for summary judgment.  This motion is based on this notice of motion and supporting memorandum of points and authorities, the supporting declaration of Vijay Madisetti, Ph.D., the accompanying exhibits, and such other written or oral argument as may be presented at or before the time this motion is deemed submitted by the Court.

## RELIEF REQUESTED

Pursuant to Federal Rule of Civil Procedure 56, Samsung seeks an order granting summary judgment of:  (1) non-infringement of claims 7 and 18 of U.S. Patent No. 8,644,239 ("the '239 patent"); (2) invalidity under 35 U.S.C. § 112, or in the alternative non-infringement, of claims 7 and 18 of the '239 patent; (3) non-infringement of claims 1 and 5 of U.S. Patent No. 8,724,613; (4) invalidity of claims 7 and 18 of the '239 patent under 35 U.S.C. § 101; (5) a finding that one of the invalidity references raised by Huawei against Samsung's U.S. Patent No. RE44,105 ("the '105 patent") does not qualify as prior art and cannot invalidate the '105 patent as a matter of law; and (6) no inequitable conduct by Samsung or the inventor during prosecution related to the '105 patent.

DATED:  July 3, 2018

Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By       */s/ Victoria F. Maroulis*

Charles K. Verhoeven
Kevin P.B. Johnson
Victoria F. Maroulis
David A. Perlson

*Attorneys for Samsung Electronics Co., Ltd.,*
*Samsung Electronics America, Inc., and*
*Samsung Research America, Inc.*

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...........................................................................................................................1

APPLICABLE LAW .......................................................................................................................1

ARGUMENT ..................................................................................................................................2

I.   THE COURT SHOULD GRANT SUMMARY JUDGMENT OF NON-
     INFRINGEMENT AND INVALIDITY OF THE '239 PATENT ......................................2

     A.   The '239 Patent and Huawei's Allegations .............................................................2

     B.   The Accused Products Do Not Infringe the "Group Number k" Limitations ...........2

     C.   The Asserted Claims Are Either Invalid as Indefinite or Not Infringed ..................4

          1.   The Lack of a Clear Antecedent for "The Sequences" in the
               Asserted Claims Renders Them Invalid as Indefinite ..................................5

          2.   In the Alternative, the Court Should Grant Summary Judgment of
               Non-Infringement ........................................................................................7

     D.   The Asserted Claims in the '239 Patent Are Invalid Under § 101 ...........................9

          1.   The Court Correctly Found the '239 Patent Claims an Abstract Idea .........11

          2.   The Asserted Claims of the '239 Patent Contain No Inventive Step ..........12

II.  THE COURT SHOULD GRANT SUMMARY JUDGMENT OF NON-
     INFRINGEMENT OF THE '613 PATENT ....................................................................14

     A.   The '613 Patent and Huawei's Allegations ...........................................................14

     B.   The "Evidence" Put Forth by Huawei Fails to Show that the Accused
          Products Infringe the Claimed Receiving a Service .................................................16

III. SAMSUNG'S '105 PATENT IS NOT INVALID IN VIEW OF MOTOROLA ...............18

     A.   Relevant Factual Background .................................................................................18

     B.   The Motorola Draft Does Not Qualify As Prior Art to the '105 Patent ..................19

IV.  THERE IS NO EVIDENCE OF INEQUITABLE CONDUCT WITH RESPECT
     TO SAMSUNG'S '105 PATENT ..................................................................................20

V.   CONCLUSION .............................................................................................................22

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# TABLE OF AUTHORITIES

**Page**

<u>Cases</u>

*1st Media, LLC v. Elec. Arts, Inc.,*
  694 F.3d 1367 (Fed. Cir. 2012) ................................................................................. 21

*Alice Corp. Pty. v. CLS Bank Int'l,*
  134 S. Ct. 2347 (2014) ................................................................................. 10, 11, 12

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ....................................................................................................... 1

*Biagro Western Sales, Inc. v. Grow More, Inc.,*
  423 F.3d 1296 (Fed. Cir. 2005) .................................................................................. 7

*Celotext Corp. v. Catrett,*
  477 U.S. 317 (1986) ................................................................................................. 1, 9

*Church & Dwight Co. v. Abbott Labs,*
  545 F. Supp.2d 447 (D.N.J. 2008) ........................................................................... 19

*In re Costello,*
  717 F.2d 1346 (Fed. Cir. 1983) ................................................................................ 19

*Elbit Sys. of Am., LLC v. Thales Visionix, Inc.,*
  881 F.3d 1354 (Fed. Cir. 2018) ................................................................................ 17

*Exigent Technology, Inc. v. Atrana Solutions, Inc.,*
  442 F.3d 1301 (Fed. Cir. 2006) .................................................................................. 9

*Fox Group, Inc. v. Cree, Inc.,*
  700 F.3d 1300 (Fed. Cir. 2012) ................................................................................ 19

*Hutchins v. Zoll Med. Corp.,*
  492 F.3d 1377 (Fed. Cir. 2007) .................................................................................. 7

*Icon Health & Fitness, Inc. v. Strava, Inc.,*
  849 F.3d 1034 (Fed. Cir. 2017) ................................................................................ 17

*Jazz Photo Corp. v. Int'l Trade Comm'n,*
  264 F.3d 1094 (Fed. Cir. 2001) .................................................................................. 7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
  475 U.S. 574 (1986) ....................................................................................................... 1

*Nautilus, Inc. v. Biosig Instruments, Inc.,*
  134 S. Ct. 2120 (2014) ............................................................................................. 5, 7

*Nutrinova Nutrition Specialities & Food Ingredients GmbH v. Int'l Trade Comm'n,*
  224 F.3d 1356 (Fed. Cir. 2000) .................................................................................. 7

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

*Parker v. Flook*,
    437 U.S. 584 (1978) ........................................................................................ 10, 12

*Roberts v. Sears, Roebuck & Co.*,
    665 F. Supp. 671 (N.D. Ill. 1987) ........................................................................ 19

*Scimed Life Sys. v. Johnson & Johnson*,
    2001 U.S. Dist. Lexis 12862 (D. Del. 2001) ........................................................ 19

*SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*,
    511 F.3d 1186 (Fed. Cir. 2008) ........................................................................... 20

*Therasense, Inc. v. Becton, Dickinson and Co.*,
    649 F.3d 1276 (Fed. Cir. 2011) ............................................................... 20, 21, 22

## Statutes

35 U.S.C. § 101 ........................................................................................... 9, 10, 12, 13

35 U.S.C. § 102 ....................................................................................................... 20

35 U.S.C. § 102(g) ............................................................................................. 19, 20

35 U.S.C. § 111(b)(5) .............................................................................................. 19

35 U.S.C. § 112 ¶ 2 .............................................................................................. 4, 5

## Rules

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 10

Fed. R. Civ. P. 56(e) ................................................................................................. 1

Fed. R. Evid. 201(b) ............................................................................................... 19

**INTRODUCTION**

Samsung seeks summary judgment on a targeted set of issues concerning non-infringement and invalidity of Huawei Technologies Co., Ltd.'s ("Huawei") '239 and '613 patents, a finding that a reference asserted by Huawei against Samsung's '105 patent does not qualify as prior art and therefore cannot invalidate the '105 patent as a matter of law, and that there was no inequitable conduct with respect to the '105 patent. For the reasons set forth below, there are no triable issues of material fact as to any of these issues and summary adjudication is warranted.

**APPLICABLE LAW**

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of demonstrating the basis for motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact. *Celotext Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48. An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute might affect the case's outcome. *Id.* at 248. Factual disputes are genuine if they "properly can be resolved in favor of either party." *Id.* at 250. Thus, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in light most favorable to that party, could resolve the material issue in its favor. *Id.* However, "[i]f the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

## ARGUMENT

**I.    THE COURT SHOULD GRANT SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF THE '239 PATENT**

### A.    The '239 Patent and Huawei's Allegations

The '239 patent (Ex. A)[1] is directed to the generation of reference signals for use in communication systems. (*Id.* at Abstract.) Reference signals are known sequences with desirable properties that can be used to estimate channel conditions, such as fading and scattering of radio signal as the signal propagates along the channel. (*Id.* at 1:50-54.) For example, a receiver such as a base station may receive known reference signals from a mobile device in order to estimate the channel fading and interference associated with transmissions from that mobile device. (*Id.* at 1:55-67.) The base station can then use the estimated channel conditions in order to better demodulate the data signal received from the mobile device. (*Id.* at 3:30-48.)

Huawei alleges that the Accused Samsung Products infringe the '239 patent by "█████████ ██████████████████████████████████████████████████████████████████████████ ████████████████████████████████." (Ex. B, Expert Report of Dr. Veeravalli Regarding Infringement of U.S. Patent No. 8,644,239 ("Veeravalli Rep.") ¶¶ 52, 78.) Asserted claims 7 and 18 depend from independent claims 6 and 17. (*Id.* at ¶¶ 82-83.) Claims 6 and 7 recite a method for processing sequences in a communication system, while claims 17 and 18 recite the corresponding apparatus.

### B.    The Accused Products Do Not Infringe the "Group Number k" Limitations

The asserted claims are not infringed under this Court's constructions. The first step of independent claims 6 and 17 recites "obtain[ing] a group number k of a sequence group allocated by [a/the] system." (Ex. A at Cl. 6, 17.) The claims go on to later recite that "a value of a basic sequence index $r_i$ in the sub-group $i$ in the sequence group k is at least one of $\lfloor k \cdot N_i/N_1 \rfloor$, $\lceil k \cdot N_i/N_1 \rceil$, $\lfloor k \cdot N_i /N_1 \rfloor +1$ or $\lceil k \cdot N_i/N_1 \rceil - 1$." (*Id.*) The Court construed the "a group number k . . ." phrase to mean "a group number k allocated by the system, where the group number k identifies a sequence

---

[1] All Exhibits referenced herein are attached to the Declaration of Brian Mack in Support of Samsung's Motion for Summary Judgment ("Mack Decl.").

1  group **and where the value k is the same throughout the claim**.”  (Dkt. 168 at 7-9 (emphasis

2  added).)

3         As to the limitation of “





As shown above, Dr. Veeravalli twists and contorts the value k whenever it suits his needs in order to force infringement where there is none.  Because Huawei's expert's infringement analysis defies this Court's Claim Construction Order, the Court should grant summary judgment of non-infringement.

### C.   The Asserted Claims Are Either Invalid as Indefinite or Not Infringed

The asserted claims are either invalid or not infringed for a second, independent reason. Both asserted claims 7 and 18 contain the limitation "wherein *the sequences* correspond to at least one of: Zadoff-Chu sequences and Gauss sequences."  The asserted claims, however, recite more than one set of sequences and it is ambiguous whether "the sequences" refer back to all of those "sequences," or some subset of them, making it impossible to determine the scope of the claimed invention with reasonable certainty and rendering the asserted claims indefinite under 35 U.S.C. § 112 ¶ 2.  But even if Huawei's interpretation that "the sequences" in claims 7 and 18 refer to the last set of sequences recited in independent claims 6 and 17 is adopted, summary judgment of non-infringement is appropriate because Huawei provides no evidence that theses sequences are Zadoff-Chu sequences, as required by the asserted claims.

### 1.   The Lack of a Clear Antecedent for "The Sequences" in the Asserted Claims Renders Them Invalid as Indefinite

In order to be valid, 35 USC § 112 ¶ 2 requires that "a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014). While "absolute certainty" is not required to satisfy the definiteness requirement, a patent must be "precise enough to afford clear notice of what is claimed, thereby 'appris[ing] the public of what is still open to them.'" *Id.* at 2129. "Otherwise there would be '[a] zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims.'" *Id.* This "zone of uncertainty" is squarely present here for the "the sequences" limitation in the asserted claims.

The asserted claims refer to multiple "sequences." In particular, the independent claims use the term "sequences" in several different places, referring to the (1) "selected" sequences, (2) "formed" sequences, and (3) "generated" sequences. For example, independent claim 6 recites that "n sequences" are "select[ed]" from a candidate sequence collection. (Ex. A at Cl. 6.) Then, sequences are "form[ed]" in a "sub-group i in a sequence group k." Finally, "corresponding sequences" are generated "according to the sequences in the formed sub-group." The plain language of claim 6 therefore requires at least three claimed sequences: the selected sequences, the formed sequences, and the generated, corresponding sequences.[2] (*See* Ex. D, Expert Report of Dr. Veeravalli Regarding Validity of U.S. Patent No. 8,644,239 ("Veeravalli Reb. Rep.") ¶ 94 ("

> **6.** A method for processing sequences in a communication system, comprising:
>   obtaining, by a cell or a base station or a user equipment, a group number k of a sequence group allocated by the system;
>   selecting, by the cell or the base station or the user equipment, n sequences from a candidate sequence collection to form sequences in a sub-group i in a sequence group k;
>   wherein n is a natural number, i is a serial number of the sub-group, k is a serial number of the sequence group, a value of a basic sequence index $r_i$ in the sub-group i in the sequence group k is at least one of $\lfloor k \cdot N_i / N_1 \rfloor$, $\lceil k \cdot N_i / N_1 \rceil$, $\lfloor k \cdot N_i / N_1 \rfloor + 1$ or $\lceil k \cdot N_i / N_1 \rceil - 1$, wherein $N_i$ is a length of a sequence in the candidate sequence collection, $N_1$ is a length of a reference sub-group sequence;
>   generating, by the cell or the base station or the user equipment, corresponding sequences according to the sequences in the formed sub-group; and
>   communicating, by the cell or the base station or the user equipment, according to the sequences on time frequency resources corresponding to the sub-group i.
>
> **7.** The method of claim **6**, wherein the sequences correspond to at least one of: Zadoff-Chu sequences and Gauss sequences.

---

[2] Claims 17 and 18 correspond to claims 6 and 7 and contain the same ambiguity.

1   ████████████.") (emphasis added).)  Dependent claim 7 also references "the sequences" and

2   requires them to "correspond to at least one of: Zadoff-Chu sequences and Gauss sequences."  (Ex.

3   A at Cl. 7.)

4          But, the claims do not specify which of the previously recited three "sequences" in the

5   independent claims constitute "the sequences" recited later in the dependent claims.  So a person of

6   ordinary skill in the art would not be able to determine the proper antecedent basis (*i.e.*, to which

7   instance of "sequences" the term "the sequences" referred).  Neither the claim language nor the

8   specification (which merely parrots the claim language) resolves the ambiguity.

9          Even Huawei's expert acknowledges ████████████████████

10  ██████████████████████████████████████

11  ██████████████████████████████████████

12  ██████████████████████████████████████

13  ██████████████████████████████████████

14  ██████████████████████████████████████

15  ██████████████████████████████████████

16  ██████████████████████████████████████

17  ████████████████████████  The specification of the '239 patent itself

18  describes the "cyclic extension" process used to generate separate, longer "corresponding"

19  sequences from the selected sequences before those sequences are transmitted:

20         When the number of sub-carriers that bear the sequence in the cell is not a prime
           number, it is necessary to select the sequence whose length is equal to the prime
21         number around the number of sub-carriers, and the desired sequence is obtained
           through sequence segmentation or *cyclic extension* of the sequence before being
22         transmitted.

23  (Ex. A at 11:33-38.)

24         Because, as acknowledged by Huawei's own expert, ██████████████████

25  ████████████████████████ the claim is capable of being interpreted in

26  multiple competing ways, each with a different claim scope.  A person of ordinary skill in the art

27  would not understand which of the multiple competing interpretations was the correct interpretation;

28

hence, the claim fails to inform those skilled in the art about the scope of the invention with reasonable certainty and is thus indefinite.

In his report, Huawei's expert contends

There can be no credible dispute, therefore, that the asserted claims' confused and ambiguous use of the term "the sequences" renders the claims indefinite because the claims fail to inform those skilled in the art about the scope of the invention with reasonable certainty and leave a zone of uncertainty surrounding their proper scope. *Nautilus,* 134 S. Ct. at 2129. The Court should grant summary judgment of invalidity under § 112 ¶ 2.

### 2. In the Alternative, the Court Should Grant Summary Judgment of Non-Infringement

If the accused products fail to satisfy even a single limitation of the claims, they do not infringe. *Hutchins v. Zoll Med. Corp.*, 492 F.3d 1377, 1380 (Fed. Cir. 2007); *Biagro Western Sales, Inc. v. Grow More, Inc.*, 423 F.3d 1296, 1301 (Fed. Cir. 2005). The party asserting patent infringement has the burden of proving infringement, and thus the burden of establishing that each and every limitation in the asserted claim is met. *Jazz Photo Corp. v. Int'l Trade Comm'n*, 264 F.3d 1094, 1102 (Fed. Cir. 2001) ("The initial burden is upon the complainant to establish its cause of action, here patent infringement; the patentee must present evidence sufficient to establish that one or more patent claims are infringed."); *Nutrinova Nutrition Specialities & Food Ingredients GmbH v. Int'l Trade Comm'n*, 224 F.3d 1356, 1359 (Fed. Cir. 2000) ("As a general proposition, the law places the burden of proving infringement on the patentee who alleges it.").

1    To the extent the Court adopts Huawei's interpretation that ████████████

2    ████████████████████████████████████████████████████████████████████████

3    █████████████████, summary judgment of non-infringement would still be appropriate.[3]

4    Huawei and its expert have not advanced any evidence that ████████████████████████

5    ████████████████████████████████████████████████████████████████████████

6    as required by asserted claims 7 and 18.  Nor could they as the undisputed evidence confirms that

7    the alleged "corresponding" sequences are ***not*** Zadoff-Chu or Gauss sequences.

8        With respect to claim 7, it is undisputed that both Zadoff-Chu sequences and Gauss

9    sequences are well defined sequences defined by specific formula contained in the '239 patent.  (Ex.

10   A at Formula (1) (Zadoff-Chu sequences), Formula (2) (Gauss sequences); ███████████████

11   ████████████████████████████████████████████████████████████████████████

12   █████████████).)  Huawei and its expert do not present any evidence or opinion regarding the

13   existence of any Gauss sequences in the accused products.  Instead, they allege that the accused

14   products use a Zadoff-Chu sequence.  (Veeravalli Rep. ¶¶ 443, 446, 450.)

15       The only supposed disclosure of Zadoff-Chu sequences in the LTE standard relied upon by

16   Huawei's expert is "██████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████████████████████

23   _____

24   [3]  If the Court finds "the sequences" refers back to all the previously recited instances of

25   "sequences" in the independent claims, then the same result would hold because there is no
     evidence that at least the generated "corresponding" sequences recited in the independent claims

26   are Zadoff-Chu or Gauss sequences, as required by the asserted claims.

27   [4]  Resource blocks are allocated to user terminals and 12 subcarriers are used per resource
     block.  If m = 3 (3 resource blocks are allocated), that represents 3 x 12 or 36 subcarriers.

28   (Veeravalli Dep. Tr. 54:20-55:7.)  In this example, the root sequence of length 31 must be cyclic
     shifted and extended by 5 bits to generate the claimed "corresponding" sequence of 36 bits.

6   ████████  Summary judgment is therefore appropriate.  *Exigent Technology, Inc. v. Atrana Solutions,*

7   *Inc.*, 442 F.3d 1301, 1308 (Fed. Cir. 2006) (summary judgment proper when "patentee had no

8   evidence of infringement" and movant "point[s] to the specific ways in which accused systems did

9   not meet the claim limitations"); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)

10  (summary judgment appropriate where "there is an absence of evidence to support the nonmoving

11  party's case").

12  Although summary judgment is appropriate given the absence of any proof by Huawei that

13  this limitation is met, Samsung's expert, Dr. Madisetti, provides unrebutted evidence that ████

21  Since there is no genuine issue of material fact that Huawei has not shown that the claimed

22  "corresponding" sequences are Zadoff-Chu sequences, as required by the asserted claims, the Court

23  should grant summary judgment of non-infringement of the '239 patent if it does not grant summary

24  judgment of invalidity.

25  **D.    The Asserted Claims in the '239 Patent Are Invalid Under § 101**

26  As detailed above, asserted claims 7 and 18 claim creating groups of numeric sequences that

27  are not highly correlated with each other.  Eligibility for patent protection under 35 U.S.C. § 101

28  involves a two-step analysis that first asks whether the claims at issue are directed to an abstract

idea. *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014).  If so, then the second step in the analysis asks the questions of whether the claims at issue contain some "inventive concept" that take them out of the realm of patent eligibility.  *Id.*  The Supreme Court has defined an "inventive concept" as "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself."  *Id.* (internal quotation marks omitted).

*Parker v. Flook* provides further insight into determining patent eligibility under § 101 for claims, like in the '239 patent, that include mathematical formulas.  437 U.S. 584 (1978).  For such claims that are "directed essentially to a method of calculating, using a mathematical formula, even if the solution is for a specific purpose, the claimed method is nonstatutory." *Id.* at 595.  Determining whether a claim is "directed essentially to a method of calculating" involves assuming that the mathematical formula present in the claims falls within the prior art.  *Id.* at 594.  If the remaining portions of the claims present no patentable invention (*i.e.*, have no "inventive concept"), then the claims contain patentable-ineligible subject matter under § 101.  *Id.*  The idea is that a mathematical formula cannot be made patent eligible by pairing it with "post-solution activity, no matter how conventional or obvious." *Id.* at 590.

Here, this abstract idea of creating groups of numeric sequences that are not highly correlated with each other does not have an accompanying inventive step that takes the asserted claims out of the realm of patent-ineligible subject matter.  The Court previously considered this issue in the context of Samsung's Partial Motion to Dismiss Under Rule 12(b)(6).  (Dkt. 39.)  The Court held that the asserted claims of the '239 patent are directed to an abstract idea under *Alice* step one.  (Dkt. 103 at 17.)  However, the Court ultimately denied Samsung's Motion with respect to the '239 patent because it found that the asserted claims "contain enough of an inventive concept" under *Alice* step 2 "at least based on the allegations in the Complaint."  (*Id.* at 17-18.)  But as detailed further below, it is now clear after discovery that no genuine issue of material fact exists regarding the lack of an inventive concept in the asserted claims of the '239 patent.  As a determination under § 101, the issue involves a question of law and presents no genuine issue of material fact here, so summary judgment is appropriate.

### 1.     The Court Correctly Found the '239 Patent Claims an Abstract Idea

Beginning with *Alice* step one, the asserted claims of the '239 patent claim the abstract idea of creating groups of numeric sequences that are not highly correlated with each other. For example, claim 6 recites splitting the sequences from a sequence group into separate sub-groups. Specifically, a certain number of sequences (the quantity represented by natural number n) are selected from a sequence group identified by group number k and placed into a sub-group identified by serial number i. The sequences for a particular sub-group are selected based upon their correlation, as represented by one of four different mathematical formulas included in the claims—$\lfloor k \cdot N_i / N_1 \rfloor$, $\lceil k \cdot N_i / N_1 \rceil$, $\lfloor k \cdot N_i / N_1 \rfloor + 1$ or $\lceil k \cdot N_i / N_1 \rceil - 1$. By ensuring that there is a high correlation

> **6**. A method for processing sequences in a communication system, comprising:
>
> obtaining, by a cell or a base station or a user equipment, a group number k of a sequence group allocated by the system;
>
> selecting, by the cell or the base station or the user equipment, n sequences from a candidate sequence collection to form sequences in a sub-group i in a sequence group k;
>
> wherein n is a natural number, i is a serial number of the sub-group, k is a serial number of the sequence group, a value of a basic sequence index $r_i$ in the sub-group i in the sequence group k is at least one of $\lfloor k \cdot N_i / N_1 \rfloor$, $\lceil k \cdot N_i / N_1 \rceil$, $\lfloor k \cdot N_i / N_1 \rfloor + 1$ or $\lceil k \cdot N_i / N_1 \rceil - 1$, wherein $N_i$ is a length of a sequence in the candidate sequence collection, $N_1$ is a length of a reference sub-group sequence;
>
> generating, by the cell or the base station or the user equipment, corresponding sequences according to the sequences in the formed sub-group; and
>
> communicating, by the cell or the base station or the user equipment, according to the sequences on time frequency resources corresponding to the sub-group i.

among the sequences in each individual sub-group, the claim purportedly ensures that the different sub-groups are not highly correlated with each other.

Aside from the mathematical formula for splitting sequences into different sub-groups, claim 6 only includes two other elements—generating the corresponding sequences and communicating according to the sequences on time frequency resources. These steps are conventional techniques, as stated in the specification of the '239 patent itself. (Ex. A at 5:9-11 (describing FIG. 2 as showing "the conventional art where the sequences transmitted by different cells occupy partially overlapped time frequency resources").) Independent claim 17, upon which asserted claim 18 depends, includes functionally the same conventional post-solution activity. (*See id.* at 26:29-33.) Dependent claims 7 and 18 merely further specify the use of well-known types of sequences. (*See, e.g., id.*, 25:24-26 ("Zadoff-Chu sequences and Gauss sequences"); *see also* Huawei's Opposition to Samsung's

1 Partial Motion to Dismiss (Dkt. 86) at 7 ("Zadoff-Chu . . . sequences are one type of mathematical

2 sequence that is commonly applied to radio signals in a cellular network").)

3     Because the asserted claims only contain conventional post-solution activity beyond the idea

4 of creating groups of numeric sequences that are not highly correlated with each other, the claims

5 are directed to an abstract idea under *Alice* step one. *Flook*, 437 U.S. at 590. The Court previously

6 reached the same conclusion in its Order on Samsung's Partial Motion to Dismiss: ("Samsung has

7 . . . presented an abstract idea with respect to the '239 claims, and Huawei offers no argument in

8 rebuttal"). (Dkt. 103 at 17.)

9     **2.**     **The Asserted Claims of the '239 Patent Contain No Inventive Step**

10     Turning to *Alice* step two, the asserted '239 claims fail to contain an "inventive step" that

11 elevates the abstract idea of creating groups of numeric sequences that are not highly correlated with

12 each other into the realm of patent eligibility under § 101. As noted above, the Court originally held

13 in its Order denying Samsung's Motion to Dismiss that the asserted claims of the '239 patent

14 "contain enough of an inventive concept to be patent eligible, ***at least based on the allegations in***

15 ***the Complaint***." (*See* Dkt. 103 at 17-18 (emphasis added).) At the hearing on Samsung's Motion

16 to Dismiss, Huawei's counsel stated that additional discovery, including expert discovery, would be

17 necessary to sufficiently understand the '239 patent to determine whether it claims patent-eligible

18 subject matter under § 101. (Ex. F, Oct. 26, 2018 Hearing Tr. at 10:9-14 ("You've got lawyers

19 trying to explain it to you when really you should have experts trying to explain it to you. This is

20 early in the case, for these particular patents, to get the background one would need to really

21 understand what is -- what we're talking about.").) Huawei's counsel explained "that there could

22 be an appropriate to time" to decide the patent eligibility of the asserted '239 claims "once

23 everything gets put into context," an assessment with which the Court agreed. (*Id.* at 11:3-5, 11:8

24 ("Well, you're singing to the choir").) That time is now. Since the Court's Order more than a year

25 and a half ago, Samsung has deposed Bingyu Qu, a named inventor of the '239 patent, and the

26 parties have exchanged expert reports. As described below, the statements made by Mr. Qu and the

27 contents of the rebuttal expert report by Huawei's expert on the validity of the '239 patent refute the

28 allegations from Huawei's Complaint. (*See, e.g.*, Dkt. 1 ¶ 110; *see also* Dkt. 101 ¶ 556 (denying

Samsung's contention that the asserted '239 claims are invalid under § 101).) They substantiate Samsung's contention that none of the non-mathematical equation portions of the asserted claims contain anything patent-eligible. The confirmation of the absence of an "inventive step" in the asserted '239 claims mandates a different result than that reached by the Court in its Order Denying Samsung's Motion to Dismiss.

As described in the preceding section, the few elements of the claims that are not related to the mathematical formula for creating groups of sequences are merely generic, high-level, and provide no inventive concept. Independent claim 6 includes the steps of "generating . . . sequences according to the sequences in the formed sub-group" and "communicating . . . according to the sequences on time frequency resources corresponding to the sub-group." (*See* Ex. A at 25:18-23.)[5] Bingyu Qu, named inventor of the '239 patent, admitted during his deposition that ████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████) The specification of the '239 patent states that communicating on time frequency resources was part of the "conventional art." (*See* Ex. A at 5:9-11.)

The addition in asserted dependent claims 7 and 18 of the sequences being either Zadoff-Chu sequences or Gauss sequences does not provide any inventive step because those types of sequences were well-known in the art at the time of the '239 patent. ██████████████████ ███████████████████████████████████████████) Moreover, the additional limitation provided by the dependent claims could not be an inventive step because it merely provides further specificity about the mathematical formula that describes the sequences and how they are grouped together, as given in independent claims 6 and 17. Notably, Huawei's expert, Dr. Veeravalli, in his rebuttal expert report on the validity of the '239 patent, ███████████████ ████████████████████████████████████████████████████████████████████████

---

[5] Independent claim 17 includes a functionally equivalent apparatus element: "a sequence processing unit configured to <u>generate corresponding sequences</u> according to the sequences in the formed sub-group i, and <u>process according to the sequences on time frequency resources</u> corresponding to the sub-group i." (Ex. A at 26:29-33 (emphasis added).)

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

Since the post-solution activity in the asserted claims of the '239 patent was conventional in the art at the time of the '239 patent and provides no "inventive step," the asserted claims fail under *Alice* step two and are thus invalid as directed to non-statutory subject matter.

## II. THE COURT SHOULD GRANT SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE '613 PATENT

The asserted claims of the '613 patent (Ex. H) require "receiv[ing] . . . a service sent by a base station."  Huawei alleges that ███████████████████████████████

████████████████████.  Huawei, however, has failed to set forth any evidence that the Accused Samsung Products actually meet this limitation.  Nor can it.  Accordingly, summary judgment of non-infringement of the '613 patent is appropriate.

### A.   The '613 Patent and Huawei's Allegations

The '613 patent is directed to methods and devices used for receiving a "service" and "position information" of that service in a time unit.  Huawei alleges that the Accused Samsung Products[6] infringe claims 1 and 5 of the '613 patent.  (Ex. I, Expert Report of Robert Akl, D.Sc. Regarding Infringement of United State Patent No. 8,724,613 ("Akl Rep.") ¶ 48.)  Both claims 1 and 5 require "receiv[ing] . . . a service sent by a base station."  ('613 patent at claims 1 and 5; Akl Rep. ¶¶ 77, 119-120.)  Huawei contends that ███████████████████████

███████████████████████████████████ eMBMS is Evolved Multimedia Broadcast Multicast Service.  (Akl Rep. ¶ 68.)  When enabled, eMBMS involves the broadcast of

---

[6]  Huawei asserts that the following Samsung phones infringe claims 1 and 5 of the '613 patent: Galaxy Note 5 (Verizon, AT&T, T-Mobile, and Sprint), Galaxy S5 (Verizon, AT&T, T-Mobile, and Sprint), Galaxy S6 (Verizon, AT&T, and T-Mobile), Galaxy S6 Edge (Verizon and AT&T), Galaxy S6 Edge+ (Verizon and AT&T), Galaxy S7 (Verizon, AT&T, and T-Mobile), Galaxy S7 Edge (Verizon, AT&T, and T-Mobile), Galaxy S8 (Verizon, AT&T, T-Mobile, and Sprint), Galaxy S8+ (Verizon, AT&T, T-Mobile, and Sprint) (collectively "Accused Samsung Products"). (Dkt. 318-4.)

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1    data streams within LTE networks, such as video broadcast of live sporting events.  (Akl Rep. ¶ 69;

2    Ex. K, Aug. 7, 2017 Claim Construction Tutorial at 12:21-25.)

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

Huawei does not dispute that the eMBMS functionality in the LTE standard is an *optional* feature for networks and user equipment.  (Akl Rep. ¶ 84.)

**B.    The "Evidence" Put Forth by Huawei Fails to Show that the Accused Products Infringe the Claimed Receiving a Service**

Despite the undisputed evidence above that the Accused Samsung Products are not preloaded with the required software to implement the eMBMS functionality, Huawei relies on two types of supposed "evidence" to allege that the Accused Samsung Products infringe claims 1 and 5:

1

2            But Huawei points to nothing that raises a genuine issue of fact as to whether

3 the Accused Samsung Products receive the claimed "service."  They do not.

4          First, Huawei relies on

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21          In any event, the attorney statements from the claim construction tutorial do not even show

22 that

23

24

25

26 _____

27 [7]  Dr. Akl, Huawei's expert, identifies websites from Verizon and third parties in his section on

28 Indirect Infringement.  However, these websites do not identify any Samsung Accused Products
and do not state that any Samsung Accused Product ever receives MBMS.  (Akl Rep. ¶ 248.)

1 ████████████████████████████████████████████████████████

2 ███████████

3       With respect to the documents that show that the Accused Samsung Products comply with

4 the LTE standards, Huawei has not cited to anything in the LTE standard to show ███████████

5 ████████████████████████████████████████████████████████

6 ████████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████████

8 ███████████████████████████████████████████

9       Accordingly, Huawei has not met its burden of proof in proving that the Accused Samsung

10 Products infringe claims 1 and 5 of the '613 patent.  This Court should enter summary judgment in

11 favor of Samsung based on Huawei's failure to meet its burden.

12 **III.  SAMSUNG'S '105 PATENT IS NOT INVALID IN VIEW OF MOTOROLA**

13       One of the invalidity theories raised by Huawei and its expert, Dr. Mark Mahon, against

14 Samsung's U.S. Patent No. RE44,105 ("the '105 patent") relies on a reference that is not prior art

15 as a matter of law.  Samsung requests that the Court enter summary judgment that the reference is

16 not prior art to the '105 patent and that the '105 patent is not invalid in view thereof.

17      **A.  Relevant Factual Background**

18       Huawei and Dr. Mahon allege invalidity of the '105 patent based on, *inter alia*, ███████

19 ████████████████████████████████ ("the Motorola Draft").  (Ex. R (Mahon

20 Invalidity Rpt.) at 46-51.)  The Motorola Draft comprises ██████████████████

21 █████████████████████ under a "Highly Confidential – Attorneys' Eyes Only"

22 confidentiality designation.  (Mack Decl. ¶ 2.)  Dr. Mahon alleges ████████████████

23 ████████████████████████████████████████████████████████

24 ████████████████████████████████████████████████████████

25 ████████████████████████████████████ (Ex. S (Mahon Dep. Tr.) at

26 198:1-199:9.)  U.S. Patent Application No. 11/539,220 ("the '220 Application") is the only non-

27 provisional patent application filed claiming priority to the '683 Provisional.  But, it was abandoned

28 prior to issuance.  (Ex. T (Bibliographic Data Sheet); Ex. U (Notice of Abandonment).)

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

**B.      The Motorola Draft Does Not Qualify As Prior Art to the '105 Patent**

35 U.S.C. § 102(g) (pre-AIA) provides that a prior invention may qualify as prior art if the prior inventor "reduced its invention to practice first" or "was the first party to conceive of the invention and then exercised reasonable diligence in reducing that invention to practice." *Fox Group, Inc. v. Cree, Inc.*, 700 F.3d 1300, 1304 (Fed. Cir. 2012) (citations omitted).  Thus, in all instances, a reduction to practice is required to establish prior inventorship of an invention by another. *Id.*

Here, Huawei and Dr. Mahon rely on ████████████████████████████████████ ████████████████████████████. (Ex. S (Mahon Tr.) at 198:1-199:9.)  This fails as a matter of law because the '683 Provisional was automatically abandoned, by statute, 12 months after it was filed. *See* 35 U.S.C. § 111(b)(5).  An abandoned application cannot show the required reduction to practice under § 102(g).  *In re Costello*, 717 F.2d 1346, 1350 (Fed. Cir. 1983) ("While the filing of the original application theoretically constituted a constructive reduction to practice at the time, the subsequent abandonment of that application also resulted in an abandonment of the benefit of that filing as a constructive reduction to practice."); *see also Scimed Life Sys. v. Johnson & Johnson*, 2001 U.S. Dist. Lexis 12862 (D. Del. 2001); *Church & Dwight Co. v. Abbott Labs*, 545 F. Supp.2d 447 (D.N.J. 2008); *Roberts v. Sears, Roebuck & Co.*, 665 F. Supp. 671 (N.D. Ill. 1987).  Accordingly, Huawei and Dr. Mahon cannot rely on the 683 Provisional as reduction to practice.

Additionally, although Motorola also filed a single non-provisional application claiming priority to the '683 Provisional (*i.e.*, the '220 Application), it too was abandoned. (Ex. U (Notice of Abandonment).)[8]  Therefore both the '220 Application and '683 Provisional were abandoned and, under the applicable precedent, cannot and do not qualify as reduction to practice.  As there is

---

[8] To the extent necessary, Samsung requests that the Court take judicial notice of abandonment of the '220 Application as evidenced by Exhibit U.  Exhibit U is a PTO document that is "capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned." Fed. R. Evid. 201(b).  Specifically, Exhibit U is an official PTO notice that is a public record created, maintained, and made publicly available in the course of the PTO's duties, and that contains its finding and determination, under its official duties, that the '220 Application was abandoned.

no evidence of **any** reduction to practice by Motorola, Huawei's arguments of prior inventorship

under 35 U.S.C. § 102(g) must fail.

Further, the Motorola Draft also does not qualify as a prior art printed publication under 35

U.S.C. § 102 (pre-AIA).  In order for a document to qualify as a "printed publication" under § 102,

it must be publicly accessible.  *See, e.g.*, *SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 511, F.3d 1186,

1194-95 (Fed. Cir. 2008).  "A given reference is 'publicly accessible' upon a satisfactory showing

that such document has been disseminated or otherwise made available to the extent that persons

interested and ordinarily skilled in the subject matter or art exercising reasonable diligence, can

located it." *Id.* (citations omitted).  Here, there is no dispute that the Motorola Draft is a ████████

██████████████████████████████████████████████████████████████

████████████  (Mack Decl. ¶ 2.)  Accordingly, it was not publicly accessible and, as such, is not a

prior art "printed publication" under 35 U.S.C. § 102.

As the Motorola Draft does not qualify as prior art under any provision of 35 U.S.C. § 102,

Samsung respectfully requests that the Court find the '105 patent is not invalid in view thereof.

## IV.   THERE IS NO EVIDENCE OF INEQUITABLE CONDUCT WITH RESPECT TO SAMSUNG'S '105 PATENT

Huawei and Dr. Mahon have alleged that ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████  (Ex. R (Mahon Rpt.) at 169-171; Ex.

V (Huawei's Jan. 20, 2017 Invalidity Contentions) at 109-113.)  Notwithstanding the fact that

Huawei failed to plead its defense of inequitable conduct on the '105 patent,[9] the defense should be

denied on summary judgment because there is simply no evidence of specific intent to deceive the

PTO.  "To prevail on a claim of inequitable conduct, the accused infringer must prove that the

patentee acted **with the specific intent to deceive** the PTO."  *Therasense, Inc. v. Becton, Dickinson*

*and Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (*en banc*) (emphasis added).  Notably, as the Federal

Circuit explained in *Therasense*, "clear and convincing evidence must show that the applicant *made*

---

[9]   Samsung is concurrently moving to strike opinions by Dr. Mahon relating to inequitable conduct due to Huawei's failure to plead the defense.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

*a deliberate decision* to withhold a known material reference." *Id.* (citations omitted).  Specific intent to commit acts constituting inequitable conduct may be inferred from indirect and circumstantial evidence, but only if deceptive intent is "the single most reasonable inference drawn from the evidence." *Therasense*, 649 F.3d at 1290.

Here, there is *no* evidence—whether direct or circumstantial—to show any specific intent to deceive the PTO in connection with the '105 patent by Mr. Khan or anyone at Samsung.  Nowhere in Dr. Mahon's opinions regarding inequitable conduct does he even allege specific intent to deceive the PTO, let alone identify any evidence thereof.  (Ex. R (Mahon Rpt.) at 169-171.)  Nor has Huawei adduced any testimony, communications, or documents to show specific intent.  Even accepting as true Dr. Mahon's opinions that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ (Ex. R (Mahon Rpt.) at 170), at best all he is able to show is that Mr. Khan *may* have known about certain references that *may* have been material to the '105 patent, and that those references were not disclosed to the PTO.  Thus, at best, Huawei has only come forward with circumstantial evidence of knowledge, but has failed to identify any actual or even circumstantial evidence of specific intent.  The law is clear, however, that "[k]nowledge of the reference and knowledge of materiality alone are insufficient after *Therasense* to show an intent to deceive." *1st Media, LLC v. Elec. Arts, Inc.*, 694 F.3d 1367, 1374-75 (Fed. Cir. 2012) ("An applicant's knowledge of a reference's materiality, however, cannot by itself prove, let alone clearly and convincingly prove, that any subsequent nondisclosure was based on a deliberate decision.").  Here, there are no separate facts to show specific intent.  *Id.* at 1375 (explaining that evidence of knowledge and materiality cannot establish specific intent, "[o]therwise the third element in *Therasense*'s intent to deceive analysis would be satisfied in any case in which the second element was satisfied [which] would effectively eviscerate *Therasense*'s test for mens rea and reinflict the plague of patent unenforceability based on the thinnest of speculation regarding the applicant's putative mental

state").[10] Thus, even if Mr. Khan was aware of the references and their materiality, that alone cannot prove specific intent or show a genuine issue of material fact.

As there is no evidence of specific intent to deceive, Samsung respectfully requests that the Court find there was no inequitable conduct on the '105 patent and the patent is not unenforceable.

## V.  CONCLUSION

For the foregoing reasons, Samsung respectfully asks the Court to grant its Motion for Summary Judgment on all claims described above.


DATED: July 3, 2018                            Respectfully submitted,

                                               QUINN EMANUEL URQUHART &
                                               SULLIVAN, LLP

                               By        */s/ Victoria F. Maroulis*
                                               Charles K. Verhoeven
                                               Kevin P.B. Johnson
                                               Victoria F. Maroulis
                                               David A. Perlson

                                               *Attorneys for Samsung Electronics Co., Ltd.,*
                                               *Samsung Electronics America, Inc., and*
                                               *Samsung Research America, Inc.*

---

[10]   Moreover, specific intent to deceive the PTO is far from the "single most reasonable inference" that can be drawn from the non-disclosure of the two references identified by Dr. Mahon. *Therasense*, 649 F.3d at 1290. Rather, it is more reasonable to infer that even if Mr. Khan had knowledge of the references, he did not disclose them to the PTO because he did not believe they were material to patentability of his invention. Indeed, even Dr. Mahon's bald assertion that the two references not disclosed to the PTO "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (Ex. R (Mahon Rpt.) at 170-71) is belied by the fact that he, himself, did not present a single invalidity opinion based on either of the references.