QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Attorneys for Samsung Electronics Co., Ltd.,
Samsung Electronics America, Inc., and
Samsung Research America, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| HUAWEI TECHNOLOGIES CO., LTD., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., et al.,<br><br>Defendants.<br><br>SAMSUNG ELECTRONICS CO., LTD. &<br>SAMSUNG ELECTRONICS AMERICA, INC.<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>HUAWEI TECHNOLOGIES CO., LTD.,<br>HUAWEI DEVICE USA, INC., HUAWEI<br>TECHNOLOGIES USA, INC., & HISILICON<br>TECHNOLOGIES CO., LTD.<br><br>Counterclaim-Defendants. | CASE NO. 16-cv-02787-WHO<br><br>**SAMSUNG'S NOTICE OF MOTION AND MOTION TO STRIKE PORTIONS OF HUAWEI'S EXPERT REPORTS**<br><br>**Hearing Date: August 8, 2018**<br>**Time: 2:00 p.m.**<br>**Place: Courtroom 2, 17th Floor**<br>**Judge: Hon. William H. Orrick** |

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

### NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on August 8, 2018, at 2 P.M., Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively "Samsung") shall and hereby do move the Court pursuant to Federal Rules of Civil Procedure 9 and 37, as well as Patent Local Rule 3-3, to strike portions of the expert reports submitted by Huawei Technologies Co., Ltd., Huawei Device USA, Inc., Huawei Technologies USA, Inc., and HiSilicon Technologies Co., Ltd. (collectively "Huawei").  This motion is based on this notice of motion and supporting memorandum of points and authorities, as well as such other written or oral argument as may be presented at or before the time this motion is deemed submitted by the Court.

### RELIEF REQUESTED

Pursuant to Federal Rules of Civil Procedure 9 and 37 and Patent Local Rule 3-3, Samsung seeks an order excluding the specific portions of Huawei's expert reports identified in the accompanying memorandum of points and authorities.


DATED:  July 3, 2018                                     Respectfully submitted,

                                                                    QUINN EMANUEL URQUHART &
                                                                    SULLIVAN, LLP

                                               By        */s/ Victoria F. Maroulis*
                                                                    Charles K. Verhoeven
                                                                    Kevin P.B. Johnson
                                                                    Victoria F. Maroulis
                                                                    David A. Perlson

                                                                    *Attorneys for Samsung Electronics Co., Ltd.,*
                                                                    *Samsung Electronics America, Inc., and Samsung*
                                                                    *Research America, Inc.*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...........................................................................................................1

II.    FACTUAL BACKGROUND ........................................................................................1

    A.    Huawei's Unpled Inequitable Conduct Defense For The '105 Patent .......................1

    B.    Huawei's Undisclosed Invalidity Contentions For The '825 Patent ..........................2

    C.    Huawei's Undisclosed Non-Infringing Alternatives And Non-Infringement
       Contentions For All Of The Samsung Asserted Patents .............................................2

    D.    Huawei's Undisclosed Non-Infringing Alternatives For The Huawei
       Asserted Patents ........................................................................................................3

    E.    Huawei's Undisclosed Non-Infringement Contentions For The Samsung
       Asserted Patents ........................................................................................................4

    F.    Huawei's Omission Of Priority Dates For The '587 And '892 Patents In Its
       Opening Expert Reports .............................................................................................5

    G.    Huawei's Undisclosed Doctrine Of Equivalents Argument For The '239
       Patent ........................................................................................................................6

III.   APPLICABLE LAW ....................................................................................................6

IV.    ARGUMENT ...............................................................................................................9

    A.    Huawei's Unpled Inequitable Conduct Defense For Samsung's '105 Patent
       Should Be Stricken ....................................................................................................9

    B.    Huawei's Undisclosed Invalidity Contentions For Samsung's '825 Patent
       Should be Stricken ..................................................................................................10

    C.    Huawei's Undisclosed Non-Infringing Alternatives For The Samsung
       Patents-in-Suit Should Be Stricken .........................................................................12

    D.    Huawei's Undisclosed Non-Infringement Theories For Samsung's '105,
       '350, '130, And '726 Patents Should Be Stricken ..................................................14

    E.    Huawei's Undisclosed Analysis Of Non-Infringing Alternatives For The
       Huawei Patents-in-Suit Should Be Stricken ............................................................18

    F.    The Priority Date Analyses Disclosed In The Rebuttal '587 and '892 Expert
       Reports Should Be Stricken .....................................................................................20

    G.    Huawei's Undisclosed Doctrine Of Equivalents Argument For The '239
       Patent Should Be Stricken .......................................................................................22

V.     CONCLUSION ..........................................................................................................24

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Am. Med. Sys., Inc. v. Laser Peripherals, LLC*,
   712 F. Supp. 2d 885 (D. Minn. 2010) ............................................................ 6

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
   No. 11-cv-01846-LHK, 2012 WL 3155574 (N.D. Cal. Aug. 2, 2012) ............. 7, 11, 16, 17

*ASUS Computer Int'l v. Round Rock Research, LLC*,
   No. 12-cv-02099 JST(NC), 2014 WL 1463609 (N.D. Cal. Apr. 11, 2014) ......... 6, 7, 19, 20

*CSB-System Int'l Inc. v. SAP Am. Inc.*,
   No. 10-2156, 2012 WL 1645582 (E.D. Pa. May 10, 2012) ........................................... 6, 8

*Dynetix Design Sols., Inc. v. Synopsys, Inc.*,
   No. C 11-5973 PSG, 2013 WL 4537838 (N.D. Cal. Aug. 22, 2013) ............................ 7, 19

*Edgewell Personal Care Brands, LLC v. Albaad Massuot Yitzhak, Ltd.*,
   No. 15-1188-RGA, 2017 WL 19007362017 (D. Del. May 9, 2017) ................................. 11

*EMC Corp. v. Pure Storage, Inc.*,
   154 F. Supp. 3d 81 (D. Del. 2016) ............................................................................. 8

*Ericsson Inc. v. TCL Comm'cn Tech. Holdings, Ltd.*,
   No. 2:15-cv-00011-RSP, 2017 WL 5137401 (E.D. Tex. Nov. 4, 2017) ...................... 8, 12

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009) ................................................................................. 5, 6

*Finjan, Inc. v. Proofpoint, Inc.*,
   No. 13-cv-05808-HSG, 2015 WL 9460295 (N.D. Cal. Dec. 23, 2015) ........................... 10

*Grain Processing Corp. v. Am. Maize-Prods Co.*,
   185 F.3d 1341 (Fed Cir. 1999) ................................................................................. 8, 12

*MediaTek, Inc. v. Freescale Semiconductor, Inc.*,
   No. 11-cv-5341 YGR, 2014 WL 690161 (N.D. Cal. Feb. 21, 2014) ....................... 6, 9, 10

*MEMC Elec. Materials v. Mitsubishi Materials Silicon Corp.*,
   No. C 01-4925 SBA, 2004 WL 5363616 (N.D. Cal. Mar. 2, 2004) ............................... 19

*Morrison v. Mahoney*,
   399 F.3d 1042 (9th Cir. 2005) ....................................................................................... 6

*On-Track Innovations Ltd. v. T-Mobile USA, Inc.*,
   106 F. Supp. 3d 369 (S.D.N.Y. 2005) ........................................................................ 6, 8

*PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299(Fed. Cir. 2008) .................................. 9, 20

*Precision Fabrics Grp. v. Tietex Int'l Ltd.*,
   297 F. Supp. 3d 547 (D. S.C. 2018) ........................................................................ 12

*Rambus Inc. v. Hynix Semiconductor Inc.*,
    No. C-05-00334 RMW, 2008 WL 5411564 (N.D. Cal. Dec. 29, 2008) ............................ 7

*Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377
    (Fed. Cir. 2013) ........................................................................................................ 8

*Silver State Intellectual Technologies, Inc. v. Garmin Intern., Inc.*,
    32 F. Supp. 3d 1155 (D. Nev. 2014) ............................................................................ 12

*Smart Skins LLC v. Microsoft Corp.*,
    No. C-15-544-MJP, 2016 WL 4148091 (W.D. Wash. July 1, 2016)............................ 8, 12

*Synthes USA, LLC v. Spinal Kinetics, Inc.*,
    No. C-09-01201 RMW, 2011 WL 11709387 (N.D. Cal. Aug. 19, 2011).................... 11, 17

*Woods v. DeAngelo Marine Exhaust, Inc.*,
    692 F.3d 1272 (Fed. Cir. 2012) ............................................................................ 7, 16

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001) .................................................................................. 7

**Statutory Authorities**

35 U.S.C. § 112 ............................................................................................... 2, 9, 10

**Rules and Regulations**

Fed. R. Civ. P. 9(b).......................................................................................... 1, 5

Fed. R. Civ. P. 26(e)........................................................................................ 7

Fed. R. Civ. P. 26(e)(1).................................................................................... 7, 11, 17

Fed. R. Civ. P. 37(c)........................................................................................ 7

Fed. R. Civ. P. 37(c)(1)..................................................................................... 7

Patent Local Rule 3-3 ....................................................................................... 6

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

## I.   INTRODUCTION

The Federal Rules of Civil Procedure and Local Patent Rules provide a variety of mechanisms—including pleadings, invalidity contentions, and contention interrogatories—that allow parties to ascertain the theories and arguments the opposing party plans to rely on at trial.  By disclosing a number of arguments for the first time during expert discovery and, more specifically, in its expert rebuttal reports, Huawei has improperly deprived Samsung of the opportunity to consider and address those arguments.  This Court should not allow Huawei's tactics, and should strike the relevant portions of Huawei's expert reports that were not properly pled or disclosed in a timely manner, as required by the Rules.[1]

## II.   FACTUAL BACKGROUND

### A.   Huawei's Unpled Inequitable Conduct Defense For The '105 Patent

On November 11, 2016, Huawei filed its answer and response to Samsung's amended counterclaims.  (Dkts. 102-2, 102-3.)  In its response, Huawei asserted that U.S. Patent No. 8,457,588 ("the '588 patent") is unenforceable due to inequitable conduct.  (Dkt. 102-2 at 140-47.) Huawei did not assert this defense for any other patent.  (*See id.*)[2]

The defense of inequitable conduct must be pled with particularity.  *See* Fed. R. Civ. P. 9(b). While Huawei alleged inequitable conduct for the '105 patent in its invalidity contentions, Huawei never sought leave from the Court before the close of discovery to amend its answer and response to include the defense.  Therefore, Samsung assumed that Huawei was no longer pursuing the defense.

---

[1]   For the convenience of the Court, Exhibits B, D, G-N, and R-W show in highlighting the portions of the expert reports that should be stricken.  Exhibits B, D, and G-N are the opening and rebuttal expert reports of Dr. Mark Mahon ('105 and '130 patents), Dr. Thomas La Porta ('825 patent), Dr. Robert Akl ('350 and '419 patents), and Dr. Thomas Fuja ('726 patent).  Exhibits R-U are the opening reports of Dr. Venugopal V. Veeravalli ('239 and '892 patents) and Dr. Robert Akl ('587 and '613 patents).  Exhibits V-W are the rebuttal reports of Dr. Veeravalli ('892 patent) and Dr. Akl ('587 patent).

[2]   When the '588 patent was stayed (*see* Dkt. 267), Samsung filed an amended case narrowing statement removing the '588 patent from this case.  (*See* Dkt. 275 at 1.)

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1    Notwithstanding Huawei's failure to comply with Rule 9, Huawei's technical expert, Dr.

2   Mark Mahon, opined in his opening expert report that ███████████████████████████

3   ████████████. (*See* Ex. B at 169-71.)  In order to avoid motion practice on this issue, Samsung

4   repeatedly contacted Huawei's counsel to obtain confirmation that Huawei will no longer pursue

5   this defense.  (*See* Ex. A (June 13 and 21, 2018 Emails from I. Lordgooei to Sidley Austin).)  Huawei

6   has not responded.

7       **B.      Huawei's Undisclosed Invalidity Contentions For The '825 Patent**

8    Pursuant to Patent L.R. 3-3, Huawei served its First Supplemental Invalidity Contentions on

9   September 22, 2017.  The Supplemental Invalidity Contentions included Huawei's assertions that

10   U.S. Patent No. 9,288,825 ("the '825 patent") was invalid under 35 U.S.C. § 112 because certain

11   terms lacked written description, were not enabled, and/or were indefinite.  (*See* Ex. C at 73, 80.)

12   After the close of fact discovery, Huawei's invalidity expert opined on the '825 patent and proffered

13   several additional reasons that were not disclosed in Huawei's Supplemental Invalidity Contentions

14   as to why the '825 patent is allegedly invalid under 35 U.S.C. § 112.  Specifically, Huawei's expert

15   argued that ████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████. (*See*

19   Ex. D at 173-77.)  Huawei's expert additionally contended that ██████████████████

20   ████████████████████████████████████████████████████████████

21   █████████████████████████████████████████████. (*Id.* at 184-85.)

22       **C.      Huawei's Undisclosed Non-Infringing Alternatives And Non-Infringement
            Contentions For All Of The Samsung Asserted Patents**

23

24    During fact discovery, Samsung served an interrogatory asking Huawei to identify any non-

25   infringing alternatives to the Samsung Patents-in-Suit.  (*See* Ex. E at 30-31 (Interrogatory No. 14).)

26   In response, Huawei stated ████████████████████████████████████████ (Ex. E at

27   31), yet its final response consisted of nothing more than the rote statement that ███████████

28   ██████████████████████████████████████████████████████████████ (*Id.*)

1  Huawei also asserted, without elaboration, that ███████████████████

2  ████████████████████████████████████████████████████████

3  ██████████████████████████ (*Id.*)

4       Although Huawei bore the burden of proving non-infringing alternatives, Huawei did not

5  identify any in its opening expert reports.  (*See* Ex. B at 2-7; Ex. D at 2-3; Ex. G at 2-8; Ex. H at 2-

6  3; Ex. I at 2-4.)  It was not until Huawei's rebuttal expert reports—once Samsung no longer had an

7  opportunity to respond—that Huawei finally disclosed its alleged non-infringing alternatives.  (*See*

8  Ex. J at 54-55 ('105 patent); Ex. K at 125-28 ('825 patent); Ex. L at 95 (U.S. Patent No. 8,509,350

9  ("the '350 patent")); Ex. M at 43-47 (U.S. Patent No. 8,761,130 ("the '130 patent")); Ex. N at 88-

10  89 (U.S. Patent No. 8,619,726 ("the '726 patent")).)  None of these alternatives was disclosed in

11  response to Interrogatory No. 14.

12      **D.**    **Huawei's Undisclosed Non-Infringing Alternatives For The Huawei Asserted Patents**

13

14       Relatedly, Samsung served a separate interrogatory, Interrogatory No. 35, asking Huawei to

15  describe in detail any "design-around alternatives" to the technology claimed in the patents Huawei

16  is asserting against Samsung.  (Ex. O at 2.)  Huawei only responded to this interrogatory three weeks

17  after the close of fact discovery with the following generic response:

18  

19

20  (Ex. P at 22.)  Instead of identifying any specific design-around alternatives, Huawei generally

21  referred to its response to Samsung's Interrogatory No. 20, even though Huawei disclosed no

22  alternatives in response to Interrogatory No. 20.  (*See* Ex. Q at 18-19.)  Although Huawei's response

23  to Interrogatory No. 20 mentions potential alternatives for the '613 and '587 patents, none of those

24  alternatives were analyzed in any detail.  (*See id.* at 22-23, 25-26.)  Less than one month later,

25  Huawei's experts discussed purported non-infringing alternatives for each of the Huawei Patents-

26  in-Suit in their respective opening infringement expert reports.  (*See* Ex. R ¶¶ 537-45 ('239 patent);

27

28

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

Ex. S at ¶¶ 481-500 ('892 patent); Ex. T at ¶¶ 296-309 ('587 patent); Ex. U at ¶¶ 279-84 ('613 patent).)  None of these alternatives were disclosed in response to Interrogatory No. 35.

### E.   Huawei's Undisclosed Non-Infringement Contentions For The Samsung Asserted Patents

During fact discovery, Samsung served an interrogatory asking Huawei to identify non-infringement theories for the Samsung Patents-in-Suit.  (*See* Ex. F at 53-64 (Interrogatory No. 28).) Huawei initially responded in boilerplate fashion with ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. (*See id.* at 54-64.)  In a joint letter brief submitted to the Court, Samsung sought to compel Huawei's actual non-infringement theories, noting that Huawei's response had impermissibly withheld Huawei's "factual and legal contentions" on this issue, significantly prejudiced Samsung, and contravened settled law in this District requiring parties to furnish complete responses to contention interrogatories.  (*See* Dkt. 258-3 at 1-3 & n.1.)  Indeed, Samsung's own response to a mirror interrogatory served by Huawei contained far more substantive details, putting Huawei on notice of its non-infringement theories.  (*See* Dkt. 258-10 at 231-266.)  During the parties' subsequent meet and confers, Huawei agreed to supplement its response to Interrogatory No. 28. (*See* Dkt. 274; Ex. F at 64 ███████████████████████████████████████████████████████████████████████████████████████████████████████████.) Huawei's supplemental response included a list of what Huawei portrayed as non-infringement arguments for each of the Samsung Patents-in-Suit.  (*See* Ex. F at 64-83.)

In its rebuttal expert reports, Huawei for the first time included several additional non-infringement arguments absent from its supplemental response to Interrogatory No. 28.   In particular, Huawei's experts advanced the following non-infringement arguments not disclosed in response to Interrogatory No. 28, or at any point during fact discovery:

- For the '105 patent: ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

- For the '350 patent:

- For the '130 patent: (*see* Ex. M at 40-41).

- For the '726 patent: (*see* Ex. N at 76-81).

None of these theories was disclosed in response to Interrogatory No. 28.

**F.   Huawei's Omission Of Priority Dates For The '587 And '892 Patents In Its Opening Expert Reports**

As the party asserting infringement of the '587 and '892 patents, Huawei bears the burden of demonstrating that both patents are entitled to specific priority dates.  Yet, both of the opening expert reports analyzing the infringement of the '587 and '892 patents, respectively, are bereft of any discussion of the priority date each patent is entitled to.  (*See* Ex. S at ii-iii; Ex. T at ii-v.)  In the rebuttal validity reports assessing the same patents, however, both experts opined that the '587

1   and '892 patents are entitled to specific priority dates that were not discussed in either of the opening

2   reports.  (*See* Ex. V ¶¶ 62-65; Ex. W ¶¶ 59-77.)

3   **G.     Huawei's Undisclosed Doctrine Of Equivalents Argument For The '239 Patent**

4        In the infringement contentions Huawei served for the '239 patent, Huawei did not invoke

5   the doctrine of equivalents in the corresponding claim chart, and the only reference to the doctrine

6   of equivalents was boilerplate language in the accompanying cover pleading:  "To the extent any

7   limitation is found or alleged not to be literally present . . . Huawei then asserts that, if any

8   differences between the claim elements and the accused systems and methods are found to exist,

9   such differences are insubstantial and the accused systems and methods thus infringe under the

10  doctrine of equivalents."  (Ex. X at 8.)  Subsequently, Huawei did not make any attempt to amend

11  its infringement contentions to assert infringement under the doctrine of equivalents.  Nevertheless,

12  the opening expert report asserting that the '239 patent is infringed includes the opinion ████████

13  ███████████████████████████████████████████████████ under the doctrine of equivalents.

14  (Ex. R at ¶¶ 254, 271, 282, 318, 338, 370.)

15  **III.   APPLICABLE LAW**

16       It is well-settled that under Fed. R. Civ. P. 9(b), inequitable conduct must be "pled with

17  particularity."  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009).  This

18  requires identification of the "specific who, what, when, where, and how of the material

19  misrepresentation or omission committed before the PTO."  *Id.* at 1327.  It is equally axiomatic that

20  a failure to "affirmatively set forth [a] defense" such as inequitable conduct in a responsive pleading

21  effectuates a "waiver."  *Morrison v. Mahoney*, 399 F.3d 1042, 1046 (9th Cir. 2005).  Courts thus

22  routinely strike theories of inequitable conduct that are not specifically pled, even if they appear in

23  other discovery responses.  *See CSB-System Int'l Inc. v. SAP Am. Inc.*, No. 10-2156, 2012 WL

24  1645582, at *6 (E.D. Pa. May 10, 2012) ("[E]ven assuming *arguendo* that such discovery responses

25  could conceivably be construed to alert Plaintiff to Defendant's new contention . . . [of] inequitable

26  conduct, Defendant failed to amend its Answer and Counterclaims to set forth this new theory.  As

27  set forth above, inequitable conduct, while a broader concept tha[n] fraud, must be ***pled*** with

28  particularity." (emphasis in original) (internal quotation marks and citations omitted)); *see also Am.*

*Med. Sys., Inc. v. Laser Peripherals, LLC*, 712 F. Supp. 2d 885, 920-21 (D. Minn. 2010) ("LP fails to explain why, if it was aware of Figure 23's significance when serving its Prior Art Statement in May 2009, it did not move to amend its Amended Answer and Counterclaim to include Figure 23 in its inequitable conduct allegations."); *On-Track Innovations Ltd. v. T-Mobile USA, Inc.*, 106 F. Supp. 3d 369, 405 (S.D.N.Y. 2005) ("[T]his theory of inequitable conduct appears *nowhere* in the[] answer and counterclaim.  This alone is a sufficient basis for dismissal." (emphasis in original) (internal citation omitted)).

Further, this District's Patent Local Rules "require parties to crystallize their theories of the case early in the litigation and adhere to those theories once they have been disclosed."  *MediaTek, Inc. v. Freescale Semiconductor, Inc.*, No. 11-cv-5341 YGR, 2014 WL 690161, at *1 (N.D. Cal. Feb. 21, 2014) (internal quotation marks and citations omitted).  "Any invalidity theories not disclosed pursuant to Local Rule 3-3 are barred, accordingly, from presentation at trial (whether through expert opinion testimony or otherwise)."  *Id.*  This mandate extends to written description theories, which must be described in invalidity contentions such that they give "the other party sufficient notice for it to engage in meaningful discovery and preparation of its case."  *Id.* at *6; *see also ASUS Computer Int'l v. Round Rock Research, LLC*, No. 12-cv-02099 JST (NC), 2014 WL 1463609, at *1 (N.D. Cal. Apr. 11, 2014) ("[A] party may not use an expert report to introduce . . . new invalidity theories . . . not disclosed in the parties' . . . invalidity contentions.").

Similarly, infringement contentions must describe "[w]hether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents."  Patent L.R. 3-1(e).  The rule mandates a "a limitation-by-limitation analysis, not a boilerplate reservation."  *Rambus Inc. v. Hynix Semiconductor Inc.*, No. C-05-00334 RMW, 2008 WL 5411564, at *3 (N.D. Cal. Dec. 29, 2008).  Accordingly, when litigants attempt to assert infringement under the doctrine of equivalents based solely on boilerplate recitations, those theories are stricken.  *See, e.g.*, *ASUS Computer Int'l v. Round Rock Research, LLC*, No. 12-CV-02099 JST (NC), 2014 WL 1463609, at *3 (N.D. Cal. Apr. 11, 2014); *Dynetix Design Sols., Inc. v. Synopsys, Inc.*, No. C 11-5973 PSG, 2013 WL 4537838, at *1 (N.D. Cal. Aug. 22, 2013).

1   The Federal Circuit has recognized that "[c]ontention interrogatories . . . serve an important

2   purpose in helping to discover facts supporting the theories of the parties.  Answers to contention

3   interrogatories also serve to narrow and sharpen the issues thereby confining discovery and

4   simplifying trial preparation."  *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1280 (Fed.

5   Cir. 2012).  Additionally, parties have a continuing obligation to supplement or correct responses to

6   interrogatories.  *See* Fed. R. Civ. P. 26(e).  Accordingly, failure to include information responsive

7   to an interrogatory results in the sanction of exclusion; "the party is not allowed to use that

8   information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was

9   substantially justified or harmless."  Fed. R. Civ. P. 37(c)(1); *see also Woods*, 692 F.3d at 1282

10  ("Having properly found that [the] failure to supplement its interrogatory response was a violation

11  of Rule 26(e), the district court was well within its discretion in excluding the drawings under

12  Federal Rule of Civil Procedure 37(c)."); *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No. 11-cv-01846-

13  LHK, 2012 WL 3155574, at *4 (N.D. Cal. Aug. 2, 2012) ("Rule 37 mandates that a party's failure

14  to comply with the obligations under Federal Rule of Civil Procedure 26(e)(1) results in that party

15  being precluded from use [of] that information . . . ." (alteration in original) (internal quotation

16  marks and citations omitted)).  Thus "exclusion is an appropriate remedy for failing to fulfill the

17  required disclosure requirements of Rule 26(a)."  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259

18  F.3d 1101, 1106 (9th Cir. 2001).

19  Moreover, an accused infringer bears the burden of proof to demonstrate the "availability of

20  its posited non-infringing alternatives" to the asserted patents.  *EMC Corp. v. Pure Storage, Inc.*,

21  154 F. Supp. 3d 81, 117 (D. Del. 2016) (citing *Grain Processing Corp. v. Am. Maize-Prods Co.*,

22  185 F.3d 1341, 1353 (Fed Cir. 1999)).  Thus, any theories regarding alleged alternatives should be

23  presented in the party's opening expert report.  Moreover, when non-infringing alternatives are

24  omitted from opening expert reports and introduced for the first time in rebuttal reports, the resulting

25  prejudice is substantial, warranting exclusion of the belated discussions of non-infringing

26  alternatives.  *See Ericsson Inc. v. TCL Comm'cn Tech. Holdings, Ltd.*, No. 2:15-cv-00011-RSP,

27  2017 WL 5137401, at *14 (E.D. Tex. Nov. 4, 2017); *Smart Skins LLC v. Microsoft Corp.*, No. C-

28  15-544-MJP, 2016 WL 4148091, at *2 (W.D. Wash. July 1, 2016).

Finally, the Federal Rules require all expert testimony to be disclosed in a written report that contains "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i).  Opening expert reports therefore must include the expert's opinions on all matters for which his or her represented party bears the burden of proof.  *See id.* "The purpose of the expert disclosure rule is to provide opposing parties reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1381 (Fed. Cir. 2013) (internal quotations omitted).  Rebuttal expert reports are reserved for "evidence [that] is intended solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii).  In a patent infringement action, once the alleged infringer puts forth sufficient evidence to show that anticipating prior art exists, the burden then shifts to the party asserting infringement to either prove that the prior art does not actually anticipate, or that the patent being asserted is entitled to claim priority to an earlier filing date.  *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008); *see also PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305-06 (Fed. Cir. 2008).

## IV.  ARGUMENT

### A.  Huawei's Unpled Inequitable Conduct Defense For Samsung's '105 Patent Should Be Stricken

Simply put, because Huawei did not plead inequitable conduct as to the '105 patent, the defense is not in the case.  This is not a case where Huawei failed to plead the defense with particularity.  Rather, inequitable conduct was not pled at all.  Therefore, Huawei has no colorable argument that it can proceed with this defense at trial.[3]

Failure to plead a defense is, by itself, a "sufficient basis for dismissal." *On-Track*, 106 F. Supp. 3d at 405; *see also CSB-System*, 2012 WL 1645582, at *6 ("Defendant failed to amend its

---

[3] Samsung has separately moved for summary judgment of no inequitable conduct because Huawei and its expert have failed to present any evidence, whether direct or circumstantial, to show any specific intent to deceive the USPTO by Samsung or the inventor of the '105 patent. Thus, not only has Huawei failed to plead inequitable conduct, it has also failed to gather enough evidence to proceed to trial on the defense.

1  Answer and Counterclaims to set forth this new theory.").  Accordingly, since Huawei never moved

2  to amend its Answer and Counterclaims to plead inequitable conduct, it is immaterial that Huawei

3  alluded to it in other discovery responses (*e.g.*, its invalidity contentions).  Should Huawei move at

4  this late date to amend its Answer and Counterclaims, that request should be denied given that

5  discovery has completely closed and trial is fast-approaching.  *See CSB-System*, 2012 WL 1645582,

6  at *6 n.6 ("Nor would this Court grant any motion for leave to amend filed by Defendant at this

7  point . . . .  Any attempt to do so at this juncture would be denied on the grounds of . . . undue

8  prejudice, and undue delay . . . .").  Samsung would be unduly prejudiced if Huawei were to add the

9  defense after the close of both fact and expert discovery.

10      Accordingly, Samsung requests that paragraphs 442-446 of Dr. Mahon's opening report for

11  the '105 patent (Ex. B at 169-171) be stricken.

12      **B.      Huawei's Undisclosed Invalidity Contentions For Samsung's '825 Patent
           Should be Stricken**

13

14      Although Huawei disclosed a limited number of invalidity arguments based on 35 U.S.C. §

15  112 in its Supplemental Invalidity Contentions, it advanced a number of additional arguments in its

16  opening expert report that have no basis in its Invalidity Contentions.  Accordingly, Huawei has

17  failed to provide the requisite "sufficient notice" to Samsung as to these arguments, all of which

     should thus be stricken.  *MediaTek, Inc.*, 2014 WL 690161, at *6.

18      On page 173 of his opening expert report, Huawei's expert

19



20

21

22  (Ex. D at 173-174.)  But the words "signal generator" do

     not even appear in the sections of Huawei's Supplemental Invalidity Contentions devoted to the

23  written description and enablement arguments germane to the '825 patent.  (Ex. C at 73, 80.)

24      Similarly, on page 175 of the opening expert report,

25

26

27  (Ex. D at 175

28

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1   ████████████████████████.)   Again,  the  applicable  sections  of  Huawei's

2   Supplemental  Invalidity  Contentions  are  devoid  of  any  discussion  of  this  term,  or  any  written

3   description argument based on the claimed "downlink signal processor."  (Ex. C at 73, 80.)

4          The same is true of the argument that ████████████████████████

5   ████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████

8   ████████████████████████████████████  (Ex. D at 176-177.)  Although

9   Huawei  mentions  the  term  "predetermined  delay  duration"  in  its  Supplemental  Invalidity

10  contentions,  it  does  so  in  wholly  conclusory  fashion:  "The  phrases  'predetermined delay duration,'

11  'without checking the downlink channel,' 'valid period,' 'UE-ID,' and 'equal to' as found in claims

12  1 and 4 of the '825 patent cause these claims to be invalid for indefiniteness [under 35 U.S.C. § 112,

13  Second Paragraph]."  (Ex. C at 80.)  There are two distinct deficiencies in this disclosure.  First, the

14  excerpted  portion  of  Huawei's  Invalidity  Contentions  is  a  definiteness  argument  (35 U.S.C. § 112,

15  Second Paragraph), while Huawei's expert analyzed ████████████████████████

16  ████████████████████████████████████, which Huawei

17  treated differently; indeed, ████████████████████████

18  (*See* Ex. D at 176-177; 179-180.)  Second, and more importantly, the disclosure does not meet the

19  "threshold of . . . sufficient notice."  *Mediatek*, 2014 WL 690161, at *6.  Huawei's Supplemental

20  Invalidity Contentions fail "to explain in even the most basic terms why [it] contends that the" term

21  predetermined  delay  duration  is  indefinite.  *Id.*;  *see also Finjan, Inc. v. Proofpoint, Inc.*, No. 13-cv-

22  05808-HSG,  2015  WL  9460295,  at  *3  (N.D. Cal. Dec. 23, 2015)  ("Because  Defendants  failed  to

23  previously disclose these theories, the Court strikes them from the expert report and precludes the

24  expert  from  relying  on  them  in  trial.").   Finally,  Huawei  waived  the  argument  that  the  term

25  "predetermined delay duration" is indefinite by failing to raise it in their claim construction briefing

26  or at the Markman hearing, when the Court expressly considered the term.  *Edgewell Personal Care*

27  *Brands, LLC v. Albaad Massuot Yitzhak, Ltd.*, No. 15-1188-RGA, 2017 WL 19007362017, slip op.

28  at 4 (D. Del. May 9, 2017) (finding an indefiniteness claim construction argument is waived when

1   it is not timely briefed); *Silver State Intellectual Technologies, Inc. v. Garmin Intern., Inc.*, 32 F.

2   Supp. 3d 1155, 1160, 1166 (D. Nev. 2014) (granting motion to strike untimely contentions under

3   35 U.S.C. § 112 for failure to address them during claim construction).

4        Huawei's expert also offers opinions that ███████████████████████

5   ████████████████████████████████████████████████████████████

6   ████████████████████████████████████. (Ex. D at 185.)  However,

7   again, these opinions are nowhere to be found in Huawei's Supplemental Invalidity Contentions.

8   Indeed, none of these terms appears anywhere in the laundry list of terms Huawei claimed were

9   indefinite in its contentions.  (*See* Ex. C at 80.)

10        Accordingly, Samsung requests that the following portions of the Dr. La Porta's opening

11   report for the '825 patent (Ex. D) be stricken:

12           • Paragraphs 478-485 and 489 on pages 173-79;

13           • Paragraphs 499-501 on pages 185-86.

**C.   Huawei's Undisclosed Non-Infringing Alternatives For The Samsung Patents-in-Suit Should Be Stricken**

15        On September 2, 2016, Huawei responded to Samsung's Interrogatory No. 14, which sought,

16   in pertinent part, "any alleged design-around or alternative technology or method" "for each of the

17   Samsung Patents-in-Suit," by objecting to the Interrogatory as "premature."  (Ex. E at 30-31.)  In

18   its response, Huawei stated it "will respond to this interrogatory at an appropriate time after serving

19   its Answer or other response."  (*Id.*)  Even after a year-and-a-half of discovery, Huawei never

20   meaningfully supplemented its response.  Instead, at the close of fact discovery, Huawei stated it

21   would "disclose its experts' opinions in accordance with the expert discovery schedule," and only

22   identified the functionality of its own products, without explanation, as a "design-around" while

23   also adding a reference to "deposition testimony."  (*Id.* at 31.)  In each of its non-infringement expert

24   rebuttal reports, however, Huawei identified what it perceives to be non-infringing alternatives to

25   each of the Samsung Patents-in-Suit—none of which were disclosed in response to Interrogatory

26   No. 14 or at any point during fact discovery.  *See* Ex. J at 54-55 ('105 patent); Ex. K at 125-28 ('825

27   patent); Ex. L at 95 ('350 patent); Ex. M at 43-47 ('130 patent); Ex. N at 88-89 ('726 patent).)

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1   Because Huawei "violated its obligations pursuant to Fed. R. Civ. P. 26(e)(1)," Samsung's "motion

2   to strike and exclude evidence . . . [should be] granted." *Synthes USA, LLC v. Spinal Kinetics, Inc.*,

3   No. C-09-01201 RMW, 2011 WL 11709387, at *7-*8 (N.D. Cal. Aug. 19, 2011).

4          As non-compliance with its discovery obligations is evident, the "burden is on" Huawei "to

5   demonstrate that it meets one of the two exceptions to mandatory sanctions": (1) the failure was

6   substantially justified; or (2) the failure was harmless. *Apple*, 2012 WL 3155574, at *4.  Huawei

7   cannot discharge its burden on either score.  First, the non-infringing alternatives Huawei identified

8   in its rebuttal expert reports are all based on materials accessible to Huawei throughout fact

9   discovery, including

10   _____ . (*See, e.g.*,

11

12

13

14

15   _____.)  No rationale justifies

16   Huawei's withholding of this information, which was readily available throughout fact discovery.

17          The ensuing prejudice to Samsung, meanwhile, is substantial.  Critically, Huawei not only

18   omitted this information from its interrogatory responses, it also did not identify a single non-

19   infringing alternative in its opening expert reports.  Thus Huawei hid the ball until Samsung no

20   longer had an opportunity to respond, thereby robbing Samsung of an opportunity to address these

21   issues in its rebuttal expert reports.  As the "accused infringer," Huawei bore the burden of showing

22   that any non-infringing alternative was "available during the accounting period" and therefore

23   should have addressed this issue in its opening expert reports. *Grain Processing Corp.*, 185 F.3d at

24   1353.   By waiting until serving its rebuttal reports to identify the asserted non-infringing

25   alternatives, Huawei stripped Samsung of any opportunity to respond, exacerbating the prejudice

26   that has occurred. *See Smart Skins*, 2016 WL 4148091, at *2 ("The relevant case law establishes

27   that Microsoft, the alleged infringer, has the burden of showing that non-infringing alternatives were

28   both available to it and were acceptable to its customers during the damages period . . . . Therefore,

Microsoft should have disclosed expert testimony regarding the non-infringing alternatives at issue in its opening expert reports, but failed to do so . . . . Accordingly, the Court strikes Microsoft's evidence of non-infringing alternatives presented in its experts' rebuttal reports . . . ."); *see also Ericsson Inc.*, 2017 WL 5137401, at *14 ("TCL's disclosure of the new theory in its rebuttal expert reports, after the close of fact and expert discovery, is too late to cure the prejudice."); *Precision Fabrics Grp. v. Tietex Int'l Ltd.*, 297 F. Supp. 3d 547, 560 (D. S.C. 2018) ("At this late stage in the litigation, PFG has limited ability to cure the surprise arising from this violation.").

Accordingly, Samsung requests that the following non-infringing alternative opinions in Huawei's rebuttal expert reports be stricken:

- The last sentence of paragraph 11, and paragraphs 149-157 (pp. 3 and 54-55) of the "Rebuttal Expert Report of Dr. Mark Mahon, Ph.D. Regarding Non-Infringement of U.S. Patent No. RE44,105" (Ex. J);

- Paragraphs 35 and 265-270 (pp. 18 and 125-128) of the "Expert Report of Dr. Thomas La Porta Regarding Non-Infringement of U.S. Patent No. 9,288,825" (Ex. K);

- The last sentence of paragraph 20, and paragraphs 263-266 (pp. 6 and 95) of the "Rebuttal Expert Report of Dr. Robert Akl, D. Sc., Regarding Non-Infringement of U.S. Patent Nos. 8,509,350 and 9,113,419" (Ex. L);

- Paragraphs 10 and 137-140 (pp. 6 and 43-47) of the "Expert Report of Dr. Mark P. Mahon Regarding Non-Infringement of U.S. Patent No. 8,761,130" (Ex. M);

- Paragraphs 41 and 228-230 (pp. 15 and 88-89) of the "Expert Report of Dr. Thomas Fuja Regarding Non-Infringement of U.S. Patent No. 8,619,726" (Ex. N).

### D.   Huawei's Undisclosed Non-Infringement Theories For Samsung's '105, '350, '130, And '726 Patents Should Be Stricken

Throughout fact discovery in this case, Huawei failed to identify its substantive non-infringement theories in response to Samsung's interrogatories—namely, Interrogatory No. 28. After Samsung filed a motion to compel a response to Interrogatory No. 28, the parties were ordered to meet and confer, and Huawei eventually agreed to provide a supplemental interrogatory response

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1   disclosing its non-infringement theories.  During the parties' meet and confer, Samsung warned

2   Huawei that it would seek to strike and preclude any non-infringement theories not disclosed in

3   response to Interrogatory No. 28, and specifically noted the prejudice that would arise if Huawei

4   presented its theories for the first time in rebuttal expert reports.  (*See* Dkt. 274; *see also* Lordgooei

5   Decl. ¶ 2.)  Huawei agreed to supplement (*see, e.g.*, Ex. F at 64), and, for this reason, the parties

6   agreed they had "resolved the discovery disputes identified in the parties' letter briefs."  (Dkt. 274

7   at 1.)  Nevertheless, Huawei still proceeded to identify several new, previously undisclosed non-

8   infringement theories in its expert rebuttal reports that were not identified in its supplemental

9   interrogatory response.

10      With respect to the '105 patent, Huawei's expert contends that ████████████████

11   ████████████████████████████████████████████████████████████████████████

12   ████████████  (Ex. J at 29.)  This argument is nowhere to be found in Huawei's supplemental

13   response to Interrogatory No. 28, and is specifically omitted from Huawei's discussion, in its

14   supplemental response, of the two particular claim limitations that its expert relies on.  (*Compare*

15   Ex. F at 73-74, *with* Ex. J at 29-34.)  Huawei also failed to present the argument, in its supplemental

16   response, that claim 28 is purportedly not infringed because ████████████████████

17   ████████████████████████████████████████████████████████████████████████

18   ████████████  (Ex. J at 38; *see also* Ex. F at 74.)  Additionally, Huawei's rebuttal report also

19   contends for the first time that claim 32 is not infringed because ████████████████████

20   ████████████████████████████████████████  (Ex. J at 47; *see also* Ex. F

21   at 76.)  All three previously undisclosed theories should be stricken.

22      As for the '350 patent, Huawei's non-infringement argument that ████████████

23   ████████████████████████████████████████████████████  (Ex. L

24   at 53-59) should be precluded.  Huawei does not mention or address this claim limitation (the

25   preamble) in its response to Interrogatory No. 28.  (*See* Ex. F at 78-80.)  Moreover, this new non-

26   infringement theory is based on an entirely new claim construction theory that the preamble of the

27   claim is limiting.  (*See* Dkt. 124-3, Ex. C at 10-25 (failing to identify the preamble as a claim

28   construction issue)).  Further, Huawei ████████████████████████████████████

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1    ████████████████████████ (Ex. F at 78), but Huawei's expert makes an entirely different

2    argument in his rebuttal report that is distinct from what Huawei disclosed during fact discovery.  In

3    its interrogatory response, Huawei argued that ███████████████████████████████████

4    ███████████████████████████████████████████████████████████████████████████████

5    ████████████████████████████████████████ (*Id.*)  In its rebuttal

6    report, however, Huawei's expert contends ███████████████████████████████████████

7    ██████████████████████████████████████████████ (Ex. L at 61.)

8    This is an entirely different argument.  Huawei also never disclosed during fact discovery its theory

9    that ███████████████████████████████████████████████████████████████████████

10   █████████████████████████████████████ (Ex. L at 63-64; *see also*

11   Ex. F at 78.)  Finally, Huawei also failed to disclose its theory that ████████████████████

12   ███████████████████████████████████████████████████████████████████████████████

13   ██████████████████████████████████. (Ex. L at 69-72; Ex. F at 78-79.)  The

14   █████████████████████████████████████████████ were available to

15   Huawei throughout fact discovery.  Indeed, all of the evidence that allegedly supports Huawei's

16   theories were available during fact discovery.  Huawei should therefore be precluded from relying

17   on all four newly-disclosed theories.

18       For the '130 patent, Huawei's non-infringement theories in its interrogatory response span

19   only two pages and consist of only three arguments made in separate bullet points.  (*See* Ex. F at

20   72-73.)  None of these bullet points mentioned ██████████████████████, which forms

21   the basis for the fourth rebuttal argument made by Huawei's expert.  (*See* Ex. M at 41 ████████

22   ███████████████████████████████████████████████████████████████████████████████

23   ███████████████████████████████████████████████.)  This newly-disclosed

24   argument should thus be stricken.

25       For the '726 patent, Huawei's interrogatory response contended that Samsung failed to

26   identify ██████████████████████████████████████████████████████████████████████

27   ███████████ (Ex. F at 65.)  The same assertion, however, was not made regarding the claimed

28   ██████████████████████████████████████████████████ (Ex. N at 76.)

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1   Huawei's expert nonetheless opines on this latter limitation, making the argument that ███████

2   ████████████████████████████████████████████████████████████

3   ████████. (*See id.* at 76-81.)  Since Huawei did not address this limitation in any manner in

4   its responses to Interrogatory No. 28, it cannot now make this eleventh-hour argument.

5          As with the newly-disclosed non-infringing alternatives in its expert rebuttal reports,

6   Huawei's previously undisclosed non-infringement theories should also be stricken because

7   Huawei's failure to disclose them was not substantially justified or harmless.  Notwithstanding the

8   fact that Huawei should have already disclosed all of its non-infringement theories during fact

9   discovery (as Samsung did), Huawei nevertheless specifically committed to identifying its non-

10  infringement theories in a supplemental response to Interrogatory No. 28 in response to Samsung's

11  motion to compel.  It did so with the warning that Samsung would seek to preclude any theories not

12  disclosed in the interrogatory responses.  (*See* Lordgooei Decl. ¶ 2.)  Accordingly, it is inexplicable

13  why Huawei's supplementation did not contain every non-infringement theory relied upon by its

14  experts.  Huawei's delay in presenting these theories "impeded [Samsung's] ability to conduct fact

15  discovery on the undisclosed theories," inflicting significant harm on Samsung.  *Apple*, 2012 WL

16  3155574, at *5.  Indeed, the prejudice here is compounded because each of these theories appeared

17  in Huawei's ***rebuttal*** expert reports, ensuring that none of Samsung's experts would have an

18  opportunity to opine on the weaknesses and contours of each undisclosed theory.  In short, Huawei

19  has impaired Samsung's ability "to put on its case," an error that is not "substantially justified or

20  harmless."  *Woods*, 692 F.3d at 1282.  Huawei's gamesmanship should not be rewarded.

21         Accordingly, Samsung requests that the following portions of Huawei's rebuttal expert

22  reports be stricken:

23         • Paragraphs 73-88 (pp. 29-34), 103-121 (pp. 38-46), and 125-132 (pp. 47-50) of the

24             "Rebuttal Expert Report of Dr. Mark Mahon, Ph.D. Regarding Non-Infringement of

25             U.S. Patent No. RE44,105" (Ex. J);

26         • Paragraphs 128-145 (pp. 53-59), 148-155 (pp. 60-63), 159-164 (pp. 63-65), and 175-

27             182 (pp. 69-72) of the "Rebuttal Expert Report of Dr. Robert Akl, D. Sc. Regarding

28             Non-Infringement of U.S. Patent Nos. 8,509,350 and 8,113,419" (Ex. L);

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

- Paragraphs 123-128 (pp. 40-41) of the "Expert Report of Dr. Mark P. Mahon Regarding Non-Infringement of U.S. Patent No. 8,761,130" (Ex. M); and

- Paragraphs 199-212 (pp. 76-81) of the "Expert Report of Dr. Thomas E. Fuja Regarding Non-Infringement of U.S. Patent No. 8,619,726" (Ex. N).

**E.     Huawei's Undisclosed Analysis Of Non-Infringing Alternatives For The Huawei Patents-in-Suit Should Be Stricken**

On February 7, 2018, Samsung served Interrogatory No. 35 on Huawei. (Ex. O at 2.) That interrogatory asked Huawei to "describe in detail any design-around alternatives" to the technology claimed in the Asserted Huawei Patents. (*Id.*) Huawei finally responded to Interrogatory No. 35 on March 30, 2018, three weeks after the close of fact discovery, providing nothing specific to any Asserted Huawei Patent. (Ex. P at 22.) Rather, Huawei merely stated that:

(*Id.*) Huawei failed to analyze any specific design-around alternatives to the technology in the Huawei Patents-in-Suit in its response to Interrogatory No. 35. (*Id.*) Instead, Huawei provided ▮ ▮ without explaining where the alleged alternatives were set forth in Huawei's 9-page response. (*Id.*) An analysis of Huawei's response to Samsung's Interrogatory No. 20 reveals ▮ ▮. (*See* Ex. Q at 18-19 ▮ ▮), 21 (▮ ▮).) While Huawei's response to Interrogatory No. 20 does disclose ▮ ▮, it fails to analyze any of those alternatives in detail. (*See id.* at 22-23, 25-26.) Huawei also stated in its response to Samsung's Interrogatory No. 35 that ▮ ▮—a massive set of potential documents. (*See* Ex. P at 22.) At no point in its response to Interrogatory No. 35 did Huawei even identify ▮ ▮, much less provide any analysis of those alternatives. (*See id.*)

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1    Less than a month after Huawei's bare-bones response to Samsung's Interrogatory No. 35,

2    Huawei's experts identified and analyzed what they perceived to be non-infringing alternatives to

3    each of the Huawei Patents-in-Suit—none of which were disclosed in response to Samsung's

4    Interrogatory No. 35—in each of their infringement expert reports.  (*See* Ex. R ¶¶ 537-545 ('239

5    patent); Ex. S at ¶¶ 481-500 ('892 patent); Ex. T at ¶¶ 296-309 ('587 patent); Ex. U at ¶¶ 279-284

6    ('613 patent).)  Because Huawei "violated its obligations pursuant to Fed. R. Civ. P. 26(e)(1),"

7    Samsung's "motion to strike and exclude evidence . . . [should be] granted."  *Synthes USA* , 2011

8    WL 11709387, at *7-*8.

9    As a result of Huawei's failure to comply with its discovery obligations, Huawei has the

10   burden "to demonstrate that it meets one of the two exceptions to mandatory sanctions": (1) the

11   failure was substantially justified; or (2) the failure was harmless.  *Apple, Inc.*, 2012 WL 3155574,

12   at *4.  Huawei cannot meet its burden under either exception.  First, the non-infringing alternatives

13   Huawei identified in its opening expert reports are all based on materials accessible to Huawei

14   throughout fact discovery, including ███████████████ produced in this case by Huawei.

15   (*See, e.g.*, Ex. R ¶ 541; Ex. S ¶¶ 482-500; Ex. T ¶¶ 296-303; Ex. U ¶ 284.)  No rationale justifies

16   Huawei's withholding of this information, which was readily available throughout fact discovery.

17   The ensuing prejudice to Samsung, meanwhile, is substantial.  By failing to disclose these

18   non-infringing alternatives in its response to Samsung's Interrogatory No. 35, Huawei left Samsung

19   without an opportunity during the fact discovery period to explore the feasibility of these alternatives

20   as replacements for the technology claimed in the Huawei Patents-in-Suit.  Samsung simply did not

21   have time to develop the facts necessary to rebut Huawei's arguments and was therefore prejudiced

22   in its ability to explain why those alternatives are feasible substitutes for the technologies in

23   Huawei's patents.

24   Accordingly, Samsung requests that the following discussions of non-infringing alternatives

25   in Huawei's opening expert reports be stricken:

26   •   Paragraphs 537-45 (pp. 174-77) of the "Expert Report of Dr. Veervalli [*sic*]

27       Regarding Defendant Samsung Electronics Co., Ltd., Samsung Electronics America,

28       Inc.'s Infringement of U.S. Patent No. 8,644,239" (Ex. R);

- Paragraphs 481-500 (pp. 189-98) of the "Expert Report of Dr. Veervalli [*sic*] Regarding Defendant Samsung Electronics Co., Ltd., Samsung Electronics America, Inc.'s Infringement of U.S. Patent No. 8,416,892" (Ex. S);

- Paragraphs 296-309 (pp. 167-73) of the "Expert Report of Dr. Robert Akl, D.Sc. Regarding Infringement of United States Patent No. 8,885,587" (Ex. T);

- Paragraphs 279-84 (pp. 122-24) of the "Expert Report of Dr. Robert Akl, D.Sc. Regarding Infringement of United States Patent No. 8,724,613" (Ex. U).

**F.      The Priority Date Analyses Disclosed In The Rebuttal '587 and '892 Expert Reports Should Be Stricken**

The Expert Report of Dr. Robert Akl, D.Sc. Regarding Infringement of United States Patent No. 8,885,587 ("Akl '587 Infringement Report") includes no analysis of the priority date for the '587 patent.  (*See* Ex. T at ii-v.)  Instead, Dr. Akl withheld his analysis of the priority date for the '587 patent until his rebuttal report on the validity of the '587 patent.  (Ex. V ("Akl '587 Rebuttal Report") ¶¶ 62-65.)   Similarly, for the '892 patent, the Expert Report of Dr. Veervalli [*sic*] Regarding Defendant Samsung Electronics Co., Ltd., Samsung Electronics America, Inc.'s Infringement of U.S. Patent No. 8,416,892 ("Veeravalli '892 Infringement Report") includes no analysis of the priority date for the '892 patent.  (*See* Ex. S at ii-iii.)  Like Dr. Akl, Dr. Veeravalli withheld his analysis of the priority date for the '892 patent until his rebuttal report on validity.  (Ex. W ("Veeravalli '892 Rebuttal Report") ¶¶ 59-77.)

Once Samsung put forth sufficient evidence in its invalidity contentions that prior art anticipates the asserted claims of the '587 and '892 patents, Huawei, as the party asserting that Samsung infringes those two patents, bore the burden of putting forth sufficient evidence to prove that those two patents are entitled to claim priority to an earlier filing date.  *See Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008); *see also PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305-06 (Fed. Cir. 2008).  Dr. Akl, Huawei's expert on the '587 patent, contends that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  (Ex. V ¶ 64.)  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

1   ██████████████████████████████████.)  Huawei was aware that Samsung would be

2   relying on that prior art at least as early as March 23, 2018, when Samsung filed its Election of Prior

3   Art.  (Dkt. 263 at 2 (listing U.S. Patent No. 8,472,368, which is the "Baldemair" reference, by itself

4   and in multiple combinations).)  Opening expert reports were due more than a month later (April

5   27, 2018).  However, rather than including his analysis of the priority date of the '587 patent in his

6   opening report, Dr. Akl chose to wait until his rebuttal report.  In so doing, because the schedule for

7   this case leaves no opportunity for reply expert reports, Dr. Akl left Samsung with no opportunity

8   to present expert opinions rebutting Dr. Akl's opinions on the priority date of the '587 patent.

9        The same applies to the '892 patent.  Dr. Veeravalli, Huawei's expert on the '892 patent,

10  contends ████████████████████████████████████████████

11  ████████████████████.  (Ex. W ¶ 59.)  Like Dr. Akl, Dr. Veeravalli chose to include his priority date

12  analysis for the '892 patent in his rebuttal report, rather than his opening report, even though he was

13  aware of the prior art that Samsung would be asserting against the '892 patent more than a month

14  before his opening report was due.  (*See* Dkt. 263 at 1.)  This left Samsung with no opportunity to

15  present rebuttal expert opinions related to Dr. Veeravalli's analysis of the priority date of the '892

16  patent.  Accordingly, Huawei has violated its obligations under Federal Rule of Civil Procedure

17  26(a) by disclosing expert testimony related to the priority dates for the '587 and '892 patents at the

18  wrong time.

19       Federal Rule of Civil Procedure 37(c)(1) provides that a failure to provide information as

20  required by Rule 26(a) bars the disclosing party from using that information "to supply evidence on

21  a motion, at a hearing, or at a trial."  The only exceptions to this bar are if (1) the failure was

22  substantially justified, or (2) the failure was harmless.  Fed. R. Civ. P. 37(c)(1).  Huawei cannot

23  satisfy either exception in this instance.  As described above, Huawei had notice of the prior art that

24  Samsung would be asserting in its opening expert reports no later than March 23, 2018, more than

25  a month before opening expert reports were due.  Huawei had plenty of time to determine that the

26  priority date for some of Samsung's asserted prior art references fell between the issue date of the

27  asserted patents and the priority dates that Huawei alleged in its infringement contentions.  Huawei

28  can provide no justification for its failure to provide the analysis of the priority dates for the '587

and '892 patents in its experts opening reports.  In addition, Huawei's failure is not harmless.  By waiting until rebuttal expert reports to disclose the priority date analysis for the '587 and '892 patents, Huawei left Samsung with no opportunity to rebut the analysis of Huawei's experts.  Huawei has the burden of proof on this issue.  Samsung rightfully should have had an opportunity to respond to the opinions of Huawei's experts.

In accordance with the foregoing, Samsung requests that the following priority date analyses in Huawei's rebuttal expert reports be stricken:

- Paragraphs 62-65 (pp. 22-29) of the "Expert Report of Dr. Robert Akl, D.Sc. Regarding the Validity of United States Patent No. 8,885,587" (Ex. V);

- Paragraphs 59-77 (pp. 17-25) of the "Expert Report of Dr. Venugopal V. Veeravalli Regarding Validity of U.S. Patent No. 8,416,892" (Ex. W).

**G.      Huawei's Undisclosed Doctrine Of Equivalents Argument For The '239 Patent Should Be Stricken**

Huawei served its infringement contentions for the '239 patent on October 25, 2018.  (Ex. X at Appendix 6.)  The claim chart for the asserted claims of the '239 patent did not invoke the doctrine of equivalents.  (*See id.*)  Huawei's cover pleading for its infringement contentions stated that "based on the information presently available to Huawei, Defendants' Accused Products literally infringe each element of the asserted claims as set forth in these contentions."  (*Id.* at 8.)  Huawei's cover pleading then included boilerplate language stating that:

> To the extent any limitation is found or alleged not to be literally present following discovery, including review of relevant source code for the Accused Products and complete discovery responses from Samsung, Huawei then asserts that, if any differences between the claim elements and the accused systems and methods are found to exist, such differences are insubstantial and the accused systems and methods thus infringe under the doctrine of equivalents.  Huawei further reserves the right to amend its infringement contentions to specifically assert infringement under the doctrine of equivalents in light of claim construction proceedings in this case.

(*Id.*)  On June 9, 2017, Huawei filed a motion for leave to amend its infringement contentions to identify additional accused products.  (Dkt. 145 at 1.)  Aside from that motion, Huawei made no other attempt to amend its infringement contentions in this case, including no attempt to assert infringement under the doctrine of equivalents.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1    On April 27, 2018, Huawei served the Expert Report of Dr. Veervalli [*sic*] Regarding

2    Defendant Samsung Electronics Co., Ltd., Samsung Electronics America, Inc.'s Infringement of

3    U.S. Patent No. 8,644,239 ("Veeravalli '239 Infringement Report").  (Ex. R.)  The Veeravalli '239

4    Infringement Report includes the opinion that

5    ██████████████████████████████████████.  (*Id.* at ¶¶ 254, 271, 282, 318, 338, 370.)

6    Pursuant to the Patent Local Rules, courts in the Northern District of California routinely

7    strike the portions of expert reports that allege equivalence under the doctrine of equivalents when

8    the party asserting patent infringement only included boilerplate language regarding the doctrine of

9    equivalents in its infringement contentions.  *See, e.g.*, *ASUS Computer Int'l* , 2014 WL 1463609, at

10   *3 (striking portions of expert reports asserting a doctrine of equivalents theory where the

11   corresponding infringement contentions only included boilerplate language stating that "to the

12   extent that any claim element is found not to be literally embodied in the Accused Instrumentalities,

13   [the party alleging infringement] contends that the Accused Instrumentalities embody such claim

14   elements under the doctrine of equivalents"); *Dynetix Design Sols., Inc. v. Synopsys, Inc.*, 2013 WL

15   4537838, at *1 (excluding doctrine of equivalents theory that was only disclosed in a "boilerplate

16   preamble" in the infringement contentions of the party alleging infringement); *MEMC Elec.*

17   *Materials v. Mitsubishi Materials Silicon Corp.*, No. C 01-4925 SBA, 2004 WL 5363616, at *6

18   (N.D. Cal. Mar. 2, 2004) (granting motion to preclude plaintiff from pursuing doctrine of equivalents

19   theory presented in expert report where plaintiff's infringement contentions only included

20   boilerplate language about the doctrine of equivalents).

21   Like the cases cited above, Huawei's infringement contentions include only boilerplate

22   language in the cover pleading asserting infringement under the doctrine of equivalents.  (*See* Ex.

23   X at 8.)  At no point in its infringement contentions does Huawei provide allegations under the

24   doctrine of equivalents on a limitation-by-limitation basis, as required by Patent L.R. 3-1(e).  (*See*

25   *id.*)  Instead, Huawei waited until after the close of fact discovery to assert in the Veeravalli '239

26   Infringement Report that ████████████████████████████████

27   ████████████.  (*See* Ex. R ¶¶ 254, 271, 282, 318, 338, 370.)

28

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

The Veeravalli '239 Infringement Report presents no justification as to why the doctrine of equivalents was only invoked ███████████████████████ after the close of fact discovery.  (*See id.* at ¶ 254.)  In waiting until this late date to raise the doctrine of equivalents as an infringement theory, Huawei has prejudiced Samsung's ability to develop the facts and arguments necessary to rebut Huawei's allegation.  Document discovery has concluded, and the depositions of Huawei's inventors and corporate designees were completed months ago.  The boilerplate language in Huawei's infringement contentions is "insufficient to assert a [doctrine of equivalents] theory, and [Huawei's] experts cannot now articulate that theory at this late stage."  *ASUS*, 2014 WL 1463609, at *3.

Accordingly, Samsung requests that the highlighted portions of paragraphs 254, 271, 282, 318, 338, and 370 of the Veeravalli '239 Infringement Report be stricken.

## V.     CONCLUSION

For the foregoing reasons, Samsung respectfully asks the Court to grant its Motion to strike the aforementioned portions of Huawei's expert reports.

DATED: July 3, 2018                    Respectfully submitted,

                                       QUINN EMANUEL URQUHART &
                                       SULLIVAN, LLP

                              By      */s/ Victoria F. Maroulis*
                                       Charles K. Verhoeven
                                       Kevin P.B. Johnson
                                       Victoria F. Maroulis
                                       David A. Perlson

                                       *Attorneys for Samsung Electronics Co., Ltd.,
                                       Samsung Electronics America, Inc., and
                                       Samsung Research America, Inc.*