# EXHIBIT 19

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

```
 1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
       Charles K. Verhoeven (Bar No. 170151)
 2       charlesverhoeven@quinnemanuel.com
     50 California Street, 22nd Floor
 3   San Francisco, California 94111
     Telephone: (415) 875-6600
 4   Facsimile: (415) 875-6700

 5     Kevin P.B. Johnson (Bar No. 177129
       kevinjohnson@quinnemanuel.com
 6     Victoria F. Maroulis (Bar No. 202603)
       victoriamaroulis@quinnemanuel.com
 7   555 Twin Dolphin Drive, 5th Floor
     Redwood Shores, California 94065-2139
 8   Telephone:   (650) 801-5000
     Facsimile:   (650) 801-5100
 9
       Michael T. Zeller (Bar No. 196417)
10     michaelzeller@quinnemanuel.com
     865 S. Figueroa St., 10th Floor
11   Los Angeles, California 90017
     Telephone: (213) 443-3000
12   Facsimile: (213) 443-3100

13   Attorneys for SAMSUNG ELECTRONICS CO.,
     LTD., SAMSUNG ELECTRONICS AMERICA,
14   INC. and SAMSUNG
     TELECOMMUNICATIONS AMERICA, LLC
```

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, | CASE NO. 11-cv-01846-LHK |
| Plaintiff, | |
| vs. | **EXPERT REPORT OF ERIC STASIK REGARDING ETSI AND STANDARDS-SETTING MATTERS** |
| SAMSUNG ELECTRONICS CO., LTD., a Korean business entity; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| Defendant. | |

EXPERT REPORT OF ERIC STASIK REGARDING ETSI AND STANDARDS-SETTING MATTERS

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY                SAMSUNG-HNDCA-000410118

1. █████████████████████████████████████████████████████████████████

3. C. **"Is the seeking of injunctive relief by an essential patent holder consistent with Clause 6.1 of the ETSI IPR Policy?"**

5. 49. Donaldson asserts that by committing to offer FRAND terms for a license to a patent, "the licensor forfeits its right to seek injunctive relief." (Donaldson Report ¶ 22.) However, the ability to seek an injunction is a patentee's fundamental right and its only tool to ensure payment by licensees. Unlike the sale of physical components to be incorporated into products, a patentee cannot restrict supply to force its customers to pay for the use of its products. The threat of an injunction is a patentee's only tool. It is accordingly standard industry practice to seek injunctive relief when a licensee refuses to enter into meaningful bi-lateral negotiations or to enter into a license on FRAND terms and conditions offered by the licensor.

13. 50. Donaldson asserts that "[a]bsent the prohibition against seeking an injunction, a holder of purportedly ... [could] engage in ... patent 'hold-up' that could ultimately destabilize the standard-setting process." (Donaldson Report ¶ 23.) However, this assertion is not borne out by actual practice in the industry. Without exception, in every negotiation over ETSI standard essential patents in which I have been involved both as licensor and as licensee, when negotiations failed to produce an agreement, the licensor has sought injunctive relief.

19. 51. I am aware of litigation in the United States District Court for the District of Delaware (Case 1:09-cv-00791-UNA) between Nokia and Apple. In the complaint for patent infringement and declaratory judgment (see Exhibit 16), the plaintiff, Nokia, (at paragraph 42) writes:

> *"If the implementer refuses to take a license altogether or refuses to pay FRAND compensation for valid and enforceable IPRs used by it, exceptional circumstances are present and the IPR holder may seek an injunction to prevent the implementer from continuing to manufacture standard-compliant products without payment. The injunction only extends for so long as the manufacturer refuses to pay FRAND compensation."*

27. 52. ████████████████████████████████████████████████████████████

-16-
EXPERT REPORT OF ERIC STASIK REGARDING ETSI AND STANDARDS-SETTING MATTERS

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY          SAMSUNG-HNDCA-000410134

1  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓  There are many public examples (well known to me and, I presume,
2  others in the market) of similar action taken by other companies, such as in the recent litigation
3  between Apple and Nokia (concluded in June 2011), Nokia and Qualcomm (concluded in July
4  2008), and also Motorola and Apple (ongoing). Indeed, for all patent infringement claims
5  brought before the International Trade Commission ("ITC") the only remedy that is sought is an
6  exclusionary order.[2] Countless actions brought before the ITC in recent years have sought
7  exclusionary orders for the infringement of essential patents. Two such notable cases of which I
8  am aware are LG Electronics v Sony (concluded in August 2011) and Broadcom v Qualcomm
9  (concluded in June 2007). In respect of the latter, Broadcom successfully obtained an exclusion
10 order against the importation of new model phones that infringed its IPR. The LG v Sony action
11 settled before judgment was given.

12   53.   I am not aware of any industry consensus that the standard-setting process has been
13 destabilized by the availability of injunctions against parties that refuse to participate in FRAND
14 negotiations. Nor do I see any evidentiary support in Donaldson's report or in industry practice
15 for Donaldson's conclusion that injunctions "stifle competition by excluding new entrants to the
16 market." (Donaldson Report ¶ 23.)

17   D.   **Based on your experience of negotiating licenses in the mobile telecommunications sector, how do ETSI members understand the**
18   **"irrevocable" requirements contained in Article 6.1 of the ETSI IPR Policy (i.e. to give "...an irrevocable undertaking in writing that it is prepared to grant**
19   **irrevocable licenses on fair, reasonable and non-discriminatory terms and conditions....") to mean in practice?**
20

21   54.   As I set out in Section IV.A of this report, a central aim of the ETSI IPR Policy is
22 to make sure that investment in preparation and adoption of standards is not wasted as a result of
23 essential IPR not being available or only being available on terms that are not fair, reasonable and
24 non-discriminatory. Article 6.1 is fundamental to achieving this aim as it provides that if
25 essential IPR is brought to the attention of ETSI, ETSI may request the IPR owner to give an

26
27  [2] I understand that the terms "exclusion order" and "injunction" to be largely
28  interchangeable, as they have the same practical effect on the market, i.e. a prohibition on importing/selling/manufacturing without a certain jurisdiction.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY    SAMSUNG-HNDCA-000410135

## VIII. PREVIOUS TESTIMONY AND COMPENSATION

79. I have not testified at deposition or trial in the past four years.

80. I am compensated for my time at the rate of $520 for each hour of service that I provide in connection with this case. That compensation is not contingent upon my performance, the outcome of the case, or any issues involved in or related to this case.

## IX. SUPPLEMENTATION OF OPINION

81. I reserve the right to adjust or supplement my analysis in light of any critique of or comments on my report or alternative opinions advanced by or on behalf of Apple.

Date: March 16, 2012

Place: Stockholm, Sweden

Signature: /s Eric Stasik

-26-
EXPERT REPORT OF ERIC STASIK REGARDING ETSI AND STANDARDS-SETTING MATTERS

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY            SAMSUNG-HNDCA-000410144