**EXHIBIT 2**

**DECLARATION OF IRENE YANG IN SUPPORT OF HUAWEI'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE PORTIONS OF HUAWEI'S EXPERT REPORTS**

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# EXHIBIT 3

**DECLARATION OF IRENE YANG IN SUPPORT OF HUAWEI'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE PORTIONS OF HUAWEI'S EXPERT REPORTS**

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**EXHIBIT 4**

**DECLARATION OF IRENE YANG IN SUPPORT OF HUAWEI'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE PORTIONS OF HUAWEI'S EXPERT REPORTS**

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**EXHIBIT 9**

**DECLARATION OF IRENE YANG IN SUPPORT OF HUAWEI'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE PORTIONS OF HUAWEI'S EXPERT REPORTS**

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# EXHIBIT 10

**DECLARATION OF IRENE YANG IN SUPPORT OF HUAWEI'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE PORTIONS OF HUAWEI'S EXPERT REPORTS**

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

HUAWEI TECHNOLOGIES CO., LTD.,
HUAWEI DEVICE USA, INC., and
HUAWEI TECHNOLOGIES USA, INC.,

    Plaintiffs / Counterclaim-Defendants,

v.

SAMSUNG ELECTRONICS CO., LTD.,
SAMSUNG ELECTRONICS AMERICA,
INC.,

    Defendants / Counterclaim-Plaintiffs,

and

SAMSUNG RESEARCH AMERICA,

    Defendant,

v.

HISILICON TECHNOLOGIES CO., LTD.,

    Counterclaim-Defendant.

Case No. 16-cv-02787-WHO

CONTAINS "HIGHLY CONFIDENTIAL" INFORMATION THAT IS SUBJECT TO THE COURT'S PROTECTIVE ORDER

**EXPERT REPORT OF DR. THOMAS LA PORTA**
**REGARDING INVALIDITY OF U.S. PATENT NO. 9,288,825**

Dated: April 27, 2018    Signed:

_____
Dr. Thomas La Porta

"*a signal generator configured to: select a first ID from among the group of the IDs, and generate a first uplink signal corresponding to the selected first ID for random access.*"

479. I understand from counsel that Samsung has provided Supplemental Responses to Huawei's Interrogatories on March 9, 2018 regarding the claim limitation, "*a signal generator configured to: select a first ID from among the group of the IDs.*" *Id.* at 60, 91-92. ███████████████████████████████████████████████████████████

███████████████████████████████████████████

480. A thorough reading of the specification of the '825 patent reveals that the only reference to a signal generator in the specification is as follows: "*In accordance with another aspect of exemplary embodiments of the present invention, there is provided a user equipment for initiating communications on a shared channel in a mobile communication system, in which an uplink signal generator generates an uplink signal for requesting communications on the shared channel and transmits the generated uplink signal to a Node B.*" '825 patent, 3:46-52. The term "*signal generator*" is not used anywhere else in the specification. A person of ordinary skill in the art would know that a signal generator refers to a structure that generates signals. This is also what is disclosed by the specification. A signal generator, however, as it is commonly understood and used by persons of ordinary skill in the art, does not involve performing activities like "*select[ing] a first ID from among the group of the IDs.*" These types of tasks are and were in the 2005 timeframe typically performed by signal processors or general purpose processors. There is nothing in the specification to suggest that the term "*signal generator*" as it is used in the '825 patent is broader than what is disclosed, *i.e.*, a signal generator that generates uplink signals. Therefore, one of ordinary skill in the art would recognize that the specification of

174

the '825 patent does not teach or disclose the meaning of the phrase "*a signal generator configured to: select a first ID from among the group of the IDs.*" Moreover, the specification fails to describe the claimed phrase in sufficient detail to demonstrate to a person of ordinary skill in the art actually possessed the invention and does not enable one of skill to make or use the full scope of the claimed invention without undue experimentation.

481. Claim 4 of the '825 patent also uses the phrase "*a downlink signal processor configured to: after transmitting the first uplink signal, wait for a predetermined delay duration without checking a downlink channel.*"

482. I understand from counsel that Samsung has also provided Supplemental Responses to Huawei's Interrogatories on March 9, 2018 regarding the claim limitation, "*a downlink signal processor configured to: after transmitting the first uplink signal, wait for a predetermined delay duration without checking a downlink channel.*" *Id.* at 60-61, 92. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

483. A thorough reading of the specification of the '825 patent reveals that the only reference to a downlink signal processor in the specification is as follows: "*A <u>downlink signal processor</u> waits for a delay duration without monitoring a downlink after transmitting the uplink signal, monitors the downlink during a valid period after the delay duration has elapsed and determines whether a downlink signal responding to the uplink signal is received in one transmission time interval within the valid period.*" '825 patent, 3:52-58. The term "*downlink signal processor*" or "*signal processor*" is not used anywhere else in the specification. A person of ordinary skill in the art would know that a signal

CONTAINS HIGHLY CONFIDENTIAL INFORMATION - SUBJECT TO THE COURT'S PROTECTIVE ORDER

processor, as applicable to the subject matter of the '825 patent, performs functions like monitoring or waiting to monitor the downlink channel. This is also what is disclosed by the specification. A signal processor, however, as it is commonly understood and used by persons of ordinary skill in the art, does not involve performing activities like "*transmitting the uplink signal.*" These types of tasks are and were in the 2005 timeframe typically performed by transmitters or transceivers. Moreover, without a specific teaching or further explanation in the specification, a skilled artisan would not understand how a downlink signal processor can transmit an uplink signal. There is nothing in the specification to suggest that the term "*downlink signal processor*" as it is used in the '825 patent is broader than what is disclosed. Therefore, one of ordinary skill in the art would recognize that the specification of the '825 patent does not teach or disclose the meaning of the phrase "*a downlink signal processor configured to: after transmitting the first uplink signal, wait for a predetermined delay duration without checking a downlink channel.*" Moreover, the specification fails to describe the claimed phrase in sufficient detail to demonstrate to a person of ordinary skill in the art actually possessed the invention and does not enable one of skill to make or use the full scope of the claimed invention without undue experimentation.

484. Claims 1 and 4 of the '825 patent use the term "*predetermined delay duration*" in the phrases "*after the transmitting of the first uplink signal, waiting for a predetermined delay duration without checking a downlink channel; after the waiting for the predetermined delay duration, checking the downlink channel during a valid period,*" and "*wherein the valid period starts when the predetermined delay duration starting from transmission of the first uplink signal has terminated.*"

176

CONTAINS HIGHLY CONFIDENTIAL INFORMATION - SUBJECT TO THE COURT'S PROTECTIVE ORDER

reasonable meaning in light of the specification and the prosecution history of the '825 patent.

499. "Claim 4 of the '825 patent contains two conflicting claim limitations, making claim 4 of the '825 patent indefinite. Claim 4 contains the phrases: "*a downlink signal processor configured to: after transmitting the first uplink signal*" and "*a transceiver configured to: transmit the generated first uplink signal to a NodeB.*"

500. I understand from counsel that Samsung has also provided Supplemental Responses to Huawei's Interrogatories on March 9, 2018 regarding the claim limitations, "*a downlink signal processor configured to: after transmitting the first uplink signal*" and "*a transceiver configured to: transmit the generated first uplink signal to a NodeB.*" *Id.* at 60-61, 92-93. ████████████████████████████████████████████████████████████████████████████████████████████████████████████

501. Each of these phrases - *a downlink signal processor configured to: after transmitting the first uplink signal*" and "*a transceiver configured to: transmit the generated first uplink signal to a NodeB*" - appear to teach or disclose the step of the UE transmitting the first uplink signal to the base station. The first phrase attributes this step to "*a downlink signal processor,*" while the second phrase attributes it to "*a transceiver.*" To a person of ordinary skill in the art, reading these claim limitations, it is unclear whether the processor or the transceiver, or both, perform the step of transmitting the first uplink signal. Neither the specification nor the prosecution history of the '825 patent teaches or discloses which structure performs the step of transmitting the first uplink signal. Therefore, one of ordinary skill in the art would recognize that the specification of the '825 patent does not teach or disclose the meaning of the phrases "*a downlink signal processor*

185

CONTAINS HIGHLY CONFIDENTIAL INFORMATION - SUBJECT TO THE COURT'S PROTECTIVE ORDER

*configured to: after transmitting the first uplink signal*" and "*a transceiver configured to: transmit the generated first uplink signal to a NodeB*," and are indefinite because these phrases cannot be given a reasonable meaning in light of the specification and the prosecution history of the '825 patent. Moreover, the specification does not enable one of skill to make or use the full scope of the claimed invention without undue experimentation.

## XIII. OBJECTIVE EVIDENCE OF NON-OBVIOUSNESS

502. Based on my understanding of Samsung's theories of objective evidence or secondary considerations of non-obviousness, it is my opinion that these do not save the '825 patent from being invalid under 35 U.S.C. §§ 102 and/or 103. If anything, these theories reinforce the obviousness of the '825 patent claims. I understand that it is Samsung's burden to demonstrate that the objective evidence would result in the patent claims being non-obvious, and I reserve the right to respond to Samsung's theories on this topic after reviewing its expert report regarding the validity of the '825 patent and in response to any opinions that Samsung's expert may provide between now and the trial in this matter. I do not limit the scope or substance of my testimony on this topic, including at trial, by including a discussion here of what I understand Samsung's theories of objective evidence of non-obviousness are.

503. I have reviewed Samsung's response to Huawei's Interrogatory No. 16, where Samsung sets out a number of arguments to support its claim that objective evidence would result in the '825 patent claims being held non-obvious.

504. I understand from counsel that Samsung contends that the invention of the '825 patent satisfies a long-felt but unsolved need and solves problem that others had failed to address, *i.e.*, to eliminate a "collision" when two UEs attempt to initiate communication

CONTAINS HIGHLY CONFIDENTIAL INFORMATION - SUBJECT TO THE COURT'S PROTECTIVE ORDER

**EXHIBIT 11**

**DECLARATION OF IRENE YANG IN SUPPORT OF HUAWEI'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE PORTIONS OF HUAWEI'S EXPERT REPORTS**

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**EXHIBIT 13**

**DECLARATION OF IRENE YANG IN SUPPORT OF HUAWEI'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE PORTIONS OF HUAWEI'S EXPERT REPORTS**

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**EXHIBIT 14**

**DECLARATION OF IRENE YANG IN SUPPORT OF HUAWEI'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE PORTIONS OF HUAWEI'S EXPERT REPORTS**

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**