# EXHIBIT 7

**DECLARATION OF LEIF PETERSON IN SUPPORT OF HUAWEI'S OPPOSITION TO SAMSUNG'S MOTION TO PARTIALLY EXCLUDE AND STRIKE**

1              UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF CALIFORNIA
2              SAN FRANCISCO DIVISION
3    ----------------------------------------------------
4    HUAWEI TECHNOLOGIES CO., LTD.
     HUAWEI DEVICE USA, INC., and
5    HUAWEI TECHNOLOGIES USA, INC.
              Plaintiff(s)/Counterclaim
6             Defendants
7             Vs.
8    SAMSUNG ELECTRONICS CO., LTD
     SAMSUNG ELECTRONICS AMERICA
9    INC.
              Defendants / CounterclaimPlaintiffs
10
11            And
12   SAMSUNG RESEARCH AMERICA
              Defendant
13
14            V.
15   HISILICON TECHNOLOGIES CO., LTD.
              Counterclaim-Defendant.
16
     Case No. 3:16-cv-2787-WHO
17   ----------------------------------------------------
18          Videotaped Deposition of JACQUES RAYNARD
19                 Tuesday, 26 June 2018
20
21             Taken at the offices of:
22
23        Quinn Emanuel Urquhart & Sullivan
             Blue Tower, Avenue Louise 326
24        5th Floor, Brussels 1050, Belgium
25   JOB NO. 143458

Page 5

1      MR PETERSON:  Leif Peterson, Sidley Austin
2 on behalf of the Huawei parties and the witness.
3
4 Interpreters sworn.
5                     JACQUES RAYNARD
6              having been duly affirmed,
7                  testified as follows:
8 Examination by MS MAROULIS:
9      Q.  Good morning, Prof. Raynard.  How are
10 you?
11      A.  Fine, thank you.
12      Q.  As you heard I am counsel for Samsung
13 and I will be asking you some questions today.  Have
14 you ever been deposed before, sir?
15      A.  Not in an American procedure, no.
16      Q.  Have you ever given sworn testimony in
17 any other procedure?
18      A.  Arbitral cross-examination, a number of
19 them.
20      Q.  Because you haven't done depositions
21 before I will go over a few basic rules with you
22 now?
23      A.  Fine.
24      Q.  Everything we do today is done under
25 oath, just like you would in a court of law, even

1   favored client, but in this case there is no clause
2   of the most favored licensee.
3              Q.   In fact, it is the opposite, the clause
4    says you have to treat all licensees the same,
5    correct?
6              A.   No.  I do not read that into the ETSI.
7   I do not know in your litigation I could not come to
8   that conclusion.
9              Q.   Assume that there are two companies
10   that both sell cell phones, okay?  And assume that
11   both of these companies implement LTE standard, and
12   assume that they both take license from the same
13   licensor at about the same time, should they receive
14   the same rate under Article 6.1?
15             MR PETERSON:  Objection to form.
16             A.   There is a lot of hypothesis there.
17  Here we are dealing more with facts than with law.
18  Do the same two companies supply the same guarantees
19  of payment, do these two companies have the same
20  sales power etc, etc?  So the idea, the concept of
21  non-discrimination in commercial agreements doesn't
22  really have meaning in the Law of Contracts,
23  commercial contracts.  In French law we have this
24  concept in labor law, for instance sexual
25  discrimination, gender discrimination, very objective

1   situations that deal with individuals.  If we want to
2   reach what you are suggesting regarding adjustment of
3   licensing prices then one has to introduce into the
4   contract a clause for the most favored licensee, so
5   if I were licensing fee with one party there is
6   another licensing fee with another party, it would
7   have to be aligned and conversely.  If I have a
8   licensing fee with a client under the most favored
9   client clause I could ask; well, was there another
10  client who received a more favorable license?  And
11  frankly these types of clauses that I know in the
12  distribution industry are very difficult to draft
13  here because they deal with objective differences
14  which lead to litigation, I didn't want to talk about
15  that today but I believe this type of clause harks
16  back to international treaties and most favored
17  nation.
18              MS MAROULIS:  So sir, is it your expert
19  opinion that the only way similarly situated
20  licensees will get the same rate is if there is a
21  most favored client clause in a contract?
22              THE INTERPRETER:  Is to get what?
23              MS MAROULIS:  Please read my question?
24                  (Question read back)
25              MR PETERSON:  Objection to form.

1  obligation that could obligate the licensor to that
2  result.
3         Q.  Sir, is this your expert opinion that
4   the term non-discriminatory in Article 6.1 is
5   meaningless?
6         A.  We looked at that question a few
7  seconds ago when we looked at each of the terms.  It
8  may be relevant for economic experts, economists, but
9  legally I can only see it as a result of good faith
10 negotiations.
11        Q.  Sir, why do you think this term was
12  inserted in Article 6.1?
13        MR PETERSON:  Objection to form.
14        A.  Just the term non-discriminatory or the
15 three?
16        MS MAROULIS:  Correct.
17        A.  Because I believe that the preparation
18 of Article 6.1 did not give rise to very involved
19 legal analyses or discussions.  I believe these text
20 were developed in English with an English vocabulary,
21 was thought up in English, and under French law
22 obviously there is a conceptual obstacle.  The term
23 "non-discrimination" is not appropriate for
24 commercial contracts clearly.
25        Q.  Do you believe this Article was badly

1             CERTIFICATE OF COURT REPORTER

2

3   I, Kay Hendrick, an Accredited Court Reporter, hereby certify that the testimony of the witness, Jacques

4   Raynard, in the foregoing transcript taken on Tuesday, 26th June 2018 was recorded by me in machine

5   shorthand and was thereafter transcribed by me; and that the foregoing transcript is a true and accurate

6   verbatim record of the said testimony.

7

8   I further certify that I am not a relative, employee, counsel or financially involved with any of the

9   parties to the within cause, nor am I an employee or relative of any counsel for the parties, nor am I in

10  any way interested in the outcome of the within cause.

11

12

13

14

15  Signed:   .......................

16         KAY HENDRICK

17  Dated:   June 29, 2018

18

19

20

21

22

23

24

25