# EXHIBIT 8

**DECLARATION OF LEIF PETERSON IN SUPPORT OF HUAWEI'S OPPOSITION TO SAMSUNG'S MOTION TO PARTIALLY EXCLUDE AND STRIKE**

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| HUAWEI TECHNOLOGIES, CO., LTD. et al., <br><br> Plaintiffs, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO. LTD., et al., <br><br> Defendants. | Case No. 16-cv-02787-WHO |
| SAMSUNG ELECTRONICS CO., LTD, & <br> SAMSUNG ELECTRONICS AMERICA, INC. <br><br> Counterclaim-Plaintiffs, <br><br> v. <br><br> HUAWEI TECHNOLOGIES, CO., LTD, <br> HUAWEI DEVICE USA, INC., HUAWEI <br> TECHNOLOGIES USA, INC., & HISILICON <br> TECHNOLOGIES CO., LTD., <br><br> Counterclaim-Defendants. | |

**REBUTTAL EXPERT REPORT OF JERRY A. HAUSMAN**
**May 25, 2018**

****HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY****

my opening report, government agencies have explained their concerns with the realities of economic issues arising from hold up.[16]

6. Dr. Padilla states: "Huawei's conduct cannot be characterised as a refusal to license or as an attempt to obtain supra FRAND royalties."[17] I disagree. ███████

████████████████████████████████████████████

████████████████████████████████████████████

was attempting to obtain supra FRAND royalties from Samsung for the use of the Huawei SEP patents. Contrary to Dr. Padilla's claim, I find that Huawei has violated the non-discrimination standard in FRAND.

7. Economics has a well-defined meaning for the term "non-discriminatory." Price discrimination occurs when prices differs for customers even though their (marginal) costs are similar.[19] More broadly, non-discrimination occurs when similarly

---

[16] Hausman Report, ¶¶15-16. Also see Address by FTC Chairwoman Edith Ramirez, "Standard-Essential Patents and Licensing: An Antitrust Enforcement Perspective," 8th Annual Global Antitrust Enforcement Symposium, September 10, 2014, p. 7; "Intellectual Property and Standard Setting," U.S. submission to the 122nd meeting of the OECD Competition Committee, December 2014, p. 6.

[17] Padilla Report, ¶2.14.

[18] In recent years Apple and Samsung have consistently been the two leading cell phone manufacturers, both in the U.S. and worldwide. See HW_Samsung_00264450 (Strategy Analytics North America Handset Vendor Marketshare Q4 2016) and HW_Samsung_00264453 (Strategy Analytics Global Handset Revenue ASP and Profit Q4 2016). Dr. Padilla acknowledges that Apple "is now one of the top two handset manufacturers in the industry" (¶3.11b).

[19] For example, a leading economics textbook states: "Hence, we will say that there is no price discrimination if differences in prices between consumers exactly reflect differences in the costs of serving these consumers" (J. Tirole, *The Theory of Industrial Organization*, 1988, pp. 133-134). This definition of discrimination is used throughout economics. I have previously written academic papers on price discrimination (e.g., J. Hausman and J. Mackie-Mason, "Price Discrimination and Patent Policy," *Rand Journal of Economics* 19, 1988, pp. 253-265

situated companies or individuals are treated similarly. Dr. Padilla appears to agree with this definition of non-discrimination based on the discussion in his report.[20] In contrast, discrimination occurs when similarly situated companies or individuals are charged significantly different prices or are treated in a significantly ███████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

█████████

    ████████████████████████████████

███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

---

[20] "Non-discriminatory terms indicate that the licensor must give comparable treatment to 'similarly situated' licensees so as to not distort competition between them." (Padilla Report, ¶2.6b).
[21] This definition of non-discrimination in the context of FRAND is also used by D. Carlton and A. Shampine, "An Economic Interpretation of FRAND," *Journal of Competition Law and Economics* 9, 2013, pp. 531-552. The authors explain how this approach will decrease the use of strategic behavior by patent holders to exercise increased market power.
[22] Lasinski Report, ¶135; Cheng Ex. 730 (HW_Samsung_00257642-667).
[23] Lasinski Report, ¶143, n.342, Schedule 11.3.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



---

[34] In this regard, Prof. Carlton and Dr. Shampine op. cit. conclude: "Under FRAND, the menu of offered terms and conditions should be the same for similarly situated firms." (p. 546, fn. 43).  R. Gilbert, "Deal or No Deal? Licensing Negotiations in Standard-Setting Organizations," *Antitrust Law Journal* 77, 2011, pp. 855-888 also comes to a similar conclusion.  Prof. Gilbert states: "Non-discrimination does not require that every licensee pays the same royalty, but rather that every licensee can choose from the same royalty schedule" (p. 873, see also p. 875).

[REDACTED]

12. Dr. Padilla's claim that "[a]s a matter of economics, as between manufacturing companies, the potential harm from hold-out can be just as competitively

---

[35] My interpretation of Huawei's duty under the non-discriminatory obligation of FRAND appears to be similar to Dr. Padilla's, who states: "The non-discrimination prong of the FRAND commitment ... is generally interpreted to mean that the patent holder has to give comparable treatment to similarly situated licensees in negotiations so that such licensees are not discriminated against relative to one another." (Padilla Report, ¶3.31).

[36] Padilla Report, ¶6.5.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

entire royalty stack cannot be challenged in a single proceeding since many different SEP holders are involved. Many of the patents may be valid and infringed, but the aggregate royalty rate may still be "too high." I do not find Dr. Padilla's proposed solution to be realistic from an economic point of view.

Jerry Allen Hausman
May 25, 2018

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**