# EXHIBIT 9

**DECLARATION OF LEIF PETERSON IN SUPPORT OF HUAWEI'S OPPOSITION TO
SAMSUNG'S MOTION TO PARTIALLY EXCLUDE AND STRIKE**

# REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

Highly Confidential, Of Sight Counsel Only Under the Protective Order

Page 1

1                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF CALIFORNIA
2                      SAN FRANCISCO DIVISION
3      - - - - - - - - - - - - - - - - - - - - - - - - - - - -
4      HUAWEI TECHNOLOGIES CO. LTD.,
       HUAWEI DEVICE USA, INC.,
5      AND HUAWEI TECHNOLOGIES USA, INC.
6
7               Plaintiffs/Counterclaim-Defendants,
8
9      vs.              Case No:    16-cv-02787-WHO
10
11     SAMSUNG ELECTRONICS CO., LTD.,
       SAMSUNG ELECTRONICS AMERICA, INC.,
12
13              Defendants/Counterclaim-Plaintiffs.
14     AND
15
16     SAMSUNG RESEARCH AMERICA, INC.,
17              Defendant
18     vs.
19
       HISILICON TECHNOLOGIES CO., LTD.,
20
21             Counterclaim-Defendant.
22        HIGHLY CONFIDENTIAL, OF SIGHT COUNSEL ONLY
23            UNDER THE PROTECTIVE ORDER
              VIDEOTAPED DEPOSITION OF JORGE PADILLA
24                     June 28, 2018
25      Job No. 143459

TSG Reporting - Worldwide    877-702-9580

Highly Confidential, Of Sight Counsel Only Under the Protective Order

Page 6

1    Videographer:  This is the start of media unit labelled

2        number one of the video recorded deposition of Jorge

3        Padilla, in the matter of Huawei Technologies Co limited

4        and Huawei Device USA Inc and Huawei Technologies USA

5        Inc, versus Samsung Electronics Company Limited and

6        Samsung Inc America.  It's being heard in the US Court

7        Northern District of California, San Francisco and the

8        case number is 16-cv-02787-WHO.

9            This deposition is being held in the offices of

10       Quinn Emmanuel in Brussels, Belgium, on June 28th, 2018

11       on 9.29 on the monitor.

12           I am Chris Warmoll, from TSG Reporting, 747 Third

13       Avenue, 10th Floor, New York, NY 10017.  The Court

14       Reporter is Karen Crehan in association with TSG

15       Reporting.  Would counsel please introduce yourselves.

16   Mr Pease:  Thomas Pease from Quinn Emmanuel and with me is

17       Paul Zeineddin.

18    Mr Giardina:  I am from Sidley Austin on behalf of Huawei

19       and Justin Coombs from Compass Lexicon.

20   Videographer:  Will the Court Reporter please swear in the

21       witness.

22   THE WITNESS DR JORGE PADILLA WAS SWORN AND EXAMINED BY MR

23   PEASE AS FOLLOWS:

24   Videographer:  Thank you, we may begin.

25   Q.  Morning Dr Padilla, would you mind stating your full

Highly Confidential, Of Sight Counsel Only Under the Protective Order

1     licensor, correct?

2  A.  Correct.

3  Q.  And those are legal terms that courts have used on

4      assessing FRAND conduct, is that right?

5  A.  That's correct to the best of my understanding.

6  Q.  Are you aware of any aspect of economics that involves

7      analysing whether it licensee or licensor is willing or

8      unwilling?

9  A.  I don't think there is a paper in economics that is

10     titled "willing licensees" or "willing licensors", but

11     there is a very extensive literature on bargaining and

12     their concepts in bargaining theory that are similar to

13     the matter of willing licensor or unwilling licensee --

14     or licensor.  We have notions such as take it or leave

15     it offers.  We have models that tell us when parties are

16     engaged in negotiation.  We have models of refusals to

17     negotiate.  So there is literature in economics that

18     helps you understand under which conditions one party

19     would be willing and which party could be characterized

20     as unwilling.

21 Q.  And did you rely on that literature, that type of

22     analysis in formulating any of the opinions you are

23     offering in this case?

24 A.  So I set out very clear clearly in my first report, I

25     think, the three criteria that I would use that I think

Highly Confidential, Of Sight Counsel Only Under the Protective Order

Page 28

1      are compatible with economic theory and understanding

2      for how to discriminate between a willing licensor and a

3      willing licensee, and I think they are set out at the

4      beginning of the section in which I review the

5      negotiations between Huawei and Samsung.

6   Q. Do you have any background in electrical engineering or

7      electronics engineering?

8   A. No.

9   Q. And I take it you are not familiar with the technical

10     aspects of the 3G or 4G technology that's at issue here?

11  A. No, I participated in the cases concerning this industry

12     since 2005 and I have been involved in numerous cases

13     but I am not an electrical engineer, so my knowledge is

14     that of somebody that reads about these things and tries

15     to understand what engineers say.

16  Q. Could you look - did you look at any of the Samsung or

17     Huawei patents that are at issue in this case?

18  A. No.

19  Q. I am going to take a step back.  In this case, you

20     understand that Samsung and Huawei have both asserted

21     declared essential patents against each other?

22  A. Correct.

23  Q. And they are both contending that the other party

24     infringes those patents, do you understand that?

25  A. I understand that.

Highly Confidential, Of Sight Counsel Only Under the Protective Order

Page 34

1    contributions was to discuss whether they could be used

2    as a proxy for value among other potential proxies for

3    value.

4  Q.  And can SEP contributions be used as a proxy for value

5    of a patent portfolio?

6  A.  I think as a profession, as economists, we are

7    struggling to understand or to develop good proxies for

8    value.  We have over the years developed some measures,

9    forward citations with -- this case is one of them.

10    There is some unsatisfaction about the usefulness of

11    forward citations or patent counting and so we are all

12    looking for different ways in which we could proximate

13    the value.  Contributions is one of the notions that has

14    been put forward, and, you know, it has has its pros and

15    its cons and its problems as well.

16        And people are trying to come with new ideas as to

17    how to proxy value, because it's a difficult exercise,

18    and so, you know, I think that my view on contributions

19    is set out in my report, is just one additional proxy

20    that you may want to consider.  And my view at this

21    stage is that since there is no perfect proxy, all of

22    these are useful and potentially informative, but all of

23    them should be taken with a pinch of salt.

24  Q.  Just generally what are the pros and cons of

25    contributions analysis, just generally?

Highly Confidential, Of Sight Counsel Only Under the Protective Order

Page 103

1      802.11 Wi-Fi standards?

2   A.   That's correct.  Yeah, I believe that that's correct.

3   Q.   And Huawei has Standard Essential Patents for 80.211,

4        correct?

5   A.   I believe so.

21  Q.   You would agree that Wi-Fi SEPs have value, correct?

22  A.   They have some value, of course.

23  Q.   I am going to hand you what's been marked as Padilla

24       Exhibit 8, a document previously marked as Cheng Exhibit

25       723.

Highly Confidential, Of Sight Counsel Only Under the Protective Order

Page 171

1       another, no licensee is going to be absolutely identical

2       to another.  Secondly, because opining the contrary

3       creates problems if you accept that FRAND is not a

4       number but a range.

5    Q. And so before, in the example we talked about, I

6       proposed that suppose Apple pays one cent and Samsung

7       pays $10 -- let's suppose Apple pays one cent and

8       Samsung pays $30; in your view if Samsung can continue

9       to compete, even with that additional $30 cost, it's not

10       the subject of non-discrimination for FRAND purposes?

11   A. That's correct, and that is my view.  But I think it's

12       consistent with the view of many others.  I think that I

13       am not alone here, including the seminal paper in this

14       area by Dan Swanson, and Bill Baumol, Anti-Trust Law

15       Journal, 2005.  They have exactly the same opinion as

16       far as I recall.

17   Q. Now when Huawei first publicized its 1.5% so-called

18       standard rate, it characterizes just that, a standard

19       rate that would apply to everyone, correct?

20   Mr Gardinia:  Objection to form and foundation.

21   A. I don't recall how it was characterized, I think that

22       people that were publicizing rates for LTE, typically

23       meant caps, maximum rates at the time, but I don't know

24       exactly how Huawei presented it.

25   Q. But you are not aware of Huawei saying "well, we will

Highly Confidential, Of Sight Counsel Only Under the Protective Order

1

2

3                   CERTIFICATE OF COURT REPORTER

4

5       I, Karen Crehan, an Accredited Court Reporter,

6    hereby certify that the testimony of the witness, Dr

7    Jorge Padilla, in the foregoing transcript taken on 28th

8    June, 2018, as recorded by me in machine shorthand was

9    thereafter transcribed by me; and that the foregoing

10   transcript is a true and accurate verbatim record of the

11   said testimony.

12

13      I further certify that I am not a relative,

14   employee, counsel or financially involved with any of

15   the parties to the within cause, nor am I in any way

16   interested in the outcome of the within cause.

17

     _____

18           Karen Crehan

19      Dated: July 3, 2018

20

21

22

23

24

25