# EXHIBIT 10

**DECLARATION OF LEIF PETERSON IN SUPPORT OF HUAWEI'S OPPOSITION TO SAMSUNG'S MOTION TO PARTIALLY EXCLUDE AND STRIKE**

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| HUAWEI TECHNOLOGIES, CO., LTD. et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO. LTD., et al.,<br><br>Defendants.<br><hr>SAMSUNG ELECTRONICS CO., LTD, &<br>SAMSUNG ELECTRONICS AMERICA, INC.<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>HUAWEI TECHNOLOGIES, CO., LTD,<br>HUAWEI DEVICE USA, INC., HUAWEI<br>TECHNOLOGIES USA, INC., & HISILICON<br>TECHNOLOGIES CO., LTD.,<br><br>Counterclaim-Defendants. | Case No. 16-cv-02787-WHO |

**EXPERT REPORT OF JERRY A. HAUSMAN**
**April 27, 2018**

****HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY****

assurance that F/RAND-encumbered patents included in the standard would be available on reasonable licensing terms under the SDO's policy.[4]

17. Huawei also recognizes that the threat of an injunction leads to increased royalty rates. ■■■

18. In 2016 Huawei filed patent infringement lawsuits against Samsung in China regarding 8 SEPs in which Huawei sought to obtain an injunction instead of monetary damages.[8] Huawei had previously committed to license each of the 8 SEPs on FRAND terms and conditions.[9] In attempting to obtain an injunction Huawei changed the threat

---

[4] U.S. Department of Justice and U.S. Patent & Trademark Office Policy Statement on Remedies for Standards-Essential Patents Subject to Voluntary F/RAND Commitments, January 8, 2013, p. 6.
[5] HW_Samsung_00694743-865, p. 756.
[6] HW_Samsung_00694743-865, p. 758.
[7] Cheng Dep., pp. 106:24-107:5.
[8] Ding Dep., 206:4-9.
[9] Complaint, Dkt. 1, ¶ 33, Exs. 2.1-2.43.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

point of the negotiation with Samsung and created a situation where the outcome will not be a FRAND royalty. Instead of the threat point being a reasonable royalty on the handsets Samsung produced or sold in China, Huawei created a situation where Samsung faced the threat of losing all profits on handsets it produced or sold in China. That Huawei's lawsuits were intended to obtain bargaining leverage is confirmed by a public interview of Huawei's Mr. Ding from October 2016, after the lawsuits were filed.[10] According to Mr. Ding, Huawei does not "really want to kick Samsung out of China." Instead, the purpose of an injunction threat "is to get the royalties in return, while using legal action as a bargaining chip."[11]

19. It is important to note that attempting to obtain an injunction for a FRAND-committed SEP does not necessarily violate the FRAND commitment. For example, as the DOJ and PTO note, "if a putative licensee refuses to pay what has been determined to be a F/RAND royalty, or refuses to engage in a negotiation to determine F/RAND terms, an exclusion order could be appropriate."[12] However, Huawei has not offered a FRAND royalty to Samsung, and Samsung has not refused to engage in negotiation with Huawei. Moreover, as I discuss below, an injunction is not necessary to compensate Huawei for any harm it has suffered from the use of its patents. Thus, Huawei has violated its FRAND commitment.

---

[10] Ding Ex. 711.
[11] Ding Ex. 711, p. 4.
[12] U.S. Department of Justice and U.S. Patent & Trademark Office Policy Statement on Remedies for Standards-Essential Patents Subject to Voluntary F/RAND Commitments, January 8, 2013, p. 6.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

## IV. HUAWEI'S INCONSISTENT NEGOTIATION POSITIONS

20. It is my understanding that some courts and economists believe that injunctive relief should be permitted for SEPs under at least some circumstances. For example, the Federal Circuit has stated that "an injunction may be justified where an infringer unilaterally refuses a FRAND royalty or unreasonably delays negotiations to the same effect."[13] I have reviewed the negotiation history between the parties here, and I have not observed any such behavior by Samsung that would justify Huawei's pursuit of injunctive relief in China.

21.  This fact is important because as I detail below, Huawei's proposed licensing structures and demands were a moving target, making it difficult for Samsung as a prospective licensee to understand what was being offered on what terms.

22. Huawei's methodology for assessing the strength of its portfolio was overly simplistic as an economic matter. On one slide, Huawei advertised that it owns "8%

---

[13] *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1331-32 (Fed. Circ. 2014).
[14] Exhibit 715.
[15] Exhibit 715, HW_Samsung_00130409-424, p. 418.
[16] 

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

among the total declared LTE/SAE essential patents in 3GPP."[17] However, Huawei acknowledged this measure of portfolio strength was a simple matter of "just counting them."[18] An undifferentiated count of the number of essential and non-essential patents—with no accounting for which patents may have more inherent technical value—is not a reliable methodology for measuring portfolio strength, as Huawei acknowledges.[19]

23. 

24. 

---

[17] Exhibit 715, HW_Samsung_00130409-424, p. 412.
[18] 
[20] Exhibit 717.
[21] Cheng Dep., pp. 133:7-134:5.
[22] Cheng Dep., pp. 134:18-135:2.
[23] Cheng Dep., p. 135:7-10.

12
**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



▬▬ This position does not make economic sense when the industry has many other more prolific SEP patentholders looking for their own portion of aggregate royalties, including Qualcomm, Ericsson, Nokia, among others.

26. As a general matter, it is economically efficient for large multi-national companies like Samsung and Huawei to reach global patent peace agreements under which both companies agree not to sue each other over patents. Such agreements decrease litigation costs, legal risk, and ultimate prices to consumers.

27. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

---

[24] Cheng Dep., p. 135:11-20.
[25] Cheng Dep., pp. 137:17-138:5.
[26] Cheng Dep., p. 137:8-15.
[27] Second Witness Statement of Xuxin Cheng, Huawei v Unwired Planet, HP-2014-0000005 (High Court of Justice Chancery Division Patents Court), ¶19 (HW_Samsung_00697836-842, p. 841).
[28] 1.5% is 25% of Huawei's proposed aggregate royalty of around 6%.
[29] Exhibit 718 (Term sheet from Samsung to Huawei dated July 20, 2012).

13
**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



---

[30] Exhibit 719; Cheng Dep., pp. 161:15-162:1.
[31] Cheng Dep., p. 169:2-17.
[32] Cheng Dep., p. 171:1-5.
[33] Cheng Dep. 169:2-11.
[34] Cheng Dep., pp. 91:20-92:22, 161;4-162:22; Exhibit 719, Cheng Dep. (HW_Samsung_00130702-706, p. 706).
[35] Cheng Dep., pp. 177:15-178:16; Exhibit 721, Cheng Dep. (HW_Samsung_00131515-531, p. 526).

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**



32. Huawei ultimately filed lawsuits in both the United States and China on May 24, 2016. Its Chinese lawsuits involved the pursuit of injunctive relief on SEPs. My review of the negotiations between the parties leads me to the conclusion that, to the

---

[36] Cheng Dep., p. 170:13-171:23.
[37] Cheng Dep., p. 180:5-13.
[38] Exhibit 724; Cheng Dep., p. 191:2-5.
[39] Cheng Dep., p. 192:15-23.
[40] Cheng Dep., p. 192:15-23.
[41] Cheng Dep., p. 193:9-14.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

extent there are any exceptions to the general rule that a SEP owner cannot pursue injunctive relief, those exceptions do not apply here. ███████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████

████████████████████

### V. ECONOMIC ANALYSIS OF IRREPARABLE HARM, BALANCE OF THE EQUITIES, AND THE PUBLIC INTEREST

33. I understand that under U.S. law, in order for a patentee to obtain an injunction:

> A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.[42]

34. In considering the first two factors, it is important to note that Huawei has committed to license the patents at issue on FRAND terms and conditions. This FRAND commitment indicates that Huawei has determined that royalties are sufficient to compensate it for the use of its patents, and hence that Huawei would not suffer an irreparable injury in the absence of an injunction. As the FTC has noted, "[a] prior

---

[42] *eBay v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

constrained by suppliers at other locations. Furthermore, the technology in the markets at issue is used in products that are made and shipped internationally.

### H. Market Power

55. Because Huawei's technology was chosen for the standard in each of the technology markets, thereby eliminating the ex ante alternatives, Huawei is a monopolist with market power in each of the technology markets. Any company that desires to sell 3G or 4G-compliant handsets has no choice but to use Huawei's technology. As I discussed above, SSOs require FRAND commitments in order to limit the hold up problem for SEPs. FRAND commitments can also be seen as a way to prevent the exercise of market power that is created by standardization. The FRAND commitment requires a SEP owner to charge a royalty rate that reflects ex ante competition, not the ex post monopoly.

56. Prior to seeking an injunction, Huawei had committed to license all firms on FRAND terms and conditions. Thus, companies like Samsung that sell 3G or 4G-compliant handsets could invest in research and development and the manufacturing capacity for products using those standards with the knowledge that, at most, they would have to pay a FRAND royalty. However, by seeking an injunction, as explained above, Huawei gained a "bargaining chip" that changed the threat point in the negotiations with Samsung. Thus, by seeking an injunction Huawei is seeking to exploit its market power and obtain higher royalties. These higher royalties are equivalent to higher prices than would have occurred in the absence of the injunction and are thus a violation of Section 2.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

60. Given the combined effect of Huawei's violation of its FRAND commitments and its injunction-seeking tactics, I find that Huawei has attempted to monopolize the six technology markets that I previously defined.  As a result of Huawei's hold up strategy, Samsung not only faces the repercussions of injunctions but Samsung is also forced to litigate the issues on patents that should have been licensed under FRAND terms, not only in federal district court but also in China.  At a minimum, Samsung's injury from the antitrust violation is comprised of the cost of multiple litigations, attorneys' fees, and the experts' fees paid to me and my team, and associated costs.[51]

Jerry Allen Hausman
April 27, 2018

---

[51] I understand that the specific harm will be quantified by Samsung's damages expert at a later date when these costs have been tabulated.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**