Michael J. Bettinger (SBN 122196)
*mbettinger@sidley.com*
Irene Yang (SBN 245464)
*irene.yang@sidley.com*
SIDLEY AUSTIN LLP
555 California Street, Ste. 2000
San Francisco, California 94104
415-772-1200 – Telephone
415-772-7400 – Facsimile

David T. Pritikin (*pro hac vice*)
*dpritikin@sidley.com*
David C. Giardina (*pro hac vice*)
*dgiardina@sidley.com*
Douglas I. Lewis (*pro hac vice*)
*dlewis@sidley.com*
John W. McBride (*pro hac vice*)
*jwmcbride@sidley.com*
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
312-853-7000 – Telephone
312-853-7036 – Facsimile

*Attorneys for Plaintiffs*
*HUAWEI TECHNOLOGIES CO., LTD.*
*HUAWEI DEVICE USA, INC.,*
*HUAWEI TECHNOLOGIES USA, INC., and*
*HISILICON TECHNOLOGIES CO., LTD.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUAWEI TECHNOLOGIES CO., LTD., HUAWEI DEVICE USA, INC., and HUAWEI TECHNOLOGIES USA, INC., <br><br> Plaintiffs / Counterclaim-Defendants, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., <br><br> Defendants / Counterclaim-Plaintiffs, <br><br> and <br><br> SAMSUNG RESEARCH AMERICA, <br><br> Defendant, <br><br> v. <br><br> HISILICON TECHNOLOGIES CO., LTD., <br><br> Counterclaim-Defendant. | Case No. 3:16-cv-02787-WHO <br><br> **HUAWEI'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE PORTIONS OF HUAWEI'S EXPERT REPORTS** <br><br> Hearing Date: August 8, 2018 <br> Time: 2:00 p.m. <br> Location: Courtroom 2, 17th Floor <br> Judge: Hon. William H. Orrick <br><br> **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

## <u>TABLE OF CONTENTS</u>

I.      OVERVIEW ................................................................................................................. 1

II.     BACKGROUND FACTS ............................................................................................. 1

III.    ARGUMENT ............................................................................................................... 3

        A.    Huawei's Equivalents Analysis for the "Group Number k" Element in Huawei's '239 Patent Was Properly Disclosed. .................................................... 3

        B.    The Priority Date Analyses Set Forth in the Rebuttal '587 and '892 Expert Reports Were Timely. ........................................................................................... 5

              1.    Samsung Bears the Burden of Persuasion Concerning All Aspects of its Invalidity Defenses With Respect to the '587 and '892 Patents. .................................................... 6

              2.    Samsung Bears the Initial Burden of Production that a Reference is Prior Art to the '587 and '892 Patents. ........................................................................................ 7

              3.    The Priority Date Analysis for the '587 and '892 Patents was Properly Included in Huawei's Rebuttal Reports. ........................................................................................ 7

        C.    Samsung Had Sufficient Notice of Huawei's Invalidity Analysis for the '825 Patent. ........................................................................................................... 9

              1.    "Predetermined Delay Duration." ............................................................... 9

              2.    Claim 4's Structural Elements. .................................................................. 11

        D.    Huawei Disclosed its Non-Infringement Theories for Samsung's '105, '350, '130 and '726 Patents. ........................................................................................ 12

        E.    Huawei Disclosed its Position on Non-Infringing Alternatives for the Huawei Patents-in-Suit. ..................................................................................... 15

        F.    Huawei Disclosed Non-Infringing Alternatives for the Samsung Patents-in-Suit. ...... 19

        G.    Huawei's Inequitable Conduct Defense for Samsung's '105 Patent. ......................... 21

IV.    CONCLUSION ......................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Calcar, Inc. v. Am. Honda Motor Co.*,
  768 F.3d 1185 (Fed. Cir. 2014)..........................................................................................22

*Apple v. Samsung Elec. Co., Ltd.*,
  Case No. 11-cv-01846-LHK, 2012 WL 3155574 (N.D. Cal. Aug. 2, 2012) (cited
  at Br. 13) ........................................................................................................................20

*Biogenex Labs., Inc. v. Ventana Med. Sys., Inc.*,
  No. C 05-860JFPVT, 2006 WL 2228940 (N.D. Cal. Aug. 3, 2006) ...........................11, 12

*Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*,
  No. 2:15-cv-00011-RSP, 2017 WL 5137401 (E.D. Tex. Nov. 4, 2017) ...............................19-20

*Fujifilm Corp. v. Motorola Mobility LLC*,
  No. 12-cv-03587-WHO, 2015 WL 757575 (N.D. Cal. Feb. 20, 2015) .............................16

*Hearing Components, Inc. v. Shure, Inc.*,
  No. 9:07-CV-104, 2008 WL 11348417 (E.D. Tex. Dec. 16, 2008) ....................................8

*MediaTek Inc. v. Freescale Semiconductor, Inc.*,
  No. 11-cv-5341, 2014 WL 2854773 (N.D. Cal. June 20, 2014)........................................12

*MediaTek Inc. v. Freescale Semiconductor, Inc.*,
  No. 11-CV-5341 YGR, 2014 WL 690161 (N.D. Cal. Feb. 21, 2014).............................9, 10, 11

*Medimmune, LLC v. PDL Biopharma, Inc.*,
  No. C 08-5590 JF (HRL), 2010 WL 760443 (N.D. Cal. Mar. 4, 2010) .............................9, 11, 12

*Microsoft Corp. v. I4I Ltd. P'ship*,
  564 U.S. 91 (2011)...............................................................................................................6

*O2 Micro Intern. Ltd. v. Monolithic Power Systems*,
  467 F.3d 1355 (Fed. Cir. 2006).......................................................................................11, 12

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
  522 F.3d 1299 (Fed. Cir. 2008)........................................................................................7, 8

*Synthes USA, LLC v. Spinal Kinetics, Inc.*,
  No. C-09-01201 RMW, 2011 WL 11709387 (N.D. Cal. Aug. 19, 2011) (cited at
  Br. 13) ...............................................................................................................................20

*Tech. Licensing Corp. v. Videotek, Inc.*,
  545 F.3d 1316 (Fed. Cir. 2008)......................................................................................6, 7, 8

ii

*Therasense, Inc. v. Becton, Dickinson and Co.*,
   649 F.3d 1276 (Fed. Cir. 2011) (en banc).................................................................22

*ZiliLabs Inc., Ltd. v. Samsung Elec. Co. Ltd.*,
   No. 2:14-cv-203-JRG-RSP, 2015 WL 6690403 (E.D. Tex. Nov. 1, 2015)....................20

**Statutes**

35 U.S.C. § 282...........................................................................................................6

35 U.S.C. § 112.........................................................................................9, 10, 11, 12

**Other Authorities**

Fed. R. Civ. Proc. 26...........................................................................16, 18, 21

Fed. R. Civ. Proc. 37...........................................................................18. 19, 20

Patent Local Rule 3-1............................................................................2, 5, 7

Patent Local Rule 3-2.................................................................................2

Patent Local Rule 3-3.......................................................................2, 9-10, 21

Patent Local Rule 3-4.................................................................................2

Patent Local Rule 4-2.................................................................................1

Patent Local Rule 4-3.......................................................................1, 10, 13, 14

1   Plaintiffs and Counter-Defendants, Huawei Technologies Co., Ltd., Huawei Device USA,

2   Inc., Huawei Technologies USA, Inc. and HiSilicon Technologies Co., Ltd. (collectively

3   "Huawei") oppose the Motion to Strike Portions of Huawei's Expert Reports filed by Defendants

4   and Counter-Plaintiffs Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.

5   (collectively "Samsung").

6   **I.    OVERVIEW**

7   Huawei timely, thoroughly, and repeatedly disclosed the bases for its infringement and

8   validity positions on the Huawei patents and its non-infringement and invalidity positions on the

9   Samsung patents.  These disclosures included, *inter alia,* the allegations of Huawei's Complaint,

10  and attached claim charts; the allegations of Huawei's Answer to Amended Counterclaims, and

11  attached exhibits; Huawei's Patent Local Rule 4-2 Infringement Contentions; Huawei's Patent

12  Local Rule 4-3 Amended Invalidity Contentions; Huawei's claim construction positions and

13  filings; Huawei's Original and Supplemental Responses to Samsung's First, Second, Third, Fourth

14  and Fifth Sets of Interrogatories; production of 881,555 pages of Huawei documents; and

15  deposition testimony from 19 Huawei fact witnesses solely on technical issues in the case.  All of

16  this information was provided to Samsung prior to Huawei serving 22 separate expert reports

17  addressing the infringement and validity of the Huawei patents and non-infringement and

18  invalidity of the Samsung patents.  Following receipt of Huawei's expert reports, Samsung had an

19  opportunity to depose each of Huawei's expert witnesses on their respective reports and the

20  complete factual record in the case.

21  This is not a case where Samsung was surprised with new facts, new arguments, or

22  undisclosed positions.  Huawei repeatedly disclosed its positions.  Samsung has not been deprived

23  of the opportunity to address, respond to, or rebut any of Huawei's positions in this case.

24  Samsung's accusations to the contrary ring hollow.

25  **II.    BACKGROUND FACTS**

26  Huawei filed its original complaint on May 24, 2016, asserting that Samsung devices

27  infringed eleven of Huawei's 4G LTE Standard Essential Patents (SEPs).  ECF No. 1.  The

28  complaint included infringement charts for each of Huawei's eleven asserted SEPs.

1    Pursuant to Patent Local Rules 3-1 and 3-2, Huawei served its disclosure of asserted claims

2    and infringement contentions on October 24, 2016.  The infringement contentions identified the

3    asserted claims, the accused instrumentalities, theories of direct and indirect infringement, theories

4    of infringement literally and under the Doctrine of Equivalents, priority dates for each Huawei

5    patent, facts supporting willful infringement, and detailed claim charts.  *Id.*  Huawei also produced

6    179,552 pages of documents supporting its infringement contentions.

7    Huawei answered Samsung's amended counter-complaint on November 11, 2016, denying

8    that Huawei infringed any valid claim of the nine Samsung patents alleged by Samsung to be

9    SEPs.  ECF No. 98.

10   Pursuant to Patent Local Rules 3-3 and 3-4, Huawei served its original invalidity

11   contentions on January 20, 2017, and supplemental invalidity contentions on September 22, 2017.

12   The invalidity contentions identified prior art references for each of Samsung's nine asserted

13   patents and identified additional references, grouped by subject matter, describing published art

14   relevant to the claimed inventions.  These references included 3GPP technical specifications,

15   3GPP working group submissions, and various patents and published patent applications.

16   Declaration of Irene Yang in Support of Huawei's Opposition to Samsung's Motion to Strike

17   Portions of Huawei's Expert Reports ("Yang Decl."), Ex. 1 (Supplemental Invalidity Contentions,

18   9/22/2017) at pp. 13-35.

19   Following Huawei's service of infringement contentions and invalidity contentions, the

20   parties commenced fact discovery.  Huawei served original and supplemental responses to each of

21   Samsung's interrogatories.  Specifically, Huawei served an original and six supplemental

22   responses to Samsung's First Set of Interrogatories, an original response to Samsung's Second Set

23   of Interrogatories, an original and two supplemental responses to Samsung's Third Set of

24   Interrogatories, an original and one supplemental response to Samsung's Fourth Set of

25   Interrogatories, and an original response to Samsung's Fifth Set of Interrogatories.

26   As part of fact discovery, Huawei made its witnesses available for deposition, including

27   inventors for each of Huawei's patents, 30(b)(6) witnesses, semiconductor chip design engineers,

28   software engineers, and testing engineers.  In total, Samsung deposed 19 Huawei witnesses on

1    issues related to the technical patent case.

2         Following the close of fact discovery on March 9, 2018, the parties engaged in a meet-and-

3    confer process that resulted in both sides serving supplemental interrogatory responses, and in

4    Samsung providing, on June 29, 2018, additional witnesses to answer questions on 365,236 testing

5    documents that Samsung had produced on the last day of fact discovery.  After the close of

6    discovery, Samsung also provided an additional source code witness on June 27, 2018 to answer

7    questions that Samsung's previous 30(b)(6) witness was unprepared to answer.

8         On April 27, 2018, Huawei served eleven opening expert reports including six reports

9    addressing Samsung's infringement of the narrowed list of Huawei patents and another five reports

10   addressing the invalidity of the narrowed list of Samsung patents.[1]  On May 25, 2108, Huawei

11   served eleven rebuttal expert reports, including five reports addressing Huawei's non-infringement

12   of Samsung's patents and another six reports addressing the validity of Huawei's patents.

13        Following the exchange of expert reports, Huawei made each of its expert witnesses

14   available for deposition during the three-week expert discovery window.  Samsung deposed each

15   of Huawei's expert witnesses and was not restricted from asking any questions directed to

16   statements made by any Huawei expert in any of their respective reports.  At no point did Samsung

17   complain that it was precluded from asking questions of Huawei's experts or that Huawei's experts

18   were not prepared to answer the questions asked of them.

19   **III.    ARGUMENT**

20        **A.    Huawei's Equivalents Analysis for the "Group Number k" Element in Huawei's
              '239 Patent Was Properly Disclosed.**

21

22        Huawei's '239 patent describes a method and apparatus for allocating sequences into

23   groups in a manner that minimizes inter-cell interference with mobile devices in neighboring cells.

24   Sequences with high correlation can be grouped together to avoid interference with different

25   groups of sequences having low correlation.

26        The asserted claims of the '239 patent require "obtaining, by … the user equipment**,** a

27   **_group number k_** of a sequence group allocated by the system" (claim 7) and a "sequence selecting

28   _____
[1] Both Samsung and Huawei analyzed Samsung's '350 and '419 patents in a single expert report.

unit configured to obtain a ***group number k*** of a sequence group allocated by the system" (claim 18) (emphasis added).  In the 4G LTE standards, the ***group number k*** is "u+1" (*i.e.*, k = u+1). Mot., Lordgooei Decl., Ex. R at ¶ 317.  ██████████████████████████████████████

███████████████████  *Id.* at ¶ 336.  "u," however, is generated from precursors sent from the network, and obviously, "u+1" is generated from "u" as well (by adding 1).  *Id.* at ¶ 253.  The claims, however, do not require receiving the "group number k" directly from the network and can cover receiving precursors and calculating the group number.  *See* ECF No. 330 at 15:10-16.  As a result, Samsung literally satisfies the "obtaining" element of asserted claims 7 and 18, as explained in Huawei's infringement contentions, interrogatory responses, and expert report of Dr. Venugopal Veeravalli.

When Huawei's expert Dr. Veeravalli filed his opening infringement report, he had limited information about Samsung's non-infringement arguments on this element.  Samsung, on the last day of discovery, had only provided Huawei with a high-level, boilerplate response to Interrogatory No. 24, which requested all factual and legal bases for Samsung's contention that it did not infringe the '239 patent.  *See* Yang Decl., Ex. 3 (Samsung Suppl. Resps. To Huawei Interrog. (March 9, 2018)), at p. 243.  In particular, Samsung stated, with no further explanation, that, "Huawei impermissibly redefines the group number 'k' to be 'u + 1' in the standard – but of course 'u + 1' is not the group number."  *Id.*  In that interrogatory response, Samsung never disclosed its current assertion that "obtaining" cannot include calculating.

To anticipate Samsung's then unarticulated and nebulous defense, Dr. Veeravalli opined that, "[t]o the extent that Samsung denies that u + 1 is the group number k, 'u+1' is equivalent to the group number k under the doctrine of equivalents."  *See* Mot., Lordgooei Decl., Ex. R at ¶ 254. Samsung now seeks to strike that opinion.

Samsung's expert, in his rebuttal non-infringement report, asserted that the "group number k" could not be "u+1" because the "obtaining" steps allegedly require "receiv[ing] from an external device," and "u+1" is not received directly from the system, instead having been calculated.  Ex. 4 (Madisetti '239 Non-Infr. Rpt.) at ¶¶ 64-68.  Samsung never previously presented this argument, in its interrogatory responses or elsewhere.

Consequently, Dr. Veeravalli's caution in providing a doctrine of equivalents opinion in his opening infringement report turned out to be prescient, given Samsung's lack of prior disclosure. Dr. Veeravalli's doctrine of equivalents analysis in his opening infringement report accounts for the fact that even if one accepts Samsung's incorrect and limiting reading of the claim term "obtaining" to be "receiv[ing] from an external device," receiving the precursors to "u" and "u+1" from the network is equivalent to receiving the group number itself.

The timeline of the parties' allegations confirms Samsung's inconsistencies.  Samsung first provided the above described minimal detail about its defense relating to "u+1" at 11 p.m. on March 9, 2018, the last day of fact discovery.  Huawei could not have responded with its equivalents argument before discovery closed and had no reason to even assert an equivalents argument before 11 p.m. on the last day of discovery.  Samsung should not be rewarded for such discovery games, and Samsung's attempt to exclude Dr. Veeravalli's equivalents analysis relating to the group number k should be denied.

In any event, Samsung has not been prejudiced.  Samsung had a full and fair opportunity to explain its position in Dr. Madisetti's rebuttal report and to depose Dr. Veeravalli about any and all statements in his opening report.  The record confirms that Samsung brought this problem on itself by only ever stating that "of course 'u + 1' is not the group number" with no further detail about its non-infringement defense until its expert's rebuttal report.  The record further confirms that Dr. Veeravalli included his doctrine of equivalents analysis in his opening infringement report, thereby providing Samsung, and its expert Dr. Madisetti, with ample opportunity to respond.  Indeed, that is precisely what Dr. Madisetti did in his rebuttal non-infringement report, arguing that "u + 1" is not received from the system.

**B.  The Priority Date Analyses Set Forth in the Rebuttal '587 and '892 Expert Reports Were Timely.**

Samsung's motion to strike the priority date analyses of Huawei's experts, Dr. Akl for Huawei's '587 patent and Dr. Veeravalli for the '892 patent, rests on a fundamental legal error that would improperly shift the burden of proof and create an unworkable system for expert disclosures. Huawei first disclosed the priority date for the '587 and '892 patents in its Local Rule 3-1

Infringement Contentions, served early in the case.  *See* Yang Decl., Ex. 5, (Huawei's 3-2 Infr.

Contentions), at pp. 8-9.  Samsung argues, however, that the service of its invalidity contentions –

which identified prior art that **post-dated** Huawei's claimed priority dates of the '587 and '892

patents – obligated Huawei to provide a priority date analysis for these patents in Huawei's opening

expert reports.  But, as the party challenging the validity of a patent, Samsung always bears the

burden of proving invalidity; Samsung's motion to strike is an improper attempt to shift that burden

to Huawei.

Providing an analysis of a patent's priority date to show that a reference is not prior art is no

different than making any other invalidity rebuttal argument, such as why a particular prior art

reference fails to disclose a claim limitation.  In the context of the expert report schedule in this case,

the proper place for such arguments is in a rebuttal report responding to an opening invalidity report.

Samsung's logic would lead to the absurd requirement that an expert must rebut, in an opening

*infringement* report, every invalidity issue raised during discovery.  Tellingly, Samsung fails to cite a

single case requiring such disclosures (or indeed, even a case requiring a priority date analysis in an

opening expert report).  Nor is Samsung's failure surprising, as such a requirement would be

contrary to both the law and the established procedure in this Court.

### 1. Samsung Bears the Burden of Persuasion Concerning All Aspects of its Invalidity Defenses With Respect to the '587 and '892 Patents.

As the party challenging the validity of Huawei's patents, Samsung bears the ultimate burden

of proving invalidity.  *See Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 95 (2011) (quoting 35

U.S.C. § 282) ("[a] patent shall be presumed valid," and the "burden of establishing invalidity of a

patent . . . shall rest on the party asserting such invalidity").  In moving to strike, Samsung conflates

two different burdens—the burden of persuasion and the burden of production (or burden of going

forward).  The Federal Circuit has made clear that Samsung, as the party asserting that the '587 and

'892 patents are invalid, *always* bears the burden of persuasion on all aspects of its invalidity defense

by clear and convincing evidence.  *See Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327

(Fed. Cir. 2008).  Indeed, in situations where the priority date of a challenged patent pre-dates a prior

art reference, the Federal Circuit has expressly stated that the party asserting invalidity based on that

reference bears the ultimate burden of persuading the finder of fact that the patent is not entitled to that priority date. *See id.* at 1328-29 (a defendant "fail[s] to carry its ultimate burden of persuasion, and its defense of invalidity [] based on anticipation" if it cannot show "by clear and convincing evidence" that the challenged patent "is not entitled to the benefit of the earlier filing date").

### 2. Samsung Bears the Initial Burden of Production that a Reference is Prior Art to the '587 and '892 Patents.

The burden of presenting evidence regarding a patent's priority date may shift between the parties, but Samsung has the <u>initial</u> burden of going forward with evidence that a prior art reference is anticipating prior art to the '587 and '892 patents. *See id.* at 1327; *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305 (Fed. Cir. 2008). It is only <u>after</u> Samsung presents such evidence that the burden of production shifts to Huawei to set forth evidence that (1) the alleged prior art does not disclose all of the elements of the asserted claim or (2) that the asserted claim is entitled to an earlier "priority date" that predates the alleged prior art. *Tech. Licensing Corp.*, 545 F.3d at 1327.

### 3. The Priority Date Analysis for the '587 and '892 Patents was Properly Included in Huawei's Rebuttal Reports.

Huawei undisputedly gave Samsung notice of the priority date for the '587 and '892 patents in Huawei's Local Rule 3-1 Infringement Contentions. Yang Decl., Ex. 5 (Huawei's 3-1 Infr. Contentions). For the '587 patent, Huawei identified December 3, 2009, the date of the original Chinese application, as the priority date. *Id.* at 9. For the '892 patent, Huawei identified April 30, 2007, the date of the original Chinese application, as the priority date. *Id.* Samsung has therefore been on notice of the '587 and '892 priority dates since at least October 25, 2016.

The rebuttal expert reports of Dr. Akl addressing the '587 patent and Dr. Veeravalli addressing the '892 patent properly rebutted the invalidity opinions offered by Samsung's expert witnesses, who had the initial burden of proof. This is entirely consistent with Federal Circuit precedent and the Court's Case Management Order. In their rebuttal opinions, Dr. Akl and Dr. Veeravalli explained that prior art asserted by Samsung's experts does not disclose all of the elements of the asserted claims *and* that the claims of the '587 and '892 patents are entitled a priority date that predates at least some of the cited prior art. *See* Yang Decl., Ex. 6 (Veeravalli '587 Validity Rpt.), ¶¶ 241-244. This is precisely how the Federal Circuit specified that the burden of

1   production of evidence should properly shift between the parties.  *See Tech. Licensing Corp.*, 545

2   F.3d at 1327; *see also Hearing Components, Inc. v. Shure, Inc.*, No. 9:07-CV-104, 2008 WL

3   11348417, at *1, 3 (E.D. Tex. Dec. 16, 2008) (endorsing as "timely" a rebuttal expert report

4   analyzing the priority date of an asserted claim to disqualify a reference as prior art).

5          Samsung argues that the burden of production with respect to the priority date shifted when

6   Samsung served its invalidity contentions on Huawei and that Huawei therefore needed to include

7   the priority date analysis in its opening report.  Mot. at 20.  As an initial matter, neither of cases cited

8   by Samsung - *PowerOasis* or *Technology Licensing* - supports or suggests that the burden of

9   production shifts upon the service of <u>contentions</u>.  Nor would such a requirement make any sense.

10  Following Samsung's logic, both Huawei's and Samsung's experts would also have needed to

11  explain why the alleged prior art identified in invalidity contentions does not disclose all of the

12  elements of the asserted claims in their opening reports, prior to seeing the actual invalidity opinions

13  offered by Samsung's experts, because the burdens on that issue are the same as on priority.  Such a

14  procedure not only defies logic but also defeats the purpose of having a schedule for serving

15  "rebuttal" reports.  It would be neither logical nor workable for Huawei to attempt to predict in its

16  opening expert reports the exact prior art and analysis that Samsung's experts would offer in

17  presenting its invalidity case,[2] an issue on which Samsung bears the burden of persuasion and, in the

18  first instance, the burden of production.

19         Furthermore, with respect to the '587 patent, Samsung cannot credibly claim that it was

20  unaware of the priority analysis that Dr. Akl provided in his rebuttal report, because that analysis

21  was previously disclosed in the context of an IPR that Samsung filed on the '587 patent.  *See* Yang

22  Decl., Ex. 18 (IPR2017-01465 – Patent Owner's Prelim. Resp. (Paper 10)) at 8-17.  In fact, this

23  argument was, in part, the basis for the PTAB's decision not to institute that IPR.  Huawei explicitly

24  incorporated the IPR arguments, including this priority date analysis, into its interrogatory response

---

[2] While Samsung's invalidity contentions are intended to provide notice of the universe of prior art that Samsung *might* eventually assert, they do not specify the prior art that Samsung or its expert will *actually* rely on at trial, nor do they indicate the exact manner in which Samsung's expert will analyze such art against the asserted claims of the '587 and '892 patents.  Moreover, while Samsung's Election of Prior Art (ECF No. 263) further limits this universe, it does not preclude Samsung from only relying on only a subset of the elected art.

HUAWEI'S OPPOSITION TO SAMSUNG'S MOTION TO STRIKE; CASE NO. 3:16-CV-02787-WHO

as to why the '587 patent was valid over the art identified by Samsung in its infringement contents. *See* Yang Decl., Ex. 13 (Huawei's 2nd Supp. Resp. to Samsung's Interrogatories No. 23) at 35.

With respect to the '892 patent, Samsung also cannot credibly claim that "Huawei left Samsung with no opportunity to rebut the analysis of Huawei's expert." Mot. at 22:3-4. Weeks after Huawei served its expert reports, Samsung served two supplemental expert reports specifically addressing Huawei's expert's priority analysis for the '892 patent, including one on the eve of its expert's deposition. *See* Yang Decl., Ex. 7 (Madisetti '892 First Suppl. Inf. Rpt. (June 11, 2018)); *See* Ex. 8 (Madisetti '892 Second Suppl. Inf. Rpt. (June 27, 2018)). Samsung had more than ample opportunity to rebut the analysis of Huawei's expert—and indeed, did. Any alleged delay was therefore harmless.

For the foregoing reasons, the priority date analyses disclosed in the rebuttal expert reports of Dr. Akl addressing the '587 patent (*See* Mot., Lordgooei Decl., Ex. V at ¶¶ 62-65) and Dr. Veeravalli addressing the '892 patent (Ex. 6 (Veeravalli '892 Validity Rpt.) at ¶¶ 59-77) were timely, and Samsung's motion to strike these analyses should be denied.

### C. Samsung Had Sufficient Notice of Huawei's Invalidity Analysis for the '825 Patent.

Samsung's attacks against the opening '825 invalidity report of Huawei's expert Dr. La Porta are misplaced. Mot. at 10-12. The requirements for asserting Section 112 theories must simply "giv[e] the other party sufficient notice for it to engage in meaningful discovery and preparation of its case." *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-CV-5341 YGR, 2014 WL 690161, at *6 (N.D. Cal. Feb. 21, 2014). That is what happened here. Samsung had more than "sufficient notice" of Huawei's Section 112 arguments and had the opportunity to conduct expert discovery on and respond to each. *See Medimmune, LLC v. PDL Biopharma, Inc.*, No. C 08-5590 JF (HRL), 2010 WL 760443, at *3 n.3 (N.D. Cal. Mar. 4, 2010) (dismissing similar challenge because, in part, the objecting party had received "extensive expert reports with respect to the subject contentions").

#### 1. "Predetermined Delay Duration."

Huawei identified "predetermined delay duration" as indefinite under its original Local

1    Rule 3-3 invalidity contentions, served January 20, 2016, its supplemental invalidity contentions

2    served September 22, 2017, and the Local Rule 4-3 Joint Claim Construction Statement.  ECF No.

3    124.  During the claim construction phase of the case, the parties identified the term

4    "predetermined delay duration"  as one of the 10 most important claim disputes, with Huawei

5    proposing that the term meant a "delay duration provided by [the] base station."  ECF No. 124, at

6    p. 62.  Samsung argued that determining the predetermined delay duration by the base station was

7    only a preferred embodiment and that the claims were not so limited.  ECF No. 140, at pp. 14-15.

8    In response, Huawei explained that determining the delay duration by the base station was the only

9    embodiment disclosed, and Huawei's proposed construction was necessary for the system to work

10   as intended.  ECF No. 149 at pp. 11-13.  In other words, the '825 patent provided written

11   description support for the "predetermined delay duration" *only if* that term meant the delay

12   duration was being predetermined by the base station.  *Id.*

13        In its claim construction order, this Court interpreted "predetermined delay duration" to

14   mean "determined beforehand" so as "to avoid importing limitations from the specification into

15   the claims."  ECF No. 168 at pp. 22-24.  In doing so, the Court expressly noted that this

16   construction was broader than the '825 patent's written description: "the '825 patent *nowhere*

17   *discusses* predetermining the delay duration in any of the manners hypothesized by Samsung," and

18   "[i]t is unclear where the patent points to the delay duration being provided by anything other than

19   a base station."  *Id.* at 24 (emphasis in original).

20        Samsung argues that Huawei's identification of an indefiniteness challenge is insufficient

21   to put it on notice of Huawei's written description challenge.  But this argument seeks to obscure

22   the relevant facts: the Court's claim construction order, in combination with the notice and context

23   that Huawei provided in its Rule 3-3 invalidity contentions, and 4-3 joint claim construction

24   statement, gave Samsung more than "sufficient notice for it to engage in meaningful discovery and

25   preparation of its case" regarding the compliance of the Court's construction of "predetermined

26   delay duration" with Section 112.  *MediaTek*, 2014 WL 690161, at *6.

27        Samsung's remaining arguments—that (1) Huawei's indefiniteness challenge failed to fully

28   describe the written description issue and (2) the defense was waived because it was not raised in

1   claim construction—likewise ignore the notice and context of the extensive claim construction

2   briefing on this issue.  *See id.*  Indeed, Huawei *did* raise the issue in claim construction briefing.

3   ECF No. 149 at p. 13. ("The '825 patent … describes a single way of predetermining the delay

4   duration that is necessary in order for the invention to work.").

5       Here, Samsung was indisputably on notice of the written description issue no later than the

6   Court's claim construction order, if not well before, and cannot credibly claim prejudice.  *See O2*

7   *Micro Intern. Ltd. v. Monolithic Power Systems*, 467 F.3d 1355, 1363 (Fed. Cir. 2006) (noting that

8   courts have "taken various positions depending on the facts of the particular case" regarding

9   whether non-compliance with the local rules bars subsequent reliance on invalidity theories); *e.g.*,

10  *Biogenex Labs., Inc. v. Ventana Med. Sys., Inc.*, No. C 05-860JFPVT, 2006 WL 2228940, at *4

11  (N.D. Cal. Aug. 3, 2006) ("[T]he Court is extremely reluctant to dispose of substantive

12  infringement claims based upon procedural defects").  Further, Samsung's expert, Dr. Valenti, had

13  the opportunity to provide a full rebuttal to Huawei's expert, Dr. La Porta, on the issue, and Dr.

14  Valenti's report did in fact, provide a timely rebuttal.  *See* Yang Decl., Ex. 11 (Valenti '825

15  Validity Rebuttal Rpt.) at ¶¶ 464-465.  And, there was no prejudice to Samsung.  Section 112

16  invalidity contentions based upon the patent itself require minimal, if any, fact discovery.  *See*

17  *Medimmune*, 2010 WL 760443, at *3 n.3 (discussing this argument).  Samsung's motion should be

18  denied as to the "predetermined delay duration."

19              **2.     Claim 4's Structural Elements.**

20      Claim 4 of the '825 patent recites various structural elements, including "signal generator,"

21  "downlink signal processor," and "transceiver."  Samsung's complains that Dr. La Porta's

22  indefiniteness and written description arguments regarding these limitations should be dismissed

23  as well.  *See* Mot. at 10-12.

24      It was not until Samsung's March 9, 2018 interrogatory responses, served at 11 p.m. on the

25  last day of fact discovery, that it became clear that Samsung had an unusual interpretation of these

26  structural claim elements.  *See* Yang Decl., Ex. 3 (Samsung Suppl. Resps. To Huawei Interrog.

27  (March 9, 2018)), at 34-36, 57-62 87-93, 270; *see* Ex. 10 (La Porta '825 Invalidity Rep.) at ¶¶ 479,

28  482, 500 (discussing these responses).  In those eleventh-hour interrogatory responses, Samsung

identified source code in its own products—but no hardware elements—that it believed practice these claim limitations.  In light of this new information, Dr. La Porta concluded that "signal generator" and "downlink signal processor" lacked written description (*id.* at ¶¶ 479-83), and "downlink signal processor" and "transceiver," when considered together in the context of the claim, are indefinite, (*id.* at ¶¶ 499-501).  By including these arguments, in response to Samsung's last-minute interrogatory responses, in Dr. La Porta's opening invalidity report, Huawei provided Samsung with prompt notice of Huawei's invalidity theories.  The absence of any prejudice to Samsung is confirmed by the fact that Samsung never complained about the now-objected to invalidity theories during expert discovery.  *See Medimmune*, 2010 WL 760443, at *3.  Samsung had the opportunity to respond to the invalidity theories in Dr. Valenti's rebuttal expert report, which it did (*See* Yang Decl., Ex 11 (Valenti Rebuttal Rep.) at ¶¶ 457-63, 482-83).  Samsung also had the opportunity to question Dr. La Porta about these opinions at deposition.

The record demonstrates that Samsung was given prompt notice mere weeks after the issues were illuminated, and any prejudice is minimal given that Section 112 invalidity contentions are based upon the patent itself and require minimal, if any, discovery.  *See O2 Micro*, 467 F.3d at 1363; *e.g.*, *Biogenex Labs.*, 2006 WL 2228940, at *4, *Medimmune*, 2010 WL 760443, at *3 n.3.

### D.     Huawei Disclosed its Non-Infringement Theories for Samsung's '105, '350, '130 and '726 Patents.

Samsung's characterization of the history behind Huawei's supplemental interrogatory responses omits key facts. As a preliminary matter, non-infringement contention interrogatory responses are not required in this Court, as the other party bears the burden of proof. *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-cv-5341, 2014 WL 2854773, *5 (N.D. Cal. June 20, 2014) ("Essentially, by propounding this interrogatory right on the heels of serving its invalidity contentions, Freescale was trying to get a preview of what MediaTek's rebuttal report would say. The Court will not penalize MediaTek for providing its response – its expert rebuttal report – at the time appointed by the Court's scheduling order.").  Nevertheless, Huawei sought for months prior to the close of fact discovery to meet and confer with Samsung regarding mutual supplementation on the parties' interrogatories directed to non-infringement positions.  *See* Yang Decl., Ex. 12

1   (Greenblatt Mar. 13, 2018 email to Lordgooei) at 1.  Samsung refused to confer.  *Id.*  Thus,

2   Huawei supplemented its non-infringement interrogatory responses to match the level of detail

3   Samsung had provided.

4           On the final day of fact discovery, Samsung served supplemental non-infringement

5   responses after having refused to confer with Huawei and then sought to compel Huawei to

6   provide equivalent responses.  As a compromise, Huawei offered to further supplement its non-

7   infringement interrogatory responses.  By doing so, however, Huawei made clear that it was

8   providing its further responses solely as a courtesy and only under the condition that they not be

9   used by Samsung to attempt to limit the scope of Huawei's experts' testimony regarding non-

10  infringement or to strike Huawei's experts' non-infringement expert reports.  *See* Yang Decl., Ex.

11  13 (Huawei's Second Supp. Resp. to Third Set of Interrog. Nos. 23, 28) at 64-65.  Samsung

12  suffered no prejudice as the supplemental interrogatory responses were served prior to Samsung

13  having to file its opening infringement reports.

14          The particular opinions that Samsung seeks to strike from Huawei's rebuttal non-

15  infringement expert reports are ones that Huawei either had disclosed in its interrogatory

16  responses—despite being under no obligation to do so and despite Samsung's vague and general

17  infringement contentions—or that Huawei could not have anticipated.  For example, Huawei's

18  non-infringement argument for the '105 patent that the accused Huawei phones ██████████

19  ████████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████████████

21  ████████████████████████████████   Ex. 13 (Huawei's Second Supp. Resp. to Third

22  Set of Interrog. Nos. 23, 28) at 74:9-11 (emphasis added).)  Only after Samsung served Dr.

23  Prucnal's opening '105 infringement report was Huawei able to confirm that the accused products

24  in fact ████████████████████████

25          Huawei's other noninfringement arguments for the '105 patent – that ████████████

26  ████████████████████████████████████████████████████████████████

27  ────────────────────

28  [3] Note, the phrase "*FT pre-coded symbols*" was identified by the parties in the Local Rule 4-3 Joint
    Claim Construction Statement as a disputed term (ECF No. 124), and that issue remains unresolved.

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 were similarly disclosed in Huawei's interrogatory responses to the best of Huawei's

4 understanding and ability at the time.  Ex. 13 (Huawei's Second Supp. Resp. to Third Set of

5 Interrog. Nos. 23, 28) at 76:1-3 ████████████████████████████████

6 ███████████████████████████████████████████████

7 ████████████████████████████████████████████████████

8 ████████████████████████████████████████████████████

9 ███████████████████████████████

10     The challenged non-infringement arguments for the '350 patent were likewise disclosed.

11 In its supplemental interrogatory responses, Huawei disclosed that its accused products ██████

12 ████████████████████████████████████████████████

13 ████████████████████████████████████████████████

14 ███████████████████████████████████████████

15 ████████████████████████████████████████████████

16 ████████████████████████████████████████

17 ████████████████████████████████████████████████████

18 ████████████████████████  *see also id*. at 79:3-5.)  Huawei's disclosure of its non-

19 infringement positions, prior to Samsung's having to serve its opening infringement report,

20 provided Samsung with an opportunity to address the arguments, which Dr. Prucnal did in some

21 detail.

22     Samsung also moves to strike Huawei's contention that Dr. Prucnal has not shown that

23 Huawei's accused devices determine a downlink transmit power.  But, this argument was simply

24 unforeseeable before Huawei received Dr. Prucnal's report.  Huawei could not have known that

25 Dr. Prucnal would fail to meet his burden of proving infringement of this element.  Similarly,

26 Samsung's argument that Huawei never disclosed that the preamble to claim 1 is limiting is belied

27

28 [4] Note, the phrase "*cell-specific ratio*" was identified by the parties in the Local Rule 4-3 Joint Claim
Construction Statement as a disputed term (ECF No. 124), and that issue remains unresolved.

by the fact that Samsung's expert, Dr. Prucnal, addressed the limiting preamble in his opening

infringement report.  *See* Yang Decl., Ex. 14 (Prucnal '350 Infring. Rpt.) at ¶¶ 532-43.

Huawei's non-infringement argument for the '130 patent was likewise disclosed to

Samsung prior to Dr. Bambos serving his opening infringement report.  Huawei has explained that

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████  *See* Yang Decl., Ex. 13 at 73:4-7.

As to the challenged non-infringement argument for the '726 patent, it was again

unforeseeable prior to Samsung's service of its opening expert report that Samsung's expert would

fail to meet its burden and fail to analyze the presence or absence of the "receiver," "controller,"

and "HARQ processor" elements of claim 11 in Huawei's accused products. Prior to service of

Samsung's infringement expert report, Huawei did not have any information beyond Samsung's

opening infringement contentions, which generically repeated the claim language without

explanation.  *See* Yang Decl., Ex. 15 ('726 infringement chart) at 5-6.  The burden falls entirely on

Samsung to set forth its infringement proofs.  It is not Huawei's duty to anticipate where

Samsung's opening expert reports will fail, and here, it failed to identify the claimed HARQ

processor.

### E.    Huawei Disclosed its Position on Non-Infringing Alternatives for the Huawei Patents-in-Suit.

Samsung's motion to strike portions of the Huawei opening expert reports that address the

lack of non-infringing alternatives to the asserted Huawei patents fails for numerous reasons.  At

bottom, it rests on the faulty claim that Samsung was somehow prejudiced from pursing this issue

during fact discovery because Huawei's response to Samsung Interrogatory No. 35 lacked

sufficient detail.  Mot. at 18-19.  That interrogatory requested information regarding "design-

around alternatives" that "could have been utilized" in lieu of the asserted Huawei patents.  Mot.,

Lordgooei Decl., Ex. O at 2.  Huawei's response stated that there were no such design arounds

1    because "there were no alternative proposals that solved the problems solved by Huawei's

2    inventions." Mot., Lordgooei Decl., Ex. P at 22. That in and of itself answers the interrogatory.

3         Samsung now apparently contends Huawei should have specifically identified and

4    analyzed in detail proposals that Huawei's experts later concluded in their reports were not feasible

5    alternatives to the Huawei patents. Mot. at 18. That, however, was not the information requested

6    by the interrogatory. Under these facts, Samsung cannot credibly show Huawei failed to comply

7    with Rule 26(e)(1)'s requirement to supplement discovery responses. As a result, the burden on

8    this motion never shifts to Huawei to show any claimed failure was substantially justified or

9    harmless.

10        Regardless, Huawei did provide responses to several of Samsung's interrogatories

11   information regarding the superiority of Huawei's claimed solution over the alternatives that

12   existed at the time of the adoption of the relevant 3GPP standards. This information was included

13   in the responses to Interrogatory No. 20 (referenced in the supplemental response to No. 35) and

14   No. 31 (also references No. 20). *See* Mot., Lordgooei Decl., Ex. P at 21-22; Ex. Q at 16-26; Ex. 16

15   (Plaintiff's First Suppl. Resps. to Defendants' Fifth Set of Interrogs. 3/30/18) at 6-17. These

16   disclosures provided the theories and much of the detail contained in the Huawei expert reports.

17   Having sufficiently complied with its disclosure obligations by identifying the reasons why the

18   Huawei solutions were superior, Huawei's experts were free to further articulate and apply those

19   reasons in their reports. *See Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-03587-WHO,

20   2015 WL 757575, at *32 (N.D. Cal. Feb. 20, 2015) (denying motion to strike because party failed

21   to show that expert disclosed theories not disclosed in contentions "as opposed to more specific

22   articulations of previously disclosed ones").

23        Indeed, in its Response to Interrogatory 20, requesting that Huawei identify indicia of

24   commercial success, long-felt need and acclaim by the industry, Huawei provided lengthy analyses

25   for each of the four Huawei patents. Mot., Lordgooei Decl., Ex. Q at 16-26. For example, for the

26   '892 patent, Huawei explained that "other [3GPP] proposals failed to provide concrete, feasible

27   solutions for limiting the set [of configurations], or failed to select the set that achieved the same

28   level of performance as the set selected according to the mechanism disclosed in and claimed by

1   the '892 patent.  As such, prior proposals failed to adequately balance the need to reduce control

2   signaling overhead and the need to maintain high/optimal detection performance." *Id*. at 18-19.

3   These failings of other proposals are the same ones Huawei's '892 expert, Dr. Veeravalli,

4   discusses in his report.  Mot., Lordgooei Decl., Ex. S at ¶¶ 482-87 (discussing one proposal as

5   lacking "any concrete" solutions to these kinds of problems and another as "increas[ing] likelihood

6   of interference").

7           Likewise, for the '239 patent, Huawei explained the inventors "discovered that the

8   sequence selection technique disclosed in, and claimed by, the '239 can prevent sequences highly

9   correlated with the sequences of specific lengths from appearing in other sequence groups."  Mot.

10  Ex. Q at 21.  These points are then reflected in Huawei's '239 expert report that criticizes one

11  alternative because it "may result in very highly correlated sequences being grouped into different

12  groups."  Mot. Ex. R at ¶ 541.

13          For the '587 patent, Huawei explained in its response that the patent "solves a critical

14  problem related to carrier aggregation – providing an efficient uplink ACK/NACK feedback

15  mechanism without adding an additional field in each piece of downlink control information

16  …Other proposed schemes failed to solved the problem solved by the '587 patent, or failed to

17  provide a solution efficiently like the invention of the '587 patent."  Mot. Ex. Q at 22.  Huawei's

18  '587 expert report accordingly criticizes several other proposals – including three discussed in the

19  response to Interrogatory No. 20 (R1-102171, R1-094208, R1-102320) – because they required

20  use of additional overhead or otherwise did not offer efficient solutions.  *See* Mot., Lordgooei

21  Decl., Ex. T, at 301-308.

22          Finally, for the '613 patent, Huawei explained in its response that alternative proposals

23  wasted energy and bandwidth, and included a detailed critique of proposal R1-074653.  Mot.,

24  Lordgooei Decl., Ex. Q at 25-26.  These are the same failings and same proposal Huawei's '613

25  patent expert discussed in his report.  Mot., Lordgooei Decl., Ex. U at ¶¶ 279-85.

26          Samsung also overlooks the fact that in a First Supplemental Response to Interrogatory 31,

27  Huawei provided an in-depth analysis of the commercial success of each of its asserted patents and

28  the utility and advantages of the patents over other proposals and older modes.  Ex 16 (Plaintiff's

First Suppl. Resps. to Defendants' Fifth Set of Interrogs, 3/30/18) at pp. 8-12.

And, while Samsung now complains it was deprived of an opportunity to pursue the non-infringing alternatives issue during fact discovery, it omits the fact that it served its Interrogatory No. 35 too late to receive an answer prior to the close of fact discovery.[5]  Indeed, Huawei only agreed to respond substantively to this and other interrogatories in Samsung's untimely Fifth Set of Interrogatories as part of a global agreement to resolve a number of discovery disputes between the parties.  Yang Decl., Ex. 17 at (March 14, 2018 email to Greenblatt from Lordgooei) 1-2.  The agreement provided Huawei would serve responses "at a level of detail similar to responses provided by Samsung to equivalent interrogatories" and that Samsung reserved its "right to move to compel at that time should Huawei's responses fail to provide the requested information."  *Id.* at 1-2.  Huawei served its response on March 30, 2018.  Mot. Ex. P.  It included the statement that the information requested was more appropriate for expert discovery.[6]  Huawei heard no complaints from Samsung about the thoroughness of the response until it filed its motion to strike more than three months later.

The sanctions Samsung seeks under Rule 37 are available only if Samsung shows Huawei failed to meet its obligation to supplement its response having first "learned" its response was "incomplete" or "incorrect."  *See* Fed.R.Civ. Proc. 26(e)(1)(a), 37(c)(1).  But having entered into an agreement with Huawei on how the original supplementation was made and that it would raise any issue with the response by a motion to compel – a process that first requires compliance with Chief Magistrate Judge Spero's meet and confer requirement -- Samsung cannot now circumvent that agreement by filing a motion to strike.  Finally, Samsung cannot credibly show Huawei should have "known" *before* Samsung filed its motion to strike that its supplementation was deficient based on complaints Samsung first disclosed in its motion to strike.  If Samsung had an issue with

---

[5] Samsung provides a proof of service that claims the interrogatory was served by email on February 7, 2018, but service by email was not made until the next day, six days after the deadline to serve discovery requests by email.  Mot. Ex. P at 21.

[6] Huawei had not served an equivalent interrogatory on Samsung in recognition that the subject matter was one more appropriate for expert discovery.

the supplementation, it had an obligation under the rules and its agreement with Huawei to promptly and straightforwardly raise it with Huawei, not wait three months to file a motion to strike after the close of expert discovery.[7]

### F.     Huawei Disclosed Non-Infringing Alternatives for the Samsung Patents-in-Suit.

Samsung's motion to strike portions of Huawei's rebuttal expert reports addressing alternative technologies to the asserted Samsung patents suffers from many of the same failings as its motion directed at the Huawei patents.  Most critically, the interrogatory at issue did not ask Huawei to provide the information Samsung now complains was not disclosed.  There can be no sanction for failing to provide what was not asked.

The information Samsung seeks to strike is directed at expert opinions concerning what acceptable alternative technology existed at the time of the adoption of the 3GPP standard that Samsung contends embodies the technology claimed in the Samsung asserted patents.  The damages experts agree that this issue is one of the factors relevant to the FRAND royalty analysis. *See* Dkt. No. 331-20 (Leonard Opening Expert Report) at 13; Dkt. No. 331-6 (Lasinski Opening Expert Report) at 41-42.  The factor assumes that once the standard is adopted, there is no way to "design around" a patent that embodies mandatory standards technology.  *Id*. at 40.  By contrast, Interrogatory No. 14 on which Samsung seeks its sanction is directed at "design-around or alternative technology or method ("design-around) that  . . . *can* be used as an alternative to the claimed subject matter of the asserted(s) of the Samsung Patents-In-Suit." Mot. Ex. E at 30 (emphasis added).  Interrogatory No. 14 seeks information regarding whether Huawei contends there are any present-day "design-arounds" to the asserted patents.  That request is irrelevant to the issue of whether there were any acceptable alternative technologies at the time of the adoption of the relevant 3GPP standard.  Accordingly, any alleged failings in Huawei's response cannot be grounds to find any purported failure to supplement Interrogatory No. 14 as Samsung now demands a basis for sanctions under Rule 37.

---

[7] Samsung admits that, for at least the '587 and '613 patents, Huawei's reference in its response to Interrogatory No. 35 to its response to Interrogatory No. 20 contains the identification of other 3GPP proposals that were discussed in portions of the Huawei expert reports it now seeks to strike.  Mot. at 18.

1    Moreover, Huawei consistently took the position that the subject matter of Interrogatory

2    No. 14 was properly the subject of expert, not fact, discovery.  Samsung never formally contested

3    this assertion nor moved to compel a further response.  For good reason.  As explained in a case

4    cited by Samsung, "expert theories need not be disclosed in response to interrogatories." *Ericsson*

5    *Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, No. 2:15-cv-00011-RSP, 2017 WL 5137401, at *13

6    (E.D. Tex. Nov. 4, 2017).  Samsung does not contend that Huawei or any of its witnesses withheld

7    any factual information on the subject during the fact discovery period.  These facts distinguish

8    Samsung's motion from cases it cites.  *See, e.g.*, *Synthes USA, LLC v. Spinal Kinetics, Inc.*, No. C-

9    09-01201 RMW, 2011 WL 11709387, at *7-8 (N.D. Cal. Aug. 19, 2011) (cited at Br. 13).

10    Nevertheless, should Huawei be found to have not supplemented its response to

11    Interrogatory No. 14 in the manner Samsung now demands, no sanction should issue under Rule

12    37 because both exceptions Samsung identifies to imposing sanctions under the rule are met.  *See*

13    *Apple v. Samsung Elec. Co., Ltd.*, Case No. 11-cv-01846-LHK, 2012 WL 3155574 at *4 (N.D.

14    Cal. Aug. 2, 2012) (cited at Br. 13).  *First*, as shown above, Huawei's actions in objecting to the

15    interrogatory on expert discovery grounds was substantially justified.  *Second*, Samsung cannot

16    now show prejudice from the discussion of non-infringing alternatives in the Huawei rebuttal

17    reports having opened the door to the issue by raising it in its opening reports

18    Indeed, Samsung defeated portions of a similar motion in another court seeking to strike

19    parts of its rebuttal expert report in which it first addressed non-infringing alternatives after the

20    issue was raised in the plaintiff's opening expert report.  There the court found a party "is not

21    prejudiced by an expert's statements in response to its expert's statements."  *ZiliLabs Inc., Ltd. v.*

22    *Samsung Elec. Co. Ltd.*, No. 2:14-cv-203-JRG-RSP, 2015 WL 6690403, at *2 (E.D. Tex. Nov. 1,

23    2015).  The outcome should be no different here.

24    In each of its opening expert reports, Samsung addressed the issue of non-infringing

25    alternatives.  For each of the five asserted Samsung patents, the expert stated he was "not aware of

26    any viable non-infringing alternative" for the asserted claims or words to that effect and then went

27    on to criticize certain alternative technologies of the time.  *See* Yang Decl., Ex. 2 (Bambos '130

28    Opening Infr. Report) at ¶¶ 975-76; *id.*, Ex. 14 (Prucnal '105 Opening Inf. Report) ¶¶ 706-07; *id.*,

20

Ex. 9 (Valenti '825 Opening Infr. Report) at ¶ 926; *id.*, Ex. 2 (Bambos '726 Opening Infr. Report) at ¶¶ 975, 977; *id.*, Ex. 14 (Prucnal '350 Opening Inf. Report) at ¶¶ 706, 708.  Huawei in its rebuttal reports responded to those statements, as it was entitled to do, by identifying alternative technology to the asserted Samsung patents and by otherwise addressing the issues raised by Samsung's experts.  Fed. R. Civ. Pro. 26(a)(2)(D)(ii); *see* Mot., Lordgooei Decl., Ex. J (Mahon '105 Non-Infr. Rebuttal Expert Report) at ¶¶ 149-57; Mot., Lordgooei Decl., Ex. K (LaPorta '825 Non-Infr. Rebuttal Report) at ¶¶ 265-70; Mot., Lordgooei Decl., Ex. L (Akl '350 Non-Infr. Rebuttal Report) at ¶¶ 263-66; Mot., Lordgooei Decl., Ex. M (Mahon '130 Non-Infr. Report) at ¶¶ 137-40; Mot., Lordgooei Decl., Ex. N (Fuja '726 Non-Infr. Rebuttal Report) at ¶¶ 228-30.

None of the cases cited by Samsung directs a different result.  None involves the situation here in which the opening reports opened the door to the issue of non-infringing alternatives.  Likewise, Samsung's statements regarding which party bears the burden of proving non-infringing alternatives during the "accounting" or "damages period" are irrelevant to the issue of what alternative technologies were available at the earlier time of the adoption of the standard.  That issue goes to the FRAND damages calculation and is one that Samsung, as the proponent of its FRAND damages claim, addressed for its asserted patents in its opening damages report.  Samsung's expert report cited technical expert reports and conversations its damages expert had with its technical experts as the basis for its conclusions that there were no acceptable technologic alternatives at the time of the adopted of the relevant standards.  Dkt. No. 331-20 (Leonard Opening Expert Report) at 35-41.  Once Samsung raised the issue of the absence of alternative technologies in its opening expert reports, Huawei was entitled to respond in its rebuttal reports.  Those actions are not grounds to strike any portion of Huawei's expert rebuttal reports.

### G.    Huawei's Inequitable Conduct Defense for Samsung's '105 Patent.

Huawei alleged inequitable conduct for Samsung's '105 patent in its Patent Local Rule 3-3 supplemental invalidity contentions, served on September 22, 2017.  *See* Yang Decl., Ex. 1 at p. 109.  The allegation was premised, in part, on the fact that neither Samsung nor inventor Farooq Khan provided any prior art references to the Patent Examiner during prosecution of the '105 application, as shown on the face of the patent.  *Id.* at p. 111-113.  In its supplemental invalidity

1   contentions, Huawei explained that neither Samsung nor Mr. Khan provided the Patent Examiner

2   with Working Group papers from the 3GPP TSG RAN Working Group meeting held in Beijing,

3   China in April 2005, that were material to the '105 patent.  *Id.*  Huawei's invalidity contentions

4   explained that both Samsung and Mr. Khan attended the meeting and had access to the Working

5   Group papers distributed at the meeting.  *Id.*  The most reasonable inference from this

6   circumstantial evidence is that Mr. Khan and Samsung withheld material information from the

7   Patent Examiner with the intent to deceive.  *See Am. Calcar, Inc. v. Am. Honda Motor Co.*, 768

8   F.3d 1185, 1190–91 (Fed. Cir. 2014) ("We recognize instead that '[b]ecause direct evidence of

9   deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence,'

10  provided that such intent is the single reasonable inference.") (citing *Therasense, Inc. v. Becton,*

11  *Dickinson and Co.*, 649 F.3d 1276, 1290-91 (Fed. Cir. 2011) (en banc)).

12          Following service of the supplemental invalidity contentions, Huawei proceeded with

13  discovery to determine whether there were sufficient facts to plead inequitable conduct with the

14  requisite particularity.  Based upon a review of the deposition testimony, the documents produced

15  by Samsung in the case, and the expert report of Dr. Paul Min, Huawei has concluded that the

16  record facts do not support a pleading of inequitable conduct defense with the required

17  particularity.  As a result, Huawei will not be proceeding with a defense of inequitable conduct on

18  the '105 patent.

19  **IV.    CONCLUSION**

20          For the foregoing reasons, Huawei respectfully requests that each of Samsung's requests to

21  strike portions of Huawei's expert reports be denied.

22

23  Dated: July 17, 2018                           Respectfully submitted,

                                                    SIDLEY AUSTIN LLP
24

25                                                  */s/ Michael J. Bettinger*

26  David T. Pritikin (*Pro Hac Vice*)             Michael J. Bettinger (SBN 122196)
    *dpritikin@sidley.com*                         *mbettinger@sidley.com*
27  David C. Giardina (*Pro Hac Vice*)             Irene Yang (SBN 245464)
    *dgiardina@sidley.com*                         *irene.yang@sidley.com*
28  Douglas I. Lewis (*Pro Hac Vice*)              SIDLEY AUSTIN LLP

*dilewis@sidley.com*
John W. McBride (*Pro Hac Vice*)
*jwmcbride@sidley.com*
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
(312) 853-7000 – Telephone
(312) 853-7036 – Facsimile

555 California Street, Suite 2000
San Francisco, California 94104
(415) 772-1200 – Telephone
(415) 772-7400 – Facsimile

*Attorneys for Huawei Technologies Co., Ltd.,*
*Huawei Device USA, Inc., Huawei Technologies*
*USA, Inc., and HiSilicon Technologies Co., Ltd.*