1 | QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
2 | charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
3 | davidperlson@quinnemanuel.com
50 California Street, 22nd Floor
4 | San Francisco, California 94111
Telephone:  (415) 875-6600
5 | Facsimile:  (415) 875-6700

6 | Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
7 | Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
8 | 555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California  94065
9 | Telephone:  (650) 801-5000
Facsimile:  (650) 801-5100
10 |
Attorneys for Samsung Electronics Co., Ltd.,
11 | Samsung Electronics America, Inc., and
Samsung Research America, Inc.
12 |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HUAWEI TECHNOLOGIES CO., LTD., et al., | CASE NO.  16-cv-02787-WHO |
| Plaintiffs, | **SAMSUNG'S OPPOSITION TO HUAWEI'S MOTION TO PRECLUDE SAMSUNG'S FRAND EXPERTS FROM OFFERING IMPROPER LEGAL OPINIONS** |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., et al., | |
| Defendants. | **Hearing Date: August 8, 2018** <br> **Time: 2:00 p.m.** <br> **Judge: Hon. William H. Orrick** |
| SAMSUNG ELECTRONICS CO., LTD. & SAMSUNG ELECTRONICS AMERICA, INC. | **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |
| Counterclaim-Plaintiffs, | |
| v. | |
| HUAWEI TECHNOLOGIES CO., LTD., HUAWEI DEVICE USA, INC., HUAWEI TECHNOLOGIES USA, INC., & HISILICON TECHNOLOGIES CO., LTD. | |
| Counterclaim-Defendants. | |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION..................................................................................................................1

II.     HUAWEI'S CASE LAW IS INAPPOSITE ........................................................................1

III.    THE CHALLENGED PARAGRAPHS OF MR. DAVIES' EXPERT REPORT DO NOT SET FORTH IMPROPER LEGAL OPINIONS............................................................2

IV.    THE CHALLENGED PARAGRAPHS OF PROF. HAUSMAN'S EXPERT REPORTS SET FORTH PROPER ECONOMIC EXPERT ANALYSIS.............................7

V.     CONCLUSION ...................................................................................................................14

Case No. 16-cv-02787-WHO

SAMSUNG'S OPPOSITION TO HUAWEI'S MOTION TO PRECLUDE

# TABLE OF AUTHORITIES

**Page**

## Cases

*Advanced Thermal Scis. Corp v. Applied Materials Inc.*,
    2009 WL 10673194 (C.D. Cal. Oct. 28, 2009) ........................................................... 1, 7, 8

*Altera Corp. v. PACT XPP Techs., AG*,
    2015 WL 4999952 (N.D. Cal. Aug. 21, 2015) ................................................................ 1

*Crow Tribe of Indians v. Racicot*,
    87 F.3d 1039 (9th Cir. 1996) ........................................................................................... 2

*Fidelity Nat. Financial, Inc. v. Nat. Union Fire Ins. Co. of Pittsburg, PA*,
    2014 WL 1286392 (S.D. Cal. March 28, 2014) ...................................................... 1, 2, 7, 8

*Fleischman v. Albany Med. Ctr.*,
    728 F. Supp. 2d 130 (N.D.N.Y. 2010) ........................................................................... 12

*Hangarter v. Provident Life and Acc. Ins. Co.*,
    373 F.3d 998 (9th Cir. 2004) ......................................................................................... 12

*Int'l Bus. Machines Corp. v. Priceline Grp. Inc.*,
    271 F. Supp. 3d 667 (D. Del. 2017) ............................................................................... 13

*Jaffe v. Samsung Elecs. Co.*,
    737 F.3d 14 (4th Cir. 2013) ........................................................................................... 13

*Pokorny v. Quixtar Inc.*,
    2007 WL 1932922 (N.D. Cal. June 29, 2007) .................................................................. 2

*Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*,
    98 F. Supp. 2d 362 (S.D.N.Y. 2000) .............................................................................. 13

*U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3, AFL-CIO*,
    313 F. Supp. 2d 213 (S.D.N.Y. 2004) .............................................................................. 7

*Villalpando v. Exel Direct Inc.*,
    161 F. Supp. 3d 873 (N.D. Cal. 2016) ............................................................................. 2

I.	INTRODUCTION

Huawei's motion to preclude certain "legal opinions" from the expert reports of Michael A.M. Davies and Jerry A. Hausman should be denied.  Several of the challenged paragraphs simply provide standard disclosures of the legal framework within which each expert renders his opinions.  The remaining challenged paragraphs fall well within each expert's undisputed areas of subject matter expertise.  Where each expert uses any legal terminology, it is only to explain the legal framework for his opinions or to convey expert analysis well within his field of expertise.  *Fidelity Nat. Financial, Inc. v. Nat. Union Fire Ins. Co. of Pittsburg, PA*, 2014 WL 1286392, at *9 (S.D. Cal. March 28, 2014) ("The Ninth Circuit allows an expert to refer to the applicable laws and regulations that inform his opinion.").

For Mr. Davies, most of the challenged statements consist of undisputed facts regarding standard essential patents ("SEPs") that provide context and background to his assignment in this case:  opining on technical alternatives to Huawei's purported SEPs at the time of the adoption of the 4G standard in order to support Samsung's antitrust case.  These statements are well-grounded in Mr. Davies' experience as a Senior Lecturer at Massachusetts Institute of Technology ("MIT"), as a patent holder, and as a frequent participant in industry standard setting.  Similarly, all of the challenged statements in Prof. Hausman's report reflect his economic analysis of Huawei's anticompetitive behavior grounded in his unquestioned experience as a Professor of Economics at MIT with a research focus on Industrial Competition.  The fact that Prof. Hausman at times uses legal terminology to proffer his economic analysis does not impeach that analysis, but rather places it squarely in the proper context to explain Huawei's antitrust violation.  Huawei's motion should be denied.

II.	HUAWEI'S CASE LAW IS INAPPOSITE

It is standard practice for experts to conduct their analyses and provide opinions within the parameters of a legal framework.  *Advanced Thermal Scis. Corp v. Applied Materials Inc.*, 2009 WL 10673194, at *1 (C.D. Cal. Oct. 28, 2009) ("The analysis of complex facts, albeit within a legal framework, is a proper role for an expert."); *see also Altera Corp. v. PACT XPP Techs., AG*, 2015 WL 4999952, at *1 n.1 (N.D. Cal. Aug. 21, 2015) (limiting future expert testimony "to proper

1   subjects for expert opinion and any facts or legal understandings necessary to form those opinions").

2   While it is true that an expert cannot invade the province of the court to instruct on the law, an expert

3   may offer his opinions within the legal terminology of the legal framework pertinent to his opinions.

4   *Fidelity*, 2014 WL 1286392, at \*8-9 (allowing expert to "couch[] his opinion in legal terms" and

5   "'refer to the law in expressing his opinion' so as to assist the jury understand the facts.").

6          The cases cited in Huawei's motion are inapposite as they involve experts usurping the

7   Court's role by rendering opinions on legal questions.  For example, in *Crow Tribe of Indians v.*

8   *Racicot* (Mot. at 2-4), the challenged testimony was an expert's interpretation of the term "lottery

9   games" in the contract at issue.  87 F.3d 1039, 1044-45 (9th Cir. 1996).  The Court held that such

10  expert testimony was impermissible because "interpretation of a contract is an issue of law" and

11  "[e]xpert testimony is not proper for issues of law."  *Id.* at 1045.  Similarly, in *Pokorny v. Quixtar*

12  *Inc.*, (Mot. at 2), the Court excluded the expert's challenged testimony because he opined that the

13  contract at issue was "unconscionable," which was "the exact legal question that the Court itself

14  w[ould] decide."  2007 WL 1932922, at \*2-3 (N.D. Cal. June 29, 2007).

15         Here, neither Mr. Davies nor Prof. Hausman interpret contractual provisions, nor do they

16  usurp the role of the Court in instructing on pure legal matters.  Mr. Davies and Prof. Hausman do,

17  in certain parts of their challenged testimony, reference the pertinent legal framework, but only in

18  service of providing opinions on electrical engineering and economics, their respective areas of

19  expertise.  Indeed, Huawei cites authority, *Villalpando v. Exel Direct Inc.*, (Mot. at 2-3), that makes

20  clear that experts may base their factual analysis on legal assumptions.  161 F. Supp. 3d 873, 895

21  (N.D. Cal. 2016) (allowing expert testimony "to the extent that [expert] may offer factual testimony

22  that is ***based on legal assumptions***") (emphasis added).  Samsung's experts merely disclose these

23  legal assumptions in their reports, and additionally give opinions that rest on the legal assumptions

24  they have adopted.

25  **III.   THE CHALLENGED PARAGRAPHS OF MR. DAVIES' EXPERT REPORT DO
          NOT SET FORTH IMPROPER LEGAL OPINIONS**

26

27         Mr. Davies is a Senior Lecturer at MIT, where he teaches the business and engineering

28  portions of the Integrated Design and Management Program.  He has served as an expert in over

eighteen cases, including as an industry expert for the Department of Justice in 2011 in the antitrust investigation of the proposed AT&T and T-Mobile merger.  Ex. 1, ¶¶ 11-12, Ex. 1.

Huawei argues that paragraphs 21 through 27 of Mr. Davies' report offer objectionable "legal opinions concerning the conditions under pursuit of injunctive relief in connection with infringement of a standard essential patents may violate the antitrust laws at trial."  Mot. at 2.  A simple inspection of these paragraphs reveals that only paragraph 27 includes *any* discussion of these "conditions":

| Report Paragraph | Subject Matter |
| --- | --- |
| 21. *I have been asked to* examine several patents and to determine whether or not there were technically feasible alternatives that could have been chosen as the basis for the relevant standard. *I have reviewed* each of these patents, identified the key mechanisms of concern, and *I have considered* whether a person of ordinary skill in the art could have readily identified alternative approaches that met the same requirements. *I have also looked at* other relevant prior art from the related fields, in particular wireless communications, with which a person of ordinary skill would have been familiar, and wherein when confronted with analogous problems alternative approaches have been implemented. *I have reviewed*, where available, LTE patents describing alternative | Summary of assignment and materials reviewed.  No legal opinions. |

| | |
|---|---|
| approaches that were proposed by other parties for the LTE standard. | |
| 22. *Organizations within an industry may cooperate to create a standard*. *As part of participating in the standards-making process*, each of these organizations makes a commitment that *any patents which are essential to the standard, so called standard essential patents (SEPs), shall be licensed to other entities on a fair, reasonable, and non-discriminatory (FRAND) basis.* | High-level description of standard-setting process and SEPs.  Huawei does not object to the correctness of any of the content. |
| 23. *As these organizations work on developing and implementing the standard, any individual member organization of the standards body may file patents*. If a member believes, and wishes to assert, that the invention(s) described in one of their patents must be used in order to properly implement the standard, it declares the patent to be standard essential with respect to  that particular standard. *The standards body keeps a record of every patent that is declared by each of its constituent members to be standard essential*. | High-level description of standard-setting process and SEPs.  Huawei does not object to the correctness of any of the content. |
| 24. *There are several reasons why a patent that is declared to be standard essential may be found to be non-essential. For instance*, it | High-level description of why a patent that is declared to be standard essential may be found |

| | |
|---|---|
| may be found upon thorough review that a patent which has been declared an SEP is only applicable to some implementations or embodiments of the standard. *For example*, if one of a company's patents deals with TDD mode, but TDD mode is only one of a plurality of possible implementation options within the standard, the patent would be found to be non-essential due to the fact that the standard may be successfully implemented without using the patent at all (e.g. perhaps the standard also supports FDD mode). | to be non-essential.  Huawei does not object to the correctness of any of the content. |
| 25. *Generally, the value that a company is entitled to recover for an SEP is equal to the value that the patent held prior to it becoming incorporated into the standard*. The reason for this is simple. *It is generally understood that in many cases there are a number of feasible alternative ways of satisfying the requirements of the standard*. Each of these alternatives has the same value prior to the selection of one to be adopted into the standard. *Once the selected patent has been incorporated into the standard, anyone using the patent in implementing the standard must pay royalties for it on a Fair, Reasonable, and Non-Discriminatory ("FRAND") basis*. | High-level description of the value that a company is entitled to recover for an SEP, and the reason why.  Huawei does not object to the correctness of any of the content. |

| | |
|---|---|
| At this point, the value of that particular patent is much higher than the value of the patents or inventions that were not selected for adoption into the standard. | |
| 26. *A key difference arises when there is objectively only one feasible way of satisfying the requirements of the standard*. In this case, the patent would be called "fundamental," as there are no acceptable alternative implementations. *For example*, the only way to meet the design requirements for LTE with low latency, high bandwidth, and high coding efficiency is to use orthogonal frequency-division multiplexing (OFDM). *Other schemes* like code-division multiple access (CDMA) cannot be used, for reasons including some issues related to mobility management. | High-level description of what occurs when there is only one feasible way of satisfying the FRAND requirements.  Huawei does not object to the correctness of any of the content. |

These challenged statements thus set forth Mr. Davies' understanding of the legal framework for standard essential patents, as well as basic technical opinions about SEPs that fall well within Mr. Davies' expertise and experience as a frequent participant in standard setting activities; as a patent holder in the field of wireless telecommunications; as a Senior Lecturer at MIT in Electrical Engineering; and as a significant leader in the telecommunications industry (including as New Zealand's representative to the standard-setting organization International Telecommunication Union Radiocommunication Sector).  Ex. 1, ¶ 14, Ex. 1; Ex. 2, at 39:11-40:2.  Critically, Huawei does not attack the correctness or accuracy of *any* of these statements.  Moreover, Huawei's counsel had the opportunity to explore where exactly Mr. Davies learned these legal principles at his deposition, but chose to limit his inquiry to whether Mr. Davies learned these principles from

1    Samsung's counsel.  Huawei's motion as it pertains to paragraph 21-26 of Mr. Davies's report

2    should therefore be denied.

3         That leaves paragraph 27.  As discussed above, Mr. Davies has extensive experience in

4    standard-setting, and is familiar with the rationales and principles underlying commitments made to

5    the standard-setting body.  Moreover, as permitted by courts, Mr. Davies is permitted to summarize

6    his understanding of a general legal framework in which to apply "complex facts."  *Advanced*

7    *Thermal Scis.*, 2009 WL 10673194, at *1.  Because Mr. Davies provides technical opinions

8    supporting Samsung's antitrust case, it is entirely proper for Mr. Davies to summarize his

9    understanding of this general legal framework in his report.  *See* Ex. 1, ¶ 27 ("A holder should not

10   be granted an injunction on a patent ex-post if the patent was only one of a number of equally

11   plausible alternatives ex-ante"); *Fidelity*, 2014 WL 1286392, at *9.  Huawei's motion should

12   therefore be denied as to paragraph 27 as well.

13   **IV.   THE CHALLENGED PARAGRAPHS OF PROF. HAUSMAN'S EXPERT
          REPORTS SET FORTH PROPER ECONOMIC EXPERT ANALYSIS**
14

15        Huawei's motion to preclude paragraphs 32 and 56-58 from Prof. Hausman's opening

16   rebuttal report, and paragraph 14 from his rebuttal report, should be denied because they properly

17   set forth ***economic*** opinions grounded in Prof. Hausman's unquestioned expertise in economics and

18   industrial competition.  *See, e.g., U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No.*

19   *3, AFL-CIO*, 313 F. Supp. 2d 213, 240-41 (S.D.N.Y. 2004) (permitting expert economist to "point

20   to factors that would tend to show anticompetitive conduct in a market…indicate whether he

21   believed those factors existed here, and what the economic significance of those factors would

22   be...[and] also explain how certain conduct could affect a market through the use of hypothetical

23   statements.").   Prof. Hausman's qualifications in the fields of economics and antitrust are

24   unimpeachable.  Prof. Hausman is the MacDonald Professor of Economics at MIT, and has been at

25   MIT ever since he completed his D. Phil (Ph.D.) in economics from Oxford University in 1973

26   where he was a Marshall Scholar.  Ex. 3, ¶ 1.  Prof. Hausman has received the John Bates Clark

27   Award of the American Economic Association, awarded every other year for the most "significant

28   contributions to economics" by an economist under the age of 40, the Frisch Medal of the

1  Econometric Society, and has published over 170 academic research papers in leading economic

2  journals.  *Id.* ¶ 2.  Prof. Hausman has testified as an expert witness in numerous antitrust

3  proceedings, and has lectured on various antitrust issues to members of the Department of Justice,

4  the Federal Trade Commission, amongst other international bodies.  *Id.* ¶ 3.  Prof. Hausman also

5  has substantial experience in high-technology industries, and has conducted extensive academic

6  research in the mobile telecommunications industry.  *Id.* ¶¶ 4-6.

7       Prof. Hausman draws from his wealth of antitrust and economic expertise in proffering the

8  opinions within the paragraphs of his reports that Huawei now challenges.  These opinions are well-

9  grounded in economic analysis of the competitive dynamics of the wireless industry.  To the extent

10 Prof. Hausman utilizes legal terminology, such opinions remain proper expert testimony because

11 Prof. Hausman uses such terms only to provide a legal framework for which to apply complex facts

12 as necessary to assist the jury understand such facts.  *Advanced Thermal Scis.*, 2009 WL 10673194,

13 at *1; *Fidelity*, 2014 WL 1286392, at *9.

| Report Paragraph | Subject Matter |
|---|---|
| ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | Economic analysis of anticompetitive behavior, and potential impact on economic welfare of society. |

28

Case No. 16-cv-02787-WHO

SAMSUNG'S OPPOSITION TO HUAWEI'S MOTION TO PRECLUDE



Economic analyses of anticompetitive behavior, and competition within wireless industry.

SAMSUNG'S OPPOSITION TO HUAWEI'S MOTION TO PRECLUDE



Economic analyses of anticompetitive behavior, and competition within wireless industry.

| | |
|---|---|
|  | Economic analysis of anticompetitive behavior. |
| | Economic analysis of anticompetitive behavior and competition within wireless industry, and potential impact on economic welfare of society. |



The bolded statements above are not legal in nature, but rather are grounded in and demonstrate Prof. Hausman's economic analysis of anticompetitive concerns arising from Huawei's behavior. *Fleischman v. Albany Med. Ctr.*, 728 F. Supp. 2d 130, 166 (N.D.N.Y. 2010) (allowing expert economist to "interpret[] the likelihood of a [legal issue] based on certain well accepted economic factors" as his "opinions are informed by his background knowledge in economics and his ability to apply the facts to this information."); *see also Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1016-17 (9th Cir. 2004) ("A[n] [expert] witness may refer to the law in

SAMSUNG'S OPPOSITION TO HUAWEI'S MOTION TO PRECLUDE

1  expressing an opinion without that reference rendering the testimony inadmissible.").  Thus, while

2  Huawei takes issue with the legal framework *underlying* Prof. Hausman's competitive analysis of

3  injunctions—as demonstrated by its motion for summary judgment on Samsung's antitrust claim—

4  Huawei ignores that Prof. Hausman's analysis itself is not legal.  *See* Ex. 3, ¶¶ 56-58.  Taken

5  literally, Huawei's argument to exclude this analysis would mean that expert economists could

6  *never* opine as to the economic effects of an injunction.  This cannot be.

7        Other courts have routinely affirmed the reliability of Prof. Hausman's economic opinions

8  referencing pertinent legal principles, and have denied Daubert motions similar to Huawei's motion.

9  *See, e.g., Int'l Bus. Machines Corp. v. Priceline Grp. Inc.,* 271 F. Supp. 3d 667, 692 (D. Del. 2017)

10  (denying motion to exclude Prof. Hausman's testimony where Prof. Hausman provided economic

11  analysis couched within terminology of a patent damages legal framework); *see also Jaffe v.*

12  *Samsung Elecs. Co.*, 737 F.3d 14, 22 (4th Cir. 2013) (crediting Prof. Hausman's testimony that

13  "failure to apply Section 365(n) [of the U.S. Code] would reduce investment, innovation, and

14  competition, which would harm U.S. productivity growth and U.S. consumers as well as worldwide

15  productivity and consumers."); *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 98 F. Supp.

16  2d 362, 398 (S.D.N.Y. 2000) (crediting Prof. Hausman's testimony where Prof. Hausman testified

17  as to the anticompetitive effects that would occur if a preliminary injunction did not issue).

18        Underscoring the unreasonableness of its position, Huawei seeks to exclude opinions



24  To the extent the Court grants Huawei's motion pertaining to Prof. Hausman, the Court should

25  similarly preclude Huawei's experts from proffering similar testimony.

26        Huawei concludes its motion by rearguing its contemporaneously filed motion for summary

27  judgment.  It again disagrees with Prof. Hausman that Huawei's SEP abuses violated U.S. antitrust

28  laws, including under the "act of state" doctrine.  *See* Dkt. 327-8.  For the same reasons set forth in

1   Samsung's opposition to Huawei's summary judgment motion concurrently filed herewith,

2   Huawei's arguments are meritless.

3   **V.      CONCLUSION**

4          For the foregoing reasons, Huawei's motion should be denied.

5   DATED:  July 17, 2018                      Respectfully submitted,

6                                              QUINN EMANUEL URQUHART &
                                               SULLIVAN, LLP
7

8                                    By       */s/ Victoria F. Maroulis*
                                              Charles K. Verhoeven
9                                             Kevin P.B. Johnson
                                              Victoria F. Maroulis
10                                            Thomas D. Pease
                                              David A. Perlson
11

12                                            *Attorneys for Samsung Electronics Co., Ltd.,
                                              Samsung Electronics America, Inc., and Samsung
13                                            Research America, Inc.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SAMSUNG'S OPPOSITION TO HUAWEI'S MOTION TO PRECLUDE