QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:  (415) 875-6600
Facsimile:  (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California  94065
Telephone:  (650) 801-5000
Facsimile:  (650) 801-5100

Attorneys for Samsung Electronics Co., Ltd.,
Samsung Electronics America, Inc., and
Samsung Research America, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| HUAWEI TECHNOLOGIES CO., LTD., et al.,<br><br>                         Plaintiffs,<br><br>           v.<br><br>SAMSUNG ELECTRONICS CO., LTD., et al.,<br><br>                         Defendants.<br><hr>SAMSUNG ELECTRONICS CO., LTD. &<br>SAMSUNG ELECTRONICS AMERICA, INC.<br><br>                         Counterclaim-Plaintiffs,<br><br>           v.<br><br>HUAWEI TECHNOLOGIES CO., LTD.,<br>HUAWEI DEVICE USA, INC., HUAWEI<br>TECHNOLOGIES USA, INC., & HISILICON<br>TECHNOLOGIES CO., LTD.<br><br>                         Counterclaim-Defendants. | CASE NO.  16-cv-02787-WHO<br><br>**SAMSUNG'S OPPOSITION TO HUAWEI'S DAUBERT MOTION ON TECHNICAL ISSUES**<br><br>**Hearing Date: August 8, 2018**<br>**Time: 2:00 p.m.**<br>**Place: Courtroom 2, 17th Floor**<br>**Judge: Hon. William H. Orrick** |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...........................................................................................................1

II.     ARGUMENT ................................................................................................................1

        A.      Huawei Contravenes the Court's Restrictions on Summary Judgment
                Motions................................................................................................................1

        B.      Dr. Lyon's Opinions On Huawei's '613 Patent Are Proper Technical
                Opinions Based On The Plain And Ordinary Meaning Of Claim Terms .................2

                1.      Dr. Lyon Correctly Applies the Plain and Ordinary Meaning of
                        "Position Information" ........................................................................2

                2.      Dr. Lyon Correctly Applies the Plain and Ordinary Meaning of the
                        Asserted Claims to Exclude Non-Zero Offsets ................................5

                3.      Dr. Lyon Correctly Applies the Plain and Ordinary Meaning of the
                        Asserted Claims to Provide Technical Opinions Relevant to Divided
                        Infringement ......................................................................................7

        C.      Dr. Lyon's Opinions On Huawei's '587 Patent Are Proper Technical
                Opinions Based On The Plain And Ordinary Meaning Of Claim Terms .................9

        D.      Dr. Madisetti's Opinions On Huawei's '239 Patent Are Proper Technical
                Opinions Based On The Plain And Ordinary Meaning Of Claim Terms ...............11

                1.      Dr. Madisetti Correctly Applies the Plain and Ordinary Meaning of
                        "Obtaining . . . a Group Number k . . . Allocated by the System" ...............11

                2.      The Asserted Claims Require the Claimed "Sequences" to Actually
                        Be Zadoff-Chu or Gauss Sequences............................................12

                3.      Dr. Madiseti Correctly Applies the Plain and Ordinary Meaning of
                        "Selecting . . . n Sequences"..........................................................14

        E.      Dr. Madisetti's Opinions On Huawei's '892 Patent Are Proper Technical
                Opinions Based On The Plain And Ordinary Meaning Of Claim Terms ...............15

                1.      Dr. Madisetti Correctly Applies the Plain and Ordinary Meaning of
                        the Asserted Claims to Require the UE to Select $N_{CS}$...................15

                2.      Dr. Madisetti Correctly Applies the Plain and Ordinary Meaning of
                        "a Set of Random Access Preambles".............................................16

        F.      Dr. Bambos' Opinions On Samsung's '130 Patent Are Proper Technical
                Opinions Based On The Plain And Ordinary Meaning Of Claim Terms ...............17

                1.      Dr. Bambos Accounted for Sounding Reference Signals .............17

                2.      Dr. Bambos Never Opined that CQI Information is Mapped to *All* of
                        the Symbols Not Containing the DM RS in *All* Situations .........................18

G.     Dr. Bambos' Opinions On Samsung's '726 Patent Are Proper Technical
Opinions Based On The Plain And Ordinary Meaning Of Claim Terms ...............19

H.     Dr. Prucnal's Opinions On Samsung's '105 Patent Are Proper Technical
Opinions Based On The Plain And Ordinary Meaning Of Claim Terms ...............21

I.     Dr. Valenti's Opinions On Samsung's '825 Patent Are Proper Technical
Opinions Based On The Plain And Ordinary Meaning Of Claim Terms ...............23

III.    CONCLUSION ................................................................................................................25

# TABLE OF AUTHORITIES

**Page**

## Cases

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
    571 F. App'x 958 (Fed. Cir. 2014)...............................................................................8, 10

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
    797 F.3d 1020, 1022 (Fed. Cir. 2015) ...............................................................................8

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp. Inc.*,
    738 F.3d 960 (9th Cir. 2013)........................................................................................1, 19

*Apple Inc. v. Motorola, Inc.*,
    757 F.3d 1286 (Fed. Cir. 2014) ..................................................................................21, 23

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
    No. 12-cv-00630-LHK, 2014 WL 252045 (N.D. Cal. Jan. 21, 2014) ........................21, 23

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
    631 F.3d 1279 (Fed. Cir. 2011) .........................................................................................9

*City of Pomona v. SQM N. Am. Corp.*,
    750 F.3d 1036 (9th Cir. 2014) ...................................................................................passim

*Daubert v. Merrell Dow Pharms., Inc.*,
    43 F.3d 1311 (9th Cir. 1995).............................................................................................21

*Finjan, Inc. v. Sophos, Inc.*,
    No. 14-cv-01197-WHO, 2016 WL 4560071 (N.D. Cal. Aug. 22, 2016)............................2

*FotoMedia Techs., LLC v. AOL, LLC*,
    No. 2:07-CV-255, 2009 WL 2175845 (E.D. Tex. July 21, 2009)......................................9

*Fujifilm Corp. v. Motorola Mobility LLC*,
    No. 12-cv-03587-WHO, 2015 WL 1265009 (N.D. Cal. Mar. 19, 2015)....................passim

*Hoganas AB v. Dresser Indus., Inc.*,
    9 F.3d 948 (Fed. Cir. 1993)................................................................................................6

*In re Roundup Prods. Liability Litig.*,
    No. 16-md-02741-VC, 2018 WL 3368534 (N.D. Cal. July 10, 2018) ...............................1

*Laryngeal Mask Co. v. Ambu*,
    618 F.3d 1367 (Fed. Cir. 2010) .........................................................................................6

*Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*,
    285 F.3d 1353 (Fed. Cir. 2002) .......................................................................................15

*Oatey Co. v. IPS Corp.*,
    514 F.3d 1271 (Fed. Cir. 2008) .......................................................................................22

*Tech. Patents LLC v. T-Mobile (UK) Ltd.*,
     700 F.3d 482 (Fed. Cir. 2012) ......................................................................................... 9

*Uniloc USA, Inc. v. Microsoft Corp.*,
     632 F.3d 1292 (Fed. Cir. 2011) ....................................................................................... 9

*Versa Corp. v. Ag-Bag Int'l Ltd.*,
     392 F.3d 1325 (Fed. Cir. 2004) ..................................................................................... 14

*Williamson v. Citrix Online, LLC*,
     792 F.3d 1339 (Fed. Cir. 2015) ..................................................................................... 22

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

## I.    INTRODUCTION

Huawei's *Daubert* Motion on Technical Issues (Dkt. 330) does not present any issues suitable for disposition on *Daubert*.  Across the board, Huawei's arguments are directed to the correctness of Samsung's technical expert opinions, not the underlying methodologies.  Huawei's Motion should be denied on that basis alone.  Moreover, there is no basis to attack the methodology of Samsung's experts, all of whom presented opinions properly considering and applying the plain and ordinary meanings of the asserted claims.

## II.    ARGUMENT

### A.    Huawei Contravenes the Court's Restrictions on Summary Judgment Motions

Huawei's Motion is a thinly-veiled attempt to evade the page limit for summary judgment motions.  Huawei does not point to any unsound methodologies; rather Huawei alleges that certain infringement opinions are based on allegedly improper claim constructions.  (Dkt. 330 ("Mot.") at 2-25.)  But these purported claim construction issues are nothing more than Huawei's disagreement with Samsung's experts' application of the asserted claims to the accused products.  Moreover, they are a belated attempt to narrow the scope of the asserted claims.

For at least this procedural reason, Huawei's Motion should be denied.  *First*, it is well-settled that when evaluating *Daubert* motions, the test is not the "correctness of the expert's conclusions but the soundness of his methodology"—"when an expert meets the threshold established by Rule 702, the expert may testify and the fact finder decides how much weight to give that testimony." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014).  "A district court should not make credibility determinations that are reserved for the jury." *Id.  Second*, the "Ninth Circuit has placed great emphasis on *Daubert*'s admonition that a district court should conduct this analysis 'with a "liberal thrust"' favoring admission." *In re Roundup Prods. Liability Litig.*, No. 16-md-02741-VC, 2018 WL 3368534, at *5 (N.D. Cal. July 10, 2018).  *Daubert* challenges are simply meant to "screen the jury from unreliable . . . opinions, but not to exclude opinions merely because they are impeachable." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp. Inc.*, 738 F.3d 960, 969 (9th Cir. 2013).  When a party simply contends that an expert's opinions are "wrong as a matter of law," such a contention is an improper basis for "striking [the] testimony"

1  and "[t]his alone justifies denying the request [to strike]." *Fujifilm Corp. v. Motorola Mobility LLC*,

2  No. 12-cv-03587-WHO, 2015 WL 1265009, at *6 (N.D. Cal. Mar. 19, 2015).   Huawei makes

3  precisely this assertion repeatedly in its Motion.  (*See* Mot. at 8 ("Dr. Lyon's divided infringement

4  argument for claim 5 of the '613 patent fails as a matter of law."); *id.* at 9 (same for claim 9 of the

5  '587 patent); *id.* at 15 ("Dr. Madisetti's construction . . . is wrong, as a matter of law."); *id.* at 19

6  (same); *id.* at 19-20 (same).)   Huawei's entire Motion is based on its incorrect assertion that

7  Samsung's experts are applying a different plain and ordinary meaning of claim terms than

8  Huawei's experts, and therefore, as a matter of law, it contends that Samsung's experts' opinions

9  are wrong.   However, this is precisely the type of argument that this Court stated should be raised

10  at summary judgment, not at *Daubert*.[1] *Fujifilm*, 2015 WL 1265009, at *6 (finding that arguments

11  related to an opposing expert's definition of plain and ordinary meaning should be raised at summary

12  judgment).  Huawei's Motion is, therefore, "functionally equivalent to an improper second summary

13  judgment motion" and should be denied.  *Id.* at *7; *see also Finjan, Inc. v. Sophos, Inc.*, No. 14-cv-

14  01197-WHO, 2016 WL 4560071, at *14 (N.D. Cal. Aug. 22, 2016) (denying portion of *Daubert*

15  motion "because it amounts to an improper second summary judgment motion").

16         Each of Huawei's *Daubert* challenges not only fails on the merits, but are also issues that

17  should have been included in Huawei's motion for summary judgment, but were not, likely to avoid

18  non-compliance with the 25-page limit on summary judgment motions.   Accordingly, Huawei's

19  *Daubert* Motion should be denied in its entirety.

20    **B.     Dr. Lyon's Opinions On Huawei's '613 Patent Are Proper Technical Opinions
            Based On The Plain And Ordinary Meaning Of Claim Terms**

21

22         **1.      Dr. Lyon Correctly Applies the Plain and Ordinary Meaning of
                  "Position Information"**

23         Huawei's attempt to strike Dr. Lyon's noninfringement opinions related to the claimed

24  "position information" fails because Dr. Lyon merely applies his understanding of the plain and

25  ordinary meaning of that term.   (*See* Ex. A ("Lyon '613 Rebuttal Report") ¶¶ 35-36 ("My analysis

26

27  ───────────────

28    [1]   Such arguments are different and distinct from arguments to affirmatively adopt a party's
         proposed constructions, which should be raised during the claim construction phase of the litigation.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1  below is also based on the plain and ordinary meaning of the language of the asserted claims.").)

2  Dr. Lyon does not provide any claim construction analysis of "position information," but instead

3  applies the plain and ordinary meaning of this term.  Huawei's contention is the same as that

4  presented and rejected by this Court in the *Fujifilm* case.  2015 WL 1265009.  In that case, Motorola

5  asked this Court to strike portions of an expert report that it contended referenced the meanings of

6  claim terms that were not construed during the claim construction process.  *Id.* at *5.  The Court

7  held that the expert opinions at issue did not "delve too deeply into claim construction to [prevent

8  them from being] presented to the jury."  *Id.* at *6.  Just as Huawei does here, Motorola took the

9  position that the expert's interpretation of the terms at issue was contrary to the plain and ordinary

10  meaning of those terms and thus wrong as a matter of law.  *Id.*  The Court rejected Motorola's

11  motion as both "deficient on the merits" and an improper basis for *Daubert*, because it was

12  "functionally equivalent to an improper second summary judgment motion."  *Id.* at *6-7.

13       Similarly, Huawei's motion takes the position that Dr. Lyon's opinions are based on an

14  incorrect understanding of the plain and ordinary meaning of the term at issue.  (Mot. at 3-5.)  Dr.

15  Lyon explicitly states that he "applied the plain and ordinary meaning" of the terms in the '613

16  patent. (Lyon '613 Rebuttal Report ¶ 36.)  Huawei identifies no paragraph of the Lyon '613 Rebuttal

17  Report that delves deeply into the construction of "position information."  Dr. Lyon merely offers

18  noninfringement opinions based on his understanding of the plain and ordinary meaning of that

19  term, which can be presented to the jury under this Court's holding in *Fujifilm*.  (*See, e.g.*, Lyon

20  '613 Rebuttal Report ¶ 64.)

21       This is not a case where an expert is offering legal opinions on claim construction.  Rather,

22  this is Huawei's belated attempt to overcome Dr. Lyon's noninfringement positions by improperly

23  arguing that Dr. Lyon has incorrectly construed "position information."  (*See* Mot. at 5.)  As an

24  initial matter, as this Court stated in *Fujifilm*, it is improper to raise this dispute in the context of a

25  *Daubert* motion.  The Court should deny this Motion as an improper second summary judgment

26  motion, as Huawei has not requested leave of the Court to file such a motion.  (*See* Judge Orrick's

27  Standing Order for Civil Cases § 6; *see also Fujifilm*, 2015 WL 1265009, at *6-7.)

28       Huawei's Motion also fails on the merits, because Dr. Lyon applied the correct plain and

1   ordinary meaning of "position information."  The claim language and the specification support Dr.

2   Lyon's application of the plain and ordinary meaning of this term.  Asserted claims 1 and 5 require

3   that the "position information" must be the position information of the specific frames and

4   subframes that *actually contain* the claimed "service."  Claim 1 is representative.  Claim 1 states

5   that the UE receives "a service . . . sent in one or more subframes that are designated as specific

6   subframes."  (Dkt. 330-4 ("'613 patent") at 18:25-27.)   This plainly means that the "specific

7   subframes" contain the "service" sent by the base station.  Claim 1 goes on to say that those "specific

8   subframes" are "selected from one or more radio frames that are designated as specific radio

9   frames." (*Id.* at 18:28-29.) This means that "specific radio frames" contain the "specific subframes"

10  that contain the "service" sent by the base station.  Claim 1 also states that the UE receives "position

11  information" of those same "specific radio frames" and "specific subframes" that contain the

12  claimed "service." (*Id.* at 18:35-37.)  Thus, the "position information" must be of the *specific* frames

13  and subframes that *actually contain* the claimed "service."  Claim 1 elsewhere makes clear where

14  it is talking about subframes other than the specific subframes containing the service; it describes a

15  bulk set of "subframes that *can* be allocated to carry the service."  (*See id.* at 18:32-33 (emphasis

16  added).)  In this way it distinguishes subframes that can carry the service from specific subframes

17  that actually do carry the service, confirming Dr. Lyon's understanding.

18      The specification is further support that Dr. Lyon applied the correct of plain and ordinary

19  meaning of the asserted claims.  It alleges that the problem of "inform[ing] the transmission time of

20  various services" is solved by "selecting . . . radio frames in one time unit as specific radio frames;

21  and selecting . . . subframes in the specific radio frames as specific subframes *for sending a specific*

22  *service*." (*Id.* at 2:41-49.)  In other words, the "specific radio frames" and "specific subframes" that

23  have been selected are the ones that actually carry the service.  It says nothing about those specific

24  frames and subframes <u>potentially</u> carrying the service or <u>maybe</u> carrying the service, as Huawei

25  contends.  Instead, it requires that those specific frames and subframes send the service.[2]

26  ────────────────────

27  [2]   Huawei points to a 3GPP technical contribution (R1-071690) as evidence of the proper
    understanding of the asserted claims of the '613 patent, but its contents differ substantially from the
28

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1   Huawei acknowledges that one primary purpose of the '613 patent is to save energy on the

2   UE by allowing it to ignore certain frames and subframes that it knows do not contain the service

3   that it seeks.  (*See* Mot. at 4.)  Considering that purpose, it would not make any sense for the UE to

4   read frames and subframes that only <u>might</u> carry the service, as would be the case under Huawei's

5   proposed construction.   Thus, the intrinsic evidence of the '613 patent validates Dr. Lyon's

6   understanding of the plain and ordinary meaning of "position information."  Accordingly, Huawei's

7   Motion should be denied.

> ### 2.   Dr. Lyon Correctly Applies the Plain and Ordinary Meaning of the Asserted Claims to Exclude Non-Zero Offsets

9   Huawei's *Daubert* Motion also seeks to strike Dr. Lyon's noninfringement opinions based

10  on his understanding of the plain language of the asserted claims, which Dr. Lyon contends does

11  not permit a UE to determine the position of the transmitted service when the "specific radio frames"

12  do not start at the first location in the claimed "time unit."  (*See* Mot. at 6-7.)  Dr. Lyon contends

13  that the asserted claims do not accommodate a non-zero offset (*i.e.*, an offset of one or more non-

14  specific radio frames that are sent before the "specific radio frames" containing the service).  (Lyon

15  '613 Rebuttal Report ¶ 171; *see also id.* ¶ 35.)  In an attempt to strike Dr. Lyon's proper technical

16  opinions, Huawei frames its argument as a claim construction dispute by disagreeing with Dr.

17  Lyon's understanding of the plain and ordinary meaning of the claims.  (*See* Mot. at 6-7.)  As

18  explained in Section II.A above, this is not a proper basis for a *Daubert* motion.  For that reason

19  alone, Huawei's Motion should be denied.

20  Huawei's Motion should also be denied because Dr. Lyon correctly applies the plain and

21  ordinary meaning of the asserted claims.  Claim 1 is representative and states that the "position

22  information of the specific radio frame" is represented by one of two things:  either (1) "the number

23  of the specific radio frames in the time unit," or (2) "an interval between two specific radio frames

24

25  ────────────────

26  disclosure in the '613 patent.  (*See* Mot. at 5.)  As just one example, while the R1-071690

27  contribution uses the term "MBSFN" throughout, that term only appears a single time in the '613

28  patent.  (*See* '613 patent at References Cited.)  R1-071690 is extrinsic evidence and should not be
considered over the actual language of the claims and the specification.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1    in the time unit." ('613 patent at 18:40-45.)  Claim 1 does not provide for any "position information"

2    that accounts for an offset of a certain number of non-specific radio frames.  Instead, the "position

3    information" solely focuses on the amount of time between specific radio frames.  Because claim 1

4    provides no mechanism to account for a non-zero offset, Dr. Lyon opines that the specific radio

5    frames must begin at the first radio frame of the time unit.  Otherwise, the UE would have no way

6    to know which radio frame in the time unit contains the specific subframes that contain the service.

7           The cases cited by Huawei are inapposite.  In *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d

8    948, 950 (Fed. Cir. 1993), the Federal Circuit held that a size limitation could not be imposed on a

9    claim that did not have any mention of size.  Here, however, the asserted claims of the '613 patent

10    provide a definition of the "position information" received by the UE.  (*See* '613 patent at 18:40-

11    45, 19:9-14.)  That definition does not include an offset.  Accordingly, Dr. Lyon's understanding of

12    the plain and ordinary meaning of the asserted claims just incorporates the definition of "position

13    information" provided by the claims.  The other case cited by Huawei, *Laryngeal Mask Co. v. Ambu*,

14    618 F.3d 1367, 1371 (Fed. Cir. 2010), simply holds that it would be improper to import a "tube

15    joint" limitation into claims that do not mention such a limitation.  That case is distinguishable from

16    the situation here where the claims specifically define what is meant by "position information" and

17    that definition does not include offset information.

18           Huawei cites no instance in the '613 patent specification where a non-zero offset is used.

19    (*See* Mot. at 6-7.)  In every portion of the specification cited by Huawei, the starting position for the

20    specific radio frames is the zero position.  ('613 patent at 8:13:56-57 ("starting position . . . appointed

21    as 0"); 14:13-15 (same).)  Huawei's contention that Dr. Lyon's interpretation of the claim excludes

22    embodiments from the specification is untenable when Huawei itself cannot point to a single

23    embodiment in the specification that involves a non-zero offset.  Moreover, the specification

24    actually supports Dr. Lyon's understanding of the asserted claims.  FIG. 4 is the only diagram in the

25    '613 patent that shows the placement of specific frames and subframes in the claimed "time unit":

26

27

28

SAMSUNG'S OPPOSITION TO HUAWEI'S DAUBERT MOTION ON TECHNICAL ISSUES

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED



Fig. 4

('613 patent at FIG. 4 (emphasis added).)  The description of FIG. 4 in the specification explains that the position information of the specific radio frames in the time unit in FIG. 4 consists of an interval of four radio frames.  (*Id.* at 8:43-44.)  The first radio frame of the time unit (labeled "0" in FIG. 4) is the first "specific radio frame," and then the other specific radio frames (labeled "4" and "7" in FIG 4) come at an interval of four radio frames each.  (*See id.* at 8:44-45 ("a first radio frame of the time unit includes specific subframes").)  The '613 patent specification, therefore, does not account for a non-zero offset.  Accordingly, Dr. Lyon correctly applies the plain and ordinary meaning of the asserted claims.  The Court should deny Huawei's Motion.

> ### 3. Dr. Lyon Correctly Applies the Plain and Ordinary Meaning of the Asserted Claims to Provide Technical Opinions Relevant to Divided Infringement

As explained in Section II.A above, Huawei's argument that Dr. Lyon "relies on an . . . incorrect reading of the [asserted claims of the '613 patent]" is not a proper basis for a *Daubert* motion.  (*See* Mot. at 7.)  Huawei's Motion should be denied as to paragraphs 188 and 189 of the Lyon '613 Rebuttal Report, because, contrary to Huawei's assertion, those paragraphs do not set forth a divided infringement opinion.  In paragraph 188, Dr. Lyon highlights the portions of the asserted claims that involve activity performed at the base station and not on the UE.  (Lyon '613 Rebuttal Report ¶ 188.)  He is just providing his *technical* opinion regarding the limitations that must be performed by the network.  (*See id.*)  Dr. Lyon then argues in paragraph 189 that Huawei has not met its burden to provide evidence regarding "whether and how AT&T, Verizon, T-Mobile, or Sprint perform the network limitations" in the asserted claims.  (*Id.* ¶ 189.)  This is a noninfringement argument based on Huawei not meeting its burden of proof, not a divided

1    infringement argument.  Huawei has not alleged that there is anything improper about this burden

2    of proof argument.  (*See* Mot. at 7-8.)  For *Daubert* motions, the test is not the "correctness of the

3    expert's conclusions but the soundness of methodology."  *City of Pomona*, 750 F.3d at 1044.  While

4    Huawei may disagree with Dr. Lyon's opinions, that does not provide grounds to challenge those

5    opinions in a *Daubert* motion.  Accordingly, Huawei's motion to strike paragraphs 188 and 189 of

6    the Lyon '613 Rebuttal Report should be denied.

7            Paragraph 190 of the Lyon '613 Rebuttal Report also does not provide a legal opinion about

8    divided infringement.  It just provides further *technical* opinions that Dr. Lyon believes may be

9    relevant if the Court determines that the asserted claims are subject to divided infringement.  (*See*

10   Lyon '613 Rebuttal Report ¶¶ 12, 17.)  Dr. Lyon opines that Huawei has not set forth any evidence

11   of a contractual agreement through which Samsung requires third-party network operators to

12   perform limitations of the asserted claims, something that is required if the claims are subject to

13   divided infringement.  (*Id.* ¶ 190.)  While Dr. Lyon explains his understanding of the importance of

14   this failure of proof under the law about which he was informed, he does not set forth any legal

15   opinion about divided infringement.  (*See id.*)  He does not even mention the term "divided

16   infringement."  (*See id.*)  Instead, he explains that *if* "there is a determination that the asserted claims

17   require multiple actors to infringe the claims," then he does not believe that Huawei has put forth

18   evidence to show that Samsung had control over the other actors.  (*Id.*)  In essence, Dr. Lyon is

19   leaving the legal determination on divided infringement to the Court and is just providing opinions

20   about the underlying technical conditions that would be necessary to resolve such an inquiry.

21           In any event, Huawei incorrectly applies of the law of divided infringement.  The case on

22   which Huawei relies for the purported proposition that divided infringement cannot apply to a

23   "product claim" was vacated by the Federal Circuit based on a reversal by the Supreme Court.  *See*

24   *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 571 F. App'x 958 (Fed. Cir. 2014) ("this court's

25   judgment [in *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012)] is

26   vacated").  The only other case cited by Huawei says nothing about the applicability of the divided

27   infringement doctrine to "product claim[s]."  *See Akamai Techs., Inc. v. Limelight Networks, Inc.*,

28   797 F.3d 1020, 1022 (Fed. Cir. 2015) (only addressing the applicability of the divided infringement

1  doctrine to particular method claims).  In fact, the Federal Circuit has applied the doctrine of divided

2  infringement to system and apparatus claims.  *See, e.g.*, *Centillion Data Sys., LLC v. Qwest*

3  *Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1287 (Fed. Cir. 2011) (affirming summary judgment of

4  noninfringement where defendant did not make or use all elements of a system claim but others did

5  make or use those other elements).

6     The cases that Huawei attempts to apply to the claims at issue are inapposite.  Huawei cites

7  to *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1309 (Fed. Cir. 2011) and references its

8  example of a claim that reads "[a]n algorithm incorporating means for receiving e-mails."  (Mot. at

9  8.)  While the example claim in *Uniloc* only implicitly requires two parties to function, the asserted

10  claims of the '613 patent are different because they explicitly require actions performed by a second

11  party.  They require a base station to send a service in a particular manner.  ('613 patent at 18:25-

12  34 ("a service sent by a base station, the service being sent in one or more subframes that are

13  designated as specific subframes, the specific subframes . . ."), 18:61-19:3 (same).)  The asserted

14  claims also require the base station to send position information for the service in a particular format

15  on a particular transport channel.  ('613 patent at 18:35-49, 19:4-18.)  Because the asserted claims

16  require action by the base station in addition to the user equipment, they are also distinguishable

17  from the other cases cited by Huawei.  *See Tech. Patents LLC v. T-Mobile (UK) Ltd.*, 700 F.3d 482,

18  501 (Fed. Cir. 2012) ("Representative claim 11 requires action only by the originating user");

19  *FotoMedia Techs., LLC v. AOL, LLC*, No. 2:07-CV-255, 2009 WL 2175845, at *8 (E.D. Tex. July

20  21, 2009) ("the preamble recites that all the steps are performed 'by the server'").

21     In accordance with the foregoing, Huawei's Motion should be denied.

22    **C.  Dr. Lyon's Opinions On Huawei's '587 Patent Are Proper Technical Opinions Based On The Plain And Ordinary Meaning Of Claim Terms**

23

24     Just like for the '613 patent, Huawei challenges Dr. Lyon's technical opinions that are

25  relevant to divided infringement for the '587 patent.  (*See* Mot. at 9-10.)  As explained above,

26  Huawei's Motion to strike the Lyon '587 Rebuttal Report and to preclude Dr. Lyon from testifying

27  about the opinions presented therein should be denied because it is not a proper *Daubert* motion, as

28  it simply challenges technical opinions on the basis of correctness.  (*See* Section II.A, *supra*.)

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1    Paragraphs 134 and 135 contain Dr. Lyon's technical opinions regarding which portions of

2  the asserted claims must be performed by the network, as opposed to the UE "based on the plain

3  and ordinary meaning of the language in the asserted claims."  (*See* Ex. B ("Lyon '587 Rebuttal

4  Report") ¶ 36.)   The plain language of those claims states that the base station sends downlink

5  control information by transmitting it on a downlink component carrier.  (Dkt. 330-10 ("'587

6  patent") at 22:16-18, 23:2-4.)  Those claims also specify that the base station configures a common

7  field in the downlink control information as a "TPC command" for a certain kind of downlink

8  component carrier and as a "ARI command" for a different kind of downlink component carrier.

9  ('587 patent at 22:21-32, 23:8-19.)   Based on this language in the claims, Dr. Lyon correctly

10  considers their plain and ordinary meaning to require the performance of many of the limitations by

11  the network, rather than the UE.  (*See* Lyon '587 Rebuttal Report ¶¶ 134-135.)

12    In light of the requirement that the network perform many of the limitations of the asserted

13  claims of the '587 patent, Dr. Lyon calls out Huawei's failure to provide evidence of AT&T,

14  Verizon, T-Mobile, or Sprint performing those particular limitations.  (*See id.* ¶ 135.)  This is not

15  improper legal opinion as Huawei suggests.  Dr. Lyon instead provides a noninfringement opinion

16  based on Huawei's failure of proof.  (*See id.*)  In paragraph 136, Dr. Lyon also calls out Huawei for

17  not providing evidence of "any contract between Samsung and network entities where Samsung

18  requires these third party network entities to perform the limitations of the asserted claims."  (*Id.* ¶

19  136.)  Again, he does not offer an improper legal opinion.  He merely provides a *technical* opinion

20  that he understands will be relevant if the Court determines that the asserted claims of the '587

21  patent are subject to a divided infringement analysis.  (*See id.*; *see also id.* ¶¶ 12, 17.)

22    Huawei's cited case law is inapposite to the facts here for the reasons provided in Section

23  II.B.3 above.  *See Akamai*, 571 F. App'x at 958 (vacating the judgment in *Akamai Techs., Inc. v.*

24  *Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012), one of the cases cited by Huawei);

25  *Akamai*, 797 F.3d at 1022 (not addressing the applicability of the divided infringement doctrine to

26  apparatus claims).  Because Dr. Lyon has provided proper technical opinions, Huawei's Motion

27  should be denied.

28

1

**D.    Dr. Madisetti's Opinions On Huawei's '239 Patent Are Proper Technical Opinions Based On The Plain And Ordinary Meaning Of Claim Terms**

2

3

**1.    Dr. Madisetti Correctly Applies the Plain and Ordinary Meaning of "Obtaining . . . a Group Number k . . . Allocated by the System"**

4

As explained in Section II.A above, Huawei's motion is not a proper *Daubert* motion.  It

5

seeks to exclude the opinions of Dr. Madisetti based upon their correctness, not upon their

6

methodology.  (*See* Mot. at 15 ("Dr. Madisetti's interpretation of the 'obtaining' element is contrary

7

to plain language of the claims and the intrinsic record and, therefore, Dr. Madisetti's opinion should

8

be excluded."); *City of Pomona*, 750 F.3d at 1044.)   Huawei's motion should be denied as an

9

improper attempt to make an end run around the Court's restrictions on motions for summary

10

judgment.  *See, e.g.*, *Fujifilm*, 2015 WL 1265009, at *7.

11

Along with being improper, Huawei's Motion also fails on the merits.  Dr. Madisetti opines,

12

relying on the claim language and the specification of the '239 patent, that the plain and ordinary

13

meaning of the asserted claims requires that the claimed "group number k" be received from the

14

system (*e.g.*, the base station).  (*See* Ex. C ("Madisetti Rebuttal Report") ¶¶ 63-67.)   The Court

15

construed "a group number k of a sequence group allocated by the system" as "a group number k

16

***allocated by the system***, where the group number k identifies a sequence group and where the value

17

k is the same throughout the claim."  (Dkt. 168, Claim Construction Order at 7 (emphasis added).)

18

When the Court's construction is read in combination with "obtaining" from the asserted claims, a

19

person of ordinary skill in the art would have understood that the group number k must itself be

20

received from the system that allocated it.  (*See* Madisetti Rebuttal Report ¶¶ 63-67.)

21

The "allocated by the system" language is critical in that it requires the base station to

22

provide the actual group number k, not some component variables that can be used to calculate the

23

group number k.  The definitions of "obtaining" cited by Huawei are irrelevant in isolation because

24

they do not consider the use of the word "obtaining" with a parameter that is "allocated by the

25

system."  (*See* Mot. at 15.)  Dictionary.com defines "allocate" as "to set apart for a particular

26

purpose" or "assign."  (Ex. D, http://www.dictionary.com/browse/allocated.)  When combined with

27

the definition for obtaining cited by Huawei (Dkt. 330-19), the language of the asserted claims

28

requires the UE to "acquire" (*i.e.*, obtain) a group number k "assigned" (*i.e.*, allocated) by the system

1    (*e.g.*, the base station).  As Dr. Madisetti elucidates in his expert report, a person of ordinary skill in

2    the art reading this claim language and the patent specification would understand that "a mobile

3    device cannot 'obtain' a value 'allocated' by some external system without receiving that value from

4    the system."  (Madisetti Rebuttal Report ¶ 65).  In order to obtain what the system allocates, the UE

5    would have to receive the group number k from the system.  Huawei's expert's interpretation that

6    the UE can derive the group number k from other parameters unrelated to the allocated parameter

7    would read out the "allocated by the system" language from the claims and therefore be incorrect.[3]

8         The specification of the '239 patent does not support a different understanding of the plain

9    and ordinary meaning of "obtaining . . . a group number k . . . allocated by the system."  The portions

10   of the specification cited by Huawei are not related to the claimed group number k, but rather the

11   generated sequences that are computed using the group number k.  (*See* Dkt. 330-17 ("'239 patent")

12   at 13:13-15, 21:47-48.)  In addition, while those portions do use the word "obtain," they do not use

13   it in conjunction with a parameter "allocated by the system."  Accordingly, they provide little

14   assistance in understanding the plain and ordinary meaning of the asserted claims of the '239 patent.

15   Because Dr. Madisetti applies the correct plain and ordinary meaning of "obtaining . . . a group

16   number k . . . allocated by the system," Huawei's Motion should be denied.

### 2.    The Asserted Claims Require the Claimed "Sequences" to Actually Be Zadoff-Chu or Gauss Sequences

19        Huawei also challenges Dr. Madisetti's understanding of the plain and ordinary meaning of

20   the claimed "sequences" in the asserted claims of the '239 patent.  (*See* Mot. at 15-16.)  Dr. Madisetti

21   reads the asserted claims to require that the "sequences" be Zadoff-Chu sequences, not just a portion

22   of a Zadoff-Chu sequence with additional numbers appended.  (Madisetti Rebuttal Report ¶¶ 91-95;

23   *see also id.* ¶ 54 ("for all other claim terms . . . I have applied the plain and ordinary meaning").)

24   Huawei disagrees with the correctness of the construction applied by Dr. Madisetti but does not

25   disagree with the methodology that he used.  (*See* Mot. at 15.)  As explained in Section II.A above,

---

27   [3]    To the extent Huawei and its expert disagree with Dr. Madisetti's well-supported non-
28   infringement opinions, a genuine dispute of material fact would exist, preventing the Court from
     granting summary judgment.

Case No. 16-cv-02787-WHO

1    this is not the proper basis for a *Daubert* motion, and this argument should be rejected on that basis

2    alone.  *See, e.g.*, *Fujifilm*, 2015 WL 1265009, at *6-7 (denying motion to strike as "functionally

3    equivalent to an improper second summary judgment motion").

4          Huawei's argument also fails on the merits.  The plain language of asserted claims 7 and 18

5    requires that the claimed "sequences correspond to at least one of: Zadoff-Chu sequences and Gauss

6    sequences." ('239 patent at 25:24-26, 26:34-36.)  Merriam-Webster defines "correspond" as "to be

7    *in conformity or agreement*," "to compare closely: *match*," or "to be *equivalent* or parallel." (Ex.

8    E, https://www.merriam-webster.com/dictionary/correspond (emphasis added).)  This definition

9    makes clear that "correspond" involves more than just being "related to" a Zadoff-Chu sequence;

10   rather, it must be a Zadoff-Chu sequence because correspondence denotes an equivalence or

11   sameness.[4]  In the context of asserted claims 7 and 18, this claim language requires the claimed

12   "sequences" to *actually be* either Zadoff-Chu sequences or Gauss sequences.  It is not sufficient to

13   use a cyclic extension to modify a root Zadoff-Chu sequence because the resulting sequence is no

14   longer a Zadoff-Chu sequence, even if a portion of it may be derived from a Zadoff-Chu sequence.

15   (*See* Madisetti Rebuttal Report ¶¶ 92-94; *see also* Dkt. 333-2, Samsung's Motion for Summary

16   Judgment at 7-9 (explaining that summary judgment of noninfringement of the '239 patent is

17   appropriate because Huawei has not shown the alleged "sequences" are Zadoff-Chu sequences).)

18         The specification of the '239 patent confirms this understanding of the plain and ordinary

19   meaning of the asserted claims.  It describes taking "the Zadoff-Chu sequences corresponding to"

20   certain lengths and then cyclically extending them to obtain "the desired sequences." ('239 patent

21   at 11:39-46.)  The specification is careful to never describe those "desired sequences" that resulted

22   from cyclic extension as "Zadoff-Chu sequences." (*See id.*)  This makes sense because once those

23   sequences are cyclically extended, they no longer bear the characteristics of a Zadoff-Chu sequence

24

25   _____

26       [4]    Huawei does not cite to any dictionary definitions of "correspond" or provide its own
     interpretation of what it means for a sequence to "correspond" to a Zadoff-Chu sequence.  Nor does
27   Huawei dispute that the claimed "sequences" are in fact not actual Zadoff-Chu sequences.  (Mot. at
     15-16.)
28

and in fact are not Zadoff-Chu sequences.[5]  While cyclically extended sequences may fit under independent claims 6 and 17, which do not include the limitation that requires the sequences to "correspond to . . . Zadoff-Chu sequences," the imposition of that limitation in asserted dependent claims 7 and 18 prevents cyclically extended sequences from reading on those claims.  As Dr. Madisetti has applied the correct plain and ordinary meaning of the asserted claims, Huawei's Motion should be denied.

> **3.      Dr. Madiseti Correctly Applies the Plain and Ordinary Meaning of "Selecting . . . n Sequences"**

Huawei similarly challenges Dr. Madisetti's construction of "selecting . . . n sequences."  In paragraphs 75-77 of the Madisetti Rebuttal Report, Dr. Madisetti applies his understanding of the plain and ordinary meaning of the asserted claims of the '239 patent: "selecting . . . n sequences" requires the selection of more than one sequence.  (*See* Madisetti Rebuttal Report ¶¶ 75-77; *see also id.* ¶ 54 ("for all other claim terms . . . I have applied the plain and ordinary meaning").)  In Huawei's *Daubert* motion, it disagrees with Dr. Madisetti's "reading of the claim," presenting another summary judgment contention as a *Daubert* issue.  (*See* Mot. at 17; *see also* Section II.A, *supra*.)

Huawei's Motion should also be denied because Dr. Madisetti applies the correct understanding of the plain and ordinary meaning of the asserted claims.  (*See* Madisetti Rebuttal Report ¶¶ 75-77.)  The Madisetti Rebuttal Report explains how the plain language of the claims requires the selection of more than one sequence.  (*See id.* ¶ 76.)  Dr. Madisetti points out that asserted claims "require[] 'selecting . . . n sequences' (plural) so this would require the selection of more than one sequence per sub-group."  (*Id.*)  In addition, as one of at least ordinary skill in the art, Dr. Madisetti further opines that "[o]ne of ordinary skill in the art reading the claim language and the specification would understand that the selection of a *single* sequence (v=0 or v=1) would not meet this limitation."  (*Id.*; *see also id.* ¶ 24.)

*Versa Corp. v. Ag-Bag Int'l Ltd.*, 392 F.3d 1325, 1330 (Fed. Cir. 2004), which Huawei cites,

---

[5]  For example, the definition of a Zadoff-Chu sequence given in Formula (1) of the '239 patent would no longer hold, meaning the extended sequences are themselves ***not*** Zadoff-Chu sequences as required by the asserted claims.  (*See* Madisetti Rebuttal Report ¶¶ 92-94.)

holds that the **context** in which a plural term is used in a claim decides whether that term means more than one or, alternatively, one or more.  In *Versa*, the Federal Circuit held that the plural term "channels," which appeared in the context of the means-plus-function phrase "means for creating air channels," meant one or more.  *Id.* at 1327, 1330.  That holding makes sense because if you are talking about means for creating channels, you may only want to use them to create a single channel. In contrast, the context of "n sequences" in the asserted claims of the '239 patent indicates that the plural means more than one.  (*See* Madisetti Rebuttal Report ¶ 76; *see also Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1357 (Fed. Cir. 2002) (holding that "support wires" recited in the asserted claims required more than one).)  Huawei's citations to the specification of the '239 patent do not change this conclusion because they refer to other, unclaimed equations and not the "n sequences" referenced in the claims.  (*See* '239 patent at 9:7-15, 19:26-34.)  Accordingly, Huawei's Motion should be denied.

> ### E.     Dr. Madisetti's Opinions On Huawei's '892 Patent Are Proper Technical Opinions Based On The Plain And Ordinary Meaning Of Claim Terms
>
> #### 1.     Dr. Madisetti Correctly Applies the Plain and Ordinary Meaning of the Asserted Claims to Require the UE to Select $N_{CS}$

Huawei's *Daubert* motion seeks to strike the portions of the Madisetti Rebuttal Report in which Dr. Madisetti reads the asserted claims of the '892 patent to require the UE to select the cyclic shift increment ("$N_{CS}$").  (Mot. at 18-19.)  Huawei bases its Motion on the allegation that "Dr. Madisetti's construction of the term 'selecting' is wrong."  (*Id.* at 19.).  As explained repeatedly, this is not a proper basis for a *Daubert* motion.  *See City of Pomona*, 750 F.3d at 1044

Even if the Court decides to consider the merits of Huawei's argument, Huawei's Motion should again be denied because Dr. Madisetti applies the correct plain and ordinary meaning of the asserted claims.  (*See* Madisetti Rebuttal Report ¶¶ 116-121.)  Looking at asserted claim 10, Huawei claims that "apparatus" is the UE.  (*See* Dkt. 330-22 ("'892 patent") at 10:21-22.)  Claim 10 requires that the apparatus (*i.e.*, the UE) "select a random access preamble from a set of random access preambles."  (*Id.* at 10:28-29.)  It further specifies that the "set of random access preambles" has "Zero Correlation Zones of length $N_{CS}-1$.  (*Id.* at 10:31-32.)  It then provides that "$N_{CS}$ is . . . selected from a pre-defined set of cyclic shift increments.  (*Id.* at 10:32-34.)  This selection of the $N_{CS}$ value

connects back to the UE "select[ing] a random access preamble." (*See id.* at 10:29-30, 10:32-34.) Accordingly, the logical reading of the plan language of claim 10 is that the UE also performs the selection of N$_{CS}$. (*See also* Madisetti Rebuttal Report ¶¶ 116-119.)  This analysis equally applies to claim 1, which is simply claim 10 in the form of a method claim. (*Compare* '892 patent at 10:21-36, *with* '892 patent at 9:30-41.)  Accordingly, Huawei's Motion should be denied.

### 2.  Dr. Madisetti Correctly Applies the Plain and Ordinary Meaning of "a Set of Random Access Preambles"

Huawei's *Daubert* motion further seeks to strike portions of the Madisetti Rebuttal Report that apply Dr. Madisetti's understanding of the plain and ordinary meaning of the claimed "set of random access preambles." (Mot. at 19-20; *see also* Madisetti Rebuttal Report ¶ 114 ("for all claim terms . . . I have applied the plain and ordinary meaning").)  Huawei bases its Motion on the argument that Dr. Madisetti's understanding of the plain and ordinary meaning of the asserted claims of the '892 patent is "wrong, as a matter of law." (*See* Mot. at 19-20.)  This is an improper basis for a *Daubert* motion, as explained in Section II.A above, and instead reflects an attempt to evade the limits on motions for summary judgment. *See, e.g., Fujifilm*, 2015 WL 1265009, at *6-7 (denying motion to strike as "functionally equivalent to an improper second summary judgment motion").

Huawei's *Daubert* motion also fails on the merits.  First, it misstates Dr. Madisetti's opinion. He does not read the asserted claims to require that the "set of random access preambles" be stored on the UE. (*See* Madisetti Rebuttal Report ¶ 122.)  Instead, as he clearly states in paragraph 122 of the Madisetti Rebuttal Report, he understands the asserted claims to require the set to be stored "on the UE (*or anywhere else*)." (*Id.* (emphasis added).)  Dr. Madisetti is merely making the unobjectionable observation that a "set" must exist *somewhere* in order for the UE to select from it.

Notably, Huawei does not cite to any portions of the asserted claims or specification (or even to any extrinsic evidence) to support its proposed construction of "a set of random access preambles." (*See* Mot. at 19-20.)  Instead, Huawei can only offer a couple of half-baked analogies, one to a restaurant menu and one to the universe of all even numbers. (*See id.*)  These analogies are insufficient to counteract the plain language of the asserted claims of the '892 patent.  Accordingly, Huawei's Motion should be denied.

**F.     Dr. Bambos' Opinions On Samsung's '130 Patent Are Proper Technical Opinions Based On The Plain And Ordinary Meaning Of Claim Terms**

**1.     Dr. Bambos Accounted for Sounding Reference Signals**

Huawei contends that Dr. Bambos improperly construed the term "Mapping Data Information to Remaining Symbols" in the '130 patent because of his failure to account for the presence of the Sounding Reference Signal ("SRS").  (*See* Mot. at 13 ("SRS signals, which contain no data information, cannot be mapped to the remaining symbols.").)  This argument should be rejected because, as Dr. Bambos explained in his report, the presence of the SRS is the exception, not the rule, and in all of the cases where the SRS is not present, data is mapped to the remaining symbols in the slot as required by claim 13.

In the LTE standard and in the '130 patent, each slot contains seven SC-FDMA symbols and is 0.5 ms long.  (Ex. F ¶ 99.)  One subframe contains two slots and is therefore 1 ms long.  (*Id.*)  The demodulation reference signal (DM RS) is mapped to the middle symbol of each slot, and data is mapped to every other symbol in the slot.  (*Id.* ¶¶ 299-300; 564.)  Dr. Bambos explained that the "periodicity of the SRS can be as much as 320 ms," which means that for 319 consecutive subframes—638 consecutive slots—no SRS is transmitted and data is mapped to each of the symbols in the slot not containing the reference signal as required by claim 13.  (*Id.* ¶ 558.)  Accordingly, Dr. Bambos concluded that "a majority (if not overwhelming majority) of the subframes have no SRS in them," resulting in each of these subframes having mapped data information in each of the symbols in the slot except for the middle symbol containing the DM RS.  (*Id.*)  Critically, Huawei does not address any aspect of Dr. Bambos's opinion that the overwhelming majority of the subframes have no SRS in them in its motion.  Accordingly, Huawei's attempt to portray this issue as one of improper claim construction misses the mark.  Dr. Bambos clearly accounted for the presence of the SRS in his conclusions, and because Huawei offers no reason to doubt the veracity of his conclusion (nor could it, as such an argument is outside the scope of a proper *Daubert* motion), Huawei's challenge on this front should accordingly be rejected.

Moreover, Huawei's argument regarding the presence of the SRS was omitted from its interrogatory response setting forth its noninfringement arguments and was not disclosed until it

1  served its rebuttal noninfringement expert report, which is why Samsung moved to strike this

2  argument.  (*See* Dkt. 334-2 at 16.)  This is an additional reason to deny Huawei's *Daubert* motion

3  on this point.  In any event, Huawei's expert, Dr. Mahon, concedes that the SRS is not sent in every

4  subframe.  (*See* Ex. G ¶ 127 ("***When*** sounding reference signals are transmitted . . . the data

5  information is not mapped to the remaining symbols that are not used to map the reference signal

6  [DM RS]." (internal quotation marks and italicization omitted)).)  Because the SRS is not sent in

7  every subframe, as Dr. Bambos explained, all of the subframes that do not have an SRS meet the

8  limitations of claim 13, underscoring the propriety of Dr. Bambos's opinion.

9       **2.     Dr. Bambos Never Opined that CQI Information is Mapped to *All* of the Symbols Not Containing the DM RS in *All* Situations**

10

11  Huawei next argues that "Dr. Bambos opines that each non-reference signal symbol in LTE

12  contains CQI" and that "another one of Samsung's experts, Dr. Prucnal, testified that Dr. Bambos

13  was wrong."  (Mot. at 13.)  But Dr. Bambos never said any such thing.

14      Instead, Dr. Bambos noted that in ***one specific example*** in the LTE standard, "Section 5.3.4

15  of TS 36.211," "the multiplexed data and CQI information is mapped to every symbol not containing

16  the DM RS."  (Ex. F ¶ 564.)  Dr. Bambos never stated that CQI information is always mapped to all

17  non-reference signal symbols, because there may be situations where CQI information is not sent at

18  all.  (Declaration of Nicholas Bambos, Ph.D in Support of Samsung's Opposition to Huawei's

19  Motion for Summary Judgment and Samsung's Opposition to Huawei's *Daubert* Motion ("Bambos

20  Decl.") ¶ 16.)[6]  In those circumstances, the vector of CQI and data information Dr. Bambos analyzed

21  (Ex. F ¶¶ 555-57) would only contain data information.  (Bambos Decl. ¶ 16.)  Indeed, Huawei's

22  own expert conceded that there are instances in which CQI information is not sent.  (*See* Ex. H at

23  150:19-151:1 ("Q.  So in LTE, there's situations where the CQI is not in a particular slot, correct?

24  A.  In LTE, CQI can be sent out based on various schemes, and it may not appear.  Q.  So in LTE,

25  sometimes CQI will appear on the slot and sometimes it will not appear on the slot, correct?  A.

26  That is correct."); *id.* at 238:2-13 ("Q.  So sometimes there are no CQI bits to be transmitted; isn't

27

28      [6]  The Bambos Decl. is being filed concurrently as an attachment to Samsung's Opposition to Huawei's Motion for Summary Judgment.

1   that correct?  A.  That is a possibility.  Q.  So on the PUSCH, you could have the situation where

2   there are no CQI bits in the slot?  A.  If the periodic scheduling is set by the network such that it's .

3   . . multiple subframes, actually it is possible.").)

4        This simple point suffices to defeat Huawei's argument.  The excerpt from Dr. Prucnal's

5   deposition that Huawei cites emphasized that he disagreed with the statement in Dr. Bambos's report

6   *if* he was "representing this as always being the case."  (Mot. at 14.)  Clearly, however, Dr. Bambos

7   was not, something that is readily apparent upon examination of the language used in paragraph 564

8   of his report.  (*See* Ex. I at 197:15-22 ("You wouldn't transmit CQI which you don't have in the

9   first place.")).  Consequently, Dr. Prucnal's deposition testimony that forms the crux of Huawei's

10   argument is consistent with Dr. Bambos's report, contrary to Huawei's portrayal.  Thus, Huawei's

11   challenge should be rejected, as once again, no issue of improper claim construction is implicated.

12        This argument epitomizes the underlying flaw in Huawei's *Daubert* motion.  Huawei simply

13   asserts that Dr. Bambos "is wrong" without pointing out any flaws in the methodology Dr. Bambos

14   used to arrive at the conclusion at issue.  (Mot. at 13.)  Even if there was any tension between the

15   testimony of Drs. Bambos and Prucnal—which there is not—such an inconsistency would not be a

16   categorical bar to admission of Dr. Bambos's opinions, but would rather simply be a point to show

17   that the opinion is "impeachable," leaving it to the jury to decide how much weight to give to the

18   testimony.  *Alaska Rent-a-Car*, 738 F.3d at 969.  The unabashed challenge to the "correctness" of

19   Dr. Bambos's "conclusions" illustrates why Huawei's *Daubert* challenge is improper.  *City of*

20   *Pomona*, 750 F.3d at 1044.

21   **G.  Dr. Bambos' Opinions On Samsung's '726 Patent Are Proper Technical**
     **Opinions Based On The Plain And Ordinary Meaning Of Claim Terms**
22

23        The sole challenge Huawei mounts to Dr. Bambos's '726 opinions is that Dr. Bambos

     applies a "claim construction that reads out [a] claim element"—associating a HARQ process with
24
     the calculated HARQ process ID.  (Mot. at 23.)  The pertinent part of the claim is reproduced below:
25

26        a controller that calculates a HARQ process IDentifier (ID) using the number of
        HARQ processes of the persistent resource allocation, the persistent resource
27        allocation interval information, and time information, and *associating a HARQ*
        *process with the calculated HARQ process ID*.

28   (Dkt. 330-29 ("'726 patent"), claim 11.)  Huawei spends the bulk of its argument advancing its own

1  proposed construction—attempting to read in a limitation that has no support in the claim language.

2  (*See id.* (detailing the disclosure in the '726 patent for almost a full page before asserting that

3  "'associating a HARQ process with the calculated HARQ process ID' requires some sort of

4  deterministic mapping").)   In any event, this has nothing to do with Dr. Bambos's opinions—no

5  specific aspect of Dr. Bambos's opinions is even mentioned in this section—and although Huawei

6  included this proposed construction in its Patent L.R. 4-3 statement (*see* Dkt. 124-3 at 54), its

7  *Daubert* motion is not the proper forum for it to advance a proposed construction of a term it omitted

8  from the list of disputes for this Court to construe.  (*See* Dkt. 124.)

9       Not until page 25 of its motion does Huawei finally identify the particular opinion offered

10  by Dr. Bambos it finds objectionable: "Dr. Bambos takes the position that performing a calculation

11  also satisfies the 'associating' step, without actually showing any association."  (Mot. at 25.)  But

12  the cited paragraph of Dr. Bambos's report was in response to Huawei's proposed construction of a

13  claim term, not just the associating step in isolation.  (*See* Ex. F at 86 (analyzing Huawei's proposed

14  construction of "associating a HARQ process with the calculated HARQ process ID").)  Dr. Bambos

15  thus opined that when the "associating ***term***"—*i.e.*, the entire claim term at issue—"is properly

16  interpreted using its plain and ordinary meaning . . . it would include calculating the ID directly

17  using i, n, and t."  (*Id.* ¶ 265 (emphasis added).)  This is a logical conclusion, as the claim term at

18  issue is "associating a HARQ process with the calculated HARQ process ID," a component of which

19  is the "calculated HARQ process ID."  Dr. Bambos went on to separately distinguish "associating"

20  from the calculating step: "When the HARQ process ID is used to identify the HARQ process, the

21  HARQ process is associated with the HARQ process ID.  This is consistent with the plain and

22  ordinary meaning of 'associating.'"  (*Id.*)  Dr. Bambos gave full effect to the "associating" step as

23  an independent claim limitation, thus his opinions should not be excluded.

24       The only other basis Huawei offers to exclude Dr. Bambos's opinions on this issue is the

25  sufficiency of the evidence he relied on.  ██████████████████████████████

26  ████████████████████████████████████████████  Such a

27  challenge not only goes entirely to the weight of Dr. Bambos's testimony, it neglects to mention a

28  crucial piece of evidence Dr. Bambos relied on: the LTE standard, which explicitly states that

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1  "[e]ach HARQ process is associated with a HARQ process identifier."  (Ex. F at 242.)  Because

2  Huawei does not even address this evidence in its motion, its *Daubert* challenge with respect to Dr.

3  Bambos's '726 patent opinions fails.

4      **H.      Dr. Prucnal's Opinions On Samsung's '105 Patent Are Proper Technical Opinions Based On The Plain And Ordinary Meaning Of Claim Terms**

5

6          Huawei has not identified any valid basis for excluding Dr. Prucnal's infringement opinions.

7  Huawei seems to imply that Dr. Prucnal applied an incorrect construction of the claims, but that is

8  false because there has been no construction of any '105 patent claim terms.  Thus, the claims are

9  given their plain and ordinary meaning,[7] which is precisely what Dr. Prucnal applied in rendering

10  his opinions.  (Ex. J ¶¶ 175-79.)   To the extent Huawei's arguments are based on its own

11  interpretation of the plain meaning of the claims, then that is not a valid basis to exclude Dr.

12  Prucnal's opinions because a dispute over whether Dr. Prucnal's opinions prove infringement under

13  the plain and ordinary meaning of the claims goes to the "correctness" of his conclusions, not his

14  methodology.  *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1313 (Fed. Cir. 2014) ("In *Daubert*, . .

15  . the focus 'must be solely on principles and methodology, not on the conclusions that they

16  generate.'"); *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995) ("[T]he test

17  under *Daubert* is not the correctness of the expert's conclusions, but the soundness of his

18  methodology.").  Indeed, this Court has previously denied motions to exclude expert opinions based

19  on an argument that the expert did not apply the plain and ordinary meaning of claim terms.  In

20  *Fujifilm Corp. v. Motorola Mobility LLC*, the Court explained that such arguments are "not a proper

21  basis for striking" and represent "an improper second summary judgment motion."  No. 12-cv-

22  03587-WHO, 2015 WL 1265009, at *6 (N.D. Cal. Mar. 19, 2015).  Huawei's motion, which seeks

23  to do the same, should be denied on that basis alone.

24          Huawei's motion also suffers from faulty methodology and should be denied on the merits.

25

26      [7] There is no obligation to rule on a claim construction argument made for the first time "in summary judgment briefs," let alone *Daubert* briefs.  *Fujifilm Corp. v. Motorola Mobility LLC,* No.

27  12-cv-03587-WHO, 2015 WL 757575, at *5 (N.D. Cal. Feb. 20, 2015).  The question of infringement thus rests on "the plain and ordinary meaning of the term."  *Apple, Inc. v. Samsung*

28  *Elecs. Co., Ltd.*, No. 12-cv-00630-LHK, 2014 WL 252045, at *4-5 (N.D. Cal. Jan. 21, 2014).

1   Specifically, Huawei's argument rests on an incorrect assertion that the asserted claim requires

2   "*[b]oth* sets of 'subcarriers' are input to the IFT" and the claimed mapping steps "must occur such

3   that *both* sets of subcarriers are available for the *same* IFT operation." (Mot. at 10-11 (emphasis

4   added).)  Huawei's argument, however, is contradicted by the plain language of the claim, which

5   states that an IFT need only be performed "*on at least one of*" the two sets of subcarriers—not both:

> [a] mapping the FT pre-coded symbols to a first set of subcarriers;
> [b] mapping the non-FT pre-coded modulation control symbols to a
> second set of subcarriers; [and]
> [c] performing an inverse Fourier Transform (IFT) operation *on at
> least one of* (i) the FT pre-coded symbols based on the first set of
> subcarriers and (ii) the non-FT pre-coded modulation control symbols
> based on the second set of subcarriers to generate an output signal; ...

10
11   (Dkt. 91-20 ("'105 patent") at 13:52-60 (emphasis added); *see also* Ex. K at 142:20-143:12.)  Nor

12   is there any requirement in the claims or specification that the *same* IFT operation be performed on

13   *both* sets of subcarriers.  To the contrary, the '105 patent discloses embodiments in which the two

14   sets can undergo different IFT operations at different times.  (*See, e.g.*, '105 patent at Figs. 9-10,

15   9:29-45 (describing an embodiment in which IFT operations can be performed on data symbols and

16   control symbols at alternating times based on the operation of a switch); Ex. K at 142:20-144:1.)

17       Thus Huawei seeks to exclude Dr. Prucnal's opinions based on its own claim interpretation

18   that improperly imports limitations into the claim and reads out embodiments disclosed in the

19   specification.  It is well-settled, however, that claim terms should not be interpreted "in a way that

20   excludes embodiments disclosed in the specification" (*Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1276

21   (Fed. Cir. 2008)) or that imports extraneous limitations (*Williamson v. Citrix Online, LLC*, 792 F.3d

22   1339, 1346-47 (Fed. Cir. 2015)).  Huawei's Motion asks the Court to do both—based on nothing

23   more than its own attorney argument (*see* Mot. at 10-11[8])—and should therefore be denied.

24       Moreover, Huawei's motion is another attempt to interject its improper non-infringement

25   arguments raised for the first time in rebuttal expert reports, which Samsung has moved to strike as

26   untimely.  (*See* Dkt. 337 at 14-16 (explaining that Huawei's argument "that claim 28 is purportedly

27
28       [8] Although Huawei cites paragraph 4 of its Mahon declaration, that paragraph relates to the LTE
     standard, not the language of the asserted claims of the '105 patent.  (*See* Dkt. 328-44 at ¶ 4.)

1   not infringed because ███████████████████████████████████████

2   ██████████████████████████████████████████" should be stricken).)

3   Throughout discovery in this case, Huawei never raised its argument that the claim language

4   requires the *same* IFT operation to be performed on *both* sets of subcarriers.  (*See* Dkt. 124-3 at 26-

5   39; Ex. L at 62-63, 73-78 (failing to disclose the "same IFT on both sets of subcarriers" theory).)

6   Accordingly, Huawei cannot now use *Daubert* as a vehicle to effectively win summary judgment of

7   non-infringement on a theory that was never raised throughout discovery.  *See, e.g.*, *Fujifilm*, 2015

8   WL 1265009, at *6.

**I.      Dr. Valenti's Opinions On Samsung's '825 Patent Are Proper Technical**
**Opinions Based On The Plain And Ordinary Meaning Of Claim Terms**

10          As an initial matter, Huawei's motion should be denied because, as explained in Section II.A

11   above, Huawei's disagreement with Dr. Valenti's application of the '825 patent claims' plain and

12   ordinary meaning, and ultimate infringement conclusion, does not rise to an allegation of unsound

13   methodology and is therefor an improper basis for a *Daubert* motion.  *See City of Pomona,* 750 F.3d

14   at 1044; *see also Apple*, 757 F.3d at 1313.

15          More particularly, Huawei alleges that Dr. Valenti's opinion "is based on a previously

16   undisclosed and legally incorrect construction."  (Mot. at 20.)  This is false: Dr. Valenti simply

17   offers infringement opinions based on his understanding of the plain and ordinary meaning of the

18   term "without checking a downlink channel."  (*See, e.g.*, Ex. M ¶¶ 182-186, 458-460; *Apple, Inc. v.*

19   *Samsung Elecs. Co., Ltd.*, No. 12-cv-00630-LHK, 2014 WL 252045, at *4-5 (N.D. Cal. Jan. 21,

20   2014) (noting that plain and ordinary meaning controls absent construction).)  In fact, Dr. Valenti's

21   opening report is explicit—no construction is necessary for this term.  (Ex. M ¶186.)  Rather,

22   Huawei's argument boils down to its disagreement with the plain and ordinary meaning as

23   advocated by Dr. Valenti.  (Mot. at 20-22.)  This Court has denied *Daubert* motions based on the

24   same argument, *i.e.*, that the expert did not properly apply the plain and ordinary meaning of claim

25   terms.  *See Fujifilm*, 2015 WL 1265009, at *6.

26          Moreover, the very premise of Huawei's motion is unfounded: neither Samsung nor Dr.

27   Valenti set forth the position that "without checking a downlink channel" should be construed as

28

1  "without checking a downlink channel <u>for a specific message</u>," as Huawei contends.  (Dkt. 124 at

2  61 ("Samsung's Proposed Construction: No construction necessary"); Ex. M ¶¶ 182-86; *see* Mot. at

3  20.)  Rather, Dr. Valenti simply testified that how the monitored PDCCH is ***a different channel***

4  than the paging PDCCH.  As he stated (and which Huawei omits from its selective citation to his

5  testimony): "there are different PDCCHs . . . there's the one that's related to random access. And

6  that's the one that would be monitored for. There are other ones. For instance, paging, downlink

7  control channel, . . . the claim is just describing monitoring of random access response. And it – it's

8  not discussing what's going on outside the context of the random access procedure."  (Ex. N at

9  90:10-24.)  As Dr. Valenti further testified, each of these different channels carries different types

10 of messages.  Of particular relevance to the claims, the channel that the UE monitors (or does not

11 monitor, as relevant) is the random access PDCCH.  Thus, to monitor the random access PDCCH,

12 the UE must look for the messages that the random access PDCCH carries (Random Access

13 Response messages).  (*See, e.g.*, *id.*; Ex. M ¶¶ 470, 478, 483.)  Conversely, not monitoring the

14 random access PDCCH requires not looking for the messages that the random access PDCCH

15 carries.  (Ex. N at 128:15-129:22 ("[I]t wouldn't make sense to receive a [random access] response

16 before [the random access response window].”); Ex. M ¶¶ 470, 478, 483.)  Thus, Huawei's assertion

17 that Dr. Valenti is somehow importing some additional limitation into the claims that is inconsistent

18 with the plain and ordinary meaning is without merit.  (*See* Mot. at 21.)

19       The sections in Dr. Valenti's report to which Huawei cites in its motion (Mot. at 20-22) are

20 fully consistent with his testimony, and likewise apply the plain and ordinary meaning.  In describing

21 how the UE operates "without checking a downlink channel," Dr. Valenti simply explains that the

22 UE does not monitor the relevant downlink PDCCH during the predetermined delay duration, but

23 then starts monitoring that channel after that duration.  (*See, e.g.*, Ex. M ¶¶ 470, 478, 483.)  For

24 example, ███████████████████████████████████████████████████

25 ██████████████████████████████████████████████████████████

26 ██████████████████████████████████████████████████████████

27 ███████████████████████████████████████████  (*Id.* ¶¶ 470, 478.)

28 ██████████████████████████████████████████████████████████

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ████████████████████████████████████████████████ (Ex. M

¶ 483.)   Accordingly, neither his testimony nor expert report are based on some clandestine or improper construction, as Huawei claims.[9]

Dr. Valenti's construction (and Samsung's position) regarding the phrase "without checking a downlink channel" has been consistent since the inception of this case—the plain and ordinary meaning is the proper construction of this term.  Huawei cannot now rely on a *Daubert* motion based on a claim construction never set forth by Dr. Valenti to preclude him from opining on infringement according to the plain and ordinary meaning of the recited term.  Accordingly, Huawei's *Daubert* motion should be denied.

### III.   CONCLUSION

For the foregoing reasons, Samsung respectfully asks the Court to deny Huawei's *Daubert* Motion on Technical Issues.

---

[9] Huawei's focus in its motion on the alleged construction of "without checking a downlink channel" is, in fact, nothing more than a sideshow.  Rather, the real dispute is Huawei's unwillingness to accept that the random access PDCCH and paging PDCCH are two separate channels, and accordingly, any checking or not checking of the paging PDCCH is irrelevant to the '825 patent claims. (*See, e.g.*, Ex. N at 90:6-24  ("[t]hat determination is kind of outside the scope of . . . the claim here").)  For this reason, Huawei's reliance on *Imaginal Systematic, LLC v. Leggett & Platt, Inc.*, 805 F.3d 1102, 1110 (Fed. Cir. 2015) and *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308 (Fed. Cir. 1999) is inapposite, as neither Samsung nor Dr. Valenti take the position that the "without checking a downlink channel limitation" of the '825 patent should be construed in a way that adds to or broadens that limitation.  (*See* Mot. at 2.)  Moreover, in *Imaginal*, the Court simply held that it was improper to import a limitation from the specification into the claim to *narrow* a negative limitation—which bears no relation to the alleged construction of "without checking a downlink channel" here.  *Imaginal*, 805 F.3d at 1110.  Similarly, in *Al-Site*, the Court merely held that, where a limitation was added in prosecution in a parent patent to overcome prior art, such a limitation is "therefore not relevant to determining the scope of the claims of the later issued patents."  *Al-Site*, 174 F. 3d at 132-33. Not only does Huawei fail to show (because it cannot) that the limitation in the parent of the '825 patent on which Huawei relies—*i.e.*, "without checking a downlink channel to determine whether a downlink signal responding to the uplink signal is received" was "added to gain allowance of [the parent] patent," but even assuming it were, this would simply mean the limitation in the parent patent is not relevant to construing the '825 patent claims.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

1   DATED: July 17, 2018                Respectfully submitted,

2                                       QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP
3

4                              By       */s/ Victoria F. Maroulis*
                                        Charles K. Verhoeven
5                                       Kevin P.B. Johnson
                                        Victoria F. Maroulis
6                                       David A. Perlson

7                                       *Attorneys for Samsung Electronics Co., Ltd.,*
8                                       *Samsung Electronics America, Inc., and*
                                        *Samsung Research America, Inc.*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SAMSUNG'S OPPOSITION TO HUAWEI'S DAUBERT MOTION ON TECHNICAL ISSUES