REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Attorneys for Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Research America, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

HUAWEI TECHNOLOGIES CO., LTD., et al.,

Plaintiffs,

v.

SAMSUNG ELECTRONICS CO., LTD., et al.,

Defendants.

---

SAMSUNG ELECTRONICS CO., LTD. & SAMSUNG ELECTRONICS AMERICA, INC.

Counterclaim-Plaintiffs,

v.

HUAWEI TECHNOLOGIES CO., LTD., HUAWEI DEVICE USA, INC., HUAWEI TECHNOLOGIES USA, INC., & HISILICON TECHNOLOGIES CO., LTD.

Counterclaim-Defendants.

CASE NO. 16-cv-02787-WHO

**REPLY IN SUPPORT OF SAMSUNG'S MOTION FOR SUMMARY JUDGMENT**

**Hearing Date: August 8, 2018**
**Time: 2:00 p.m.**
**Place: Courtroom 2, 17th Floor**
**Judge: Hon. William H. Orrick**

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................ 1

II. ARGUMENT ........................................ 1

A. The Accused Samsung Products Do Not Infringe the "Group Number k" Limitation of the '239 Patent ........................................ 1

1. Huawei Varies the Claimed "Group Number k" in Its Infringement Analysis, Thereby Violating the Court's Claim Construction Order ........................................ 1

2. The Accused Products Cannot Infringe Using "u+1" as the Claimed "Group Number k" ........................................ 2

B. The Asserted '239 Claims Are Either Invalid as Indefinite Or Not Infringed ........................................ 2

1. The Lack of a Clear Antecedent for "The Sequences" in the Asserted Claims Renders Them Invalid as Indefinite ........................................ 2

2. In the Alternative, the Accused Samsung Products Do Not Infringe Because "The Sequences" Are Not Zadoff-Chu or Gauss Sequences ........................................ 4

C. The Asserted Claims of the '239 Patent Contain Unpatentable Subject Matter ........................................ 5

1. Huawei Presents No Basis to Challenge the Court's Holding That the Asserted '239 Claims Are Directed to an Abstract Idea ........................................ 5

2. The Asserted Claims of the '239 Patent Contain No Inventive Step ........................................ 7

D. Huawei Fails to Identify Any Evidence That the Accused Samsung Products Are Even Capable of Infringing the Asserted '613 Claims ........................................ 9

1. Test Results Do Not Raise a Genuine Issue of Material Fact ........................................ 9

2. Huawei's Remaining Evidence—Marketing Documents and Press Releases—Do Not Raise a Genuine Issue of Material Fact ........................................ 11

3. Samsung's Noninfringement Arguments Apply Equally to Claim 5 ........................................ 12

E. Huawei Failed to Identify Any Legally Cognizable Reduction to Practice for the Motorola Draft, Which Does Not Qualify as Prior Art as a Matter Of Law ........................................ 13

F. There is No Inequitable Conduct With Respect to Samsung's '105 Patent ........................................ 15

III. CONCLUSION ........................................ 15

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# TABLE OF AUTHORITIES

Page

## Cases

*Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354 (Fed. Cir. 2018) ... 7

*Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) ... 7, 8, 9

*Cooper v. Goldfarb*, 154 F.3d 1321 (Fed. Cir. 1998) ... 15

*Diamond v. Diehr*, 450 U.S. 175 (1981) ... 7, 8, 9

*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016) ... 7

*Fox Group, Inc. v. Cree, Inc.*, 700 F.3d 1300 (Fed. Cir. 2012) ... 15

*Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370 (Fed. Cir. 2004) ... 4

*Hahn v. Wong*, 892 F.2d 1028 (Fed. Cir. 1989) ... 15

*Medichem, SA v. Rolabo, SL*, 437 F.3d 1157 (Fed. Cir. 2006) ... 15

*Murray v. Pennsylvania Mfr. Ass'n Ins. Co.*, No. CV 17-2282, 2018 WL 1508759 (E.D. Pa. Mar. 27, 2018) ... 14

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014) ... 3

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355 (Fed. Cir. 2006) ... 14

*Opticurrent, LLC v. Power Integrations, Inc.*, No. 17-CV-03597-WHO, 2018 WL 1730326 (N.D. Cal. Apr. 10, 2018) ... 15

*Parker v. Flook*, 437 U.S. 584 (1978) ... 7, 8, 9

*Snyder v. Collura*, 812 F.3d 46 (1st Cir. 2016) ... 14

*Thales Visionix Inc. v. United States*, 850 F.3d 1343 (Fed. Cir. 2017) ... 6, 7

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

*Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*, 278 F.R.D. 505 (N.D. Cal. 2011) ........ 14

*Visual Memory LLC v. Nvidia Corp.*, 867 F.3d 1253 (Fed. Cir. 2017) ........ 7

**Additional Authorities**

35 U.S.C. § 102(g) ........ 13

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# I. INTRODUCTION

In its Motion, Samsung raised several issues that are ripe for summary judgment. Huawei's Opposition fails to present any arguments that would generate a genuine issue of material fact.

# II. ARGUMENT

## A. The Accused Samsung Products Do Not Infringe the "Group Number k" Limitation of the '239 Patent

### 1. Huawei Varies the Claimed "Group Number k" in Its Infringement Analysis, Thereby Violating the Court's Claim Construction Order

In its Motion, Samsung demonstrated that there is no genuine issue of material fact as to infringement of the '239 patent because Huawei's disclosed infringement theory is that the alleged "group number k" was "u" for the "obtain[ing]" limitation, but then "u+1" for the remaining limitations. (Mot., 2-4.) Huawei attempts to avoid summary judgment by now arguing that its expert Dr. Veeravalli consistently asserts that the claimed "group number k" is "u+1." (*See* Opp., 2-3.) But in paragraph 252 of the Veeravalli '239 Infringement Report, Dr. Veeravalli explicitly states in the section on the limitation "obtain[ing] a group number k of a sequence group allocated by the system" that: "[t]he Infringing Samsung Products perform steps required by the LTE standard to ***obtain a value for "u,"*** which is allocated by the system as described in Section 5.5.1.3 (Group hopping)." (Dkt. 333-9 ¶ 252.) Dr. Veeravalli then proceeds to explain how the Accused Samsung Products obtain a value "u" allocated by the system by quoting a portion of the LTE standard that defines "[t]he sequence-group number u" in terms of other parameters received from the network. (*Id.* ("The sequence-group number $u$ in slot $n_s$ is defined by a group hopping pattern $f_{gh}(n_s)$ and a sequence-shift pattern $f_{ss}$ according to $u = (f_{gh}(n_s) + f_{ss}) mod\ 30$ . . . Sequence-group hopping can be enabled or disabled . . . ***by higher layers***. . . . The sequence-shift pattern . . . is configured ***by higher layers***.") (emphasis added).) Thus, the UE calculates "u" from multiple parameters received from the "higher layers" (*i.e.*, the network). (*Id.*) Because the only values "allocated" by the system cited by Dr. Veeravalli are the values used to compute the "sequence-group number u," the value "u" must be the claimed "group number k" that is obtained by the UE. So while Huawei may now assert that its expert points to "u+1" as opposed to "u" for the "obtain[ing]" limitation, Dr. Veeravalli's '239 Infringement Report says otherwise.

**2. The Accused Products Cannot Infringe Using "u+1" as the Claimed "Group Number k"**

Even if the Court agrees with Huawei that Dr. Veeravalli consistently construes the claimed "group number k" as "u+1," the Samsung Accused Products cannot infringe the "obtain[ing] a group number k" limitation for a different reason. The claims require "obtain[ing] . . . a group number k of a sequence group allocated by the system." ('239 patent at 25:3-5 (emphasis added), 26:17-18.) Huawei presents no evidence that "u+1" is a value "allocated by the system" that the UE obtains. Nowhere in the Veeravalli '239 Infringement Report does Dr. Veeravalli contend that "u+1" is allocated by the system. (*Cf.* Dkt. 333-9 ¶ 252 (alleging that the Accused Samsung Products "obtain a value for '***u***,' which is allocated by the system") (emphasis added).)

Nor can he. The only "group number" described in the portion of the LTE standard cited by Dr. Veeravalli is the "sequence-group number u." (Dkt. 333-9 (Veeravalli '239 Infringement Report) ¶ 252.) By adding 1 to the defined "u" value, the UE transforms "u" from something that is derived from parameters allocated by the system to something that is neither described as a "group number" (*e.g.*, group number "u") in the LTE standard, nor "obtained" by the accused products from the network. (*Id.*) Because Dr. Veeravalli has not alleged that the value "u+1" is allocated by the system (and because it is not, in fact, allocated by the system), the Accused Samsung Products cannot infringe the asserted claims of the '239 patent.

Huawei's doctrine of equivalents argument cannot save its infringement case. (Opp., 3.) As explained in Samsung's Motion to Strike and the Reply in support thereof filed concurrently with this Reply, the doctrine of equivalents argument should be stricken from Dr. Veeravalli's '239 Infringement Report because Huawei did not disclose reliance on doctrine of equivalents for the "obtaining . . . group number k" limitation in its infringement contentions. (Dkt. 334-2 (Motion to Strike) at 22-24.) For that reason, Huawei's doctrine of equivalents argument should not be considered here. In any event, Huawei's doctrine of equivalents argument fails on the merits as well. (Mot., 3-4; Dkt. 333-5 (Madisetti Decl.) ¶¶ 15-19.)

**B. The Asserted '239 Claims Are Either Invalid as Indefinite Or Not Infringed**

**1. The Lack of a Clear Antecedent for "The Sequences" in the Asserted Claims Renders Them Invalid as Indefinite**

As detailed in Samsung's Motion, the asserted claims are invalid as indefinite because there is no clear antecedent for the limitation in claims 7 and 18 "wherein the sequences correspond to at least one of: Zadoff-Chu sequences and Gauss sequences." (Mot., 4-7.) Instead, the asserted claims recite more than one set of sequences, and it is ambiguous whether "the sequences" refer back to all of those "sequences," or some subset, making it impossible to determine the scope of the claimed invention with reasonable certainty and rendering the asserted claims indefinite.

Huawei first responds that there is no ambiguity because "the sequences" in claim elements [6E] and [17E] allegedly refer back to "corresponding sequences" in claim elements [6D] and [17D]. (*Id.* at 3-5.) Huawei next asserts that "[t]he claims then refer back to each sequence using different terms." (Opp., 5.) But Huawei misquotes the claim language in making this argument. Specifically, elements [6C] and [17C] do not refer back to the selected "n sequences" first recited in elements [6B] and [17B] as "the 'sequences in the candidate sequence collection'" as Huawei contends. (*Id.*) Rather, those elements merely refer to "***a length*** of ***a*** sequence in the candidate sequence collection." In fact, the term "sequences in the candidate sequence collection" does not appear at all in the asserted claims. Accordingly, Huawei is incorrect when it states that "*corresponding sequences* . . . is the only remaining sequence without another name used to refer back to it." (*Id.*)

Huawei's assertion that the "corresponding sequences" in claim elements [6D] and [17D] "immediately precedes" "the sequences" in claim elements [6E] and [17E] is also incorrect. (*See id.*) In actuality, "the sequences in the formed sub-group" from claim elements [6D] and [17D] is located between "corresponding sequences" in claim elements [6D] and [17D] and "the sequences" in claim elements [6E] and [17E]. ('239 patent at 25:19-20, 26:30-31.) So based on Huawei's own logic about the importance of an "immediately preceding" possible antecedent basis, it is equally plausible that the drafter intended for "the sequences" to refer back to "the sequences in the formed sub-group." This is just the type of confusion that shows indefiniteness inherent in the asserted claims. *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014) ("[W]e read § 112, ¶ 2 to require that a patent's claims . . . inform those skilled in the art about the scope of the invention ***with reasonable certainty***.") (emphasis added).

Huawei also does not support its argument that "the sequences" in dependent claims 7 and 18 must refer back to the same set of sequences as "the sequences" in claim elements [6E] and [17E]. (Opp., 5.) It just repeats its flawed argument discussed above that the asserted claims refer back to each of the three sets of sequences using different terms. (*See id.*) Here too, Huawei does not explain why "the sequences" in the dependent claims could not refer back to "the sequences in the formed sub-group" in claim elements [6D] and [17D] or any of the preceding "sequences." *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1377 (Fed. Cir. 2004) ("[T]he same terms appearing in different portions of the claims should be given the same meaning unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims.").

Huawei also fails to substantively rebut Dr. Veeravalli's admission that "the sequences" in asserted claim 7 could refer to any one of three equally likely possibilities: "[t]he generated corresponding sequences **<u>or</u>** the communicated corresponding sequences **<u>or</u>** the sequences in the subgroup." (Dkt. 333-11 ("Veeravalli Dep. Tr.") at 68:25-69:6 (emphasis added).) Huawei says that Dr. Veeravalli "was referring not to three different sequences but to the same sequence in three different scenarios." (*See* Opp., 5.) Under Huawei's interpretation of Dr. Veeravalli's testimony, each claimed set of "sequences" (of which there are three) thus has multiple different usages or "scenarios"—which only serves to compound the confusion. (*See id.*) The number of possibilities as to what "the sequences" in asserted dependent claims 7 and 18 could be referring to just continues to grow. Huawei also alleges that Samsung somehow "misuses" Dr. Veeravalli's testimony as to his understanding of the asserted claims to "make unclear the clear recitation in the claim." (*Id.* at 6.) Not so. Dr. Veeravalli's testimony serves to confirm the lack of clarity in the asserted claims. Accordingly, the Court should find the asserted '239 claims invalid as indefinite.

**2. In the Alternative, the Accused Samsung Products Do Not Infringe Because "The Sequences" Are Not Zadoff-Chu or Gauss Sequences**

As explained in Samsung's Opposition to Huawei's *Daubert* Motion on Technical Issues, the plain and ordinary meaning of the asserted claims of the '239 patent requires that "the sequences" in asserted claims 7 and 18 must be at least equivalent to either Zadoff-Chu or Gauss sequences.

(Dkt. 356 at 12-14.) The claim language states that "the sequences correspond to at least one of: Zadoff-Chu sequences and Gauss sequences." ('239 patent at 25:24-26, 26:35-36.) Huawei does not contend that "the sequences" in the Accused Samsung Products for this limitation are themselves actually Zadoff-Chu or Gauss sequences. (*See id.*) Instead, Huawei contends that cyclically extending a Zadoff-Chu sequence results in a sequence that might "correspond" to a Zadoff Chu sequence because it "comprise[s] a Zadoff-Chu sequence plus a repetition of as much of that sequence as is necessary to fill out the sequence." (Opp., 6-7.)

But "corresponding" involves more than just being "related to" a particular object. Merriam-Webster defines "correspond" as "to be ***in conformity or agreement***," "to compare closely: ***match***," or "to be ***equivalent*** or parallel." (Dkt. 356-6 (emphasis added).) The dictionary.com definition of "correspond" cited by Huawei is functionally equivalent to the Merriam-Webster definition. (*See* Dkt. 352-3.) It defines "correspond" as "to be ***in agreement or conformity***" and as "***equivalent*** in function, position, amount, etc." (*Id.* (emphasis added).) Again, "correspond" requires at least an equivalence. Indeed, Huawei provides no evidence that the use a cyclic extension to modify a root Zadoff-Chu sequence results in a sequence that is equivalent to a Zadoff-Chu sequence. Samsung's expert, on the other hand, offers unrebutted evidence that the extended sequences are in fact ***not*** Zadoff-Chu sequences, as Zadoff-Chu sequences are defined in Formula (1) in the '239 patent. (*See* Dkt. 356-4 ¶¶ 92-94; Opp. 6-7 (failing to even allege the extended sequences meet this definition).)

In any event, Huawei's proposed interpretation of "correspond" that it need only be similar would render the asserted claims hopelessly vague and ambiguous. How similar (or related) to Zadoff-Chu sequences must the claimed sequences be in order to infringe? Accordingly, if the Court does not find the asserted claims of the '239 patent invalid as indefinite, it should, in the alternative, find that the Samsung Accused Products do not infringe the asserted claims.

### C. The Asserted Claims of the '239 Patent Contain Unpatentable Subject Matter

#### 1. Huawei Presents No Basis to Challenge the Court's Holding That the Asserted '239 Claims Are Directed to an Abstract Idea

The Court has held that the asserted claims of the '239 patent are directed to an abstract idea under *Alice* step one. (Dkt. 103 at 17.) Huawei asks the Court to change its holding based on "a

fuller record" and "Federal Circuit precedent since the ruling." (Opp., 8.) On this issue however, the record evidence that Huawei points to and the Federal Circuit cases that Huawei cites reveals nothing that justifies a different result than the Court's previous conclusion.

Huawei points to the unsupported opinions of its expert Dr. Veeravalli as the only part of the "record" that did not exist during the briefing on Samsung's Motion to Dismiss (Dkt. 39). (Opp., 9.; Dkt. 352-85 ("Veeravalli Declaration").) But the Veeravalli Declaration actually supports the Court's holding. Paragraph 12 from the Veeravalli Declaration states that the asserted claims "recite steps for creating a sub-group of sequences, which the inventors determined have a low correlation," and are therefore "directed to . . . defining subgroups in terms of formulas." This is nothing more than a lengthier restatement of what the court adopted as the abstract idea of the asserted claims. (*Compare* Veeravalli Declaration ¶ 12, *with* Dkt. 103 at 17 ("a formula for dividing numerical sequences into non-highly correlated groups").) The other paragraph that Huawei cites from the Veeravalli Declaration only contains opinions about the *results* of implementing the asserted claims, not about the actual language of those claims. (*See* Veeravalli Declaration ¶ 11 ("The claimed invention therefore helps to reduce interference at the base station . . . and increases the base station's ability to distinguish UEs in its cell.").) Accordingly, the Veeravalli Declaration actually supports the Court's holding and does not create a disputed issue of fact.

The Federal Circuit cases cited by Huawei that were issued after the Court's decision on Samsung's Motion to Dismiss also do not warrant a change in the Court's holding. First, Huawei never explains which of those cases (if any) changed the analysis under § 101 and how the analysis was changed. (Opp., 8-11.) Second, those cases are either inapposite or did not change the existing framework for analyzing claims under § 101. For example, Huawei cites *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1348-49 (Fed. Cir. 2017), for the proposition that "the presence of a mathematical formula in a claim does not make it abstract." (Opp., 9.) But that was never Samsung's argument, nor was it part of the Court's prior conclusion. (Dkt. 103 at 17 (noting Huawei's argument that "including math does not render claims patent ineligible" and holding that the '239 claims are directed to an abstract idea on other grounds).) Instead, the abstract idea contained in the asserted claims—creating groups of numeric sequences that are not highly

correlated with each other—is revealed by the claim language and the specification of the ’239 patent, not by the mere presence of a mathematical formula. (Dkt. 103 at 17; Mot., 11-12.)

Additionally, the patent claims at issue in *Thales Visionix* differ from the asserted claims here in that they did not explicitly include a mathematical formula and only implicitly invoked standard physics formulas for determining position. 850 F.3d at 1345-46, 1348-49. In contrast, the asserted claims of the ’239 patent explicitly include mathematical formulas and those formulas are the allegedly novel portions of the claims. (*See* Mot., 11-12.)[1] The portions of the other two recent Federal Circuit cases cited by Huawei do not change existing precedent either. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1359 (Fed. Cir. 2018) (Moore, J., ***concurring*** in the denial of the petition for rehearing *en banc*); *Visual Memory LLC v. Nvidia Corp.*, 867 F.3d 1253, 1258 (Fed. Cir. 2017) (merely restating the test set forth in *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016)).

**2. The Asserted Claims of the ’239 Patent Contain No Inventive Step**

As detailed in Samsung’s Motion, inventor Bingyu Qu admitted that he did not invent the generation of reference signal sequences. (Dkt. 333-18 at 104:9-11.) Samsung also pointed out that Dr. Veeravalli does not contest the opinion of Dr. Madisetti that all of the non-mathematical equation elements of the asserted claims are disclosed by the prior art. (Dkt. 333-13 ¶ 142.) Huawei ignores this evidence in its Opposition.

Instead, Huawei disputes Samsung’s application of the <u>legal</u> principles from *Parker v. Flook*, 437 U.S. 584 (1978). *Diamond v. Diehr*, 450 U.S. 175 (1981), did not reverse *Flook*, contrary to what Huawei suggests. At no point in *Diehr* did the Supreme Court say that it was reversing any aspect of its holding from a mere three years earlier in *Flook*. *See, e.g.*, 450 U.S. at 185 (“Our recent holdings in *Gottschalk v. Benson* . . . and *Parker v. Flook* . . . both of which are computer-related, stand for no more than these long-established principles.”); *see also Alice Corp. Pty. v. CLS Bank*

---

[1] Huawei’s complaint that Samsung’s Motion “cites nothing but the claims and the specification” as part of the *Alice* step one analysis makes no sense. (Opp., 10.) The very case that Huawei cites, *Thales Visionix*, focuses exclusively on the claims and specification of the patent at issue in conducting the *Alice* step one analysis. 850 F.3d at 1348-49.

*Int'l*, 134 S. Ct. 2347, 2358 (2014) (describing the relationship between *Flook* and *Diehr*). Instead, the Supreme Court in *Diehr* dealt with an entirely different set of claims than in *Flook*, which led to a different result. The claims in *Diehr* involved a process for curing synthetic rubber that "employ[ed] a well-known mathematical equation" (the Arrhenius equation). *Id.* at 187. The Supreme Court explained that the claims at issue presented a "more efficient" process that was "created with the aid of knowledge of scientific truth," while not claiming that scientific truth in isolation. *Id.* at 188. Indeed, a review of the claims at issue in *Diehr* reveals that only a small portion of each claim recited the Arrhenius equation, while the remainder of each claim described the more efficient process by which synthetic rubber could be cured. *See id.* at 179 n.5. In essence, the Arrhenius equation was not the focus of the claims at issue in *Diehr* but was rather a tool used in the implementation of the useful process described in those claims. *See id.*

The claim at issue in *Flook* was much different. It was a method claim almost entirely devoted to a mathematical equation for an alarm limit. *See* 437 U.S. at 596-97. Indeed, it is difficult to select portions of the claim in *Flook* that are <u>not</u> related to the claimed mathematical formula. *See id.* The last limitation—"[a]djusting said alarm limit to said updated alarm limit value"—is arguably the only such limitation, aside from the limitation of the claim to the technological environment of "the catalytic conversion of hydrocarbons." *See id.* The Supreme Court focused on the process in the claim as a whole and held that the limitation of the process to a particular technological environment and the addition of conventional post-solution activity was insufficient to take the claim out of the realm of unpatentable subject matter. *Id.* at 589-90; *see also Diehr*, 450 U.S. at 191 ("A mathematical formula as such is not accorded the protection of our patent laws, . . . and this principle cannot be circumvented by attempting to limit the use of the formula to a particular technological environment.") (citing *Flook*).

The asserted claims of the '239 patent are much closer to the algorithm-focused claim in *Flook* than the process-oriented claims in *Diehr*. As explained in the Motion, only a couple of limitations at the end of those claims are not related to the claimed mathematical formula. (Mot., 13 (describing the limitations of "generating . . . sequences . . ." and "communicating . . . according to the sequences . . .").) Those basic steps of generating the sequences and sending them to the base

station closely track the "[a]djusting said alarm limit" limitation from the claim at issue in *Flook*. Both involve taking the output of the mathematical formula and using it in a process described in perfunctory terms. Those final simple steps from the asserted '239 claims are a far cry from the complex, innovative process described in the claims in *Diehr*. The '239 claims make the mathematical formula the centerpiece, whereas the claims in *Diehr* focus on the process, using the mathematical formula as just one limited tool. Accordingly, the asserted '239 claims contain no inventive step under *Alice* step two and are therefore directed to unpatentable subject matter.[2]

### D. Huawei Fails to Identify Any Evidence That the Accused Samsung Products Are Even Capable of Infringing the Asserted '613 Claims

In its Motion, Samsung demonstrated that there is no genuine issues of material fact as to infringement of the '613 patent, because [REDACTED]—two requirements that Huawei does not dispute an Accused Samsung Product needs to even be capable of receiving the claimed service. (*Id.*) Huawei's evidence fails to present any genuine issues of material fact—Huawei relies on test results that [REDACTED] and marketing documents on eMBMS. (*See* Opp., 14-17.) This evidence does not contradict the overwhelming evidence presented in Samsung's Motion that the Accused Samsung Products do not receive the claimed "service." (*See* Mot., 15-16.)

#### 1. Test Results Do Not Raise a Genuine Issue of Material Fact

Huawei's Opposition focuses heavily on testing results of the Accused Samsung Products. (Opp., 14-17.) [REDACTED] (*See, e.g.*, Dkt. 352-

---

[2] The fact that the asserted claims do not preempt the use of the algorithm in all technological contexts does not rehabilitate them under § 101. *Diehr*, 450 U.S. at 192 n.14 ("We rejected in *Flook* the argument that because all possible uses of the mathematical formula were not pre-empted, the claim should be eligible for patent protection. . . . A mathematical formula does not suddenly become patentable subject matter simply by having the applicant acquiesce to limiting the reach of the patent for the formula to a particular technological use.").

9.) Huawei does not, and cannot, contend that its ’613 patent reads on every functionality of eMBMS. (*See* Opp., 14-17; ’613 patent at claims 1, 5.) In fact, MBMS existed prior to the ’613 patent. (’613 patent at 1:31-53.) Huawei fails to point to any evidence that the test results on which it relies so heavily to support its infringement allegations [redacted]. (*See id.*)

[redacted] These test results [redacted] “receiving, by a user equipment (UE), a service sent by a base station, the service being sent in one or more subframes that are designated as specific subframes, the specific subframes being selected from one or more radio frames that are designated as specific radio frames, the specific radio frames being selected from a time unit.” (*See id.*; ’613 patent at 18:25-30.) Merely showing that [redacted] is not enough on its own to show that the Accused Samsung Products practice the asserted claims. Huawei has the burden to show that each limitation of the asserted claims is met by the Accused Samsung Products. [redacted] are insufficient to show that the Accused Samsung Products infringe the asserted ’613 claims.

In contrast to the [redacted] test results that Huawei points to, Samsung’s Motion cites Samsung testimony, a declaration, and [redacted]. [redacted]

---

[3] [redacted]

1  ████████████████████████████████████████████

2  ████████████████████████████████ (Mot., 16; Dkt. 333-34 ¶ 3; Dkt. 333-36 ¶ 3;

3  Dkt. 333-32 ¶ 2.)  In light of all of this evidence showing that ██████████████████

4  ████████████████████████ testing results cited by Huawei do not create a

5  genuine issue of material fact.

### 2. Huawei's Remaining Evidence—Marketing Documents and Press Releases—Do Not Raise a Genuine Issue of Material Fact

Huawei also cites to what it calls "a plethora of other evidence" that it contends show the Accused Samsung Products receiving the claimed "service." (Opp., 15-16.)  In reality, this "other evidence" does not support any Accused Samsung Product actually receiving an eMBMS transmission. (*See id.*)  Huawei first cites to general statements that Samsung has made about eMBMS in its white papers and press releases. (Opp., 15.)  Huawei can point to no portions of these statements that relate to actual transmissions of eMBMS or any accused product. (*See, e.g.*, Dkt. 352-81 ¶ 263.)  The statement that Huawei cites from industry association GSA actually supports ████████████████████████████████████████████████████████████████████████████████ ████████. (*See id.* ¶ 265; Dkt. 333-32 ¶ 2 (████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████).)  Huawei's statement about Verizon investing in the use of eMBMS to stream video is belied by the fact that Verizon announced just weeks ago that it will be shutting down its go90 application at the end of July. (Ex. A (SAMSUNG-HNDCA-000802567); Ex. B (SAMSUNG-HNDCA-000802569); Ex. C (SAMSUNG-HNDCA-000802577).)  The Verizon go90 application is one of the only two applications that Huawei cites as using eMBMS. (Opp., 16.)  Based on the foregoing, the "plethora of evidence" that Huawei claims to cite actually provides zero evidence of the Accused Samsung

---

[4] ████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

Products receiving the claimed "service." Therefore, this additional evidence does not create a genuine issue of material fact.

**3. Samsung's Noninfringement Arguments Apply Equally to Claim 5**

Huawei alleges that Samsung's Motion does not apply to claim 5, an apparatus claim. (Opp., 18-19.) In so doing, Huawei ignores the Samsung evidence that undisputedly shows that [REDACTED]. (*See* Mot., 15-16.) Samsung engineers have all unequivocally stated that [REDACTED]. (*See* Mot., 15; Dkt. 333-26, 333-28; Dkt. 333-4 ¶ 4.) [REDACTED] the Accused Samsung Products are not "configured to receive a service sent by the base station" as required by asserted claim 5. (*See* '613 patent at 18:61-62.)

In its Opposition, Huawei does not dispute that [REDACTED] Huawei's assumptions regarding testing do not create a genuine issue of material fact in light of [REDACTED].

[REDACTED]

[redacted] Accordingly, Samsung's Motion equally applies to claim 5, an apparatus claim, as it does to claim 1, a method claim.

**E. Huawei Failed to Identify Any Legally Cognizable Reduction to Practice for the Motorola Draft, Which Does Not Qualify as Prior Art as a Matter Of Law**

In its Motion for Summary Judgment, Samsung demonstrated that the Motorola Draft relied on by Huawei and its expert, Dr. Mahon, is not prior art because the patent applications relied upon to show reduction to practice were abandoned. (Mot., 19-20.) As a matter of law, an abandoned application cannot show reduction to practice under 35 U.S.C. § 102(g). (*Id.*) Huawei does not dispute this. Nor do they dispute that the Motorola applications cannot show the requisite reduction to practice under §102(g). Instead, Huawei raises a new theory of reduction to practice not raised in its invalidity contentions or expert reports.

Huawei now alleges the Motorola Draft was somehow reduced to practice in the form of certain "[redacted]." (Opp., 19-20.) Neither Huawei's contentions nor Dr. Mahon's report identified [redacted] as reduction to practice. (Ex. D (Exhibit C-9 to Huawei's First Supplemental Invalidity Contentions); Dkt. 333-38 (Mahon Reb. Rep.) ¶¶ 111-16.) Indeed, in his deposition, Dr. Mahon unambiguously confirmed he was relying on Motorola's provisional patent application as reduction to practice. (Ex. E at 198:7-10 ("Q. And in order to show reduction to practice, you point to the filing of the provisional application, right? A. I am citing to that process, yes."), 199:5-9

(same).) Dr. Mahon also testified that to the extent he referred to [REDACTED] in his report that was limited to diligence, not reduction to practice. (*Id*. at 195:12-16 ("[REDACTED]"), 198:22-199:4.) Thus, it is not surprising that Huawei relies on a declaration from Dr. Mahon generated for purposes of the Opposition rather than what was disclosed in the expert report he served during discovery.

Huawei's reliance on a new theory of invalidity raised for the first time in its Opposition contravenes this District's rules requiring parties to define invalidity theories early in the course of litigation. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1359 (Fed. Cir. 2006). The rules require "a timely showing of good cause" to amend contentions, which in turn "requires a showing of diligence." *Id.* at 1366. Huawei has not even attempted to seek leave to amend its contentions, much less demonstrated good cause to do so. Nor could it. The underlying Motorola evidence has been available for over five months. Huawei's lack of diligence, alone, bars its new theory. *Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*, 278 F.R.D. 505, 509-10 (N.D. Cal. 2011).

The prejudice to Samsung should also not be overlooked. Fact and expert discovery have long passed, the parties have made narrowing elections, and are now moving quickly toward trial. Yet, instead of narrowing issues, Huawei has introduced a new theory that neither Samsung nor its experts has had any opportunity to consider or address. Huawei should not be allowed to present a new theory aimed at fabricating a dispute solely to defeat summary judgment. *See, e.g.*, *Snyder v. Collura*, 812 F.3d 46, 51 (1st Cir. 2016) ("To rule otherwise would be to turn an orderly marshalling of the reasons for and against dismissal of a claim into a game of whack-a-mole, with seriatim summary judgment proceedings not ending until the [moving party] manages to guess every possible legal theory upon which [the non-moving party] might rely to support a claim."); *Murray v. Pennsylvania Mfr. Ass'n Ins. Co.*, No. CV 17-2282, 2018 WL 1508759, at *10 (E.D. Pa. Mar. 27, 2018) (foreclosing "litigation strategy [] akin to a game of whack-a-mole; each time the record evidence foreclosed one theory, Murray popped up with another one"). Thus Huawei's new theory on opposition should be disregarded for this reason alone.

Even if the Court were to entertain Huawei's new theory, it still fails as a matter of law. Actual reduction to practice requires evidence of a process "that met all the [invention] limitations." *Fox Group, Inc. v. Cree, Inc.*, 700 F.3d 1300, 1304 (Fed. Cir. 2012). Yet Huawei has failed to proffer any independent evidence of the process allegedly performed by Motorola. Rather, Huawei cites the testimony of the alleged inventor, Dr. Ghosh, describing the [REDACTED] and [REDACTED]. Thus, Huawei relies solely on the testimony of the alleged prior inventor to corroborate the alleged reduction to practice. As this Court has found under similar circumstances, the alleged inventor's own testimony cannot prove reduction to practice as a matter of law. *See Opticurrent, LLC v. Power Integrations, Inc.*, No. 17-CV-03597-WHO, 2018 WL 1730326, at *5 (N.D. Cal. Apr. 10, 2018) (finding, on summary judgment, no corroboration of alleged actual reduction to practice because "the inventor's own testimony cannot constitute independent corroboration"); *Cooper v. Goldfarb*, 154 F.3d 1321, 1330 (Fed. Cir. 1998) ("In order to establish an actual reduction to practice, an inventor's testimony must be corroborated by *independent* evidence." (emphasis added)). The Motorola Draft itself also cannot corroborate the alleged reduction to practice because (1) it is Dr. Ghosh's document and, like his testimony, cannot qualify as independent corroborating evidence, and (2) it contains no description of the actual process used to generate [REDACTED] *See, e.g.*, *Hahn v. Wong*, 892 F.2d 1028, 1031 (Fed. Cir. 1989) ("The inventor . . . must provide independent corroborating evidence in addition to his own statements *and documents*." (emphasis added)); *Medichem, SA v. Rolabo, SL*, 437 F.3d 1157, 1172-73 (Fed. Cir. 2006) (finding alleged process results cannot show reduction to practice because they "do not, themselves, adequately corroborate the claimed *process*" (emphasis in original)). Thus Huawei cannot show reduction to practice of the Motorola Draft, and Samsung's motion should be granted.

### F. There is No Inequitable Conduct With Respect to Samsung's '105 Patent

Huawei concedes Samsung's motion for summary judgment of no IC should be granted.

## III. CONCLUSION

For the foregoing reasons, Samsung respectfully requests that the Court grant its Motion for Summary Judgment.

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

DATED: July 24, 2018

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By *__/s/ Victoria F. Maroulis__*
Charles K. Verhoeven
Kevin P.B. Johnson
Victoria F. Maroulis
David A. Perlson

*Attorneys for Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Research America, Inc.*