1   Michael J. Bettinger (SBN 122196)      David T. Pritikin (*pro hac vice*)
    *mbettinger@sidley.com*                *dpritikin@sidley.com*
2   Irene Yang (SBN 245464)                David C. Giardina (*pro hac vice*)
    *irene.yang@sidley.com*                *dgiardina@sidley.com*
3   SIDLEY AUSTIN LLP                      Douglas I. Lewis (*pro hac vice*)
    555 California Street, Ste. 2000       *dilewis@sidley.com*
4   San Francisco, California 94104        John W. McBride (*pro hac vice*)
    415-772-1200 – Telephone               *jwmcbride@sidley.com*
5   415-772-7400 – Facsimile               SIDLEY AUSTIN LLP
                                           One South Dearborn
6                                          Chicago, Illinois 60603
                                           312-853-7000 – Telephone
7   *Attorneys for Plaintiffs*             312-853-7036 – Facsimile
    *HUAWEI TECHNOLOGIES CO., LTD.*
8   *HUAWEI DEVICE USA, INC.,*
    *HUAWEI TECHNOLOGIES USA, INC., and*
9   *HISILICON TECHNOLOGIES CO., LTD.*

10

11                    **UNITED STATES DISTRICT COURT**

12                   **NORTHERN DISTRICT OF CALIFORNIA**

13   HUAWEI TECHNOLOGIES CO., LTD.,          Case No. 3:16-cv-02787-WHO
     HUAWEI DEVICE USA, INC., and
14   HUAWEI TECHNOLOGIES USA, INC.,
                                             **HUAWEI'S REPLY IN SUPPORT OF ITS**
15                                           **MOTION FOR SUMMARY JUDGMENT**
                 Plaintiffs / Counterclaim-  **WITH RESPECT TO:**
                 Defendants,
16                                           **1.  SAMSUNG'S ANTITRUST CLAIM**
     v.
17                                           **2.  NON-INFRINGEMENT OF**
     SAMSUNG ELECTRONICS CO., LTD.,              **SAMSUNG'S '350 PATENT CLAIM**
18   SAMSUNG ELECTRONICS AMERICA,
     INC.,                                   **3.  NON-INFRINGEMENT OF**
19                                               **SAMSUNG'S '130 PATENT CLAIMS**
                 Defendants / Counterclaim-
                 Plaintiffs,                 **4.  NON-INFRINGEMENT OF**
20                                               **SAMSUNG'S RE105 PATENT**
                 and
21                                           **5.  NON-INFRINGEMENT OF**
     SAMSUNG RESEARCH AMERICA,                   **SAMSUNG'S '825 PATENT CLAIMS**
22
                 Defendant,
23   v.                                      Hearing Date: August 8, 2018
                                             Time: 2:00 p.m.
24   HISILICON TECHNOLOGIES CO., LTD.,       Location: Courtroom 2, 17th Floor
                                             Judge: Hon. William H. Orrick
25               Counterclaim-Defendant.

26                                           **REDACTED VERSION OF DOCUMENT**
                                             **SOUGHT TO BE SEALED**
27

28

## **TABLE OF CONTENTS**

I.     SAMSUNG'S ANTITRUST CLAIM IS SUBJECT TO SUMMARY JUDGMENT...............1

    A.     Samsung Cannot Establish Actionable Exclusionary Conduct. ....................................1

    B.     Samsung Cannot Establish Harm To Competition.........................................................5

    C.     The Act of State Doctrine Bars Samsung's Antitrust Claim. ........................................6

II.    SAMSUNG HAS NOT PRESENTED A QUESTION OF MATERIAL FACT ON THE
    TECHNICAL ISSUES ..........................................................................................................8

    A.     '350 Patent - Selection of Different Quantization Coefficients Is Not Determining a
        Cell-Specific Ratio. ......................................................................................................8

    B.     Samsung's Improper Claim Constructions Are Contrary to Plain Meaning. ................9

        1.     '130 Patent - "Mapping the Data Information to
                *Remaining* Symbols" Occurs *After* Mapping a
                Reference Signal To a Middle Symbol. .....................................................10

        2.     '105 Patent – "FT Pre-Coded Symbols" Cannot
                Contain Control Information.......................................................................11

        3.     '825 Patent – Applying the Plain Meaning of
                *Indicating,* the Huawei Accused Products Do Not
                Receive System Information *Indicating* a Group of
                IDs.............................................................................................................13

III.   CONCLUSION ...................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACTV, Inc. v. Walt Disney Co.,*
   346 F.3d 1082 (Fed. Cir. 2003)................................................................12

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.,*
   836 F.3d 1171 (9th Cir. 2016) ...............................................................2

*Apple, Inc. v. Motorola Mobility, Inc.,*
   886 F. Supp. 2d 1061 (W.D. Wis. 2012) ...........................................3, 6

*Cadence Pharm. Inc. v. Exela PharmSci Inc.,*
   780 F.3d 1364 (Fed. Cir. 2015)..............................................................11

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986)...........................................................................9, 11

*Credit Suisse v. U.S. Dist. Court for the Cent. Dist. of Cal.,*
   130 F.3d 1342 (9th Cir. 1997) ................................................................7

*Del. Valley Floral Grp. v. Shaw Rose Nets, LLC,*
   597 F.3d 1374 (Fed. Cir. 2010)..............................................................13

*Dippin' Dots, Inc. v. Mosey,*
   476 F.3d 1337 (Fed. Cir. 2007)..............................................................12

*Egyptian Goddess, Inc. v. Swisa, Inc.,*
   543 F.3d 665 (Fed. Cir. 2008)................................................................13

*Fed. Trade Comm'n v. Qualcomm Inc.,*
   Case No.17-CV-00220-LHK, 2017 WL 2774406 (N.D. Cal. June 26, 2017)..........................2

*First Nat'l Bank of Ariz v. Cities Serv. Co.,*
   391 U.S. 253 (1968)................................................................................2

*Freedman Seating Co. v. Am. Seating Co.,*
   420 F.3d 1350 (Fed. Cir. 2005)..............................................................11

*Fujifilm Corp. v. Motorola Mobility, LLC,*
   Case No. 12-cv-03587-WHO, 2015 WL 757575 (N.D. Cal. Feb 20, 2015) ...........................9, 10

*Gorlick Dist. Centers, LLC v. Car Sound Exhaust Sys., Inc.,*
   723 F. 3d 1019 (9th Cir. 2013) ...............................................................5

*Hynix Semiconductor Inc. v. Rambus Inc.,*
   527 F. Supp. 2d 1084 (N.D. Cal. 2007) ..............................................2, 6

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 914 (9th Cir. 2015) ................................................................3

*In re Phillipine Nat'l Bank*,
   397 F.3d 768 (9th Cir. 2005) ...............................................................7

*In re Wholesale Grocery Prods. Antitrust Litig.*,
   752 F.3d 728 (8th Cir. 2014) ...............................................................3

*Intellicall, Inc. v. Phonometrics, Inc.*,
   952 F.2d 1384 (Fed. Cir. 1992).........................................................11

*Limelight Networks, Inc. v. Akamai Techs, Inc.*,
   134 S. Ct. 2111 (2014)......................................................................10

*Liu v. Republic of China*,
   892 F.2d 1419 (9th Cir. 1989) .............................................................7

*Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)............................................................................2

*McCarty v. Lehigh Val R Co*,
   160 U.S. 110 (1895)............................................................................8

*OptimumPath, LLC v. Belkin Int'l, Inc.*,
   466 Fed. App'x 904 (Fed. Cir. 2012)..................................................9

*OptimumPath, LLC v. Belkin Int'l, Inc.*,
   No. C 09-01398 CW, 2011 WL 1399257 (N.D. Cal. Apr. 12, 2011).......................9

*Pacing Techs., LLC v. Garmin Int'l, Inc.*,
   778 F.3d 1021 (Fed. Cir. 2015)........................................................13

*PersonalWeb Techs. LLC v. Int'l Bus. Machines Corp.*,
   Case No. 16-cv-01266-EJD, 2017 WL 2180980 (N.D. Cal. May 18, 2017)...........................9

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005).........................................................14

*Planet Bingo, LLC v. GameTech Int'l, Inc.*,
   472 F. 3d 1338 (Fed. Cir. 2006)........................................................11

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
   378 F.3d 1396 (Fed. Cir. 2004).........................................................12

*Rambus Inc. v. FTC*,
   522 F.3d 456 (D.C. Cir. 2008)............................................................5

*Renishaw PLC v. Marposs Societa' per Azioni*,
   158 F.3d 1243 (Fed. Cir. 1998).........................................................14

*Research In Motion Ltd. v. Motorola, Inc.*,
   644 F. Supp. 2d 788 (N.D. Tex. 2008) ..............................................................................2

*Smart Wearable Techs. Inc. v. Fitbit Inc.*,
   Case No. 17-cv-05068-VC, 2018 WL 659013 (N.D. Cal. Feb. 1, 2018) ...............................13

*TAP Pharm. Prods., Inc. v. Owl. Pharm., LLC*,
   419 F.3d 1346 (Fed. Cir. 2005)...........................................................................................14

*TechSearch, L.L.C. v. Intel Corp.*,
   286 F.3d 1360 (Fed. Cir. 2002)...........................................................................................13

*Townshend v. Rockwell Int'l Corp.*,
   No. C99-400SBA, 2000 WL 433505 (N.D. Cal. Mar. 28, 2000) ...............................................4

*United States v. Grinnell Corp.*,
   384 U.S. 563 (1966)..............................................................................................................1

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
   540 U.S. 398 (2004)..............................................................................................................1

*Yeager v. Bowlin*,
   693 F3d 1076 (9th Cir. 2012) .............................................................................................13

**Other**

Restatement (Second) of Foreign Relations of the United States § 41 cmt d. (1965) ....................7

1    Samsung's Opposition to Huawei's Motion for Summary Judgment ("Opp.") does nothing

2    to establish the existence of a disputed issue of material fact preventing summary judgment in

3    Huawei's favor on any of the claims as to which Huawei has moved.

4    ## I.   SAMSUNG'S ANTITRUST CLAIM IS SUBJECT TO SUMMARY JUDGMENT.

5    Samsung's attempt to convert what is, at best, a contract dispute into an antitrust violation

6    by referring vaguely to Huawei's alleged "multi-pronged course of anticompetitive conduct" (Opp.

7    1:9-10) cannot obscure the fact that there is no evidence that Huawei got its patents incorporated

8    into the relevant standards by making false FRAND promises it had no intention of keeping. To

9    the contrary, Samsung's Opposition makes clear that Huawei's conduct vis-à-vis Samsung has

10   been consistent with its public declarations, which undermines any claim that Huawei had a secret

11   plan to renege on its FRAND commitments. For this, and the other reasons discussed below,

12   Huawei is entitled to summary judgment on Samsung's monopolization claim.

13   ### A.   Samsung Cannot Establish Actionable Exclusionary Conduct.

14   Although its expert Dr. Hausman analyzed Samsung's claim as one for attempted

15   monopolization,[1] Samsung's Opposition makes clear that its claim is for monopolization. Opp. 3.

16   To establish a triable monopolization claim, Samsung must establish the existence of a genuine

17   issue of material fact that Huawei acquired or maintained its alleged monopoly position in the

18   alleged relevant technology markets by means of exclusionary conduct, rather than on the basis of

19   "growth or development as a consequence of a superior product, business acumen, or historic

20   accident." *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407

21   (2004) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966)) (quotations omitted).

22   In a case like this, where Huawei's alleged monopoly position in the relevant technology markets is

23   a consequence of the incorporation of timely disclosed patented technology into standards (Mot. Ex.

24   1 at ¶ 55), Samsung needs to establish that Huawei convinced 3GPP and ETSI to incorporate

25   Huawei's patented technologies in the relevant standards by making false FRAND commitments

26

27   [1] Mot. Ex. 1, Hausman Rpt. ¶¶ 9, 57.  Citations to "Mot. Ex." are to the exhibits attached to the Declaration of John McBride in Support of Huawei's Motion for Summary Judgment (July 3, 2018), ECF No. 328-1.

28

that Huawei had no intention to honor.[2] Mot.[3] 6-7; *Research In Motion Ltd. v. Motorola, Inc.* 644 F.

Supp. 2d 788, 798-99 (N.D. Tex. 2008). The undisputed facts undermine any such claim (Mot. 7-8),

and nothing Samsung identifies in its Opposition creates a genuine issue to the contrary.

As an initial matter, while Samsung is correct that issues of intent are generally factual in

nature (Opp. 6), none of the cases it cites suggest that antitrust claims like its own are not amenable

to summary judgment where—as set forth in Huawei's motion and below—no reasonable jury

could conclude on basis of the evidence that the central statements in question were false when

made. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First

Nat'l Bank of Ariz v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)) ("Where the record taken as a

whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine

issue for trial.'"). As set forth in Huawei's motion, there is significant authority finding summary

judgment appropriate where—as here—the basis for a claim that a contractual commitment (like

---

[2] Samsung's suggestion that a mere breach of a party's FRAND commitments would be sufficient to support a claim for monopolization is baseless. Opp. 5; *see also* Mot. 5-6. Samsung misreads Judge Koh's decision in *Fed. Trade Comm'n v. Qualcomm Inc.*, Case No.17-CV-00220-LHK, 2017 WL 2774406 (N.D. Cal. June 26, 2017), to suggest that a party may breach an "antitrust duty to deal" simply by seeking supra FRAND royalties after its patents have been incorporated into a standard. Opp. 5. But in that case the allegation Judge Koh was considering when she discussed an "antitrust duty to deal" was not that the SEP holder (Qualcomm) had charged rival chipset makers excessive royalties as a part of its scheme to monopolize the relevant markets for high-end LTE and CDMA chipsets, but rather that it refused to make licenses available to rival chipset makers *on any terms*. *Qualcomm,* 2017 WL 2774406, at *6, *19-23. Even in those "narrow" and exceptional circumstances where the antitrust laws impose a duty to deal on a monopolist, there is "no duty to deal on the terms and conditions preferred" by the monopolist's rivals. *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1184 (9th Cir. 2016) (affirming summary judgment on refusal to deal claim where plaintiff "simply did not like the business terms" offered by the alleged monopolist) (citation omitted). Here, Huawei has not refused to offer a license to Samsung; there is simply a dispute as to the price. Thus, there can be no liability on the basis of an alleged violation of an "antitrust duty to deal." The decision in *Hynix Semiconductor Inc. v. Rambus Inc.*, 527 F. Supp. 2d 1084 (N.D. Cal. 2007) likewise does not suggest that the antitrust laws should be used to sanction breach of a FRAND commitment. There, Hynix alleged that Rambus had obtained its monopoly position in the relevant technology markets by failing to disclose its SEPs in the standard setting process in violation of the SSO's rules, and the court recognized only that such "deceptive conduct before a standards setting organization can be anticompetitive conduct that violates section 2 of the Sherman Act." *Id.* at 1088-89. Finally, nothing in the letter authored by the former government officials and professors that Samsung cites (Opp. 5, Decl. of Sam Stake in Support of Samsung's Opp'n to Mot. for Summary Judgment ("Stake MSJ Opp'n Decl." ECF No. 358-1)Ex. 7, ECF No. 358-8, hereafter all exhibits to referenced from this declaration will be identified as "Opp. Ex.") suggests that they believe the antitrust laws can or should be used to sanction a mere breach of a FRAND commitment absent exclusionary conduct by the SEP holder to acquire or maintain its monopoly position. To the extent that they do make such a recommendation, it is contrary to the law.
[3] Huawei's Mot. for Summary Judgment ("Mot.") 6-7 (July 3, 2018), ECF No. 327-8.

Huawei's FRAND commitments) was false boils down to an allegation that it was later breached. Mot. 7-8. Samsung's attempt to distinguish these decisions on the grounds that they did not involve antitrust claims is of no moment. Opp. 8 n.7. While "[s]ummary judgment [was once] disfavored in antitrust cases," the Ninth Circuit has recognized that "any presumption against the granting of summary judgment in complex antitrust cases has now disappeared." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 921 (9th Cir. 2015) (citations omitted); *see also In re Wholesale Grocery Prods. Antitrust Litig.*, 752 F.3d 728, 732 (8th Cir. 2014) (holding "it is now beyond debate that 'the Supreme Court would find an error of law in the imposition of a heightened standard for summary judgment in a complex antitrust case.'") (citation omitted).[4]

In attempting to establish a triable issue that Huawei's FRAND commitments were false when made, Samsung emphasizes that Huawei ████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████. Opp. 7 & n.3-4.[5] But, as Samsung acknowledges, Huawei had publicly announced as early as 2008 that it expected to seek a royalty for its LTE portfolio of up to 1.5%, which would be "negotiable in bilateral negotiations." Opp. 6-7 (citing Opp. Ex. 1 at 208:19-22 (J. Ding testimony referencing Huawei public statement)); Reply Ex.[6] 44 at ¶ 66 (quoting Huawei announcement). ████████████████████████████████████████████ there is nothing wrong with opening negotiations at a headline rate like 1.5%. Reply Ex. 45 at 32:19-34:24, Ex. 46 at 70:15-71:6, Ex. 44 at ¶¶ 23-33 (████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████). The fact that Huawei ████████████████████████████

---

[4] Samsung's citation to a number of decisions rejecting motions to dismiss FRAND-related antitrust claims (Opp. 3) likewise does not establish that such claims may not be resolved on summary judgment. To the contrary, summary judgment has been granted on such claims in other cases. *See, e.g., Apple, Inc. v. Motorola Mobility, Inc.*, 886 F. Supp. 2d 1061, 1076-77 (W.D. Wis. 2012).

[5] Samsung acknowledges that Huawei disclosed to ETSI, and made FRAND commitments with respect to, the patents around which Dr. Hausman defines his alleged relevant technology markets on March 9, 2009, October 15, 2009, July 6, 2010, April 21, 2011, and July 5, 2013. Opp. 3 n.3. ████████████████████████████████████████████████████████████████ Opp. 3 n.4.

[6] Citations to "Reply Ex." are attached to the Declaration of John W. McBride in Support of Huawei's Reply in Support of Motion for Summary Judgment filed concurrently herein.

1 ████████████████████████████████████████████████████

2 ████████████████████████,[7] would not permit a reasonable jury to conclude Huawei never

3 intended to abide by its FRAND commitments. Indeed, that ETSI adopted standards incorporating

4 Huawei's patented technology with full knowledge that Huawei intended to seek a royalty of up to

5 1.5% undermines any antitrust claim predicated upon Huawei's demand for such royalties.

6 *Townshend v. Rockwell Int'l Corp.*, No. C99-400SBA, 2000 WL 433505, at \*7 (N.D. Cal. Mar. 28,

7 2000) (dismissing antitrust claim where SSO had adopted defendant's technology after disclosure

8 of proposed licensing terms later claimed not to be FRAND).

9      Samsung's further claim that ████████████████████████████████████

10 ███████████████████████████████████████ (Opp. 7) is mistaken,[8]

11 but—even if accepted as true—this shows, at most, that Huawei breached its FRAND obligations at

12 some point after they were made. That fact cannot, as a matter of law, create a triable issue that

13 Huawei's FRAND commitments were false from their inception. Mot. 7-8. Nor can the fact that

14 Huawei sought injunctive relief against Samsung in China in May 2016; even if Huawei's pursuit of

15 injunctive relief were a breach of Huawei's FRAND obligations, which it is not (*see* Mot. 9 n.8),

16 that cannot be used to establish that the FRAND commitments Huawei made years earlier were

17 false. Indeed, any inference that Huawei had a long-held plan to evade its FRAND obligations

18 based on its pursuit of injunctions or otherwise is refuted as a matter of law by the undisputed facts

19 that Huawei (1) ████████████████████████████████████████████████████,[9]

20 _____

21 [7] ████████████████ Reply Ex. 47 at 164:12-165:17, and Ex. 48. ████████

22 ██████████████████████████████████████ Decl. of Sam Stake in
Support of Samsung's Mot. to Partially Exclude & Strike ("Stake FRAND Decl." ECF No. 335-1)

23 Ex. 4 at ¶ 22; Reply Ex. 46 at139:8-12.
[8] For a discussion of the Huawei-Apple license, *see* Huawei's Opp. to Samsung Mot. for Summary

24 Judgment 3-7 (July 17, 2018), ECF No. 347-4.
[9] Samsung's complaint that ████████████████████████████████████████

25 ████████████████████████████████████████████████████████

26 ████. Samsung's further claim that, ████████████████

27 ███ "Huawei had already obtained the 'bargaining chip' that would help it 'get the royalties'"
(Opp. 8) makes no sense. Huawei had not yet obtained an injunction against Samsung and ████████

28

1  (2) asked this Court at the outset of the case to determine the terms of a FRAND cross-license on an

2  expedited basis (Joint Case Mgmt. Statement 2-44 (Sept. 6, 2016), ECF No. 67; Huawei's Request

3  to Bifurcate (Sept. 20, 2016), ECF No. 84), and (3) previously committed (and remains willing) to

4  withdraw its injunction actions if Samsung would simply agree to any binding process (be it

5  through arbitration or in court) to obtain a neutral determination of the FRAND terms of a cross-

6  license between the parties. Mot. 8; Huawei's Opp'n to Samsung's Mot. to Enjoin 2:23-26 (Feb. 20,

7  2018), ECF No. 240.[10] No rational trier of fact could conclude that Huawei intended to deceive

8  ETSI by making false FRAND commitments between 2009 and 2013 when Huawei has,

9  undisputedly, repeatedly, and continuously offered to submit a FRAND determination to a neutral

10  tribunal.[11] Samsung's effort to morph what is, at best, a breach of contract claim into an elaborate,

11  years-long scheme to violate the U.S. antitrust laws should be rejected.

12      **B.      Samsung Cannot Establish Harm To Competition.**

13          Samsung's antitrust claim should also be rejected because it cannot establish the requisite

14  harm to competition. Mot. 9-10. The issue is not whether Samsung, as a "direct purchaser" in the

15  alleged relevant technology markets, is presumptively a proper plaintiff with antitrust standing

16  (Opp. 9), but rather whether the conduct Samsung complains of will "harm the competitive process

17  and thereby harm consumers," rather than merely harming "one or more competitors" like

18  Samsung. *Rambus Inc. v. FTC,* 522 F.3d 456, 463 (D.C. Cir. 2008) (quotation omitted); *Gorlick*

19  *Dist. Centers, LLC v. Car Sound Exhaust Sys., Inc.,* 723 F. 3d 1019, 1024-25 (9th Cir. 2013)

20  (antitrust plaintiff "must demonstrate injury to competition in the market as whole, not merely

21  injury to itself as a competitor"). Here, the undisputed facts demonstrate the conduct about which

---

23  ████████████████████████████████████████  Mot. Ex. 20 at 2; Reply Ex. 49

24  at 2; Reply Ex. 45 at 242:6-16.

[10] After years of negotiation and subsequent litigation, Samsung has maintained its position that it

25  will not consent to rate-setting by the Court or an arbitral tribunal (ECF No. 303-2, p. 5 n.14),

preferring instead to engage in limitless negotiation in furtherance of its hold-out strategy.

26  [11] Given this context, the fact that Huawei's executives have acknowledged that they sought

injunctive relief in an attempt to get Samsung to the negotiating table is hardly incriminating.

27  Indeed, Huawei's statements are consistent with Samsung's own previously stated views on the

appropriate use of injunctive relief. *See* ECF No. 240 at 21 n.18.

28

Samsung complains—that Huawei is using injunction actions in China in an alleged attempt to

coerce Samsung to pay excessive royalties—will have no effect on competition generally.

Samsung does not dispute that, given that it has refused to pay Huawei any royalties to date,

Huawei's allegedly non-FRAND royalty demands cannot have caused any harm to competition.

Mot. 9 (citing *Apple, Inc.*, 886 F. Supp. 2d at 1076). And even if they are ultimately recoverable,

which Huawei does not concede,[12] Samsung's expert Dr. Hausman admitted that Samsung's

litigation costs are "harms to Samsung," not "harms to consumers." Mot. Ex. 7 at 214:6-9. In the

face of the realities, Samsung seeks to establish a risk of consumer harm based on Dr. Hausman's

claim that, "if enforced," Huawei's Chinese injunctions "h██████████████████████████████

████████████████████████████." Opp. 9 n.8. But in making this calculation, Dr.

Hausman assumed without basis that an injunction in China would completely prevent Samsung

from selling smartphones in the U.S. notwithstanding the fact that, in 2017, Samsung made ████ of

the smartphones it sold in the U.S. somewhere other than China. Stake FRAND Decl. Ex. 8 at

Exhibit 6a. More importantly, given Huawei's consistent, standing offer to forego injunctive relief

if Samsung will agree to a neutral, third-party FRAND determination, there is no plausible scenario

in which Samsung would be unable to avoid being enjoined in China by accepting neutrally-

determined FRAND terms—and thus no plausible scenario where U.S. consumers or competition in

the U.S. will be affected. Mot. 8.

### C.     The Act of State Doctrine Bars Samsung's Antitrust Claim.

The act of state doctrine provides a final basis to reject Samsung's antitrust claim, which is

indisputably based on the presumption that Huawei's lawsuits in China are improper. Samsung's

attempt to draw a distinction between Huawei's "pursuit of injunctive relief" and the "Shenzhen

Court's judgment granting an injunction," claiming that its theory is that only the "pursuit"

---

[12] Because Samsung cannot establish that Huawei engaged in any misconduct in the standard-setting
process itself, it cannot establish that Huawei's challenged litigation conduct was merely a part of a
broader and independently illegal anticompetitive scheme as required to permit the recovery of
litigation expenses in a case such as this. *Hynix*, 527 F. Supp. 2d at 1098. Nor, despite Huawei's
requests, has Samsung produced any records relating to its litigation expenses. Reply Ex. 50 at pp.
24-25. Thus, Samsung should be precluded from attempting to establish at trial the litigation costs it
allegedly incurred as a result of Huawei's alleged antitrust violation.

"constitutes the antitrust violation," Opp.. 10-11, fails. "Pursuit" of an injunction cannot cause any harm to competition—only if Huawei's suits succeed could Samsung and/or consumers be impacted in any way, as Samsung's expert admitted. Mot. Ex. 7 at 214:14-215:2. Moreover, the Shenzhen Court has already determined that, in light of the FRAND commitment and the parties' conduct, Samsung should be enjoined. That establishes that Huawei's lawsuit and pursuit of an injunction was entirely proper. To find for Samsung on its antitrust claim thus necessarily requires this Court to evaluate the legitimacy of the Shenzhen Court's decision.

Samsung fails to address the Ninth Circuit's standard for the act of state doctrine set forth in *Credit Suisse v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 130 F.3d 1342, 1346 (9th Cir. 1997). First, Samsung does not dispute that the Shenzhen Court's injunction is "an official act of a foreign sovereign performed within its own territory." *Id.* (citations and internal quotations omitted). While Samsung attempts to characterize the Shenzhen Actions as a "mere dispute between private parties," and notes the Chinese government "is not a party" to that litigation (Opp. 11), that is irrelevant: A foreign judgment arising out of private litigation may be considered an act of state when it gives effect to the public interest of the foreign government. *See In re Phillipine Nat'l Bank*, 397 F.3d 768, 773 (9th Cir. 2005); *Liu v. Republic of China*, 892 F.2d 1419, 1433-34 & n.2 (9th Cir. 1989); Restatement (Second) of Foreign Relations of the United States § 41 cmt d. (1965) ("A judgment of a court may be an act of state."). As Huawei explained, the Shenzhen Court's decision gives effect to China's public interest in enforcing the FRAND obligation. Mot. 11-12 and Ex. 21 at 30, 176. Samsung does not address the Shenzhen Court's FRAND reasoning or dispute that its decision turns on Chinese public interest in the enforcement of FRAND obligations. *See* Opp. 10-12. Samsung also does not dispute that the relief it seeks—an injunction barring Huawei from enforcing the Shenzhen injunctions—would require this Court to declare the Shenzhen Court's decision invalid. *See Credit Suisse*, 130 F.3d at 1346. The Shenzhen Court found an injunction should issue because Huawei had complied with FRAND while Samsung had not. To find for Samsung on its antitrust claim, this Court would have to determine that the Shenzhen Court erred in its FRAND analysis and should not have issued an injunction. Samsung's claim is accordingly barred by the act of state doctrine.

## II.    SAMSUNG HAS NOT PRESENTED A QUESTION OF MATERIAL FACT ON THE TECHNICAL ISSUES

### A.    '350 Patent - Selection of Different Quantization Coefficients Is Not Determining a Cell-Specific Ratio.

Asserted claims 1 and 3 require "*determining a cell-specific ratio.*" Mot. Ex. 23 at 14:31. A ratio is "cell-specific" if it is the same for every UE in a cell. Mot. 13:7-15 (citing Samsung expert opinions and inventor testimony). Samsung has offered no evidence that the accused products actually "determine" a cell-specific ratio.[13] *See* SS Ex. 14 at ¶¶ 557-70 ███████████

███████████████████████████████

████████████████████ Mot. Ex. 23, '350 Patent 12:6-8. That is not, however, what the claim requires, and Samsung may not rewrite the claim to show infringement. *McCarty v. Lehigh Val R Co*, 160 U.S. 110, 116 (1895) ("[W]e know of no principle of law which would authorize us to read into a claim an element which is not present, for the purpose of making out a case of novelty or infringement.").

████████████████████████████

███████████████████████████████

████████████████████

*Compare* Opp. Ex. 11 at 20 *with* Opp. Ex. 12 at 14-15 *with* Opp. Ex. 13 at 15 and Mot. Ex. 23 at 12:25-38. Samsung does not contest that: ██████████████

███████████████████████████████

████████████ and (3) the asserted claim requires that each UE in a network cell determine *the same* numeric value for the claimed "*cell-specific ratio.*" *See* Opp. 13:11-19. ███

████████████ are *not the same* for each UE in a cell, as required by the claim, Huawei is entitled to a judgment of non-infringement.

---

[13] Nowhere in Dr. Prucnal's 280-page report does he identify *a single instance* of a cell-specific ratio being determined. Nor has any witness testified that such a ratio is determined by the accused products. Even Dr. Prucnal's hand-written table – introduced for the first time during redirect at his deposition on the last day of expert discovery – shows that ███████████████

██████████████████████████████

Samsung's attempt to save its infringement case by arguing the doctrine of equivalents (DOE) also fails. As an initial matter, it has conceded the issue by failing to address Huawei's arguments that Samsung's DOE theory was deficient as a matter of law. Mot. 15:26-16:6; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Further when required to disclose its infringement contentions, Samsung advanced the same rote boilerplate for <u>every</u> claim element:

> To the extent that Huawei or HiSilicon contend that the Accused Instrumentalities do not literally perform this limitation, Samsung alleges that this limitation is practiced under the doctrine of equivalents, as any alleged differences are insubstantial.

Opp. Ex. 18 at pp. 1-2, 4. Blanket reservations do not preserve DOE arguments. *See PersonalWeb Techs. LLC v. Int'l Bus. Machines Corp.*, Case No. 16-cv-01266-EJD, 2017 WL 2180980, at *15 (N.D. Cal. May 18, 2017) (summary judgment of no infringement under DOE because "[b]lanket reservations of rights [in infringement contentions] are not sufficient"); *OptimumPath, LLC v. Belkin Int'l, Inc.*, No. C 09-01398 CW, 2011 WL 1399257, at *8 (N.D. Cal. Apr. 12, 2011), *aff'd*, 466 Fed. App'x 904 (Fed. Cir. 2012). On the record before this court, Huawei is entitled to summary judgment of non-infringement of the '350 patent.

### B.  Samsung's Improper Claim Constructions Are Contrary to Plain Meaning.

Samsung attempts to manufacture issues of fact for the '130, '105 and '825 patents by proffering new claim constructions that contradict the plain meaning of the terms. During claim construction, for each of the terms at issue, Samsung stated "no construction necessary." Pat. L.R. 4-3 Joint Claim Construction Statement Ex. C at 3, 32 & 58 (Apr. 7, 2017), ECF No. 124-3. Huawei, in contrast, offered actual "plain meaning" explanations for the terms, and Huawei's experts applied that plain meaning to their infringement analysis.

Samsung's argument that the '130, '105 and '825 claim terms at issue should have been included in Huawei's list of five "significant terms for construction" (Opp. 14-15, 19 & 22), ignores the fact that Samsung proposed "no construction necessary" for each of the terms.[14] Consistent with this Court's reasoning in *Fujifilm Corp. v. Motorola Mobility, LLC,* Case No. 12-cv-03587-WHO,

---

[14] Of the 20 patents at issue during the claim construction process, the parties identified 102 disputed terms for construction. ECF No. 124-2 (Exhibit B), ECF No. 124-3 (Exhibit C). The Court, however, directed the parties to limit the *Markman* briefing to a total of ten terms (five per side) that will be "most significant to resolution of the case." ECF No. 129 at 22:23-23:2.

9

2015 WL 757575 (N.D. Cal. Feb 20, 2015), and Judge Koh's reasoning in *Apple, Inc. v. Samsung Electronics Co.*, No. 12-cv-00630 LHK, 2014 WL 252045, at *4,5 (ND. Cal. Jan. 21, 2014), a juror could not reasonably find that the plain meaning of the terms at issue results in a finding of infringement.

        1.       **'130 Patent - "Mapping the Data Information to *Remaining* Symbols" Occurs *After* Mapping a Reference Signal To a Middle Symbol.**

During claim construction, Huawei identified the plain meaning of the "mapping a reference signal" step: that it had to be performed before the "mapping the data information" and "mapping the acknowledgement information" steps. ECF No. 124 at 3. Samsung proposed no construction. *Id.*

Samsung argues that Huawei considers the term "remaining" in isolation. Opp. 15-16. To the contrary, Huawei analyzed the claim language to show that these steps must be performed in the order claimed. Mot. 15:14-17:14. The "remaining symbols" in the "mapping the data information" and "mapping the acknowledgement information" steps refer to the symbols remaining after the "mapping a reference signal" step is done, as the claim makes clear—"remaining symbols in the slot that are not used to map the reference signal."

Despite saying that plain meaning refers only to "a spatial location," Samsung provides no supporting textual analysis of the claims, and spatial location is inconsistent with the claim language. Opp. 14-18. Claim 13 recites active steps: "mapping the reference signal," "mapping the data information" and "mapping the acknowledgement information." *Limelight Networks, Inc. v. Akamai Techs, Inc.*, 134 S. Ct. 2111, 2117 (2014) ("A method patent claims a number of steps; under this Court's case law, the patent is not infringed unless all the steps are carried out."). The first claimed step requires "mapping the reference signal," not just reserving a place for the reference signal. Similarly, "mapping the data information" requires mapping into the "remaining symbols." The "remaining symbols" thus do not refer to a spatial location; performing the "mapping a reference signal" step actually maps the reference signals, leaving the "remaining symbols in the slot that are not used to map the reference signal." Similarly, "mapping the acknowledgement information" requires mapping acknowledgement information into the "remaining symbols" left after performing the "mapping a reference signal" step. Likewise, Samsung's reliance on Figs. 6-10 to show the final

result of mapping the various data types is misplaced because the figures do not show the mapping itself, nor the order in which it is performed. Samsung's parking space analogy similarly fails. Opp. 16:14-17.

As to equivalents, Samsung is mistaken. *Cadence Pharm. Inc. v. Exela PharmSci Inc.*, 780 F.3d 1364, 1370-71 (Fed. Cir. 2015) does not say that order of claim elements is irrelevant to vitiation. Opp. 18. Rather, as the Federal Circuit observed in *Planet Bingo*, "after is opposite of before, not equivalent." *Planet Bingo, LLC v. GameTech Int'l, Inc.*, 472 F. 3d 1338, 1344 (Fed. Cir. 2006); *see also id.* at 1345.

There is undisputedly a marked difference between the order in the claim and Samsung's allegations. *See* Mahon Decl.[15] ¶¶ 20-21. Samsung's expert never analyzes the claim limitation under DOE. *See* Mot. 20:2-14. Samsung's opposition makes no effort to do so either. Opp. 17:18-18:12. Its sole assertion is that its expert "concluded that the order 'is an insubstantial part of claims 13 and 16,'" citing ¶ 793 of its expert's report. Opp. 17:22-23. Paragraph 793, however, says nothing about the order of the claim elements and only analyzes the supposed function/way/result of the claim as a whole. Mot. Ex. 36 at ¶ 793. Samsung must show the missing limitation is insubstantially different from the accused, not from the claim as a whole. *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005). Its failure to properly articulate an infringement claim warrants summary judgment. *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1387-88 (Fed. Cir. 1992) (citing *Celotex*, 477 U.S. at 325).

Finally, Samsung attempts to create a factual dispute by implying that its expert actually says that Huawei performs the steps in order. Opp. 17:13-16. Samsung's argument finds no support in the evidence, nor in its expert report. Mot. 17:22-19:22. On the record before this Court, Huawei is entitled to summary judgment of non-infringement of the '130 patent.

### 2. '105 Patent – "FT Pre-Coded Symbols" Cannot Contain Control Information.

During claim construction, Huawei identified the plain meaning of "FT pre-coded symbols" as lacking signaling or control information, and explained why in its opening motion. ECF No. 124-

---

[15] Decl. of Mark Mahon ("Mahon Decl.") (July 3, 2018), ECF No. 328-44.

1    3 at 32; Mot. 21:13-14. Samsung proposed no definition. *Id.* Huawei's definition is consistent with

2    the claim language. Mahon Decl. Ex. C at 13:45-46. The PUSCH symbols identified in Samsung's

3    original infringement theory as the claimed FT pre-coded symbols indisputably contain control

4    information (Opp. 20:16-17, 21:21-23), so the accused products do not infringe as a matter of law.

5    Mot. 22:17-23:3.

6         Samsung now argues that "'FT pre-coded symbols' are simply symbols that contain

7    information that have been FT pre-coded." Opp. at 19. But "the context of the surrounding words of

8    the claim also must be considered in determining the ordinary and customary meaning of those

9    terms." *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003) (citations omitted).

10   Although "FT pre-coded symbols" does not contain the word "data" (*compare* Opp. at 21:2-7), the

11   claim recites creating those symbols from data only. Mahon Decl. Ex. C at  13:45-51. "*FT pre-coded*

12   *symbols*" are generated by "*Fourier Transform (FT) pre-coding the non-FT pre-coded modulation*

13   *data symbols,*" which are generated by "modulating data information to generate non-FT precoded

14   modulation <u>data symbols</u>." *Id.* at 13:49-51. Conversely, the claim recites "modulating control

15   information to generate non-FT precoded modulation <u>control symbols</u>." Samsung is therefore forced

16   to admit that "[s]ymbols that only contain data and no control are referred to as 'data symbols,' and

17   those that contain control and no data are 'control symbols.'" Opp. 20:23-21:1.

18        Samsung contends that since claim 28 is a "comprising" claim, it could include control

19   information in the "FT pre-coded symbols." Opp. 20:11-16. "Comprising" is "not a weasel word

20   with which to abrogate claim limitations" and "does not reach into each of the … steps to render

21   every word and phrase therein open-ended." *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1343 (Fed.

22   Cir. 2007). "Comprising," "while permitting additional elements not required by a claim, does not

23   remove the limitations that are present." *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396,

24   1409 (Fed. Cir. 2004) (citations omitted). The claim recites that "FT pre-coded symbols" contain

25   data information, not control information. "Comprising" at the beginning of the claim does not

26   change that.

27        Samsung asserts that Huawei reads out a disclosed embodiment. Opp. 20:18-21. But, the

28   asserted claims expressly preclude FT pre-coding control information and, therefore, do not cover

1  Figure 8 and its associated description in the specification, cited by Samsung. "[E]very claim does

2  not need to cover every embodiment…. [t]his is particularly true where the plain language of a

3  limitation of the claim does not appear to cover that embodiment." *Pacing Techs., LLC v. Garmin

4  *Int'l, Inc.*, 778 F.3d 1021, 1026 (Fed. Cir. 2015) (citations omitted).

5          Samsung now presents a new argument that PUSCH symbols sometimes but not always

6  infringe. Opp. 21:8-22: 4. Samsung's eleventh-hour attempt to save its case is too late. *Smart

7  *Wearable Techs. Inc. v. Fitbit Inc.*, Case No. 17-cv-05068-VC, 2018 WL 659013, at *2 (N.D. Cal.

8  Feb. 1, 2018) (granting summary judgment of noninfringement and refusing amendment of

9  infringement contentions). Samsung's expert never opined that the accused products only infringe

10  some of the time. *See* Mot. Ex. 27 at ¶¶ 362-77, 393-412. Its interrogatory answers also lack any

11  such allegations. *See* Reply Ex. 51 at pp. 161-215. Even its damages expert assumes the '105 patent

12  is infringed at all times. *See* Stake FRAND Decl. Ex. 8 at ¶¶ 76-79, Ex. 1a-c (calculating damages).

13  The Court should refuse to consider a new infringement allegation at this late date. *See Smart

14  *Wearable*, 2018 WL 659013, at *2.

15          In any event, Samsung does not set out a complete infringement case on its new theory. It has

16  not shown that Huawei's phones, when used on US carriers' networks, use PUSCH symbols that

17  sometimes lack control data. A theoretical possibility that PUSCH symbols lack control data does

18  not mean it happens. Samsung has failed to meet its burden to prove infringement. *Egyptian

19  *Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008); *TechSearch, L.L.C. v. Intel Corp.*,

20  286 F.3d 1360, 1372 (Fed. Cir. 2002).[16] On the record before this Court, Huawei is entitled to

21  summary judgment of non-infringement of the '105 patent.

22          **3.      '825 Patent – Applying the Plain Meaning of *Indicating*, the Huawei
                  Accused Products Do Not Receive System Information *Indicating* a**

23

24  [16] Samsung's argument that "there are PUSCH symbols containing only data and no control
    information" is contradicted by its own expert. Opp. 21:19-21. Samsung's expert, Dr. Bambos,
25  opined that every PUSCH symbol contains control data. Mot. Ex. 36 at ¶ 564 ("the multiplexed data
    and CQI information is mapped to every symbol not containing the DM RS. Each symbol, in other
26  words, consists of coded CQI and data information mapped over different subcarriers"). Although
    Samsung now offers a contradicting declaration from Dr. Bambos (Opp. 21:19-23; Opp. Ex. 21 at
27  ¶ 16), it cannot create an issue of fact by submitting a conflicting affidavit. *Yeager v. Bowlin*, 693
    F.3d 1076, 1080 (9th Cir. 2012); *Del. Valley Floral Grp. v. Shaw Rose Nets, LLC*, 597 F.3d 1374,
28  1381-82 (Fed. Cir. 2010).

1

**Group of IDs.**

2

The '825 patent claims require "system information indicating a group of

3

identification(ID)s." During claim construction, Huawei provided an explanation consistent with the

4

plain meaning that the term means "system information including a group of IDs." ECF No. 124-3 at

5

58. Samsung proposed no construction for the term. *Id.*

6

Huawei's construction is consistent with a general dictionary definition and the intrinsic

7

evidence. When there are "different possible meanings for" a claimed phrase, it is "entirely

8

reasonable … to look to the specification … to determine the manner in which the term was used"

9

*TAP Pharm. Prods., Inc. v. Owl Pharm., LLC*, 419 F.3d 1346, 1354 (Fed. Cir. 2005) ("containing"

10

means "encompassing" instead of "comprising" in light of the specification's related usage). Here,

11

there are two applicable common meanings of "indicate": (1) to point out or index, or (2) to state or

12

express briefly. *E.g.*, Reply Ex. 52 (Dictionary.com screenshot) and Ex. 53 (Merriam-Webster

13

screenshot). Samsung never identifies the plain meaning of "indicating" that it claims is "readily

14

understood" by persons of skill, *see* Mot. 23-24, but its expert argued that it means to "point out" or

15

"index." Mot. Ex. 41 at ¶ 164. As Huawei has explained, however, the specification of the '825

16

patent equates the claimed "indicating" with "including." Mot. 23-24. Construing "indicating" to

17

mean "including" instead of "pointing to" or "indexing" is the only construction "consistent with the

18

specification," *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005), that "stays true to the

19

claim language and most naturally aligns with the patent's description of the invention." *Renishaw*

20

*PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). Thus, here the correct

21

plain meaning of "indicating" is "including."

22

The '825 patent specification refutes Samsung's accusation that Huawei mischaracterized the

23

'825 patent. *See* Opp. 24-25. The '825 patent explains that allowing information "to be detected"

24

means the information is *included in* the system information. *E.g.*, Mot. Ex. 39 at 2:59-63 ("The

25

system information … includes information to be detected by the UE."). This allows the Node B to

26

"manage[] temporary ID pools on a cell-by-cell basis," *id.* at 8:44-45, allowing the UE to "detect

27

temporary IDs available in the current cell." *Id.* at 7:11-20, 9:56-65.

28

Under the plain meaning of "indicates" that comports with the intrinsic evidence, there is no

1    genuine dispute of material fact that the accused Huawei devices do not infringe the asserted '825

2    patent claims. █████████████████████████████████████████

3    ████████████████████████████████████████████████████████████

4    █████████████████████████████    Mot. Ex. 40 at 95:22-96:14 (emphasis added). Samsung does

5    not dispute or distinguish that testimony, and instead presents attorney argument in an attempt to

6    rehabilitate its infringement theory. *See* Opp. 22-23. Even then, it concedes that the system

7    information does not "include" the group of IDs—it simply asserts that "the system information

8    includes both group ID *information*, and *specification information* regarding the preamble and

9    corresponding preamble indexes within the group." *Id.* (emphasis added). The evidence it cites also

10   supports, at best, only that the *size* of a preamble group is included in the system information.

11   Samsung's conclusory assertion that, by including the size, the "system information necessarily

12   includes the range of preamble indexes (the group of IDs)" is unsupported by the evidence it points

13   to or the testimony of its expert. *See* Mot. Ex. 40 at 95:22-96:14.

14       Samsung's misplaced reliance on its DOE arguments cannot save its infringement case.

15   Boilerplate and conclusory opinions under DOE are insufficient. Mot. 25. Thus, based on the record

16   before this Court, Huawei is entitled to summary judgment of non-infringement of the '825 patent.

17   **III.    CONCLUSION**

18       Huawei respectfully requests that this Court grant its motions for summary judgment on

19   Samsung's antitrust claim and for non-infringement on Samsung's '350, '130, '105 and '825 patents

20

21

22   Dated: July 24, 2018

23

24   David T. Pritikin (*Pro Hac Vice*)
     *dpritikin@sidley.com*

25   David C. Giardina (*Pro Hac Vice*)
     *dgiardina@sidley.com*

26   Douglas I. Lewis (*Pro Hac Vice*)
     *dilewis@sidley.com*

27   John W. McBride (*Pro Hac Vice*)
     *jwmcbride@sidley.com*

28   SIDLEY AUSTIN LLP

Respectfully submitted,

SIDLEY AUSTIN LLP
*/s/ Michael J. Bettinger*
Michael J. Bettinger (SBN 122196)
*mbettinger@sidley.com*
Irene Yang (SBN 245464)
*irene.yang@sidley.com*
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, California 94104

One South Dearborn
Chicago, Illinois 60603
(312) 853-7000 – Telephone
(312) 853-7036 – Facsimile

(415) 772-1200 – Telephone
(415) 772-7400 – Facsimile

*Attorneys for Huawei Technologies Co., Ltd.,
Huawei Device USA, Inc., Huawei Technologies
USA, Inc., and HiSilicon Technologies Co., Ltd.*