| | |
|---|---|
| Michael J. Bettinger (SBN 122196) | David T. Pritikin (*pro hac vice*) |
| mbettinger@sidley.com | dpritikin@sidley.com |
| Irene Yang (SBN 245464) | David C. Giardina (*pro hac vice*) |
| irene.yang@sidley.com | dgiardina@sidley.com |
| SIDLEY AUSTIN LLP | Douglas I. Lewis (*pro hac vice*) |
| 555 California Street, Ste. 2000 | dilewis@sidley.com |
| San Francisco, California 94104 | John W. McBride (*pro hac vice*) |
| 415-772-1200 – Telephone | jwmcbride@sidley.com |
| 415-772-7400 – Facsimile | SIDLEY AUSTIN LLP |
| | One South Dearborn |
| | Chicago, Illinois 60603 |
| | 312-853-7000 – Telephone |
| *Attorneys for Plaintiffs* | 312-853-7036 – Facsimile |
| HUAWEI TECHNOLOGIES CO., LTD. | |
| HUAWEI DEVICE USA, INC., | |
| HUAWEI TECHNOLOGIES USA, INC., and | |
| HISILICON TECHNOLOGIES CO., LTD. | |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HUAWEI TECHNOLOGIES CO., LTD., HUAWEI DEVICE USA, INC., and HUAWEI TECHNOLOGIES USA, INC., <br><br> Plaintiffs / Counterclaim-Defendants, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., <br><br> Defendants / Counterclaim-Plaintiffs, <br><br> and <br><br> SAMSUNG RESEARCH AMERICA, <br><br> Defendant, <br><br> v. <br><br> HISILICON TECHNOLOGIES CO., LTD., <br><br> Counterclaim-Defendant. | Case No. 3:16-cv-02787-WHO <br><br> **HUAWEI'S REPLY IN SUPPORT OF ITS DAUBERT MOTION ON TECHNICAL ISSUES** <br><br> Hearing Date: August 8, 2018 <br> Time: 2:00 p.m. <br> Location: Courtroom 2, 17th Floor <br> Judge: Hon. William H. Orrick <br><br> **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

**TABLE OF CONTENTS**

I.  PROCEDURAL OVERVIEW ................................................................................................1

II. ARGUMENT .......................................................................................................................2

    A.  '613 Patent – Dr. Lyon's Opinions Are Not Based on a Plain and Ordinary Meaning of Claim Terms. ...........................................................................................2

        1.  "Position Information"........................................................................................2

        2.  "Non-Zero Offset" ..............................................................................................3

    B.  '613 and '587 Patents – The Asserted Claims Are Directed Only to the User Equipment (UE), *Not* the Network .............................................................................4

    C.  '239 Patent – Dr. Madisetti's Opinions Are Not Based on a Plain and Ordinary Meaning of Claim Terms. ............................................................................5

        1.  "obtaining … a group number k of a sequence group allocated by the system"...............................................................................5

        2.  "the sequences correspond to at least one of: Zadoff-Chu sequences and Gauss sequences." ...............................................6

        3.  "Selecting … *n* sequences" ................................................................................7

    D.  '892 Patent – Dr. Madisetti's Opinions Are Not Based on a Plain and Ordinary Meaning of Claim Terms. ............................................................................7

        1.  "where $N_{CS}$ is a cyclic shift increment selected from a pre-defined set of cyclic shift increments" ..................................................8

        2.  "A Set of Random Access Preambles" ...............................................................8

    E.  '105 Patent – Dr. Prucnal Does Not Apply a Plain and Ordinary Meaning to the Mapping of FT Precoded Symbols and Non-FT Precoded Modulation Symbols. ........9

    F.  '825 Patent – Dr. Valenti Does Not Apply a Plain and Ordinary Meaning to the Term "Without Checking a Downlink Channel". .................................................10

    G.  '726 Patent – Dr. Bambos Does Not Apply the Plain and Ordinary Meaning to the Term "Associating a HARQ Process with the Calculated HARQ Process ID." .........12

    H.  '130 Patent – Dr. Bambos's Opinions Regarding SRS and CQI Are Not Reliable. ....13

        1.  "Mapping Data Information to Remaining Symbols" [SRS]...............................................................................................13

        2.  "CQI Information Is Multiplexed with the Data Information"................................................................................................14

III. CONCLUSION ..................................................................................................................15

# TABLE OF AUTHORITIES

*3M Innovative Prop. Co. v. Tredegar Corp.*,
 No. 2012-1241, 2013 WL 3984988 (Fed. Cir. 2013 Aug. 6, 2013) ...................................2, 3, 6, 9

*Akzo Nobel Coatings, Inc. v. Dow Chemical Co.*,
 811 F.3d 1334 (Fed. Cir. 2016)...................................................................................................12

*Apple, Inc. v Samsung Elecs. Co.*,
 No. 12-c-00630 LHK, 2014 WL 660857 (N.D. Cal. Feb. 20, 2014)..............................................1

*Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*,
 597 F.3d 1374 (Fed. Cir. 2010)...................................................................................................14

*Fujifilm Corp. v. Motorola Mobility LLC*,
 Case No. 12-cv-03587 WHO, 2015 WL 1265009 (ND Cal. Mar. 19, 2015)..................................1

*Genentech, Inc. v. Chiron Corp.*,
 112 F.3d 495 (Fed. Cir. 1997).......................................................................................................3

*Icon-IP Pty Ltd. v Specialized Bicycle Components, Inc.*,
 87 F.Supp. 3d 928, 945 (N.D. Cal. 2015) .....................................................................................1

*Mediatek Inc. v. Freescale Semiconductor, Inc.*,
 No. 11-cv-05341 YGR, 2014 WL 971765 (N.D. Cal. Mar. 5, 2014).............................................1

*Pacing Techs., LLC v. Garmin Int'l, Inc.*,
 778 F.3d 1021 (Fed. Cir. 2015)...................................................................................................10

*Thorner v. Sony Comp. Ent. Am. LLC*,
 669 F.3d 1362 (Fed. Cir. 2012)..........................................................................................2, 3, 9

*Tomita Techs. USA, LLC v. Nintendo Co., Ltd.*,
 855 F. Supp.2d 33 (S.D.N.Y. 2012)..............................................................................................2

*UniRAM Tech., Inc. v. Monolithic Sys. Tech., Inc.*,
 No. C-04-1268 VRW, 2006 WL 825460 (N.D. Cal. Mar. 30, 2006) ....................................12, 13

*Versa Corp. v. Ag-Bag Int'l Ltd.*,
 392 F.3d 1325 (Fed. Cir. 2004).....................................................................................................7

*Yeager v. Bowlin*,
 693 F.3d 1076 (9th Cir. 2012), *aff'd,* 495 Fed. Appx. 780 (9th Cir. 2012) .................................15

**Other Authorities**

Fed. R. Civ. Proc. 402 ........................................................................................................................5

Fed. R. Civ. Proc. 702........................................................................................................................5

## I. PROCEDURAL OVERVIEW

Samsung's attempt to recast Huawei's *Daubert* motion as improper claim construction ignores how its experts misapplied numerous claim terms. Huawei is moving to strike expert testimony that relies upon claim interpretations Samsung never before offered and which contravene plain meaning. Nine of the 12 issues addressed in Huawei's *Daubert* motion involve terms that neither party identified for construction. Each of these terms must be given its plain meaning, and the portions of Samsung's expert opinions that diverge from the plain meaning must be stricken. *Icon-IP Pty Ltd. v Specialized Bicycle Components, Inc.,* 87 F.Supp. 3d 928, 945 (N.D. Cal. 2015); *Apple, Inc. v Samsung Elecs. Co.,* No. 12-c-00630 LHK, 2014 WL 660857, at *1, 6 (N.D. Cal. Feb. 20, 2014); *Mediatek Inc. v. Freescale Semiconductor, Inc.,* No. 11-cv-05341 YGR, 2014 WL 971765, at *1, 2, 4 (N.D. Cal. Mar. 5, 2014). For the other three terms, Samsung said "no construction necessary" and refused to identify the terms' plain meaning. Its experts cannot now, for the first time, offer opinions contrary to the plain meaning. These opinions, too, must be stricken.

As this Court recognized in *Fujifilm Corp. v. Motorola Mobility LLC,* Case No. 12-cv-03587 WHO, 2015 WL 1265009, at * 5 (N.D. Cal. Mar. 19, 2015), the Court may, on a *Daubert* motion, "examin[e] the 'new claim constructions' in [the] expert reports to determine whether they 'exceed the bounds' of the claim terms' plain meaning." *Id.* at 9-10 (quoting *Apple*, 2014 WL 660857, at * 6). That is precisely what Judge Koh did in *Apple*, Judge Gonzalez Rogers did in *Mediatek*, Judge Tigar did in *Icon-IP* case, and what Huawei asks the Court to do here.

Huawei is not arguing that it is entitled to summary judgment once the portions of the opinions determined to exceed the bounds of plain meaning are stricken. For its patents, Huawei still must prove that each claim element is present in Samsung's accused devices. Samsung can rebut that evidence. Thus, Huawei only moved for summary judgment on Samsung patents ('350, '130, '105 and '825) where the plain meaning of an element establishes that the element is not present in the Huawei devices and, therefore, Huawei does not infringe as a matter of law.

1

## II. ARGUMENT

### A. '613 Patent – Dr. Lyon's Opinions Are Not Based on a Plain and Ordinary Meaning of Claim Terms.

#### 1. "Position Information"

Dr. Lyon's noninfringement argument based on the term "position information" relies on a narrow construction that requires a UE receiving position information for subframes that "actually contain" a service and excludes a UE receiving position information for subframes designated as MBSFN subframes. This narrow interpretation is contrary to the plain meaning of the claim language, and controlling law. *See 3M Innovative Prop. Co. v. Tredegar Corp.*, No. 2012-1241, 2013 WL 3984988, at *12 (Fed. Cir. 2013 Aug. 6, 2013) ("[O]ur cases do not support prescribing a more particularized meaning unless a narrower construction is *required* by the specification or prosecution history.") (emphasis added); *Thorner v. Sony Comp. Ent. Am. LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012) ("The patentee is free to choose a broad term and expect to obtain the *full scope* of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope") (emphasis added).

The plain meaning of "position information" is information relating to position. Dr. Lyon cannot present a narrow claim construction that conflicts with this plain meaning, and is contrary to the '613 specification. To the contrary, "the determination that a claim requires no construction constitutes a rejection of the narrow construction" proposed by a party. *See Tomita Techs. USA, LLC v. Nintendo Co., Ltd.*, 855 F. Supp.2d 33, 37-38 (S.D.N.Y. 2012).

Dr. Lyon cannot insert the words "actually contain" into the claim, when those words do not appear. The phrase "can be allocated to carry the service" does not change this result. Opp'n., 4. In LTE, certain subframes cannot even be "designated" as MBSFN subframes because they are reserved for control information or for other purposes. *See* ECF. No. 330-4, '613 patent at 8:4-14; Declaration of John W. McBride In Support of Huawei's Reply in Support of Its Daubert Motion on Technical Issues ("McBride Reply Declaration"), Ex. 31 (Akl Rpt.) ¶ 93. The phrase "subframes that can be allocated" is therefore broader than the phrase "subframes that are designated" under Huawei's construction. Samsung utterly fails to prove that the claim language requires a narrow

construction of "position information."

Samsung's reliance on the specification is equally unavailing.  Samsung's argument relies on interpreting the phrase "for sending a specific service" narrowly, but Samsung fails to mention that the specification expressly interprets that phrase broadly.  *See* ECF. No. 330-4,'613 patent 17:53-18:10; Mot., 4 n.2.  Samsung also fails to address any of the evidence from the specification that Huawei presented in its motion.  *See* Mot., 4.  Samsung therefore cannot prove that the specification compels its narrow construction of "position information."

Samsung's bold assertion, without evidentiary support, that Huawei's construction is inconsistent with the "primary purpose of the '613 patent"  (Opp'n., 5) is refuted by the evidence cited in Huawei's motion.  *See* Mot., 4 (citing portions of specification and testimony from inventor Xiaoan Fan).  For those reasons, this Court should preclude Dr. Lyon from testifying about his improper interpretation of "position information," and strike paragraphs 59, 64, 67, 71, 81-82, 120-21, 141-43, 153, 159 and 161 from his noninfringement report. *See* Ex. 39 (Lyon Rpt.).

### 2. "Non-Zero Offset"

The term "non-zero offset" does not appear in any of '613 claims.  During the *Markman* process, Samsung never proposed that the limitation be added to the claims, much less construed.  Dr. Lyon's addition of the limitation in his noninfringement report contravenes basic principles of claim construction.  *See 3M Innovative*, 2013 WL 3984988, at *12; *Thorner*, 669 F.3d at 1367.

Samsung points to nothing in the claim language that requires a non-zero offset.  Nothing in the claim language prohibits "position information" from including additional information—such as a "starting position"—in addition to a "number of specific radio frames" or an interval."  *See* ECF No. 330-4, '613 patent, claims 1 & 5.  And, because the claims use the transitional term "comprising," nothing in the claims precludes a UE from receiving a "starting position" separately from "position information."  *See Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997) ("'Comprising' is a term of art used in claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim.").  Either way, Samsung's argument that the claims provide "no mechanism" for a UE to receive information about a starting position (or offset) fails.

As explained in Huawei's motion, the specification provides multiple examples of embodiments that specifically contemplate use of non-zero offsets.  *See* Mot., 6.  Samsung responds that "Huawei cites no instance in the '613 patent specification where a non-zero offset is used" (Opp'n., 6), but that is wrong.  The specification clearly contemplates use of non-zero offsets.  *See* Mot., 6.  The fact that the specification states that the offset "*may*" be set to zero, *see, e.g.* ECF. No. 330-4, '613 patent at 14:26-27, in no way ***requires*** or ***compels*** the offset to be zero, and in fact clearly signals that the offset need not always be set to zero.  Samsung's untenable interpretation of the specification shows that its claim construction position is baseless.  For these reasons, the Court should preclude Dr. Lyon from testifying that claims 1 and 5 of the '613 patent require a non-zero offset, and strike paragraphs 171-75 of his noninfringement report.  *See* Ex. 39 (Lyon Rpt.).

**B.     '613 and '587 Patents – The Asserted Claims Are Directed Only to the User Equipment (UE), *Not* the Network**

Samsung cites no case showing that divided infringement can apply to a product claim. *See* Opp'n., 8.  The claims at issue here are product claims, not "system" claims like the ones at issue in *Centillion*.  *See* Opp'n., 9.  Even if *Centillion* were relevant, Samsung does not contest the fact that it at least imports, offers for sale, and sells in the United States the accused Samsung phones.  *See* Mot., 7-8.  Thus, Samsung has failed to set forth any legal basis for Dr. Lyon's divided infringement arguments for claim 5 of the '613 patent and claim 9 of the '587 patent.

Samsung attempts to rewrite the '613 claim language to distinguish the *Uniloc* and *Tech. Patents* cases cited in Huawei's motion.  *See* Opp'n., 9.  In doing so, Samsung misleadingly omits the critical requirement that precedes the quoted language it quotes, which unambiguously focuses the limitation on the UE—"***receiving, by a user equipment (UE)***, a service sent by a base station."

For the '587 patent, Samsung *paraphrases* the asserted claims.  *See* Opp'n., 10.  The actual language of the claims, which Samsung fails to quote or analyze, does not require a base station to send DCI—it merely requires ***the UE*** to "***receiv[e] downlink control information (DCI)*** which is sent by a base station."  Declaration of John W. McBride in Support of Huawei's Daubert Motion on Technical Issues ("McBride Declaration," ECF No. 330-1) Ex. 9, '587 patent at claims 3 & 9.  And, the claims do not require a base station to configure the common field in the DCI; they merely

1  explain how the common field must be configured in the DCI when it is received and acted on *by the*
2  *UE*: "wherein the common field is configured as one command according to a type of downlink
3  component carrier . . . ." *Id*.

4  Finally, Samsung acknowledges that Dr. Lyon's opinions in paragraphs 188-90 of his '613
5  infringement report and paragraphs 134-36 of the '587 infringement report are only relevant "*if* there
6  is a determination that the asserted claims require multiple actors to infringe the claims." Opp'n., 8
7  (emphasis in original). There has been no such determination, and Samsung has not asked this Court
8  for such a determination, rendering Dr. Lyon's divided infringement opinions irrelevant and
9  unhelpful to the trier of fact pursuant to Rules 402 and 702 of the Federal Rules of Evidence.

10      **C.**    **'239 Patent – Dr. Madisetti's Opinions Are Not Based on a Plain and Ordinary Meaning of Claim Terms.**

11          **1.**    **"obtaining … a group number k of a sequence group allocated by the system"**

13  Samsung does not dispute that the plain meaning of the claim term "obtaining" allows for
14  the UE to calculate the group number k. Opp'n., 11:25-12:1. But Samsung argues that "allocated by
15  the system" changes that meaning. *Id*. Not so. The plain meaning of "obtaining … a group number
16  k of a sequence group allocated by the system" allows the UE to calculate the group number k.

17  That the system must "allocate" the "group number k" does not mean that it must transmit
18  (and the mobile receive) that number. The system could easily allocate the "group number k" and
19  then send data allowing the mobile to calculate it. This is consistent with the dictionary definition of
20  "allocate" as "to set apart for a particular purpose." *See* ECF No. 355-11 (definition of "allocate").
21  As an analogy, if the company allocates an office to a new employee, and gives the employee a map
22  to find the office (*e.g.*, fourth floor, south side, third office from the right), the company has
23  allocated the office and the new employee has obtained the office, even though the employee had to
24  follow the map to find it and never received the office number.

25  Further, the '239 patent uses the term "obtaining" according to its plain meaning, providing
26  that "[t]he transmitter and the receiver may *obtain the data through calculation* …" McBride Decl.
27  Ex. 16, '239 patent 13:12-13; 21:47-48 (emphasis added). This contradicts Dr. Madisetti's read of
28  "obtaining" as excluding "calculating," even if it is describing processing different data. Opp'n., 12.

For these reasons, the Court should preclude Dr. Madisetti from testifying about his improper interpretation of "obtaining," and strike paragraphs 64 and 65 from his noninfringement report.

### 2. "the sequences correspond to at least one of: Zadoff-Chu sequences and Gauss sequences."

Contrary to Dr. Madisetti's opinion, "correspond" does not mean "actually be." Opp'n., 13:11-12. Claim terms are given the full breadth of their meaning. *3M Innovative.*, 2013 WL 3984988, at *12. The plain meaning of "correspond" includes "to be in agreement or conformity" and "to be similar or analogous." McBride Reply Decl. Ex. 32. "If one thing corresponds to another, there is a close similarity or connection between them. You can also say that two things correspond." McBride Reply Decl. Ex. 33.

As these definitions show, "correspond" means "to be equivalent or parallel" or "similar or analogous." Indeed, "correspond to," as in the claim, can describe a "connection" between two things, like the generated sequences and the ZC sequences comprising them. As explained in the motion, the generated sequences contain a ZC sequence plus the repetition of as much of that sequence as is necessary to complete the sequence. Mot., 16:15-16. The ZC sequence in such a case is at least "analogous" to the generated sequence as well as "in conformity" with it and "equivalent or parallel" to it. And there is certainly a "connection" between the two.

Further, the context of this patent and its technology demonstrates that "correspond" has a broader meaning. The specification repeatedly uses "correspond" to mean two things having a relationship with each other or where one is generated from the other. For example, the specification says that "[t]he sequences corresponding to several basic sequence indexes near $r_m$ that makes $(r_m/N_m-k_1/N_1)$ the smallest are included into a sub-group." McBride Decl. Ex. 16, 19:34-36. And the specification explains that "$f_i(\bullet)$ is a function corresponding to the sub-group i determined by the system," *Id.*, 21:12-13. In the former the sequences are generated using the basic sequence indexes, and in the latter, the function represents a mathematical calculation from the sub-group i.

The '239 patent uses "correspond" similar to its use in technology areas that give it a broader meaning than in Samsung's dictionary. *See* McBride Reply Decl. Ex. 34. Even the dictionary Samsung cites uses "correspondence" in a different way when defining "function." *See* McBride

Reply Decl. Ex. 35. This is consistent with common parlance for functions where, *e.g.*, for the function $x^2$, the input x=2 corresponds to the function value of 4 because $2^2 = 4$. Thus, as the motion explains, the generated sequence corresponds to the ZC sequences that comprises it. Mot., 16:19-21. For these reasons, this Court should preclude Dr. Madisetti from testifying about his improper interpretation of "correspond" and strike paragraphs 92 to 95 of his noninfringement report.

### 3. "Selecting … *n* sequences"

Samsung wrongly argues that the claim requires plural sequences, even though its expert opines no more than that the claim language is plural. As Huawei's motion shows, that the term "n sequences" is plural does not mean the claim requires more than one sequence. Mot at 17:8-22; *see Versa Corp. v. Ag-Bag Int'l Ltd.*, 392 F.3d 1325, 1330 (Fed. Cir. 2004).

According to Samsung, "Dr. Madisetti points out that asserted claims "require[] 'selecting . . . n sequences' (plural) so this would require the selection of more than one sequence per sub-group." Opp'n., 14. Dr. Madisetti does nothing more than identify the term "n sequences" as plural, which does not show that the context of the claim requires more than one sequence. Indeed, this argument would overrule *Versa* because anytime the claim term was plural, the context would require more than one, which is the opposite of *Versa*.

Samsung also relies on its expert's conclusory statements instead of the claim language and specification. Opp'n., 14. The specification, as explained in Huawei's motion, shows that there can be one sequence (Mot., 17:16-19). And the '239 patent explains that "N is a length of *a sequence* in the candidate sequence collection."). McBride Decl. Ex. 16, '239 patent, 25:15-16 (emphasis added). The claim also recites that "n is a natural number," and natural numbers include 1. *See* McBride Reply Decl. Ex. 36. Unasserted dependent claim 8 expressly says that "n" can be one: "wherein n is a value from the group of values consisting of: one …" *See* McBride Decl. Ex. 16, '239 patent, 25:27-29. Consistent with the *Versa* decision, the plain meaning of "n sequences" can include one or more sequences. For these reasons, this Court should preclude Dr. Madisetti from testifying that about his improper interpretation of "n sequences" and strike paragraphs 76 and 77 of his non-infringement report.

### D. '892 Patent – Dr. Madisetti's Opinions Are Not Based on a Plain and Ordinary

**Meaning of Claim Terms.**

1. **"where $N_{CS}$ is a cyclic shift increment selected from a pre-defined set of cyclic shift increments"**

Samsung argues that the selecting of $N_{CS}$ must be performed by the same device that performs the other claimed "selecting." Opp'n., 15:28-16:3. The claims, however, contain no language to support Samsung's reading.

Claim 1 first recites "selecting, by a user equipment (UE), a random access preamble from a set of random access preambles." In the "transmitting" step the claim expressly uses more general language to recite "where $N_{CS}$ is a cyclic shift increment selected from a pre-defined set of cyclic shift increments." The latter element does not identify what performs the selecting, while the former does. There is no reason to read the "user equipment" from the former element into the latter.

Claim 10 requires no different result. First, claim 10 recites that the claimed apparatus, Samsung's phone, "select[s] a random access preamble from a set of random access preambles." The claim then cites that Samsung's phone "transmit[s] the selected random access preamble." But, the claim uses different language for selecting the $N_{CS}$: "where $N_{CS}$ is a cyclic shift increment selected from a pre-defined set of cyclic shift increments." On its face, this element requires no more than the "$N_{CS}$" be selected, not that any particular device do so.

Dr. Madisetti's opinion contradicts the plain meaning of the claim language. Thus, this Court should preclude Dr. Madisetti from testifying about his improper interpretation of selecting of $N_{CS}$ and strike paragraphs 118 and 119 of his noninfringement report.

2. **"A Set of Random Access Preambles"**

Dr. Madisetti posits, for the first time in his noninfringement report, that the asserted claims require storing a complete "set" of random access preambles. Opp'n., 16:18-20. But the claim contains no requirement to store the set of random access preambles. Dr. Madisetti's opinion contradicts the plain claim language and should be excluded.

The claim does not require that the "set of random access preambles" be stored anywhere, whether on the UE or elsewhere. Samsung never proposed construing "a set of random access preambles" and never suggested in the *Markman* process that the term "store" should be added to the

1   claims.  Indeed, the term "store" does not appear in any claim of the '892 patent.  It contravenes
2   plain meaning, and controlling law, to insert the limitation into the claim.  *See 3M Innovative,* 2013
3   WL 3984988, at *12; *Thorner*, 669 F.3d at 1367.

4         Samsung fails to support its arguments, instead referring to Huawei's analogies as "half-
5   baked" without explaining why (Opp'n. 16:22-27) and then asserting that the plain language is
6   contrary to Huawei's analogies without identifying that language or explaining why the claim
7   language is contrary.  *Id.* at 16:25-27. Thus, this Court should preclude Dr. Madisetti from testifying
8   about his improper interpretation of the "set of random access preambles" and strike paragraphs 123
9   and 126 of his noninfringement report.

10        **E.    '105 Patent – Dr. Prucnal Does Not Apply a Plain and Ordinary Meaning to the Mapping of FT Precoded Symbols and Non-FT Precoded Modulation Symbols.**

11        Dr. Prucnal's opinion relies on a legally incorrect reading of the claim language that, in fact,
12  contradicts its plain meaning. Opp'n. 10:26-12:6. This is not merely a dispute over the "correctness"
13  of Dr. Prucnal's "conclusions," as Samsung asserts.  Opp'n., 21:9-13.  Dr. Prucnal misreads the plain
14  claim language.

15        Claim 28 requires performing the IFT "*on at least one of*" the two sets of subcarriers.  ECF
16  No. 328-44, '105 patent, 13:56-61.  Samsung argues that this language contradicts Huawei's
17  argument that the claimed mapping steps must occur such that both sets of subcarriers are available
18  for the same IFT operation.  Opp'n. 22:1-10.  However, Samsung offers no explanation *why*. *Id*.
19  Samsung further argues – again without any explanation *why* – that "[n]or is there any requirement
20  in the claims or specification that the same IFT operation be performed on both sets of subcarriers."
21  *Id*. at 22:11-12 (emphasis removed). Contrary to Samsung's arguments, claim 28 requires the ability
22  to "*perform an inverse Fourier Transform (IFT) operation*" on both sets of subcarriers at the same
23  time—because "at least one of" includes both, as well as either.  *See* ECF No. 328-44, '105 patent at
24  13:56-61.  The claim recites only one IFT operation, so to perform the IFT on both sets of
25  subcarriers requires that both sets be available at the same time.  *See id*.

26        Samsung points to an embodiment with a "switch" as allegedly read out by this construction.
27  Opp'n. 22:13-15. But "where the patent describes multiple embodiments, every claim does not need

to cover every embodiment." *Pacing Techs., LLC v. Garmin Int'l, Inc.*, 778 F.3d 1021, 1026 (Fed. Cir. 2015) (citation omitted). The switch described in the '105 patent makes *only one* set of subcarriers available for an IFT operation. *See* '105 patent, 9:39-45. This switch is therefore inconsistent with claim 28, which recites performing the IFT "on at least one" set of subcarriers, which must allow performing the IFT on both sets.[1] Thus, the Court should preclude Dr. Prucnal from testifying about his improper interpretation of the mapping of non-FT pre-coded modulation control symbols and should strike paragraphs 432, 433, 436-38, 440, 442-45 of his infringement report.

### F. '825 Patent – Dr. Valenti Does Not Apply a Plain and Ordinary Meaning to the Term "Without Checking a Downlink Channel."

Samsung concedes that the plain and ordinary meaning of "without checking a downlink channel" precludes *all* checking of a downlink channel for any messages. Mot., 20-22; Opp'n. 23-24 ("[N]ot monitoring . . . requires not looking for *the messages* that [a channel] carries."). Samsung does not dispute that, as Huawei contends, the plain and ordinary meaning of "without checking a downlink channel" precludes checking for some, but not all, messages on a downlink channel.

Having conceded that its original implicit interpretation of "without checking a downlink channel"—that it means "without checking a downlink channel for a specific message"—is incorrect, Samsung re-interprets Dr. Valenti's report to backtrack from the statements made in the report and at his deposition. Specifically, Samsung argues that Dr. Valenti identified a "random access PDCCH" as the channel not checked, instead of the "PDCCH" generally. Opp'n., 24-25. However, Dr. Valenti's report never discusses a "random access PDCCH" as Samsung's opposition alleges, nor explains or otherwise argues that there is a random access-only PDCCH, let alone multiple individual PDCCH channels, one for each type of message carried on the PDCCH. When Dr. Valenti describes the protocol stack for the user-plane in his report, he describes the PDCCH as a single channel: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ McBride Reply Decl. Ex. 40, Valenti Rep. ¶ 83; *id.*

---

[1] Huawei properly disclosed its non-infringement argument to Samsung, as explained in Huawei's Opposition to Samsung's Motion to Strike. ECF No. 347-08 at 12:17-14:9.

1    at ¶ 91 ███████████████████████████████████████████████
2    ██████████████████████████ (emphasis added); *id.* at ¶ 97 ████████████████
3    ████████████████████████████████████████████████████████████████████████
4    ████████████████████████████████████████████████████████████████████████
5    ████████ (emphasis added).
6        Dr. Valenti pointed to a single PDCCH channel and relied on an interpretation of "without
7    checking a downlink channel" that required not "checking" the PDCCH only for a specific type of
8    message (the random access response).  Dr. Valenti states that, ██████████████████████
9    ████████████████████████████████████████████████████████████████████████
10   ██████████████████████████████████████████████ *Id.*, ¶ ¶ 519, 761.
11   Samsung's current theory is nowhere discussed in Dr. Valenti's opening report.  It argues that Dr.
12   Valenti explained ████████████████████████████████████████
13   ███████████████████████ but the cited testimony does not support Samsung's random access
14   response-only PDCCH theory.  *See* Opp'n., 24 (citing Valenti Rep. ¶ 470, 478, 483).  None of those
15   paragraphs mentions the PDCCH, and Samsung has identified no support in Dr. Valenti's report for
16   its current re-interpretation. Indeed, Dr. Valenti's testimony during his deposition about "different
17   PDCCHs" confirms that his prior testimony was unreliable.  *See* McBride Reply Decl. Ex. 41,
18   Valenti Dep. Tr. 90:10-24.  Samsung offers no explanation for Dr. Valenti's testimony that he
19   ████████████████████████████████████████████████████████████████████ …." *Id.*,
20   90:6-24.
21       Samsung argues Dr. Valenti applied the plain and ordinary meaning of "without checking a
22   downlink channel" because he meant a "random access PDCCH" (a phrase never used in his report)
23   instead of "PDCCH."  But his report never raised this distinction, and his analysis relies on ██████
24   ███████████████████████████████████████. Dr. Valenti's testimony relies on an implicit
25   claim construction that even Samsung cannot defend.  For these reasons, this Court should exclude
26   Dr. Valenti from testifying about his improper interpretation of the phrase "without checking a
27   downlink channel," and strike paragraphs 459-60, 467, 470, 478-79 and 483-87 of his infringement
28   report.

### G. '726 Patent – Dr. Bambos Does Not Apply the Plain and Ordinary Meaning to the Term "Associating a HARQ Process with the Calculated HARQ Process ID."

Dr. Bambos' interpretation of the term "associating" impermissibly renders the limitation meaningless and, as a result, contrary to its plain meaning. *See Akzo Nobel Coatings, Inc. v. Dow Chemical Co.*, 811 F.3d 1334, 1340 (Fed. Cir. 2016); *UniRAM Tech., Inc. v. Monolithic Sys. Tech., Inc.*, No. C-04-1268 VRW, 2006 WL 825460, at *15 (N.D. Cal. Mar. 30, 2006) ("Because a limitation cannot be construed out of the claims, UniRAM's proposed construction cannot be correct.").

Claim 11 requires "a ***controller that calculates*** a HARQ process IDentifier (ID) using the number of HARQ processes of the persistent resource allocation, the persistent resource allocation interval information, and time information, ***and associating*** a HARQ process with the calculated HARQ process ID."  McBride Decl. Ex. 28, '726 patent, claim 11 (emphasis added). But Dr. Bambos' infringement theory with respect to Huawei's products amounts to pointing to two lines of code on which HARQ process IDs are allegedly *calculated*.  ECF. No. 330 at 25; McBride Decl. Ex. 12, Bambos Infr. Rpt. ¶¶ 847 and 855.  Furthermore, during his deposition, Dr. Bambos reaffirmed his position that the "associating" limitation is subsumed within the "calculation" limitation. *See, e.g.*, McBride Reply Decl. Ex. 38, Bambos Dep. 149:7-15, 150:12-151:8, 154:9-155:5, and 158:8-15 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  Yet, when asked point blank about his understanding of the plain and ordinary meaning of "associating," Dr. Bambos could not provide any construction that did not read the term out of the claim. *Id.*, 149:16-155:5. The plain and ordinary meaning of a claim term cannot be that it is meaningless. *See Akzo*, 811 F.3d at 1340; *UniRAM Tech.*, 2006 WL 825460, at *15.[2]

Samsung argues that ¶ 265 of Dr. Bambos' infringement report—where he asserts that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓—was in

---

[2] Samsung makes the statement that Huawei's *Daubert* challenge fails for not addressing "a crucial piece of evidence" in the LTE standard.  ECF No. 335-4 at 20-21.  Although irrelevant for the reason already explained, Dr. Bambos' infringement report nevertheless fails to prove where the alleged "association" of the LTE standard is embodied in the HiSilicon and Qualcomm code. *See* McBride Decl. Ex. 12, Bambos Infr. Rpt , ¶¶ 847 and 855.

1   response to Huawei's proposed construction of the phrase "associating a HARQ process with the
2   calculated HARQ process ID." ECF 335-4 at 20. But Huawei's proposed construction of that
3   phrase[3] does not concern how anything is *calculated*; instead, it addresses what it means for a
4   HARQ process to be *associated* with a calculated HARQ process ID in the context of claim 11.
5   Paragraph 265 of Dr. Bambos' infringement report is exactly what it says: an explanation that,
6   according to Dr. Bambos, one of ordinary skill would understand that the "associating" limitation
7   would include the calculation of the HARQ process ID. McBride Decl. Ex. 12, Bambos Infr. Rpt. ¶
8   265; McBride Reply Decl. Ex. 38, Bambos Dep. 149:7-15.
9       For these reasons, the Court should preclude Dr. Bambos form testifying about his improper
10  interpretation of the term "associating," and strike paragraphs 837, 847, and 855 of his infringement
11  report. *See* Ex. 37 (Bambos Rpt.).
12      **H.**    **'130 Patent – Dr. Bambos's Opinions Regarding SRS and CQI Are Not Reliable.**
13      **1.**    **"Mapping Data Information to Remaining Symbols" [SRS]**
14      Dr. Bambos opinion that the "remaining symbols" contain data information is not reliable.
15  Dr. Bambos first opined that Huawei satisfied the "remaining symbols" element even though the
16  claim requires "data information" in all the "remaining symbols" (all symbols other than the one
17  with the reference signal) by ignoring the significance of the SRS in some symbols meant that all
18  remaining symbols did not contain data information. In response, Samsung now asserts that Huawei
19  infringes sometimes—"the presence of the SRS is the exception, not the rule, and in all of the cases
20  where the SRS is not present, data is mapped to the remaining symbols." Mot., 12:7-10, 12:20-13:1.
21  Dr. Bambos's inconsistent testimony does not support either his opinion or Samsung's assertions.
22      In support of its assertion, Samsung relies on Dr. Bambos, who first said that the
23  ████████████████████████████████████████ (McBride Reply Decl. Ex. 37, Bambos Infr.
24  Rpt. ¶ 558), but then at his deposition (which occurred after the opening motion) ████████
25  ████████████████████████████ McBride Reply Decl. Ex. 38, Bambos Dep. 52:5-53:8.
26  Then he testified that his opinions regarding the frequency of an SRS were not based on any facts or
27  knowledge. *Id*. at 54:1-14.
28

---

[3] "Mapping a HARQ process with a calculated HARQ process ID index." ECF No. 124-3 at 54.

Moreover, Samsung now asserts that Huawei sometimes infringes, when a slot contains no SRS. But Dr. Bambos never opined that infringement is conditioned upon the absence of SRS. To the contrary, Dr. Bambos's conclusion was unequivocal, that all Huawei phones perform claim 13C. McBride Decl. Ex. 12, Bambos Infr. Rpt. ¶ 564 ███████████████████████████████████████████████████████████████ (emphasis added). Dr. Bambos's report ignored the effect of SRS, asserting that the ███████████████████████████████████ Id. at ¶ 558. The opinion that Huawei always infringes is inconsistent with Dr. Bambos's admissions regarding SRS substituting for the data information in some symbols and the claim language requiring data information in all remaining symbols. And Samsung's new argument that Huawei only sometimes infringes is too late and not supported by Dr. Bambos's opinion. Dr. Bambos never offered a conditional infringement opinion and should be barred from doing so now.  For all the above reasons, this Court should strike paragraphs 555-57, 564-66, 575-77, 582-85 and 587-594 from Dr. Bambos's infringement report.[4]  *See* Ex. 37.

### 2. "CQI Information Is Multiplexed with the Data Information"

In his opening report and declaration, Dr. Bambos offered an unequivocal opinion regarding the CQI information: ██████████████████████████████████████████████████████████████████████████████████████████████████████████ McBride Decl. Ex. 12, Bambos Infr. Rpt. ¶ 564 (emphasis added). Another of Samsung's own expert witnesses then contradicted the opinion. Mot., 13:25-14:6. Huawei asked the Court to strike Dr. Bambos's opinion.

In response, Samsung now contradicts Dr. Bambos's statement, contending that "Dr. Bambos never stated that CQI information is always mapped to all non-reference signal symbols." Opp'n., 18:15-16. Samsung has submitted a new declaration from Dr. Bambos contradicting his prior report and declaration to change his earlier opinion: ██████████████████████████████████████████████ ECF No.

---

[4] Samsung also contends that Huawei's non-infringement argument based on SRS was not disclosed in its interrogatory response. As explained in opposition to Samsung's motion to strike, Huawei provided Samsung with notice by explaining that the accused Huawei products do not practice the "*mapping the data information to remaining symbols . . .*" limitation. ECF No. 347-08 at 15:3-9.

1    357-42, Ex. 21, Bambos Decl. ¶ 16.

2    A party cannot defeat a motion by submitting a declaration contradicting a witness's earlier testimony or declaration. *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012), *aff'd,* 495 Fed. Appx. 780 (9th Cir. 2012); *Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1381-82 (Fed. Cir. 2010). Even though these cases involve summary judgment motions, they stand for the proposition that a jury is not asked to decide which contradicting statement from a witness to believe. Dr. Bambos's contradicting opinions should therefore be excluded.

This is not an issue for impeachment as Samsung argues. Opp'n., 19:14-18. Juries do not sit to decide which contradicting opinion offered by the same party to believe (including two from Dr. Bambos and one from Dr. Prucnal). Moreover, Dr. Bambos's new declaration, which contradicts his earlier declaration, further confirms that his original infringement opinion is unreliable. And Dr. Bambos's opinion in his original report contradicts another of Samsung's experts, Dr. Prucnal. *See* Mot., 13:18-26. Huawei should not have to guide the jury through Samsung's morass of contradicting opinions to impeach Dr. Bambos. His opinion should be excluded, his supplemental declaration should be stricken, and paragraphs 563, 687, 688, 692-95 and 701-08 should be stricken.[5] *See* Ex. 37 (Bambos Rpt.).

### III. CONCLUSION

For the reasons stated above, Huawei respectfully requests that this Court grant Huawei's *Daubert* motions, striking the requested paragraphs from the Samsung expert reports.

Dated: July 24, 2018

Respectfully submitted,

SIDLEY AUSTIN LLP

*/s/ Michael J. Bettinger*

---

[5] Dr. Bambos's new declaration raises new issues as well. It seeks to supplement his original infringement report and declaration but it is extremely untimely. In addition, Dr. Bambos originally opined that ████████████████████████████████████████████████ because Samsung needed that to show infringement. *See* Dkt. No. 328-34, '130 Patent, Claim 13 ("wherein CQI information is multiplexed with the data information"). Dr. Bambos's new opinion raises new non-infringement and potentially discovery issues. Now, however, it is too late for Huawei to take discovery, to provide rebuttal expert opinions, or to move for summary judgment. Dr. Bambos's untimely opinion should be excluded for these reasons too.

| | |
|---|---|
| David T. Pritikin (*Pro Hac Vice*) | Michael J. Bettinger (SBN 122196) |
| *dpritikin@sidley.com* | *mbettinger@sidley.com* |
| David C. Giardina (*Pro Hac Vice*) | Irene Yang (SBN 245464) |
| *dgiardina@sidley.com* | *irene.yang@sidley.com* |
| Douglas I. Lewis (*Pro Hac Vice*) | SIDLEY AUSTIN LLP |
| *dilewis@sidley.com* | 555 California Street, Suite 2000 |
| John W. McBride (*Pro Hac Vice*) | San Francisco, California 94104 |
| *jwmcbride@sidley.com* | (415) 772-1200 – Telephone |
| SIDLEY AUSTIN LLP | (415) 772-7400 – Facsimile |
| One South Dearborn | |
| Chicago, Illinois 60603 | *Attorneys for Huawei Technologies Co., Ltd.,* |
| (312) 853-7000 – Telephone | *Huawei Device USA, Inc., Huawei Technologies* |
| (312) 853-7036 – Facsimile | *USA, Inc., and HiSilicon Technologies Co., Ltd.* |

16

HUAWEI'S REPLY IN SUPPORT OF ITS DAUBERT MOTION ON TECHNICAL ISSUES; CASE NO. 3:16-CV-02787-WHO