REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Attorneys for Samsung Electronics Co., Ltd.,
Samsung Electronics America, Inc., and
Samsung Research America, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HUAWEI TECHNOLOGIES CO., LTD., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., et al.,<br><br>Defendants.<br><br>SAMSUNG ELECTRONICS CO., LTD. & SAMSUNG ELECTRONICS AMERICA, INC.<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>HUAWEI TECHNOLOGIES CO., LTD., HUAWEI DEVICE USA, INC., HUAWEI TECHNOLOGIES USA, INC., & HISILICON TECHNOLOGIES CO., LTD.<br><br>Counterclaim-Defendants. | CASE NO. 16-cv-02787-WHO<br><br>**REPLY IN SUPPORT OF SAMSUNG'S MOTION TO STRIKE PORTIONS OF HUAWEI'S EXPERT REPORTS**<br><br>**Hearing Date: August 8, 2018<br>Time: 2:00 p.m.<br>Place: Courtroom 2, 17th Floor<br>Judge: Hon. William H. Orrick** |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................1

II. ARGUMENT .......................................................................................................................1

    A.    Huawei Failed to Disclose Its '825 Invalidity Contentions ........................................1

        1.    Huawei's "Predetermined Delay Duration" Argument Is New .....................1

        2.    Huawei's Arguments on Claim 4's Structural Elements Are New ................3

    B.    Huawei Failed to Disclose Its Non-Infringing Alternatives for the Samsung Patents-in-Suit During Discovery ...............................................................................4

    C.    Huawei Failed to Disclose Its Noninfringement Theories During Discovery ...........7

    D.    Huawei Failed to Disclose Its Non-Infringing Alternatives for the Huawei Patents-in-Suit During Discovery .............................................................................11

    E.    Huawei Failed to Timely Disclose Its Priority Date Analyses for the '587 and '892 Patents ......................................................................................................13

    F.    Huawei Did Not Properly Disclose Its Doctrine of Equivalents Argument for the "Group Number k" Limitation of the '239 Patent .........................................14

III. CONCLUSION ..................................................................................................................15

# **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*AAT Bioquest, Inc. v. Texas Fluorescence Laboratories, Inc.*,
  No. 14–cv–03909–DMR, 2015 WL 1738402 (N.D. Cal. Apr. 13, 2015) ............................ 2

*AMEC Ent. & Infrastructure, Inc. v. Geosyntec Consultants, Inc.*,
  2013 WL 3923459 (N.D. Cal. July 26, 2013) ................................................................... 7

*ASUS Comp. Int'l v. Round Rock Research, LLC*,
  No. 12–CV–02099–JST(NC), 2014 WL 1463609 (N.D. Cal. Apr. 11, 2014) .................... 4

*BioCell Technology LLC v. Anthro-7*,
  2013 WL 12131282 (N.D. Cal. Apr. 16, 2013) ............................................................. 2, 4

*Biogenex Labs., Inc. v. Ventana Medical Systems, Inc.*,
  No. C 05-860 JF(PVT), 2006 WL 2228940 (N.D. Cal. August 3, 2006) ........................... 3

*Dynetix Design Sols., Inc. v. Synopsys, Inc.*,
  No. C 11-5973 PSG, 2013 WL 4537838 (N.D. Cal. Aug. 22, 2013) ................................ 15

*Edgewell Personal Care Brands, LLC v. Albaad Massuot Yitzhak, Ltd.*,
  No. 15-1188-RGA, 2017 WL 19007362017 (D. Del. May 9, 2017) ................................. 1

*Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*,
  2017 WL 5137401 (E.D. Tex Nov. 4, 2017) ............................................................ 4, 5, 7

*Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*,
  2017 WL 5257001 (N.D. Cal. Nov. 13, 2017) ................................................................. 2

*Matthew Enter., Inc. v. Chrysler Grp. LLC*,
  2016 WL 4272430 (N.D. Cal. Aug. 15, 2016) ................................................................. 6

*Mediatek Inc. v. Freescale Semiconductor, Inc.*,
  2014 WL 2854773 (N.D. Cal. June 20, 2014) ......................................................... 2, 7, 8

*Mediatek Inc. v. Freescale Semiconductor, Inc.*,
  2014 WL 690161 (N.D. Cal. Feb. 21, 2014) ................................................................... 4

*Medimmune*,
  2010 WL 760443 (N.D. Cal. Mar. 4, 2010) .................................................................... 3

*Precision Fabrics Grp. v. Tietex Int'l, Ltd.*,
  297 F. Supp. 3d 547 (D. S.C. 2018) ................................................................................. 5

*SPH Am., LLC v. Research in Motion Ltd.*,
  2016 WL 6305414 (S.D. Cal. Aug. 16, 2016) .................................................................. 7

*Tennison v. City & Cnty. of S.F.*,
  226 F.R.D. 615 (N.D. Cal. 2005) ..................................................................................... 7

*ZiiLabs Inc., Ltd. v. Samsung Elecs. Co. Ltd.*,
    2015 WL 6690403 (E.D. Tex. Nov. 2, 2015) ................................................................. 6, 7

**Rules and Regulations**

Fed. R. Civ. P. 26(a)(2)(D) ............................................................................................................ 6

Fed. R. Civ. P. 29(b) .................................................................................................................... 13

Fed. R. Civ. P. 33(b)(2) ............................................................................................................... 13

Fed. R. Civ. P. 33(b)(3) ............................................................................................................... 12

Patent L.R. 3-3(d) .......................................................................................................................... 3

## I. INTRODUCTION

Huawei doesn't deny that its expert reports include brand new theories and arguments that were not disclosed during discovery, and instead, Huawei attempts to excuse its untimely disclosures by alleging that it was merely rebutting Samsung's arguments that it could not have anticipated and that Samsung has suffered no prejudice.  These arguments are meritless and cannot disguise or excuse Huawei's failure to comply with its discovery obligations under the Federal Rules of Civil Procedure and the Patent Local Rules.  This Court should therefore strike the belated opinions addressed in Samsung's Motion and discussed below, all of which were offered for the first time in Huawei's expert reports.

## II. ARGUMENT

### A. Huawei Failed to Disclose Its '825 Invalidity Contentions

#### 1. Huawei's "Predetermined Delay Duration" Argument Is New

*First*, with respect to indefiniteness, Huawei relies on its pre-Markman briefing disclosure of a purported indefiniteness argument with respect to "predetermined delay duration." *See* Opp. at 9-10.  However, despite the parties identifying this as one of the ten most important terms for claim construction in this case, and the parties' extensive briefing and argument with respect to that term for the Court's consideration at Markman, nowhere in that briefing or argument did Huawei reference any position that the term is indefinite.  Nor does Huawei explain how it is possible to reconcile its provision of a clear and definite claim construction with an alleged position that the term is also indefinite.  Indeed, the only disclosure in that Markman briefing on which Huawei relies as allegedly disclosing an indefiniteness (or written description) argument is the non-consequential statement that "[t]he '825 patent … describes a single way of predetermining the delay duration that is necessary in order for the invention to work." Opp. at 11.  Accordingly, this indefiniteness argument is waived. *Edgewell Personal Care Brands, LLC v. Albaad Massuot Yitzhak, Ltd*., No. 15-1188-RGA, 2017 WL 19007362017, slip op. at 4 (D. Del. May 9, 2017).

*Second*, with respect to written description, it is uncontroverted that neither Huawei's Rule 3-3 nor Rule 4-3 disclosures mention "written description" regarding "predetermined delay duration," let alone provide a written description contention with a level of specificity to allow

meaningful discovery.[1]  *See* Ex. 1 at 80; Dkt. 124-3 at 62.  Straightforward application of the Local Rules therefore requires that Dr. La Porta's untimely opinions be stricken.  *See MediaTek Inc. v. Freescale Semiconductor, Inc.*, 2014 WL 690161, at *1 (N.D. Cal. Feb. 21, 2014).[2]

Even if Huawei's invalidity contentions did merely indicate a written description contention (which they do not), this Court has found such bald statements insufficient.  In *MediaTek Inc.*, on which Huawei relies, the Court found Freescale's meager mention of "written description" in its invalidity contentions insufficient to support subsequent expert opinion.  *MediaTek Inc.*, 2014 WL 690161, at *6.  Huawei's disclosure falls short of Freescale's invalidity chart by failing to even reference the term "written description" with regards to "predetermined delay duration."  *See id.*  Moreover, even had it made such a reference or provided citation to the record, Huawei would still have failed to satisfy the disclosure requirements of Patent L.R. 3-3(d).  *See BioCell Tech. LLC v. Anthro-7*, 2013 WL 12131282, at *9 (N.D. Cal. Apr. 16, 2013) ("Failure to be specific as to the 'grounds of invalidity based on indefiniteness' . . . substantially undermine[s] the purpose of the Patent Rules."); *see* Opp. at 9-10.  If not properly noticed under the Patent Local Rules, Samsung should rightly assume that Huawei decided to abandon this defense and Huawei should be precluded from asserting such a defense to Samsung's prejudice.

Contrary to Huawei's arguments, merely identifying a claim term as indefinite does not satisfy Patent L.R. 3-3(d)'s separate and distinct requirement of disclosing written description contentions.  Opp. at 9-10; *see AAT Bioquest, Inc. v. Texas Fluorescence Labs., Inc.*, No. 14–cv–03909–DMR, 2015 WL 1738402, at *4 (N.D. Cal. Apr. 13, 2015) ("The disclosure of a 'best mode'

---

[1] Huawei's invalidity expert offered his opinions on April 13, 2018—after the close of fact discovery on March 9, 2018.  *See* Dkt. 207.  Thus, Huawei's allegations that Samsung is somehow "not prejudiced" by this substantially belated disclosure are without merit.

[2] Huawei heavily bases its position on the notion that Samsung should have somehow "guessed" Huawei's written description contentions based on the Court's claim construction order.  *See* Opp. at 11.  However, the Patent Local Rules are intended to prevent parties from having to engage in this very type of guesswork of the other party's position.  *See Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, 2017 WL 5257001, at *1 (N.D. Cal. Nov. 13, 2017).  Moreover, the Patent Local Rules expressly contemplate providing a party the opportunity to update its contentions in view of a court's claim construction order, which Huawei failed to do.  *See* Patent L.R. 3-6; *see also* Ex. 1 at 61, 73, 80.

invalidity theory does not equate to the disclosure of a 'written description' theory."); Dkt. 334-2 at 11. Huawei's own expert recognizes this distinction, as Dr. La Porta's opening report contains *two* distinct sections, one addressing "Lack of Written Description/Enablement," Dkt. 334-9 at 170, and a separate section addressing "Indefiniteness." *Id.* at 178. Moreover, in Huawei's "§ 112(a): Lack of Enablement and Written Description" section of its invalidity contentions, the term "predetermined delay duration" is nowhere to be found. Ex. 1 at 61, 73. During claim construction, Huawei even admitted that the specification adequately *supports* the recited "predetermined delay duration." Dkt. 149 at 11 ("The '825 patent discloses a single way in which delay duration T is predetermined: by being provided by the base station such as a Node B."); *see* Opp. at 10-11; *see also* Dkt. 124-3 at 62.

The cases cited by Huawei are inapt. In *Medimmune*, the party provided (1) an allegation of written description deficiency in its invalidity contentions and (2) specific grounds to support the allegation. *Medimmune, LLC v. PDL Biopharma, Inc.*, 2010 WL 760443, at *3-4 (N.D. Cal. Mar. 4, 2010). The Court found this disclosure satisfied Patent L.R. 3-3(d). *Id.* Huawei provided neither.[3] In *Biogenex Labs*, the Court took issue with Plaintiff's shifting *infringement* argument compared to its original position in its preliminary infringement contentions. *Biogenex Labs., Inc. v. Ventana Med. Sys., Inc.*, No. C 05-860 JF (PVT), 2006 WL 2228940, at *3-4 (N.D. Cal. August 3, 2006). Unlike *Biogenex*, Huawei did not present *any* written description argument for the term at issue in its invalidity contentions.

### 2.     Huawei's Arguments on Claim 4's Structural Elements Are New

Huawei's invalidity contentions are devoid of any allegations regarding "signal generator," "downlink signal processor," and "transceiver" of claim 4. As above, neither Huawei's Rule 3-3 Invalidity Contentions nor Rule 4-3 Joint Claim Construction Statement mention these terms, much less provide an invalidity contention with sufficient detail to permit significant discovery. *See* Ex.

---

[3] Huawei misrepresents the Court in stating that the motion to strike was dismissed in part because "the objecting party had received 'extensive expert reports with respect to the subject contentions.'" Opp. at 9. Rather, the Court dismissed the challenge because disclosure satisfied the requirements of Patent L.R. 3-3(d). *Medimmune*, at *2-4.

1 at 73, 80; Dkt. 124-3 at 58-65.  Further, Huawei's argument that § 112 invalidity contentions "are based upon the patent itself and require little, if any, discovery," is telling.  Opp. at 12; *see, e.g.*, *MediaTek Inc.*, 2014 WL 690161, at *7.  Huawei had all the necessary information available to allege § 112 written description deficiencies in its invalidity contentions yet failed to do so.  As a result, Huawei has no grounds to argue that Samsung's interrogatory responses are the sole cause of its insufficient invalidity contentions.  Huawei did not satisfy Patent L.R. 3-3(d) and cannot now offer new arguments.[4]  *ASUS Comp. Int'l v. Round Rock Research, LLC,* No. 12–CV–02099–JST (NC), 2014 WL 1463609, at *1 (N.D. Cal. Apr. 11, 2014); *see* Opp. at 11.

Huawei's argument that Samsung had ample time to complete discovery and develop rebuttal positions after receiving Dr. La Porta's report is erroneous and if true, would make it impossible to strike *any* new argument in an opening expert report, robbing the Patent Local Rules of meaning.  *See BioCell Tech. LLC*, 2013 WL 12131282, at *9.

### B. Huawei Failed to Disclose Its Non-Infringing Alternatives for the Samsung Patents-in-Suit During Discovery

Huawei first contends that Interrogatory No. 14 did not "ask Huawei to provide the information Samsung now complains was not disclosed" because the Interrogatory sought "design-arounds." Opp. at 19.  This assertion strains credibility.  As Huawei concedes, Interrogatory No. 14 sought any "design-around *or* alternative technology or method," that could be used as an "alternative to the claimed subject matter." *Id.* (emphasis added).  Such language is clearly directed to non-infringing alternatives and is indistinguishable from the interrogatory at issue in *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, 2017 WL 5137401, at *11, *14 (E.D. Tex Nov. 4, 2017) ("Interrogatory No. 5 asked TCL to identify . . . any acceptable non-infringing alternative(s) or design around(s) . . . . excluding the new noninfringing alternatives [is justified].").  Huawei also

---

[4] Indeed, Huawei's claim that Samsung's interrogatory responses (*see* Opp. at 12) identifying corresponding structure in Samsung's products that practice the '825 patent claims somehow justifies Huawei's failure to raise a written description or enablement argument defies logic.  Moreover, Huawei's claim that those responses only identified "source code … but no hardware elements" is factually wrong, as they also identify, *e.g.*, a "baseband processor."  *See* Dkt. 350-4 at 35.

1  appears to make a temporal distinction between "acceptable alternative technology" that existed "at
2  the time of the adoption of the 3GPP standard" and "present-day 'design arounds.'"  Opp. at 19.
3  Huawei overlooks, however, that Interrogatory No. 14 contained no temporal limitation and, to the
4  contrary, asked "*when* the alleged design-around was available for use" thereby making clear that
5  it sought any and all design-arounds at any point in time. Dkt. 334-11 at 30.  Here, Huawei's experts
6  opined both on present-day non-infringing alternatives and those that could have been implemented
7  when the relevant LTE standards were being adopted–precisely the information sought by
8  Interrogatory No. 14 but that Huawei failed to disclose.  *See* Dkt. 334-21 at 54 ▇▇▇
9  ▇▇▇
10 ▇▇▇ ; Dkt. 334-23 at 125 ▇▇▇
11 ▇▇▇ ;
12 Dkt. 334-25 at 95 ▇▇▇
13 ▇▇▇
14 ▇▇▇ ; Dkt. 334-27 at 45 ▇▇▇
15 ▇▇▇ ; Dkt. 334-29 at 88 ▇▇▇
16 ▇▇▇.

17        Huawei also argues it did not need to respond to Interrogatory No. 14 because it was "the
18 subject of expert, not fact, discovery."  Opp. at 20.  But Huawei fails to explain why the simple
19 identification of non-infringing alternatives requires expert testimony.  Indeed, many of the alleged
20 non-infringing alternatives are purported prior art and 3GPP contributions Huawei was well aware
21 of from the outset of discovery.  Dkt. 334-2 at 13.  Huawei provides no explanation for why these
22 supposed non-infringing alternatives were not identified.  Rather, Huawei seizes on a sentence in
23 *Ericsson* that "expert theories need not be disclosed in interrogatories," Opp. at 20, glossing over
24 the fact that *Ericsson* went on to note this proposition did not excuse a failure to respond to the
25 interrogatory altogether: "[A]n investigation would have included underlying facts that TCL should
26 have timely disclosed in response to Interrogatory No. 5 . . . there would have been no harm in
27 including [the non-infringing alternative] in response to the interrogatory."  2017 WL 5137401, at
28 *13; *see also Precision Fabrics Grp. v. Tietex Int'l, Ltd.*, 297 F. Supp. 3d 547, 557-58 (D. S.C.

2018) ("At a minimum, [the party] should have disclosed the existence of these non-infringing alternatives no later than its first amended [interrogatory] response."). Thus, Huawei was not "substantially justified" in refusing to provide *any* information in response to Interrogatory No. 14. Opp. at 20.

The prejudice from this discovery violation is magnified even further because the alleged non-infringing alternatives were also omitted from Huawei's opening expert reports—despite that Huawei, as the alleged infringer, bears the burden of proof on this issue. Dkt. 334-2 at 8. It instead claims that no prejudice occurred because Samsung somehow "opened the door to the issue of non-infringing alternatives." Opp. at 21. Huawei, however, elides the distinction between proper rebuttal expert testimony and new arguments; the latter cannot be made in rebuttal reports. *See Matthew Enter., Inc. v. Chrysler Grp. LLC*, 2016 WL 4272430, at *1-*2 (N.D. Cal. Aug. 15, 2016) ("[A] party may only submit an expert rebuttal if the evidence is intended *solely* to contradict or rebut evidence on the same subject matter identified by another party . . . . Rebuttal testimony cannot be used to advance new arguments or new evidence.") (emphasis added); *see also* Fed. R. Civ. P. 26(a)(2)(D)(ii). Here, Samsung's experts offered circumscribed opinions, largely because of Huawei's failure to respond to Interrogatory No. 14. *See* Dkt. 347-18, Dkt. 350-3 at 280 ("I have reviewed Huawei's response to Samsung's Interrogatory No. 14 . . . . Huawei has not identified any 'non-infringing alternatives' . . . . To the extent Huawei or its expert is allowed to identify any non-infringing alternatives . . . I reserve the right to respond."); Dkt. 350-10 at 324 (same); Dkt. 350-15 at 274-75 (same). Dr. Bambos and Dr. Prucnal also included one paragraph for each patent summarizing why the central elements of the Asserted Claims are important, Dkt. 347-18, Dkt. 350-3 at 280-81, Dkt. 350-15 at 274-75, but this constituted the entire scope of Samsung's experts' opinions.

No aspect of these opinions even tangentially touches on the efficacy of the numerous non-infringing alternatives disclosed in Huawei's rebuttal reports, making Huawei's expert opinions improper. *ZiiLabs Inc., Ltd. v. Samsung Elecs. Co. Ltd.*, 2015 WL 6690403, at *2 (E.D. Tex. Nov. 2, 2015) confirms this conclusion as there, the court found a non-infringing alternative that was disclosed "in direct response" to statements in the other expert's opening report did not cause

prejudice, but went on to find that a different non-infringing alternative *did* cause prejudice because it "could have [been] disclosed in [the] opening expert report. Disclosing this non-infringing alternative . . . deprived ZiiLabs of a chance to offer competing expert testimony." *Id.* The same is true here. Huawei claims that because Samsung's experts stated they were not "aware of any viable non-infringing alternative[s]," Opp. at 20, Huawei was afforded a freestanding right to belatedly disclose its non-infringing alternatives. But Samsung's experts never stated that no such alternatives affirmatively did not exist; instead, the opinions were limited to each expert's *awareness*, which is not something Huawei could properly rebut. Huawei's position, if accepted, would lead to the perverse result that a discovery violation highlighted by the opposing party's expert reports could be used as a springboard to offer expert testimony on the issue without any chance for rebuttal from the other side. That result makes a mockery of the discovery rules, and Huawei's disclosures are "too late to cure the prejudice." *Ericsson*, 2017 WL 5137401, at *14.

      **C.    Huawei Failed to Disclose Its Noninfringement Theories During Discovery**

Huawei makes a threshold assertion that "non-infringement contention interrogatory responses are not required in this Court, as the other party bears the burden of proof." Opp. at 12. Huawei is incorrect. From a legal perspective, this Court, like most around the country, routinely requires parties to furnish responses to contention interrogatories at the "end of fact discovery." *AMEC Ent. & Infrastructure, Inc. v. Geosyntec Consultants, Inc.*, 2013 WL 3923459, at *1-*3 (N.D. Cal. July 26, 2013); *see also Tennison v. City & Cnty. of S.F.*, 226 F.R.D. 615, 618 (N.D. Cal. 2005). As Samsung explained in prior briefing on this issue, contention interrogatories must be answered regardless of which party bears the "ultimate burden" on issues of invalidity and infringement. Dkt. 258-3 at 1-2; *see also SPH Am., LLC v. Research in Motion Ltd.*, 2016 WL 6305414, at *2 (S.D. Cal. Aug. 16, 2016). Huawei provides no authority for the proposition that parties are exempt from providing discovery responses on issues where they do not bear the burden of proof. This is unsurprising because no such carve-out exists. *See SPH Am.*, 2016 WL 6305414, at *2.[5]

---

[5] The sole case Huawei cites, *Mediatek Inc. v. Freescale Semiconductor, Inc.*, 2014 WL 2854773, at *5 (N.D. Cal. June 20, 2014), did not announce a general rule insulating parties from responding

In any event, Huawei *specifically* committed to supplementing its interrogatory response on this issue to prevent Samsung from "seek[ing] to strike and preclude any non-infringement theories not disclosed in response to Interrogatory No. 28." *See* Dkt. 334-2 at 15. The motivation behind this agreement—and Huawei's belief that it was simply providing Samsung "a courtesy" in the spirit of "compromise," Opp. at 13—is immaterial; Huawei committed to providing all-not some-of its non-infringement theories for each of the Samsung Patents-in-Suit. It cannot now renege on that promise simply because it has buyer's remorse.

Huawei next contends that the non-infringement theories at issue were in fact "disclosed in its interrogatory responses." Opp. at 13. The statements Huawei relies on as containing these disclosures are vague, generic proclamations that Samsung purportedly failed to show the presence particular claim elements in its infringement contentions. *See id.* ("Samsung has not identified the FT pre-coded symbols . . . .") (emphasis omitted); *id.* at 15 ("Samsung's infringement contentions failed to demonstrate mapping the data information . . . ."). These statements provide no notice of specific non-infringement *theories*, as they only identify claim limitations that Huawei believes have not been shown to be infringed without identifying the underlying factual basis for Huawei's belief.

With respect to the '105 patent, Huawei states it sufficiently disclosed its theory when it asserted that "Samsung has not identified the FT pre-coded symbols that are mapped to a first set of subcarriers in the accused products." Opp. at 13 (emphasis omitted). But, as Samsung has explained, this response is devoid of *why* Huawei contends the "FT pre-coded symbols" limitation is not satisfied, namely its expert's belated opinion that ███████████████████████████ ███████████████████ Dkt. 334-2 at 15. To arrive at this theory, disclosed for the first time in Dr. Mahon's rebuttal report, would require Samsung to be prescient, and would justify both parties hiding their non-infringement theories until the eve of trial, contravening settled practice in

---

to contention interrogatories based on the allocation of the burden of proof. Opp. at 12. Instead, as Samsung noted in the parties' joint letter brief, *Mediatek* involved exceptional circumstances. *See id.* at *5 n.2; Dkt. 258-3 at 2 n.2. In other words, one of the two *exceptions* to mandatory exclusion under Rule 37 applied: the "failure to disclose [was] substantially justified." *Mediatek*, 2014 WL 2854773, at *5 n.2. That exception is wholly inapplicable here. *See* Dkt. 334-2 at 17.

1  this Court.  Indeed, the emphasis Huawei adds in its brief is absent from its interrogatory response,

2  shrouding Huawei's response even further.

3

4

5  Similarly, the second and third non-infringement theories for the '105 patent find no basis in

6  Huawei's interrogatory response; the statements that

7  Opp. at 13-

8  14, are devoid of any aspects of the specific theories Huawei belatedly disclosed as to why these

9  limitations are not satisfied.  Dkt. 334-2 at 15.

10      The same is true for the '350 patent.  The bare statements that

11

12  Opp. at 14 are unhelpful.  Again, no explanation for *why* these

13  limitations are not satisfied was provided until Huawei served its rebuttal report where it argued that

14  the accused products do not determine a cell-specific ratio *because* a

15

16  Dkt. 334-25 at 61.

17

18  *id.* at 70, also involves substantial detail that its interrogatory

19  response lacks.  With respect to Huawei's argument based on

20  Opp. at 14, Huawei protests that its late disclosure should be excused because "this

21  argument was simply unforeseeable."  *Id.*  Putting aside the fact that Huawei cites no authority

22  allowing a party to hide discovery responses based on "foreseeability," Huawei is simply incorrect.

23  Samsung's infringement contentions for the '350 patent, served in October of 2016, cite to the

24  precise sections of the LTE standard where infringement of each claim element is found.  *See* Ex.

25  2.  These are the very sections Dr. Akl cites in rendering his opinion.  *See* Dkt. 334-25 at 54

26

27

28  (emphasis omitted); Ex. 2 at 2 ("The eNodeB determines the downlink transmit energy

1  per resource element."). To the extent Huawei believed Samsung's infringement contentions were
2  "vague and general," Opp. at 13, it could have taken appropriate action at some point in the last
3  year-and-a-half. Having failed to do so, Huawei cannot now cast aspersions on the adequacy of
4  Samsung's infringement contentions to evade its own discovery obligations.[6] Meanwhile, Huawei
5  does not even address its undisclosed non-infringement theory ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
6  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
7  ▇▇▇▇▇▇▇▇ Dkt. 334-2 at 16. All four theories should be stricken.

8        For the '130 patent, Huawei baldly asserts that "Samsung's infringement contentions failed
9  to demonstrate mapping the data information to remaining symbols in the slot," Opp. at 15, as
10 somehow conveying that the reason this limitation is not met is ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
11 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* This argument again immediately falls apart given that
12 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See* Dkt.
13 334-13 at 72-73. As with the '105 and '350 patents, Huawei did not provide a single piece of
14 information as to *why* it believed that data was not mapped to the remaining symbols in the slot in
15 its interrogatory response, leaving Samsung in the dark until receiving Dr. Mahon's rebuttal report
16 at the end of expert discovery. Nor can Huawei rest on any perceived failure in Samsung's
17 infringement contentions, as Huawei was readily able to disclose its remaining non-infringement
18 theories, Dkt. 334-13 at 72-73, yet deliberately omitted ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ without explanation.

19       Finally, regarding the '726 patent, Huawei again claims that it was "unforeseeable" for it to
20 make its non-infringement argument ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
21 ▇▇▇▇▇▇ Opp. at 15. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
22 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
23 *See* Dkt. 334-13 at 65-66. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
24 As with the '350 patent, Huawei's claims of surprise are unsupported; the infringement contentions

---

[6] Huawei suggests that since Dr. Prucnal "addressed the limiting preamble in his opening infringement report," Huawei somehow disclosed this proposed claim construction. Opp. at 14-15. But the fact that Dr. Prucnal was thorough in his infringement analysis has no bearing on Huawei's failure to include this proposal pursuant to P.L.R. 4-3. Dkt. 334-2 at 15.

for the '726 patent cite to particular sections of the LTE standard, Ex. 3, and Dr. Fuja, in his rebuttal report, ███████████████████████████████████████████. *See* Dkt. 334-29 at 76 ("Dr. Bambos fails to point to any 'processor' within the TS 36.321 specification."). The fact that Huawei's expert cites back to the same sections in Samsung's infringement contentions belies Huawei's position that it could not have provided its non-infringement argument sooner.

Accordingly, all of Huawei's undisclosed non-infringement theories should be stricken.

### D. Huawei Failed to Disclose Its Non-Infringing Alternatives for the Huawei Patents-in-Suit During Discovery

Huawei provides no facts to rebut Samsung's assertion that Huawei failed to disclose non-infringing alternatives for the Asserted Huawei Patents in response to Samsung's Interrogatory No. 35. *See* Opp. at 15-19. ***First***, Huawei attempts to rewrite the language of Interrogatory No. 35 so as to make its response appear acceptable. *See id.* at 15-16. The plain language of Interrogatory No. 35 asks Huawei to "describe in detail ***any design-around alternatives*** that an entity seeking to implement LTE technology could utilize today, or ***any design-around alternatives*** that an entity that sought to implement LTE technology at the time ETSI adopted LTE standards incorporating the Huawei Patents-in-Suit could have utilized." Dkt. 337-16 at 2 (emphasis added). Huawei claims that it adequately responded to Interrogatory No. 35 by stating that "[a]ny alternatives either failed to solve the same problems, or failed to provide an efficient solution like Huawei's inventions." *See* Opp. at 15-16; Dkt. 334-32 at 22. Huawei ignores the fact that Interrogatory No. 35 never asked for only those alternatives that solved exactly the same problems as the Asserted Huawei Patents. *See* Dkt. 337-16. Interrogatory No. 35 asks for "***any*** design-around alternatives," regardless of their efficiency or of the scope of the problems they solve. *Id.* (emphasis added).

***Second***, Huawei's response to Interrogatory No. 35 only cross-references its response to Interrogatory No. 20, which, as Samsung detailed in its Motion, fails to identify ***any*** non-infringing alternatives for the '892 and '239 patents and does not contain all of the non-infringing alternatives for the '613 and '587 patents that Huawei ultimately identified in its opening expert reports. *See* Dkt. 334-34 at 16-26 (response to Interrogatory No. 20); Opp. at 18. Huawei does not dispute that for the '239 and '892 patents it failed to set forth any non-infringing alternatives. *See* Dkt. 334-34

at 18-19 ('892 patent), 21 ('239 patent).  For these two patents, Huawei can only point to its general statements regarding "prior [3GPP] proposals" without specifically identifying those proposals or providing any analysis of any such proposals.  Opp. at 16-17.  Huawei's response to Interrogatory No. 20 does not "describe in detail any design-around alternatives" for the '892 or '239 patents.

For the '587 and '613 patents, Huawei's response to Interrogatory No. 20 only identifies a few of the non-infringing alternatives that its experts included in their opening expert reports.  *See* Dkt. 334-34 at 22-23 ('587 patent), 25-26 ('613 patent).  At the very least, paragraphs 296-300 and 309 of the Expert Report of Dr. Robert Akl, D.Sc. Regarding Infringement of United States Patent No. 8,885,587 (Dkt. 334-40 ("Akl '587 Opening Report")) and paragraphs 279-283 of the Expert Report of Dr. Robert Akl, D.Sc. Regarding Infringement of United States Patent No. 8,724,613 (Dkt. 334-42 ("Akl '613 Opening Report")) should be stricken because those paragraphs describe non-infringing alternatives that Huawei did not identify in response to Samsung's Interrogatory No. 20.  *Compare* Dkt. 334-34 at 22-23, 25-26, *with* Dkt. 334-40 at 167-68, 172-73; Dkt. 334-42 at 122-23.  The other paragraphs of those expert reports that analyze non-infringing alternatives for the Asserted Huawei Patents should also be stricken, because they provide analysis in much greater detail than that in Huawei's response to Interrogatory No. 20.  *Id.*

***Third***, Huawei attempts to point to its response to Interrogatory No. 31 as containing analysis of the non-infringing alternatives to the Asserted Huawei Patents.  *See* Opp. at 17-18.  Huawei's response to Interrogatory No. 35 never identified or incorporated by reference its response to Interrogatory No. 31.  Dkt. 334-32 at 22.  Samsung cannot be expected to pore over the hundreds of pages of interrogatory responses that Huawei served in this case to predict which parts of its responses may be relevant to another interrogatory.  Discovery is not a treasure hunt.  Huawei had the obligation to answer each interrogatory "separately and fully in writing under oath."  Fed. R. Civ. P. 33(b)(3).  Huawei failed to do so.  Even assuming that Huawei's late-disclosed reference to Interrogatory No. 31 is acceptable—which it is not—Huawei's response to Interrogatory No. 31 does not provide Samsung with the information it includes in its expert reports.  *See* Opp. at 6-17.  Like the response to Interrogatory No. 20, Huawei's response to Interrogatory No. 31 does not identify ***any*** non-infringing alternatives to the '892 and '239 patents.  *Id.* at 9.  The non-infringing

alternatives identified for the '587 and '613 patents in response to Interrogatory No. 31 are exactly the same and described at the same level of detail as those identified in Huawei's response to Interrogatory No. 20.  *Id.* at 10-12.  Therefore, even incorporating Huawei's response to Interrogatory No. 31, Samsung still would not have the information it sought from Interrogatory No. 35 that Huawei now includes in its expert report.

*Finally*, Huawei argues that Samsung's Motion is somehow late.  Huawei attempts to relitigate the issue of whether Samsung served Interrogatory No. 35 too late to receive an answer by the close of fact discovery.  *See* Opp. at 18.  Samsung served Interrogatory No. 35 on February 7, 2018, exactly thirty days before the March 9, 2018 close of fact discovery.  Dkt. 334-31 at 6; Dkt. 207.  This satisfied Federal Rule of Civil Procedure 33(b)(2).  Nonetheless, this issue was mooted by the fact that Huawei acknowledged that it "agreed to respond substantively to [Interrogatory No. 35] as part of a global agreement to resolve a number of discovery disputes between the parties," thus rendering the timing of Samsung's service of Interrogatory No. 35 irrelevant.  *See* Fed. R. Civ. P. 29(b) ("the parties may stipulate that . . . other procedures governing or limiting discovery be modified").  Huawei also contends that Samsung should have raised this issue in a motion to compel a more complete response to Interrogatory No. 35, rather than in a motion to strike.  *See* Opp. at 18-19.  This fundamentally misunderstands Samsung's Motion.  Samsung does not contend that Huawei's response to Interrogatory No. 35 on its own was improper.  Instead, Samsung contends that what was improper was the in-depth analysis of numerous non-infringing alternatives in Huawei's opening expert reports when Huawei's response to Interrogatory No. 35 failed to identify those same non-infringing alternatives.  *See* Opp. at 18-20.  There was no way for Samsung to predict during fact discovery that Huawei would rely on more non-infringing alternatives than that which it set forth in response to Samsung's Interrogatories.  Accordingly, these portions of Huawei's opening expert reports should be stricken.

### E. Huawei Failed to Timely Disclose Its Priority Date Analyses for the '587 and '892 Patents

Contrary to Huawei's assertion, Samsung never claims that "an expert must rebut, in an opening infringement report, every invalidity issue raised during discovery." *See id.* at 6; Opp. at

20-22.  Instead, Samsung's argument is that once it "introduced sufficient evidence to put at issue whether there is prior art alleged to anticipate the claims being asserted, prior art that is dated earlier than the apparent effective date of the asserted patent claim," Huawei "ha[d] the burden of going forward with evidence and argument to the contrary" in its opening expert reports that these prior art references do not predate the priority date of the asserted patents.

Samsung's March 23, 2018 Election of Prior Art identified only *ten* invalidity references, not hundreds as Huawei incorrectly contends, that Samsung contended invalidated the '892 and '587 patents.  Dkt. 263.  Because certain of those references on their face post-dated Huawei's claimed priority date for each of the '892 and '587 patents and pre-dated the apparent effective date of those patents, Samsung, by filing its Election of Prior Art, introduced sufficient evidence to put at issue the priority date for those patents.  Since this disclosure was limited to ten references and was made a month before opening expert reports were due, Huawei could be reasonably certain that all or almost all of those invalidity references would appear in Samsung's opening expert reports, and indeed all of those invalidity references *did* appear in Samsung's opening expert reports on invalidity of the '892 and '587 patents.  Ex. 4 at ¶¶ 335-91; Ex. 5 at ¶¶ 103-54.  As such, Huawei's argument that "it would be neither logical nor workable for Huawei to *attempt to predict* in its opening expert reports the exact prior art . . . that Samsung's experts would offer in presenting its invalidity case" is not credible.  *See* Opp. at 8 (emphasis added).  There was nothing to predict.  Accordingly, since Huawei had the burden of going forward with evidence that the '587 and '892 patents pre-date the identified prior art, Huawei needed to include this evidence in its opening expert reports.  The Court should strike the priority date analyses from Huawei's rebuttal expert reports on the '892 and '587 patents.

### F. Huawei Did Not Properly Disclose Its Doctrine of Equivalents Argument for the "Group Number k" Limitation of the '239 Patent

Huawei cannot avoid its failure to include its doctrine of equivalents argument in its infringement contentions.  *See* Opp. at 3-5.  Huawei claims that it was prejudiced by Samsung including a noninfringement argument based on "u+1" not being the claimed "group number k" in its interrogatory responses served on the last day of fact discovery.  *Id.* at 4.  If Huawei truly was

blindsided by Samsung's noninfringement argument, it should have brought a motion for leave to amend its infringement contentions to include its doctrine of equivalents argument. Instead, Huawei chose not to do so, leaving its infringement contentions fatally deficient for the arguments it planned to make. *See Dynetix Design Sols., Inc. v. Synopsys, Inc.*, No. C 11-5973 PSG, 2013 WL 4537838, at *1 (N.D. Cal. Aug. 22, 2013) ("In sum, while equivalents theories can serve as 'Plan B' to literal infringement theories, if our local rules are to have any teeth, they must be adequately disclosed and supplemented along the way, should new evidence arise in discovery."). Moreover, Huawei's "u+1" argument was contained in its initial Infringement Contentions served on October 25, 2016. *See* Dkt. 334-48, App. 6 at 8 ("k = u+1"). At least by that time, Huawei was aware that its infringement theory would substitute "u +1" for the "group number k," but it failed to include any doctrine of equivalents argument until opening expert reports served about 18 months later.

Huawei also complains about argument that the UE does not "obtain" a "group number k"—it is just a subset of the broader argument that "u+1" is not the claimed "group number k." *See* Opp. at 4. Accordingly, it was disclosed in Samsung's interrogatory responses. *See* Dkt. 350-4 at 243 ("Huawei impermissibly redefines the group number 'k' to be 'u+1' in the standard—but of course 'u+1' is not the group number."). If Huawei truly believed this argument was not previously disclosed, it could have brought a motion to strike the relevant portion(s) of Dr. Madisetti's rebuttal report. Huawei chose not to do so.[7] Finally, Huawei's argument that Samsung has not been prejudiced by Huawei's failure to disclose its doctrine of equivalents argument in its infringement contentions has been rejected by courts in this District. *See, e.g.*, *Dynetix*, 2013 WL 4537838 at *1 ("By failing to give [defendant] adequate notice of these theories during fact discovery, [plaintiff] severely prejudiced [defendant's] ability to refute any [doctrine of equivalents] theories.").

### III.  CONCLUSION

For the foregoing reasons, Samsung respectfully requests that the Court grant its Motion to Strike Portions of Huawei's Expert Reports.

---

[7] Huawei's *Daubert* Motion on Technical Issues seeks to exclude Dr. Madisetti's opinions on the "obtaining . . . a group number k" limitation, but that Motion is based on the correctness of those opinions, not on whether they were previously disclosed. Dkt. 330 at 14-15.

| | |
|---|---|
| DATED: July 24, 2018 | Respectfully submitted, |
| | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | By    */s/ Victoria F. Maroulis*<br>Charles K. Verhoeven<br>Kevin P.B. Johnson<br>Victoria F. Maroulis<br>David A. Perlson |
| | *Attorneys for Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Research America, Inc.* |