QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
David A. Perlson (Bar No. 209502)
davidperlson@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Kevin P.B. Johnson (Bar No. 177129)
kevinjohnson@quinnemanuel.com
Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Attorneys for Samsung Electronics Co., Ltd.,
Samsung Electronics America, Inc., and
Samsung Research America, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HUAWEI TECHNOLOGIES CO., LTD., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., et al.,<br><br>Defendants. | CASE NO. 16-cv-02787-WHO<br><br>**SAMSUNG'S REPLY IN SUPPORT OF ITS MOTION TO PARTIALLY EXCLUDE THE REPORT AND TESTIMONY OF JORGE PADILLA, MICHAEL J. LASINSKI, AND CHARLES L. JACKSON AND TO STRIKE THE REBUTTAL OPINIONS OF JACQUES DELISLE AND ZHI DING** |
| SAMSUNG ELECTRONICS CO., LTD. &<br>SAMSUNG ELECTRONICS AMERICA, INC.<br><br>Counterclaim-Plaintiffs,<br><br>v.<br><br>HUAWEI TECHNOLOGIES CO., LTD.,<br>HUAWEI DEVICE USA, INC., HUAWEI TECHNOLOGIES USA, INC., & HISILICON TECHNOLOGIES CO., LTD.<br><br>Counterclaim-Defendants. | **Hearing Date: August 8, 2018**<br>**Time: 2:00 p.m.**<br>**Place: Courtroom 2, 17th Floor**<br>**Judge: Hon. William H. Orrick** |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT .........................................................................................................................3

    A. Mr. Lasinski's Reliance on Flawed and Inadmissible Information Renders His Analysis Highly Unreliable ..................................................................................3

    B. Mr. Lasinski and Dr. Padilla, Huawei's Economic Experts, Improperly Opine on French Law ..................................................................................................6

    C. Lasinski and Padilla Improperly Summarize the Parties' Negotiations ....................6

    D. Dr. Padilla Improperly Bolsters Mr. Lasinski's Testimony .......................................7

    E. The Court Should Exclude Dr. Jackson's Report .......................................................9

    F. Mr. Lasinski's Portfolio Strength Measures Are Unreliable ....................................11

        1. Mr. Lasinski's "Approved Contributions" Metric Is Unreliable ..................11

        2. Mr. Lasinski's "Global Deemed SEPs" Metric Is Unreliable .....................13

    G. Dr. DeLisle's Report Is Improper Rebuttal ..............................................................14

III. CONCLUSION ...................................................................................................................15

## TABLE OF AUTHORITIES

**Page**

### Cases

*Apple Inc.v. Motorola, Inc.*,
    757 F.3d 1286 (Fed. Cir. 2014) ............................................................................................ 4

*Castaic Lake Water Agency v. Whittaker Corp.*,
    2002 WL 34700741 (C.D. Cal. Oct. 25, 2002) ...................................................................... 7

*Cholakyan v. Mercedes-Benz, USA, LLC*,
    281 F.R.D. 534 (C.D. Cal. 2012) ........................................................................................... 8

*Creach v. Spokane Cty.*,
    2013 WL 12177099 (E.D. Wash. May 2, 2013) .................................................................... 7

*Daubert v. Merrell Dow Pharm., Inc.,* ,
    509 U.S. 579 (1993) ............................................................................................................ 10

*Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*,
    285 F.3d 609 (7th Cir. 2002) ................................................................................................. 9

*Finjan, Inc. v. Sophos, Inc.*,
    2016 WL 4268659 (N.D. Cal. Aug. 15, 2016) ..................................................................... 10

*Henricksen v. ConocoPhillips Co.*,
    605 F. Supp. 2d 1142 (E.D. Wash. 2009) .............................................................................. 5

*Huawei Techs. Co. v. T-Mobile US, Inc.*,
    2017 WL 3954108 (E.D. Tex. Aug. 29, 2017) ....................................................................... 6

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
    2010 WL 6363027 (S.D. Fla. Sept. 9, 2010) .......................................................................... 9

*Interwoven, Inc. v. Vertical Computer Sys.*,
    2013 WL 3786633 (N.D. Cal. July 18, 2013) .................................................................... 4, 5

*K&N Eng'g, Inc v. Spectre Performance*,
    2011 WL 13131157 (C.D. Cal. May 12, 2011) ..................................................................... 7

*Lara v. Delta Int'l Mach. Corp.*,
    174 F. Supp. 3d 719 (E.D.N.Y. 2016) ................................................................................. 14

*Lippe v. Bairnco Corp.*,
    288 B.R. 678 (S.D.N.Y. 2003) ............................................................................................ 12

*Malletier v. Dooney & Bourke, Inc.*,
    525 F. Supp. 2d 558 (S.D.N.Y. 2007) ............................................................................. 9, 10

*Matter of James Wilson Assocs.*
    965 F.2d 160 (7th Cir. 1992) ................................................................................................. 8

*Microsoft Corp. v. Motorola, Inc*.
    2013 WL 4008822 (W.D. Wash. Aug. 5, 2013) .................................................................... 7

*Nelson v. Matrix Initiatives*,
     2012 WL 3627399 (N.D. Cal. Aug. 21, 2012) .......................................................................... 4

*Pooshs v. Phillip Morris USA, Inc.*,
     287 F.R.D. 543 (N.D. Cal. 2012) ............................................................................................ 5

*Quirin v. Lorillard Tobacco Co.*,
     2014 WL 883548 (N.D. Ill. Mar. 6, 2014) .............................................................................. 8

*Rondigo, L.L.C. v. Casco Twp., Mich.*,
     537 F. Supp. 2d 891 (E.D. Mich. 2008) ................................................................................ 11

*Schron v. Troutman Sanders LLP*,
     20 N.Y.3d 430 (2013) ........................................................................................................ 3, 4

*TCL Commc'n Tech. Holdings, Ltd.*,
     2017 WL 6611635 (C.D. Cal. Dec. 21, 2017) ...................................................................... 12

*United States v. Hill*,
     749 F.3d 1250 (10th Cir. 2014) .............................................................................................. 7

*Williamson v. Citrix Online, LLC*,
     792 F.3d 1339 (Fed. Cir. 2015) .............................................................................................. 4

**<u>Statutes</u>**

Fed. R. Civ. P. 26(a)(2)(D)(ii) .......................................................................................................... 14

Fed. R. Civ. Proc. 702 ........................................................................................................................ 5

## I. INTRODUCTION

Huawei does not dispute several fundamental flaws in its FRAND experts' opinions. First, Huawei does not dispute that Mr. Lasinski's exclusion ██████████████████████ ██████████████████████████████████████████████████—rests entirely on hearsay testimony beyond the four corners of the agreement, and did not attempt to corroborate that hearsay. Specifically, although Mr. Lasinski opines ████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████ Huawei does not dispute that black letter contract law dictates that the written agreement itself controls its terms, nor does it dispute that ██████ ████████████████████ would be entirely unenforceable. Because there is no reliable factual foundation for any ████████████, or any legal relevance to it, the Court should exercise its gatekeeper role and forbid Mr. Lasinski from presenting his comparable license analysis.

Huawei also does not deny that Mr. Lasinski and Dr. Padilla are both unqualified to testify on French law issues. While Huawei has submitted a report from a French law expert, Prof. Jacques Raynard in this action, it has not made any attempt to tie his report to Mr. Lasinski's or Dr. Padilla's reports, rendering their opinions unreliable.

Huawei also does not contest the legal principle that an expert witness should not summarize fact evidence by weighing in on issues like corporate intent. Whereas Samsung's experts provide factual background for analyses well within the scope of their expertise, Mr. Lasinski and Dr. Padilla use their purported view of the facts to advance impermissible legal conclusions that go beyond their area of expertise that should be excluded.

Next, Huawei does not dispute that it offers opinions by one expert (Dr. Padilla) that are intended to bolster the opinions of its other expert (Mr. Lasinski). Huawei argues that this bolstering is proper because Dr. Padilla "offers an economist's perspective" and "an economic framework" to support his approval of Mr. Lasinski's methodology. Mr. Lasinski is an accountant, not an economist. Huawei offers no legal support for the proposition that it is proper for one expert to

1 apply an "economic lens" to bolster another expert's opinions, and in fact courts routinely exclude
2 similar bolstering.  Here too, Dr. Padilla's testimony must be excluded.
3       Huawei also attempts to defend Dr. Jackson's role in the preparation of the Concur IP
4 essentiality database that is critical to Mr. Lasinski's opinions.  Huawei does not dispute, however,
5 that ███████████████████████████████████████ in a previous
6 litigation—an expert that has not appeared here.  Dr. Jackson's oversight role was therefore quite
7 limited, and, in most cases, ███████████████████████████████████████.
8 Huawei attempts to characterize these previous essentiality decisions as mere "data," but that is
9 untenable—under this interpretation, any party could shield its expert from meaningful review and
10 critique by merely putting the expert's opinions in an Excel spreadsheet and labeling them "data."
11       Huawei also does not contest the basic facts about Mr. Lasinski's "Approved Contributions"
12 and "Global Deemed SEPs" portfolio value metrics.  Huawei does not dispute that ████████
13 █████████████████████ strongly undercut the notion of any reliable relationship
14 between contributions and the number of SEPs.  Huawei also offers several belated arguments that
15 Approved Contributions are reliable, but does not contest that Mr. Lasinski offered no such support.
16 In any event, Huawei's last-ditch effort to offer empirical evidence outside the context of Mr.
17 Lasinski's report fails.
18       Similarly, Huawei does not dispute Mr. Lasinski's "Global Deemed SEPs" measure tilts his
19 portfolio valuations in favor of Huawei.  Its lead argument is that this approach favors Huawei less
20 than a comparison of the Chinese SEPs owned by both companies, but Huawei attacks a straw
21 man—that Huawei's metric is superior than another artificial metric proves nothing.  Huawei does
22 not demonstrate Mr. Lasinski's measure of "Global Deemed SEPs" is in any way reliable or helpful
23 to the jury.
24       Huawei also concedes that no Samsung's expert opined on any aspect of the Chinese Court
25 system, but it still tries to save Dr. deLisle's improper rebuttal by arguing he helps "defuse"
26 Samsung's counterclaims regarding Huawei's pursuit of injunctive relief.  Huawei's argument
27 fundamentally mischaracterizes Samsung's counterclaims.  Samsung's experts opine on **Huawei's**
28

1  decision to seek an injunction on its standard essential patents. Dr. deLisle's entire report therefore constitutes improper rebuttal testimony and must be excluded.

Finally, Huawei concedes in its Opposition that Dr. Zhi Ding's opinions comparing Huawei's asserted patents to Unwired Planet's patents are improper rebuttal opinions, stating that Huawei "does not intend to elicit testimony from Dr. Ding on that subject." Opp. 2-3 n.1. Samsung's Motion should therefore be granted as to Dr. Ding.

II.     **ARGUMENT**

    **A.     Mr. Lasinski's Reliance on Flawed and Inadmissible Information Renders His Analysis Highly Unreliable**

It is undisputed that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Despite this, Mr. Lasinski excluded this agreement from his "comparable license" analysis based on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ at 4. Each of Huawei's arguments in defense of Mr. Lasinski's approach fail.

First, Huawei argues that Mr. Lasinski's analysis is permissible because it rests on a contested factual issue. *Id*. at 4-5. Huawei is mistaken. Mr. Lasinski rests his analysis on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. This extrinsic information is inadmissible, because it lies outside of the four corners of the ▮▮▮▮▮▮▮ agreement. *See Schron v. Troutman Sanders LLP*, 20 N.Y.3d 430, 436 (2013) ("As a general rule, extrinsic evidence is inadmissible to alter or add a provision to a written agreement."); *see also* Ex. 7, 201:2-13 (Mr. Lasinski testifying that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮").[1] As inadmissible non-evidence, it cannot possibly form the basis of a "contested factual issue."

---

[1] Huawei claims that irrespective of governing New York law mandating a parol evidence rule, a purported statement by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1    Second, Huawei argues that the ▮▮▮▮▮
2    ▮▮▮▮▮. Opp. 5. But Huawei concedes that ▮▮▮▮▮
3    ▮▮▮▮▮ *Id.*; *see also* Ex. 7, 187:15-188-15 (▮
4    ▮▮▮▮▮
5    ▮▮▮▮▮).
6    Huawei has not pointed to ***any*** legal authority demonstrating a reasonable basis for relying ▮
7    ▮▮▮▮▮
8    ▮▮▮▮▮
9    ▮▮▮▮▮
10   ▮▮▮▮▮
11   ▮▮▮▮▮
12   ▮▮▮▮▮ *See also* Ex. 7, 197:4-16 (Mr.
13   Lasinski admitting that ▮▮▮▮▮
14   ▮). Accordingly, because Mr. Lasinski rests his conclusions on "matters which are not
15   reasonably relied upon by other experts…his conclusion has no evidentiary value" and should be
16   excluded. *See Nelson v. Matrix Initiatives*, 2012 WL 3627399, at *10 (N.D. Cal. Aug. 21, 2012)
17   (internal citations omitted); *see also* Ex. 7, 214:15-215:8 (Mr. Lasinski admitting that ▮▮▮
18   ▮▮▮▮▮).
19          Huawei's two cited cases are inapposite. In *Interwoven, Inc. v. Vertical Computer Sys.*, the
20   court allowed expert testimony where the expert assumed that there was "no acceptable non-
21   infringing substitutes" because the expert did not "rel[y] ***entirely*** on assumptions and simplifications
22   that are not supported by evidence." 2013 WL 3786633, at *9 (N.D. Cal. July 18, 2013) (emphasis
23   added); Opp. 6. Here, Mr. Lasinski is relying entirely ▮▮▮▮▮
24   *See Schron*, 20 N.Y.3d 430, 436. The only admissible evidence—the ▮▮▮▮▮—
25   does not support Mr. Lasinski's understanding ▮▮▮▮▮

---

27   The issue is not whether a statement has "value," but whether it's admissible as a matter of law.
28   Huawei provides no authority that such a statement is admissible as a matter of law, and does not
     distinguish Samsung's authority that holds to the contrary.

In *Apple Inc. v. Motorola, Inc.*, the court specified that "patent damages experts often rely on technical expertise outside of their field" and therefore it was permissible for the patent damages expert to rely upon the technical information provided by the party or one of the party's technical experts. 757 F.3d 1286, 1320-22 (Fed. Cir. 2014) (overruled on other grounds by *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015)); Opp. 5-6. The situation here is not the same—Mr. Lasinski is not relying upon the "technical expertise" of another expert, but rather ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. This is impermissible, and Huawei has not provided any authority to the contrary.

Third, Huawei takes testimony by certain Samsung witnesses out of context to argue that Mr. Lasinski's opinions are reliable. Opp. 6.² ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Huawei also does not cite to a single authority to support the legal proposition that the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, or any license agreement, should be interpreted in view of the parties' "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.*

Lastly, Huawei argues that Mr. Lasinski's analysis of other license agreements is unobjectionable and untainted by his exclusion of ▓▓▓▓▓▓▓ agreement. *Id.* at 7. That cannot be. Mr. Lasinski rests his FRAND calculations on having identified the appropriate comparable agreements to compare to Huawei's patent portfolio offers. Ex. 3 ¶¶ 92, 101. By excluding a material comparable agreement ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ in his analysis and calculations, Mr. Lasinski's testimony is therefore based on insufficient facts and data, is the product of unreliable principles and methods, and should be excluded.³ Fed. R. Civ. Proc. 702; *Pooshs v.*

---

² ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

³ Huawei's reliance on *Interwoven* is unavailing. 2013 WL 3786633, at *11. In *Interwoven*, the court permitted the expert's analysis because "there is no evidence that any license for the exact patents-in-suit was negotiated but not considered" in the expert's analysis. *Id.* Here, it is undisputed

1  *Phillip Morris USA, Inc.*, 287 F.R.D. 543, 547 (N.D. Cal. 2012) (courts must ensure there is not
2  "too great an analytical gap" between the data and the opinion proffered) (internal citations omitted);
3  *Henricksen v. ConocoPhillips Co.*, 605 F. Supp. 2d 1142, 1154 (E.D. Wash. 2009) (If "any step" of
4  an expert's methodology is unreliable, the expert's testimony is inadmissible) (internal citations
5  omitted).

**B.     Mr. Lasinski and Dr. Padilla, Huawei's Economic Experts, Improperly Opine on French Law**

Huawei does not dispute that Mr. Lasinski and Dr. Padilla are not qualified to opine on French law. *See* Opp. 7. Huawei instead argues that neither expert actually opines on French law. Huawei's claim has no merit, however, given that courts and Huawei itself have recognized that French law govern the ETSI IPR Policy, both experts indeed interpret and opine on ETSI principles, and yet Huawei has not made ***any attempt*** to connect the opinions of its French law expert (Prof. Raynard) to the opinions of Mr. Lasinski and Dr. Padilla in regards to appropriate FRAND rates or good faith negotiations. Mot. 8; *see Huawei Techs. Co. v. T-Mobile US, Inc.*, 2017 WL 3954108, at *2 (E.D. Tex. Aug. 29, 2017) (noting that both parties, including Huawei, agreed that "French law governs the ETSI IPR Policy, and that contract interpretation under French law must be decided by the Court"). Moreover, while Huawei asserts that Samsung's French law expert "admits French law is silent" as to the meaning of "reasonable or non-discriminatory" in the FRAND context (Opp. 7), the actual testimony cited by Huawei ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mr. Lasinski and Dr. Padilla's opinions on French law issues should be excluded.

**C.     Lasinski and Padilla Improperly Summarize the Parties' Negotiations**

Huawei admits that Mr. Lasinski and Dr. Padilla summarize the parties' negotiation history. Opp. 8-11. Huawei defends these summaries by arguing that Samsung's experts are equally culpable—but this is false. While certain of Samsung's experts have provided a factual background concerning the parties' negotiations, those experts have only done so to provide the framework for

that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

which to apply their expert analysis, and do not venture outside of their area of expertise. By contrast, Mr. Lasinski's and Dr. Padilla's summaries couch as expert opinion what is truly a factual finding reserved to the jury, such as corporate intent. *Id.* ▮

▮), Dr. Padilla deviates from the application of any "economic lens" by opining that ▮ ▮ Mot. Stake Ex. 2 ¶ 6.15(b). Dr. Padilla's subjective opinions on Samsung's intent fall well outside of the scope of his economic expertise.

Moreover, Dr. Padilla's testimony is not analogous to the expert testimony permitted in *Microsoft Corp. v. Motorola, Inc*. regarding whether an SEP holder's licensing offers were made in good faith. 2013 WL 4008822, at *19 (W.D. Wash. Aug. 5, 2013); Opp. 10. In *Microsoft*, the court allowed the expert to testify that the **terms** of Motorola's offers represented "good faith attempt[s.]" *Id.* Here, Dr. Padilla goes far beyond an economic analysis by assessing ▮ ▮ including a purported strategy of delay and patent hold-out. Opp. 9. Similar to another holding of the same *Microsoft* court that Huawei relies upon, this Court should conclude that Dr. Padilla's testimony is impermissible. *Microsoft*, 2013 WL 4008822, at *14 (W.D. Wash. Aug. 5, 2013) ("[S]tatements by an expert witness as to the circumstances under which a patent holder fulfills its [F]RAND obligation is beyond the scope of permissible expert testimony.").

**D. Dr. Padilla Improperly Bolsters Mr. Lasinski's Testimony**

Huawei argues that Dr. Padilla does not improperly bolster Mr. Lasinski's testimony, but rather that he only "offers an economist's perspective on the correct approaches to two tasks: analyzing comparable licenses and assessing patent portfolio strength." Opp. 11. In other words, Huawei does not dispute that Dr. Padilla bolsters Mr. Lasinski's opinions but instead argues, without any legal authority, that this bolstering is proper. But, in fact, "the credibility of witnesses is generally not an appropriate subject for expert testimony" because such testimony: (1) "usurps a critical function of the jury"; (2) "is not helpful to the jury, which can make its own determination of credibility"; and (3) when provided by "impressively qualified experts on the credibility of other

witnesses is prejudicial and unduly influences the jury." *United States v. Hill*, 749 F.3d 1250, 1258 (10th Cir. 2014) (internal citations omitted).[4]

The *Matter of James Wilson Assocs.* is instructive. 965 F.2d 160, 173 (7th Cir. 1992). There, Judge Posner excluded the expert report of an architect whose testimony consisted of "vouching for the truth" of what a construction expert told the architect. *Id.* Huawei is attempting this type of "hand-off" by having Dr. Padilla, an economist, restate the opinions of Mr. Lasinski, an accountant (Ex. 7, 10:2-11), by, for example, ████████████████████████████████████████████████████████████████████████████ Mot. Ex. 3, ¶ 3.9; *see also* Mot. 10-11.

Likewise, in *Quirin v. Lorillard Tobacco Co.,* the district court excluded opinions by a cancer and immunology expert who bolstered tests conducted by other experts on the products in suit. 2014 WL 883548, at *7-8 (N.D. Ill. Mar. 6, 2014). The excluded testimony consisted of summary sentences such as: "This investigation was carefully crafted, executed appropriately, and in-depth analyses are used to support the conclusion stated." *Id.* at *8. Just like the excluded expert in *Quirin v. Lorillard Tobacco Co.,* Dr. Padilla's "expert report amounts to little more than a summary of [Mr.Lasinski's] conclusions, followed by a 'bottom-line' statement that those conclusions are valid." *Id.* Dr. Padilla's "bare assertions about the merits" of Mr. Lasinski's report "add little, if any, value to the trier of fact." *Id.* Consequently, his bolstering of Mr. Lasinski should be excluded.

---

[4] *See also Castaic Lake Water Agency v. Whittaker Corp.*, 2002 WL 34700741, at *5 (C.D. Cal. Oct. 25, 2002) ("A scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty") (internal citations omitted); *K&N Eng'g, Inc v. Spectre Performance*, 2011 WL 13131157, at *10 (C.D. Cal. May 12, 2011) ("the testifying expert cannot vouch for the truth of the other expert's conclusion"); *Creach v. Spokane Cty.*, 2013 WL 12177099, at *3 (E.D. Wash. May 2, 2013) (finding that an expert "may not provide expert testimony that is needlessly cumulative or that simply bolsters" another expert); *Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 547 (C.D. Cal. 2012) (excluding an expert who "quotes extensively from [other experts'] reports indicat[ing] not that he is using them to confirm the validity of his opinions, but rather that he seeks to serve as a mouthpiece for others.").

### E. The Court Should Exclude Dr. Jackson's Report

Huawei fails to rebut that Dr. Jackson has signed off on a database that was developed under the oversight of Dr. Apostolos Kakaes, and called it his own.[5] Mot. 11-14. Specifically, Dr. Jackson could not identify a single "essentiality" decision that was made under his oversight rather than Dr. Kakaes'. Mot. 12. He could not do so notwithstanding his representation ████████████ ████████████████████████ Ex. 4, 99. Drawing the reliability of this process into question, Huawei's experts did not track which essentiality decisions were made specifically under Dr. Jackson and which were simply copied over from work done under the guidance of Dr. Kakaes. Mot. 11-14.

Faced with these facts, Huawei is forced to argue the Concur IP database is simply "data" collected by others. Opp. 12. But to describe the Concur IP database as simple "data" is untenable. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Ex. 4, 110.[6] That is not "data"—that is expert analysis.[7]

---

[5] Huawei argues it constitutes "overreach" to exclude Dr. Jackson's whole report. Opp. 15-16. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. But Huawei is correct that Samsung has not made *Daubert* arguments relating to the background and other generalized opinions offered by Dr. Jackson, and therefore would be amenable to only striking the portions of his report (and any other expert reports) that discuss or rely upon the Concur IP database.

[6] For the same reason, Huawei's argument that Samsung "has not identified any opinions of Dr. Kakaes that Dr. Jackson is allegedly parroting" misses the mark. Opp. 12. The essentiality decisions made by Concur IP under the direction of Dr. Kakaes are, under relevant principles, the expert opinions of Dr. Kakaes. *Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 612 (7th Cir. 2002). By copying all of those essentiality decisions into the current database, Dr. Jackson is parroting them as his own. *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2010 WL 6363027, at *8 (S.D. Fla. Sept. 9, 2010) (exclusion of expert testimony that merely "parrots the statements of others").

[7] A hypothetical demonstrates the absurdity of Huawei's position. Suppose an associate working for Huawei's counsel were tasked with going through the Concur IP database and marking all of Huawei's patents "essential" while deeming all other patents "non-essential." ████████████ ████████████████████████████████████████████████████████████████████████ Yet under Huawei's argument, it would be permissible for Dr. Jackson to rely on this "database" because it is mere "data collected by others." Opp. 12. That cannot be the law.

It is true that an expert can rely on staff members to undertake economic or other analyses **under their supervision**. *Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 612 (7th Cir. 2002) ( "An expert witness is permitted to use assistants in formulating his expert opinion, and normally they need not themselves testify"). But courts have recognized that the expert must have "supervised them carefully." *See Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 666 (S.D.N.Y. 2007).[8] The record is clear that Dr. Jackson **did not supervise** Concur IP for the vast majority of judgments comprising the essentiality database, and that such decisions were made under the oversight of Dr. Kakaes. Mot. 12. The database is therefore unreliable.

Huawei next argues that Dr. Kakaes and Concur IP took great care when they created the original Huawei "Concur IP" database. Opp. 13 ("a team of professionals from Concur IP with engineering degrees and experience in preparing patent landscaping studies prepared a 'census' of all patents that had been declared to ETSI as essential to 2G, 3G, and 4G wireless standards"); *id.* at 15 (citing the fact the *TCL* court approved the use of a previous iteration of a Concur IP database overseen by Dr. Kakaes). Any care that Dr. Kakaes and Concur IP exercised, however, does not cure the fatal flaw here—that **Dr. Kakaes** created the database rather than **Dr. Jackson**. Even if the original Concur IP database was perfect, the problem remains—Dr. Jackson is rubber-stamping work that is not his own. *Malletier*, 525 F. Supp. 2d at 666 ("a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony").

Finally, Huawei's contention that Dr. Jackson provided "extensive oversight" is unfounded. ███████████████████████████████████████████████████████████████ ███████. This is anything but "extensive" oversight. The reality is most of the database decisions were made by Concur IP under the guidance of Dr. Kakaes, and to the extent Dr. Jackson did oversee

---

[8] Huawei's argument that it is legally permissible for an expert to rubber-stamp the work of others without "any" oversight is untenable. Opp. 14. Huawei is proposing a legal rule that it is permissible for an expert to serve as a mere conduit for another. That is not the law.

some of the decisions made in the database, Dr. Jackson's participation was minimal.  This is not enough to establish Dr. Jackson's opinions have a "reliable foundation."  *Finjan, Inc. v. Sophos, Inc.*, 2016 WL 4268659, at *5 (N.D. Cal. Aug. 15, 2016) (citing *Daubert v. Merrell Dow Pharm., Inc.,* , 509 U.S. 579, 597 (1993)).

### F.       Mr. Lasinski's Portfolio Strength Measures Are Unreliable

#### 1.       Mr. Lasinski's "Approved Contributions" Metric Is Unreliable

As discussed in Samsung's Motion, Mr. Lasinski calculates patent portfolio strength for Samsung, Huawei, and others based in part on how many "Approved Contributions" each made to ETSI.  *See* Mot. 15-19.  Huawei does not dispute that the use of contributions as a metric of patent portfolio strength originated with Ericsson, which wanted to develop a favorable portfolio valuation metric given its heavy participation in standard-setting bodies.  *See* Opp. 18-22.  Huawei also does not dispute that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Rather than address these flaws, Huawei argues there is "a strong logical and intuitive" connection between the two metrics that Mr. Lasinski himself failed to disclose in his own report.  *Id.* at. 18.  As an initial matter, Huawei's ex-post justifications to support its expert (Opp. 18-19) are not actually in his report, and should be disregarded.  *Rondigo, L.L.C. v. Casco Twp., Mich.*, 537 F. Supp. 2d 891, 897 (E.D. Mich. 2008) (disregarding "ex-post justifications by the Plaintiffs in response to Defendant's *Daubert* motion").

Moreover, the empirical data on contributions—▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓—show there is little to no correlation or nexus between these two metrics.  Mot. 18-19.  To buttress Mr. Lasinski's flawed metric, Huawei cites two studies that purportedly show an empirical relationship between the two metrics.  Opp. 18-19.[9] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[9] Neither of these studies were cited by Mr. Lasinski, who proffers *no* empirical support in favor of his Approved Contributions metric.  Mot. 15-19.

1
2 ███████████████████  Huawei also cites a study authored by the Taiwan Patent Office. *See* Opp.
3 Peterson Ex. 19. That study itself concludes that "[s]ome manufacturers (such as InterDigital and
4 Apple) are not enthusiastic about participation in the standards organizations but have a large
5 number of standard patents," undercutting any notion of a reliable relationship between the two.
6 *See id.* at 125. Moreover, while the study reports a "relevance score" of .52, no actual data is
7 provided and Huawei has not provided any detail on what the "relevance score" means. *Id.* at 18-
8 19 (citing Opp. Peterson Ex. 19).

9      Huawei's citation to the *Kang & Kazuyuki* paper also misses the mark. *Id.* at 19. The study
10 does not ███████████████████████████████████████████████████████████████
11 and therefore provides no empirical support for its use. Ex. 5, 35-38. The paper also ███████
12 ███████████████████████████████████████████████████.[10]  *Id.*

13      Huawei goes on to argue that "industry firms" use contributions to assess portfolio strength
14 in licensing discussions. Opp. 19. But as Samsung pointed out in its Motion, the use of shorthand
15 metrics when patent data is ***unavailable*** makes sense. Mot. 17. Here, though, Huawei has
16 (allegedly) developed ***actual*** patent data through the Concur IP database—there is no need for any
17 proxies of portfolio strength when that strength can be measured directly. *Id.* at 18.

18      Huawei similarly argues that Mr. Lasinski has done an analysis showing a strength metric
19 "that combines both counts," thereby producing "more coherent and consistent results." Opp. 20.
20 ████████████████████████████████████████████████████████████████████████
21 ████████████████████████████████████████████████████████████████████████
22 ██████████

---

[10] Moreover, Huawei fails to cite the two main conclusions of the paper: ████████
████████████████████████████████████████████████████████████  *Id.* at 36-37. Proper reading of these
conclusions is that at best, ███████████████████████████████████████████████████
████████████████████████████████████████—a measure put forward by Dr. Leonard. Separately, the
*Kang & Bekker* paper actually concludes ██████████████████████████████████████████████████
████████████████████████████████████████ Ex. 6, 14524.

Finally, Huawei tries to distinguish *TCL* on the grounds that the court did not find "Approved Contributions" inadmissible but merely "flawed." Opp. 20-21. Huawei's attempt to thread the needle is unconvincing. Huawei does not dispute that the *TCL* court found "two major flaws" with the use of Approved Contributions including "the absence of any evidence that it corresponds to actual intellectual property rights" and the "inability to account for transferred or expired patents." *TCL Commc'n Tech. Holdings, Ltd.*, 2017 WL 6611635, at *41 (C.D. Cal. Dec. 21, 2017). It is the essence of the Court's role as a gatekeeper under *Daubert* to determine whether a methodology has major flaws like these. *Lippe v. Bairnco Corp.*, 288 B.R. 678, 701 (S.D.N.Y. 2003) (excluding testimony due to "flaws and failings" that "go far beyond weight"). Nor did Mr. Lasinski overcome the concerns of the *TCL* court with his own "Approved Contributions" metric. Opp. 21. As discussed above, his "blended index" is deeply flawed, and he ultimately fails to support the concept of using "Approved Contributions" as a proxy for portfolio value when there is direct information on portfolio value available to the factfinder.[11]

### 2. Mr. Lasinski's "Global Deemed SEPs" Metric Is Unreliable

Huawei does not dispute that Mr. Lasinski manufactured his valuation methodology for this litigation (Opp. 22-24), nor does it dispute that Mr. Lasinski's "Global Deemed SEPs"—which include patents only if they have Chinese, European and U.S. counterparts—is vastly more favorable to Huawei than an approach that considered the value of each party's complete global patent portfolio. *Id*. Huawei also does not dispute that ███████████████████████████████ ████████████████████████████████ Finally, Huawei does not dispute that Mr. Lasinski's approach only works in Huawei's favor and against any company that is not based in China. *Id*.

Huawei instead compares how its "Global Deemed SEPs" measure compares with one based *solely* on Chinese patent counts. *Id.* at 24 ("Mr. Lasinski's approach actually reduces the advantage in total patent counts that Huawei would have based on its large number of Chinese patents"). That some other measure would yield results even more favorable to Huawei is not evidence that "Global

---

[11] Huawei's attempts to distance Dr. Padilla's testimony also lack merit. *Id.* at 21-22. It is true Dr. Padilla believes ***all*** proxies should be taken with a "pinch of salt." *Id.* But if he believes all proxies lack merit, he necessarily believes "Approved Contributions," as an example metric, lacks merit.

Deemed SEPs" is not deeply flawed. Because Huawei files for patent protection in China and Europe more often that Samsung does, using the U.S., China, and Europe in his "Global Deemed SEPs" measure indefensibly and arbitrarily favors Huawei in a way that will be misleading and confusing to the jury. Mot. 19-20.

Huawei attempts to defend Mr. Lasinski's selection of the U.S., China, and Europe on the grounds that these areas "represent a very significant portion" of the parties' sales and manufacturing operations. Opp. 23-24. But a close examination of Mr. Lasinski's data on this point undermines Huawei's analysis. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. 3 Fig. 32. Given Huawei's focus on getting Samsung to take a license to its portfolio of patents, Samsung's sales are the most relevant, not Huawei's. Moreover, Samsung agrees that the regional distribution of each party's sales is highly relevant. Ex. 2 ¶¶ 18-19. But the correct way to approach this problem is **not** *to* first count "Global Deemed SEPs" and then apply that metric across the globe—it is to go region by region and figure out which patents affect which sales. *Id.*[12] The Court should preclude Mr. Lasinski from using his deeply flawed "Global Deemed SEPs" metric.

### G. Dr. DeLisle's Report Is Improper Rebuttal

Huawei asserts that Dr. deLisle's report is proper rebuttal because Dr. deLisle's "opinions are directly responsive to, and intended to defuse, the claims in Samsung's opening expert reports regarding injunctions." Opp. 25. Huawei's own characterizations of Dr. deLisle's opinions and the

---

[12] To do otherwise introduces a substantial flaw, as demonstrated by the following hypothetical. Suppose there are only two companies with SEPs, Company A and Company B. Company A has 95 U.S. SEPs but no SEPs in China or Europe. Company B has 5 SEPs with family members in the U.S., China, and Europe. Under Lasinski's "Global Deemed SEPs" methodology, because only Company B has patents that span all three jurisdictions while Company A does not, under Mr. Lasinski's top-down approach Company B is entitled to 100% of the aggregate royalty burden in the industry (e.g. 5-6% of the net selling price). Consider the impact if Company A has most of its sales in the United States (▮▮▮▮▮▮▮▮▮▮▮▮). Even if Company B only owns a small percentage of SEPs within the United States (5%), Mr. Lasinski would nonetheless conclude Company B is entitled to 100% of the aggregate royalty burden for all U.S. sales. This precise flaw is introduced by the application of Mr. Lasinski's methodology to this cross-licensing dispute, and significantly biases Mr. Lasinski's results. *See* Ex. 2 ¶¶ 18-24. This court should prevent the presentation of such "junk science" to the jury. *Lara v. Delta Int'l Mach. Corp.*, 174 F. Supp. 3d 719, 738 (E.D.N.Y. 2016).

opinions in Samsung's opening expert reports belie this argument. Huawei states that Dr. deLisle "opines on the quality and integrity of the Chinese courts" whereas Samsung's experts opine on the impropriety of Huawei's pursuit of injunctive relief against Samsung in Chinese courts for the infringement of SEPs. *Id*. at 24. The subject matter of these opinions is plainly different—Samsung's experts do not discuss "the quality and integrity of the Chinese courts" whatsoever,[13] and Dr. deLisle's opinions thereby do not refute any Samsung expert testimony, constituting impermissible "rebuttal" testimony. Fed. R. Civ. P. 26(a)(2)(D)(ii).

Huawei's argument that Dr. deLisle's opinions nonetheless should be permitted because it gave Samsung permission to serve a rebuttal report is deeply misleading. Opp. 24-25. Shortly after service, Samsung objected that Dr. deLisle's report opined on "issues that were not raised in Samsung's opening reports," and it reserved all rights to challenge Dr. deLisle's improper opinions. Opp. Peterson Ex. 13. Huawei agreed to give Samsung the opportunity to respond to the report, but Samsung had ***less than a week*** to procure an expert on a relatively obscure issue, develop the expert's opinions, and submit a report (not to mention the numerous time-sensitive issues that were already on calendar in this case). *Id*. Samsung could not reasonably submit a report responding to Dr. deLisle within one week of being surprised by his report. Dr. deLisle's improper rebuttal opinions should be excluded.

### III.   CONCLUSION

For the foregoing reasons, Samsung's Motion should be granted.

---

[13] Huawei seemingly cites to Ex. 10 to Samsung's Motion. This exhibit, however, is a third party research report from August 25, 2016, does not even have the paragraph numbers that Huawei cites to, and ultimately does not at all support Huawei's claims here.

| | | |
|---|---|---|
| DATED: July 24, 2018 | | Respectfully submitted, |
| | | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | By | */s/ Victoria F. Maroulis* |
| | | Charles K. Verhoeven |
| | | Kevin P.B. Johnson |
| | | Victoria F. Maroulis |
| | | Thomas D. Pease |
| | | David A. Perlson |
| | | *Attorneys for Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Research America, Inc.* |